# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SBB RESEARCH GROUP, LLC, SAMUEL B. BARNETT, and MATTHEW LAWRENCE AVEN,<br><br>Defendants. | Civil Action No. 1:19-cv-06473<br>Hon. Sharon Johnson Coleman |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS

**KOPECKY SHUMACHER ROSENBURG LLC**
Howard J. Rosenburg (6256596)
120 N. LaSalle Street, Suite 2000
Chicago, IL 60602
Tel. 312-380-6631

*Counsel for Defendants*

**LOWENSTEIN SANDLER LLP**
H. Gregory Baker (*pro hac vice*)
Rachel Maimin (*pro hac vice*)
Alexandra S. Droz (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Tel. 212-262-6700

*Counsel for Defendants*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................3

I.  THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF WITH RESPECT TO SBB'S VALUE ESTIMATION MODEL AND DISCLOSURES (COUNTS I-V) ..................................................................................................3

    A.  The Complaint Fails to Allege Fraudulent Valuations ............................................3

        1.  Statements about Fair Value and Compliance with GAAP are Opinions ...................................................................................................3

        2.  The SEC Fails to Allege that Defendants Subjectively Disbelieved their Statements, or Lacked a Reasonable Basis for their Opinions ............5

        3.  The SEC Fails to Identify any Material Omissions ......................................7

    B.  The SEC Fails to Allege Scienter ..............................................................................8

    C.  The SEC Fails to Allege Materiality........................................................................10

    D.  The Fraud Claims are Not Pled with Particularity....................................................10

II. THE COMPLAINT FAILS TO STATE A CLAIM WITH RESPECT TO SBB'S ADVERTISEMENTS (COUNTS VI, IX)..........................................................................12

III. THE COMPLAINT FAILS TO ALLEGE THAT SBB DISTRIBUTED FINANCIAL STATEMENTS THAT FAILED TO COMPLY WITH GAAP (COUNTS VII, IX)..................................................................................................13

IV. THE COMPLAINT FAILS TO ALLEGE THAT SBB LACKED ADEQUATE WRITTEN POLICIES AND PROCEDURES (COUNTS VIII, X)..................................13

V.  THE COMPLAINT FAILS TO ALLEGE THAT SBB AND MR. AVEN WILLFULLY FILED A FALSE FORM ADV (COUNT XI)..........................................14

VI. THE AIDING AND ABETTING CLAIMS MUST BE DISMISSED (COUNTS IX, X) ..................................................................................................15

CONCLUSION................................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*188 LLC v. Trinity Indus., Inc.*,
   300 F.3d 730 (7th Cir. 2002) ...................................................................................................12

*Baena v. Woori Bank*,
   515 F.Supp.2d 414 (S.D.N.Y. 2007) ..........................................................................................9

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   763 F.Supp.2d 423 (S.D.N.Y. 2011) ..........................................................................................5

*In re Citigroup Inc. Sec. Litig.*,
   753 F.Supp.2d 206 (S.D.N.Y. 2010) ...................................................................................7, 10

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990) ....................................................................................................11

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011) ...................................................................................................3, 4

*Fulton Cty. Employees' Ret. Sys. v. MGIC Inv. Corp.*,
   No. 08-C-0458, 2010 WL 5095294 (E.D. Wis. Dec. 8, 2010) ..................................................7

*In re Lehman Bros Sec. & ERISA Litig.*,
   799 F. Supp. 2d 258 (S.D.N.Y. 2011) ........................................................................................3

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ...................................................................................................................10

*MHC Mutual Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,
   761 F.3d 1109 (10th Cir. 2014) .................................................................................................5

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
   575 U.S. 175 (2015) ........................................................................................................ passim

*City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*,
   679 F.3d 64 (2d Cir. 2012) .........................................................................................................6

*Robare Group Ltd. v. SEC*,
   922 F.3d 468 (D.C. Cir. 2019) .................................................................................................14

*Rockies Fund, Inc. v. SEC*,
   428 F.3d 1088 (D.C. Cir. 2005) ............................................................................................3, 4

*Rubinstein v. Gonzalez*,
    241 F.Supp.3d 841 (N.D. Ill. 2017) ........................................................................................8

*Sears v. Likens*,
    912 F.2d 889 (7th Cir. 1990) ................................................................................................11

*SEC v. Benger*,
    697 F. Supp.2d 932 (N.D. Ill. 2010) .....................................................................................15

*SEC v. Goldstone*,
    952 F.Supp.2d 1060 (D.N.M. 2013) ................................................................................5, 12

*SEC v. Kameli*,
    373 F. Supp. 3d 1194 (N.D. Ill. 2019) ..................................................................................11

*SEC v. Platform Wireless Int'l Corp.*,
    617 F.3d 1072 (9th Cir. 2010) ................................................................................................6

*SEC v. Sys. Software Assocs., Inc.*,
    145 F.Supp.2d 954 (N.D. Ill. 2001) ..................................................................................4, 11

*SEC v. Ustian*,
    2019 WL 7486835 (N.D. Ill. Dec. 13, 2019) .........................................................................6

*SEC v. Yorkville Advisors, LLC*,
    305 F. Supp.3d 486 (S.D.N.Y. 2018) .....................................................................................9

*Société Générale Sec. Servs., GbmH v. Caterpillar, Inc.*,
    2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ........................................................................3

*Thomason v. Nachtrieb*,
    888 F.2d 1202 (7th Cir. 1989) .......................................................................................10, 14

*Thor Power Tool Co. v. Comm'r*,
    439 U.S. 522 (1979) ...............................................................................................................3

**STATUTES**

Securities Act of 1933, 15 U.S.C. § 77q ..........................................................................................1

Securities Act of 1933, Section 17(a), 15 U.S.C. § 77q(a) ..............................................................8

Securities Exchange Act of 1934, 15 U.S.C. § 78j ..........................................................................1

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b) ........................................8, 11

Investment Advisers Act of 1940, 15 U.S.C. § 80b .........................................................................1

Investment Advisers Act of 1940, Section 206, 15 U.S.C. § 80b-6(1) ……….......................... 8

Investment Advisers Act of 1940, Section 206(4), 15 U.S.C. § 80b-6(4) ....................................12

Investment Advisers Act of 1940, Section 207, 15 U.S.C. § 80b-7 ..............................................2

**RULES**

Fed. R. Civ. P. 8(a) ......................................................................................................................14

Fed. R. Civ. P. 9(b) ............................................................................................................. 2, 10-11

Securities Exchange Act of 1934, Rule 10b-5, 17 C.F.R. § 240.10b-5 ....................................8, 11

Investment Advisers Act of 1940, Rule 206(4)-1, 17 C.F.R. § 275.206(4)-1 ....................... passim

Investment Advisers Act of 1940, Rule 206(4)-2, 17 C.F.R. § 275.206(4)-2 ...............2, 13, 14, 15

Investment Advisers Act of 1940, Rule 206(4)-7, 17 C.F.R. § 275.206(4)-7 ...............2, 13, 14, 15

Investment Advisers Act of 1940, Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8 .................................8

**OTHER AUTHORITIES**

*SEC v. Commonwealth Equity Services, LLC*, No. 1:19-cv-11655-MPK, 2019 WL 3502789 (D. Mass. 2019) (Compl.) ........................................................................................14

*SEC v. Temenos Advisory, Inc. and George L. Taylor*, No. 3:18-cv-01180-SRU, 2018 WL 3455974 (D. Conn. 2018) (Compl.) ..........................................................................14

SEC, Investor Alerts and Bulletins, *Structured Notes with Principal Protection: Note the Terms of Your Investment* (June 1, 2011), https://www.sec.gov/investor/alerts/structurednotes.htm (last visited Jan. 26, 2020). ...........................................................................................................................................4

**PRELIMINARY STATEMENT**

Plaintiff Securities and Exchange Commission's ("Plaintiff" or "SEC") case is premised on the false claim that generally accepted accounting principles ("GAAP") require a rigid, standardized process to estimate the fair value of complex, Level 3 assets such as structured notes, and that process will lead to a single specific price. That is not how fair value under GAAP works for complex assets. In fact, GAAP allows for judgment in estimating prices and allows for estimates that fall within a reasonable range. Yes, the SEC alleges that Defendant SBB Research Group, LLC's ("SBB") model was different from models that others may have used, but even if that were true, *different* does not mean *fraudulent*.

The SEC's Opposition to Defendants' Motion to Dismiss (the "Opposition") confirms that each of the SEC's causes of action suffers from critical defects that compel dismissal. The SEC's most significant claims are that Defendants violated the antifraud provisions of the Securities Exchange Act of 1934 ("Exchange Act"), Securities Act of 1933 ("Securities Act"), and Investment Advisers Act of 1940 ("Advisers Act"). (Compl. Counts I-V.) But, as Defendants have argued, the SEC's fraud claims fail as a matter of law because: (1) Defendants' statements concerning the recording of their complex structured notes at fair value are statements of opinion, and (2) the SEC fails to allege that these opinions are actionable under the heightened pleading standard for opinion statements articulated by the Supreme Court in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015). (Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint ("MTD") at 6-14.) The SEC now asks the Court to disregard the settled law that statements about fair value estimates of complex assets and compliance with GAAP are statements of opinion. The SEC then all but ignores *Omnicare*, and fails to demonstrate how the Complaint meets the *Omnicare* standard. Nor does the SEC adequately address the Complaint's failure to plead the necessary elements of

1

materiality and scienter, or demonstrate how its fraud claims satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). Accordingly, the securities fraud claims in Counts I through V must be dismissed.

The remaining counts of the Complaint also suffer from fatal deficiencies. For example, while Count VI alleges that SBB disseminated materially misleading advertisements concerning SBB's Polysight fund in violation of Advisers Act Rule 206(4)-1, that allegation is contradicted by specific documents the SEC incorporated by reference in its Complaint, which the Court can indisputably consider in deciding the MTD. Furthermore, the SEC does nothing more than repeat the statutory language for the inadequate compliance policies and procedures claim (Count VIII, Advisers Act Rule 206(4)-7) and willfully filing materially misleading Form ADV claim (Count XI, Advisers Act § 207), without alleging the necessary supporting elements. And the SEC advances a novel theory that an investment adviser can be held liable for a custody rule violation years after disseminating audited financials that certified compliance with GAAP (Count VII, Advisers Act Rule 206(4)-2). Additionally, the SEC's Opposition does not even bother to respond to Defendants' arguments as to why this Court should dismiss the woefully deficient aiding and abetting claims against Dr. Barnett and Mr. Aven in Counts IX and X.

Finally, the Complaint is pled in a shotgun fashion, leaving it to the Court and Defendants to decipher which allegations in the 157-paragraph Complaint apply to which causes of action. Defendants cannot defend an action when it is unclear what allegations support which claims.

In sum, the SEC's Opposition ignores key arguments, misstates the law, and re-characterizes its own allegations in an attempt to survive the MTD. Defendants respectfully submit that the Complaint must be dismissed in its entirety, with prejudice.

**ARGUMENT**

I. **THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF WITH RESPECT TO SBB'S VALUE ESTIMATION MODEL AND DISCLOSURES (COUNTS I-V)**

   A. <u>The Complaint Fails to Allege Fraudulent Valuations</u>

   *1. Statements about Fair Value and Compliance with GAAP are Opinions*

Statements about fair value estimates for complex assets under GAAP, such as SBB's structured notes, are statements of opinion rather than statements of objective fact, and are thus subject to a higher pleading standard under *Omnicare*. (*See* MTD at 6-9.) The SEC argues—without any legal support—that these statements are ones of objective fact, and completely ignores this Court's recent decision in *Société Générale Sec. Servs., GbmH v. Caterpillar, Inc.*, which held that a defendant's statement that it complied with GAAP was an opinion. *See* No. 17 CV 1713, 2018 WL 4616356, at *5-6 (N.D. Ill. Sept. 26, 2018); *see also In re Lehman Bros Sec. & ERISA Litig.,* 799 F. Supp. 2d 258, 300-03 (S.D.N.Y. 2011) (statements regarding compliance with GAAP are inherently statements of opinion). The SEC does not cite a single case that holds otherwise.

The SEC argues that its Complaint is unique because it alleges that Defendants violated accounting standards under GAAP, which it claims are matters of objective fact. (Opp. at 9.) But GAAP does not create an objective standard for generating valuation estimates for complex, Level 3 assets, such as structured notes. Rather, as the Supreme Court has held, GAAP "tolerate[s] a range of 'reasonable' treatments, leaving the choice among alternatives to management." *Thor Power Tool Co. v. Comm'r*, 439 U.S. 522, 544 (1979); *see also Fait v. Regions Fin. Corp.*, 655 F.3d 105, 111 (2d Cir. 2011) (absent quoted market prices, determining fair value of assets requires an estimate that "will vary depending on the particular methodology and assumptions used").

The cases cited by the SEC are off point. *Rockies Fund, Inc. v. SEC*, 428 F.3d 1088 (D.C. Cir. 2005) says nothing about whether statements about compliance with GAAP, or statements

about fair value estimates, are statements of opinion.[1] And while *SEC v. Sys. Software Assocs., Inc.* held that "[a] financial statement that recognizes revenue and does not conform to the requirements of GAAP is presumptively a false or misleading statement of material fact," 145 F.Supp.2d 954, 958 (N.D. Ill. 2001), that holding applied only to a straightforward issue of revenue recognition under GAAP, not valuation of complex assets such as structured notes, which even the Complaint acknowledges required the use of estimates. (*See* Compl. ¶ 34.) Nor does that case discuss whether statements about revenue recognition are statements of opinion.

The SEC also wrongly claims that *Fait* supports its argument. There, the Second Circuit affirmed the dismissal of the complaint because the "[p]laintiff [did] not point to any objective standard" that the company "should have [used] but failed to use in determining the value of" its assets or loan loss reserves. 655 F.3d at 110. The SEC tries to distinguish this case by claiming that its Complaint alleges an objective standard. (Opp. at 10.) But the SEC deceptively omits key language from the *Fait* quote, which reads: "Plaintiff does not point to any objective standard *such as market price* that he claims [defendant] should have but failed to use in determining the value of [the] assets." 655 F.3d at 110 (emphasis added). The opinion even goes on to say that absent a standard such as market price, "an estimate of the fair value of those [goodwill] assets will vary depending on the particular methodology and assumptions used." *Id.* at 111. Even the Complaint acknowledges that SBB's structured notes cannot be valued by using market price (because there is no liquid market), but are valued by using complex mathematical models.[2] (*See* Compl. ¶ 32.)

---

[1] *Rockies Fund* also concerned whether defendants' valuation of restricted shares was inconsistent with their disclosed valuation methodology, which has not been alleged in this case. 428 F.3d at 1096-97.

[2] Even the SEC's website acknowledges that it is difficult to value structured notes: "the value of the note before maturity might be difficult to calculate and can vary depending [on] a wide array of factors (including prevailing interest rates and the volatility of the underlying asset, index or benchmark)." SEC, Investor Alerts and Bulletins, *Structured Notes with Principal Protection: Note the Terms of Your Investment* (June 1, 2011), https://www.sec.gov/investor/alerts/structurednotes.htm (last visited Jan. 26, 2020).

*See also, In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F.Supp.2d 423, 450 (S.D.N.Y. 2011) ("Level 3 assets, thinly traded or not traded at all, have values based on valuation techniques that require inputs that are both unobservable and significant to the overall fair value measurement. To value Level 3 assets, companies rely on models developed by management.").

The SEC also cites *SEC v. Goldstone*, which found that an other-than-temporary impairment ("OTTI") analysis under GAAP was not based on subjective judgment, but was an objective statement of fact. 952 F.Supp.2d 1060, 1228 (D.N.M. 2013). (Opp. at 11.) But the SEC fails to mention the important fact that *Goldstone* was subsequently abrogated by the Tenth Circuit's decision in *MHC Mutual Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, which held that an OTTI judgment is an opinion statement. 761 F.3d 1109, 1120 (10th Cir. 2014).

Finally, while the SEC complains that "none of Defendants' cases address option valuation practices," (Opp. at 10), it fails to explain why structured note valuation would be subject to a different set of standards than those that apply to valuation of any other complex asset. It follows that Defendants' statements about their fair value estimates for their structured notes under GAAP are statements of opinion subject to the *Omnicare* heightened pleading standard.

> 2. *The SEC Fails to Allege that Defendants Subjectively Disbelieved their Statements, or Lacked a Reasonable Basis for their Opinions*

Under the Supreme Court's holding in *Omnicare,* opinion statements are actionable only if a plaintiff pleads and proves that (i) the opinion was disbelieved by the maker; (ii) the facts supplied in support of the opinion were objectively false; or (iii) the speaker omits information whose omission makes the statement misleading to a reasonable investor. 575 U.S. at 186-87, 194. (*See* MTD at 7-9.) The SEC attempts to turn the subjective disbelief prong on its head, arguing that the Defendants are asking the Court to infer that Defendants "acted with a good faith belief that the Model would generate a 'fair value' exit price." (Opp. at 7.) But the SEC misstates

-5-

Defendants' argument.³ The clear fact is that the SEC has failed to satisfy the first prong of the *Omnicare* standard, because it fails to allege, even in conclusory fashion, that Defendants disbelieved their valuations. *See City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.,* 679 F.3d 64, 68 (2d Cir. 2012) ("Plaintiffs' second amended complaint is devoid even of conclusory allegations that defendants did not believe in their statements of opinion regarding CBS's goodwill at the time they made them.") (*See* MTD at 9-12.) Instead, the SEC expects the Defendants and the Court to divine that allegation from its 157-paragraph Complaint, in the face of the numerous contradictory allegations suggesting that Defendants actually believed their fair value estimates. (*See* Compl. ¶¶ 7, 8, 52.) The Court should reject the SEC's argument.

As an alternative, the SEC attempts to argue that Defendants lacked a reasonable basis for their opinions. But that argument also misses the mark, as Defendants have demonstrated how the Complaint fails to identify any red flags that would have put Defendants on notice that their structured notes were not estimated within a reasonable fair value range. (*See* MTD at 10-12.) The SEC counters that Defendants lacked a reasonable basis because they "knew what the industry standard was for valuing options"⁴ (Compl. ¶¶ 37-41), created a model that abandoned "standard option valuation principles," "included variables with no basis in industry practice or academic research," (*Id.* ¶¶ 42-53), and did so because they thought the market assumptions and practices were wrong, (*Id.* ¶¶ 43-44). (Opp. at 12-13.) But the SEC never alleges that Defendants' valuation

---

³ *SEC v. Platform Wireless Int'l Corp.*, 617 F.3d 1072 (9th Cir. 2010), which the SEC cites to argue that the Court should not consider Defendants' subjective beliefs (Opp. at 7), is totally irrelevant to *Omnicare*'s standard for determining when opinions are actionable misstatements. That case, decided long before *Omnicare*, involved the Ninth Circuit's affirmation of a grant of summary judgment against a defendant, where the defendant admitted at his deposition that his company did not have a finished operating prototype, contradicting his company's press release indicating that the company had a finished prototype. In that circumstance, the court held it could not accept the defendant's "self-serving" statement that he believed his statements, when the facts clearly showed otherwise. And unlike *SEC v. Ustian*, 2019 WL 7486835, at *38 (N.D. Ill. Dec. 13, 2019), which was a decision on summary judgment, the SEC has not even *alleged* in this case any facts suggesting that Defendants subjectively disbelieved their valuations.

⁴ The Complaint fails to allege when Defendants learned of any purported industry standards.

model could not have reasonably estimated fair values for the structured notes. *See Fulton Cty. Employees' Ret. Sys. v. MGIC Inv. Corp.*, No. 08-C-0458, 2010 WL 5095294, at *6 (E.D. Wis. Dec. 8, 2010) (given the judgments and estimates inherently involved in valuation, a plaintiff must "take the pleaded facts, run them through the fair-value machinery, and show that one could not reasonably come up with the values that the defendants reported"). The Complaint does not do this: it only offers conclusory allegations that Defendants' model was inconsistent with practices purportedly used by market participants and rendered valuations that were "inflated." (*E.g.*, Compl. ¶¶ 9, 41.) *See In re Citigroup Inc. Sec. Litig.*, 753 F.Supp.2d 206, 243 (S.D.N.Y. 2010) ("[T]he mere allegation that some other company reached a different valuation is too vague to support the inference that [defendant]'s valuation was incorrect.").

The SEC also claims that Defendants lacked a reasonable basis because they "ignored the valuation advice of industry experts," (Compl. ¶¶ 54-57, 67) focusing primarily on an individual who Defendants allegedly consulted in December 2011, prior to developing their valuation model. (Opp. at 13.) But the SEC never alleges that any consultant created a model that produced prices that were better estimates of fair value than Defendants' model, undermining any claim that these consultants put Defendants on notice of how their valuations fell outside a range of reasonableness.

Last, the SEC's assertion that its exam staff's informing SBB of what they believed were flaws in SBB's model is not sufficient to allege that Defendants lacked a reasonable basis, because the staff's opinions are not findings of fault or noncompliance by the SEC. (*See* MTD at 11-12.)

### 3. The SEC Fails to Identify any Material Omissions

The Complaint does not allege that any facts that Defendants relied on in reaching their opinions were objectively false, which is the second option under *Omnicare*.[5] Rather, the SEC

---

[5] The SEC does argue that Defendants' methods (*i.e.*, their valuation model) used to reach their opinions were objectively false, but methods of reaching opinions are not *facts*. (*See* Section I, *supra*.)

turns to the third *Omnicare* prong, offering a laundry list of alleged material omissions, such as that: Defendants failed to disclose that the "Model…was designed to inflate the note values…[and] was not designed to reach an exit price as required by GAAP;" "SBB did not value the Funds' notes at fair value;" "the SBB Model artificially inflated the value of the structured notes for five years;" or that "SBB had created a results-oriented model that was not designed to comply with GAAP." (Opp. at 14.) But these are nothing more than conclusory assertions, not actionable omissions of material fact.[6] *See Omnicare*, 575 U.S. at 194-96 (recognizing that conclusory assertions are insufficient to allege omissions of material facts). And the Complaint fails to explain how the alleged omissions concerning SBB's "revis[ing] the Funds' NAVs for the time period 2011 through 2015," or that the "Funds' past monthly, year-to-date, and lifetime performance substantially decreased," rendered any of SBB's published statements misleading. (Opp. at 14.) *See Omnicare*, 575 U.S. at 194 (stating that an omission must render a published statement misleading). Thus, the Complaint fails to satisfy the *Omnicare* standard.

B. <u>The SEC Fails to Allege Scienter</u>[7]

"A plaintiff may demonstrate scienter either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Rubinstein v. Gonzalez*, 241 F.Supp.3d 841, 854 (N.D. Ill. 2017). (*See* MTD at 14.) As to the first prong, the Opposition is

---

[6] The Complaint never alleges that Defendants committed a material omission by not timely disclosing to their auditor the SEC exam staff's closing letter, and moreover, that claim is undermined by the fact that after receiving the letter, the auditor signed off on two year-end financials, suggesting the auditor did not view the letter as material. The auditor did not resign until two and a half years had passed after it received the letter. (*See* MTD at 17-18.)

[7] Scienter is a necessary element of Plaintiff's claims under Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder, Section 17(a)(1) of the Securities Act, and Section 206(1) of the Advisers Act. While negligence is sufficient for Plaintiff's claims under Section 17(a)(2) and (3) of the Securities Act, and Sections 206(2) and 206(4) of the Advisers Act, and Rule 206(4)-8 thereunder, the Complaint pleads no facts suggesting Defendants' negligence, meaning the negligence claims cannot stand alone.

conspicuously silent regarding Defendants' arguments concerning their lack of a financial motive.[8] (MTD at 14-15.) The SEC instead appears to hang its hat on the "conscious misbehavior or recklessness" prong, contending that Defendants "knew—or recklessly disregarded—that their Model was not valuing the Funds' notes at fair value as required by GAAP." (Opp. at 15.) But, as Defendants have demonstrated, the Complaint fails to allege that Defendants subjectively disbelieved their valuations, or were otherwise reckless, with respect to their fair value estimates. (*See* Section I.A.2, *supra*; MTD at 9-12.) In fact, the Complaint suggests the opposite: that Defendants subjectively believed their fair value estimates. (Compl. ¶¶ 7, 8, 52.)

The SEC alternatively alleges that Defendants engaged in several acts to hide their misconduct from SBB's auditor and investors. (Opp. at 15.) With respect to the alleged misstatements to the auditor, the Complaint fails to allege how any such misstatements were material, especially given that the auditor continued signing off on fund financials for years after it learned of the concerns of the SEC's examination staff, suggesting that the auditor did not view the staff's concerns as material. (*See* MTD at 17-18.) And with respect to the allegations that Defendants secretly refunded overcharged fees and refused to revalue the Funds' historical NAVs (Opp. at 15), even accepting those allegations as true (which they are not),[9] it is unclear how those acts exhibit a fraudulent intent by Defendants to inflate the value of their structured notes. *See Baena v. Woori Bank*, 515 F.Supp.2d 414, 422 (S.D.N.Y. 2007) (stating that allegations of a cover-up are only "sufficient if the facts give rise to a *strong inference* of fraudulent intent") (emphasis added). If Defendants truly had a fraudulent intent, it begs the question of why they would have elected to credit fees, or bother to recalculate their historical NAVs.

---

[8] The Complaint fails to allege any concrete personal gain that Defendants sought, other than general profit motives, which alone are insufficient to establish scienter. (*See* MTD at 15, citing *SEC v. Yorkville Advisors, LLC*, 305 F. Supp.3d 486, 512 (S.D.N.Y. 2018).
[9] Unlike the Opposition, the Complaint alleges that SBB revalued the Funds' NAVs. (*See* Compl. ¶ 82.)

C. The SEC Fails to Allege Materiality

The Complaint fails to allege materiality because it: (i) does not allege a range of reasonable values against which to compare SBB's fair value estimates; (ii) does not mention any particulars with regard to the purported overcharged fees; (iii) incorporates documents by reference showing that SBB disclosed the subjectivity and uncertainty in its valuations; and (iv) fails to allege the materiality of any purported misstatements to SBB's auditors. (MTD at 15-17.) Rather than attempt to rebut any of these flaws, the SEC resorts to repeating some of the statistics referenced in the Complaint. (*See* Opp. at 16-17.) But simply alleging that, for example, the third-party Valuation Firm's estimates for Polysight notes "were between 5% to 11% lower than values under SBB's Model" (Compl. ¶ 80) fails to allege by how much and for which funds SBB's estimates were outside a range of reasonable fair value estimates.[10] *See In re Citigroup*, 753 F.Supp.2d at 243 (it is insufficient to merely allege someone else reached a different valuation).

Further, the Opposition impermissibly attempts to amend the Complaint by claiming for the first time that "[i]t is difficult to believe that any reasonable investor would consider such conduct obviously unimportant." (Opp. at 16.) But, the Complaint *never* mentions the purported importance that any investors placed on Defendants' conduct, and it cannot be amended through the SEC's Opposition. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (stating that an opposition brief cannot amend a complaint).

D. The Fraud Claims are Not Pled with Particularity

Federal Rule of Civil Procedure Rule 9(b)'s particularity requirement, that "the complaint must allege the 'who, what, when, where, and how' of the fraud," is noticeably absent from the

---

[10] The Court should disregard the SEC's specious claims that "Defendants' materiality arguments ignore the applicable pleading standard," (Opp. at 15), given that Defendants cite the seminal Supreme Court materiality case of *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011). (*See* MTD at 16.)

-10-

Complaint. *Sys. Software Associates*, 145 F.Supp.2d at 954 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). (*See* MTD 18-19.) In attempting to demonstrate that the Complaint meets this high standard, the Opposition essentially repeats the Complaint's generalized allegations and yet again "fails to adequately delineate each Defendant's role with respect to their participation in the allegedly fraudulent scheme and each defendant's role with respect to issuing allegedly material misstatements or omissions." (*Id.* at 18.) Rather than answering the "newspaper questions" for each specific alleged act of fraud, and for each alleged securities cause of action, the Opposition lumps the Defendants and the conduct together, making it impossible for the Court or Defendants to decipher which conduct satisfies which element of which statute, or which Defendant had what role in relation to the fraud claims. (*See* Opp. at 2-6); *see also Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (citation omitted) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient."). As just one example, the Court need look no further than Count I, which alleges that Defendants violated Exchange Act Section 10(b) and Rule 10b-5 thereunder, and simply summarizes the elements of that cause of action, and incorporates by reference paragraphs 20 through 112. This leaves Defendants to speculate as to what conduct alleged in paragraphs 20 through 112 violated Exchange Act Section 10(b) and Rule 10b-5.

The SEC does not even bother to address the recent decision from *SEC v. Kameli*, 373 F. Supp. 3d 1194 (N.D. Ill. 2019), where the District Court dismissed a virtually identical complaint that lacked particularity and was pled in shotgun fashion. The Complaint's lack of particularity and shotgun nature alone warrant dismissal.[11] (*See* MTD at 19.)

---

[11] Unlike here, the complaint in *Goldstone*—which the SEC references—identified specific communications as misleading. For example, it alleged, *inter alia*, that "[defendant]'s communication to Thornburg Mortgage's investor relations department on February 28, 2008, at 5:29 a.m., that Thornburg

-11-

## II. THE COMPLAINT FAILS TO STATE A CLAIM WITH RESPECT TO SBB'S ADVERTISEMENTS (COUNTS VI, IX)

The Complaint fails to allege violations of Advisers Act Section 206(4) and Rule 206(4)-1 thereunder, which prohibit investment advisers from publishing an advertisement containing an untrue statement of material fact. (*See* MTD at 20.) The Complaint misleadingly conflates SBB's Polysight™ I LLC hedge fund with SBB's concept of a Polysight® platform, and its allegations are contradicted by the express terms of the advertisements themselves. The Polysight marketing materials show that they changed over time from marketing the Polysight™ I LLC fund – an investment *vehicle* itself – to the Polysight® platform – an investment *strategy* SBB intended to use in multiple hedge funds. (*See* MTD at 21.)

The SEC argues that Defendants are presenting an improper "fact-based defense." (Opp. at 20.) But it is well-settled that courts may consider documents incorporated by reference in a complaint in deciding a motion to dismiss. *See, e.g.*, *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). The Polysight marketing materials are incorporated by reference in the Complaint at paragraphs 96 through 99, and this Court may consider them in deciding this motion.

The SEC argues that "the [Defendants'] proffered fact sheet…does not explain how the 'Polysight Platform' is any different than the Polysight Fund…" (Opp. at 20.) But the introductory terms of each fact sheet highlight the distinction between the fund and the platform.[12] (*See* MTD at 21.) The Opposition further erroneously claims that SBB's intent to market "'sophisticated

---

Mortgage had met its margin calls, its 'lenders are fine,' and Thornburg Mortgage had 'sufficient operating cash,'" was misleading. 952 F. Supp.2d at 1221.

[12] The 2015 Polysight™ I LLC fund fact sheets, which were marketing the Polysight™ I LLC hedge fund itself, state: "Polysight™ I LLC is a Quantitative Directional Equity *hedge fund.* . . ." Dec. 2015 Polysight™ I LLC Fund Fact Sheet. (Droz Decl. in support of MTD, Ex. 6) (emphasis added). The April 2016 fact sheet, in which SBB began marketing the Polysight® *platform*, states: "Polysight® is a quantitative directional investment *platform* that invests in custom equity-linked structured products. [. . .] The numerous hedge funds managed by [SBB] are based on Polysight®, a proprietary quantitative investment *platform that enables the funds* to invest at the intersection of technology and the scientific method." Apr. 2016 Polysight® Platform Fact Sheet. (Droz Decl. in support of MTD, Ex. 7) (emphasis added).

institutional investors'…cannot be found in the allegations of the Complaint [] or within the four corners of their exhibit." (Opp. at 20.) But the April 2016 Polysight® Platform Fact Sheet expressly states: "[t]his presentation is only made available exclusively to financially sophisticated, high net worth and institutional investors capable of evaluating the merits and risks of an investment with [SBB]." (*See* Droz Decl. in support of MTD, Ex. 7.) Accordingly Count VI, and the associated aiding and abetting claim (Count IX) must be dismissed.

### III. THE COMPLAINT FAILS TO ALLEGE THAT SBB DISTRIBUTED FINANCIAL STATEMENTS THAT FAILED TO COMPLY WITH GAAP (COUNTS VII, IX)

Advisers Act Rule 206(4)-2(b)(4) provides an exception to the "custody rule" for any limited partnership that annually "distributes its audited financial statements prepared in accordance with [GAAP] to all limited partners … within 120 days of the end of its fiscal year." 17 C.F.R. § 275.206(4)-2(b)(4)(i). The SEC contends that SBB violated this rule because its funds' financial statements were not prepared in accordance with GAAP, notwithstanding the fact that SBB's auditor signed off on the 2014 and 2015 financials (and also the 2016 and 2017 financials), and did not withdraw its opinion until 2019. (Opp. at 21.) (*See* Compl. ¶¶ 72, 109.) In other words, the SEC does not dispute that the financial statements were deemed GAAP compliant at the time the auditor issued them. Yet the SEC fails to identify any precedent suggesting that an investment adviser can be found retroactively liable for a violation of Rule 206(4)-2, based on the SEC's own view that the advisers' funds were not compliant with GAAP. Accordingly, Count VII, and the associated aiding and abetting claim (Count IX) must be dismissed.

### IV. THE COMPLAINT FAILS TO ALLEGE THAT SBB LACKED ADEQUATE WRITTEN POLICIES AND PROCEDURES (COUNTS VIII, X)

The SEC's claim that SBB violated Advisers Act Rule 206(4)-7 simply repeats the statutory language, and fails to identify any inadequate policies and procedures, or allege their wholesale absence. (MTD at 23.) Curiously, the SEC responds that it "has alleged that SBB *did*

*not have* policies and procedures in place to prevent" the alleged violations, (Opp. at 22 (emphasis added)), but that allegation is not in the Complaint. The SEC then contradicts itself, arguing the Complaint details how the Valuation Policy, Investment Management Agreement and Operating Agreements were not properly implemented. But those allegations are not in the Complaint either, and the SEC cannot amend its Complaint in the Opposition. *See Thomason*, 888 F.2d at 1205.

Unlike here, SEC complaints alleging violations of Advisers Act Rule 206(4)-7 typically identify the specific policies and procedures that defendants failed to adopt and implement. *See, e.g.*, (Compl.), *SEC v. Commonwealth Equity Services, LLC*, No. 1:19-cv-11655-MPK, 2019 WL 3502789 (D. Mass. 2019); (Compl.), *SEC v. Temenos Advisory, Inc. and George L. Taylor*, No. 3:18-cv-01180-SRU, 2018 WL 3455974 (D. Conn. 2018). The absence of any such specific allegations in this case fails to satisfy the notice requirement of Federal Rule of Civil Procedure 8(a), and compels dismissal of Count VIII and the associated aiding and abetting claim (Count X).

## V. THE COMPLAINT FAILS TO ALLEGE THAT SBB AND MR. AVEN WILLFULLY FILED A FALSE FORM ADV (COUNT XI)

Advisers Act Section 207 makes it unlawful to willfully make any untrue statement of material fact in reports filed with the SEC. The Complaint's only mention of form ADV is that from 2014 to 2016, SBB's form ADVs falsely stated that the Funds' "financial statements were prepared in accordance with GAAP." (Compl. ¶ 87.) It adds that "Aven drafted, reviewed and signed the Forms ADV on SBB's behalf." (*Id.*) However, the D.C. Circuit Court of Appeals recently held that "willfulness" requires a finding that a defendant "intended to omit the material information from [] Forms ADV." (MTD at 25, citing *Robare Group Ltd. v. SEC*, 922 F.3d 468, 479 (D.C. Cir. 2019).) The Complaint makes no such allegation.

The SEC's only response is that it has adequately pled willfulness because the Complaint alleges that "Aven and Barnett both knew, or recklessly disregarded that SBB's model was not

-14-

designed to generate exit prices for the Funds' notes." (Opp. at 21.) For reasons discussed in Section I, *supra*, and in the MTD, the SEC has not adequately pled that allegation. But even if it had, there still is no allegation in the Complaint that Mr. Aven or SBB *willfully* intended to omit material information from SBB's form ADV. Accordingly, Count XI must be dismissed.

## VI. THE AIDING AND ABETTING CLAIMS MUST BE DISMISSED (COUNTS IX, X)

The SEC does not even bother to respond to Defendants' argument that the Complaint fails to allege that Dr. Barnett and Mr. Aven aided and abetted SBB's liability. (*See* MTD at 24.) But as Defendants have argued, apart from the absence of any alleged underlying violations of Advisers Act Rules 206(4)-1, 206(4)-2 or 206(4)-7, the Complaint fails to allege that either Dr. Barnett or Mr. Aven acted with scienter with respect to these alleged violations, or that they provided substantial assistance, which are necessary elements of aiding and abetting liability. *See SEC v. Benger*, 697 F. Supp.2d 932, 938 (N.D. Ill. 2010). In light of these glaring deficiencies, the aiding and abetting claims in Counts IX and X must be dismissed.

## CONCLUSION

For the foregoing reasons, and those asserted in their MTD, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: January 27, 2020                    Respectfully submitted,

By: /s/ *Howard J. Rosenburg*
Howard J. Rosenburg (6256596)
Kopecky Schumacher Rosenburg LLC
120 N. LaSalle, Street, Suite 2000
Chicago, IL 60602
Tel. 312-380-6631
hrosenburg@ksrlaw.com
*Counsel for Defendants*

By: /s/ *H. Gregory Baker*
H. Gregory Baker (*pro hac vice*)
Rachel Maimin (*pro hac vice*)
Alexandra Droz (*pro hac vice*)
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
Tel. 212-262-6700
hbaker@lowenstein.com
rmaimin@lowenstein.com
adroz@lowenstein.com
*Counsel for Defendants*