## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

_____

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

        v.

SBB RESEARCH GROUP, LLC,
SAMUEL B. BARNETT, and
MATTHEW LAWRENCE AVEN,

          Defendants.

_____

:
:
:
:
:
:
:
:
:
:
:
:
:
:

**CASE NO. 19-cv-6473**

**Hon. Sharon Johnson Coleman**

## PLAINTIFF SEC'S RESPONSE TO DEFENDANTS'
## MOTION FOR PROTECTIVE ORDER

Defendants' motion for a protective order is peculiar. Defendants ask this Court to shield them from an informal, pre-Answer discovery process that they requested. And, in an audacious twist, Defendants claim they should be relieved from discovery because they haven't filed their Answer yet. This Court should not indulge such gamesmanship.

In April, the Defendants invited the SEC to join in mutual, informal discovery while their Motion to Dismiss the SEC's Complaint is pending. Although the SEC was willing to wait for resolution of the Defendants' Motion to Dismiss before initiating discovery, it accommodated their request. Relying on Defendants' promise of fair, mutual discovery, the SEC provided them with extensive information supporting its fraud claims against Barnett, Aven, and SBB Research Group, LLC ("SBB"). But – now that it's time to respond to requests for admission ("RFAs") related to the allegations of the Complaint – Defendants apparently regret their decision to pursue informal discovery.

In seeking a protective order, Defendants accuse the SEC of using RFAs as a "backdoor method of obtaining an answer to the Complaint;" they even prepared a chart comparing certain RFAs to the Complaint, as if they had uncovered something nefarious. (Def. Br. 6-8.) But, there's nothing "backdoor" or devious about the SEC's requests; the RFAs track the language of the Complaint by design. As the SEC has repeatedly told Defendants, because no Answer has been filed the SEC needs to use RFAs to determine which of its allegations are admitted, and which are in dispute. Any other approach would – by definition – be a one-sided process where the Defendants are free to explore the factual bases of the SEC's allegations while the SEC is forced to fly blind. In short, if Defendants wanted to keep their legal positions a secret until their Answer is due, they should not have asked the SEC to begin discovery before their Motion to Dismiss is resolved.

Perhaps realizing the unfairness of their position, Defendants – for the first time – argue in their motion that an unidentified subset of the SEC's RFAs are "individually objectionable" due to argumentative language. (Def. Br. 8-10.) However, Defendants do not identify which of the SEC's RFAs they are objecting to. They provide only three examples. At the outset, it is unclear why Defendants cannot address their concerns by admitting that portion of the RFAs they can and then either qualifying or denying the rest as required by FRCP 36(a)(4). In any event, these last minute "individual objections" are not ripe for decision and should be rejected under LR 37.2 because Defendants never bothered to confer with the SEC to discuss the language they now find objectionable.

Defendants have a clear choice. If they want to continue engaging in discovery in advance of the Court's ruling on their Motion to Dismiss, they must answer the SEC's RFAs and take a position on the SEC's allegations. Or, if they don't want to disclose their

positions regarding the SEC's allegations, they can abandon the Parties' agreement and suspend discovery until a scheduling order is in place. Either way, Court intervention in a dispute about the Parties' informal discovery process is not necessary and a protective order is not warranted.

## PROCEDURAL BACKGROUND

On September 30, 2019, the SEC filed its Complaint alleging that Defendants Barnett, Aven, and SBB engaged in a multi-year fraudulent scheme to manipulate the net asset value of securities held by investors in the Funds that SBB managed. (*See* Dkt #1.) In summary, the Complaint alleges that Barnett, Aven, and SBB rigged SBB's valuation model (the "Model") to inflate the Funds' performance. (*Id.* ¶¶ 33-62.) As part of that fraud, Barnett, Aven, and SBB: (1) repeatedly lied to investors and SBB's auditor, falsely claiming that SBB had valued the Funds' securities according to generally accepted accounting principles ("GAAP"), and (2) lied to prospective investors in marketing materials for its flagship fund, Polysight I, LLC. The SEC's Complaint contains 26 pages of detailed factual allegations and sets forth 11 separate counts alleging violations of federal securities law.

Rather than filing an Answer, Defendants moved to dismiss the Complaint. (Dkt. #22.) In light of the Defendants' motion to dismiss, the Court did not enter a discovery schedule, but stated that the Parties could engage in informal discovery while the motion is pending. (Dkt. #19.) The Court allowed the Parties to determine what such discovery might entail.

On March 4, 2020, Defendants approached the SEC, requesting that the Parties begin mutual, informal discovery. While discussing this proposal, counsel for the SEC warned Defendants that – because they had not yet answered the Complaint or raised any

affirmative defenses – the SEC would need to identify the Parties' factual and legal disputes as part of any discovery. On March 6th, the Defendants and the SEC agreed to a framework for informal discovery.

On April 7 and 8, 2020, the SEC and Defendants exchanged written discovery requests, which included requests for production and interrogatories. The SEC also served Defendant Aven with a set of 54 RFAs. The SEC followed up with additional requests, including: (1) an April 24th set of 107 RFAs directed to Barnett (Def. Br. at Ex. 1), and (2) a May 7th set of 200 RFAs directed to SBB (Def. Br. at Ex. 2). Most of the SEC's RFAs asked the Defendants to admit or deny facts described in the SEC's Complaint.

For almost a month after the SEC served its RFAs on Aven, the SEC heard no questions, concerns or objections. Suddenly, on May 12, 2020 – just one day before Aven was supposed to respond to the SEC's RFAs – Defendants (a) asked to meet and confer regarding the total number of the SEC's RFAs and (b) asked for an extension of time for Aven's RFA responses. (Ex. A at pp. 1-2.) While the SEC was willing to give Aven an extension to respond to the RFAs, the SEC suspected that Aven did not need any extra time. Rather, the SEC suspected that Aven would – at the last minute – refuse to submit his response and instead try to join his co-Defendants' objection that the SEC's RFAs were too numerous in the aggregate. Accordingly, the SEC warned Defendants that, while it was willing to offer an extension so Aven could complete his responses, it was not willing to allow him to delay "if [he is] withholding today's responses … pending resolution of this morning's objection related to whether the SBB RFAs exhaust some undefined cumulative limit of RFAs." (Ex. B.) The SEC reiterated that Defendants' objection was contrary to the Federal Rules of Civil Procedure and the Parties' agreement to informal discovery. (*Id.*)

Defendants promptly confirmed the SEC's suspicions. In an e-mail sent just hours before Aven's responses were due, Defendants admitted that Aven had asked for an extension to piggy-back onto his co-Defendants' objection regarding the cumulative number of RFAs the SEC had propounded:

> We did not believe that 54 requests to Matt [Aven] was excessive. We do believe that a total of 361 requests, along with the type of many of the requests, are excessive in this case. (Ex. C.)

Nevertheless, unable to articulate any other objection, Aven relented and submitted his RFA responses later that same evening. Although the SEC's RFAs to Aven largely tracked the allegations of the Complaint, Aven evidently understood the SEC's RFAs and was able to admit or deny each of them. (*See* Ex. D.) Aven did not object that (a) the SEC's RFAs forced him to answer allegations in the Complaint, or (b) the language of the SEC's requests rendered a response unduly burdensome. (*See id.*)

While <u>Aven</u> had no difficulty responding to the SEC's RFAs, Defendants Barnett and SBB did not abandon their novel objections. In a May 14th telephone conference about the SEC's RFAs to Barnett and SBB, Defendants argued that: (a) RFAs were not an appropriate means of seeking discovery; (b) the combined number of RFAs served on Barnett and SBB was excessive; and (c) the SEC's requests improperly required Barnett and SBB to admit or deny facts alleged in the SEC's Complaint. Significantly, Defendants did <u>not</u> object to the language of the RFAs or argue that any specific RFA was "individually objectionable." Instead, Defendants suggested that their concerns could be resolved if the SEC simply cut the <u>number</u> of RFAs down to 50 for each Defendant.

The SEC responded that: (a) Rule 36 did not place any limit on the number of requests for admission which could be served on a Defendant (much less a combined limit

for all Defendants); and (b) RFAs are an appropriate method of narrowing the Parties' factual disputes, especially where, as here, the Defendants had not yet answered the Complaint. To address any claim of "undue burden," the SEC proposed a significant extension of time for Barnett to answer the pending RFAs, and agreed to hold SBB's responses in abeyance until after the Parties reconsidered their positions and held another conference.

After eleven days without responding to the SEC's proposed compromise – and, once again, on the eve of their response deadline – Defendants rejected the SEC's proposal, stating that they "should not be forced into answering the complaint when there is no requirement to do so." (Ex. E at p.2.) On May 26, 2020, the SEC advised Defendants that their refusal to allow discovery into their factual and legal positions amounted to a withdrawal from the Parties' agreement to mutual, voluntary discovery. (Ex. E.) Later that same day, Defendants filed their motion for a protective order. (Dkt. #30.)

## DISCUSSION

**The SEC's RFAs are a Proper Method Of Narrowing The Disputes in This Case:**

As Defendants point out (Def. Br. 5), requests for admission are designed to narrow the scope of legal and factual disputes before summary judgment or trial. *See, e.g., Scandaglia v. Transunion Interactive, Inc.*, 2010 WL 317518, \*5 (N.D. Ill. Jan. 21, 2010). As envisioned in the Federal Rules of Civil Procedure, "[d]iscovery involves both uncovering facts … and also seeking admissions as to whether certain facts are true or not." *Braun v. Village of Palantine*, 2020 WL 1888914, \*1 (N.D. Ill. April 16, 2020). Rule 36 is focused on the latter. RFAs are tailor-made to provide binding, self-executing admissions or denials of the

outstanding factual allegations in this case. This is precisely why the SEC propounded RFAs that track the language of the Complaint.

Contrary to Defendants' brief, an Answer serves much the same purpose as an RFA response. Ordinarily, Defendants' Answer would have been the SEC's first opportunity to obtain admissions and determine the scope of the disputes in this case. Much like RFA responses, Defendants' Answer would have shown which of the SEC's allegations they deny, and which allegations they admit (thereby narrowing the disputes at hand). *See Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005) (holding that answers to factual allegations in the complaint "constitute[] a binding judicial admission" thus removing the related allegation "from contention" for purposes of summary judgment).

But, Defendants wanted discovery from the SEC <u>before</u> filing their Answer. So, rather than fumble along, without knowing Defendants' legal and factual positions in this case, the SEC propounded RFAs. Absent an Answer, RFAs are the most direct and efficient means for the SEC to determine which of its allegations are in dispute and which are not. Proper responses from the Defendants would likely have taken a number of potential factual disputes off the table, and would have allowed the SEC to focus future discovery efforts on Defendants' basis for denying facts at the core of the SEC's fraud charges.

This case is particularly well-suited to requests for admission because there appear to be relatively few disputes about <u>what</u> the Defendants did.[1] This is unsurprising: most of the key facts supporting the SEC's fraud charges came from Defendants' own testimony during the investigation. Aven's RFA responses demonstrate how the SEC's use of RFAs has

---

[1] Rather, it appears that most of the disputes in this case center around: (1) whether Defendants' custom valuation Model violated GAAP, (2) if so, whether Defendants' misconduct was material, and (3) whether Defendants acted with *scienter*.

meaningfully reduced the number of factual disputes in this case. Aven either partially or fully admitted 39 of the 54 requests that were sent his way -- even though most of the requests were directly related to the factual allegations of the Complaint. (*See* Ex. D.)

Among other things, Aven admitted that:

- Before being hired by SBB and helping create its valuation Model, Aven had no experience (a) "creating, modifying, testing, or implementing a valuation model for options or structured notes," or (b) "interpreting or applying" GAAP (*id.* at #2, 4-6);

- Aven was responsible for: (a) ensuring that SBB's policies complied with federal securities law, and (b) reviewing and approving SBB's marketing materials to ensure they didn't include any false statements (*id.* at #8-11);

- Aven reviewed and approved, (a) SBB's Form ADV, (b) the Funds' 2014 and 2015 financial statements, and (c) marketing materials for Polysight I, LLC -- all of which the SEC alleges contained fraudulent statements (*id.* at #12, 14, 40, 44);

- SBB's accountant was not hired to "opine or advise on the creation of the Model," its outside auditor was not involved in the creation of (or alterations to) the Model, and its outside compliance consultant did not provide any advice regarding whether the Model complied with GAAP (*id.* at 19-20, 22, 24-25);[2] and

- Aven reviewed and signed two management representation letters to SBB's auditor (which the SEC alleges fraudulently concealed concerns the SEC had expressed regarding defects in SBB's valuation Model) (*id.* at #35-39).

In light of Aven's responses, it appears that Barnett and SBB are less concerned about their ability to respond to the SEC's RFAs, and more concerned that they would have to admit the lion's share.

A truly mutual discovery process would allow the SEC to determine which of the facts in its Complaint are disputed and which are not. As an Answer has not yet been filed,

---

[2] This admission undermines Defendants' argument that – as the Model was created and implemented – these accountants and consultants provided contemporaneous advice regarding whether SBB's valuation methods complied with GAAP.

there is nothing improper about using RFAs to accomplish that goal. To the contrary, RFAs have proven to be the best way to determine the scope of the disputes remaining in this case.

**Defendants' Motion For Protective Order Is Part Of An Improper Effort To Shield Their Legal Positions From Discovery:**

Apparently, Defendants hoped that informal discovery would be a one-way street whereby: (a) the SEC would provide detailed disclosures regarding the basis for its fraud claims; but (b) Defendants could withhold information regarding their position on most of the SEC's allegations. Defendants' requests and responses have consistently applied that one-sided approach.

Defendants' discovery requests reveal the inequity of their discovery tactics and demonstrate how critical an initial pleading is to the discovery process. During voluntary discovery, Defendants have used a time-tested strategy – issuing discovery requests to probe the basis of the factual allegations and legal positions that the SEC staked out in its Complaint. Of Defendants' first 39 document requests to the SEC, 22 seek documents related to specific, quoted allegations in the SEC's Complaint. (Ex. F.) Similarly, 13 of Defendants' first 25 Interrogatories ask for the basis of specific, quoted allegations in the Complaint. (Ex. G.) In other words, Defendants have had no problem using the SEC's initial pleading to focus their discovery efforts on determining the basis for the SEC's allegations. The SEC should be allowed to do the same. Instead, now that it is time for the Defendants to reciprocate and stake out their position on the facts, Defendants ask the Court to intervene and preserve their one-sided advantage.

Similarly, Defendants' discovery responses reflect their self-serving view of discovery. In response to Defendants' broad contention interrogatories, the SEC did what the rules require – it provided 57 pages of detailed, narrative responses that clearly identified

the legal positions that the SEC is (and is not) taking. For example, Defendants propounded

the following catch-all contention interrogatory:

> "For each statute or rule that You allege Defendants violated, state the
> specific conduct that You contend violates that particular statute or rule and,
> where scienter is an element, state the specific conduct that You contend
> supports scienter."

The SEC responded with a four-page chart comprehensively identifying each alleged

statutory violation and linking each violation to specific misconduct. (Ex. H.) The SEC even

provided a three-page bullet point list of facts that support a finding that Defendants acted

with scienter. (*Id.*) But, when the SEC propounded a simple interrogatory asking SBB to

identify its affirmative defenses and the facts supporting those defenses, SBB refused to

answer, referred the SEC to <u>all</u> documents and testimony in this case, and called their

defenses "speculative" (despite the fact that they've known of the SEC's fraud charges for

over a year).[3] (Ex. I.) In short, Defendants preferred to keep their legal positions a secret.[4]

---

[3] The Defendants have known of the Division of Enforcement's concerns regarding SBB's valuation Model since October 2016 (when the SEC served an investigatory subpoena regarding the valuation Model). And, on March 19, 2019, the SEC formally notified the Defendants in a "Wells Notice" that it planned to bring fraud charges against them, and outlined the reasons why.

[4] Defendants suggest – without citing any supporting authority – that their one-sided approach to discovery is somehow justified by the fact that the SEC conducted a detailed investigation of its fraud claims against Barnett, Aven, and SBB. (Def. Br. 8.) That argument is baseless. "[T]here is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case." *SEC v. Saul,* 133 F.R.D. 115, 118 (N.D. Ill. 1990). The fact that the SEC thoroughly investigated its fraud claims against the Defendants "is not sufficient to deprive the SEC of the discovery to which it is otherwise plainly entitled under the Federal Rules of Civil Procedure, absent some showing of bad faith, harassment or legal impropriety." *Id.*; *see also SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) (holding that district court should not have prevented the SEC from obtaining discovery "merely because of its pre-filing investigation or information secured from the [related] criminal trials"); *SEC v. Softpoint Inc.*, 857 (S.D.N.Y. Mar. 20. 1997) (entering a preclusion order against Defendant, holding that his effort to manipulate discovery prejudiced the SEC and rejecting Defendant's argument that the SEC's prior investigation meant that the SEC had suffered no prejudice).

Defendants' request for a protective order is part of a larger, impermissible strategy: they hope to get as much discovery as possible from the SEC while keeping their legal and factual positions a mystery. This special treatment is contrary to both the Federal Rules of Civil Procedure and contrary to the agreement between the Parties. The Court should reject that strategy by denying Defendants' motion for protective order.

**<u>Defendants' Evolving Objections Are Meritless</u>**:

Defendants' basis for objecting to the SEC's RFAs has been a moving target. At first, Defendants objected to the <u>combined</u> "volume" of RFAs that the three Defendants received. (Ex. A at p. 2; Ex. C.) Without making any specific objections about the <u>contents</u> of the RFAs, Defendants claimed that the combined number of RFAs was "excessive." (Ex. C.) Defendants persisted in this objection even though the SEC offered to (a) extend the response deadline for Barnett and (b) hold its RFAs as to SBB in abeyance until after Barnett's responses were complete. Evidently, Defendants' concern regarding the volume of requests is still paramount: their 10-page brief makes <u>17</u> references to the number of RFAs the SEC has propounded, including one in the brief's title. Similarly, Defendants' proposed "compromise" suggests that their true concern remains the combined volume of RFAs. After all, Defendants never (a) raised any objections to the language of the SEC's RFAs or (b) proposed any changes to the scope or content of the requests. Defendants proposed only that the SEC reduce the <u>number</u> of requests propounded.

But, as Defendants grudgingly concede (Def. Br. 10), their initial objection to the "volume" of requests lacks any legal merit. Rule 36 does <u>not</u> purport to limit the number of RFAs that can be propounded on a <u>single</u> defendant – and certainly does not allow multiple defendants to <u>pool</u> their respective discovery obligations when objecting to RFAs. To the

contrary, "[n]o presumptive limit has ever been set on the number of requests [to admit] a party can propound." *Bonner v. O'Toole*, 2012 WL 6591720, at *4 (N.D. Ill. Dec. 18, 2012) (internal citation omitted). Rule 36 is worded broadly in recognition of the fact that RFAs are "efficient, inexpensive, and conclusive" and so should not be limited in number in the absence of "certain ... discovery abuse." *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 2008 WL 4542738 (N.D. Ill., June 11, 2008) (declining to find 4,638 RFAs excessive and instead focusing on content). Because RFAs "serve the highly desirable purpose of eliminating the need for proof of issues upon trial, there is strong disincentive to finding an undue burden where the requested party can make the necessary inquiries without extraordinary expense or effort." *Sun Elec. Corp. v. Allen Group*, 1985 U.S. Dist. LEXIS 22571 (N.D. Ill. Feb. 14, 1985). In fact, courts routinely allow parties to propound relevant RFAs far in excess of those at issue here.[5]

    None of the cases cited by the Defendants support the notion that timely and relevant RFAs are subject to a numerical limit. To the contrary, Defendants' cases merely show that in some cases litigants have used RFAs to circumvent local rules or discovery cutoffs, to seek information which is not relevant, or to abuse an opposing party. *See e.g., Joseph v. Conn. Depart. of Children and Families,* 225 F.R.D. 400 (D. Conn. 2005) (excusing defendant from responding to 163 RFAs served the day before the parties' discovery cutoff,

---

[5] *See, e.g., Bonner*, 2012 WL 6591720 at *4 (finding a set of 246 RFAs was not unreasonable in quantity); *Banks v. Patton*, 2016 WL 29600, *1 (E.D. Wis. Jan. 4, 2016) ("The court does not find 136 individual requests ... to be excessive, and the defendants fail to identify any decisions indicating as much"); *BP Amoco Chem. Co.*, 2008 WL 4542738 at *2 (declining to find 4,638 requests for admission excessive and instead focusing on content); *Sequa Corp. v. Gelmin,* 1993 WL 350029, *1 (S.D.N.Y. Sept. 7, 1993) (denying protective order regarding 1,441 RFAs, noting that "[a]lthough it is true that the requests encompass many separate items, this is a function of the fact that the issues in this case encompass a large number of discrete financial transactions").

where relatively few of the RFAs were relevant to the parties' dispute); *Misco, Inc. v. U.S. Steel Corp.,* 784 F.2d 198 (6th Cir.1986) (affirming order excusing defendant from answering 1,440 RFAs, when all but 18 of those requests were actually interrogatories and the local rule limited the number of interrogatories to 30). [6] In sum, Defendants are inviting the Court to create an aggregate limit for RFAs without providing any legal predicate.

After the Parties scheduled a meet and confer, Defendants added a new wrinkle. Defendants objected that the RFAs were improper because they tracked the allegations of the Complaint. In other words, they were <u>too</u> relevant. As discussed above, that objection is meritless because given the lack of an Answer, serving RFAs was a completely appropriate method for determining the Defendants' position on the SEC's allegations.

Now, in their motion to the Court, Defendants, for the first time, state <u>content-based</u> objections to the SEC's RFAs. (*See* Def. Br. 8-10.) They claim that an unspecified number of RFAs are "individually objectionable" because the SEC's language is "inflammatory" and "vague." (Def. Br. 9.) Both the SEC and the Court are left to guess precisely which RFAs contain objectionable language, and what the specific objection might be. Defendants

---

[6] Defendants' remaining cases are equally unavailing. In *Phillips Petroleum Co. v. N. Petrochemical Co.,* 1986 WL 11004 (N.D. Ill. Sept. 29, 1986), Judge Duff found that 2,068 requests for admission were improper because they were designed to circumvent the Local Rule's limitation on the number of interrogatories. But, Judge Duff held that the number of requests for admission was not limited by Rule 36. If there had been a reasonable basis to believe that all of the RFAs were true -- and they were not an attempt to bypass the limitation on the number of interrogatories -- all of the requests might have been allowed. In *Sommerfield v. City of Chicago*, 251 F.R.D. 353 (N.D. Ill. 2008), Magistrate Judge Cole rejected the argument that 177 RFAs were excessive in number, abusive, or confusing. He noted that the number of requests was not excessive, since Rule 36 has no numerical limit, and that RFAs were a legitimate discovery device. But, he held that many of the disputed requests violated the district court's prior order to close discovery on a newly pleaded claim. Judge Cole required defendants to answer all of the remaining requests. In *Robinson v. Stanley,* 2009 WL 3233909 (N.D. Ill. Oct. 8, 2009), Magistrate Judge Cole noted that: "[p]roperly used, requests to admit serve the expedient purpose of eliminating the necessity of proving essentially undisputed issues of fact." Judge Cole excused defendants from responding to 90 interrogatories and "voluminous requests for admission" because they were issued without leave of court, after the court's discovery deadline had passed.

provide only three examples – Requests Nos. 40 and 50 to Barnett and Request No. 120 to SBB. Defendants argue that the words "never," "radically," and "ignored" are so inflammatory as to prevent them from admitting or denying those three requests. Fortunately, Rule 36 provides Defendants a solution. If they don't like the adjectives the SEC uses they can "specify the part admitted and qualify or deny the rest." FRCP 36(a)(4). Defendant Aven often used this technique in his responses. (*E.g.*, Ex. F at #3, 6, 8-10.) Defendants do not explain why they cannot do the same.

More importantly, Defendants failed to meet and confer with the SEC on these purported content-specific objections. *See Layne Christensen Co. v. Purolite Co.,* 2011 WL 382611 (D. Kan. July 20, 2013) (meet and confer rules require the parties to identify "what specific, genuine objections, or other issues, if any, cannot be resolved without judicial intervention"). Thus, to the extent that the Defendants move the Court to enter a protective order based on the language the SEC used in specific requests, that motion is improper under the meet and confer requirements of Local Rule 37.2. This is not a mere technicality. The SEC specifically asked Defendants to meet and confer regarding any content-specific objections to its RFAs. Had the Defendants done so, the SEC could have tried to come to an agreement regarding the intended scope of individual RFAs or modified the requests to address any *bona fide* concerns. As it stands, the SEC had no opportunity to address any objections to individual RFAs before Defendants asked for the Court to intervene. Defendants should not be rewarded for their haste.

## CONCLUSION

The Defendants' motion is the very definition of *chutzpah*. They asked the SEC to conduct discovery before the Court rules on their motion to dismiss. They insisted that the

SEC set forth the evidentiary bases for the allegations of its Complaint. But now that the SEC has asked them to take a position on the SEC's allegations, Defendants ask the Court to shield them from discovery because their motion to dismiss is still pending. While they may deserve credit for novelty, Defendants do not deserve relief from this Court.

Instead, Defendants must choose. They can either (a) break their agreement to conduct mutual, voluntary discovery and answer the SEC's RFAs once a discovery schedule is in place; or (b) answer the SEC's RFAs now and fulfill their end of the bargain. If the former, the Court should not be called on to provide an advisory opinion on which RFAs pass muster. If the latter, Defendants should either answer the RFAs as written or meet and confer to discuss any *bona fide* objections. Either way, this Court does not have to intervene in the Parties' voluntary discovery process and should not enter a protective order. Accordingly, the SEC respectfully requests that Defendants' motion be denied.

Respectfully Submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

Dated: June 23, 2020

By: *_/s/ Timothy S. Leiman_*
Timothy S. Leiman (Leimant@sec.gov)
Robert M. Moye
Kevin A. Wisniewski

Chicago Regional Office
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Telephone: (312) 353-7390

*Attorneys for Plaintiff*