UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) Plaintiff, ) ) ) v. ) ) SBB RESEARCH GROUP, LLC, ) SAMUEL B. BARNETT, and ) MATTHEW LAWRENCE AVEN, ) ) Defendant. ) | Case No. 19-cv-06473 Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Defendants Matthew Lawrence Aven, Samuel B. Barnett, and SBB Research Group, LLC's motion to dismiss [22] is granted as to Counts IX and X of the complaint and denied as to all other counts.

**Background**

The Court treats the following facts from the SEC's complaint as true for the purposes of ruling on a motion to dismiss. SBB Research Group, LLC, an Illinois limited liability company based in Northbrook, Illinois, is the registered investment adviser to a series of private funds. Barnett owns and controls SBB. As of December 31, 2018, SBB managed at least six private investment funds with approximately $407 million in assets raised from 64 investors. Samuel B. Barnett founded SBB in 2010. Since then, Barnett has been SBB's CEO, managing member, and sole owner. Matthew Lawrence Aven has been SBB's COO since 2011. Barnett and Aven managed the Funds' portfolio of investments, helped create SBB's valuation model, and reviewed and approved SBB's subscription documents.

1

This case arises out of allegations of a multi-year fraudulent scheme perpetrated by SBB, Barnett and Aven. The SEC has alleged that Barnett, Aven, and SBB intentionally rigged SBB's valuation model to inflate the recorded value of the Funds' securities and make the Funds' performance look much better than it actually was. Using those manipulated values, defendants reported inflated Net Asset Values ("NAVs") to investors, and created a false track record for the Funds which defendants marketed to prospective investors. The SEC further alleges that after it highlighted SBB's inflated valuations, SBB, Barnett, and Aven hid their misconduct from investors.

When Barnett initially founded SBB, the Funds were vehicles for investing his family fortune. Barnett raised hundreds of millions of dollars from friends and relatives (and himself). Thereafter, Barnett and Aven sought to expand the Funds by attracting outside investors. Barnett and Aven knew prospective investors wanted to see a track record of performance. To that end, SBB prominently displayed the Funds' "monthly fund performance" in its marking materials. All the while, that track record was based on the allegedly overinflated values.

SBB invested almost all of the Funds' money in structured notes, which are hybrid securities consisting of a debt obligation with an embedded derivative component. The SEC alleges that Barnett, Aven, and SBB consistently represented to the Funds' investors and SBB's outside auditor that they valued those structured notes at "fair value" as required by Generally Accepted Accounting Principles ("GAAP"). In other words, SBB promised to value each of the Funds' notes at an "exit price" (the price at which the notes could be resold to another party). The SEC now pleads that their model did not reflect the assumptions of market participants and was not validated by published academic research. Instead, the model was designed to get results that dovetailed with the defendants' subjective "intuition" regarding how the notes should be valued. Consequently, their calculations led to consistently higher note values than those yielded by more traditional models.

Those allegedly artificially inflated note values, and the resulting inflated Fund performance, (a) were included in performance statements and annual financial statements provided to investors, (b) generated $1.4 million in improperly charged fees, and (b) were included in misleading marketing materials given to prospective investors.

In 2014, SEC exam staff uncovered the model's deficiencies and communicated them to the company. Barnett, Aven, and SBB tried to find experts that would validate their model in response and found none.

The SEC alleges that eventually, when defendants agreed to remediate, they (a) hid the SEC's exam (and its findings) from the auditor, (b) paid a secret credit into investor accounts without disclosing to investors that they had been overcharged for fees due to SBB's flawed valuation process, and (c) failed to disclose to investors revised (and materially reduced) Fund values after SBB finally hired a third party to revalue the notes. The SEC pleads that even after its remediation, SBB continues to use two sets of books: one for its current investors (using their custom model) and a separate set for prospective investors (calculated using a more standard approach applied by a third party consultant). It should be noted the SEC alleges that after discovering that he was not made aware of the non-compliance of the valuation model, the outside auditor withdrew his opinions of compliance.

The SEC alleges that defendants engaged in this fraudulent scheme and they did so in order to artificially inflate the Funds' performance record. It alleges that by making material misrepresentations to investors about the value of the Funds' investments, Barnett, Aven, and SBB have violated (and/or aided and abetted violations of) Section 17(a) of the Securities Act of 1933 ("Securities Act"); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; Sections 206 and 207 of the Investment Advisers Act of 1940 ("Advisers Act")

and Rules 206(4)-1, 206(4)-2, 206(4)-7, and 206(4)-8 thereunder. Defendants now move to dismiss the complaint in its entirety.

### Legal Standard

When considering a Rule 12(b)(6) motion, the Court accepts all of the plaintiff's allegations as true and views them in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be more than speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

### Analysis

### I. Fraud Claims (Counts I–V)

Congress' objective in passing securities laws was "to [e]nsure honest securities markets and thereby promote investor confidence." *S.E.C. v. Zandford*, 535 U.S. 813, 819, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002) (quoting *United States v. O'Hagan*, 521 U.S. 642, 658, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997)). Rule 10b–5 and § 10(b) prohibit fraudulent conduct in connection with the purchase or

4

sale of a security. 17 C.F.R. §§ 240.10b–5(a), (b) & (c); 15 U.S.C. § 78j(b). Section 17(a) prohibits fraud in the offer or sale of securities, using the mails or the instruments of interstate commerce. 15 U.S.C. § 77q(a). Courts use "identical" standards for determining liability under §§ 17(a) and 10(b) and Rule 10b–5. *S.E.C. v. Sentinel Mgmt. Grp., Inc.*, No. 07 C 4684, 2012 WL 1079961, at *14 (N.D. Ill. Mar. 30, 2012) (Kocoras, J.); *see also Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530–32 (7th Cir. 1985). To establish a violation under these anti-fraud provisions, "the SEC must allege that the defendants (1) made a misstatement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities." *S.E.C. v. Sys. Software Assocs., Inc.*, 145 F.Supp.2d 954, 957 (N.D. Ill. 2001) (Bucklo, J.).

**A. Fact or opinion**

The first issue at hand is whether the alleged misstatements about SBB's compliance with GAAP are statements of fact or opinion. Defendants argue that under GAAP, the fair value of structured notes is not a statement of objective fact rendered by a rigid, standardized process, but is rather a statement of opinion. As such, defendants specifically argue, the Court should apply pleading standards for misstatements of fact, not opinion, as provided by *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186, 135 S. Ct. 1318, 1327, 191 L. Ed. 2d 253 (2015). Defendants' characterization is not consistent with the complaint.

The SEC has alleged that GAAP provides an objective standard for fair price valuation, which equals an exit price that could be found on the market and must to be calculated using standard assumptions and practices of market participants. It has further alleged that defendants either intentionally or recklessly deviated from that objective standard in order to generate higher values for the structured notes. GAAP are "a series of general principles followed by accountants." *United States v. Basin Elec. Power Coop.*, 248 F.3d 781, 786 (8th Cir. 2001). More specifically, GAAP "are the official standards adopted by the American Institute of Certified Public Accountants (the

5

'AICPA'), a private professional association, through three successor groups it established: the Committee on Accounting Procedure, the Accounting Principles Board (the 'APB'), and the Financial Accounting Standards Board (the 'FASB')." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 160 n. 4 (2d Cir. 2000). Courts have held that a company's misstatements of valuation in violation of GAAP can constitute a false or misleading statement of material fact. *See Takara Tr. v. Molex Inc.*, 429 F. Supp. 2d 960, 978 (N.D. Ill. 2006) (Castillo, J.) ("[A] company's overstatement of revenues in violation of GAAP can constitute a false or misleading statement of material fact necessary to establish securities fraud."); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 491 (S.D.N.Y. 2011), on reconsideration, No. 07 CIV. 10453, 2011 WL 4072027 (S.D.N.Y. Sept. 13, 2011), and on reconsideration, No. 07 CIV. 10453, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011) ("To the extent Bear Stearns knowingly used flawed [valuation] models that would produce unreliable and skewed results, or recklessly disregarded such flaws, the results produced by those models and reported to investors are actionable misstatements"). Thus, the alleged misstatements related to the overvaluation of structured notes in violation of GAAP are not allegations of misstatements of opinion, but are rather allegations of misstatements of fact. Accordingly, the Court need not apply the *Omnicare* factors that defendants enumerate. 575 U.S. at 186, 135 S. Ct. 1318.

**B. Fraud claims plead with particularity and "maker" of each statement**

Defendants argue that the fraud claims must be dismissed for the failure to sufficiently delineate which defendant made each misstatement, instead of combining the misstatements as a unit. Pursuant to Rule 9(b), pleadings must be specific enough to provide adequate notice to defendants of the claims against them. *S.E.C. v. Steffes*, 805 F. Supp. 2d 601, 608 (N.D. Ill. 2011) (Dow, J.). Separately and more specifically, defendants argue that because the complaint does not identify the "maker" of each misstatement, claims under Section 10(b) of the Exchange Act and

Rule 10b-5 should be dismissed. While the SEC must identify the "maker" of a misstatement, more than one person can be the maker. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 131 S. Ct. 2296, 2302, 180 L. Ed. 2d 166 (2011) ("For Rule 10b-5 purposes, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it"); *Carpenters Pension Tr. Fund of St. Louis, St. Clair Shores Police & Fire Ret. Sys. v. Barclays PLC*, 56 F. Supp. 3d 549, 558 (S.D.N.Y. 2014). Additionally, a person who drafts and signs a misstatement is a maker under *Janus*. *See Sec. & Exch. Comm'n v. Sayid*, No. 17 CIV. 2630 (JFK), 2018 WL 357320, at *5 (S.D.N.Y. Jan. 10, 2018).

In its complaint, the SEC has alleged that Barnett, Aven, and SBB created and used a valuation model designed to inflate the valuation of a series of private funds managed by the company. Barnett, Aven, and SBB made material misrepresentations to investors and SBB's auditor by falsely claiming that SBB had valued the Funds' securities according to GAAP. In so doing, the SEC alleges the defendants ignored the GAAP standards by which notes should be valued. It further claims that defendants were put on notice of their failure to value the funds properly under GAAP, which resulted in them overcharging investors fees and inflated fund performance over the course of five years.

As to specific statements made by each defendant, several examples demonstrate that the SEC has provided enough detail to bypass the motion to dismiss stage and identifies the maker of its alleged misrepresentations. The SEC alleges that the Funds' 2014 and 2015 audited financial statements that SBB provided to investors falsely represented that the Funds record their investments at fair value as defined by ASC 820 and that they were materially misstated. It further alleges that Aven was responsible for the content of the financial statements and that he reviewed and approved the financial statements and distributed them to investors through SBB's internet portal. The complaint alleges that both Barnett and Aven made written statements by signing a

7

letter to SBB's auditor in which they falsely stated that SBB has fulfilled its obligations under GAAP and that no regulatory agency has expressed concern over noncompliance and by signing the Management Agreements and Operating Agreements specifying that valuation and books of account would be determined in accordance with GAAP. Finally, the SEC alleges that both Barnett and Aven provided information to be included in the marketing materials for Polysight and gave final approval of the materials.

Accordingly, the complaint is pleaded with particularity and the SEC has sufficiently identified the maker of its alleged misstatements.

## C. Scienter

Defendants argue that the claims under Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder, (Count I), Section 17(a)(1) of the Securities Act (Count II), and Section 206(1) of the Advisers Act (Count III) should be dismissed because the SEC has failed to plead scienter. Courts in this district have defined scienter as encompassing: either a mental state embracing an intent to deceive, manipulate or defraud, or reckless acts that are "not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *United States Sec. & Exch. Comm'n v. Ustian*, 229 F. Supp. 3d 739, 774 (N.D. Ill. 2017) (quoting *S.E.C. v. Randy*, 38 F.Supp.2d 657, 670 (N.D. Ill. 1999) (Ellis, J.). In SEC enforcement actions, Rule 9(b) allows mental states to be alleged generally, yet there must still be some basis for believing the plaintiff could prove scienter. *S.E.C. v. Steffes*, 805 F.Supp.2d 601, 616 (N.D. Ill. 2011) (Dow, J.). The SEC has alleged that defendants knew, or recklessly disregarded, that their model was not valuing the Funds' notes at fair value as required by GAAP. The SEC has additionally alleged that defendants actively tried to hide their misconduct by lying to SBB's auditor, secretly refunding overcharged fees, and refusing to revalue the Funds' historical

NAVs, supporting these allegations with its factual allegations about defendants' actions. The SEC's scienter allegations are further supported by allegations that defendants were acting, at least in part, out of a desire to enrich themselves. The Court finds that the SEC's allegations are sufficient to support its allegations of defendants' scienter.[1]

**D. Materiality**

Defendants argue that the fraud claims should be dismissed because the SEC fails to allege materiality. A fact or omission is material if a reasonable purchaser or seller would rely on it to make a transaction. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231, 108 S. Ct. 978, 983, 99 L. Ed. 2d 194 (1988) ("[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available"); *Ustian*, 229 F. Supp. 3d at 765. Materiality is "an inherently fact-specific finding." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 131 S.Ct. 1309, 1318, 179 L.Ed.2d 398 (2011) (quoting *Basic*, 485 U.S. at 236, 108 S.Ct. 978). Assessing materiality is for the trier of fact and "rarely appropriate at the summary judgment stage, let alone on a motion to dismiss." *S.E.C. v. Buntrock*, No. 02 C 2180, 2004 WL 1179423, at *4–5 (N.D. Ill. May 25, 2004) (Andersen, J.) (collecting cases). At this stage, therefore, the Court assesses whether the complaint alleges enough facts to show that discovery will reveal evidence satisfying the materiality requirement. *See Ustian*, 229 F. Supp. 3d at 765 (quoting *Matrixx Initiatives, Inc.*, 131 S.Ct. at 1323).

In alleging that defendants misled investors by hiding critical information about SBB's

---

[1] Defendants separately argue that even though negligence is sufficient to support claims under Sections 17(a)(2) and (3) of the Securities Act, and Sections 206(2) and (4) of the Advisers Act, including Rule 206(4)-8 thereunder, because the Complaint fails to plead any facts suggesting defendants were negligent, those claims cannot stand alone and must be dismissed. Having found that the SEC adequately alleges scienter, it follows that the complaint also alleges the less onerous standard of negligence. *United States Sec. & Exch. Comm'n v. Kameli*, No. 17 C 4686, 2020 WL 2542154, at *19 (N.D. Ill. May 19, 2020) (Gottschall, J.) (finding the same); *United States Sec. & Exch. Comm'n v. Wey*, 246 F. Supp. 3d 894, 913 (S.D.N.Y. 2017) ("[B]ecause the Court finds that the SEC has properly plead the higher standard of scienter in connection with its misrepresentation claim, Uchimoto's motion to dismiss the Section 17(a)(2) claim for a failure to plead negligence is denied."). Therefore, defendant's separate argument that the negligence claims cannot stand alone is rejected.

valuation process. Namely, SEC contends that investors were never told that (a) SBB did not value the Funds' notes at fair value; (b) the SBB model artificially inflated the value of structured notes for five years; (c) SBB revised the Funds' NAVs for the time period 2011 through 2015; (d) the Funds' past monthly, year-to-date, and lifetime performance substantially decreased; (e) the Funds' prior audited financial statements included materially inflated assets and NAVs, and (f) SBB overcharged the Funds over $1,400,000 for a period of five years. The SEC specifically alleges that defendants improperly collected fees based on misinformation of the Funds' values, and then covered up all of the above. Moreover, the SEC provides concrete examples of how note overvaluations became apparent once SBB implemented a GAAP-compliant model: (1) note marks for notes held by one of SBB's Funds, Polysight, declined by 5-11%; (2) Polysight's two year cumulative return for 2014 and 2015 declined by 12.37%, (3) Polysight went from a return of 13.04% during that period using SBB's rigged model to a .67% return using the new model, and (4) in the 2014 and 2015 financial statements for the Funds, every Fund but one had its NAV overstated by at least 5%. The Court finds that at the very least, the SEC has alleged enough facts to show that discovery will reveal evidence satisfying the materiality requirement.

Accordingly, the Court denies defendants' motion to dismiss as to Counts I-V.

**II. Advertisements of Polysight Fund (Count VI)**

Defendants argue that the Court should dismiss Count VI of the complaint, which alleges violations of Section 206(4) of the Advisers Act and Advisers Act Rule 206(4)-1. Defendants argue that the facts alleged in the complaint as to that claim are not true and as such, the Court should dismiss Count VI. Defendants have attached a Polysight fact sheet in support of their factual defense, but the Court declines to address this issue at this point. The complaint references not only the fact sheet, but other related marketing materials in making their allegations in Count VI, which

defendants have not attached to their motion to dismiss. The Court finds that this factual argument will be best suited for a motion after discovery is completed. Thus, the court denies defendants' motion to dismiss as to Count VI.

### III. Rule 206(4)-2 Claim (Count VII)

Defendants argue that the Complaint fails to allege that SBB violated Rule 206(4)-2 from 2013 to 2016 by distributing financial statements to investors that were not prepared in accordance with GAAP. Defendants argue the complaint is deficient because Rule 206(4)-2 cannot be violated retroactively—the auditor found them compliant at the time and only withdrew his opinions in 2019. The incantation of fraud-by-hindsight, however, will not defeat an allegation of misrepresentations and omissions that were misleading and false at the time they were made. *See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F.Supp.2d 474, 494–495 (S.D.N.Y.2004) (rejecting defendants' fraud-by-hindsight claim where plaintiffs' allegations that "the company failed to take into account information that was available to it" at the time it issued its incorrect financial results sufficiently pleaded fraud). The complaint expressly alleges that SBB's 2014 and 2015 financial statements did not comply with GAAP at the time they were filed. The SEC provides allegations of the auditor's withdrawal of his opinions as evidence of their claim, but they also allege throughout the complaint that SBB's valuation model violated GAAP and resulted in inflated values for the structured notes at the time of the filings. Accordingly, defendants' motion to dismiss Count VII is denied.

### IV. Rule 206(4)-7 adequate written policies and procedures (Counts VIII AND X)

Defendants argue that the SEC's claim for a violation of Rule 206(4)-7 repeats statutory language in conclusory fashion and fails to identify any of SBB's written policies or procedures, or how they were purportedly not reasonably designed to prevent a violation.

The Investment Advisers Act of 1940 (Advisers Act) makes it unlawful for "any investment adviser" to "employ any device, scheme, or artifice to defraud any client or prospective client" or to "engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b–6(1), (4). To implement these prohibitions, the SEC requires investment advisers to "[a]dopt and implement written policies and procedures reasonably designed to prevent violation[s]" of the Advisers Act. 17 C.F.R. § 275.206(4)–7(a). The SEC alleges that SBB had no such written policies or procedures to prevent violations. The SEC can hardly give more detail about documents it claims do not exist. Defendants have been sufficiently put on notice regarding this claim and their motion to dismiss Counts VIII and X is denied.

## V. Aiding and abetting liability (Counts IX AND X)

The Complaint alleges that Barnett and Aven aided and abetted SBB's violations of Section 206(4) of the Advisers Act, and Rules 206(4)-1 and 206(4)-2 thereunder, and that Aven aided and abetted SBB's violations of Section 206(4) of the Advisers Act, and Rule 206(4)-7 thereunder. Defendants argue that the claim should be dismissed because the complaint fails to allege an underlying violation, fails to allege that either Barnett or Aven provided substantial assistance to SBB in its primary violations, and fails to allege scienter. The SEC has not responded to the defendants' argument and does not even reference its aiding and abetting claims in its response brief. The SEC's failure to reference, let alone defend, Counts IX and X operates as an abandonment of that claim and a forfeiture of any argument opposing dismissal. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n. 1, 721 (7th Cir. 2011); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) (Castillo, J.). Accordingly, the Court dismisses with prejudice the SEC's aiding and abetting claims, Counts IX and X.

**VI. Willful false statement in form ADV (Count XI)**

Defendants argue that Count XI should be dismissed because the SEC has not alleged willfulness—the SEC simply claims that the Forms ADV contained a false statement, but does not allege that SBB or Aven subjectively intended to make a material misstatement or omission on SBB's Forms ADV. Section 207 of the Advisers Act makes it unlawful for "any person willfully to make" material misstatements and omissions in applications and reports filed with the Commission under the Advisers Act. 15 U.S.C. § 80b-7. A finding of willfulness does not require intent to violate, but merely intent to do the act which constitutes a violation. *Wonsover v. SEC*, 205 F.3d 408, 413-15 (D.C. Cir. 2000). Aven signed the forms ADV on SBB's behalf and as previously discussed, the complaint sufficiently alleges scienter with respect to Aven's misrepresentation that SBB's valuations were GAAP compliant. The complaint further alleges Aven's statement that he did not consider accounting principles when creating the valuation model. Accordingly, defendants' motion is denied as to Count XI.

**Conclusion**

Based on the foregoing, defendants' motion to Dismiss [22] is granted as to Counts IX and X of the complaint and denied as to all other counts.

IT IS SO ORDERED.

Date: 10/15/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge