**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> SBB RESEARCH GROUP, LLC, SAMUEL B. BARNETT, and MATTHEW LAWRENCE AVEN, <br><br> Defendants. | Civil Action No. 1:19-cv-06473 <br> The Honorable Sharon Johnson Coleman, United States District Judge <br> The Honorable Sheila M. Finnegan, United States Magistrate Judge |

**DEFENDANTS' MOTION TO COMPEL PRODUCTION OF**
**DOCUMENTS AND INTERROGATORY RESPONSES**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

I.      PRELIMINARY STATEMENT AND BACKGROUND...................................................1

II.     THE SEC SHOULD BE COMPELLED TO PRODUCE THE REQUESTED
        DOCUMENTS AND INFORMATION ............................................................................3

        A.      Documents and Information Related to OCIE's Examination ...............................3

        B.      Documents and Information Related to RSM........................................................9

        C.      Other Relevant Interrogatory Requests...............................................................12

III.    LOCAL RULE 37.2 STATEMENT ...............................................................................14

IV.     CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Becker v. IRS*,
  34 F.3d 398 (7th Cir. 1994) ...................................................................................6

*Bond v. Utreras*,
  585 F.3d 1061 (7th Cir. 2009) ..............................................................................3

*Matter of Cont'l Ill. Sec. Litig.*,
  732 F.2d 1302 (7th Cir. 1984) ..............................................................................8

*EEOC v. Jewel Food Stores, Inc.*,
  231 F.R.D. 343 (N.D. Ill. 2005)...........................................................................13

*Evans v. City of Chicago*,
  231 F.R.D. 302 (N.D. Ill. 2005).........................................................................5, 6

*In re Folding Carton Antitrust Litig.*,
  76 F.R.D. 420 (N.D. Ill. 1977)........................................................................13, 14

*Gallagher v. Cannon U.S.A., Inc.*,
  No. 84 C 459, 1985 WL 2429 (N.D. Ill. Sep. 5, 1985)........................................8

*James v. Hyatt Regency Chicago*,
  707 F.3d 775 (7th Cir. 2013) ................................................................................4

*Kaufman v. City of New York*,
  No. 98CIV.2648(MJL)(KNF), 1999 WL 239698 (S.D.N.Y. Apr. 22, 1999)...........5

*Kodish v. Oakbrook Terrace Fire Prot. Dist.*,
  235 F.R.D. 447 (N.D. Ill. 2006)............................................................................3

*Mendez v. City of Chicago*,
  No. 18-cv-6313 2020 WL 4736399 (N.D. Ill. Aug. 14, 2020) .............................12

*Parmelee v. True*,
  No. 93 C 7362, 1999 WL 104713 (N.D. Ill. Feb. 25, 1999)................................6

*In the Matter of RSM US LLP (f/k/a McGladrey LLP)*,
  Exchange Act Rel. No. 86770 (Aug. 27, 2019)...................................................11

*In the Matter of RSM US LLP (f/k/a McGladrey LLP)*,
  Exchange Act Rel. No. 88287 (Feb. 26, 2020)....................................................11

*Rubin v. Islamic Republic of Iran*,
    349 F. Supp. 2d 1108 (N.D. Ill. 2004) ........................................................................3

*In re Sealed Case*,
    856 F.2d 268 (D.C. Cir. 1998) ..............................................................................5, 7

*SEC v. Bauer*,
    723 F.3d 758 (7th Cir. 2013) ....................................................................................2

*SEC v. Householder*,
    No. 02 C 4128, 2002 WL 1466812 (N.D. Ill. July 8, 2002) ......................................2

*SEC v. Sentinel Mgmt. Grp., Inc.*,
    No. 07 C 4684, 2010 WL 4977220 (N.D. Ill. Dec. 2, 2010) ..........................4, 5, 6, 7

*Tice v. American Airlines, Inc.*,
    192 F.R.D. 270 (N.D. Ill. 2000) ................................................................................3

*United States v. Dish Network, LLC*,
    297 F.R.D. 589 (C.D. Ill. 2013) ...............................................................................9

*US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
    No. 12 Civ. 6811, 2013 WL 5495542 (S.D.N.Y. Oct. 3, 2013) .......................13, 14

*Wisconsin Alumni Research Found. v. Apple, Inc.*,
    135 F. Supp. 3d 865 (W.D. Wis. 2015) ....................................................................9

## RULES

Fed. R. Civ. P. 26 ...........................................................................................................3, 13

Fed. R. Civ. P. 33(d) .........................................................................................................13

Defendants SBB Research Group, LLC ("SBB"), Samuel B. Barnett, and Matthew Aven collectively, "Defendants"), respectfully submit this memorandum of law in support of Defendants' motion to compel the Plaintiff Securities and Exchange Commission ("Plaintiff" or the "SEC") to produce certain documents, respond to certain interrogatories, and produce information sufficient to support privileges asserted over hundreds of withheld documents.

## I.      PRELIMINARY STATEMENT AND BACKGROUND

The SEC spent almost five years gathering information and documents regarding SBB and the independent auditor of its funds, RSM US LLP ("RSM"), including an almost two-year examination of SBB by the Division of Examination.  The SEC itself put the examination as well as RSM's audits at issue in this litigation.  Yet now that it is time for the SEC to provide discovery to Defendants, the SEC claims that discovery relating to these and other issues squarely raised in the SEC's own Complaint are irrelevant or subject to inapplicable governmental or other privileges.  The SEC wants to litigate its securities fraud claims on an uneven playing field, which this Court should not permit.

Specifically, the SEC alleges that SBB, an adviser to multiple investment funds, and its Chief Executive Officer Dr. Barnett and Chief Operating Officer Mr. Aven, used a model to value highly complex structured notes that did not reflect the fair value of those investments under Generally Accepted Accounting Principles ("GAAP").  The SEC alleges that the Defendants intentionally manipulated the model to inflate the value of these investments, and therefore caused improperly inflated fees to be charged to SBB's clients.  Several claims require proof of scienter, *i.e.*, that Defendants intended to deceive, manipulate, or defraud in creating and implementing this

model.[1]  *SEC v. Bauer*, 723 F.3d 758, 775 (7th Cir. 2013).  The SEC alleges that SBB's actions during and resulting from (1) an examination conducted from 2014-2016 by the SEC's Office of Compliance Inspections and Examinations ("OCIE") (now known as the SEC's Division of Examinations) and (2) RSM's audits support a finding of scienter.  *See* Compl. (Dkt. 1) ¶¶ 10-11, 63-73; Pl.'s Mem. In Response to Defs.' Mot. to Dismiss (Dkt. 24) at 4-5, 13, 15.

Defendants expect to show, to the contrary, that Defendants acted at all times in good faith and in reliance on their auditors at RSM and third-party compliance personnel.  Indeed, RSM tested and evaluated SBB's valuation model—including the specific assumptions that went into the model and the valuation estimates resulting from the model (all of which are at issue in this litigation)—and issued clean audits for SBB's funds.  RSM stood by the audits even after intense questioning of multiple RSM witnesses by the SEC's Division of Enforcement during on-the-record testimony.  Additionally, Defendants expect to show that their model rendered valuation estimates that were consistent with the fair value requirements of GAAP and that any alleged overstatement—if at all—was immaterial.

As detailed below, the discovery that Defendants seek relating to the OCIE staff's examination, RSM, and other issues go directly to the heart of the SEC's claims as well as the potential motives and bias of key witnesses.  The SEC's refusal to produce the documents and information hinders Defendants' ability to establish their defenses and call into question the SEC's positions with respect to the key valuation estimates, materiality, as well as Defendants' state of mind regarding the same.  Because the documents and information are squarely relevant to and

---

[1] Specifically, the SEC is required to prove scienter with respect to Count I (§ 10(b) of the Exchange Act, and Rule 10b-5 thereunder), Count II (§§ 17(a)(1)-(3) of the Securities Act), and Counts III (§ 206(1) of the Advisers Act).  *Bauer*, 723 F.3d at 768-69; *SEC v. Householder*, No. 02 C 4128, 2002 WL 1466812, at *7 (N.D. Ill. July 8, 2002), *report and recommendation adopted*, No. 02 C 4128, 2002 WL 31207292 (N.D. Ill. Oct. 1, 2002).

proportional to the needs of the case, and compliance with SBB's requests will not unduly burden the SEC nor infringe on any privileges, the SEC also cannot meet its burden to show that Defendants' requests are improper. Defendants respectfully request that the Court grant their Motion.

## II. THE SEC SHOULD BE COMPELLED TO PRODUCE THE REQUESTED DOCUMENTS AND INFORMATION

Discovery requests are liberally construed in order to enable the resolution of disputes. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("[T]he scope of discovery should be broad in order to aid in the search for truth") (citing *Tice v. American Airlines, Inc.,* 192 F.R.D. 270, 272 (N.D. Ill. 2000)); Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). Accordingly, the SEC has the burden "to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450 (citing *Rubin v. Islamic Republic of Iran,* 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004). This Court has broad discretion to decide motions to compel. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013) (stating that "district courts have broad discretion in discovery matters"). Because Defendants' Motion is narrowly tailored to discovery that is relevant, not privileged, and proportional to the needs of the case, Defendants respectfully request that this Court grant their Motion.

### A. Documents and Information Related to OCIE's Examination

Defendants have sought and the SEC has refused to provide substantial discovery relating to or created during the course of the OCIE staff's almost two-year examination of SBB from 2014-2016. Each issue with the examination-related discovery is addressed below.

1.    <u>The SEC's Privilege Log Is Insufficient to Sustain the Privileges</u>.  The SEC has asserted various privileges—the deliberative process privilege, law enforcement privilege, attorney-client privilege, and work product privilege—over hundreds of OCIE documents responsive to multiple discovery requests.[2]  The SEC bears the burden of establishing the asserted privileges, and the SEC's privilege log falls far short of the well-established requirements for assertion of these privileges.  *See SEC v. Sentinel Mgmt. Grp., Inc.*, No. 07 C 4684, 2010 WL 4977220, at *5 (N.D. Ill. Dec. 2, 2010).

To sustain a claim of deliberative process privilege or law enforcement privilege, the SEC must meet three procedural requirements: (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the matter; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving confidentiality of the documents in question (including why each document properly falls within the scope of the privilege); and (3) the official must specifically identify and describe the documents.  *See, e.g.*, *Sentinel*, 2010 WL 4977220, at *5 (addressing the deliberative process privilege); *In re Sealed Case*, 856 F.2d 268, 271-73 (D.C. Cir. 1998) (applying the requirements to the law enforcement privilege); *Kaufman v. City of New York*, No. 98CIV.2648(MJL)(KNF), 1999 WL 239698, at *5 (S.D.N.Y. Apr. 22, 1999) (counsel's assertion of privilege without affidavit by agency head or designee who reviewed each withheld document insufficient to sustain deliberative process privilege).  The SEC's privilege log does not reflect that an appropriate department head personally reviewed each of the documents withheld from production and it does not describe the precise reasons that confidentiality is required for each document.  *See Evans v.*

---

[2] *See* Request No. 1 (witness statements from the examination); Request No. 23 (documents concerning drafts of the March 2016 OCIE closing letter to SBB); Request No. 31 (documents and communications among SEC staff concerning the OCIE examination of SBB, OCIE's investigation of SBB, this litigation and the related investigations, litigation, and settlements concerning RSM).

*City of Chicago*, 231 F.R.D. 302, 318 (N.D. Ill. 2005) (finding a privilege log alone inadequate to sustain the burden even when, unlike here, an affidavit was provided stating that the privilege log was "true and correct").

Defendants did not receive a privilege log from the SEC until June 16, 2021. *See* Exhibit 6. After Defendants identified this and other issues relating to the SEC's privilege log (*see* Exhibit 7), the SEC agreed on June 29, 2021 to revise its log and produce additional documents. Defendants have not yet received such supplemental information or productions, but will continue to meet and confer with the SEC regarding the privilege assertions once the information is received. The parties have agreed to propose a briefing schedule that will allow Defendants to supplement this Motion to identify for the Court what issues remain once the SEC produces its revised log and produces additional documents. Given the deadline to file this Motion and Defendants' concerns regarding the assertion of the privileges, however, Defendants raise the following additional issues based on the information available at this time.

2.     The SEC's Privilege Assertions Appear to Be Overbroad.     Even without the required information to sustain the asserted privileges, the SEC's assertion of the deliberative process privilege appears to be sweepingly overbroad. The deliberative process and law enforcement privileges are not an excuse to avoid categories of discovery the SEC would prefer not to provide. Rather, the privileges operate to protect information that would chill candid deliberations in agency decision making or impede law enforcement investigations. *First*, the OCIE staff has no enforcement authority, and therefore there is no basis for the SEC to assert a law enforcement privilege over examination staff communications. *See* Compliance Examination Deficiency Letter Process, Audit No. 364, *available at* https://www.sec.gov/oig/reportspubs/ aboutoigaudit364finhtm.html. *Second*, the deliberative process privilege applies only to

documents and information that are both pre-decisional and deliberative. *Evans*, 231 F.R.D. at 316 (citing *Becker v. IRS*, 34 F.3d 398, 403 (7th Cir. 1994)).

As for the first prong of the privilege, the SEC must produce documents that include opinions or recommendations that the Commission ultimately adopted. *See Sentinel*, 2010 WL 4977220, at *5. Many documents on the log appear to fall into this category. Regarding the second prong, factual material that can be reasonably segregated from any deliberations must be produced. *Id.* at *3 ("Discussion of objective facts, as opposed to opinions and recommendations, generally is not protected by the deliberative process privilege."). Likewise, many documents on the log appear to be non-deliberative.

For example, the SEC has withheld and logged certain notes of SBB witness statements taken by non-attorney examination staff. *See* Exhibit 6, log entry 755. The SEC must produce these documents. *See Parmelee v. True*, No. 93 C 7362, 1999 WL 104713, at *1 (N.D. Ill. Feb. 25, 1999) (ordering production of witness statements because they were factual narratives rather than deliberations). The SEC withheld hundreds of documents *in full* and no documents were produced with redactions. (The SEC has since agreed to review the withheld documents for factual material that can be produced with any privileged information redacted.) Moreover, as detailed in Exhibit 6, Defendants have raised to the SEC substantial concerns regarding the SEC's identification of deliberative materials, which appears inconsistent among similar documents on the log and inconsistent with documents in the SEC's production.

3. <u>Privileges Are Not Absolute.</u> Even if the documents are work product or fall within the deliberative process or law enforcement privileges, the information that the SEC has failed to provide is important because these privileges are not absolute. *See, e.g.*, *Sentinel*, 2010 WL 4977220, at *4 ("The deliberative process privilege is not absolute."). Without the information

regarding the SEC's need for confidentiality, neither Defendants nor the Court is able to evaluate whether Defendants' particularized need for the documents outweigh any interest that the SEC can establish in confidentiality. *See, e.g.*, *In re Sealed Case*, 856 F.2d at 272 (identifying factors for balancing the interests).

Moreover, the SEC put the substance of the OCIE examination at issue, alleging that Defendants ignored examination staff's purported warnings to SBB about its valuation estimation model. To rebut that assertion, Defendants are entitled to explore the basis of the staff's purported warnings, whether they were well founded, and notes of how those purported warnings were planned and actually delivered. The OCIE staff also met with RSM during the heart of its examination of SBB, and before RSM issued some of the audits that are the subject of this litigation. Its documents regarding those communications are highly relevant. The OCIE staff's choice to—or not to—inform RSM about its view of the valuation estimation model has significantly impacted the course of events that have resulted in this litigation. The SEC cannot wield these facts affirmatively as a sword against Defendants and simultaneously shield those same facts from any disclosure. *See Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1315 n. 20 (7th Cir. 1984) (noting that privilege is waived when the content of the privileged communications is put at issue by the party asserting the privilege).

4.  The Exam Staff's Backgrounds and Qualifications Are Relevant. In Interrogatory No. 2, Defendants requested information regarding the background and qualifications of the exam staff who conducted the examination of SBB. The request is focused in particular on the staff's experience with structured notes and/or the relevant GAAP provisions (ASC 820 and FAS 157 (the precursor to ASC 820)). In response to this request that the SEC identify each employee that worked on the examination, including a list of prior examinations on which they worked, the

deficiencies identified in the resulting deficiency letters, and a list of any ensuing Division of Enforcement action, the SEC identified the employees but objected to responding to the other parts of the Interrogatory, on relevance grounds, burden, and overbreadth.  These examiners likely will be witnesses at trial (indeed, the Complaint relies on SBB's interactions with the examination staff to allege scienter), and Defendants are entitled to understand their background, credentials, and experience particularly with regard to the subject matter of the SEC's allegations.  *Gallagher v. Cannon U.S.A., Inc.*, No. 84 C 459, 1985 WL 2429 (N.D. Ill. Sep. 5, 1985) (ordering production of third-party resume).  The discrete nature of the requested information (*i.e.*, identifying the qualifications and relevant experience of certain of their own staff) renders compliance minimally burdensome on the SEC.  Plaintiff should be ordered to produce information in response to these Requests.

5.    <u>Documents Relating to Other Examinations on Key Issues Are Discoverable</u>. Finally, Defendants seek to compel production of documents in response to Request No. 32, which requests OCIE closing letters, responses, and related correspondence concerning the valuation of structured notes and the application of ASC 820.  The SEC objected on the basis of relevance, various privileges, and claimed that the request was overbroad and unduly burdensome.  The SEC is wrong.  The SEC is relying on its own examination staff's evaluation and views to claim the Defendants did not follow ASC 820.[3] Defendants are entitled to explore the basis of that contention, including the SEC's prior experience with ASC 820 and the positions it has taken in other examinations.  *See United States v. Dish Network, LLC*, 297 F.R.D. 589, 596 (C.D. Ill. 2013) (ordering disclosure of facts and data expert acquired when previously retained by the defendant

---

[3] Though the SEC likely will contend that it will now rely on expert testimony, the OCIE staff interacted with SBB and RSM during its examination, and the qualifications and experience of that staff that supported their views and what they chose to tell SBB and RSM are highly relevant.

but did not rely on in reaching expert opinions that concerned the same subject matter as the expert's prior retention); *see also Wisconsin Alumni Research Found. v. Apple, Inc.*, 135 F. Supp. 3d 865, 881 (W.D. Wis. 2015) (denying motion to exclude evidence of Apple's prior litigation positions). Defendants would be amenable to the SEC redacting or otherwise anonymizing other entity names to maintain confidentiality. But evidence of the SEC's views and interpretation of the key accounting and valuation standards at issue here are highly relevant to the defenses at issue here, and the SEC has not specifically articulated the burden it would bear in searching for and producing responsive documents. While the SEC points to the number of its staff and examinations to claim burden, the SEC could, for example, start by asking the staff who participated in SBB's examination as well as staff with particular expertise in valuation or ASC 820 if they are aware of responsive examinations. SBB understands that the SEC's responses will be limited to **reasonable** searches, but the SEC is refusing to do **any** searches for responsive documents.

### B.    Documents and Information Related to RSM

The SEC also improperly refuses to provide discovery relating to RSM despite making RSM a centerpiece of its own allegations. Defendants requested RSM witness statements to the examination and enforcement staff (Request No. 1); documents and communications relating to SBB between the SEC staff and RSM (Request No. 5[4]) and among SEC non-enforcement staff concerning RSM's own settlements with the SEC to the extent relating to RSM's audits of SBB's

---

[4] Request 5 is not specific to RSM but rather included multiple other key third parties including SBB's compliance consultant, which resigned from its engagement with SBB shortly after an informal interview with the SEC. As with RSM, SBB is entitled to discover the communications between the SEC and the compliance consultant, which is relevant to the motives of the firm in resigning and motives and biases of the individuals expected to be witnesses in this case. To the extent that the SEC has not produced all such responsive communications with the other requested third parties, SBB seeks to compel production of such documents as well.

funds (Request No. 31); and information regarding the communications between the SEC and RSM or its current or former employees concerning SBB (Interrogatory No. 25). The SEC objected on relevance grounds as well as various privileges. Defendants disagree that there is any basis to withhold the RSM information.

The SEC's own Complaint establishes the relevance of RSM and its settlements with the SEC. The Complaint has an entire section dedicated to RSM's resignation as SBB's auditor in 2019 and withdrawal of its prior audits. *See* Compl. (Dkt. 1) ¶¶ 108-12. The SEC likely will rely on SBB's interactions with RSM to argue that Defendants acted with scienter (*see, e.g.*, *id.* ¶ 71), and Defendants expect RSM witnesses to be a significant part of the SEC's case. But the SEC's allegations in the Complaint are not the complete picture, and Defendants are entitled to discovery as to the interactions between RSM and the SEC staff.

Throughout the SEC's examination and enforcement investigation of SBB, RSM stood by its audits affirmed the validity of its audits. Many RSM employees provided on-the-record investigative testimony to the SEC on the issues at stake in this litigation. Throughout the investigation, RSM continued to stand by its audits. RSM even issued two more sets of audits in April and May 2018, *after* the audit partner and other RSM audit personnel testified, heard the SEC's questions and concerns, and reviewed the SEC's exhibits.

Notably, circumstances changed in 2019. On March 5, 2019, the SEC issued Wells Notices to RSM and its audit partner, stating that the SEC's staff "has made a preliminary determination to recommend [to the Commission] that the [SEC] file an enforcement action" against RSM and its audit partner. Only weeks later, on April 12, 2019, RSM resigned from the SBB engagement and withdrew its prior audits. Then, less than two weeks after that, the RSM audit partner provided additional on-the-record investigative testimony to the SEC. Just a few months later, the SEC

announced a settlement with RSM over unrelated conduct. *In the Matter of RSM US LLP (f/k/a McGladrey LLP)*, Exchange Act Rel. No. 86770 (Aug. 27, 2019).

In February 2020, the SEC announced a second settlement with RSM, this time relating to SBB, alleging that RSM repeatedly violated professional standards in connection with its audits of SBB funds. *In the Matter of RSM US LLP (f/k/a McGladrey LLP)*, Exchange Act Rel. No. 88287 (Feb. 26, 2020). Yet the SEC imposed no penalty against RSM, only: (i) an undertaking and (ii) RSM's agreement to hire an outside consultant if necessary to perform the reviews required by the undertaking. The SEC also dropped its case against the audit partner (who is RSM's regional hedge fund and mutual fund leader), to whom the SEC staff previously issued a Wells Notice regarding its intent to recommend charges. As part of the settlement, RSM was required to cooperate with the SEC against SBB in this litigation.

Defendants submit that full discovery of RSM's *Wells* process and settlement negotiations with the SEC is highly relevant because it bears on the basis for RSM's change of heart as to SBB, which is at the core of the SEC's Complaint and the potential motives and biases of key witnesses in this case.

Finally, with respect to Interrogatory No. 25, Defendants are entitled to discover what communications the SEC had with RSM and when. The SEC has put RSM and its withdrawal at issue in this litigation and cannot at the same time prevent Defendants from discovering what communications it had with RSM about SBB. Even before RSM's withdrawal, the SEC had impactful communications with RSM's counsel that led RSM to take an extra year before issuing certain audits of SBB funds. Information about those communications is highly relevant, as it indicates the level of confidence RSM had in SBB's valuation estimation model and financial

information, as it issued the audits despite the increased SEC pressure and scrutiny (only to withdraw them a year later under threat of regulatory action).

The SEC should be compelled to identify and produce all of its communications with RSM (particularly RSM's counsel) regarding SBB. *See Mendez v. City of Chicago*, No. 18-cv-6313 2020 WL 4736399 (N.D. Ill. Aug. 14, 2020) (ordering plaintiff to respond to interrogatories seeking names and contact information of witnesses with factual knowledge of his allegation, and to identify anyone he communicated with concerning those allegations).

### C. Other Relevant Interrogatory Requests

In addition to the examination and RSM documents and information, Defendants seek an order compelling the SEC to provide answers to three additional interrogatories, as set forth below.

1. <u>Interrogatory No. 7</u>. Defendants served an Interrogatory asking the SEC to identify each SBB investor the SEC believes relied on the alleged misrepresentations made in SBB's marketing materials. The SEC objected on relevance grounds because the SEC need not prove actual reliance. The SEC ignores its own Complaint, which alleges that SBB made materially misleading statements to investors. *E.g.*, Compl. (Dkt. 1) ¶ 85. Defendants are entitled to discovery of which investors claim to have been materially misled. *See, e.g.*, *EEOC v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 350 (N.D. Ill. 2005) (granting motion to compel defendant to answer interrogatories seeking "to discover who has knowledge relating to the case, and to learn what it is that they know").

2. <u>Interrogatory No. 9</u>. Defendants served an Interrogatory asking the SEC to identify which SBB funds Plaintiff contends were overcharged as a result of SBB's valuation model, by how much, and during which time period. The SEC objected on the basis of the work-product doctrine, and stated under Fed. R. Civ. P. 33(d) the burden of determining the amount of the overcharge is equal on both parties. These objections sidestep the SEC's obligation to identify

and disclose the basis for *its own allegations* to enable SBB to mount its defense.  *US Bank Nat'l Ass'n v. PHL Variable Ins. Co*., No. 12 Civ. 6811, 2013 WL 5495542, at *3-4 (S.D.N.Y. Oct. 3, 2013) (requiring disclosure of the factual basis underlying a claim, including damages calculations); *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 431 (N.D. Ill. 1977) ("Discovery as to any permissible theory of damages is appropriate.").

It is not enough for the SEC to generally allege that SBB overcharged its clients.  The Complaint alleges that Defendants intentionally "inflat[ed] the recorded value of the Funds' securities" without identifying which of the funds that SBB advises gives rise to the claims, the time periods, and the amounts.  Complaint (Dkt. 1) ¶ 2.  To rebut the allegations, Defendants have a right to know which of the SBB funds the SEC contends were overcharged, and when.  These basic facts are not trial preparation material protected from disclosure under Rule 26; rather, the discovery seeks to clarify the SEC's own allegations.  Even if this Court agrees that the amount of the alleged overcharge is a topic for expert discovery, the identity of the SBB funds involved and the time period of the alleged overcharges are necessary for either Plaintiff's or Defendants' experts to evaluate that calculation.   Thus, Plaintiff should be ordered to respond to this Interrogatory.

3.      Interrogatory No. 11.   Defendants served an Interrogatory asking the SEC to identify the models described in Paragraph 8 of the Complaint that Plaintiff contends are "more traditional models," and to state whether such models are GAAP compliant and whether they would have been appropriate to value the SBB notes at issue.  The SEC objected, arguing that this Interrogatory sought premature expert discovery, also citing the work product doctrine.  As with Interrogatory No. 9, it is insufficient for the SEC to simply plead the existence of "more traditional models" and rely on forthcoming expert discovery to support that allegation.  Rather, Plaintiff

must identify the factual basis for that allegation, including any models on which the SEC based this characterization. *PHL Variable Ins. Co*., 2013 WL 5495542 at *3-*4; *In re Folding Carton Antitrust Litig.*, 76 F.R.D. at 431. To the extent that no such exemplar models exist, Defendants are entitled to that statement from Plaintiff. The SEC alleges that SBB's model did not reflect fair value, in a manner that deviated from standard practice. Defendants are entitled to discovery about the standards that the SEC was referencing in its own Complaint. As with Interrogatory No. 9, these facts are not trial preparation material or attorney impressions shielded from discovery. Thus, Plaintiff should be ordered to respond to this Interrogatory.

## III.    LOCAL RULE 37.2 STATEMENT

After meeting and conferring in good faith regarding the above issues, the parties are unable to reach an accord. Those good faith consultations included Mr. Moye and Mr. Leiman on behalf of the SEC, and Mr. Baker and Mr. Rosenburg on behalf of Defendants. These disputes were the subject of a December 9, 2020 letter from Defendants to the SEC. A telephonic meet and confer between the parties occurred on December 21, 2020, but the parties were not able to reach an agreement. During conference calls on March 11, 2021 and March 22, 2021, the SEC indicated that it was still in the process of collecting materials from the Division of Examination to disclose to Defendants, and that it was still in the process of compiling its privilege log. On June 16, 2021, the SEC served a production of 2,126 formerly withheld documents and a privilege log with 863 entries, and the parties met and conferred telephonically that same date. On June 29, 2021, Defendants sent an email detailing issues with the 863 documents identified on the privilege log. The parties held a telephonic meet and confer regarding these issues on July 1, 2021, and agreed to continue conferring regarding the outstanding issues once the SEC produces a revised privilege log and additional documents previously withheld.

## IV.    CONCLUSION

For the foregoing reasons, the Court should enter an order compelling the SEC to produce information sufficient to sustain the privileges the SEC has asserted, produce documents in response to Defendants' Requests Nos. 1, 5, 23, 31, and 32, and respond to Defendants' Interrogatories Nos. 2, 7, 9, 11 and 25.

Dated:  July 2, 2021                                          Respectfully submitted,

By:  /s/ *Howard J. Rosenburg*                    By:  /s/ *H. Gregory Baker*

Howard J. Rosenburg (6256596)              H. Gregory Baker (*pro hac vice*)
KOPECKY SCHUMACHER ROSENBURG LLC          Rachel Maimin (*pro hac vice*)
120 N. LaSalle, Street, Suite 2000              Meg Slachetka (*pro hac vice*)
Chicago, IL 60602                                   LOWENSTEIN SANDLER LLP
Tel. (312) 380-6631                               1251 Avenue of the Americas
hrosenburg@ksrlaw.com                          New York, NY 10020
*Counsel for Defendants*                         Tel. (212) 262-6700
                                                          hbaker@lowenstein.com
                                                          rmaimin@lowenstein.com
                                                          *Counsel for Defendants*

<u>**TABLE OF EXHIBITS**</u>

Ex. 1- Defendants' First Set of Document Requests to the SEC dated April 7, 2020

Ex. 2 – Defendants' First Set of Interrogatories to the SEC dated April 7, 2020

Ex. 3 – SEC's Responses to Defendants' First Set of Document Requests dated May 11, 2020

Ex. 4 - SEC's Responses to Defendants' First Set of Interrogatories dated May 11, 2020

Ex. 5 – Correspondence from Howard Rosenburg to Timothy Leiman dated December 9, 2020

Ex. 6 – SEC Privilege Log dated June 16, 2021

Ex. 7 – Email correspondence from Howard Rosenburg to Timothy Leiman dated June 29, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2021, a copy of the foregoing was served on counsel of record below by electronic means pursuant to the Court's Electronic Case Filing (ECF) system.

By: /s/ *Paula Seguin*