# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No. 1:19-cv-06473 |
| | The Honorable Sharon Johnson Coleman, |
| v. | United States District Judge |
| | The Honorable Sheila M. Finnegan, |
| SBB RESEARCH GROUP, LLC, | United States Magistrate Judge |
| SAMUEL B. BARNETT, and | |
| MATTHEW LAWRENCE AVEN, | |
| Defendants. | |

## DEFENDANTS' LIMITED OBJECTION TO MAGISTRATE JUDGE'S ORDERS DENYING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF TWO RSM-SEC PRESENTATIONS

Pursuant to Federal Rule of Civil Procedure 72(a), Defendants SBB Research Group, LLC ("SBB"), Samuel B. Barnett, and Matthew Aven (collectively, "Defendants") respectfully object to the Orders of the Magistrate Judge dated February 11, 2022 (Transcript of Feb. 11, 2022 Proceedings, the "February 11th Order"), and July 29, 2022 (Dkt. 135, the "July 29th Order," collectively the "Orders"). The Orders relate to competing discovery motions filed by Defendants and the SEC in response to the SEC's refusal to produce (among other documents but as relevant here) two SEC presentations highly relevant to the SEC's allegations and SBB's defenses.[1]

---

[1] On July 28, 2022, Magistrate Judge Finnegan issued a third order addressing other issues in these discovery motions (Dkt. 134, the "July 28th Order"). The July 28th Order concerned whether the SEC would be required to produce documents that it withheld under assertions of privilege, primarily the deliberative process privilege.

Magistrate Judge Finnegan held that the deliberative process privilege applied to the documents and that Defendants had failed to establish a particularized need for the documents. This ruling was based on "the SEC['s] represent[ations] that the testimony of the individual examiners will be

The Defendants' Objection is narrowly tailored to the Magistrate Judge's ruling that denied Defendants discovery of two presentations that the Staff made to RSM, the accounting firm that audited SBB's funds, about the SEC's "concerns" related to SBB's funds (the "RSM-SEC Presentations"). The Magistrate Judge concluded that the RSM-SEC Presentations were settlement communications, and that discovery of the presentations would create a "chilling effect" on settlement negotiations in *other* SEC cases. *See* February 11th Order at 25. The Magistrate Judge's ruling is contrary to the law, as it affords settlement communications greater protection from discovery (as opposed to admissibility) than the law provides. Under Federal Rule of Civil Procedure 26, Defendants are entitled to discovery on non-privileged matters that are relevant to the defense and proportional to the needs of the case, considering the multiple factors identified in Rule 26(b)(1).[2] Rule 26 does not provide any special protections for settlement communications, and Federal Rule of Evidence 408 is limited to admissibility, not discoverability, of settlement communications.

The Defendants have focused their Objection on the RSM-SEC Presentations in light of the prominence of RSM in this case. Defendants expect that RSM employees will be among the

---

limited: '[a]ll of the SEC's allegations about the compliance examination relate to what the examiners said, saw, and heard during the exam.'" July 28th Order at 25-26.

Magistrate Judge Finnegan stated further "to the extent the SEC elicits expanded testimony from an examiner regarding his underlying analysis and opinions (e.g., in the context of explaining the basis for 'concerns' about SBB's valuation model), *then deliberative documents reflecting this information would be relevant and Defendants likely would have a particularized need* for them." *Id.* at 26 (emphasis added). Defendants therefore reserve all rights in the event that the SEC seeks to elicit expanded testimony, including seeking to revisit their motion to compel.

[2] The Rule 26(b)(1) factors are: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

most important witnesses in this case, as the SEC has alleged that the Defendants concealed information from RSM—indeed, the SEC Complaint even features a section regarding RSM's resignation from the SBB fund audits. *See* Compl. (Dkt. 1) ¶¶ 108-112. RSM ultimately did settle with the SEC, agreeing to findings by the SEC that RSM engaged in improper professional conduct during the SBB fund audits and also agreeing to cooperate with the SEC in this action. After the Staff provided formal notice to RSM and its SBB engagement partner that it intended to take steps to bring an SEC enforcement action against them, RSM resigned as SBB's fund auditor and withdrew years of unqualified audit opinions. The RSM-SEC Presentations will show what the SEC, which is RSM's ultimate regulator, told RSM about the SEC's views of the case. These presentations are highly relevant to the defense and would be admissible for a proper purpose under Rule 408 to show (1) any bias by RSM against the Defendants, and (2) what RSM knew about the SEC's concerns, and when, in advance of its resignation. As a result, the RSM-SEC Presentations are discoverable under Rule 26, and the Magistrate Judge's ruling subjecting the presentations to a heightened discovery standard is contrary to the law.

## I.     BACKGROUND

### A.     The SEC Action and RSM's Role

The SEC's core allegation in this case is that SBB, an adviser to multiple investment funds, used a model to value highly complex structured notes that did not reflect the fair value of those investments under Generally Accepted Accounting Principles ("GAAP"). The SEC alleges that Defendants *intentionally* manipulated the model to inflate the value of these investments and charge inflated fees to SBB's clients (the overwhelming majority of which are Dr. Barnett's family and friends, as well as Dr. Barnett himself). Several claims require proof of scienter, *i.e.*, the SEC must prove that Defendants intended to deceive, manipulate, or defraud in creating and

implementing the model. *SEC v. Bauer*, 723 F.3d 758, 775 (7th Cir. 2013). The SEC chose to base its scienter allegations in part on its claim that Defendants lied to their auditor, RSM. *See, e.g.*, Compl. (Dkt. 1) ¶¶ 70-73. More specifically, the Complaint alleges that the SBB's actions were so egregious that RSM immediately resigned after it learned the information that the SEC claims "SBB's management had withheld." *Id*. ¶ 110.

### B. RSM's Role in the SEC Investigation and Wells Notices to RSM

RSM conducted audits of SBB's funds' financials for the fiscal years 2013-2017. RSM's auditors and valuation specialist looked closely at SBB's valuation model during RSM's audits of SBB funds and concluded that the model and valuations were reasonable. *See* Dkt. 69 at 2, 9-11. RSM issued unqualified opinions in its audit of SBB funds after learning of, and becoming a witness in, the SEC's compliance examination and enforcement investigation of SBB. *See id.* at 10. RSM was aware of the SEC's examination as early as May 2015 (*See* Ex. 4 to Dkt. 69 at 6-7 (noting SEC examiners met with Stacey Droege, Lynne Weil, and Tracey Whetstone on May 12, 2015 to discuss "RSM's audits of SBB's Funds")) and received a subpoena from the SEC in its enforcement investigation of SBB on October 26, 2016. SBB received an examination letter from the SEC on March 16, 2016, which RSM witnesses state that they received for the first time in December 2016. Then, between February 28, 2017 and November 3, 2017, ten RSM employees, including the lead SBB engagement partner Lynne Weil, provided on-the-record investigative testimony to the SEC regarding RSM's audits of the SBB funds. During this testimony, the SEC asked detailed questions about RSM's audit of SBB and its valuation model, specifically focusing on how RSM evaluated the variances between SBB's and RSM's valuations of SBB's structured notes. After learning of the SEC's increased scrutiny of SBB's valuation model, RSM's initial approach to the SBB audit was to spend an additional year scrutinizing its audit of SBB's funds

before issuing its unqualified opinions on the funds' 2016 and 2017 financial statements in 2018. *See* Dkt. 83 at 11-12.

In April 2018, the SEC met with RSM's counsel. According to the SEC's interrogatory responses, the subject matter of this presentation (the "April 18, 2018 Presentation") was the "SEC['s] concerns with RSM 2013-2016 Fund audits." Ex. 4 to Dkt. 69 at 53 (SEC's response to Interrogatory No. 25). Despite the increased pressure and scrutiny from the SEC, RSM continued to stand by and affirm the validity of its prior audits. RSM issued an unqualified audit opinion for fiscal year 2016 on April 30, 2018, just 12 days after hearing of the SEC's concerns about RSM's prior audits. Weeks later, on May 22, 2018, RSM issued an unqualified audit opinion for fiscal year 2017. The SEC subpoenaed RSM to request workpapers from both audits that same day. RSM counsel presented a "respon[se] to SEC's 4/18/2018 presentation" the next day on May 23, 2018. Ex. 4 to Dkt. 69 at 53 (SEC's response to Interrogatory No. 25). Early the following year, on February 15, 2019, the SEC made a "substantially similar" presentation to Ms. Weil's counsel (the February 15, 2019 Presentation).[3] Ex. 4 to Dkt. 69 at 54 (SEC's response to Interrogatory No. 25).

On March 5, 2019, three weeks after the second RSM-SEC presentation, the SEC issued Wells Notices to RSM and Ms. Weil, stating that the SEC's staff "has made a preliminary determination to recommend [to the Commission] that the [SEC] file an enforcement action" against RSM and its audit partner Ms. Weil. With the issuance of the Wells Notices, RSM and Ms. Weil were simultaneously enmeshed in two nominally separate but related SEC processes: the

---

[3] Defendants understand from meet-and-confer discussions with the SEC that the February 15, 2019 Presentation made at the meeting with counsel for Ms. Weil was substantially similar to the April 18, 2018 Presentation. *See* Ex. C to Dkt. 122 (SEC Feb. 22, 2022 Email).

5

Wells process and the settlement negotiation process.[4]  In both processes, the same members of the Staff engaged with defense counsel on the same issues.

RSM quickly changed its tune with respect to SBB once the Staff issued the Wells Notices. On April 12, 2019, RSM resigned from the SBB engagement and withdrew its prior audits—a fact on which the SEC relies heavily.  *See* Compl. (Dkt. 1) ¶¶ 108-111.  In a letter to SBB, RSM's lead partner Ms. Weil stated that RSM "recently bec[a]me aware of multiple inconsistencies between what SBB management communicated to RSM during RSM's audits of SBB . . . and (i) documents SBB produced to the [SEC] . . . and (ii) testimony SBB management and other witnesses provided to the SEC."  Ex. B to Dkt. 126.

In Ms. Weil's supplemental Wells submission (the "Weil Submission"), she plainly states that information she learned from the February 15, 2019 Presentation was relevant to RSM's decision to resign as SBB's fund auditor and withdraw RSM's prior audit reports.  Specifically, the Weil Submission states that "*after the Staff made a presentation to Ms. Weil's counsel* and provided access to SBB's SEC testimony and exhibits, *Ms. Weil learned facts that contradicted SBB management's representations and impugned their integrity*," and that "Ms. Weil was one of the primary decision-makers who decided that, *as a result of this information, RSM would resign* as SBB's auditor and recall its previously issued audit reports."  Ex. D to Dkt. 128 at 2 (emphasis added).

In February 2020, the SEC announced a settlement with RSM, with the order instituting the proceeding finding that RSM repeatedly violated professional standards in connection with its

---

[4] In the Wells process, RSM and Ms. Weil had the opportunity to make a formal submission to the SEC explaining why the recommended enforcement action is unwarranted.  Settlement discussions, by contrast, may proceed through formal and informal discussions.

audits of SBB funds.[5]  *In the Matter of RSM US LLP (f/k/a McGladrey LLP)*, Exchange Act Rel. No. 88287 (Feb. 26, 2020).  The SEC imposed no penalty against RSM and also dropped its case against Ms. Weil.  As part of the settlement, RSM is required to cooperate with the SEC against SBB in this litigation.

C.     **The Discovery Dispute**

Given the importance of RSM to the SEC's allegations, Defendants sought discovery of documents and communications between the SEC and RSM related to the SEC's examination and investigation of SBB.  *See* Ex. 3 to Dkt. 69 at 7 (SEC's response to RFP 5).  The SEC objected to producing its settlement communications with RSM on the basis that "the SEC's settlement-related communications with RSM . . . are not admissible as evidence because they cannot help prove or disprove any of the SEC's claims" and represented that it was "withholding its settlement communications with RSM."  *Id.* at 8.  In a separate sworn interrogatory response served in May 2020, the SEC identified the meetings involving the RSM-SEC Presentations as "substantive (*but non-settlement related*) communications."  *See* Ex. 4 to Dkt. 69 at 50, 53-54 (SEC's response to Interrogatory No. 25) (emphasis added).  The parties met and conferred on this discovery disagreement, among others, and eventually reached an impasse.  Defendants filed a motion to compel production of various categories of documents, including the RSM-SEC settlement communications.

---

[5] Notably, this is not the only settlement that RSM was negotiating with the SEC during this time period.  On August 27, 2019, the SEC announced a settlement with RSM over unrelated conduct. *In the Matter of RSM US LLP (f/k/a McGladrey LLP)*, Exchange Act Rel. No. 86770 (Aug. 27, 2019).  The more extensive an audit firm's prior disciplinary history, the more significant the sanctions that the SEC may choose to seek against the firm and its employees in subsequent actions.  That RSM was already negotiating a settlement with the SEC during this time period could make RSM highly vulnerable to the SEC and incentivized to cooperate.

During the continued meet-and-confer process, Defendants asked the SEC to clarify whether it had produced the presentations from the "substantive (but non-settlement related) communications" with RSM identified in the SEC's interrogatory responses. Only then did the SEC first assert that the April 18, 2018 Presentation and the May 23, 2018 Presentation were made as part of a settlement discussion and were thus withheld from production. Moreover, only after the Court's February 11, 2022 ruling did the SEC disclose that it was withholding the February 15, 2019 Presentation and changing its position to assert that the third meeting was a settlement discussion. *See* Ex. C to Dkt. 122.

Magistrate Judge Finnegan denied Defendants' motion to compel production of the SEC's settlement communications with RSM related to the SBB audit. The February 11th Order concluded that requiring the SEC to produce settlement communications could "have a chilling effect on settlement negotiations if these were produced in every case where the SEC has a cooperation agreement with someone who will testify." February 11th Order at 24-25. After incorporating concerns about a chilling effect into the balancing test, Magistrate Judge Finnegan held that the additional probative value of the settlement communications was outweighed by the burden of production. *Id.* at 25. Defendants filed a motion to seek clarification of whether the RSM-SEC Presentations were settlement communications subject to the Court's ruling and, if they were, respectfully request that Magistrate Judge Finnegan reconsider the Court's ruling with respect to the RSM-SEC Presentations only. *See* Dkt. 122. Magistrate Judge Finnegan reviewed the two presentations *in camera*. The July 29th Order held that the RSM-SEC Presentations are settlement communications and denied the motion to reconsider the Court's ruling with respect to those two documents. *See* July 29th Order at 2.

## II.    ARGUMENT

### A.    Legal Standard

Under Federal Rule of Civil Procedure 72(a), parties may object to a magistrate judge's order on any non-dispositive matter and the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  An order is considered "contrary to law" when a magistrate judge "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Pain Ctr. of SE Ind., LLC v. Origin Healthcare Sols., LLC*, 2014 WL 6674745, at *3 (S.D. Ind. Nov. 25, 2014).  A magistrate judge's legal conclusions must be reviewed *de novo* to determine if they are contrary to law.  *See*, *e.g.*, *Henry v. Centeno*, 2011 WL 3796749, at *2 (N.D. Ill. Aug. 23, 2011) (finding that the magistrate judge's "legal determinations informed her findings," thus, a "full review" of the order was necessary); *Chamberlain Grp. v. Interlogix, Inc.*, 2002 WL 467153, at  *1 (N.D. Ill. Mar. 27, 2002) ("A magistrate judge's conclusions of law are reviewed *de novo*."); *Jernryd v. Nilsson*, 117 F.R.D. 416, 417 (N.D. Ill. 1987) ("[T]he clearly erroneous standard does not apply" if the order "is based upon legal conclusions and not … findings of fact[.]").

### B.    The Orders Are Contrary To Law Because They Impose Heightened Discovery Protections On Settlement Communications

The Orders denying production of the RSM-SEC Presentations are contrary to law because they imposed heightened discovery protections on settlement communications that go beyond the protections such communications have under the law.  In denying Defendants' motion to compel the RSM-SEC Presentations, the Magistrate Judge relied on her view that requiring the SEC to produce the RSM-SEC Presentations could "have a chilling effect on settlement negotiations" in other SEC matters.  *See* July 29th Order at 4.  But the law provides no such shroud for settlement communications.

9

The Orders do not address any of the cases from courts in this and other Districts that Defendants cited that confirm Rule 26 does not contain any special or heightened protections for settlement communications (particularly when sought to show witness bias and other admissible purposes) and Rule 408 is limited to admissibility, not discoverability, of settlement communications. *See* Dkt. 83 at 10-13 (citing *FDIC v. Crowe Horwath LLP*, 2018 WL 3105987, at *12 (N.D. Ill. June 25, 2018) (distinguishing cases where the settlement-related material was sought for an impermissible purpose under Rule 408 and compelling production of documents that were admissible under Rule 408(b) for the purpose of showing witness bias); *Noble Roman's Inc. v. B & MP, LLC*, 2017 WL 1163866, at *8 (N.D. Ill. Mar. 29, 2017) ("The settlement and negotiations may provide evidence of relevant biases, which Defendants should be allowed to explore through discovery."); *In re Initial Pub. Offering Sec. Litig.*, 2003 U.S. Dist. LEXIS 23102, at *17-25 (S.D.N.Y. Dec. 24, 2003); *Morgan Art Found. Ltd. v. McKenzie*, 2020 U.S. Dist. LEXIS 116074, *15-16 (S.D.N.Y. July 1, 2020)); *see also* Dkt. 92 at 14-15.

Instead, the Orders rely exclusively on *SEC v. Gupta*, a two-page 2012 memorandum order in which the Southern District of New York relied on Federal Rule of Evidence 408 (which governs *admissibility*, not discoverability) to deny defendants' motion to compel the SEC to produce documents "concerning settlement negotiations . . . , including tax returns or other financial statements provided by the cooperators to the SEC during negotiations." 2012 WL 1592525, at *1 (S.D.N.Y. May 1, 2012). But in *Gupta*, the court concluded that the defendants failed to demonstrate that the settlement negotiations were relevant to proving bias, particularly given the SEC's representation that the documents in dispute did not contain any factual statements, only attorney argument. *Id.* The opposite is true here.

To start, the RSM-SEC Presentations necessarily must have included factual statements about the conduct at issue that the SEC viewed as relevant to explaining what its "concerns" were to RSM. The presentations also are highly probative of the bias and motivations that RSM had to resign as SBB's auditor and withdraw its prior audit opinions. Moreover, what RSM and its engagement partner learned from those presentations is relevant to the SEC's theory (adopted by RSM) that RSM was misled until shortly before its resignation. Ms. Weil herself said so in the Weil Submission, where she connected RSM's resignation to what she learned from the February 15, 2019 Presentation. *See* Ex. D to Dkt. 128 at 2; *see also* Dkt. 83 at 10-13; Dkt. 92 at 13-15. Defendants should be able to discover what Ms. Weil learned from the February 19, 2019 Presentation. Likewise, Defendants should be able to discover what RSM learned from the "substantially similar" April 18, 2018 Presentation, after which RSM signed off on two more years of audits. The SEC's case will prominently feature the RSM witnesses, and the contemporaneous RSM-SEC Presentations are probative of the bias, motivations, and knowledge of these key witnesses.

*Gupta* and its reliance on Rule 408 also was before the 2015 amendments to Rule 26 making clear that "discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see Arcelormittal Ind. Harbor LLC v. Amex Nooter, LLC*, 2016 WL 614144, at *6 (N.D. Ind. Feb. 16, 2016) (noting that opinions prior to the 2015 amendments that rely "on the pre-amendment language of Rule 26(b)(1) to limit the discovery of settlement negotiations [are] no longer persuasive" and "[t]he only question then is whether the discovery sought meets the standard set out in Rule 26(b)(1) for relevance and proportionality"). The Magistrate Judge's reliance on the pre-amendment *Gupta* decision to impose a heightened standard for discovery communications is contrary to Rule 26 and the related caselaw confirming there is no special

treatment afforded settlement communications in discovery, particularly when sought to show witness bias and other admissible purposes.

### C.    The Error of Law Invalidates The Court's Balancing Of Factors

The Court's error of law in imposing a higher burden than the law provides for the discovery of settlement communications inappropriately tipped the scales against production. Specifically, the Magistrate Judge considered the potential chilling effect of producing settlement communications on other SEC matters as a "burden" to conclude that the additional probative value of the settlement communications was outweighed by the burden of production. *See* February 11th Order at 25. While the Court is entitled to discretion in balancing under Rule 26, it cannot add an extra factor that is contrary to law. Here, as discussed below, the RSM-Settlement Presentations are highly relevant and non-cumulative, and there is no actual burden to produce two documents that have already been submitted to the Court for *in camera* review. Removing the "thumb" of heightened protection for settlement communications, the scale tips heavily in favor of production for the two RSM-SEC Presentations.

***First***, the RSM-SEC Presentations are highly relevant to the SEC's allegations. As discussed above, the presentations show the potential bias or prejudice of RSM witnesses in deciding to resign as SBB's auditor and withdraw the prior audit opinions. The RSM-SEC Presentations also show what RSM learned of the SEC's concerns and the underlying conduct at issue—which is probative of the SEC's theory that RSM was in the dark about Defendants' alleged misconduct prior to its resignation in 2019. *See, e.g.*, Compl. ¶ 11.

***Second***, the RSM-SEC Presentations have probative value that greatly exceeds the value of the other discovery in this case. Unlike depositions years after the fact, a public settled enforcement order, and transcripts of investigative testimony in which the witnesses never

12

addressed the two meetings at issue, the RSM-SEC Presentations show the SEC's *contemporaneous* view of RSM's conduct (which is probative of RSM's bias and motive) as well as Defendants' conduct (which is probative of RSM's knowledge prior to its resignation). The presentations may also provide a contemporaneous view of the SEC's proposed settled resolution, which would be strong evidence of the pressure RSM was facing from its primary regulator.

Contrary to the Magistrate Judge's suggestion that Defendants' ability to depose RSM witnesses blunts the impact of denying discovery of the RSM-SEC Presentations (July 29th Order at 4), courts have recognized that depositions are not an adequate substitute for contemporaneous documents, especially when the topics concern events that occurred years ago. *See Arcelormittal Ind. Harbor LLC*, 2016 WL 614144, at *7 ("Although [plaintiff] has other means, for example through depositions, of possibly obtaining information similar to that contained within these [settlement negotiation] documents, [plaintiff] cannot obtain the exact information through any other means."); *cf. also Marsall v. City of Portland*, 2003 WL 23976436, at *3 (D. Or. May 27, 2003) (requiring production of work product where a deposition was an inadequate substitute); *Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 384 (D. Ariz. 2010) (same).[6]

Here, in particular, depositions are not an adequate substitute to discover what the SEC and RSM were saying to each other and when. As noted above, the Weil Submission contends that the decision to resign came "after the Staff made" the February 15, 2019 Presentation "to Ms.

---

[6] In the context of ordering Dr. Barnett to respond to the SEC's interrogatories, Magistrate Judge Finnegan recognized the importance of having documents and information *in advance of* depositions, noting that "it makes sense to get the answers before the deposition so the SEC can review them in advance and not be in a situation where there is reference to some article or other material that there is no opportunity to follow up on." February 11th Order at 7.

Weil's counsel and provided [her counsel] access to SBB's SEC testimony and exhibits."[7]  Ms. Weil's counsel then relayed this purportedly new information about SBB to Ms. Weil.  *See* Ex. D to Dkt. 128 at 2.  Defendants' ability to question Ms. Weil on this topic is therefore limited: it depends on how Ms. Weil's counsel conveyed the information to her and how well Ms. Weil can separate facts provided by counsel and her counsel's advice, both of which were provided over three years ago.  Requiring Defendants to rely on their deposition of Ms. Weil to determine what RSM and Ms. Weil learned about SBB and when would severely encumber Defendants' ability to defend against the SEC's allegations.  The RSM-SEC Presentations simply are not cumulative of other non-privileged documentary and oral discovery in this case.

*Third*, there is zero burden here where Defendants seek production of two documents that the SEC already has identified and provided to the Magistrate Judge *in camera*.  In concluding that the burden of production outweighed the additional probative value of the settlement communications, the Magistrate Judge necessarily was relying on the concern about the potential "chilling effect" that producing the settlement communications in this case will have *in other SEC cases*.  However, this concern about the potential knock-on effect of permitting discovery of the settlement communications is contrary to the law.  *See In re Initial Pub. Offering Sec. Litig.*, 2003 U.S. Dist. LEXIS 23102, at *24-25 (noting that "the Federal Rules of Civil Procedure do not permit even this 'modest presumption'" against disclosure of settlement materials).

---

[7] Notably, in between the February 15, 2019 Presentation and RSM counsel's review of the investigative record, RSM and Ms. Weil received Wells Notices.

## III.    CONCLUSION

WHEREFORE, for all of these reasons, Defendants respectfully object to the portions of the Orders denying Defendants' motion to compel production of the RSM-SEC Presentations and request that the SEC be ordered to produce the two RSM-SEC Presentations.

Dated: August 22, 2022

Respectfully submitted,

By: /s/ *John J. Sikora, Jr.*
John J. Sikora, Jr. (6217330)
Heather A. Waller (6302537)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel. (312) 876-7700
john.sikora@lw.com
heather.waller@lw.com

Howard J. Rosenburg (6256596)
KOPECKY SCHUMACHER
ROSENBURG LLC
120 N. LaSalle, Street, Suite 2000
Chicago, IL 60602
Tel. (312) 380-6631
hrosenburg@ksrlaw.com

H. Gregory Baker (*pro hac vice*)
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel. (212) 336-2871
hbaker@pbwt.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2022, a copy of the foregoing was served on counsel of

record below by electronic means pursuant to the Court's Electronic Case Filing (ECF) system.

By: /s/ *John J. Sikora, Jr.*