**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> SBB RESEARCH GROUP, LLC, SAMUEL B. BARNETT, and MATTHEW LAWRENCE AVEN, <br><br> Defendants. | Civil Action No. 1:19-cv-06473 <br> The Honorable Sharon Johnson Coleman, <br> United States District Judge <br> The Honorable Sheila M. Finnegan, <br> United States Magistrate Judge |

**DEFENDANTS' REPLY IN SUPPORT OF LIMITED OBJECTION TO MAGISTRATE JUDGE'S ORDERS DENYING DEFENDANTS' MOTION TO COMPEL <u>PRODUCTION OF TWO RSM-SEC PRESENTATIONS</u>**

**I.      PRELIMINARY STATEMENT**

The SEC's Response demonstrates why Defendants' objection must be sustained. The SEC implicitly acknowledges that RSM-SEC settlement communications are discoverable and not subject to a heightened discovery standard, admitting that Defendants are free to obtain discovery on whatever witnesses can currently recall about the SEC's settlement negotiations with RSM. That admission is incompatible with the SEC's position that discovery of the RSM-SEC Presentations themselves would have a broad "chilling effect" on settlement negotiations in this and countless other cases. The SEC's Response also rests on other self-contradicting premises. The SEC insists that discovery of the RSM-SEC Presentations would reveal the SEC's secret sauce. But at the same time, the SEC says the presentations would provide Defendants nothing of true value since the presentations are purportedly duplicative of other discovery and far less important than what the SEC deems the "best evidence" on point—the SEC's public settlement with RSM. The SEC's Response also conveniently omits certain key facts, including that the RSM partner in charge of the audits of SBB's funds acknowledged that the February 15, 2019 Presentation was an impetus for RSM's withdrawal of its unqualified audit opinions. *See* Ex. D to Dkt. 128 at 2; *see also* Dkt. 140 at 6. In its Response, the SEC misses no opportunity to suggest that RSM's withdrawal of its opinions is evidence of the Defendants' liability in this action, which only further points up the significance of the RSM-SEC Presentations. Put simply, the *two presentations* at issue—which are discoverable under Federal Rule of Civil Procedure 26 and will be the subject of witness testimony—should be produced.

In its latest effort to seal off the RSM-SEC Presentations from discovery, the SEC relies on the wrong legal standard of review in its Response. Defendants object to the Magistrate Judge's ruling because the Magistrate Judge subjected the presentations to a higher discovery standard than

Rule 26 allows, and misapplying the rules of civil procedure is an error of law. The standard for reviewing a magistrate judge's legal determination is not the "clear error" standard that the SEC cites in its brief. That standard is reserved for reviewing a magistrate judge's factual findings. Rather, as explained below, the Court is required to conduct a *de novo* review of Magistrate Judge Finnegan's *legal determination* regarding the level of protection that the law affords the two settlement documents at issue.

The Orders' error of law in imposing a higher burden than the law provides for the discovery of settlement documents inappropriately tipped the scales against production here. Caselaw confirms that settlement communications are not afforded special treatment in discovery—particularly when sought to show witness bias or other admissible purposes—and the SEC's Response fails to identify any opinions in this circuit that have held otherwise. While the Court is entitled to discretion in balancing the factors identified in Rule 26, it cannot add an extra factor to effectively subject settlement communications to a heightened standard of discovery that is contrary to Rule 26. This will not, as the SEC hyperbolically claims, mean that "no document anywhere would be safe from production" (Dkt. 141 at 9; *see also* Dkt. 141 at 13); courts will continue to apply Rule 26 on an individualized, case-by-case basis. Here, applying the proper framework of Rule 26, which affords no heightened protection for settlement communications, Defendants respectfully request that the Court order the SEC to produce the two RSM-SEC Presentations.

## II. ARGUMENT

### A. Legal Standard

The SEC asserts—without explanation—that Defendants' objection is subject to clear error review. *See* Dkt. 141 at 6. "Clear error," however, is the proper standard of review of a magistrate

judge's factual findings—not the conclusions of law. *See Peerless Indus., Inc. v. Crimson AV LLC*, No. 11 C1768, 2013 WL 6050006 at *2 (N.D. Ill. Nov. 14, 2013). Defendants object to Magistrate Judge Finnegan's *legal determination* to impose heightened discovery protections on the RSM-SEC Presentations. *See* July 29th Order at 4. The "misappli[cation of] relevant . . . rules of procedure" is an error of law. *See, e.g.*, *Bellinger v. Astrue*, No. 06-CV-321 CBA SMG, 2010 WL 1268063, at *1 (E.D.N.Y. Apr. 2, 2010) ("An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."); *see also Atl. Specialty Ins. Co. v. Blue Cross & Blue Shield of Kan., Inc.*, No. 18-2371-DDC-JPO, 2022 WL 528210, at *3 (D. Kan. Feb. 22, 2022) (reviewing a Magistrate Judge's discovery ruling under Rule 26(b)(1) under the "contrary to law" standard); *Wood v. Nautilus Ins. Co.*, No. 217CV02393MMDDJA, 2020 WL 13528640, at *4 (D. Nev. Dec. 16, 2020) (reviewing *de novo* a Magistrate Judge's proportionality analysis under Rule 26(b)(1)). Thus, the "contrary to law" standard is the proper standard of review. *Jernryd v. Nilsson*, 117 F.R.D. 416, 417 (N.D. Ill. 1987) ("Because [the Magistrate Judge's] order is based upon legal conclusions and not on his findings of fact, the clearly erroneous standard does not apply and the scope of our review on this motion is plenary."); *Peerless Indus., Inc.*, 2013 WL 6050006, at *2 ("[J]udges in this district conduct a "full review" of a magistrate judge's conclusions of law.").

      **B.    The Orders Are Contrary to Law Because They Impose Heightened Discovery Protections on Settlement Communications**

The SEC is wrong that courts are entitled to impose a heightened standard for discovery communications, particularly when those documents are sought to show witness bias or other admissible purposes under Federal Rule of Evidence 408. *See, e.g.*, *Noble Roman's Inc. v. B & MP, LLC*, 2017 WL 1163866, at *8 (N.D. Ill. Mar. 29, 2017) ("The settlement and negotiations

3

may provide evidence of relevant biases, which Defendants should be allowed to explore through discovery."). As Defendants have explained at length in their prior briefing, Defendants are seeking to discover the RSM-SEC Presentations to explore potential bias of the RSM witnesses. Importantly, the RSM bias goes beyond motivations for providing particular after-the-fact *testimony* in favor of the SEC. Here, the RSM-SEC Presentations will shed light on RSM's bias and motivations for its contemporaneous *conduct* at issue—in particular, its decision to withdraw its audit opinions. RSM continued to issue clean audits for SBB even after RSM increased its scrutiny of SBB's valuation model and resulting valuations in response to the enforcement staff's investigation, including after RSM heard the SEC's April 18, 2018 Presentation. But after Ms. Weil's counsel heard the second (though purportedly similar) February 15, 2019 Presentation and RSM and Ms. Weil received Wells notices in March 2019, RSM quickly changed its tune and resigned as SBB's auditor. RSM and Ms. Weil were strongly incentivized to cooperate with the SEC, and Defendants are entitled to discover the RSM-SEC Presentations for the purpose of exploring that bias. *See* Dkt. 83 at 8-10, 12; Dkt. 92 at 14-15.

The RSM-SEC Presentations are also relevant to show what RSM knew about SBB's valuation model and when. The SEC's scienter allegations rely on claims that SBB "hid the SEC's exam (and its findings) from" RSM and that RSM resigned in April 2019 "after learning that Defendants ignored accounting principles and manipulated [m]odel inputs." *See* Dkt. 1 ¶¶ 11, 108-110. Left unsaid in the Complaint is that the SEC discussed SBB's alleged misconduct with RSM during the investigation, and those discussions included the RSM-SEC Presentations. The SEC's scienter theory shrinks if RSM learned about the SEC's concerns during the April 18, 2018 Presentation and then continued to issue two clean sets of audits. *See* Dkt. 122 at 12-14; Dkt. 128

4

at 6-9. Defendants are entitled to discover the RSM-SEC Presentations in order to understand that timeline.

The SEC claims that "[c]ourts around the country have always . . . been entitled to consider the chilling effect production would have on future settlement negotiations when calculating the extent of the burden of production under Rule 26(b)(1)." Dkt. 141 at 11. But the cases the SEC cites do not support the heightened protection for settlement communications under the guise of "burden" that the SEC suggests. In fact, all of the cases cited by the SEC recognize that settlement communications are discoverable if they are likely to be admissible for a permitted purpose under Rule 408. *See Clark v. Experian Info. Sols., Inc.*, 2006 WL 931677, at *3 (N.D. Ill. Apr. 10, 2006) (noting that "Rule 408 allows admission of evidence that 'is offered for another purpose, such as proving bias or prejudice of a witness,'" and the magistrate judge had "properly rejected" the "broad based assertion that Rule 408 prevents discovery" of these documents);[1] *Spear v. Fenkell*, 2015 WL 3947559, at *2 (E.D. Pa. June 26, 2015) (The party seeking discovery of settlement communications "bears the burden of showing that the settlement agreement is likely to be admissible for a permitted purpose, under Rule 408."); *Washtenaw Cnty. Emps' Ret. Sys. v. Walgreen Co.*, 2019 WL 6108220, at *4 (N.D. Ill. Nov. 15, 2019) ("[T]he closer the discovery's

---

[1] Moreover, in *Clark*, the magistrate judge's memorandum opinion and order clarifies that only "documents that contain *express specific* offers of compromise or *expressly* respond to an offer of comprise, and drafts of any settlement agreement" could be withheld. *See Clark v. Experian Info. Sols., Inc.*, 2006 WL 626820, at *6 (N.D. Ill. Jan. 6, 2006) (emphasis added). While Defendants do not have a full picture of the material included in the RSM-SEC Presentations, based on the SEC's own descriptions of the presentations, it does not appear that they include "express specific offers of compromise" or "drafts of a[] settlement agreement." *See also* Dkt. 122 at 9-11 (describing RSM-SEC Presentations).

purpose is to offering the evidence in a manner *that would be barred by Rule 408*, the more likely courts are to find the materials non-discoverable." (emphasis added)).[2]

The SEC's Response relies exclusively on *SEC v. Gupta*, 2012 WL 1592525 (S.D.N.Y. May 1, 2012), to argue that it was appropriate for the Orders to deny Defendants discovery of the RSM-SEC Presentations, even though the two documents sought would be admissible under Rule 408. More specifically, the SEC asserts that *Gupta* supports a broad rule that settlement communications are not relevant to prove bias—only the actual settlement agreement is "relevant for proving bias." *See* Dkt. 141 at 9. This purported rule flies in the face of Rule 26's broad definition of relevance and numerous cases in *this district* that make clear that settlement documents beyond the final agreement itself are discoverable, particularly when the documents are explicitly sought to show witness bias (here, bias both as to RSM's after-the-fact *testimony* as well as bias in its contemporaneous *conduct* as SBB's auditor) or other admissible purposes.[3] *See,*

---

[2] The SEC also relies on *Mars Steel v. Continental Illinois National Bank and Trust Co. of Chicago*, 834 F.2d 677 (7th Cir. 1987). This case is inapposite. It concerns two competing plaintiffs (and their law firms) who filed parallel class action lawsuits in federal and state court. The federal court approved a settlement, and the state court plaintiff appealed, challenging the federal court's refusal to hold an evidentiary hearing that would have allowed discovery into the settlement negotiations between the federal court plaintiff and defendant. The court concluded that, under these circumstances, where "[d]iscovery of settlement negotiations in ongoing litigation . . . would give a party information about an opponent's strategy," discovery would be proper only if the state court plaintiff "la[id] a foundation . . . indicating that the settlement may be collusive," *i.e.*, that the federal court plaintiff "was selling out the class in an effort to beat [the state court plaintiff] to the attorney's fee trough." *Id.* at 683-84. Here, at best, the SEC describes the presentations as a roadmap to the SEC's theories *against RSM*—not Defendants. The presentations therefore show RSM's and Ms. Weil's bias and motivation when signing off on the SBB funds' audit opinions after the first presentation but then resigning after the second.

[3] The SEC relies on *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810 (W.D. Pa. 2016) to argue that the 2015 amendments to Rule 26 have no impact on balancing under Rule 26. But *Cole's Wexford* focuses on the addition to the text of Rule 26 that discovery must be "proportional to the needs of the case." *Id.* at 821-22. The opinion says nothing about the amendment that made clear that "discovery need not be admissible in evidence to be discoverable."

*e.g.*, *FDIC v. Crowe Horwath LLP*, 2018 WL 3105987, at *12 (N.D. Ill. June 25, 2018) (distinguishing cases where the settlement-related material was sought for an impermissible purpose under Rule 408 and compelling production of documents that were admissible under Rule 408(b) for the purpose of showing witness bias); *Noble Roman's Inc. v. B & MP, LLC*, 2017 WL 1163866, at *8 (N.D. Ill. Mar. 29, 2017) ("The settlement and negotiations may provide evidence of relevant biases, which Defendants should be allowed to explore through discovery."); *see also* Dkt. 83 at 12-13; Dkt. 140 at 10. That the settlement communications and demands that led to a final settlement agreement are relevant to show what motivated a settling party's conduct is an unremarkable proposition. Here, even more so, the SEC is RSM's ultimate regulator and can make more than just economic demands of its registrants. Even if Rule 26 limited parties to the "best evidence of bias," which it does not, the final settlement agreement is not the "best evidence of bias" in this case.

The SEC is also wrong that Defendants conceded otherwise. *See* Dkt. 141 at 6. Defendants' Motion for Clarification in the first instance requested that Magistrate Judge Finnegan clarify, or in the alternative reconsider, whether the RSM-SEC Presentations were settlement communications. *See* Dkt. 122 at 1-2. The motion was necessary as a result of the SEC mistakenly indicating to the Court at the February 11, 2022 hearing that the April 18, 2018 Presentation had already been produced. *See* Dkt. 122 at 5-6. After the hearing, Defendants clarified with the SEC that it did not provide the April 18, 2018 Presentation to the Court for *in camera* review because

---

*See* Dkt. 140 at 11-12; *see also Arcelormittal Ind. Harbor LLC v. Amex Nooter, LLC*, 2016 WL 614144, at *5-6 (N.D. Ind. Feb. 16, 2016) (analyzing the 2015 amendment to Rule 26(b)(1) that "discovery need not be admissible in evidence to be discoverable" to permit the discovery of information, including settlement materials).

it was not withheld on the basis of privilege. Defendants also learned that the SEC was withholding the February 15, 2019 Presentation.[4]  *See* Dkt. 122 at 6-7.

Defendants filed the Motion for Clarification to correct the record, to seek clarification of the status of the RSM-SEC Presentations as settlement communications, and to request that Magistrate Judge Finnegan reconsider her ruling with respect to the RSM-SEC Presentations based on the factors she cited to in the February 11th Order. Defendants believe that, even under that framework—which imposes protections on settlement communications that go beyond what the law provides—the balance still weighs in favor of production. The purpose of the Motion for Clarification was not to raise *all* issues that would be raised in an objection. In fact, before Defendants filed the Motion for Clarification, they also filed an unopposed motion for extension to object to the February 11th Order, which this Court granted. *See* Dkt. 120; Dkt. 125. Defendants have always taken the position that Rule 26 does not provide extra protection for settlement communications and that applying the proper framework of Rule 26 requires production of the two RSM-SEC Presentations here under the circumstances of this case.

---

[4] The SEC has taken two opposing positions as to whether the RSM-SEC Presentations were settlement discussions. The SEC first identified these presentations as "substantive (but *non-settlement related*) communications" regarding "SEC concerns with RSM 2013-2016 Fund audits" in its sworn interrogatory responses served on May 11, 2020. *See* Ex. 4 to Mot. to Compel (Dkt. 69), at 50, 53 (SEC response to Interrogatory No. 25) (emphasis added). Over a year later, during the Parties' meet-and-confer discussions, the SEC took the opposite position and stated that the April 2018 meeting was for settlement purposes. *See* Ex. B to Dkt. 122 (Aug. 2021 Meet-and-Confer Emails); *see also* Dkt. 122 at 1-2, 5-6. In February 2022, the SEC clarified that it was also taking the view that the February 2019 presentation was for settlement purposes. *See* Ex. C to Dkt. 122 (Feb. 22, 2022 SEC Email).

### C. The SEC's Conflicting Positions and Eliding of Key Facts Confirms that the RSM-SEC Presentations Are Discoverable And Should Be Produced

Unable to find caselaw to support the error of law in the Orders, the SEC makes various conflicting arguments defending the Magistrate Judge's decision and purporting to explain why production is not necessary here while ignoring critical facts. Those arguments demonstrate why the RSM-SEC Presentations should be produced.

*First*, the SEC concedes that Defendants can depose witnesses on the contents of the RSM-SEC Presentations, which shows that the SEC's focus on the chilling effect production would have on future settlement negotiations is a red herring. If the SEC was concerned that future settlement negotiations would be negatively impacted if "a party knew that its presentations and statements to regulators or to government investigators" were discoverable (*see* Dkt. 141 at 13), it would not suggest that Defendants do not need the RSM-SEC Presentations because they can depose Ms. Weil and other RSM witnesses about them (*see* Dkt. 141 at 8).

*Second*, the SEC has no response to the fact that depositions are not an adequate substitute for contemporaneous documents, especially when the topics concern events that occurred years ago. *See* Dkt. 140 at 13 (citing cases holding same). The SEC also suggests that the only potential issue here is memory loss, but that ignores that Ms. Weil apparently learned the information from the RSM-SEC Presentations *through her counsel*. *See* Dkt. 141 at 5, 8-9. The potential privilege issues that Ms. Weil's communications with her counsel raise only further confirm that a deposition is no substitute for production of the contemporaneous RSM-SEC Presentations.

*Third*, the SEC's Response demonstrates that the RSM-SEC Presentations are not "duplicative" of the discovery related to RSM that the SEC has produced. Dkt. 141 at 7. Notably, the SEC describes the presentations as "a roadmap to the thoughts and mental impressions of SEC

9

counsel about potential claims against RSM" and as containing "the SEC's legal and factual theories regarding RSM's potential violations of applicable auditing standards." *See* Dkt. 141 at 4, 7. That position, however, conflicts with its argument that "Defendants don't need the settlement presentations" because they are "duplicative of the voluminous discovery related to RSM that the SEC already has produced." *Id.* at 7. Indeed, nothing produced to date shows how RSM's discussions with the SEC during the investigation influenced what RSM knew about SBB's valuation model and when. The SEC points to a transcript of investigative testimony with Ms. Weil about the basis for RSM's resignation from the SBB audit, but fails to acknowledge that the SEC did not ask Ms. Weil what facts she learned from the February 15, 2019 Presentation that led her to decide that RSM should resign as SBB's auditor. *Cf.* Ex. D to Dkt. 128 ("*[A]fter the Staff made a presentation to Ms. Weil's counsel* and provided access to SBB's SEC testimony and exhibits, *Ms. Weil learned facts that contradicted SBB management's representations and impugned their integrity.*" (emphasis added)). The SEC entirely ignores Ms. Weil's own acknowledgment that the February 15, 2019 Presentation was an impetus for RSM's resignation.

> **D.  Production of the RSM-SEC Presentations In This Case, Under These Circumstances, Would Not Chill Future Settlement Negotiations**

The SEC's overblown "chilling" arguments demonstrate precisely why there is no heightened protection for settlement communications under Rule 26. First, the balance of policy considerations is different in the cases the SEC relies on (*see* Dkt. 141 at 11), where class action plaintiffs sought to discover settlement communications between the defendant and a government agency related to the allegations in the class action complaints. *See Clark*, 2006 WL 931677, at *1 (FTC investigated similar allegations and settled with defendant); *Washtenaw Cnty.*, 2019 WL 6108220, at *1-2, 7 (SEC investigated similar allegations and settled with defendants). In private

"follow-on" civil cases like *Clark* and *Washtenaw County*, there could be a greater risk that the party seeking disclosure of the settlement communications intends to use the documents to prove the validity of their claims. *See Washtenaw Cnty.*, 2019 WL 6108220, at *7 ("Plaintiffs' statements that the [documents] are relevant to the falsity and materiality of Defendants' alleged misrepresentations [make clear that] Plaintiffs want to use the documents to prove the validity of their claims . . . ."). Here, in contrast, the SEC brought an enforcement action against Defendants and intends to call on RSM witnesses to testify about conduct influenced by the settlement communications at issue. Defendants are seeking the RSM-SEC Presentations not to strengthen their claims against RSM, but rather to defend themselves in the SEC's enforcement action.

Second, the SEC focuses on the impact to future settlement negotiations if "a party knew that its presentations and statements to regulators or to government investigators [would] be freely discoverable." Dkt. 141 at 13 (citing *Washtenaw Cnty*, 2019 WL 6108220, at *7). But production of the RSM-SEC Presentations in *these circumstances* where the settlement discussions occurred contemporaneously with (and therefore influenced) the conduct at issue does not make government settlement communications "freely discoverable." Aside from making speculative arguments that "no document anywhere would be safe from production," (Dkt. 141 at 9; *see also* Dkt. 141 at 13), the SEC makes no attempt to explain how there is a chilling effect on settlement negotiations under these circumstances. Defendants are facing serious allegations of fraud, and discovery of the RSM-SEC Presentations must prevail over a broad-strokes, speculative public policy concern that is nowhere to be found in Rule 26.

### III. CONCLUSION

WHEREFORE, for all of these reasons, Defendants respectfully object to the portions of the Orders denying Defendants' motion to compel production of the RSM-SEC Presentations and request that the SEC be ordered to produce the two RSM-SEC Presentations.

Dated: September 23, 2022

Respectfully submitted,

By /s/ *John J. Sikora, Jr.*
John J. Sikora, Jr. (6217330)
Heather A. Waller (6302537)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel. (312) 876-7700
john.sikora@lw.com
heather.waller@lw.com

Howard J. Rosenburg (6256596)
KOPECKY SCHUMACHER ROSENBURG LLC
120 N. LaSalle, Street, Suite 2000
Chicago, IL 60602
Tel. (312) 380-6631
hrosenburg@ksrlaw.com

H. Gregory Baker (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel. (212) 336-2871
hbaker@pbwt.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 23, 2022, a copy of the foregoing was served on counsel of record below by electronic means pursuant to the Court's Electronic Case Filing (ECF) system.

By: /s/ *John J. Sikora, Jr.*