UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : : : Plaintiff, : : v. : : SBB RESEARCH GROUP, LLC, et al., : : Defendants. : : | Case No. 19-cv-6473 Judge Sharon Johnson Coleman Magistrate Judge Sheila Finnegan |

**PLAINTIFF SEC'S RESPONSE TO DEFENDANTS' MOTION
TO TAKE MORE THAN TEN DEPOSITIONS**

With just two days left in the discovery period, Defendants expressly moved the Court to allow them to take three more depositions, including one RSM employee and two more SEC examiners, Scott Demar and Anthony Santoro. Underlying the motion is an implicit request: that the Court further extend discovery to accommodate those additional depositions. Defendants' motion is too little, too late. Despite knowing Demar and Santoro's role in the SEC exam for almost two years – and despite having months to bring this issue before the Court – Defendants (a) waited to take their 10 authorized depositions in the last two months of discovery and (b) delayed filing this motion until the brink of a fact discovery cutoff that has already been extended multiple times. As Defendants have not provided any justification for these delays, they are not entitled to a further extension of discovery. In any event, Defendants have failed to demonstrate that these additional three depositions could add any relevant, non-duplicative evidence to this case. To the contrary, the depositions taken thus far reflect that (i) no SBB witnesses remember communicating

1

with Demar or Santoro, (ii) SBB and SEC witnesses largely <u>agree</u> that the SEC expressed concerns to SBB regarding its valuation model in the Fall of 2014 (making it highly likely that any further testimony would be duplicative), and (iii) RSM witnesses consistently reject the notion that anyone from the SEC shared confidential information regarding those concerns with RSM (which supports the notion that SBB is on a fishing expedition rather than seeking to fill any *bona fide* evidentiary gaps).

Fact discovery has been ongoing for over two years. It is time for this case to move forward toward expert discovery and resolution of the SEC's fraud claims against SBB and its officers. Defendants' motion should be denied.

## **BACKGROUND**

The SEC's claims in this case are relatively simple. Among other things, the SEC claims that SBB represented to prospective and current investors – and its auditor – that SBB valued its structured note investments according to GAAP when, in reality, SBB knowingly valued the component options of those notes using a bespoke model (the "SBB Model") that deviated significantly from industry standard option valuation practices and, thus, failed to comply with GAAP valuation requirements.

Discovery has revealed that a number of the factual predicates of the SEC's fraud claim are undisputed. For example, Defendants have admitted that they did not consider GAAP when creating the SBB Model and did not even read the requirements of the relevant GAAP provision (ASC § 820) until the SEC examiners brought it to their attention in the Fall of 2014. (Ex. A, Aven Dep. at 39-42, 133-34; Ex. B, Aven Test. Tr. at 66-69; Ex. C, Navalgund Dep. at 51, 54-56; Ex. D, Navalgund Test. Tr. at 70-75.) SBB witnesses also have admitted that, contrary to the requirements of GAAP, (a) SBB purposefully deviated

2

from industry standards when creating the SBB Model, (b) the SBB Model was not designed to reach a fair value market price (but rather was designed to reflect SBB's own internal "intuition" regarding what the notes are worth), and (c) SBB did not take into account the assumptions and practices of market participants regarding options valuation when valuing the options underlying the notes. (Ex. A, Aven Dep. at 41, 107-08, 125-26; Ex. B, Aven Test. Tr. at 73-75, 126-27, 131; Ex. C, Navalgund Dep. at 61-66, 72-73, 106, 109-11; Ex. D, Navalgund Test. Tr. at 70-75, 126-32.)

In addition to those sworn admissions, the SEC plans to present other evidence of Defendants' scienter. Among other things, the SEC shared a number of concerns with SBB about its valuation model as early as October 2014, but SBB nevertheless kept using its bespoke model for over 13 months. As shown below, those facts also are largely undisputed. SBB witnesses have admitted that (a) they had phone calls with the SEC in the Fall of 2014 in which the exam staff flagged concerns regarding SBB's model inputs, (b) due to the exam inquiries, SBB read the applicable GAAP requirements for the first time, (c) SBB viewed the SEC's concerns as so serious that it immediately considered changes to its model to address the SEC's concerns, and (d) SBB assured the SEC in April 2015 that it would change its model to address the SEC's concerns -- but failed to do so until May of 2016. Despite repeated, consistent testimony confirming that the SEC expressed concerns about the model as early as October 2014, Defendants now seek to depose two more examiners on that topic.

## DISCUSSION

### I. Defendants Have Not Shown Good Cause For A Further Extension of Discovery to Accommodate Additional Depositions.

Defendants did not file their motion for additional depositions until just two weekdays before the extended fact discovery cut-off of March 1, 2023. Because of that delay,

the Defendants, in practical effect, are asking this Court for a further extension of discovery to accommodate three additional depositions. Defendants carefully avoid making that request expressly and have failed to demonstrate why another extension of discovery is justified. For that reason alone, Defendants' motion should be denied.

This Court has broad discretion to deny the Defendants' motion as untimely because it was not filed until the brink of the fact discovery cutoff (which was last extended to <u>avoid</u> such a last-minute discovery motion). Courts routinely deny motions for additional depositions when brought in the waning days of discovery. *See, e.g., Lohmeier v. Gottlieb Mem. Hosp.*, 2021 WL 5005722, *3 (N.D. Ill. Oct. 28, 2021) (holding that plaintiff's failure to file a motion for additional depositions until two days before discovery cutoff -- despite knowing for months that the proposed deponents held discoverable information -- was reason alone to deny the motion); *The Medicines Co. v. Mylan Inc.*, 2013 WL 120245, *3 (N.D. Ill. Jan. 9, 2013) (denying motion to conduct deposition as untimely, finding that – while the parties engaged in a prolonged meet and confer process – plaintiff "unreasonably delayed in seeking the [c]ourt's involvement" by not filing the motion until four days before the fact discovery cutoff); *LKQ Corp. v. GM Co.*, 2021 WL 4125097, *3 (N.D. Ill. Sept. 9, 2021) (denying plaintiff's motion for additional depositions where plaintiff did not conduct its authorized depositions until the last two months of discovery and did not move for additional deps until there were only six weeks of discovery left, holding that "[t]his sort of delay is inappropriate and does not warrant an extension"). Defendants make no effort to explain – let alone justify – the timing of their motion and Defendants' brief fails to mention that they have had every opportunity to bring this issue to the Court while there was still plenty of time in the discovery period.

Discovery opened in this case 27 months ago on November 4, 2020. (Dkt. #50.) Over two years ago, in its May 11, 2020 Response to Interrogatories, the SEC disclosed the names of all SEC staff members assigned to the SBB exam – including Demar and Santoro, the two examiners Defendants now seek to depose. (*See* Ex. F, SEC Resp. to Int. at pp. 7-8.) As Defendants acknowledge, the SEC additionally disclosed that (a) Santoro and Demar had little involvement with the valuation issues of this case, and (b) the three primary witnesses from the exam team related to valuation were Max Gillman the (lead examiner on the SBB exam team), Leo Chan (an SEC valuation specialist), and Andrew Schuster (the exam manager). Defendants deferred their decision regarding whether to depose Mr. Santoro and Mr. Demar until after taking the depositions of those three lead examiners.

Defendants could have started taking those three examiner depositions seven months ago, after this Court's July 28, 2022 resolution of privilege issues relating to the SEC exam. (Dkt. #134.) Instead, Defendants did not take any depositions for five months. Defendants finally completed depositions of the three primary SEC examiners in December 2022 (a month before the then-scheduled discovery cutoff). Defendants offer no explanation for that five-month delay.[1] Defendants finished the last of their three examiner depositions on December 16, 2022 (six weeks before the then-existing cutoff). Defendants could have sought additional depositions then. But, again, the Defendants waited.

---

[1] Defendants apparently were holding off on starting depositions until Judge Coleman denied their objection to this Court's discovery orders on November 22, 2022. (Dkt. #150.) But, Defendants' objection was completely unrelated to the SEC exam and provided no basis for the Defendants to put their depositions on hold. Defendants' objection to this Court's orders was limited to the issue of two privileged settlement presentations exchanged between SEC enforcement personnel and SBB's auditor, RSM. (Dkt. #140.) Defendants did not object to those portions of this Court's discovery orders relating to communications among the SEC's exam staff. (*Id*.) There is no reason the Defendants could not have conducted examiner depositions and teed up this issue back in the late summer and early fall of 2022.

5

Defendants finally notified the SEC in January 2023 that they would seek the depositions of Santoro and Demar -- even though they already had noticed more than 10 depositions. The SEC did not agree to the additional depositions, citing Rule 30's 10 deposition limit and the additional examiners' peripheral involvement with valuation issues. The meet and confer process ended with less than two weeks of discovery left. Although not obligated to do so, the SEC agreed to a brief one-month extension of the fact discovery deadline to March 1, 2023 so the Defendants could quickly raise the issue with the Court. In an agreed motion filed on January 26, 2023, the Parties submitted the proposed extension and Defendants assured the Court that they intended to "fil[e] a motion for leave to take these additional depositions" within a few days. (Dkt. #154 at 4.) The Court granted the proposed extension which gave the Defendants one last opportunity to bring the issue to the Court's attention with some time left in the discovery period. (Dkt. #155.) Instead, the Defendants waited nearly an additional month. Defendants finally filed their motion on Sunday, February 26, 2023 – just 2 weekdays before the extended cut-off for fact discovery.

Defendants have not explained (a) why they waited until the last two months of discovery to conduct their ten depositions, (b) why they waited until January 2023 to request that the SEC make additional witnesses available for deposition despite hitting the 10 deposition limit, or (c) why they requested an additional extension of discovery to allow them to bring disputes to the Court's attention only to wait another month before filing their motion. Discovery has been ongoing for over two years. Defendants have known of Demar and Santoro's role in this case since the SEC first identified them in discovery responses in May 2020. If they wanted to depose Demar and Santoro, they could have asked the Court for additional depositions months ago. At the very least, they could have raised the issue

6

after they finished deposing the SEC's examiners back in December 2022. Instead, they have waited until the last minute, effectively requesting that deadlines in this case be pushed back once again. Defendants' brinksmanship is unwarranted and their last-minute effort to further delay discovery should be rejected.

## II. Defendants Have Not Satisfied The Standard For Obtaining Additional Depositions Under Fed. R. Civ. P. 30.

Even setting aside Defendants' undue delay – and failure to show good cause for a further extension of discovery – their motion for additional depositions fails on the merits. A party may take no more than 10 depositions without a stipulation of the parties or leave of Court. Fed. R. Civ. P. 30(a)(2)(A)(i). The purpose of the FRCP 30 limitation is to "force counsel to think long and hard about who they want to depose and courts should not freely grant relief from the limits without a showing of need." *See, e.g., McDaniel v. Loyola U. Med. Center*, 2016 WL 11734769, \*4 (N.D. Ill. Mar. 3, 2016). To obtain leave from the Court to take a deposition beyond the first ten, Defendants must demonstrate that the requested deposition is: (1) relevant to the parties' claims and defenses, (2) proportional to the needs of the case, and (3) that the burden of the proposed discovery does not outweigh its likely benefit. *See, e.g., Heilman v. Burke*, 2020 WL 13430068, \*2 (C.D. Ill. Oct. 26, 2020). Defendants' motion does not satisfy that standard.

### A. The Information Sought Is Of Minimal Relevance.

A party seeking to exceed the presumptive limit of ten depositions "bears the burden of making a particularized showing of the need for additional depositions." *LKQ Corp.*, 2021 WL 4125097 at \*3 (*quoting NuVasive, Inc. v. Alphatec Holdings, Inc.*, 2019 WL 6894074, at \*1 (S.D. Cal. 2019)). Here, Defendants have not shown that depositions of two additional SEC examiners is likely to uncover <u>any</u> additional relevant evidence.

7

Notably, the Court already has placed narrow bounds on depositions of SEC examiners in this case. This Court ruled that communications among exam staff and the SEC's internal analyses are shielded from discovery under the deliberative process privilege. (Dkt. #134.) In so holding, the Court noted that the exam staff's internal deliberations about the valuation model are "of questionable relevancy." (*Id*. at 23-24.)

As this Court held, what matters is what the SEC examiners told SBB regarding the model and how SBB responded. At the outset, neither the SEC nor SBB has identified Santoro or Demar as having much to contribute on those two issues. Neither party has disclosed Santoro or Demar as potential witnesses in their FRCP 26(a)(1) disclosures, and the SEC already has informed RSM that it will not call either witness in its case-in-chief.

Faced with that reality, Defendants argue that there are two topics on which Mr. Santoro or Mr. Demar can provide testimony. Neither argument has merit. First, Defendants cite the fact that Mr. Demar listened in on an October 2014 phone call between the SEC and SBB in which (a) the SEC identified specific concerns related to SBB's valuation model for the component options of SBB's structured notes and (b) informed SBB that its model deviated from industry standard option valuation practices in several respects. To be sure, that phone call is relevant to the issue of scienter. While SBB witnesses have admitted that – from the beginning – SBB knew that the model deviated from industry standard option valuation practices, the phone call further establishes that SBB was well-aware of these deviations, was on notice of the SEC's concerns as early as the Fall of 2014, and had been informed of the specific GAAP provision that they ignored when creating the model (and continued to ignore until May 2016).

But, while the October 2014 phone call <u>is</u> important, SBB has not demonstrated that Demar or Santoro would have anything relevant and/or non-duplicative to offer on that topic. Significantly, no one has testified that Demar directly communicated with SBB regarding its valuation model. In fact, <u>no</u> SBB witness has testified to <u>any</u> substantive interaction with either Demar or Santoro. When asked about communications with the SEC related to SBB's valuation practices, SBB's witnesses consistently testified that they spoke with Max Gillman and Leo Chan (both of whom have been deposed) <u>and could not identify anyone else from the exam staff who they spoke with</u>.

<u>Second</u>, SBB suggests that Santoro and Demar have relevant information to provide regarding communications with SBB's auditor, RSM. Since SBB was not involved in those conversations, such testimony would be <u>irrelevant</u> to SBB's scienter. After all, SBB's mindset was not informed by communications that it did not participate in. Defendants instead add to the long line of unsupported, speculative theories it has advanced during discovery. This time, Defendants appear poised to argue that the SEC exam staff informed RSM (a third-party) that it had specific concerns about SBB's valuation model in 2015. (Def. Br. at p. 8.) Without any evidence to support that theory, they claim to be entitled to discover "whether the SEC examiners told RSM anything in April-May 2015 about its purportedly serious concerns with SBB's model." (*Id.*)

But, <u>there is no evidence that the SEC ever discussed its valuation concerns with RSM</u>. Defendants have deposed <u>six</u> RSM witnesses. Not one of them has testified that the SEC shared its valuation concerns with RSM. And, there is no email, audit workpaper, or interview note that supports Defendants' theory. To the contrary, RSM's National Professional Standards Group Partner assigned to the SBB exam, Tracey Whetstone

9

testified that: (a) SEC requests for information in connection with exams of RSM audit clients are a common occurrence (and that she has personally witnessed over 100 such exams); (b) during such inquiries the SEC <u>never</u> provides RSM with information related to potential violations committed by the audit client (and instead conducts a "just the facts" interview without providing information to RSM); (c) had the SEC shared such information as to SBB, it would have been a highly unusual event that Whetstone would have remembered; and (d) consistent with that understanding, Whetstone has no memory of SEC exam staff providing RSM information regarding concerns it had about SBB's valuation model. (Ex. G, Whetstone Dep. at 68-69, 114-124, 170, 266-67, 278-79.)

Similarly, RSM engagement partner Lynn Weil testified that SEC exams of RSM audit clients happened "all the time;" RSM relies on its audit clients (in this case SBB) to disclose any issues that arise during the exam; SEC interviews of RSM under those circumstances consist of a one-sided line of questioning; and RSM was not told of the SEC's concerns regarding the model until SBB belatedly sent RSM the SEC's March 2016 deficiency letter in December 2016. (Ex. H, Weil Dep. at 31-33, 126, 130-133, 329-330.) Given the lack of any supporting evidence, Defendants' new theory – that the SEC must have disclosed its valuation concerns to RSM – does not warrant the parties' expending any further time, effort, or resources in discovery.[2]

---

[2] Defendants correctly point out that the SEC has not ruled out calling Mr. Demar or Mr. Santoro as rebuttal witnesses. The SEC reserves this right in case Defendants try to take this unsupported theory for a test drive at summary judgment or trial. If Defendants suggest that either Demar or Santoro shared confidential information about the exam with RSM – *i.e.*, details of the SEC's concerns regarding the SBB valuation model – the SEC should be allowed to put Santoro and/or Demar on the stand to establish that no such conversation took place.

B.  **Any Information that the Witnesses Could Provide Would Be Duplicative and/or Disproportionate to the Needs of this Case.**

Courts have held that "[t]he mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." *Heilman*, 2020 WL 13430068 at *2. Here, Defendants already have deposed three SEC examiners who participated in the valuation discussions at issue. Defendants should not be granted leave to take additional depositions simply to exhaust the recollection of <u>all</u> participants.

Such a scorched earth approach is especially unwarranted because the critical facts surrounding the SEC's conversations with SBB regarding its valuation model <u>are effectively undisputed</u>. In their motion, Defendants claim that further examiner testimony is required to shed light on the SEC's communications with SBB "during which the SEC examiners *allegedly* advised SBB of their concerns regarding the valuation model." (Def. Br. at 5 (emphasis added).) But, there's no "allegedly" about it. Defendant Matt Aven and SBB employees Sandeep Navalgund and Dan Kiefer have admitted that: (a) the SEC shared their concerns regarding SBB's valuation model in the Fall of 2014; (b) despite SBB's representations to investors that they valued securities according to GAAP, Aven and Navalgund had not even heard of the applicable GAAP standards for asset valuation until the SEC examiners highlighted them during these 2014 calls; (c) SBB was so concerned about the issues raised by the SEC in those calls that SBB immediately began considering whether to change the model based on the issues the SEC raised; (d) rather than defend the merits of the valuation model or provide academic support, SBB expressly informed the SEC in April 2015 that it would change the model to address the concerns the SEC raised; and (e) despite assuring the SEC that they would change the model, Defendants kept the original model in place for over a year (*i.e.*, <u>after</u> the Funds' FY 2014 and FY 2015 audits

11

were complete). (Ex. A, Aven Dep. at 139-40, 149-51, 172-79; Ex. C, Navalgund Dep. at 51, 54-56, 169-80, 182-83; Ex. E, Kiefer Dep. at 70-77, 92-95, 135-42.) There is no need to take further depositions of SEC examiners to establish that the SEC raised concerns about the model to SBB or to identify the nature of those concerns. Defense counsel can simply review the testimony of – and communications sent by – their own clients.

To the extent Defendants wish to confirm their clients' admissions with testimony from SEC witnesses, they can look to the testimony of lead examiner, Max Gillman and valuation specialist Leo Chan. Contrary to Defendants' brief, Mr. Gillman did not have a "limited recollection" of his conversation with SBB in which he and Leo Chan outlined the SEC's concerns regarding the model. (Def. Br. at 4.) To the contrary, Mr. Gillman testified about that conversation in detail. Consistent with the recollection of SBB witnesses, Gillman confirmed that; (a) Leo Chan led a phone call with SBB on or around October 30, 2014 regarding SBB's valuation model; (b) the purpose of the call was to obtain SBB's explanation as to why they had modified the SBB Model in ways that deviated from industry standard valuation models (which would reflect a deviation from GAAP); and (c) during the calls, Leo Chan walked "point by point" through each of these modifications to obtain explanations for why SBB was deviating from the industry standard. (Ex. I, Gillman Dep. at 228-234, 235, 246-48.) Far from having a "limited recollection" of the phone call, Gillman and Chan confirmed that the SEC specifically discussed each of the bespoke inputs identified in the SEC's Complaint.[3] They testified that, among other things:

- Chan identified his concern regarding SBB's use of historical volatility, explaining that this differed from the implied volatility input that "market participants were using";

---

[3] In addition, Gillman took extensive notes on his computer and created a summary of Chan's questions and SBB's answers. This summary was produced in discovery and used extensively by SBB during the depositions of the SEC's three examiners.

- Chan noted that SBB was using the bespoke beta multiplier to make up for fluctuations caused by other deviations in the model from industry standard practice;

- Chan identified the SEC's concerns regarding SBB's use of the *mu* drift term, warning SBB that this input "deviat[ed] from the risk neutral framework," and that the risk-neutral framework was "a long-standing part of derivative valuation";

- Chan further warned that SBB's use of the *mu* drift term "while at the same time using the risk-free rate as the discount rate was a violation of the risk-neutral framework" of industry standard option valuation practices;

- Chan highlighted the fact that SBB's model did not account for the credit risk, of the note issuer; and

- SBB appeared to lack knowledge regarding a lot of the concerns the exam staff expressed or the industry standard valuation concepts that Mr. Chan was raising.

(*Id.*; Ex. J, Chan Tr. at 154-155, 158-159, 163-65, 175, 177-78.) Gillman and Chan also confirmed that in April 2015, SBB assured the SEC exam staff that they had created a "new model" that changed the inputs about which the SEC had expressed concern. (Ex. I, Gillman Tr. at 262; Ex. J, Chan Tr. at 177-83.)

In sum, while Defendants may disagree about the significance of the SEC's communications with SBB – or quibble as to whether the SEC's concerns were "questions," "advice," or "warnings" – the SBB and SEC fact witnesses are largely in agreement as to what was said. In light of repeated, consistent testimony from multiple witnesses on this topic, anything Demar or Santoro may contribute would likely be duplicative.

  **C. Given the Minimal Relevance of the Proposed Testimony, the Additional Burden of the Proposed Depositions Outweighs the Potential Benefit.**

While the proposed depositions offer little prospect of revealing relevant, non-duplicative evidence, Defendants' motion presents a risk of further prejudice to the SEC.

13

First and foremost, the Defendants' last-minute motion would require an extension of fact discovery – which has already lasted over two years.

Mr. Santoro is currently assigned to work with the SEC's Division of Economic and Risk Analysis. The SEC would need to find time in his existing schedule to prepare him to testify and to ensure that he fully understands the contours of the SEC's privilege that this Court has recognized. This could take Santoro away from his previously scheduled duties for several days. Mr. Demar now lives in Denver, Colorado, is no longer an SEC employee, and recently started a new job. While the SEC expects that Demar would voluntarily appear for a deposition, his testimony would likely require coordination with Demar's new employer and potential travel for preparation. And, the additional time required to conduct these depositions would presumably cause a domino effect, pushing out the current deadlines for expert discovery. As currently scheduled, the SEC's expert reports are due on April 17, 2023 (likely before Defendants' proposed additional depositions could be scheduled).[4]

## CONCLUSION

The Defendants' motion does not reflect a *bona fide* effort to fill in evidentiary gaps that have unexpectedly emerged in discovery. Defendants have long been aware of Demar and Santoro's role in the SEC's exam of SBB and have been unable to demonstrate that they

---

[4] In a *non sequitur*, Defendants refer to the fact that the SEC took multiple investigative testimonies during its thorough administrative investigation of these facts. They do not explain how this (a) affects the relevancy or proportionality calculus at hand, (b) fulfills their burden of establishing a particularized need for the requested depositions, or (c) provides good cause to support their back-door request for a further extension of discovery. In any event, Defendants fail to mention that the SEC produced all testimony transcripts and exhibits to the Defendants (which, no doubt, assisted them in determining which depositions to take). Presumably, if those testimony transcripts contained any information justifying more than ten depositions, the Defendants would have brought it to the Court's attention long ago.

have non-cumulative, relevant evidence to provide. Rather, it appears that the Defendants lack evidence to fit their narrative and hope to fish for further, potentially useful information. This Court should not grant another extension of discovery to indulge such an effort. After more than two years, the time for fact discovery is over. The Parties should proceed with the expert discovery phase and continue toward dispositive motions and/or a trial, resulting in a judgment on the merits of the SEC's claims. For the foregoing reasons, the Defendants' Motion for Reconsideration should be denied.

    Respectfully Submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

Dated: March 16, 2022

By: */s/ Timothy S. Leiman*
Timothy S. Leiman (Leimant@sec.gov)
Robert M. Moye
Kevin A. Wisniewski
Devlin N. Su
Chicago Regional Office
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Telephone: (312) 353-7390

*Attorneys for the Plaintiff*
*United States Securities and Exchange Commission*

## CERTIFICATE OF SERVICE

I hereby certify that that I have served a copy of the foregoing document on counsel of record by filing it with the Court's ECF system.

Dated: March 16, 2023      */s/ Timothy S. Leiman*

    Timothy S. Leiman

15