UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : : |
| Plaintiff, | : : Case No. 19-cv-6473 |
| v. | : : Judge Sharon Johnson Coleman |
| SBB RESEARCH GROUP, LLC, et al., | : : Magistrate Judge Keri L. Holleb Hotaling |
| Defendants. | : : |

**PLAINTIFF SEC'S MOTION FOR LEAVE TO SUBMIT REBUTTAL REPORTS**

After assuring the SEC and the Court that their expert reports would be limited to pure rebuttal, two of the Defendants' experts have submitted hundreds of pages of new statistical and financial statement analysis that ventures beyond the scope of the SEC's original expert reports. Now, Defendants ask the Court to preemptively deny the SEC the opportunity to rebut their experts' new analysis. Defendants' goal is obvious. They had over three months to analyze and respond to the SEC's expert reports. They now wish to deny the SEC the opportunity to subject Defendants' analysis to expert critique. They hope to offer their experts' opinions into evidence – errors and all – without the possibility of adverse expert testimony about the defects in those opinions. Neither the Federal Rules of Civil Procedure nor the prior scheduling orders of this Court support such an outcome.

When their own reports were at stake, the Defendants took a very different position. Just two months ago, the Defendants argued that this Court should not prejudge the contents of expert reports or get tied up in a premature sorting of which opinions are new and which are rebuttal. They asked the Court (a) to reject the SEC's concerns that

1

Defendants planned to submit analysis beyond the rebuttal that was promised, (b) provide extra time for their reports to be submitted, and (c) reserve matters of admissibility for the District Court. (*E.g.*, Dkt. #176 at 4 n. 3.) This Court agreed and declined to preemptively bar the Defendants' report, holding that, if the SEC has concerns about the nature of the Defendants' report, it should file a motion to strike with the District Court at a later time. (Ex. A, 6/6/23 Tr. at 7.)

      Now that the SEC's reports are at issue, the Defendants ask the Court to join them in a logical u-turn. They ask this Court to preemptively bar the SEC from submitting rebuttal reports that would critique their new statistical and financial statement analysis. They have suggested that the case schedule bars rebuttal by the SEC. This, even though: (1) the Court and the SEC specifically discussed the potential for an SEC rebuttal when the expert schedule was entered, and (2) the Federal Rules allow rebuttal reports to be submitted absent an order or stipulation to the contrary. Defendants plan to ask the Court to find – before the rebuttal reports see the light of day – that the SEC's reports do not meet the standard of rebuttal in Fed. R. Civ. P. 26(a)(2)(D)(ii). This, even though the SEC has had no prior opportunity to critique the analysis of their experts and the Defendants are speculating as to the contents of the SEC's rebuttal. This Court should grant the SEC the same treatment that the Defendants received when their own reports were at stake. The SEC's rebuttal reports should be allowed and issues of admissibility should be resolved by the District Court. The SEC respectfully requests that its Motion for Leave to Submit Rebuttal Reports be granted.

**BACKGROUND**

One of the central issues of this case is whether SBB's valuation model for structured notes complied with the provisions of ASC § 820 – the GAAP provision that specifies the proper methods for valuing various categories of assets. Among other things, ASC § 820 requires that inputs for valuation models such as SBB's "reflect the assumptions that market participants would use when pricing the asset or liability, including assumptions about risk." ASC § 820-35-53. ASC § 820 does not speak to model <u>outputs</u> or contain any reference to output materiality. ASC § 820 does not establish a "materiality" threshold; whether qualitative or quantitative. Among other allegations, the SEC claims that (a) SBB told investors that it would value its structured note investments at "fair value," *i.e.,* consistent with the assumptions and practices of other market participants, and (b) SBB instead created a bespoke model that did not comply with that requirement. (*See, e.g.,* Dkt. #1 at ¶¶ 33-36.)

In addition to other evidence, the SEC intends to offer the opinions of two experts related to the ASC § 820 portion of the case. On April 17, 2023, the SEC submitted the reports of (a) Dr. Craig McCann, a valuation expert who opines that SBB's model inputs deviated significantly from standard inputs used by market participants, and (b) Peter C. Hickey (an expert in the application of ASC § 820 who opines that SBB's valuation process is inconsistent with the "fair value" requirements of ASC § 820). Defendants submitted their first reports three months later. They submitted the reports of Dr. Arun Sen (a valuation specialist) and Gene Deetz (a CPA who performed what amounts to a full-blown restatement analysis of SBB's annual financial statements). Although the Defendants styled the Sen and Deetz reports as "rebuttal," those reports include hundreds of pages of new

3

statistical and financial statement analysis that (a) departs from the opinions offered by the SEC and (b) has not yet been subject to expert critique.

**The SEC's McCann Report and the Defendants' Response.**

The SEC's McCann Report:

Craig McCann is an expert in the valuation of derivative instruments, including the valuation of options that underlie structured notes. McCann's report (a) describes how SBB's structured note investments work (Ex. B at 7- 18); (b) explains how the underlying option component of structured notes is typically valued (*id*. at pp. 18-28); (c) details the industry standard model components that should be used to value such notes (*e.g., id*. at 18-34); (d) evaluates the inputs to SBB's Model (including SBB's custom inputs of *mu*, short-term historical volatility, *beta*, and linearization) (*id*. at 34-50); and (e) opines that SBB's inputs sharply deviate from standard option valuation practices (*id.*).

In the final paragraphs of McCann's report (and supporting exhibits), McCann addresses SBB's claim that other valuation methods are "biased" – and further evidences SBB's departure from industry standard models – by including charts that compare the results of SBB's model to valuations generated by more market-standard approaches (including values in SBB's bank statements). (*Id*. at 50-53.)

Defendants' Sen Report and Its New Statistical Analysis:

Defendants retained Dr. Arun Sen ostensibly to "rebut" both the McCann Report and the Hickey Report. (Ex. C at ¶ 2). But, Sen's report ignores large portions of McCann's opinions. He does not respond to McCann's critique of SBB's valuation inputs and methodology, and does not dispute McCann's opinion that SBB's bespoke *mu*, *beta*, short-term historical volatility, and linearization inputs are inconsistent with options theory and

4

the assumptions of market participants. Further, Sen devotes only three paragraphs (out of 122) to the contents of the Hickey Report. (*Id.* at ¶¶ 37, 59, 118). His report does <u>not</u> reference GAAP or ASC § 820, and he does not dispute Hickey's core opinion: that SBB's valuation model and methodology failed to comply with ASC § 820's requirements.

Instead of addressing McCann's opinion that SBB's model deviated from the assumptions and practices of market participants, Dr. Sen creates a <u>new</u> statistical analysis using a valuation model that (a) SBB never used, (b) McCann did not use (or even mention), and (c) has not previously arisen in this case. (*Id.* at ¶¶ 12, 36, 68-117). Sen spends 20 pages discussing how this previously unmentioned "Heston model" operates. He explains the "mechanics of the Heston model" (*id.* at ¶¶ 68-72), his calculation of a "margin of error for the Heston model" (*id.* at ¶¶ 73-79), and his valuation of SBB's notes using the Heston model (*id.* at ¶¶ 80-93). Sen also ventures far from the McCann report by performing a new statistical comparison between SBB's note valuations and the valuations supplied by issuing banks. (*Id.* at ¶¶ 105-117). He then concludes, incorrectly, that there is no statistically-significant difference between the outputs of SBB's model and values supplied by issuing banks.[1] (*Id.* at 40-41.)

The new statistical analysis from Dr. Sen (a) overlooks dozens of important data points, (b) includes data input errors, (c) cherry picks data, and (d) includes other methodological errors. These errors undermine the central conclusion of Sen's report. The SEC is entitled to subject Sen's opinions to an expert rebuttal so that the Court (and, if

---

[1] In addition, Dr. Sen created a new "Waterfall" analysis, which neither Hickey nor McCann performed. In that analysis he uses the newly-mentioned Heston model as a baseline, purportedly to evaluate the effect of SBB's valuation inputs (concluding that certain of SBB's inputs had "offsetting effects" on valuation). (Ex. C at ¶¶ 118-122). This new analysis – which could have been done without reference to the McCann report – suffers from many of the same problems contained in his new statistical comparison of SBB's valuations to those from SBB's bank statements.

5

applicable, a jury) may fairly evaluate whether Sen's expert opinions and statistical analysis are reliable. The SEC has not yet had that opportunity.

**The SEC's Hickey Report on the Requirements of ASC § 820 and Defendants' Response.**

<u>The SEC's Hickey Report on the Requirements and Significance of ASC § 820:</u>

Peter Hickey is an expert in the requirements of (and application of) ASC § 820. He opines that SBB deviated from ASC § 820's requirements because, among other things: (a) Defendants did not maximize the use of observable inputs; (b) the SBB model was an entity specific model (rather than a market-based approach as ASC § 820 requires); (c) SBB's model failed to account for the assumptions and practices of market participants; and (d) Defendants ignored available data regarding the underlying options in favor of their own "intuition" regarding proper inputs. (*See* Ex. D.)

Critically, both ASC § 820 and Hickey's report focus on the requirements for model <u>inputs</u> and the acceptable <u>methods</u> for determining fair value. The relevant portions of ASC § 820 make no reference to the evaluation of model <u>outputs</u>. However, to highlight the symptoms of SBB's violations of ASC § 820, Hickey discussed the changes in certain performance metrics for SBB's funds (including performance fees, and Sharpe and Sortino ratios), but he did <u>not</u> conduct anything resembling a restatement analysis of SBB's annual financial statements.

<u>The Defendants' Deetz Report and His New Financial Statement Materiality Analysis</u>:

Defendants submitted a report from Gene Deetz purportedly to rebut Hickey's ASC § 820 analysis. But, the Deetz report spends little time engaging or rebutting Hickey's opinions. Deetz briefly – albeit incorrectly – opines that implied volatility is an unobservable input under these circumstances (Ex. E at ¶ 34), and that ASC § 820 does not limit the use

of valuation techniques to measure fair value.[2] (*Id.* at ¶¶ 53-68.) He otherwise ignores Hickey's core opinions (a) that ASC § 820 requires model inputs to conform to the assumptions of market participants, and (b) that SBB's model flunks that test.

Instead, Deetz spends the bulk of his report – almost 40 pages and over 200 pages of spreadsheet calculations -- addressing <u>a different subject matter</u>. Deetz conducts what amounts to a full-fledged restatement analysis of SBB's annual financial statements. He focuses on whether SBB's Model led to material misstatements in SBB's annual financial statements under SAB 99 (a provision of GAAP distinct from ASC § 820). Significantly, Deetz concedes that Hickey did not perform such an analysis. (*Id.* at 24-25.) While he depicts this as some kind of error on Hickey's part, that admission emphasizes the true scope of Hickey's opinions. Hickey did not offer opinions related to a numerical materiality or restatement analysis of SBB's annual financial statements. He was tasked with analyzing whether SBB met the requirements of ASC § 820 – a section that does not mention (let alone hinge on) SAB 99 or establish materiality thresholds for valuation models. In short, Deetz's numerical SAB 99 analysis addresses a different subject matter.

Deetz's new 240-page financial statement analysis contains: (a) unsupported assumptions, (b) misapplication of GAAP rules, (c) cherry-picking of inputs, (d) reliance on the faulty Sen statistical analysis, and (e) calculations that do not support the stated conclusions. The SEC is entitled to subject those opinions to expert scrutiny so that the Court, and if applicable, a jury, can properly evaluate whether Deetz's conclusions and financial statement analysis are reliable. The SEC has not yet had that opportunity.

---

[2] For purposes of this brief, we have removed pages from the Deetz report (Ex. E) that the Defendants have designated as confidential pursuant to the Protective Order in this case.

## DISCUSSION

### I. The Agreed Schedule for Expert Discovery Does Not Bar the SEC From Rebutting the New Analysis From Defendants' Experts.

Fed. R. Civ. P. 26(a)(2)(D)(ii) provides that – absent a stipulation or Court order to the contrary – a rebuttal report offered "solely to contradict or rebut evidence on the same subject matter" may be submitted within 30 days "of the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). Critically, where a stipulation or scheduling order is silent as to the ability of a party to rebut an expert report, <u>the provisions of Fed. R. Civ. P. 26(a)(2)(D)(ii) govern</u>. *See, e.g., Aircraft Gear Corp. v. Marsh*, 2004 WL 189982, at *5 (N.D. Ill. Aug. 12, 2004) (allowing plaintiff to file rebuttal report on topics addressing opinions of defense expert where schedule was silent as to plaintiff's ability to do so); *Smetzer v. Newton*, 2012 WL 2064507, at *1 (N.D. Ind. June 7, 2012) (holding that, where neither the Court nor the parties set a deadline for plaintiff to submit rebuttal, Fed. R. Civ. P. 26(a)(2)(D)(ii) applies).

At a recent telephonic status hearing, Defendants suggested that the schedule for expert discovery in this case bars the SEC from submitting rebuttal reports. That is incorrect. The agreed schedule in this case not only is silent regarding the SEC's ability to rebut new analyses contained in the Defendants' reports, the SEC <u>expressly reserved its right to submit rebuttal before the schedule was entered</u>. (Ex. F, 2/10/2022 Tr. at 12.) As the Court considered the proposed agreed schedule: (a) the Court asked the SEC about the possible need for SEC rebuttal reports; (b) the SEC informed the Court that rebuttal may be necessary; and (c) the SEC informed the Court and Defendants that, in that event, the SEC would need time to submit rebuttal reports:

```
THE COURT: […]so SEC discloses three or four experts, then
defendants have a rebuttal expert or experts, will [the] SEC
```

```
then be seeking a disclosure date after that, or it depends on
what, I guess, what the issues are?

MR. LEIMAN: I think it will depend upon the issues. If they are
true rebuttal experts, the depositions may be enough, but if
[the Defendants] are introducing new issues in response, we
would probably need some more time in order to give our original
experts an opportunity to have an additional disclosure.
```

(Ex. F, 2/10/2022 Hearing Tr. at 12 (emphasis added).)

The Defendants did not object to (or even mention) the SEC's express reservation of the ability to submit further disclosure. And, the Court's order did not preclude the SEC from submitting rebuttal reports or seeking additional time to do so.

In short, the SEC did not stipulate or waive its right to offer rebuttal to Defendants' expert analysis. To the contrary, before the agreed schedule was entered, all Parties were aware that the SEC might choose to submit rebuttal contingent on the nature of the analysis offered by Defendants' experts.³ With no stipulation to the contrary, the SEC may submit rebuttal pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii). The agreed discovery schedule does not support a contrary result.

## II. The SEC's Proposed Reports Are Appropriate Rebuttal.

Based on their representations to the Court and the SEC, the Defendants appear poised to argue that (a) their report was a "rebuttal" report and, therefore, the SEC's response necessarily would be impermissible "sur-rebuttal," and (b) under the schedule entered by the Court, any rebuttal reports should have been issued by the July 17, 2023 rebuttal deadline. As this Court previously recognized – that speculative argument goes to

---

³ In fact, when seeking an extension to submit the Deetz report, the Defendants quoted this same exchange from the hearing. They cited the SEC's ability to file a rebuttal report as proof that the Deetz report did not have to be limited to the scope of Hickey's opinions. (Dkt. #180 at ¶¶ 3-4.) Defendants cannot have it both ways.

9

the admissibility of expert opinion, an issue that should be reserved for the District Court. (Ex. A at 7-9.)

In any event, Defendants' argument is illogical. The SEC could not possibly have critiqued the numerical analysis of Deetz and Sen by the July 17 rebuttal deadline <u>because those reports had not been submitted yet</u>. In trying to preemptively bar rebuttal, the Defendants must argue that either (a) the SEC should have used precognitive ability to anticipate the contents of the statistical analyses, or (b) unlike expert opinions of any other litigant, their experts are somehow shielded from expert critique and should be presented to a jury without vetting. The Federal Rules and the prior orders of this Court do not support either position.

Defendants' view that their own experts' reports are "pure" rebuttal ignores how courts evaluate expert opinions. Calling the Deetz report a "rebuttal" does not render all opinions therein immune from response (or automatically brand an SEC response as "sur-rebuttal"). Courts do not take such a binary approach, but rather examine the opinions one at a time to see if they are mere rebuttal or a new analysis that merits critique. *See, e.g., Mendez v. City of Chicago*, 2021 WL 3487328, \*4-\*5 (N.D. Ill. Aug. 9, 2021) (where defendant issued a responsive report three months after plaintiff's initial report, court reviewed each opinion at issue and allowed plaintiff's expert to submit a rebuttal report with opinions that were "not bolstering support for his [initial opinion] but rather refuting points made by [defendant's expert]").

To be sure, there are aspects of the Deetz and Sen reports that respond directly to the opinions in the SEC's reports; therefore, any SEC rebuttal will <u>not </u>address those sections. For example, Sen critiques the volatility input that McCann used when demonstrating

10

market standard valuation inputs.[4] (Ex. C at 19-20.) Similarly, Deetz's report briefly, albeit incorrectly, addresses Hickey's opinions in concluding that (a) ASC 820 does not limit the use of valuation techniques, (Ex. E at ¶ 34), and (b) implied volatility is not an observable input for the SBB notes. (*Id.* at ¶¶ 53-68.) Accordingly, the "battle of experts" is joined on those issues and rebuttal is not necessary. The SEC further recognizes that "rebuttal should be the result of a winnowing process, not an expansion of a party's original report" and, therefore, it will not offer new expert opinions that merely bolster its prior reports. *See, e.g., Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) (testimony that is offered solely as additional support for Defendants' case – rather than contradicting the opinions and evidence of another expert -- is not "rebuttal").

Instead, the SEC intends to submit a critique that (a) examines the new statistical and financial statement analyses in the Sen and Deetz reports, (b) explains why the new numerical analyses are flawed, (c) identifies errors in the Defense experts' input data, and (d) uses the Defense experts' own methods to show that – once the errors are corrected – the their methods do not support their conclusions. That is classic rebuttal opinion.

### III. The SEC Should Receive The Same Opportunity for Rebuttal That The Defendants Received.

As shown above, the SEC believes that the Sen and Deetz reports contain new analyses ripe for rebuttal. That said, the Court does not need to resolve that issue now. The SEC merely asks for the same treatment afforded the Defendants when they asked for additional time to submit the Deetz report. The SEC should be allowed to submit its

---

[4] Even this criticism does not squarely address McCann's opinion. While critiquing McCann's volatility input, Sen does not discuss the volatility input that SBB actually used or refute McCann's opinion that SBB's use of short-term historical volatility deviated from the assumptions and practices of market participants.

11

rebuttal reports, limited to a critique of the analyses of Defendants' experts, and the Court should reserve issues of admissibility for resolution by the District Court in a later proceeding. The SEC's rebuttal reports should not be barred before they see the light of day. *See, e.g., Constructora Mi Casita v. Nibco, Inc.*, 2019 WL 8112486, *3 (N.D. Ind. June 5, 2019) (rejecting defendant's effort to preemptively bar plaintiff's rebuttal and supplemental expert disclosures, holding "the court need not opine on the propriety of [plaintiff's] potential supplemental disclosures at this time," and that defendant "always has the option" of moving to strike the opinions they deem improper in a later proceeding).

Granting this motion would be consistent with how the Court resolved this issue when the <u>Defendants'</u> reports were the subject of motion practice. (Ex. A, 6/6/2023 Tr. at 7-9.) Just two months ago, Defendants sought an extension of time so they could file a response to the SEC's Hickey report. (Dkt. #176.) At the time, the SEC expressed concern that the Defendants might use this additional time to submit a new numerical materiality analysis of SBB's financial statements, rather than actually addressing Hickey's opinions under ASC § 820 (a prediction that has now come to pass). (Dkt. #179 at 3, 10-12.) The SEC argued that such a report was not *bona fide* rebuttal and such a submission would be improper. (*Id.* at 10-13.)

The Court did not agree with the SEC's arguments and granted the Defendants' extension request, effectively allowing them to submit the Deetz report. In doing so, the Court held that – because the SEC had not seen the Deetz report – the SEC was speculating about its contents. (Ex. A, 6/6/2023 Tr. at 7.) The Court also determined that it was not appropriate to preemptively bar the report. (*Id.*) The Court (a) held that the SEC could file a motion to strike after the contents of the report were known, (b) found that such a motion

12

should be reserved for later proceedings in front of the District Court, and (c) rejected the SEC's prejudice argument, finding that "the risk of disputes about the proper scope and content of expert reports is present in every case involving the submission of expert reports … and if that risk materializes here, the SEC's solution is to make its argument when it receives the report and … the actual content of the disclosure is known." (*Id*. at 9.)

The Court's logic applies with full force here. By this motion, the SEC merely asks for the same treatment: that it be allowed to submit a report limited to a critique of the new analyses in the Sen and Deetz reports. As a scheduling matter, the SEC's request is appropriate. The SEC has not had the opportunity to respond to the Defense experts' new analyses and could not possibly have done so before the those reports were submitted. The SEC's request is consistent with (a) the SEC's representations to the Court when the expert schedule was implemented; and (b) the provisions of Fed. R. Civ. P. 26(a)(2)(D)(ii). Accordingly, the Court should allow the SEC's rebuttal report to be submitted and reserve questions of admissibility for later proceedings in the District Court.

## IV. The SEC Will be Severely Prejudiced If It Is Not Allowed to Rebut the Defense Experts' New Analyses.

If the Defendants are allowed to preemptively shield the Deetz and Sen analyses from expert scrutiny, it would be manifestly unfair and would seriously prejudice the SEC. Defendants prefer a discovery and trial process where: (1) they get three months to pore through the reports of the SEC's experts; (2) the SEC is not afforded the same opportunity; (3) Defendants are able to put their experts on the stand at trial and share their analyses with the jury (errors and all); and (4) the SEC cannot offer any expert critique or testimony in response. While that may be every litigant's dream, the Federal Rules were designed to avoid such a prejudicial result.

The SEC believes that – if given the chance to properly respond to the Sen and Deetz reports – it can demonstrate that the analyses are unreliable due to mathematical errors that throw off the results, cherry picking of inputs, materiality standards without sufficient support, and calculations that do not support the professed conclusions. Allowing the SEC to submit rebuttal reports would, therefore, assist the Court and jury by clarifying the issues in this case.

Meanwhile, the prejudice to the Defendants is low. As this Court pointed out in allowing the Defendants an extension to file the Deetz report, no trial date has been set in this case. And, the proposed rebuttal reports would come from the same SEC experts who (a) already have been disclosed and (b) have not been deposed yet. There would be no need to reopen a deposition that already has taken place and no need for the Defendants to take more that the three expert depositions they have already planned for.

Defendants have suggested that even a brief delay from SEC rebuttal would be unduly prejudicial. At the outset, the SEC notes that – had the Defendants not radically departed from the positions they took when their own expert reports were at issue – the SEC's rebuttal reports would have been submitted with a month left in discovery to complete depositions. No extension would have been necessary. Second, unlike the Defendants – who had three months to delve into the SEC's expert opinions – the SEC is prepared to submit its rebuttal reports within two weeks of the Court's order granting leave (less time than Fed. R. Civ. P. 26(a)(2)(D)(ii) would have allowed). If the SEC obtains leave to submit its reports, any delay would be minimal.

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that its motion be granted and that it be given leave to submit reports rebutting the analyses in the Defendants' Sen and Deetz reports within two weeks of entry of an order granting leave.

Respectfully Submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

Dated: August 11, 2023

By: */s/ Timothy S. Leiman*
Timothy S. Leiman (Leimant@sec.gov)
Robert M. Moye
Kevin A. Wisniewski
Devlin N. Su
Chicago Regional Office
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Telephone: (312) 353-7390

*Attorneys for the Plaintiff*
*United States Securities and Exchange Commission*

## CERTIFICATE OF SERVICE

I hereby certify that that I have served a copy of the foregoing document on counsel of record by filing it with the Court's ECF system.

Dated: August 11, 2023

*/s/ Timothy S. Leiman*

Timothy S. Leiman