# EXHIBIT 8

🚩 **KeyCite Yellow Flag - Negative Treatment**
Declined to Extend by In re Biomet M2a Magnum Hip Implant Products Liability Litigation, N.D.Ind., December 21, 2017

2005 WL 1162979
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Teresa LECLERCQ, Al LeClercq, individually, and on behalf of all persons similarly situated, Plaintiffs,
v.
THE LOCKFORMER COMPANY, a division of Met–Coil Systems Corporation, a Delaware corporation, Mestek, Inc., a Pennsylvania corporation, and Honeywell International, Inc., a Delaware corporation, Defendants.
MESTEK, INC., as assignee of Met–Coil Systems, LLC, f/k/a Met–Coil Systems Corporation, Third–Party Plaintiff,
v.
ARROW GEAR COMPANY, Ames Supply Co., Bison Gear; Dynagear, Inc., Flexible Steel Lacing Co., Magnetrol International, Inc., Molex Incorporated, Morey Corporation, Rexnord Corporation, Tricon Industries, and Lindy Manufacturing Company, Third–Party Defendants,
v.
DOWNERS GROVE SANITARY DISTRICT, et al., Fourth–Party Defendants.

No. 00 C 7164.
|
April 28, 2005.

**Attorneys and Law Firms**

Norman Benjamin Berger, Anne Elizabeth Viner, Michael D. Hayes, Varga, Berger, Ledsky, Hayes & Casey, Chicago, IL, Charles James Corrigan, Dommermuth, Brestal, Cobine & West Ltd., Edward John Manzke, Shawn Michael Collins, The Collins Law Firm, Naperville, IL, for Plaintiffs.

Daniel J. Biederman, Grotefeld & Denenberg, L.L.C., David J. Tecson, James Raymond Pranger, Julie Ann Doyle, Chuhak & Tecson, Douglas Bennett Sanders, J. Patrick Herald, Michael A. Pollard, Vincent S. Oleszkiewicz, Baker & McKenzie, Kathleen Veronica Crowe, City of Chicago, Law Department Corporation Counsel, Matthew A.C. Zapf, Oscar L. Alcantara, Salvador Kurt Karottki, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Harold Roderic Heard, Anthony Gerard Hopp, Joseph Francis Madonia, Wildman, Harrold, Allen & Dixon, Peter Vincent Baugher, Jennifer A. Waters, Schopf & Weiss, Alan Bruce White, Mark D. Erzen, Karaganis, White & Magel Ltd., Kimberly A. Krugman, Tina Marie Paries, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Eric L. Samore, Jerome Joseph Duchowicz, John D. LaBarbera, Molly Anne Caprez, O'Hagan, Smith & Amundsen, L.L.C., Mark P. Bischoff, Monica A. Forte, Bischoff Partners, LLC, Chicago, IL, Ann McClure, Mestek, Inc., Westfield, MA, Thomas J. Fleischmann, Thomas J. Fleischmann & Associates, St. Charles, IL, Lisa Swedenborg Getson, Friedman Kaplan Seiler & Adelman LLP, New York, NY, for Defendants.

Vincent S. Oleszkiewicz, David P. Hackett, Richard M. Saines, Baker & McKenzie, Francis Anthony Citera, Matthew Farrish Prewitt, Paul Alexis Del Aguila, Ruth A. Bahe–Jachna, Greenberg Traurig, LLP, Chicago, IL, for Third–Party Plaintiff.

Bradford D. Roth, Scott J. Brown, Timothy L. Conti, Cassiday, Schade & Gloor, Bryant Todd Lamer, Alan P. Bielawski, William Gust Dickett, Sidley Austin Brown & Wood LLP, John William Loseman, Douglas Allan Lindsay, John A. Heller, Lewis, Overbeck & Furman, Joseph R. Jeffery, Chittenden, Murday & Novotny, LLC, Joseph A. Strubbe, Vedder, Price, Kaufman & Kammholz, P.C., Alan I. Greene, Hinshaw & Culbertson LLP, Michael John Maher, Elizabeth Schroer Harvey, Swanson, Martin & Bell, Paul W. Schroeder, Charles T. Wehland, Jones Day, Joseph J. Lotus, Scott Gene Early, Gary S. Rovner, Foley & Lardner, Steven P. Handler, Mark Alan Bilut, Todd Richard Wiener, McDermott, Will & Emery LLP, J. Timothy Eaton, Carol Mahoney Douglas, Patricia A Rooney, Ungaretti & Harris, Mark Andrew Lies, II, Seyfarth Shaw, Linda P. Kurtos, Pamela Reasor Hanebutt, Eimer Stahl Klevorn & Solberg, LLP, Stacey A. Cischke, Anderson, Rasor & Partners, LLP, Chicago, IL, Cynthia E. Smith, Roy L. Bernstein, Michael, Best & Friedrich, Milwaukee, WI, John J. Zimmerman, Foley & Lardner, Washington, DC, for Third–Party Defendants.

*MEMORANDUM OPINION AND ORDER*

LEINENWEBER, J.

**\*1** Before the Court are the parties' dueling motions to bar expert testimony. Third–Party Plaintiff Mestek ("Mestek") seeks to exclude the expert testimony of Geoffrey Glanders

and Cecil Lue–Hing. Third–Party Defendants and Hybrid Defendants (collectively, the "TPDs") seek to exclude the expert testimony of Ronald St. John and James Mercer.

## I. DISCUSSION

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), courts must act as gatekeepers to ensure that expert testimony satisfies the admissibility requirements of Federal Rule of Evidence 702. Expert testimony based on scientific, technical or other specialized knowledge must be relevant and reliable. *See id.* The testimony must be "based upon sufficient facts or data," "the product of reliable principles and methods," and the witness must have "applied the principles and methods reliably to the facts of the case." FED.R.EVID. 702. Certain guidelines aid the court in its gatekeeping function, including whether the expert's "theory or technique ... can be (and has been) tested," whether it "has been subjected to peer review and publication," whether there is a high "known or potential rate of error," whether there are "standards controlling the technique's operation," and whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Daubert,* 509 U.S. at 593–94. Even when the expert's opinion is derived from experience or training these guidelines are applicable. *See Clark v. Takata Corp.,* 192 F.3d 750, 758 (7th Cir.1999).

### A. Geoffrey Glanders

TPDs submit Geoffrey Glanders as a hydrogeology expert. Mestek moves to strike Glanders' testimony in its entirety because: (1) he is unqualified as a hydrogeology expert generally; (2) he is unqualified to testify about specific topics in his reports; and (3) his opinions are unreliable because he does not provide scientific support. It is undisputed that Glanders' testimony is relevant to an issue in the case.

Mestek argues that Glanders' lacks hydrogeology qualifications because he is not an accredited Professional Hydrogeologist; he never took college hydrogeology classes; and never published in a peer-reviewed journal. TPDs respond that Glanders is a qualified hydrogeology expert based upon his education, knowledge, skill, and experience. The Court must "consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir.2000). Glanders is a Registered Professional Geologist with a Bachelor of Science in Geology. He has 25 years of project management experience at contamination sites and has been the project manager at 30 to 50 sites with groundwater contamination resulting from chlorinated solvents. Based upon his practical experience and education, the Court concludes that Glanders is qualified as a hydrogeology expert.

**\*2** Mestek next challenges Glanders' qualifications to provide an opinion on computer modeling. Glanders admitted that he had no personal experience with computer modeling of groundwater flow, stating:

> Q. Have you ever used the WinFlow software yourself personally?
>
> A. No.
>
> ....
>
> Q. ...[H]ave you reviewed any [non-user manual] ... literature regarding the WinFlow software?
>
> A. Not that I can recall.

(Glanders Tr. 27–28).

> Q. ... Do you have any experience with other modeling software, referring specifically to software to model groundwater flow?
>
> A. No direct experience....
>
> Q. Do you have any familiarity with models—groundwater flow models designed to model fractured flow?
>
> A. No.

(*Id.* at 173–74).

Accordingly, Glanders is not qualified to provide expert testimony on computer monitoring of groundwater flow and such testimony is barred.

Mestek also argues that Glanders cannot provide expert testimony on wastewater treatment of the Downers Grove Sanitary District Wastewater Treatment Plant (the "DGSD WWTP") effluent line because he is not a sanitation engineer. TPDs respond that Glanders's opinion applies his expert knowledge to the issue of the effluent line's viability as a contamination pathway, not to its physical design. Based on

Glanders' considerable experience, the Court concludes that Glanders is qualified to testify about wastewater treatment and the effluent line's viability as a contamination pathway. However, Glanders is barred from testifying about the physical design of the DGSD effluent line.

Next, Mestek alleges that Glanders' testimony is inherently unreliable because he ignores critical data, relies upon false factual assumptions, and fails to substantiate his conclusions with accepted scientific principals. The Court has reviewed the parties' filings, and concludes that Glanders' opinion is reliable. The Court makes the following specific observations. As to the insufficient facts allegation, the Court's review of Glanders' reports reveals that he relied on ample scientific data—17 years of sampling data, groundwater maps, mounding drawings, as well as his 25 years of experience. Mestek contends that Glanders' use of the Tiered Approach to Corrective Action ("TACO") standard was an inappropriate scientific standard. However, TACO, the standard utilized by the Illinois Environmental Protection Agency (the "IEPA"), was a legitimate means to determine whether there was an exposure pathway from the soil under the DGSD effluent line to groundwater. Mestek's remaining allegations of Glanders' unreliability are similarly without merit—Glanders used available data, his 25 years of experience with contamination sites, and maps in formulating his opinions. The Court's role is not "to decide whether an expert's opinion is correct ... [and is] ... limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith,* 215 F.3d at 719. The Court concludes that Glanders' opinion is relevant and reliable, and accordingly, Mestek's motion to bar Glanders' testimony is denied on these grounds.

### B. Cecil Lue–Hing

*3 It is undisputed that Cecil Lue–Hing, an environmental engineer for 40 years, is qualified to render expert testimony in this case. He is a Registered Professional Engineer and holds numerous advanced degrees in engineering. The relevance of the testimony is also undisputed. Mestek seeks to bar Lue–Hing's testimony as unreliable. Mestek contends Lue–Hing's reliance on 17 annual effluent samples is in conflict with a book he co-authored that advocates monthly monitoring of contaminant levels in air emissions from wastewater treatment plants. TPDs respond that the book is not applicable as it dealt with monthly monitoring of influent in major municipalities, not effluent of the water leaving plants.

Lue–Hing testified that the IEPA effluent testing standard is once yearly, and he used the available 17 annual samples (taken from federal and state sampling and reporting requirements). This technique is generally accepted in the relevant scientific community. Mestek also argues that 17 samples are not sufficient and not representative of the time period before the samples. Lue–Hing explains that he based his opinion on review of literature, his extensive experience, and his own research. For this case, Lue–Hing has demonstrated that the methods and data he used generally are accepted in the relevant scientific community. Mestek's objections relate to Lue–Hing's conclusions, not his methodology. But the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Smith,* 215 F.3d at 718. Accordingly, Mestek's motion to bar the expert testimony of Lue–Hing is denied.

### C. Ronald St. John

Ronald St. John submitted multiple reports opining on a DGSD sewer line contamination pathway that runs from Ellsworth Industrial Park ("Ellsworth") to the *LeClercq* and *Mejdrech* class areas. It is undisputed that St. John is a qualified hydrogeology expert.

TPDs seek to bar St. John's testimony because he is not a wastewater engineer and he cannot testify about the presence of contaminants in effluent. Specifically, TPDs argue that St. John cannot provide testimony on whether the DGSD WWTP would effectively remove and treat contaminants before they reached the plant's effluent line. Mestek responds that St. John's opinion is based on his perspective as a hydrogeologist. Mestek admits that St. John is not qualified to "offer any opinion about the wastewater treatment processes ... the design or operation of the DGSD WWTP ... [or] the fraction of COCs removed by DGSD WWTP treatment processes," and asserts that he offers no such opinions. (Resp. Br. at 20).

The Court's review of St. John's reports reveals that he relied on his experience and knowledge of the Lockformer site, IEPA reports, water and soil samples taken by his company, and maps. The Court concludes that St. John is qualified to provide expert testimony on hydrogeologic issues relating to

the sewer line contamination theory. However, based on his admitted lack of qualifications in certain specialized areas, he is barred from providing an opinion on the physical design/ operation of the DGSD sewer line, the wastewater treatment processes, and the removal of contaminants ratios from the line.

 *4 TPDs also contend that St. John's testimony must be barred in its entirety as unreliable because it ignores obvious and uncontested material facts. Specifically, St. John failed to acknowledge and account for 17 annual effluent samples reflecting non-detect for the contaminants TCE, PCE, and TCA in the DGSD effluent. Further, TPDs contend that St. John failed to address meaningfully in his reports the results of certain groundwater and effluent line samples taken by his own company. Finally, St. John failed to consider other documented sources of DGSD contamination.

The Court agrees that St. John's testimony is unreliable. In pertinent part, St. John opines that the contaminants TCE, PCE, and TCA traveled in relatively equal proportions from Defendants' facilities to the DGSD WWTP, passed through the DGSD WWTP into the effluent line, leaked out of the effluent line, migrated downward through the soil to contaminate the soil and groundwater beneath the effluent line, and the contaminated groundwater then carried the TCE, PCE, and TCA to the *LeClercq* and *Mejdrech* class areas. The 17 effluent samples that St. John ignored reflect non-detects for TCE, PCE, and TCA—this data clearly is material and would be relevant to St. John's conclusions. Mestek concedes that St. John did not include these 17 samples in his hydrogeological analysis. St. John testified that he was aware of the DGSD effluent data when he prepared his reports.

The Court concludes that St. John's failure to discuss the import of, or even mention, these material facts in his reports amounts to "cherry-pick[ing] the facts he considered to render his opinion, and such selective use of facts fail [s] to satisfy the scientific method and *Daubert*." *Holden Metal & Aluminum Works v. Wismarq Corp.,* No. 00 C 0191, 2003 WL 1797844, at \*2 (N.D.Ill. Apr.2, 2003). This disregard of relevant data undermines the reliability of St. John's entire opinion in this matter. Accordingly, TPDs motion to bar the testimony of St. John is granted.

### D. James Mercer

Mestek offers James Mercer as a hydrogeology expert in support of its theory that groundwater carried contaminants from Ellsworth to the *Mejdrech* class area. Mercer asserts numerous bases for his conclusion regarding the contamination, but focuses on the historical groundwater flow patterns. He posits that municipal well pumping exerted a westerly influence on the groundwater flow. There is no dispute over Mercer's qualifications as a hydrogeological expert, or the relevance of his opinions.

TPDs contends that Mercer's report and testimony must be barred as unreliable for two reasons. First, TPDs contend that Mercer's opinion that contamination migrated from Ellsworth to Area D is contrary to, and irreconcilable with, a "line" or collection of non-detects groundwater wells located between these areas. TPDs liken this situation to *Ramsey v. Consolidated Rail Corp.,* 111 F.Supp.2d 1030, 1138 (N.D.Ind.2000), where the court barred the testimony of an expert because the "record contain[ed] no explanation as to how any scientific principles support the contrary opinion in the face of eight years of non-detect result in and around the [relevant] well."

 *5 This case is distinguishable from *Ramsey*. Here, the non-detect data was taken in 2001 (not multiple years of test data) after the well pumping had ceased. As such, there is evidence in the record that such data does not conflict with Mercer's opinion regarding the historical groundwater flow pattern (as opposed to the contemporary groundwater flow pattern). At his deposition, Mercer rejected that the well data was a "line" of "clean" wells because the data measured residential drinking water wells, not groundwater monitoring wells. (Mercer Tr. 99–102). Mercer further explained that such results "represent[ ] that the contamination, if it exists there, was not detected because the concentrations were so low they couldn't be quantified...." *Id.* at 121. Additionally, Mercer stated that he did not think such data detracted from his opinion. (Mercer Tr. at 163–64). Mercer reviewed historical groundwater maps published by the Illinois Water Survey, municipal wells' historical pumping data, prior studies of the regional bedrock aquifer, and used a computer model for hypothesis testing. The Court concludes that Mercer's testimony is reliable.

Second, TPDs contend that Mercer's analysis of contaminant combination from the water quality in Area D and the *Mejdrech* class area is inherently unreliable because Mercer did not provide statistical analysis or "run the numbers." The Court can quickly dispose of this argument. Mercer testified

that analyzing contaminant combinations is a method widely accepted by hydrogeologists and that he personally published a peer-review article regarding this method. Further, TPDs have not provided any authority or evidence to suggest that "running the numbers" is necessary or standard in the industry for this method. Mercer testified that "based on ... all the data ... including the historical pumping, the historical flow direction, potentiometric surface map data—that I believe that the Mejdrech class area does support—and looking at the chemical rations, does support a pathway from Ellsworth to Mejdrech." (*Id.* at 121–22). For the foregoing reasons, the Court concludes that Mercer's testimony is relevant and reliable, and accordingly, TPDs motion to bar such testimony is denied.

## II. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Mestek's Motion to Bar Glanders' Expert Testimony is GRANTED only with respect to the topics of computer monitoring of groundwater flow and physical design of the DGSD effluent line, and is DENIED in all other respects.

2. Mestek's Motion to Bar Lue–Hing's Expert Testimony is DENIED.

3. TPDs Motion to Bar St. John's testimony is GRANTED.

4. TPDs Motion to Bar Mercer's Expert Testimony is DENIED.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1162979

End of Document     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    5