# EXHIBIT G

Case: 1:19-cv-06473 Document #: 211-14 Filed: 04/12/24 Page 2 of 4 PageID #:6774

Stop Staring! Designs v. Tatyana, LLC, Not Reported in Fed. Supp. (2012)
2012 WL 12877991

2012 WL 12877991
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

STOP STARING! DESIGNS
v.
TATYANA, LLC, et al.

CV 09-2014 DSF (AJWx)
|
Signed 02/21/2012

**Attorneys and Law Firms**

Keith J. Wesley, Peter W. Ross, Browne George Ross LLP, Cheryl Priest Ainsworth, Affeld Grivakes Zucker LLP, Los Angeles, CA, for Stop Staring! Designs.

Peter R. Afrasiabi, Christopher W. Arledge, One LLP, Newport Beach, CA, Imran F. Vakil, Nexio PC, Costa Mesa, CA, for Tatyana, LLC, et al.

**Proceedings:** (In Chambers) Order GRANTING Defendants' Motion for New Trial (Docket No. 269)

DALE S. FISCHER, United States District Judge

*1 A motion for a new trial pursuant to Rule 59 may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). These reasons include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)). A new trial is appropriate where "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Id. (quoting Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 510 n.15 (9th Cir. 2000)). On a motion for new trial, "the district court has 'the duty ... to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.' " Id. (quoting Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990)).

The Court finds that the jury's verdict is contrary to the clear weight of the evidence and possibly resulted from the erroneous admission of evidence by the Court.

Perhaps most significantly, the Court erred in allowing Plaintiff's damages expert Robert Wunderlich to testify beyond the scope of his expertise, beyond the scope of his expert report, and beyond the scope of the representations made by Plaintiff in opposing Defendants' motion to exclude Wunderlich's testimony. As discussed below, many aspects of Plaintiff's case were exceedingly weak. One of the weakest elements was the link between any trade dress infringement and loss to Plaintiff or unjust gain to Defendants. Prior to trial, Defendants moved to exclude Wunderlich because the damages scenarios in his report were created with no factual foundation. For example, Wunderlich stated in his report and testified at trial that Defendants got an unfair one year "head start" in their business by using Plaintiff's trade dress. Wunderlich's report states only that the one-year head start is an "assumption." But Wunderlich provided no foundation in his report to establish that this hypothesis had any basis in this case or in the industry in general. In fact, Wunderlich is almost certainly not qualified to testify as to the specific attributes of the vintage dress industry, or the clothing industry more generally. In response to this challenge to Wunderlich's testimony, Plaintiff claimed that other trial witnesses would provide the necessary foundation to show that Wunderlich's hypotheses were plausible. However, this never happened. Instead, Wunderlich himself attempted to support the one-year hypothesis using a straight-line trend projection. Doing this, Wunderlich assumed that, absent some event, Plaintiff's and Defendants' sales would increase smoothly and linearly. This methodology was not disclosed anywhere in Wunderlich's report. In fact – and as discussed above – the report and Plaintiff's response to Defendants' motion in limine disclaimed any attempt by Wunderlich to provide a foundation for his one-year head start assumption.

*2 In addition, Wunderlich provided causation testimony after explicit representations that he was not going to do so.[1] Using a graph that was not part of his expert report, (Tr. Exhibit 357), Wunderlich testified that "something happened" in April 2008 that caused Plaintiff's sales to decline and Defendants' sales to increase. This analysis was not anywhere in Wunderlich's report. Wunderlich did note in his report that Plaintiff's sales leveled off and slightly declined in the 2008-2009 period and that Defendants' sales increased, (see Wesley Decl., Ex. F at 4; see also Tr. Exhibit 345),

**Stop Staring! Designs v. Tatyana, LLC, Not Reported in Fed. Supp. (2012)**
2012 WL 12877991

but there was no indication that Wunderlich intended to testify as to a more specific date or event that allegedly triggered those sales changes. In fact, Defendants pointed to the absence of this kind of specific analysis as a reason for excluding Wunderlich in their motion in limine.[2] (See Docket No. 192 (Reply in Support of Motion in Limine) at 6.) This failure of disclosure was important not only because it subjected Defendants to unfair surprise at trial, but because it became apparent during cross-examination that Wunderlich may not have had a sufficient foundation to fully understand Defendants' accounting practices and had made no attempt to study the various possible explanations for the changes in the parties' sales.

Wunderlich was not qualified to perform a causation analysis in this case; he did not disclose the foundation for such an analysis in his report; and Plaintiff explicitly stated that Wunderlich would not provide such an analysis. As far as the Court can tell, Wunderlich's testimony as to causation was pure speculation based solely on the divergent financial fortunes of Plaintiff and Defendants with no further foundation in the specifics of the situation or the industry more generally. It is likely that Wunderlich's testimony was highly damaging to Defendants as it was virtually the only testimony that established any impact of the trade dress on the business of either party.[3]

The Court also erred in allowing repeated reference to an exhibit (Tr. Exhibit 221) of the allegedly infringing trade dress that included the words "Stop Staring Clothing" on it. The exhibit was admissible because it was relevant to Defendants' intent. However, the repeated use of the exhibit for purposes unrelated to intent – when it is undisputed that almost no one actually saw the exhibit when it was briefly online – likely gave the jury a mistaken impression of the website as it appeared to the public. Obviously, customers would be much more likely to be confused by a webpage with a similar trade dress to Stop Staring! if the webpage actually has the words "Stop Staring" on it. In short, what the jury saw, repeatedly, was a page much more likely to confuse than the material that was actually distributed.

Whether or not it was strictly "error," the Court finds that at least one of Plaintiff's counsel's statements in his rebuttal closing was unfair and highly prejudicial. As will be discussed further, perhaps the weakest aspect of Plaintiff's case was the complete absence of any evidence of confusion. In fact, the only concrete evidence in the record showed that confusion was positively unlikely. In trying to explain away the absence of any witnesses who would testify that they were confused or even could have possibly been confused, Plaintiff's counsel stated in closing argument:

> Mr. Arledge argues that there was no actual confusion because we couldn't get one customer to come forward and say he or she was confused. And let me change that just a little bit and say we couldn't get one of their customers to come forward and say that they were confused. Because the customers that were confused were the ones that ended up buying from them, and I think you can imagine how cooperative those customers were with us.

**\*3** (RT 11/15/11, 144:7-14.)

This was not – as Plaintiff tries to paint it – a reasonable inference to be drawn from evidence introduced at trial, or a proper "alternative explanation" for the lack of witnesses to confusion. Defendants' argument was a reasonable inference from the fact that Plaintiff failed to call any witness to testify about confusion. Arguably, if Plaintiff had decided not to contact customers at all, it might have been proper for counsel to respond: "You can imagine how cooperative those customers might have been if we had contacted them." But counsel affirmatively represented that customers had been contacted and – in effect – told the jury they had not been cooperative. The statement has absolutely no basis in the record. While it appears from the Opposition that Plaintiff did make very minimal efforts to gain information from Defendants' customers, (see Opp'n New Trial Mot. at 11 n.5), there was no evidence at trial to suggest that any of Defendants' customers actually were confused – or even that they were contacted by counsel. Plaintiff offers an unsupported blanket assertion that its discovery efforts showed that Defendants' customers were "biased and thus not reliable witnesses at trial," (id.), but this is not something that counsel may decide unilaterally and testify to himself in closing argument.[4] As Defendants note, the proper course, if one wants to make this argument, is to call the witness and then provide actual evidence of bias. This was not a minor misstatement on a secondary issue. It was an affirmative statement with no basis in the record – or outside of the record,

Case: 1:19-cv-06473 Document #: 211-14 Filed: 04/12/24 Page 4 of 4 PageID #:6776

Stop Staring! Designs v. Tatyana, LLC, Not Reported in Fed. Supp. (2012)

2012 WL 12877991

as far as the Court can tell – as to *the* key issue in the case. And that key issue also happened to be the most glaring weakness in Plaintiff's presentation. [5]

Going beyond any errors made by the Court, Plaintiff's case was very weak. Likelihood of confusion was entirely based on facial similarity of the trade dress and that the parties are competitors who sell similar products. No confusion studies were presented. The only evidence from actual customers – including *Plaintiff's* witnesses – strongly supported the view that no actual customer would be confused.

As alluded to above, without Wunderlich's testimony, there was virtually no evidence that the trade dress at issue had any impact on either Plaintiff's or Defendants' business. The only evidence was the circumstantial correlation between Plaintiff's and Defendants' fortunes. Defendants' business was on the rise, while Plaintiff's business stalled. This is *some* evidence that could be combined with supporting evidence, but correlation alone does not equal causation. There was a significant amount of evidence in the record as to other activities of both businesses and, obviously, much more goes into a business's success or failure than trade dress. Despite Plaintiff's attempts from the time of filing to present it as such, this is not a counterfeiting case where 100% of the appeal of the defendant's product is that it is a replica specifically designed to siphon off legitimate business from the mark holder.

**\*4** For the reasons given above, the motion for new trial is GRANTED.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2012 WL 12877991

## Footnotes

1   In briefing on the post-trial motions and initially at oral argument, Plaintiff continued to insist that Wunderlich had not testified as to causation. However, by the end of oral argument, Plaintiff's counsel explicitly admitted that Wunderlich and his charts provided at least some of Plaintiff's causation evidence.

2   Defendants did not concede that Wunderlich was qualified to undertake such an analysis; they only argued that he had not even attempted to do so.

3   While the Court need not decide at this time whether Wunderlich will be allowed to testify at a second trial, after reviewing the trial testimony and the prior motion in limine, it is likely that most, if not all, of the testimony given at the first trial would be excluded.

4   Needless to say, counsel should not be the arbiter of whether a witness is biased or just giving truthful testimony that does not help counsel's case.

5   The Court agrees with Defendants that the quoted section of closing argument also implies that Defendants might have encouraged their customers not to cooperate with Plaintiff in this case – especially in light of Plaintiff's implications of Jan Glaser's lack of credibility. However, the implication is weak, perhaps unintentional, and most likely did not affect the outcome.

---

**End of Document**                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.