# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:19-cv-06473 |
| v. | |
| SBB RESEARCH GROUP, LLC, SAMUEL B. BARNETT, and MATTHEW LAWRENCE AVEN, | The Honorable Sharon Johnson Coleman, United States District Judge |
| Defendants. | The Honorable Keri L. Holleb Hotaling, United States Magistrate Judge |

## DEFENDANTS' MOTION TO EXCLUDE CERTAIN EXPERT OPINIONS AND TESTIMONY OF DR. CRAIG MCCANN

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 3

III.  EXPERT REPORTS ........................................................................................... 4

IV.   DEPOSITION TESTIMONY ............................................................................. 6

V.    LEGAL STANDARDS ...................................................................................... 7

VI.   ARGUMENT ..................................................................................................... 8

      A.    The Court Should Preclude McCann From Testifying That SBB
            Overpriced Its Notes ............................................................................... 8

            1.    The Court should preclude McCann from testifying that SBB
                  overpriced its notes because McCann's opinion is not based on any
                  statistical analysis ........................................................................... 8

      B.    The Court Should Preclude McCann From Opining That SBB Overpriced
            Its Notes By A Statistically Significant Amount .................................... 11

            1.    The Court should preclude McCann from opining that SBB
                  overpriced its notes by a statistically significant amount because he
                  introduced the opinion for the first time at deposition ............................. 11

            2.    McCann's rebuttal to Sen's regression analysis does not open the
                  door for McCann to testify that SBB's note values were overstated
                  or overvalued by a statistically significant amount ................................. 12

      C.    The Court Should Prohibit McCann From Opining On Deetz's Materiality
            Analysis ................................................................................................... 14

      D.    The Court Should Prohibit McCann From Criticizing Sen's Model, Which
            Was Not Addressed In McCann's Rebuttal Report ................................. 15

VII.  CONCLUSION ................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Blue Book Servs., Inc., v. Amerihua Produce, Inc.*,
    337 F. Supp. 3d 802 (N.D. Ill. 2018) ......................................................................16

*Carroll v. Otis Elevator Co.*,
    896 F.2d 210 (7th Cir. 1990) ................................................................................14

*Cates v. Whirlpool Corp.*,
    No. 15-CV-5980, 2017 WL 1862640 (N.D. Ill. May 9, 2017)..................................9

*Chi. Teachers Union v. Bd. of Educ. of Chi.*,
    No. 15 C 8149, 2020 U.S. Dist. LEXIS 33202 (N.D. Ill. Feb. 25, 2020)................16

*Ciomber v. Coop. Plus, Inc.*,
    527 F.3d 635 (7th Cir. 2008) ....................................................................11, 16, 17

*Cleveland v. United States*,
    No. 4:20-cv-00167-JMS-DML, 2022 U.S. Dist. LEXIS 152947 (S.D. Ind.
    Aug. 24, 2022) ..................................................................................................11, 17

*Connearney v. Main Line Hosps., Inc.*,
    No. 15-02730, 2016 WL 6569292 (E.D. Pa. Nov. 4, 2016) ....................................10

*Cordes v. Centers for Reprod. Med. & Wellenss*,
    LLC, No. 3:20-CV-10-MAB, 2023 WL 6362750 (S.D. Ill. Sept. 29, 2023)...........13

*David v. Caterpillar, Inc.*,
    324 F.3d 851 (7th Cir. 2003) ............................................................................11, 16

*Dixon v. Brown*,
    No. 3:16-cv-01222-GCS, 2021 U.S. Dist. LEXIS 100027 (S.D. Ill. Mar. 30,
    2021) ......................................................................................................................17

*Gayton v. McCoy*,
    593 F.3d 610 (7th Cir. 2010) ............................................................................14, 15

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)................................................................................................10

*Maloney v. Microsoft Corp.*,
    No. 09–2047, 2012 WL 715856 (D.N.J. Mar. 5, 2012)..........................................10

*McCann v. Cullinan*,
    No. 11 CV 50125, 2016 WL 4593835 (N.D. Ill. Sept. 2, 2016).............................13

*Mendez v. City of Chicago*,
    No. 18 CV 5560, 2021 WL 3487328 (N.D. Ill. Aug. 9, 2021) ...............................................14

*Rivers v. B Braun Interventional Sys. Inc.*,
    No. 19-CV-988, 2023 U.S. Dist. LEXIS 194847 (E.D. Wis. Oct. 31, 2023) ...................11, 17

*SEC v. Lek Sec. Corp.*,
    370 F. Supp. 3d 384 (S.D.N.Y. 2019), *on reconsideration in part*, 2019 WL
    2114067 (S.D.N.Y. May 8, 2019) ...........................................................................................10

*Simpson v. Dart*,
    No. 18-cv-0553, 2021 WL 1906469 (N.D. Ill. May 12, 2021) ...............................................10

Defendants SBB Research Group, LLC, Samuel B. Barnett, and Matthew Lawrence Aven (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to preclude Dr. Craig McCann ("McCann") from offering his opinions that (1) SBB overpriced its notes and did so by a statistically significant amount; (2) Defendants' expert Gene Deetz ("Deetz") arbitrarily established materiality thresholds; and (3) Defendants' expert Dr. Arun Sen's ("Sen") model was flawed, an opinion offered for the first time at deposition.

## I.     INTRODUCTION

The SEC alleges that Defendants created a proprietary model for SBB's funds' structured note investments that was inconsistent with "the assumptions [of] market participants," and materially overstated the "fair value" of the notes. (Dkt. 1 ¶¶ 8, 36.) To support its allegations, the SEC intends to offer the testimony of its expert witness, McCann, who critiques SBB's model and valuations. But McCann—who is not an accountant—lacks sufficient knowledge and expertise to opine on how Deetz conducted his accounting materiality analysis. And in the areas where McCann does have expertise, he offers unsupported conclusory opinions instead of relying on established statistical methodology and untimely opinions.

*First*, McCann's opinion that SBB overpriced[1] its funds' structured notes is not supported by any reliable methodology. McCann eyeballs scatterplot graphs that he prepared to somehow conclude that SBB's values are "over-priced" by comparing them to his own valuations and those from third parties. But merely observing higher values alone is not the same as being "over-priced," which implies that the value is incorrect. The scatterplots themselves have little value—there is no way for a reader to discern the magnitude of SBB's alleged overvaluations or to assess whether the magnitude is reasonable. Moreover, McCann fails to perform any type of statistical

---

[1] Throughout his reports and deposition, McCann used the words "over-priced," "overvalued," "overstated," and "inflated" interchangeably.

analysis to conclude that SBB overpriced its notes. McCann attempts to rectify these glaring errors through unsupported testimony at his deposition, but it is well settled that an expert cannot offer new opinion testimony for the first time at a deposition.

*Second,* McCann is not qualified to offer an opinion as to Deetz's use of materiality thresholds. Drawing from his accounting expertise, Defendants' expert Deetz opined that alleged GAAP deficiencies were not material to reasonable investors in funds like SBB's funds. A component of Deetz's assessment was a quantitative analysis wherein Deetz established a 5% band to capture a reasonable range of fair values and a 2% threshold to account for uncertainty due to the characteristics of SBB's funds' structured notes. Deetz established the band and threshold based on his knowledge of fair value measurement under ASC 820 and materiality assessment under Statement of Financial Accounting Concepts ("SFAC") No. 2, SEC Staff Accounting Bulletins ("SAB") 99 and 108. But McCann is not an accounting expert and concedes that he is not qualified to opine on GAAP-related issues. He cannot opine on materiality thresholds.

*Finally*, McCann's criticisms of Sen's model should be precluded because he offered them for the first time at his deposition. The SEC sought leave to file a rebuttal report to address Sen's model and regression analysis, which the Magistrate Judge granted over Defendants' opposition.[2] McCann made the choice to address only Sen's regression analysis—not Sen's model—in his rebuttal report. Then, at his deposition, McCann blindsided Defendants by offering new opinions about Sen's model regarding the model type (Heston), the choice of correlation, the construction of the correlation matrix, and the simulation methodology known as bootstrapping. McCann even

---

[2] The Magistrate Judge's order was premised on the SEC's request that the Court not "prejudge the contents of expert reports" and engage in "premature sorting of which opinions are new and which are rebuttal." Dkt 192 at 1. Instead, the SEC argued that "rebuttal reports should be allowed and issues of admissibility should be resolved by the District Court." *Id*. at 2. Accordingly, Defendants do not concede that the contents of the SEC's experts' rebuttal reports constitute permissible rebuttal opinions.

referenced new calculations he performed to support these new opinions. It was improper for McCann to offer these new opinions at deposition, and they should be precluded by the Court.

## II.    BACKGROUND

SBB is a registered investment adviser to a series of private funds (the "SBB Funds"). (Dkt. 1 ¶¶ 6, 17–18.) The SBB Funds were primarily invested in structured notes (the "SBB Structured Notes"), which are hybrid securities that have a bond-like component and a derivative-like component. (*Id.* ¶¶ 26–27.) Structured notes are issued and sold by banks or other financial institutions, are illiquid, and do not have a readily available market price. (*Id.* ¶¶ 27, 32.) Thus, their value can only be estimated by use of complex mathematical models. (*Id.*) Both McCann and Sen agree that there are multiple reasonable ways to model the SBB Structured Notes and thus multiple reasonable values. (McCann Tr. 106:5–9; Sen ¶ 38.) SBB's model, McCann's model, and Sen's model all attempt to estimate reasonable values using Monte Carlo simulations, which are computational approximations of mathematical models based on generating many trial runs through random sampling of different probability distributions.

SBB represented to its investors, prospective investors, and its auditor that the SBB Structured Notes were valued at "fair value" as required by GAAP. (Dkt. 1 ¶¶ 26–32.) For financial years ending in 2011 through 2015, SBB used its own internally-developed model to value the SBB Structured Notes. (*Id.* ¶ 42.) During that time, SBB also received statements from the issuing financial institutions providing an estimated value of the notes ("bank estimates").[3] (*Id.* ¶ 61.) In 2016, SBB ceased to rely on its own internal proprietary model and instead used valuations provided by Markit, a third party. (*Id.* ¶¶ 74–75.)

---

[3] Sen and McCann also referred to bank estimates as "counterparty values" in their reports.

The SEC alleges that until 2015, the proprietary valuation model SBB used to value the SBB Structured Notes failed to comply with ASC 820's requirement that "fair value" be estimated "using the assumptions that market participants would use when pricing the asset," and instead "used variables that lacked any justification or support in academic research or industry practice," which the SEC claims "materially inflat[ed] the [SBB] Funds' overall annual performance." (Dkt. 1 ¶¶ 34–36; 80.) The SEC adds that SBB's model did not conform to industry practices because it: (1) used the average growth for the underlying stock index instead of the risk-free rate to project asset growth; (2) discounted the option's value at the risk-free rate despite not using the risk-free rate to project asset growth; (3) used historical volatility instead of implied volatility; (4) used an input called "linearization"; and (5) did not account for credit risk. (*Id.* ¶¶ 45, 47–50.) The SEC relies principally on its expert witness, McCann, to argue that SBB's model was inconsistent with industry standards under ASC 820 and that SBB's model over-priced the SBB Funds' structured notes.

## III.   EXPERT REPORTS

McCann opines in his opening report that SBB's model "is inconsistent with basic valuation principles, industry practice, and published scientific research." (Ex. 2, Expert Report of C. McCann ("McCann") ¶ 118). He creates his own model using what he opines is the "correct" valuation methodology. McCann then creates a scatterplot comparing his values, Markit values, bank estimates, and SBB values, (McCann App'x 2), and concludes (based on his observation that SBB's values are frequently higher) that SBB "over-priced most of its structured notes." (McCann ¶ 117.)

On July 17, 2023, Defendants' expert, Sen, filed a report responding to McCann. (Ex. 5, Expert Report of A. Sen ("Sen").) Among other things, Sen critiques aspects of McCann's model, (Sen § IX), and provides his own alternative model. (Sen § XI.) To rebut McCann's opinion that

that SBB overpriced most of its notes, Sen also performs a regression analysis that seeks to determine whether the differences between SBB's values and bank estimates (estimates McCann calls "correct") are statistically significant, and finds they are not. (Sen § XIII.) Sen's regression analysis is separate from his model and in no way relies on his model.[4] *Id.*

On July 17, 2023, Defendants' expert Gene Deetz also filed a report in this matter to rebut SEC expert Peter Hickey ("Hickey"). (Ex. 4, Expert Report of G. Deetz ("Deetz").) Among other opinions, Deetz rebuts Hickey's materiality opinions and concludes that, under the applicable accounting standards, SBB's alleged failures were not material to reasonable investors. (Deetz ¶¶ 148–49.) As part of his analysis, Deetz conducts a quantitative materiality assessment wherein he establishes—again based on accounting standards—a 5% band to capture a reasonable range of fair values and a 2% threshold to account for uncertainty due to the characteristics of the SBB Structured Notes. (Deetz ¶¶ 128–133.)

Over Defendants' objections, the Court permitted the SEC to file "rebuttal" reports "limited" in scope "to responding to any additional opinions offered by Defendants' experts," which McCann filed on October 31, 2023. (Dkt. 197; Ex. 6, Expert Rebuttal Report of C. McCann ("McCann Reb.").) As it relates to this motion, McCann opines in his rebuttal that Deetz arbitrarily established materiality thresholds in his expert report. (McCann Reb. § VI.) McCann also opines that Sen's finding that there is no statistically significant difference between SBB's values and bank estimates is incorrect. Nowhere in his rebuttal report—or in his opening report for that matter—does McCann offer an opinion that SBB overvalued its notes by a statistically significant amount. He did not offer that opinion until his deposition.

---

[4] Sen also constructs an error band to demonstrate uncertainty in the data to rebut McCann's suggestion that there is one correct value, (Sen § XII), and provides a waterfall chart showcasing the impact that certain features had on SBB's calculated values, (Sen App'x 2(f)). Neither is relevant to this motion.

## IV.    DEPOSITION TESTIMONY

McCann offered several opinions during his deposition that were not previously disclosed in his reports. He testified that he intends to opine that SBB overstated the value of its structured notes by a statistically significant amount, which was not offered in his opening report. (Ex. 12, McCann Tr. 51:23–52:7.) ("Q: Asking this a slightly different way, are you offering an opinion in this case as to whether SBB materially overstated the value of its structured notes? A: It sounds like maybe a legal conclusion. I think the way I would phrase that is I am certainly offering the opinion that they overstated the value of the notes by a statistically significant amount and someone else will decide whether that's a material fact or not."). Although McCann opined in his opening report that SBB "over-priced" most of its notes, he did not opine as to whether SBB did so by a statistically significant amount. (*See* McCann.)

Relatedly, although McCann opined in his rebuttal report that there is a statistically significant difference between SBB values and bank estimates, McCann failed to analyze or opine as to whether the SBB Structured Notes were *overpriced* by a statistically significant amount. (*See* McCann Reb. ¶ 29.) This is a critical omission because, as McCann concedes, there is a reasonable range of values for the SBB Structured Notes and the bank estimates are just one value in that range. Thus, even if there is a statistically significant difference between SBB values and bank estimates—which are just one value in the reasonable range—SBB's values could nevertheless fall within a reasonable range of values.

In Sen's report, he offered two main opinions relevant to this motion: (1) he provided a model for the SBB Structured Notes; and (2) he performed a regression analysis comparing SBB's values to bank estimates. The SEC argued that it needed a rebuttal opportunity to address Sen's model and regression analysis so that the Court and a jury "may fairly evaluate whether Sen's expert opinions and statistical analysis are reliable." (Dkt. 182 at 4–5.) However, the entirety of

6

McCann's rebuttal report is dedicated to critiquing Sen's regression analysis; it contains no opinions about Sen's model. In his deposition testimony, however, McCann introduced several opinions criticizing Sen's model for the first time. Among other things, McCann testified that: (1) a Hull & Suo paper Sen cites indicates that there is no effective difference between a Heston model and a Black-Scholes model when used to value the SBB Structured Notes (McCann Tr. 100:23–101:1); (2) Sen should have used the dynamic conditional estimate instead of simple five-year correlation in his model (*Id*. 111:1–5); (3) Sen should have used an alternate methodology for constructing his correlation matrix (*Id*. 195:21–196:2), and (4) Sen's bootstrapping methodology is incorrect because the residuals are dependent (*Id*. 198:11–200:5). McCann even provided at deposition—again, for the first time—calculations to support his new criticisms. (*See, e.g.*, McCann Tr. 105:21-24 (stating that three newly identified critiques of Sen's model explain "$1.40 or $1.50 [of the] difference" between Sen and McCann's valuations). This was a clear departure from McCann's rebuttal report, where he only critiqued Sen's regression analysis, and did not opine on Sen's model. (*Id*. 30:2–23) (stating that he only "addressed" and "focused on" Sen's regression analysis because Sen's other opinions were "not central" and not "a direct conclusion about SBB's valuations").

## V.     LEGAL STANDARDS

*See* Defendants' Memorandum in Support of Its Motion to Exclude Expert Opinions and Testimony of Peter C. Hickey, Section III.

## VI.   ARGUMENT

### A.   The Court Should Preclude McCann From Testifying That SBB Overpriced Its Notes

#### 1.   The Court should preclude McCann from testifying that SBB overpriced its notes because McCann's opinion is not based on any statistical analysis.

McCann's opinion that SBB overpriced its notes is "primarily based on the scatterplots [he] included in [his] report." (McCann Tr. 47:14–22.) McCann plotted SBB's values, bank estimates, Markit values, and McCann's values and simply observed that SBB values were often higher than other values. For example, in the below scatterplot, McCann observes that SBB's values (in orange) tend to be higher than bank estimates (red dots) and Markit values (black x's), while McCann's values ("SLCG Valuation", in blue) tend to be lower than bank estimates and Markit values and concludes that SBB's values are "overpriced."



But merely observing higher values alone (which does not require expertise at all) is not the same as being "overpriced," which implies that the value is incorrect. In order for SBB's

valuations to be "overpriced," they must fall outside of the range of reasonable values.[5] (*See* McCann Tr. 47:23–48:6) ("They're higher. They're systematically higher. I think the question is whether it's reasonable that they're higher or not. There is no doubt they're higher.").

However, McCann failed to disclose any methodology by which he analyzed whether SBB's values are reasonable. This is because, as McCann testified, evaluating the reasonableness of SBB's values was not within the scope of McCann's report. (McCann Tr. 48:17–49:1.) ("Q: I mean, isn't it an important part of your opinion, though, to try to understand the extent or the amount by which SBB's structured notes are overvalued? A: Well, maybe, although I thought at least in the initial report the primary purpose was to show – well, was to explain that SBB's valuation was nonstandard and didn't produce reliable results and that those results tended to be systematically higher than account statement values."). Without an explanation of his methodology, McCann's opinion should be precluded. *See Cates v. Whirlpool Corp.*, No. 15-CV-5980, 2017 WL 1862640, at *13 (N.D. Ill. May 9, 2017) (finding expert opinions unreliable because "he failed to disclose any methodology, let alone one that is reliable in his field").

Moreover, even if McCann's scatterplot observation qualifies as a methodology, it is utterly unreliable. McCann fails to cite to any sources that support his eyeballed-scatterplot inference. Unlike Sen, McCann fails to make any attempts to conduct a regression analysis or any other type of statistical analysis. (McCann Tr. 52:8–11) ("Q: But I thought you just said you didn't perform a statistical analysis in your opening report, only in response to Dr. Sen's analysis? A: Correct."). Without such analysis to assess whether the difference between SBB's values and other values is due to other factors (such as uncertainty in the data or random chance), courts in other contexts have concluded that evidence is inadmissible. For example, in an age discrimination case

---

[5] McCann concedes that there is a reasonable range of values for the SBB Structured Notes. (McCann Tr. 106:5–9).

brought against a former supervisor and employer, Plaintiff's expert concluded "that Defendants engaged in age discrimination" based on a "mere[] compar[ison]" of "the raw percentages" of terminated employees under 40 and over 40. The Court found his testimony inadmissible because he "did not conduct a statistical significance test, so the disparity in the[] numbers could be due to random chance." *Connearney v. Main Line Hosps., Inc.*, No. 15-02730, 2016 WL 6569292, at *5 (E.D. Pa. Nov. 4, 2016). *See also SEC v. Lek Sec. Corp.*, 370 F. Supp. 3d 384, 417 (S.D.N.Y. 2019), *on reconsideration in part*, 2019 WL 2114067 (S.D.N.Y. May 8, 2019) (striking proposed expert testimony because the expert "conduct[ed] no empirical or statistical analysis"); *Maloney v. Microsoft Corp.*, No. 09–2047, 2012 WL 715856, at *4 (D.N.J. Mar. 5, 2012) (questioning whether an expert's "comparison" is admissible under *Daubert* where the expert "conducted no statistical analysis" making it "impossible to tell . . . whether any of the numbers put forward are statistically significant").

Despite McCann's efforts to the contrary, the Supreme Court has held that "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* [(*i.e.*, the unsupported conclusory opinion)] of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137, 145 (1997) (affirming exclusion of plaintiff's experts' opinion that was based, in part, on a study that "found that the incidence of lung cancer deaths among [plant] workers was somewhat higher than would ordinarily be expected" but the difference was not statistically significant). *See also Simpson v. Dart*, No. 18-cv-0553, 2021 WL 1906469, at *2 (N.D. Ill. May 12, 2021) ("In determining reliability, a critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data 'only by the *ipse dixit* of the expert,' that is properly excluded under Rule 702.") (internal citations and quotation marks omitted).

Accordingly, the Court should reject McCann's attempt to draw a conclusion (that SBB values are overpriced) based solely on observed higher values without any supporting analysis.

### B. The Court Should Preclude McCann From Opining That SBB Overpriced Its Notes By A Statistically Significant Amount

In the event the Court permits McCann to testify that SBB overpriced its notes, it should preclude him from testifying that SBB did so *by a statistically significant amount*.

> #### 1. The Court should preclude McCann from opining that SBB overpriced its notes by a statistically significant amount because he introduced the opinion for the first time at deposition.

The law in the Seventh Circuit is clear that an expert report must contain "a complete and detailed report of the expert witness's opinions, conclusions, and the basis and reasons for them" and that "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony." *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008). "[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Courts routinely exclude expert opinions that were not disclosed in an expert report, even when disclosed in deposition. *See, e.g.*, *Rivers v. B Braun Interventional Sys. Inc.*, No. 19-CV-988, 2023 U.S. Dist. LEXIS 194847, at *61–62 (E.D. Wis. Oct. 31, 2023) (failure to include any explanation of opinion in report not cured by explanation at deposition); *Cleveland v. United States*, No. 4:20-cv-00167-JMS-DML, 2022 U.S. Dist. LEXIS 152947, at *22 (S.D. Ind. Aug. 24, 2022) (expert barred from testifying about an opinion undisclosed in report, notwithstanding disclosure at deposition).

McCann's untimely disclosure is not justified because, despite ample opportunity, McCann failed to opine that SBB overvalued its notes *by a statistically significant amount* in *both* of his

reports. His opening report opined that SBB overpriced its notes, with *no* reference to statistical significance, and his rebuttal opined that the difference between SBB values and bank estimates (one of *many* reasonable values) was statistically significant. Neither of these opinions is equivalent to (or suggests that) SBB's values were overpriced by a statistically significant amount.

Further, McCann's disclosure is not harmless as it is an opinion that is central to this case and was disclosed at the 11th hour, with no analysis or sources to support it. Even now, Defendants are left to guess as to how McCann intends to support his conclusion. As such, the Court should preclude him from offering such opinion at trial and his related deposition testimony should be stricken.

   **2.**  **McCann's rebuttal to Sen's regression analysis does not open the door for McCann to testify that SBB's note values were overstated or overvalued by a statistically significant amount.**

In his rebuttal report, McCann opines that there is a statistically significant difference between SBB values and bank estimates. He relies on this opinion to support his much broader deposition opinion that SBB overvalued its notes by a statistically significant amount. *See* McCann Tr. 49:3–9 ("Dr. Sen proposes a bunch of statistical analysis, and so then we respond to that and further considered it after filing the rebuttal report, his statistical analysis. But I didn't at the time writing the initial report think that was necessary or at least it didn't come to mind."). But McCann's rebuttal opinion that there is a statistically significant difference between SBB's values and bank estimates is ***not*** the same as McCann's deposition opinion that SBB overpriced its notes by a statistically significant amount. This is because—as McCann concedes—there are many reasonable values for the SBB Structured Notes: *i.e.*, there is a range of reasonable fair value

estimates.[6] All McCann purportedly shows in his rebuttal report is that there is a statistically significant difference between SBB's values and bank estimates (***one*** of many reasonable values). In other words, McCann's reports have a glaring hole in that they fail to account for the possibility that SBB's valuations are within a reasonable range of values (or at least not statistically significantly outside that range), an essential point of contention here. *See Cordes v. Centers for Reprod. Med. & Wellenss*, LLC, No. 3:20-CV-10-MAB, 2023 WL 6362750, at *7 (S.D. Ill. Sept. 29, 2023) ("Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

To conclude that the SBB Structured Notes were overvalued by a statistically significant amount, McCann would first need to perform an analysis showing SBB's values do not fall within a reasonable range.[7] And only if he concluded that, he would then need to perform an analysis showing that the difference between the range and SBB's values was statistically significant. But McCann fails to do that.

Nor could he because such analysis would fall outside of the scope of what is permissible in a rebuttal report. McCann was only permitted to respond to "new" opinions in Sen's rebuttal and not construct a new, broader analysis to bolster his earlier report. *See McCann v. Cullinan*, No. 11 CV 50125, 2016 WL 4593835, at *2 (N.D. Ill. Sept. 2, 2016) ("Rebuttal expert testimony is intended solely to contradict or rebut opinions on the same subject matter identified by an initial expert witness" and "may not be used to present new opinions or simply bolster a previous expert

---

[6] McCann Tr. 106:5–9 ("Q: Is it fair to say based on your last answer that given that multiple models might produce different values, there is what you would call a reasonable range of fair value estimates for structured notes? A: Yes.").

[7] Such analysis is necessary to account for the "professional judgment" which can result in different correlation coefficients, models, and the risk-free rate, all of which impact the ultimate valuations. (McCann Tr. 105:10–20.)

opinion"); *Mendez v. City of Chicago*, No. 18 CV 5560, 2021 WL 3487328, at *5 (N.D. Ill. Aug. 9, 2021) ("[W]here part of an expert's report constitutes improper bolstering while other parts fairly respond to the conclusions of the opposing party's experts, the appropriate course is to limit the proposed rebuttal expert's testimony rather than striking it altogether." (citation and internal quotation marks omitted)). Indeed, this Court ordered that the rebuttal report "shall be limited to responding to any additional opinions offered by Defendants' experts" and noted that "Plaintiff emphasize[d] that it will not use its rebuttals to bolster its prior reports." (Dkt. 197.) But that is exactly what the SEC tried to do with McCann's second report: shore up deficiencies in his first report. Accordingly, McCann should not be allowed to opine that SBB overpriced its notes by a statistically significant amount.

### C.  The Court Should Prohibit McCann From Opining On Deetz's Materiality Analysis

"Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (quoting *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)).

As discussed above, Defendants submitted an expert report from Deetz on materiality in response to a report by a different SEC expert, Hickey. Deetz's report reviews the applicable accounting standards for materiality, applies them to SBB's valuations and fund financials, and concludes that the alleged defects in SBB's valuations were not material to reasonable investors. (Deetz ¶¶ 53–169.) McCann's rebuttal report critiques Deetz's materiality analysis, opining that Deetz's quantitative materiality thresholds are arbitrary. (McCann Reb. ¶¶ 55–64.)

But McCann is not qualified to opine on Deetz's materiality analysis. Contrary to McCann's assertion, the expert report from Deetz makes clear that his materiality assessment is

not a "structured product pricing" exercise (McCann Reb. ¶ 58), but a comprehensive materiality assessment of whether or not alleged defects in SBB's valuations were material to reasonable investors. As Deetz explained in his expert report, materiality analysis is grounded in accounting standards: ASC 820, Financial Accounting Standards Board Concept Statement No. 2 ("CON 2"), Staff Accounting Bulletin 99 ("SAB 99"), and Staff Accounting Bulletin 108 ("SAB 108"). (Deetz ¶¶ 113, 121–25.) McCann is not an accounting expert, as he himself made clear. (McCann Tr. 35:11–13) ("Q: Do you consider yourself an expert in GAAP, generally accepted accounting principles? A: No."); (McCann Tr. 36:4–6) (Q: Do you consider yourself to be an expert on ASC 820? A: No."). While Deetz's analysis is replete with citations to accounting standards on materiality, McCann does not even mention any of the standards in his report. McCann's experience in some aspects of financial valuation does not give him the qualifications to opine on another expert's application of accounting standards. *See Gayton*, 593 F.3d at 616 (expert witness qualification "can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."). McCann's area of "superior knowledge, skill, experience, or education" is far afield from accounting—as he admits—and he should be precluded from opining on it.

### D. The Court Should Prohibit McCann From Criticizing Sen's Model, Which Was Not Addressed In McCann's Rebuttal Report

At the SEC's request, this Court permitted the SEC to submit a rebuttal report responding to any new opinions in the report of Defendants' expert Sen. Sen's report, among other things, critiqued McCann's approach to valuation (Sen § IX), described and used a different model to value the SBB Structured Notes (*id.* § XI), and analyzed the relationship between SBB's values and bank estimates through a regression analysis (id. § XIII). Sen's model and regression analysis

were two separate and independent analyses; Sen's regression analysis did not depend on or rely on inputs from Sen's model.

McCann's rebuttal focused solely on Sen's regression analysis. McCann made certain criticisms about the data the regression analysis included (McCann Reb. ¶¶ 22–30), whether the regression adequately controlled for time until maturity (*Id*. ¶¶ 31–43), and whether the regression had adequate statistical power (*Id*. ¶¶ 44–54). McCann testified that he intentionally chose to focus the rebuttal report only on Sen's regression analysis. (McCann Tr. 30:2–23.)

At his deposition, McCann introduced new criticisms unrelated to Sen's regression analysis that were not mentioned in McCann's rebuttal report. Specifically, McCann testified for the first time at deposition that Sen made various mathematical errors in his valuations of the SBB Structured Notes—valuations that McCann did not challenge in any way in his rebuttal report, and which played no role in Sen's regression analysis, the sole focus of McCann's rebuttal report. (*See* McCann Tr. 111:1–5 (criticizing the correlation estimate Sen used in his model), 195:21–196:2 (criticizing the correlation matrix Sen used in his model), 198:11–200:5 (criticizing the bootstrapping method Sen used in his model).) McCann also calculated the impact these purported errors had on Sen's valuations. (McCann Tr. 104:16–105:24.) To the extent the SEC seeks to offer these opinions at trial, they should be precluded.

An expert report must contain "a complete and detailed report of the expert witness's opinions, conclusions, and the basis and reasons for them." *Ciomber*, 527 F.3d at 642.[8] Here, McCann's rebuttal expert report contained none of his "opinions" or "conclusions" about Sen's model. When a party fails to adequately make a disclosure required by Rule 26(a), "the sanction

---

[8] These principles apply to rebuttal expert reports just as they do to other expert reports. *See Chi. Teachers Union v. Bd. of Educ. of Chi.*, No. 15 C 8149, 2020 U.S. Dist. LEXIS 33202, at *14–15 (N.D. Ill. Feb. 25, 2020) (rejecting new rebuttal opinions from expert undisclosed in expert rebuttal report); *Blue Book Servs., Inc., v. Amerihua Produce, Inc.*, 337 F. Supp. 3d 802, 817 n.16 (N.D. Ill. 2018) (same).

of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Caterpillar*, 324 F.3d at 857. The non-disclosure of McCann's opinions about Sen's model was neither justified nor harmless. As the Seventh Circuit explained in *Ciomber*, "[t]he purpose of Rule 26(a)(2) is to provide notice to opposing counsel -- before the deposition -- as to what the expert witness will testify, [] and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony." 527 F.3d at 642 (internal citations omitted).

Consistent with *Ciomber*, courts in the Seventh Circuit have rejected reliance on deposition testimony to excuse non-disclosure of expert opinions in a report. In *Dixon v. Brown*, No. 3:16-cv-01222-GCS, 2021 U.S. Dist. LEXIS 100027 (S.D. Ill. Mar. 30, 2021), defendants argued that any failure to disclose a particular opinion in their expert's report was harmless because the other party had the opportunity to question the expert about that opinion at the expert's deposition. The court rejected this argument, noting that "Rule 26 is designed to give opposing parties notice of an expert's testimony prior to deposition" and that "[t]he rule is also intended to shorten or decrease the need for expert depositions." *Id*. at *12 (internal quotation marks omitted). As such, "requiring a violating party to supplement a deficient report with deposition testimony neither cures any harm to an opposing party, nor is it an appropriate sanction for violating Rule 26." *Id*. Other courts have come to similar conclusions. *See*, *e.g.*, *Rivers*, 2023 U.S. Dist. LEXIS 194847, at *61–62 (inadequate explanation of opinion in report not cured by explanation at deposition); *Cleveland*, 2022 U.S. Dist. LEXIS 152947, at *22 (expert barred from testifying about an opinion undisclosed in report, notwithstanding disclosure at deposition). The Court should likewise preclude McCann from opining on Sen's valuations.

## VII.    CONCLUSION

For the foregoing reasons, Defendants respectfully ask that the Court preclude McCann from opining that: (1) SBB's model overpriced the SBB Structured Notes and did so by a statistically significant amount; (2) Deetz arbitrarily designed materiality thresholds; and (3) there are flaws in Sen's model.


Dated:    April 12, 2024                                  Respectfully submitted,


By: /s/ *Howard J. Rosenburg*                     By: /s/ *H. Gregory Baker*
Howard J. Rosenburg (6256596)                   H. Gregory Baker (*pro hac vice*)
KOPECKY SCHUMACHER ROSENBURG        PATTERSON BELKNAP WEBB & TYLER
LLC                                                              LLP
120 N. LaSalle, Street, Suite 2000                  1133 Avenue of the Americas
Chicago, IL 60602                                         New York, NY 10036
Tel. (312) 380-6631                                       Tel. (212) 336-2871
hrosenburg@ksrlaw.com                              hbaker@pbwt.com
                                                                   *Counsel for Defendants*


By: /s/ *John J. Sikora, Jr.*
John J. Sikora, Jr. (6217330)
Heather A. Waller (6302537)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel. (312) 876-7700


*Counsel for Defendants*