## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                                    Plaintiff,<br><br>        v.<br><br>SBB RESEARCH GROUP, LLC,<br>SAMUEL B. BARNETT, and<br>MATTHEW LAWRENCE AVEN,<br><br>                                    Defendants. | Case No. 1:19-cv-06473<br><br>The Honorable Sharon Johnson Coleman,<br>United States District Judge<br><br><br>The Honorable Keri L. Holleb Hotaling,<br>United States Magistrate Judge |

## DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF PETER C. HICKEY

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .........................................................................1

II. BACKGROUND ...........................................................................................2

III. LEGAL STANDARDS ..................................................................................4

IV. ARGUMENT ...............................................................................................5

    A. Hickey's Opinions About SBB's Model Are Inadmissible .....................5

        1. Hickey Is Unqualified to Opine on Market-Based Inputs and Does Not Follow a Reliable Methodology........................................6

        2. Hickey Cannot Support His Claim That SBB Failed to Maximize the Use of Observable Inputs and Minimize the Use of Unobservable Inputs ...........................................................9

        3. Hickey's Opinion That SBB's Model Caused Overvaluation Rests on an Unreliable Method That Improperly Invades the Province of the Jury..............................................................................9

        4. Table 4 in Hickey's Report Is Not Based on a Reliable Method or Expertise ..................................................................................11

        5. Hickey's Opinions About SBB's (1) Knowledge of ASC 820, Fair Value, and Valuation and (2) Intent to Comply with GAAP Should Be Excluded ...........................................................................12

        6. Hickey's Additional SBB Model Opinions Should Be Excluded ............12

    B. Hickey Is Not a GAAP Expert and Conducts No Analysis to Conclude That the SBB Funds' Financial Statements Did Not Comply With ASC 820........................................................................................13

    C. Hickey Is Not Qualified to Opine On Materiality and His Materiality Opinions Are Impermissible *Ipse Dixit* .........................................14

        1. Hickey Is Not Qualified to Opine on Materiality ...................................15

        2. Hickey Offers No Methodology to Reliably Support His Materiality Opinions .........................................................................17

    D. Hickey's Auditor Opinion Should Be Excluded....................................20

V. CONCLUSION...........................................................................................20

i

## **TABLE OF AUTHORITIES**

### **CASES**

*Am. Honda Motor Co., Inc. v. Allen*,
  600 F.3d 813 (7th Cir. 2010) ............................................................... 18

*Andersen v. City of Chicago*,
  454 F. Supp. 3d 808 (N.D. Ill. 2020) .................................................... 9

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  2015 WL 5003528 (S.D.N.Y. Aug. 20, 2015) ........................................ 8

*Ashley Furniture Indus., LLC v. Perficient, Inc.*,
  2023 WL 4446675 (W.D. Wis. July 11, 2023) ........................................ 8

*Bogathy v. Union Pac. R.R.*,
  2020 WL 419406 (N.D. Ill. Jan. 24, 2020) ............................................. 5

*Burns v. Sherwin-Williams Co.*,
  2022 WL 4329417 (N.D. Ill. Sept. 18, 2022), *aff'd*, 78 F.4th 364 (7th Cir.
  2023) ................................................................................................... 13, 20

*Cordes v. Centers for Reprod. Med. & Wellenss, LLC*,
  2023 WL 6362750 (S.D. Ill. Sept. 29, 2023) .......................................... 9

*Clark v. Takata Corp.*,
  192 F.3d 750 (7th Cir. 1999) ............................................................ 5, 11

*Davis v. Duran*,
  277 F.R.D. 362 (N.D. Ill. 2011) ............................................................. 8

*Ervin v. Johnson & Johnson, Inc.*,
  492 F.3d 901 (7th Cir. 2007) .................................................................. 5

*Evoy v. CRST Van Expedited, Inc.*,
  430 F. Supp. 2d 775 (N.D. Ill. 2006) ................................................... 20

*Ganino v. Citizens Utilities Co.*,
  228 F.3d 154 (2d Cir. 2000) .................................................................. 15

*George v. Kraft Foods Glob., Inc.*,
  800 F. Supp. 2d 928 (N.D. Ill. 2011) ................................................... 12

*Goldberg v. 401 North Wabash Venture, LLC*,
  2013 WL 212912 (N.D. Ill. Jan. 18, 2013) ................................... 8, 10, 18

*Gopalratnam v. Hewlett-Packard Co.*,
   2017 WL 1067768 (E.D. Wis. Mar. 21, 2017), *aff'd*, 877 F.3d 771 (7th Cir.
   2017) ........................................................................................................................ 7

*Gopalratnam v. Hewlett-Packard Co.*,
   877 F.3d 771 (7th Cir. 2017) ................................................................................. 18

*Korte v. Exxonmobil Coal USA, Inc.*,
   164 F. App'x 553 (7th Cir. 2006) ........................................................................ 6, 7

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*,
   2023 WL 6248473 (N.D. Ill. Sept. 19, 2023) .......................................... 10, 11, 12

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................................. 5

*LQD Bus. Fin., Inc. v. Rose*,
   2023 WL 2306854 (N.D. Ill. 2023) ............................................................ 5, 8, 12

*McCabe v. Crawford & Co.*,
   272 F. Supp. 2d 736 (N.D. Ill. 2003) ...................................................................... 5

*Minasian v. Standard Chartered Bank, PLC*,
   109 F.3d 1212 (7th Cir. 1997) .......................................................... 7, 12, 18, 19

*Obrycka v. City of Chicago*,
   792 F. Supp. 2d 1013 (N.D. Ill. 2011) .................................................................. 19

*Padilla v. Hunter Douglas Window Coverings, Inc.*,
   14 F. Supp. 3d 1127,1132 (N.D. Ill. 2014) .......................................................... 16

*SEC v. Lipson*,
   46 F. Supp. 2d 758 (N.D. Ill. 1998) ........................................................ 5, 10, 13

*Sullivan v. Alcatel-Lucent USA Inc.*,
   2014 WL 3558690 (N.D. Ill. July 17, 2014) ......................................................... 13

*Takara Tr. v. Molex Inc.*,
   429 F. Supp. 2d 960 (N.D. Ill. 2006) .................................................................... 15

*United States v. Northrop Grumman Sys. Corp.*,
   2015 WL 5916871 (N.D. Ill. Oct. 8, 2015) ........................................................... 12

*Wintz v. Northrop Corp.*,
   110 F.3d 508 (7th Cir. 1997) ................................................................................ 12

**RULES**

Fed. R. Evid. 702 ....................................................................................................4, 5, 18

## I.     PRELIMINARY STATEMENT

The key premise of the SEC's allegations is that the audited financial statements for Defendant SBB Research Group, LLC's ("SBB") funds reported estimated values for structured notes in a manner inconsistent with ASC 820, a provision of Generally Accepted Accounting Principles ("GAAP"). Dkt. 1 ¶¶ 33-36, 86. To prevail, the SEC must prove not only misstatements to SBB investors, but also that any misstatements would be material to a reasonable investor in SBB's funds. To support its allegations of misstatements relating to GAAP compliance and materiality, the SEC retained Peter Hickey, an individual who has never worked as an accountant or as an auditor. Defendants move to exclude Hickey's opinions:

*First*, Hickey's opinions about SBB's valuation model should be excluded. Hickey opines that SBB's model was inconsistent with ASC 820 because it failed to use market-standard inputs, but Hickey lacks the requisite expertise to opine on the market for the particular type of structured notes in which SBB's funds invested. Moreover, Hickey does not use a reliable methodology to support his opinions about the model, but simply summarizes evidence that the jury itself is capable of understanding. Hickey also invades the province of the jury, making impermissible credibility determinations based on his own (unfounded) perceptions of "inconsistencies" in Samuel Barnett's testimony. He further opines on SBB's *knowledge* of ASC 820, fair value principles, and valuation, and SBB's *intent* to comply with ASC 820, even though an expert cannot opine on another's knowledge or state of mind. And many of Hickey's "opinions" are nothing more than factual narratives not drawn from any purported expertise or linked to any opinions.

*Second*, Hickey lacks any expertise and performs no analysis to conclude that the SBB funds' financial statements were not prepared in accordance with GAAP. Hickey is not a certified public accountant ("CPA"), has never worked in an accounting role, and, by his own admission, is not a GAAP expert. His opinion about the funds' financial statements is based solely on his

(flawed) conclusion that SBB's model was inconsistent with ASC 820. Whether financial statements comply with GAAP requires more than opining on whether model inputs are consistent with ASC 820, which Hickey's opinions do not provide.

*Third*, Hickey is not qualified to opine on what is material to investors. Compounding these flaws, Hickey offers materiality opinions that are *ipse dixit*, resting on his own say-so rather than any reliable methodology. Hickey admitted that he based his materiality opinion not on any standards, but rather on his personal investing experience—which does not include investing in structured notes or private funds—and his prior experience as an expert on ASC 820—which is irrelevant to his materiality opinion. Hickey's lack of expertise in materiality is further highlighted by the "rebuttal" testimony of SEC expert Andrew Mintzer, whom the SEC improperly seeks to admit to shore up Hickey's materiality failures.

*Fourth*, Hickey's opinion on the auditor/audit client relationship should be excluded as he admits he has no experience as an accountant or auditor and cites no supporting standards.

## II.    BACKGROUND

SBB's funds primarily invested in structured notes, which are financial instruments that have features of fixed income but also are derivatives with payoffs linked to the value of other "underlying" assets. The vast majority of SBB's funds' investments were long-dated "worst of" structured notes, *i.e.*, they provided payoffs at maturity based on whichever of the S&P 500 and the Russell 2000, two stock market indices, had worse performance over the course of several years. The SEC alleges that Defendants defrauded investors by providing them with audited financial statements that estimated the fair value of the funds' notes in a manner that did not comply with ASC 820. According to the SEC, Defendants knowingly inflated the estimated fair value of the funds' notes by using a proprietary model that did not conform to models used by other market participants. By 2016, SBB hired a third-party firm, Markit (now known as S&P

Global), and used Markit's model to value the funds' assets, adjusted certain of its fair value estimates, and credited SBB investors for fees calculated based on values estimated using SBB's model. The credit amounted to approximately $1.4 million for all investors for fees paid over a five-year period, of which 84% was credited to Barnett or his family members. For non-family investors, the average annual fee credit over the five-year period was just 0.5% of their average annual investment (*i.e.*, NAV) in the applicable SBB funds.

Hickey opines that Defendants had no experience with ASC 820 and did not attempt to comply with ASC 820 in valuing the SBB funds' structured notes. Hickey Rep. ¶¶ 10(d), 10(e).[1] He further asserts that SBB's model did not maximize the use of observable, market-corroborated inputs, as required by ASC 820, and instead used subjective, unobservable inputs. *Id.* ¶¶ 10(f)-(h). According to Hickey, because SBB's model used inputs inconsistent with ASC 820, its funds' financial statements were not prepared in accordance with GAAP and the funds reported inaccurate performance numbers and risk metrics. *Id.* ¶¶ 10(a), (j).

On materiality, Hickey opines that SBB's representation that its funds were "valued in accordance with GAAP" would be considered important by a reasonable investor

> because it indicated to investors (and SBB's auditor) that (i) SBB used widely accepted, industry standard accounting methods for calculating the value of its investments, (ii) SBB's valuations were done in such a way that allowed investors to make comparison to other similar investments, and (iii) SBB was not using subjective considerations to reach valuations that were inconsistent with fair value.

---

[1] The Opening Report of Peter C. Hickey ("Hickey Rep.") is included in the Omnibus Exhibit Index To Defendants' *Daubert* Motions ("Omnibus Exhibit Index") at Ex. 1. Hickey's Deposition Transcript ("Hickey Tr.") is included in the Omnibus Exhibit Index at Ex. 11. The Rebuttal Report of Andrew M. Mintzer ("Mintzer Second Rep.") is included in the Omnibus Exhibit Index at Ex. 7. Mintzer's Deposition Transcript ("Mintzer Tr.") is included in the Omnibus Exhibit Index at Ex. 13. Craig McCann's Deposition Transcript ("McCann Tr.") is included in the Omnibus Exhibit Index at Ex. 12. All other exhibits referenced in this Motion include the relevant citation to their numbered location in the Omnibus Exhibit Index.

*Id*. ¶ 10(c).  Despite not having a clear understanding of how SBB's model works, Hickey also claims that SBB's model "caused the value of the SBB Funds to be over-valued," which "allowed SBB to collect higher fees."  *Id*. ¶ 145; *see id.* ¶ 10(j).  Per Hickey, it would be "important to investors . . . that investment funds . . . be reported at fair value."  *Id*. ¶ 145.

Hickey is one of two SEC experts who opine on materiality, and the only SEC expert who addressed materiality in the SEC's initial disclosures.  Despite offering opinions on the materiality of SBB's alleged deviations from GAAP, Hickey does not support his opinions with an analysis under GAAP or any other standard.  Instead, the second SEC expert, Andrew Mintzer, submitted a "rebuttal report" in response to Defendants' materiality expert, Gene Deetz.  Mintzer's "rebuttal report" contains a "corrected materiality analysis" under SEC Staff Accounting Bulletin No. 99 ("SAB 99"), the accounting profession's "authoritative guidance for" analyzing materiality under GAAP.  *See* Mintzer Second Rep. ¶ 12; Mintzer Tr. 378:5-13.  Mintzer opines that the alleged misstatements in SBB's funds' financial statements are material under GAAP based on four different assumptions provided by the SEC.  *See* Mintzer Second Rep. ¶¶ 58-97.  Defendants seek exclusion of Mintzer's opinions in a contemporaneously filed motion.

## III.   LEGAL STANDARDS

Expert testimony is admissible only if the proponent shows it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a disputed fact; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.  Fed. R. Evid. 702.  The "touchstone of admissibility under Rule 702 is helpfulness to the jury," and an "expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion."  *Bogathy v. Union Pac. R.R.*, 2020 WL 419406, at *3

4

(N.D. Ill. Jan. 24, 2020) (citation omitted). Because expert testimony can be "powerful and misleading" and significantly impact the outcome of a case, *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 739 (N.D. Ill. 2003), courts have a "special obligation" to act as a "gatekeeper" to ensure that only relevant and reliable expert testimony is admitted, *Clark v. Takata Corp.*, 192 F.3d 750, 756 (7th Cir. 1999) (citations omitted).

As gatekeepers, courts consider: (a) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education; (b) whether the expert's methodology is reliable; and (c) whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). When a proffered expert lacks the education, knowledge, training, experience, or methodology necessary to qualify as an expert, the testimony should be barred. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999). So, too, if the testimony would make "credibility choices that are within the province of the jury" or merely "repeat or summarize what the jury independently has the ability to understand." *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998). *Daubert* does not allow an expert to "be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *LQD Bus. Fin., Inc. v. Rose*, 2023 WL 2306854, at *2 (N.D. Ill. 2023) (citation omitted). And as the 2023 Advisory Committee Note to Rule 702 makes clear, the "sufficiency of an expert's basis, and the application of the expert's methodology" are admissibility questions, not weight questions for the jury.

## IV. ARGUMENT

### A. Hickey's Opinions About SBB's Model Are Inadmissible

Hickey offers multiple opinions criticizing SBB's model, claiming that the model did not comply with ASC 820 because its inputs were inappropriate, that it caused the SBB funds to be over-valued, and that certain other metrics were higher using the model. *See, e.g.*, Hickey Rep.

5

¶¶ 10(f), (h)-(j).  He further opines on SBB's knowledge and intent relating to the model.  *Id.*
¶¶ 10(d), 10(e), 65, 88-106, 111-16, 145.  None of these opinions pass muster under Rule 702.

### 1. Hickey Is Unqualified to Opine on Market-Based Inputs and Does Not Follow a Reliable Methodology

Hickey's opinion that SBB's model violated ASC 820 because its inputs "were not
corroborated by other market participants" should be excluded for three reasons: (a) he lacks the
requisite knowledge and experience to offer this opinion, (b) his opinion is not based on a reliable
methodology, and (c) his opinion is based on credibility assessments that are appropriately left to
the jury.  Hickey Rep. ¶ 64; *see also id.* ¶ 10(h).

According to Hickey, ASC 820 requires consideration of valuation inputs used by other
market participants.  *Id.* ¶ 10(h).  Opining on whether the inputs to SBB's model were "based on
market-corroborated inputs" thus requires an understanding of the market for structured notes
similar to those invested in by SBB's funds.  *Id.*  Hickey lacks this knowledge.  He has no
experience with the "worst of" structured notes at issue here, which are bespoke and complex
financial instruments, or the correlation input that is a critical input for this particular type of
structured note.  Hickey Tr. 41:16-18.  Nor has he ever invested in structured notes.  *Id.* 175:11-
12.  Hickey's opinion is based on an incomplete and inaccurate understanding of the facts: He
opines that all SBB's model did was "valu[e] the subcomponent options of the notes" (Hickey
Rep. ¶ 79), which ignores the "worst of" feature which the SEC's other expert, Craig McCann,
admits is at the heart of SBB's funds' bespoke notes.  McCann Tr. 44:20-21, 92:17-93:7, 93:24-
94:5; *see also Korte v. Exxonmobil Coal USA, Inc.*, 164 F. App'x 553, 557 (7th Cir. 2006)
(affirming exclusion where expert "formed his opinion without sufficient scientific evidence
confirming the validity of [opinion's] premise"); *Gopalratnam v. Hewlett-Packard Co.*, 2017 WL
1067768, at *5-11 (E.D. Wis. Mar. 21, 2017) (excluding report where expert's conclusion ignored

record evidence, contradicted scientific literature, and was "not supported by generally-accepted . . . science or reliable, testable methodology"), *aff'd*, 877 F.3d 771 (7th Cir. 2017).

Putting aside Hickey's lack of experience with these investments and their market, his opinion also lacks any reliable methodology. He did not survey the market to understand which valuation inputs other market participants used. Hickey Tr. 110:18-111:12, 112:6-9, 116:13-20, 117:8-23. He did not determine whether other participants in the market held structured notes similar to those held by SBB's funds. *Id.* 70:21-71:5, 109:22-110:13.[2] And he did not cite any academic or industry analysis describing the inputs other market participants used to model these types of structured notes. *See Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (excluding testimony where expert "did not gather any data on the subject, survey the published literature," or take any other steps before forming opinion); *Korte*, 164 F. App'x at 557 (excluding expert opinion on cause of plaintiffs' health issues where expert based opinion on plaintiffs' "subjective beliefs" and expert's "general knowledge of the effects of coal dust exposure," but did not conduct own tests or rely on tests conducted by public health authorities on coal dust near plaintiffs' home). Instead of employing a reliable methodology, Hickey's opinion is based solely on testimony and other documents in the record. Hickey Tr. 110:18-111:5. But "[a]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence," so this opinion should be excluded on that independent basis, too. *LQD Bus. Fin.*, 2023 WL 2306854, at *2 (citation omitted); *see Anderson News, L.L.C. v. Am. Media, Inc.*, 2015 WL 5003528, at *2 (S.D.N.Y. Aug. 20, 2015) (similar).

Finally, Hickey's weighing of evidence credibility is a third reason to exclude his opinion that SBB's model inputs were not corroborated by market participants. Determining the weight

---

[2] When asked about whom the other market participants might be, Hickey only speculated, replying, "I don't know. The banks who issued the notes potentially." Hickey Tr. 201:12-19.

and credibility of witness testimony is the exclusive province of the jury. Experts cannot opine on the believability or truthfulness of witness testimony. *See, e.g.*, *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011) (experts "may not usurp the jury's function to weigh evidence and make credibility determinations" (quotation marks and citations omitted)); *Goldberg v. 401 North Wabash Venture, LLC*, 2013 WL 212912, at *8 (N.D. Ill. Jan. 18, 2013) (similar). Yet that is precisely what Hickey admits to doing here.

Hickey admits he relied on select testimony from select SBB witnesses and did not review other documents in the record evidencing academic support for the valuation inputs used by SBB. During his deposition, Hickey acknowledged that he credited evidence that he believed supported the SEC's theory of the case and dismissed other evidence, such as Barnett's sworn statements. Hickey Tr. 126:23-128:5, 131:18-132:2. As to why he did not review Barnett's interrogatory responses related to the theoretical and academic justification SBB relied on for its model inputs, Hickey acknowledged this decision was based on weighing witness credibility. *See id.* 126:23-128:5 ("Q Did you think it was important to understand [] Barnett's perspective in these interrogatories as to his explanation for certain changes and the inputs that you were opining on?" "A. I actually relied more on [] Barnett's colleagues and their testimony on the SBB model … and they were consistent with the criticisms that SBB heard …."). It is inappropriate for Hickey to offer opinions that turn on his weighing of the credibility of documents and testimony the jury members can understand for themselves. *See, e.g.*, *Ashley Furniture Indus., LLC v. Perficient, Inc.*, 2023 WL 4446675, at *9 (W.D. Wis. July 11, 2023) (excluding opinions "in which" expert "makes a credibility determination or [] offers an opinion about someone's intent"); *Andersen v. City of Chicago*, 454 F. Supp. 3d 808, 816 (N.D. Ill. 2020) (excluding expert's opinion "on the consistency of [plaintiff]'s version of the events with the various law enforcement reports").

2.      **Hickey Cannot Support His Claim That SBB Failed to Maximize the Use of Observable Inputs and Minimize the Use of Unobservable Inputs**

Hickey further opines that SBB failed to comply with ASC 820 because its proprietary model used historical volatility (an approximated figure based on realized returns of the underlying stock indices) and did not use implied volatility (an approximated figure based on reverse-engineering from available option prices), as the estimate for the volatility input and thus purportedly failed to maximize the use of observable inputs that can be corroborated by market data over unobservable inputs.  Hickey Rep. ¶ 64.  But the structured notes that SBB's funds invested in would have inputs more closely related to thinly-traded (or non-existent) long-dated options instead of widely-available short-dated options, and Hickey agreed that implied volatility for long-dated options could be unobservable.  Hickey Tr. 93:5-16, 94:14-95:16.  He nevertheless asserted that "implied volatility is always preferred over historical volatility" even if it is "[l]ess observable."  *Id*. 231:8-232:7, 234:14-235:3.  Hickey provides no support for that assertion, leaving an impermissible "analytical gap between the data and the opinion proffered."  *Cordes v. Centers for Reprod. Med. & Wellens*, *LLC*, 2023 WL 6362750, at *7 (S.D. Ill. Sept. 29, 2023) (quoting *GE Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  This opinion is inadmissible *ipse dixit*.

3.      **Hickey's Opinion That SBB's Model Caused Overvaluation Rests on an Unreliable Method That Improperly Invades the Province of the Jury**

Hickey opines that SBB's model "caused the value of the SBB Funds to be over-valued," Hickey Rep. ¶ 145, and "tended to overstate the value of the component options of SBB's structured notes," *id.* ¶ 10(j).  But Hickey concedes he did not calculate independent valuations of the structured notes or conduct any analysis to determine the impact of SBB's model inputs on the valuations.  Hickey Tr. 111:23-112:14, 116:21-23, 123:12-16, 132:22-133:20, 194:10-13.  In stark contrast to prior engagements where he calculated his own independent valuations of securities (*id*. 193:21-194:9), Hickey's conclusion here is based on reading a handful of documents and

9

testimony in the record. The basis for Hickey's opinion that SBB's model caused an overvaluation of SBB's funds is testimony that he "heard that admits this from [] Navalgund and [] Aven." *Id*. 132:3-21. His opinion simply "relay[s] the" alleged "admissions of [SBB] employees without applying any expertise," and "does not assist the jury and therefore is not proper testimony for an expert." *Goldberg*, 2013 WL 212912, at *8; *see Lipson*, 46 F. Supp. 2d at 763 (expert "must assist the jury in understanding what otherwise might be outside its grasp").

Hickey's opinion that SBB overcharged investors $1.42 million in fees is similarly not proper expert testimony because he acknowledges that the basis for this opinion is a single exhibit reflecting SBB's own calculations (not his), and that he did nothing to verify the accuracy of the data used or the calculation performed. Hickey Rep. ¶ 146; Hickey Tr. 184:15-21. Hickey simply accepted the number and applied zero expertise. Allowing Hickey to act as a factual narrator for the SEC is misleading and prejudicial. *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2023 WL 6248473, at *2 (N.D. Ill. Sept. 19, 2023) ("An expert is not a lawyer's sock puppet.").

Additionally, Hickey offers no analysis for why this calculation, among others in the factual record, is the correct one. The $1.42 million fee credit was based on comparing results from SBB's model with the Markit model, which SBB adopted for its funds' financial statements for 2016. SBB also calculated an earlier fee credit of $1.03 million based on comparing results from SBB's model with those using a different model that SBB submitted to the SEC examination team in May 2016 ("May 2016 model"). Hickey Rep. ¶ 146. Hickey read the descriptions of the May 2016 model and the Markit model and testified that both were GAAP compliant. Yet he opines—without any supporting methodology—that the $1.42 million fee credit calculated by SBB using Markit values was more appropriate than the $1.03 million fee credit initially calculated by SBB. Hickey Tr. 184:22-185:8. These opinions should therefore also be excluded. *See United*

*Egg Producers*, 2023 WL 6248473, at *3 (excluding expert who "read the evidence, and offered a conclusion" with "an interpretive gloss that aligned with Plaintiffs' theory of the case").

### 4. Table 4 in Hickey's Report Is Not Based on a Reliable Method or Expertise

Hickey's opinion that the SBB model caused the SBB funds "to report inaccurate performance track records, risk/return metrics and NAVs" suffers from the same flaws and should be excluded. Hickey Rep. ¶ 10(j); *see id.* ¶¶ 148, 149. The only support for this opinion is Table 4 in his report, which is a copy/paste job from a single SBB document. Hickey conceded during his deposition that he did not "do anything to evaluate the reliability of the information in [T]able 4." Hickey Tr. 195:19-196:23. Nor did he test the reliability of the information in the SBB spreadsheet pasted into Table 4, "evaluate that the bank notes for the structured notes at issue in this case were, in fact, fair value," or review the models underpinning the bank quotes relied upon in the third column of Table 4. *Id*. 194:16-196:11, 196:20-23. In short, Hickey cobbled together a table from a lone document in the factual record, without validating a single input—failing even to confirm whether the spreadsheet he relied upon to create Table 4 is the most complete or accurate of the multiple versions SBB produced—and stamped it with "expert" approval.

Such expert testimony, devoid of expertise or reliable methodology—or *any* methodology, for that matter—is precisely the kind that should be excluded. *See Clark*, 192 F.3d at 756 ("It is axiomatic that proffered expert testimony must be 'derived by the scientific method[.]'" (quoting *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997))). Expert "opinion has a significance proportioned to the sources that sustain it." *Minasian*, 109 F.3d at 1216 (internal quotation marks and citation omitted). Here, Hickey has not taken the most basic step of verifying or validating "the sources that sustain" Table 4. Without any analysis rooted in a reliable methodology or expertise applied to reach this conclusion, Hickey's opinions related to Table 4 should be excluded.

11

**5. Hickey's Opinions About SBB's (1) Knowledge of ASC 820, Fair Value, and Valuation and (2) Intent to Comply with GAAP Should Be Excluded**

Hickey also seeks to testify that SBB lacked knowledge of ASC 820, fair value principles, and valuation models, and that SBB did not attempt to comply with ASC 820 or intend "to value the structured notes at fair value." Hickey Rep. ¶¶ 10(d), 10(e), 65, 88-106, 111-16, 145. But experts cannot opine on another's knowledge or state of mind, so these opinions should be excluded. *See LQD Bus. Fin.*, 2023 WL 2306854, at *2 (expert may not "render an opinion regarding any party's knowledge or intent"); *United States v. Northrop Grumman Sys. Corp.*, 2015 WL 5916871, at *5 (N.D. Ill. Oct. 8, 2015) (excluding expert opinion on contracting parties' mental states); *George v. Kraft Foods Glob., Inc.*, 800 F. Supp. 2d 928, 932-33 (N.D. Ill. 2011) (excluding expert's state of mind opinion as speculative and unhelpful).

These opinions are also based solely on his review of testimony and other documents in the record and are inadmissible for that independent reason as well. *See* Hickey Tr. 250:4-9 (confirming "support for" opinion is solely "record evidence" he reviewed); *id.* 241:23-242:7, 248:7-24 (similar); *see also United Egg Producers*, 2023 WL 6248473, at *3 (similar). That these so-called opinions are simply recitations of the SEC's factual narrative without any expertise required is plain from the report itself. Hickey Rep. ¶¶ 65, 88-106 (summarizing the record with no other sources or citations).

**6. Hickey's Additional SBB Model Opinions Should Be Excluded**

Hickey's remaining opinions about SBB's model should be excluded because they are "merely reading and interpreting documents without drawing on any additional expertise." *Sullivan v. Alcatel-Lucent USA Inc.*, 2014 WL 3558690, at *6 (N.D. Ill. July 17, 2014); *see also Burns v. Sherwin-Williams Co.*, 2022 WL 4329417, at *20 (N.D. Ill. Sept. 18, 2022) (similar), *aff'd*, 78 F.4th 364 (7th Cir. 2023). More specifically:

12

- Hickey opines that SBB's model was "an option valuation exercise" (Hickey Rep. ¶ 10(b)), describes SBB's development of its model (*id*. ¶¶ 80-87), and discusses the Markit model that SBB later adopted (*id*. ¶¶ 133-135). These discussions are not expert opinions; rather, they summarize the evidence without additional analysis. *See id*. ¶¶ 80-87, 133; Hickey Tr. 111:14-114:7, 115:20-116:20, 117:8-118:12, 181:9-15, 182:6-183:3; *see Lipson*, 46 F. Supp. 2d at 765 (holding party "not entitled to bolster" its case "by having [expert witness] provide under the banner of expert opinion what is … extra summation of the evidence").

- Hickey also summarizes his understanding of facts related to the SEC's examination of SBB, the issues identified in the SEC examination letter, and SBB's response without linking these facts to any opinion. Hickey Rep. ¶¶ 117-125, 129-132. Hickey's "opinions" about these alleged facts do not pass muster. *Burns*, 2022 WL 4329417, at *20-21. Hickey cannot "spout facts and dress them up *as* opinions," as he attempts to do here. *Id.* at *20.

- Hickey opines that 90% of the value of the structured notes held by the SBB funds was in the option component of the structured note. Hickey Rep. ¶¶ 17, 127, 145. He admits this opinion is based *entirely* on testimony from SBB personnel. Hickey Tr. 74:9-23.[3]

To discuss any of these facts, Hickey must "link them to opinions." *Burns*, 2022 WL 4329417, at *20-21. He does not do so. The jury is more than capable of reviewing the same evidence and reaching its own conclusions as to the meaning of the documents and testimony.

## B. Hickey Is Not a GAAP Expert and Conducts No Analysis to Conclude That the SBB Funds' Financial Statements Did Not Comply With ASC 820

Hickey opines that "[b]ecause SBB did not comply with ASC 820 in valuation of the Funds, the financial statements for the SBB Funds were not prepared in accordance with GAAP." Hickey Rep. ¶ 10(a). Hickey admits he is not an accountant nor a GAAP expert. Hickey Tr. 37:16-17, 66:3-13, 215:17-22. His proffered expertise is "valuation," not accounting. Hickey Rep. ¶¶ 1-6 ("As a result of my 25-year career in economic consulting and investment banking, I have significant experience analyzing the valuations of investment funds[.]"). Hickey therefore is not qualified to opine on whether financial statements were prepared in accordance with GAAP.

---

[3] Hickey also misreads Navalgund's testimony, upon which this "opinion" exclusively relies. Navalgund testified that 90% of the *change* in value of the structured notes was in the option component of the structured note. Ex. 8, Navalgund Tr. 46:2-9.

Hickey's opinion and claimed expertise is based solely on ASC 820, which is just one of many provisions in GAAP. He acknowledged that he was unfamiliar with other provisions of GAAP, including that he was unaware of the first provision of the Accounting Standards Codification—ASC 105—which clarifies that it is not necessary to apply *any* provision of GAAP to immaterial items. Hickey Tr. 212:2-216:11 (discussing ASC 105). SEC expert Mintzer acknowledges that the materiality provision in ASC 105 is fundamental, as it cuts across all of GAAP. Mintzer Tr. 354:19-357:4. To his credit, Hickey candidly admitted he was unfamiliar with ASC 105 (Hickey Tr. 213:2-10, 215:6-8), but his admission is also disqualifying.

Hickey also conducted no analysis to support his opinion that the SBB funds' financials were not in compliance with GAAP. He took his flawed conclusion that SBB's model's was inconsistent with ASC 820 and equated that to a financial statement GAAP violation. He did not analyze SBB's funds' financial statements. He did not evaluate whether the purported inconsistencies were material, instead concluding—with no support and contrary to ASC 105— that *any* deviation from the requirements in ASC 820 is material. *Id.* 210:9-20 ("Any deviation from" ASC 820 "or failure to apply ASC 820 would be important to investors"). Because Hickey lacks any experience in evaluating whether financial statements comply with GAAP—to say nothing of expertise—and he did not conduct any analysis of whether the SBB funds' financial statements complied with GAAP, his GAAP opinion should be excluded.

### C.   Hickey Is Not Qualified to Opine On Materiality and His Materiality Opinions Are Impermissible *Ipse Dixit*

Hickey also opines that SBB's representations about its compliance with GAAP and the alleged overvaluation of its funds' structured notes would be considered material by a reasonable investor in SBB's funds. *See* Hickey Rep. ¶¶ 10(c), 63, 145 (asserting that SBB's alleged GAAP violation "would be *materially important* to reasonable investors in a private investment fund,"

14

that representations that SBB's funds "were valued in accordance with GAAP would be considered *important by a reasonable investor*," and that "[i]t is *important to investors* and auditors that investment funds . . . *be reported at fair value*" (emphasis added)); *see also id.* ¶ 47. During his deposition, Hickey confirmed that he intends to opine that SBB's alleged failures would be important or material to investors and that he viewed "material" and "important" as synonymous. Hickey Tr. 142:18-143:7. These opinions should be excluded for two reasons.

### 1. Hickey Is Not Qualified to Opine on Materiality

Hickey—a self-described "valuation" expert—is not qualified to opine on materiality. For starters, he does not know GAAP and acknowledged that he had never heard of ASC 105, the key GAAP provision on materiality. *Id.* 212:2-216:11. Likewise, Hickey's failure to consider and apply the authoritative source for GAAP materiality—the SEC's own SAB 99—illustrates that he is unqualified to offer the materiality opinions included in his report.

SAB 99 is seminal when considering the materiality of assertions in financial statements. Courts in this circuit and in others view SAB 99 as "thoroughly reasoned and consistent with existing law," *Takara Tr. v. Molex Inc.*, 429 F. Supp. 2d 960, 979 n.12 (N.D. Ill. 2006), and as "persuasive guidance for evaluating the materiality of an alleged misrepresentation." *Ganino v. Citizens Utilities Co*., 228 F.3d 154, 163 (2d Cir. 2000) (citations omitted). SEC expert Mintzer agrees. When asked if he was "familiar with the standards for assessing if a misstatement is material or immaterial to investors," Mintzer answered that he was "familiar with [SAB] 99, which is the staff guidance … for assessing materiality," and that SAB 99 "is recognized in [his] profession as an authoritative guidance for performing materiality analyses." Mintzer Tr. 361:9-15, 378:5-13. Notably, in other enforcement actions where the SEC has sought to prove that purported misstatements or omissions were material, it has relied on expert opinions that include a SAB 99 materiality analysis. *See, e.g.*, Ex. 22 at 26-28, 80-92 (SEC expert report in *SEC v.*

15

*Osiris*); Ex. 20 at 45-60 (SEC expert testimony in *SEC v. Fuhlendorf*); Ex. 21 at 66-79 (SEC expert report in *SEC v. Kelly*). Hickey, however, testified that he did not review SAB 99 in connection with preparing his report, did not believe that he had ever offered a SAB 99 materiality opinion, and did not recall reviewing SAB 99 prior to his deposition. Hickey Tr. 218:3-219:1.

Hickey's defense of his materiality opinions during his deposition further illustrates that he has no "superior knowledge, skill, experience or education" that qualifies him to opine on materiality. *See Padilla v. Hunter Douglas Window Coverings, Inc*., 14 F. Supp. 3d 1127,1132-35 (N.D. Ill. 2014) (expert not trained in window blind design and engineering unqualified to opine that window blind was defective). Hickey seeks to opine that so-called ASC 820 "process failures are very important in and of themselves" (Hickey Tr. 135:13-15), yet the SEC's rebuttal materiality expert, Mintzer, did not understand and could not explain "what 'a process failure' mean[t]," (Mintzer Tr. 357:9-359:1). At his deposition, Hickey declared—incorrectly and without support—that ASC 820 is a standard that helps determine what would be important to investors[4] (Hickey Tr. 136:7-14), that "any deviation" from ASC 820 "would be important to investors" (*id.* 210:9-20; *see also id.* 135:1-15, 168:4-19), and that his opinion about what is important to investors about SBB's financial statements does not require application of SAB 99 (*id.* 228:7-10), further revealing his lack of expertise to opine on GAAP or materiality.

Rather than ground his materiality opinions in GAAP or authoritative guidance like SAB 99, Hickey acknowledged his opinions were based on his personal investing experience. Hickey Tr. 144:17-24. Hickey has not "gained" relevant experience "through personal endeavors" that would allow him to understand what reasonable investors in a private investment fund would view as important, like representations that SBB's funds' financial statements complied with GAAP.

---

[4] Further illustrating his lack of expertise, Hickey contradicted himself, admitting that "ASC 820 doesn't call for materiality analysis." Hickey Tr. 210:6.

*See Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 794 (N.D. Ill. 2011).  He has never invested in structured notes or private funds; rather, he invests in mutual funds, penny stocks, and some private companies (Hickey Tr. 175:1-12), none of which are analogous to the structured notes or private investment funds at issue here.  This experience therefore cannot be "reliably applied to the facts."  *See Pampered Chef*, 804 F. Supp. 2d at 794 (citation omitted).  Nor can any expertise in ASC 820 overcome this lack of relevant experience.  *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723-24 (7th Cir. 1999) (concluding district court abused its discretion by allowing metallurgy expert to testify because, while "very intelligent," he was "not a medical doctor" and lacked "experience in assessing the toxicology or other health effects of manganese on the body").  This lack of experience alone requires exclusion of these opinions.  *See, e.g.*, *Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 688 (N.D. Ill. 2006) (barring expert because "alleged expertise in forensic accounting is only tangentially related to the alleged fraud"); *Client Funding Sols. Corp. v. Crim*, 943 F. Supp. 2d 849, 863 (N.D. Ill. 2013) (barring expert testimony of trial lawyer on matters of legal professional responsibility as he lacked "particular skill, experience, education, or training" in "specialized and complex matters of professional responsibility" (citation omitted)).

### 2.    Hickey Offers No Methodology to Reliably Support His Materiality Opinions

Even if Hickey were qualified to testify about materiality—and he is not—his materiality opinions are *ipse dixit* and should be excluded on that independent ground.  *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) (*ipse dixit* opinions "properly excluded under Rule 702" (citation omitted)).  To satisfy Rule 702, an expert must apply reasoned analysis to all relevant data, using a recognized method that permits testing the conclusions.  *See Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010).  Hickey does not do so, and the court should bar his unsubstantiated materiality opinions.  *See Minasian*, 109 F.3d at 1216 ("[E]xpert's report that does nothing to substantiate this opinion is worthless, and therefore inadmissible.").

Hickey's report does not cite any standards or include any analysis to support his opinion that SBB's alleged failures would be important to investors. When pressed to identify where in his report he discussed his materiality opinion—that is, his opinion regarding what would be considered important by a reasonable investor—he answered that it "is laced within" every "page of" his "report in a way," because "the whole 'why'" of his opinion is that ASC 820 "matters." *See* Hickey Tr. 143:15-146:7; *see also id.* 140:24:-141:15 (acknowledging ASC 820 does not "specifically" discuss what is important to investors). Despite having no relevant experience with investments in private funds invested in bespoke structured notes, Hickey did not conduct any surveys to understand what was important to investors in such vehicles. *Id.* 173:16-18; *see also Goldberg*, 2013 WL 212912, at *6 (holding expert could not "opine on what reasonably prudent buyers would conclude" where expert "did not hold any focus groups, conduct any surveys, or interview any buyers"). Nor did he claim in his deposition that he used any other reliable methodology in place of the industry standard SAB 99 materiality analysis, such as FASB Concept Statement No. 2 or SAB 108 (Hickey Tr. 229:15-230:3), "or do any of the other things that a genuine expert does before forming an opinion." *See Minasian*, 109 F.3d at 1216. Instead, Hickey simply concludes that "*[a]ny* deviation from" ASC 820 "or failure to apply ASC 820 would be important to investors." Hickey Tr. 210:9-20 (emphasis added). As Hickey "provides no foundation for his" materiality opinions, they are the "purest form" of *ipse dixit* and should be excluded. *Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (excluding opinion as *ipse dixit* where methodology did not include interviews, conducting "any studies" or "independent research," or "investigat[ing] the veracity of the materials Plaintiff's counsel provided"). Hickey admitted as much, testifying that "it goes without saying ... that the results of

those fair value determinations are important to anyone[.]" Hickey Tr. 142:8-17. If it goes without saying, the jury does not need an expert to say it. Hickey's baseless opinions should be excluded.

In a last-ditch effort to support these opinions, Hickey testified that his materiality opinions are based on his personal investment experience (*id.* 174:11-24), his experience applying ASC 820 and knowledge of fair value (*id.* 53:24-54:4, 135:16-24, 136:7-14, 144:17-24, 173:19-174:6, 174:11-24, 216:16-217:19), and his analysis of "the record in this case" (*id.* 173:19-174:6). But Hickey lacks the personal investment experience necessary to back up these opinions. *See supra* pp. 16-17. And his review of the record does not establish "the requisite level of reliability," because these opinions "were not tied to specific" documents that he reviewed. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006) (admitting expert's "testimony was in error" where opinions "were not tied to specific" documents he reviewed). Nothing in the record that Hickey analyzed would support these opinions. In fact, Hickey did not even review investor communications that were produced or testimony from SBB's business development advisor.[5] Nor does ASC 820, his sole purported area of expertise, offer a methodology to support Hickey's materiality opinion. As Hickey admitted, ASC 820 "doesn't have a materiality analysis." *Id.* 217:22. Hickey's materiality opinions should be excluded.[6]

---

[5] Specifically, Hickey did not review the testimony of Alan Handler, SBB's business development advisor, whom the SEC questioned about what would be important to investors in SBB's funds. While Handler is not qualified to testify about what would be important to an investor in SBB's funds, Hickey intentionally decided not to review Handler's testimony because he did not believe "what [] Handler thinks would be important to SBB investors" was "important to [Hickey's] opinion in this case." Hickey Tr. 53:3-54:4.

[6] Hickey's Report also summarizes SBB's disclosures in its compliance manual, financial statements, auditor representation letters, and valuation policy (Hickey Rep. ¶¶ 41-46) to support his assertion that these statements are important to investors and auditors. Hickey cannot testify about these disclosures, as they are not linked to any admissible expert opinion. *See Burns*, 2022 WL 4329417, at *20 ("[S]ummarizing the record is fair game *if* the point is to support opinions[.]" (emphasis added)).

### D.    Hickey's Auditor Opinion Should Be Excluded

Hickey lacks experience as an accountant or an auditor. *See* Hickey Tr. 37:16-19. He is not qualified to opine on an auditor's responsibilities or the management/auditor relationship. Yet Hickey still seeks to opine—without citing any accounting standards in support—that "it is not an auditor's responsibility to determine the fair value of an investment fund's positions" and "it is management's obligation to assess fair value and … represent to the auditor that valuations were conducted according to GAAP." *Id.* ¶¶ 107-09. These opinions are not connected in any way to his main opinions and should be excluded. *See Evoy v. CRST Van Expedited, Inc.*, 430 F. Supp. 2d 775, 782 (N.D. Ill. 2006) (testimony "correctly excluded" where defendant "attempted to introduce medical evidence through a witness" without "expertise in the medical sciences").

## V.    CONCLUSION

The Court should exclude Hickey's opinions as inadmissible under Rule 702.

Dated: April 12, 2024

Respectfully submitted,

By: /s/ *John J. Sikora, Jr.*
John J. Sikora, Jr. (6217330)
Heather A. Waller (6302537)
Marissa K. Perry (6337268)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel. (312) 876-7700
john.sikora@lw.com
heather.waller@lw.com
marissa.perry@lw.com

Howard J. Rosenburg (6256596)
KOPECKY SCHUMACHER
ROSENBURG LLC
120 N. LaSalle, Street, Suite 2000
Chicago, IL 60602
Tel. (312) 380-6631
hrosenburg@ksrlaw.com

H. Gregory Baker (*pro hac vice*)
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel. (212) 336-2871
hbaker@pbwt.com

*Attorneys for Defendants*
*SBB Research Group, LLC, Samuel Barnett,*
*and Matthew Aven*