# EXHIBIT 2

Case: 1:19-cv-06473 Document #: 216-2 Filed: 05/13/24 Page 2 of 7 PageID #:11102

Noffsinger v. Valspar Corporation, Not Reported in Fed. Supp. (2013)
2013 WL 12340338

2013 WL 12340338
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Steven NOFFSINGER, Plaintiff,
v.
The VALSPAR CORPORATION, a Delaware Corporation, d/b/a C&M Coatings and d/b/a Valspar Industrial, and Engineered Polymer Solutions, Inc., d/b/a Valspar Coatings, a Delaware Corporation, Defendants.

Case No. 09 C 916
|
Signed 01/04/2013

**Attorneys and Law Firms**

David A. Axelrod, Stacey Lynn Leinheiser, Jason M. Kleinman, David A. Axelrod & Associates P.C., Chicago, IL, Robert Alan Cohen, The Rob Cohen Law Office, LLC, Willmette, IL, for Plaintiff.

Andrew J. Detherage, Terri L. Bruksch, Barnes & Thornburg LLP, Indianapolis, IN, William M. McErlean, James E. Michel, Barnes & Thornburg LLP, Chicago, IL, for Defendants.

## REPORT AND RECOMMENDATION

Geraldine Soat Brown, United States Magistrate Judge

To: The Honorable Robert W. Gettleman United States District Judge

*1 Before the court are three similar motions: plaintiff's Motion *In Limine* No. 3 to Bar Testimony and Opinions of Michael Greenberg, M.D., M.P.H., Regarding Quantification-Based Toxicological Source-Exposure-Dose-Effect Analysis ("Pl.'s MIL No. 3") [dkt 242]; plaintiff's Motion *In Limine* No. 4 to Bar Testimony and Opinions of James Wedner, M.D., Regarding Quantification-Based Toxicological Source-Exposure-Dose-Effect Analysis ("Pl.'s MIL No. 4") [dkt 244]; defendant's Motion *in Limine* to Preclude Testimony on the Level of Exposure of Plaintiff to Dynaprime. ("Def.'s Mot.") [Dkt 279.] For the reasons discussed below, this court respectfully recommends that all three motions be denied.

## BACKGROUND

Plaintiff Steven Noffsinger alleges that he suffers from Reactive Airways Dysfunction Syndrome ("RADS") caused by exposure to Dynaprime, an industrial solvent-based coating made by defendant Valspar Corporation.[1] (Pl.'s Am. Compl.; Mem. Op. and Order, Mar. 15, 2012 at 2-3 ("Summ. J. Op.").) [Dkt 49, 217.] Noffsinger alleges that while hauling Dynaprime, Dynaprime fumes leaked into the cab of his truck while he was sleeping. (*Id.*, Pl.'s MIL No. 3 ¶ 2.)

The parties agree that a proper RADS diagnosis consists of eight criteria. Among these criteria is that the patient was exposed "to a gas, smoke, fume, or vapor present in a very high concentration and which had irritant qualities." (Summ. J. Op. at 2-3.) According to the medical literature, "since all cases of [RADS] have been established retrospectively, there has never been an assessment of the intensity of exposure necessary to induce this condition." (Def.'s Resp. MIL No. 2, Ex. C, Emil J. Bardana, Jr., *Reactive Airways Dysfunction Syndrome (RADS): Guidelines for Diagnosis and Treatment and Insight into Likely Prognosis*, 83 Annals of Allergy, Asthma, & Immunology 583, 583 (Dec. 1999).) [Dkt 308.]

To meet his burden of proof that the exposure to Dynaprime was the cause of Noffsinger's ailments, Noffsinger's experts rely on differential etiology, in which "the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment." (Summ J. Op. at 10 (quoting *Meyers v. Ill. Central R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) ).) In its motion for summary judgment, Valspar challenged the reliability of differential etiology in a toxic tort case, arguing that Noffsinger's experts had not followed acceptable toxicological methods of source, dose, and exposure. (Defs.' Mot. Summ. J. at 18-28.) [Dkt 184.] Specifically, Valspar contended that Noffsinger's experts had failed to quantify the amount of Noffsinger's exposure to Dynaprime. (*Id.* at 19-22, 26.) The District Judge, in denying Valspar's motion for summary judgment, upheld the use of differential etiology by Noffsinger's experts, and noted that it is difficult, if not impossible, in RADS cases to quantify the level of exposure. (Summ. J. Op. at 8-10.)

## LEGAL STANDARD

Case: 1:19-cv-06473 Document #: 216-2 Filed: 05/13/24 Page 3 of 7 PageID #:11103

Noffsinger v. Valspar Corporation, Not Reported in Fed. Supp. (2013)
2013 WL 12340338

**\*2** Generally, "[m]otions *in limine* are disfavored." *Mi-Jack Prods. v. Intl. Union of Operating Engrs., Loc. 150*, No. 94 C 6676, 1995 WL 680214 at \*1 (N.D. Ill. Nov. 14, 1995). A motion *in limine* should only be granted when "the evidence is clearly inadmissable for any purpose." *Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 4060293 at \*1 (N.D. Ill. Sept. 14, 2012). The movant bears the burden of showing that the evidence that it seeks to preclude is "clearly inadmissible." *Plair v. E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partns. v. AT&T Techs., Inc.* 831 F. Supp. 1398, 1401-02 (N.D. Ill. 1993.) Denial of a motion *in limine* is *not* a ruling that the material subject to the motion is necessarily admissible. Rather, it "means only that outside the context of trial, the court cannot determine whether the evidence in question is admissible." *Plair*, 864 F. Supp at 69.

### DISCUSSION

**I. Noffsinger's Motions**

Noffsinger is under the belief that Valspar will attempt to relitigate its motion for summary judgment at trial in that Valspar will argue that Noffsinger's experts must quantitatively show that he was exposed to a "medically significant dose" of Dynaprime in order to prove causation. (*See, e.g.*, Pl.'s MIL No. 4 ¶¶ 8-9.) Noffsinger argues that the reports and deposition testimony of two of Valspar's experts—Dr. Michael Greenberg, and Dr. James Wedner—demonstrate that Valspar intends to make this argument. (*See, e.g.*, Pl.'s MIL No. 3 ¶¶ 3-6; Pl.'s MIL No. 4 ¶ 3-4, 9.) On that assumption, Noffsinger moves to bar portions of the expected testimony of Dr. Greenberg and Dr. Wedner as irrelevant and prejudicial under Fed. R. Evid. 401 and 403. (Pl.'s MIL No. 3 ¶ 9; Pl.'s MIL No. 4 ¶ 9.)

Similarly, Noffsinger had previously moved to exclude Valspar's industrial hygienist Joel Cohen from testifying. (Pl.'s MIL No. 2) [Dkt 240.] At oral argument on the motions, Noffsinger withdrew that motion, because, his counsel stated, on reflection he realized that the issue had already been decided by the District Judge's summary judgment opinion. [*See* dkt 373.] Although Noffsinger has withdrawn the motion, the relationship between that motion and the summary judgment opinion is instructive for resolving the motions still at issue here.

In his expert report, Mr. Cohen opined: (1) it is not possible to conduct a quantitative exposure assessment in this case; (2) Noffsinger's exposure would more likely than not have been "substantially below the applicable occupational exposure limits established" by various governmental and non-governmental entities; and (3) if Noffsinger were exposed to Dynaprime fumes, the exposure "qualitatively was well within the acceptable levels of occupational exposure for the individual substances." (Pl.'s MIL No. 2 ¶ 3.) In response to Valspar's motion for summary judgment, Noffsinger moved to strike Mr. Cohen's second and third opinions. Noffsinger argued that Mr. Cohen's opinions "should be given no consideration ... in any other aspect of this case whatsoever." (Summ J. Op. at 17.) In denying Noffsinger's motion, the District Judge reasoned as follows:

> Plaintiff argues that Mr. Cohen, as a non-physician, cannot "override" his experts' medical determination that he was exposed to sufficient Dynaprime fumes to cause RADS, thus rendering Mr. Cohen's opinions "irrelevant and unhelpful to the jury." Plaintiff also argues that Mr. Cohen's conclusions are inadmissible "because they are undone by his own admissions that attempting to quantify [plaintiff's] exposure would be speculative"; that is, Mr. Cohen cannot both state that it is impossible to determine the quantity of vapors to which plaintiff was exposed (Opinion 1) and opine that the exposure was below a particular standard (Opinions 2 and 3).

**\*3** ....

Plaintiff's first argument—that an industrial hygienist cannot testify on medical causation—misses the mark. Plaintiff's underlying theory is that because diagnosing RADS does not require quantitative proof of exposure, an industrial hygienist's testimony on amount of exposure could not possibly be helpful the jury. It is true that, in the course of denying defendants' motion to strike plaintiff's expert testimony, the court has rejected defendants' unsupported contention that plaintiff must offer evidence of how much Dynaprime he was exposed to. But the fact that plaintiff could potentially prove his case without this evidence does not mean that this evidence is irrelevant or unhelpful. Plaintiff's belief that his theory and evidence will be more persuasive than defendants' does not render defendants' expert testimony inadmissible.

Moreover, plaintiff's second argument is illogical. Mr. Cohen's second and third opinions do not contradict the

Case: 1:19-cv-06473 Document #: 216-2 Filed: 05/13/24 Page 4 of 7 PageID #:11104

Noffsinger v. Valspar Corporation, Not Reported in Fed. Supp. (2013)
2013 WL 12340338

first. The first opinion expresses a view on his inability to determine a quantitative amount of exposure, while the second and third opinions express the view that a qualitative opinion (whether the exposure was within specified levels) can be determined. As defendants point out, plaintiff's medical causation experts have drawn analogous conclusions, opining that although plaintiff's exposure cannot be quantified, they are able to diagnose him with RADS and conclude that he was exposed to a high level of Dynaprime vapors.

(*Id.* at 16-18.) As noted by the District Judge, Mr. Cohen's opinions are just the flip side of the opinions of Noffsinger's experts. Just as Noffsinger's experts are not forbidden from making a qualitative assessment of Noffsinger's exposure, neither is Mr. Cohen.

**A. Dr. Michael Greenberg**

In his Motion *in Limine* No. 3, Noffsinger seeks to bar Dr. Greenberg from testifying to the following opinions: (1) Noffsinger "did not receive a medically important exposure to the constituents" of Dynaprime; and (2) Noffsinger "did not receive a medically important dose of the constituents" of Dynaprime. (Pl.'s MIL No. 3 ¶ 3.) [2] Noffsinger also seeks to exclude portions of Dr. Greenberg's report and deposition testimony that provide the basis for these opinions. (*Id.* ¶¶ 3-4.) Dr. Greenberg's opinions are based on his belief that there was not an "exposure pathway" that would allow a "medically important" "exposure" or "dose" of Dynaprime to get into the cab of Noffsinger's truck. (*Id.*, Ex. B, Dep. Dr. Michael Greenberg at 47-48, 50.) Dr. Greenberg's report also generally warns against using "circular reasoning" to determine causation, *i.e.*, where "the alleged symptoms and ailments or the existence of a particular disease entity is offered in an attempt to demonstrate that sufficient exposure to a particular substance has actually occurred and is (or was) causative of that disease." (Greenberg Rep. at 11.) In his deposition, Dr. Greenberg acknowledged that quantification of Noffsinger's exposure or dose is not possible. (Greenberg Dep. at 55.)

*4 Noffsinger's argument, which is identical for both of his motions, relies on a strained reading of the District Judge's summary judgment opinion. According to Noffsinger, the District Judge's ruling that Noffsinger's experts can use differential etiology without quantifying a level of exposure combined with the fact that quantification is impossible in this case leads to the conclusion that differential etiology is the *only* method of determining causation in this case. (Pl.'s MIL No. 3 ¶ 8.) Thus, he argues, because Dr. Greenberg's opinions relate to a "quantitative methodology," they are therefore irrelevant and prejudicial. (*Id.* ¶ 9.)

The problem with Noffsinger's argument is that there is nothing in the cited report or testimony to suggest that Noffsinger must quantify the amount of Dynaprime exposure in order to meet his burden of proof. To the contrary, Dr. Greenberg admits that such quantification is impossible. As with Mr. Cohen, Dr. Greenberg's qualitative opinions that Noffsinger did not receive a medically important dose or exposure are "analogous conclusions" to the conclusions of Noffsinger's medical experts that Noffsinger was "exposed to a high level of Dynaprime vapors." (Summ. J. Op. at 18.) Accordingly, this court respectfully recommends that Noffsinger's Motion *in Limine* No. 3 be denied.

**B. Dr. James Wedner**

In his deposition, Dr. Wedner was asked, "Would you think he might have it [RADS] if he was atopic, based on all the information you have in front of you?" Dr. Wedner responded, "[F]rom my reading of all of the medical records, including the type of exposure he had, I don't think he had much of an exposure." (*Id.*, Ex. B, Dep. Dr. James Wedner at 43.) [3] Upon further prodding from counsel, Dr. Wedner stated the basis for his opinion was "probably" the "third party" reports created by Valspar's experts. (*Id.* at 44-45.) Dr. Wedner acknowledged that nobody knows "exact amount" of exposure. (*Id.* at 44.) Noffsinger now seeks to bar Dr. Wedner from testifying that Noffsinger did not have a "particularly high level exposure" to Dynaprime. (Pl.'s MIL No. 4 ¶¶ 6-7.)

Noffsinger's first argument, that such an opinion is irrelevant and prejudicial under Fed. R. Evid. 401 and 403 (Pl.'s MIL No. 4 ¶¶ 7, 9) fails for the same reasons that it failed regarding Mr. Cohen and Dr. Greenberg. Like Noffsinger's experts, Valspar's experts are not precluded from opining as to a qualitative level of exposure.

Noffsinger's second argument, that Dr. Wedner did not disclose an opinion as to Noffsinger's level of exposure to Dynaprime fumes in his Rule 26(a)(2)(B) report (Pl.'s MIL No. 4 ¶ 4), is a more subtle question. In his report, Dr. Wedner states that in order to diagnose RADS, the following criteria must be met:

Case: 1:19-cv-06473 Document #: 216-2 Filed: 05/13/24 Page 5 of 7 PageID #:11105

Noffsinger v. Valspar Corporation, Not Reported in Fed. Supp. (2013)
2013 WL 12340338

> 1) [T]here must have been an overwhelming exposure to an irritant sufficient to cause pulmonary injury and this must take the patient to the Emergency Department within 24 hours, 2) the patient must continue to have abnormal obstructive pulmonary function abnormalities (*sic*) and a positive methacholine challenge a[t] 8 mg per milliliter or less, 3) there must be an absence of other conditions that could explain the patient[']s condition.

(Pl.'s MIL No. 4, Ex. A, Rep. Dr. James Wedner ¶ III.) According to Dr. Wedner's report, Noffsinger does not have RADS because he did not report to the emergency room with 24 hours after exposure, his medical records do not demonstrate that he has obstructive pulmonary function abnormalities, and his methacholine test was negative. (*Id.* ¶¶ VI-VIII.) Thus, Dr. Wedner concludes, Noffsinger does not have RADS because he does not meet all of the criteria for a RADS diagnosis. (*Id.* ¶ X.) Dr. Wedner's report does not expressly discuss a level of exposure.

**\*5** Under Federal Rule of Civil Procedure 26(a)(2)(B), an expert's written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." "The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness with testify." *Ciomber v. Coop. Plus, Inc.* 527 F.3d 635, 642 (7th Cir. 2008). If a party fails to disclose information, the party is not allowed to use that information at trial unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). On the other hand, an expert's report does not have to "replicate every word that the expert might say," *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009), and there is precedent that the mere eliciting of testimony at deposition from an opposing party's expert at deposition "amount[s] to all the disclosure necessary under Rules 26(a)(2) and 37(c)(1)." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 660 n. 13 (N.D. Ill. 2006) (citing *Wheeler v. Chrysler Corp.*, No. 98 C 3875, 2000 WL 236887 at \*6 (N.D. Ill. Mar. 1, 2000) ). Valspar argues that Dr. Wedner's opinion should come as no surprise to Noffsinger as it was given in response to questions posed by Noffsinger's counsel at deposition. (Def.'s Resp. MIL No. 4 at 2.) [Dkt 310.]

A fundamental problem with Noffsinger's motion, however, is that it mischaracterizes Dr. Wedner's testimony. His response to counsel's questioning was not the expression of a new opinion of the "quantification-based toxicological source-exposure-dose-effect analysis," as Noffsinger characterizes it. (Pl.'s MIL No. 4 ¶ 4.) Rather, he was simply answering Noffsinger's counsel's questions, and in doing so, making explicit what was implicit in his report. His first RADS criterion, that "there must have been an *overwhelming exposure* to an irritant *sufficient to* cause pulmonary injury and this must take the patient to the Emergency Department within 24 hours" (Wedner Rep. ¶ III (emphasis added) ), contains an implicit opinion about the quality and nature of the exposure required to cause RADS, *i.e.*, that it must be sufficient to motivate the exposed person to go the Emergency Room within 24 hours. The fact that Noffsinger did not go for emergency treatment within 24 hours indicates to Dr. Wedner that the exposure could not have been "overwhelming."

This court accordingly recommends that Noffsinger's motion be denied. Valspar has not suggested that Dr. Wedner will testify affirmatively on direct examination to a new opinion about the level of Noffsinger's exposure to RADS beyond the criteria described in his report. If he were in fact to attempt a "quantification-based toxicological source-exposure-dose-effect analysis" at trial, Noffsinger may lodge an objection at that time. If, however, Noffsinger's counsel again asks him questions that open the door to the type of response that Dr. Wedner gave in his deposition, Dr. Wedner should not be precluded from answering as he did at his deposition.

**II. Valspar's Motion to Exclude Testimony Regarding Level of Exposure to Dynaprime**
In its motion, Valspar argues that Noffsinger's experts, specifically Dr. James Tita and Dr. Thomas Milby, should not be allowed to testify as to Noffsinger's level of quantitative or qualitative exposure to Dynaprime, because these opinions were not properly disclosed, these conclusions constitute "circular" reasoning, and the experts are not qualified to make any conclusions as to the level of exposure. (Def.'s Mot.) Valspar's arguments are an attempt to reargue its motion for summary judgment.[4]

As discussed in the District Judge's opinion denying summary judgment, a diagnosis of RADS necessarily includes a

Case: 1:19-cv-06473 Document #: 216-2 Filed: 05/13/24 Page 6 of 7 PageID #:11106

Noffsinger v. Valspar Corporation, Not Reported in Fed. Supp. (2013)
2013 WL 12340338

conclusion that Noffsinger was exposed "to a gas, smoke, fume, or vapor present in a very high concentration and which had irritant qualities." (Summ. J. Op. at 2, 9-10.) Thus, when the experts disclosed that they had diagnosed Noffsinger with RADS, they satisfied the disclosure requirements. Valspar selectively quotes the District Judge's summary judgment decision out of context to argue that Noffsinger's experts' never "defined a level of plaintiff's exposure." (Def.'s Mot. ¶ 5.) The quote in its full context makes clear that the District Judge was referring to Valspar's argument that Noffsinger's experts are required to have quantitatively measured the level of exposure: "a precise level of exposure to an irritant is not part of the medical diagnosis of RADS. The fact that Drs. Milby and Tita do not purport to have defined a level of plaintiff's exposure does not, therefore, render their testimony inadmissible." (Summ. J. Op. at 10.) Further, Valspar has previously characterized the opinions of Drs. Milby and Tita as concluding that Noffsinger "suffered a 'high intensity exposure.' " (Defs.' Resp. Pl.'s Mot. Recons. at 11 n. 3.) [Dkt 215.] Thus, Valspar's argument that those opinions regarding exposure were not disclosed is incorrect.

*6 As for the attacks on Dr. Milby and Dr. Tita's "circular reasoning" and credentials, Valspar made those arguments as the basis for its summary judgment motion which was denied. (*See* Defs.' Mot. Summ. J. at 19-21, 24, 26-27.) To support its argument this time around, Valspar cites three out-of-circuit district court cases that do not involve RADS. (Def.'s Mot. ¶ 10.) Under law of the case principles, none of these cases provide a compelling reason to revisit the District Judge's prior ruling.[5] *See Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) ("[T]he law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination.")

Accordingly, this court respectfully recommends that Valspar's motion be denied.

## CONCLUSION

For the all of the foregoing reasons, the court respectfully recommends that plaintiff's Motion *In Limine* No. 3 to Bar Testimony and Opinions of Michael Greenberg, M.D., M.P.H., Regarding Quantification-Based Toxicological Source-Exposure-Dose-Effect Analysis [dkt 242], plaintiff's Motion *In Limine* No. 4 to Bar Testimony and Opinions of James Wedner, M.D., Regarding Quantification-Based Toxicological Source-Exposure-Dose-Effect Analysis [dkt 244] and defendant's Motion *in Limine* to Preclude Testimony on the Level of Exposure of Plaintiff to Dynaprime [dkt 279] be denied. Specific written objections to this report and recommendation may be served and filed within 14 business days from the date that this order is served. Fed. R. Civ. P. 72. Failure to file objections with the District Court within the specified time may result in a waiver of the right to appeal all findings, both factual and legal, made by this court in this report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

**All Citations**

Not Reported in Fed. Supp., 2013 WL 12340338

---

## Footnotes

1   The defendants are collectively referred to herein as "Valspar."

2   Dose is the amount of the "substance to which one has been exposed that actually enters" the body. (*Id.*, Ex. A, Rep. Dr. Michael Greenberg at 9.)

3   The transcript does not make clear who was asking the questions to Dr. Wedner, but Valspar asserts that it was Noffsinger's counsel. (Def.'s Resp. MIL No. 4 at 2.)

4   After Valspar filed this motion, Dr. Milby died.

5   All the cases cited by Valspar are factually inapposite. In *Mancuso v. Consol. Edison Co. of N.Y., Inc.*, 967 F. Supp. 1437, 1439 (S.D.N.Y. 1997), plaintiffs alleged that they were harmed by chronic exposure to PCB

Case: 1:19-cv-06473 Document #: 216-2 Filed: 05/13/24 Page 7 of 7 PageID #:11107

**Noffsinger v. Valspar Corporation, Not Reported in Fed. Supp. (2013)**
2013 WL 12340338

contamination of their property. Among other reasons, the court excluded plaintiff's expert on the grounds that the expert did not follow acceptable toxicological methods which included measuring the current level of PCB contamination present at the property. *Id.* at 1449. Here, all parties agree that a quantitative measurement of Noffsinger's exposure to Dynaprime is impossible.

*Henry v. St. Croix Alumina*, No. 1999-0036, 2009 WL 982631 at *10 (D.V.I. Apr. 13, 1999), involved damage from "a hurricane [that] swept metric tons of both toxic and non-toxic substances from over a mile away" into the plaintiffs' neighborhoods. The court there excluded plaintiffs' expert from testifying for failing to provide evidence that the plaintiffs were exposed to the toxin in question. *Id.* In doing so, the court contrasted the complex exposure scenario in the case with "relatively simplistic exposure scenarios" such as the presence of toxins inside of a home. *Id.* Here, Noffsinger's exposure is certainly "relatively simplistic" when compared the exposure scenario in *Henry.*

Lastly, *Harvey v. Rines*, No. 98-85-P-DMC, 1999 WL 33117105 at *6-8 (D. Me. Jan. 19, 1999) was a medical malpractice case where the proper standard of care after a drug overdose was at issue. Unlike Noffsinger's experts, the excluded expert did not rely on differential diagnosis or etiology to determine a level of exposure; instead, the excluded expert merely made "certain presumptions" about the level of exposure. *Id.* at 8.

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.