# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| U. S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) Case No.: 1:19-cv-06473 ) |
| v. | ) ) Hon. Sharon Johnson Coleman ) |
| SBB RESEARCH GROUP, LLC, et al., | ) ) ) |
| Defendants. | ) ) |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF PETER C. HICKEY

**TABLE OF CONTENTS**

I.      Preliminary Statement.........................................................................................1

II.     Hickey's Opinions................................................................................................2

        A. Hickey's Qualifications...........................................................................2

        B. Hickey's Assignment...............................................................................3

        C. Hickey's Conclusions..............................................................................3

III.    Legal Standards....................................................................................................4

IV.     Argument..............................................................................................................5

        A.   Hickey's Opinions about SBB's Model Are Admissible .......................5

             1.   Hickey Is Qualified to Opine on Market-Based Inputs, He Used
                  a Reliable Methodology and Does Not Opine on Credibility................5

             2.   Hickey's Opinion that SBB's Use of Historical Volatility Failed to
                  Maximize the Use of Observable Inputs and Minimize the Use of
                  Unobservable Inputs Is Well-Founded...........................................9

             3.   Hickey's Opinion that SBB's Model Caused Overvaluation
                  Has a Reliable Basis and Respects the Role of the Jury.....................10

             4.   Hickey's Comparison of SBB's Models Is Reliable...........................12

             5.   Hickey's Opinions on SBB's Lack of Experience and
                  Efforts to Comply with ASC § 820 Are Admissible...........................13

             6.   Hickey's Comments on SBB's Model Are Admissible........................15

        B.   Hickey Is An Expert on the Requirements of ASC § 820 .......................16

        C.   Hickey's Opinions on Materiality Are Admissible.............................. 17

             1.   Hickey Is Qualified to Opine on Materiality....................................17

             2.   Hickey's Analysis Is Appropriate for the Opinion Offered...................17

        D.   Hickey's Opinion that SBB Is Responsible for GAAP Compliance
             Is Admissible .........................................................................................19

V.      CONCLUSION...................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Allstate Ins. Co. v. Maytag Corp.*,
   1999 WL 203349 (N.D. Ill. Mar. 30, 1999) .............................................................. 18

*Bielskis v. Louisville Ladder, Inc.*,
   663 F.3d 887 (7th Cir. 2011) ...................................................................................... 4

*Blue Book Services, Inc. v. Amerihua Produce, Inc.*,
   337 F. Supp. 802 (N.D. Ill. 2018) ............................................................................. 16

*Bryant v. City of Chicago*,
   200 F.3d 1092 (7th Cir. 2000) ..................................................................................... 7

*Burns v. Sherwin-Williams Co.*,
   2022 WL 4329417 (N.D. Ill. Sept. 18, 2022) ........................................................... 16

*Clark v. Takata Corp.*,
   192 F.3d 750 (7th Cir. 1999) .................................................................................... 13

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ................................................................................................... 4

*Gayton v. McCoy*,
   593 F.3d 610 (7th Cir. 2010) ..................................................................................... 6

*George v. Kraft Foods Glob., Inc.*,
   800 F. Supp. 2d 928 (N.D. Ill. 2011) ....................................................................... 14

*Goldberg v. 401 North Wabash Venture LLC*,
   2013 WL 212912 (N.D. Ill. Jan. 18, 2013) .............................................................. 11

*Goodwin v. MTD Products, Inc.*,
   232 F.3d 600 (7th Cir. 2000) ..................................................................................... 8

*Gopalratnam v. Hewlett-Packard Co.*,
   877 F.3d 771 (7th Cir. 2017) ..................................................................................... 4

*Kirk v. Clark Equip. Co.*,
   991 F.3d 865 (7th Cir. 2021) ..................................................................................... 4

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................................... 7

*Lapsley v. Xtek, Inc.*,
   689 F.3d 802 (7th Cir. 2012) ................................................................................... 15

*Liquid Air Corp. v. Rogers*,
   834 F2d 1297 (7th Cir. 1987) .................................................................................. 18

*Manpower, Inc. v. Ins. Co. of Pa.*,
   732 F.3d 796 (7th Cir. 2013) ....................................................................... 10, 19, 20

*Metavante Corp. v. Emigrant Sav. Bank*,

619 F.3d 748 (7th Cir. 2010) ................................................................. 11

*Minansian v. Standard Chartered Bank, PLC,*
109 F.3d 1212 (7th Cir. 1997) ............................................................. 13

*Schultz v. Akzo Nobel Paints, LLC,*
721 F.3d 426 (7th Cir. 2013) ............................................................... 5

*SEC v. Nutmeg Group, LLC,*
2017 WL 1545721 (N.D. Ill. Apr. 28, 2017) ............................................. 16

*SEC v. Ustian,*
2020 WL 416289 (N.D. Ill. Jan. 26, 2020) ............................................. 14

*Smith v. Ford Motor Co.,*
215 F.3d 713 (7th Cir. 2000) ............................................................... 6

*Stollings v. Ryobi Techs., Inc.,*
725 F.3d 753 (7th Cir. 2013) ........................................................... 5, 11

*Sullivan v. Alcatel-Lucent USA Inc.,*
2014 WL 3558690 (N.D. Ill. July 17, 2014) ....................................... 15-16

*Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.,*
223 F.3d 585 (7th Cir. 2000) ................................................ 6, 13, 18, 20

*Zollicoffer v. Gold Standard Baking, Inc.,*
335 F.R.D. 126 (N.D. Ill. 2020) ........................................................... 13

**Rules**

Federal Rule of Evidence 702 ............................................................ 4, 6

Federal Rule of Evidence 702(b) ........................................................... 7

Federal Rule of Evidence 702(c) ........................................................... 7

Federal Rule of Evidence 705 ............................................................. 15

**Other**

https://www.peregrine-econ.com/team/peter-hickey.........................................2

Generally Accepted Accounting Principle ASC § 820-55-21 ....................... 9, 10

Generally Accepted Accounting Principle ASC § 820-55-22 .......................... 9

## I.     <u>Preliminary Statement</u>

Defendants' motion to exclude the opinions of Peter Hickey, the SEC's expert on the application of Generally Accepted Accounting Principles ("GAAP") fair value standards of ASC § 820, should be denied. Defendants repeatedly mischaracterize supporting facts as Hickey's opinions, mischaracterize his opinions, and  fault him for not offering different opinions, and. In his report Hickey carefully described the limitations that ASC § 820 places on parties like SBB when creating valuation models for reporting purposes. He analyzed ASC § 820's requirement that valuation models conform to the assumptions and practices of market participants, rather than subjective measures of valuation. He explained why the requirements of ASC § 820 are important to investors (*e.g.,* the ability to compare investments over time). And he identified SBB's many deviations from the requirements of ASC § 820, including the use of subjective criteria rather than market-corroborated inputs, the deviation from market-based principles, and SBB's failure to maximize the use of observable inputs in its model. (*See* Ex. A, Hickey Report, ¶¶ 31-144.) Hickey supported all his opinions by reference to professional standards and the evidentiary record.

Defendants now move to preclude Hickey from testifying. (*See* Dkt. 215) However, Hickey's opinions will help the jury understand that, under ASC § 820, both the method and the inputs used to value a fund's investments matter a great deal. ASC § 820 describes the proper way to value investments, and those requirements cannot be ignored. Hickey's testimony will help the SEC prove that SBB repeatedly stated that it would follow the accounting rules for fund investments, including ASC § 820, but deviated from those rules in using its own model which improperly boosted the value of the Funds' investments.

## II.     Hickey's Opinions

### A.     Hickey's Qualifications

Peter Hickey has a bachelor's degree in economics and a Master of Business Administration, with concentrations in both Accounting and Finance, from the University of Chicago's Graduate School of Business. (Ex. A, ¶ 3) He has spent his 26-year career in economic consulting, working on securities fraud and other valuation matters. (*Id.*, ¶ 3) He is a co-founder of Peregrine Economics, a Chicago-based consulting firm, and a Managing Director in the firm's Securities, Financial Regulation and Valuation & General Damages practices.[1] Between 2008 and 2023, Hickey worked as a consultant at Global Economics Group, and prior to that, he was employed for over 10 years at Chicago Partners, LLC. (*Id.*, ¶ 4) While at Chicago Partners, Hickey was also employed at an affiliated firm, Chicago Capital Services, LLC, which provided investment banking advisory services. (*Id.*)

Hickey has served as a valuation and/or damages consultant and as an expert witness in securities and commodities trading cases, business valuation disputes, and complex commercial litigation. (*Id.*, ¶ 5) He has testified as an expert in both federal and state court cases, as well as in private arbitration proceedings; he has served as an expert for the SEC, the Illinois Attorney General's Office, the Financial Industry Regulatory Authority ("FINRA"), and for individuals and private investment firms in financial markets litigation and other matters. (*Id.*, ¶ 5)

Hickey has significant experience analyzing the valuations of investment funds in a variety of contexts, including funds that invest in stock options and other derivative instruments. He has offered expert testimony in several cases on issues related to valuation

---

[1] *See* https://www.peregrine-econ.com/team/peter-hickey

and the application of ASC § 820 and other fair value principles. (*Id.,* ¶ 6) He also has

related experience in financial statement analysis, calculating lost profits, loss causation and

damages, business valuations and securities and commodities trading practices.

### B. Hickey's Assignment

The SEC engaged Hickey to review the valuation methodology used by defendant

SBB Research Group, LLC ("SBB") to value several of the investment funds it managed

("the Funds") between 2011 and 2016. (Ex. A, ¶ 2) More specifically, Hickey was asked to:

- Explain the requirements and significance of Generally Accepted Accounting Principles ("GAAP") and ASC § 820) in the context of asset valuation;

- consider what ASC § 820 requires in valuing the option components of the structured note investments held by the Funds;

- analyze whether SBB appropriately understood and applied ASC § 820 in the creation and use of its own, custom valuation model ("the SBB Model") for valuing the assets held by the SBB Funds; and

- determine the effects and the significance of any failures by SBB in assessing the fair valuation of the Funds' investments.

### C. Hickey's Conclusions

After reviewing all the documents and data provided to him, as well as the other

materials cited in his expert report, Hickey opined, among other things:

- SBB did not comply with the requirements of ASC § 820 and other fair value guidance in valuing the Funds from 2011 to 2016; accordingly, the Funds' financial statements were not prepared in accordance with GAAP. (*Id.,* ¶ 10.a)

- SBB's representations that the Funds were valued in accordance with GAAP would have been important to reasonable investors. Compliance with GAAP would have assured investors and SBB's auditor that: (i) SBB had used industry standard methods for calculating the value of the Funds' investments; (ii) SBB's valuations would allow investors to compare the Funds to other investments; and (iii) SBB did not employ subjective measures inconsistent with fair value principles. (*Id.,* ¶ 10.c)

- While representing that it was complying with GAAP, SBB does not appear to have been aware of ASC § 820's requirements or attempted to follow the assumptions and

3

practices of market participants. (*Id.,* ¶ 10.d-e)

- SBB's Model failed to maximize the use of observable inputs and minimize the use of unobservable inputs. (*Id.,* ¶ 10.f)

- SBB's Model did not attempt to determine fair value, which was the price that SBB would have received for selling a structured note on a particular date. (*Id.,* ¶ 10.g)

- SBB did not use available and observable market-corroborated inputs, including implied volatility, from the option markets for the S&P 500 and Russell 2000 indices. (*Id.,* ¶ 10.i)

- SBB's use of the Model led the Funds to report inaccurate performance records, risk/return metrics, and NAVs from 2011 to 2016. (*Id.,* ¶ 10.j)

- SBB's valuation methodology tended to overstate the value of the Funds' structured notes, and investors paid approximately $1.4 million in excessive fees. (*Id.*)

### III.  <u>Legal Standards</u>

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "It is the district court's role to ensure that expert testimony is both relevant and reliable." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).

"[T]he district court must engage in a three-step analysis, evaluating: '(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.'" *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021) (quoting *Gopalratnam v. Hewlett-Packard Co.,* 877 F.3d 771, 779 (7th Cir. 2017)). Hickey's opinions fully satisfy these requirements. He is qualified as an expert on the

4

requirements of ASC § 820. He used a reliable methodology, which consisted of reviewing the applicable valuation principles, examining documents and testimony regarding SBB's creation, use and modification of the SBB Model, and then assessing SBB's valuation methodology against the relevant standards. Hickey's opinions that SBB failed to comply with ASC § 820 are relevant to the important issue in this case of whether SBB made the disclosures required by the federal securities laws.

Although the Court is the gatekeeper for expert opinion evidence, "the key to the gate . . . is the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). The Court is not "the trier of all facts relating to expert testimony.... The jury must still be allowed to play its essential role as the arbiter of the weight and credibility of expert testimony." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) (citations omitted). Accordingly, the Court should allow the jury to hear Hickey's opinion testimony - in full - and weigh the value of his opinions for themselves in deciding the facts of this case.

### IV. Argument

#### A. Hickey's Opinions about SBB's Model Are Admissible

1. Hickey Is Qualified to Opine on Market-Based Inputs, He Used a Reliable Methodology and Does Not Opine on Credibility.

Defendants claim that Hickey is not qualified to offer an opinion that SBB failed to comply with ASC § 820 because: (a) he lacks extensive knowledge about the market for structured notes and experience investing in those products; (b) he did not conduct a survey of structured note investors or cite studies regarding structured note valuation; and (c) he relied on fact testimony and admissions from SBB witnesses, instead of on Barnett's more theoretical and academic views on valuation. (Dkt. 215 at 6-8) These arguments lack merit.

*Knowledge and experience*:  Under FRE 702, an expert may be qualified "by knowledge, skill, experience, training or education." An expert is not required have any "particular credentials" to offer an opinion. *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.,* 223 F.3d 585, 591 (7th Cir. 2000). "Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Id*. The court must consider an expert's "'full range of practical experience as well as academic or technical training'" *Smith v. Ford Motor Co.*, 215 F.3d 713, 718-20 (7th Cir. 2000) (reversing order precluding experts with automotive industry experience from offering opinions about automobile design and manufacture). The court should examine the expert's conclusions and assess "if he has the adequate education, skill, and training to reach them." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (reversing order excluding doctor, who was not a cardiologist or pharmacologist, from opining on cause of death).

Here, Hickey opined that SBB's *process* for valuing the structured notes in the Funds' portfolios did not follow the requirements of ASC § 820. His opinions focused on the principles of fair value articulated in ASC § 820, and the process the Funds' were required to follow in valuing their securities, including structured notes. He did not offer any opinions about SBB's valuation formulas, or the construction of industry standard valuation models for structured note investments. (The SEC has another expert, Craig McCann, who will offer that analysis.)

Hickey is well qualified to testify about the process required by ASC § 820. He has worked with valuation principles, including ASC § 820 and its predecessor (FAS 157), as a consultant and as an expert witness for over 25 years. He has relied on the same fair value and accounting principles at issue in this case to offer opinions regarding other investment

advisers' and investment funds' compliance with ASC § 820. And the opinions he offers here are well within his qualifications as expert.

*Reliable methodology*: An expert's testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods" that the expert has "reliably applied ... to the facts of the case." *See* Fed. R. Evid. 702(b), (c). In other words, reliable expert testimony shows "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999) (reversing decision that limited court's discretion to admit expert testimony)). The Court has "broad latitude" in deciding whether an expert's testimony is reliable. *Bryant v. City of Chicago*, 200 F.3d 1092, 1098 (7th Cir. 2000) (affirming admission of expert's testimony).

Hickey's methodology is described, in great detail, in his expert report. Hickey began by reviewing documents and testimony to understand the nature and unique features of the Funds' investments and their publicly traded reference assets.[2] (Ex. A, ¶¶ 11-18) He reviewed the pricing supplements for several of the notes purchased by SBB, and a summary of the SBB's disclosed returns, in order to understand the expected returns and risks of the Funds' investments. (*Id.,* ¶¶ 19-26) He then reviewed documents regarding the first valuation model that SBB considered (and rejected), and how SBB's Model deviated from standard industry practice by, among other things, incorporating *mu*, *beta* and *linearization* to counter purported deficiencies in the Black-Scholes-Merton model. (*Id.,* ¶¶ 27-30)

Hickey also reviewed in detail the requirements of GAAP, including ASC § 820, the Investment Company Act of 1940, SEC guidance on valuation, as well as SBB's own

---

[2] Hickey also reviewed Deng, Husson and McCann, "Valuation of Structured Products," *The Journal of Alternative Investments*, Spring 2014, 16 (4) 71-87. (*See* Report at ¶ 18 n. 15)

disclosures stating that the Funds' valuations conformed to these standards. (*Id.,* ¶¶ 31-47, 48-62) Hickey then set forth the various ways that SBB had failed to comply with ASC § 820 in creating its Model in 2011, and modifying it in May 2016, before finally adopting MarkIt's method of valuing the Funds' investments. (*Id.,* ¶¶ 63-87, 110-144) He verified and/or supported those conclusions by reviewing additional record evidence. (*Id.,* ¶¶ 88-109) Finally, he briefly considered and discussed the consequences of SBB's failure to comply with ASC § 820. (*Id.,* ¶¶ 145-151)

Defendants have not challenged the substance, accuracy or reliability of any of the evidence on which Hickey based his opinions - which included valuation requirements, industry standards, internal SBB documents, investor disclosures, published performance data, SBB employee testimony and SBB's changes to its own valuation methodology. Defendants may disagree with Hickey's conclusions. But they have cited no authority for the proposition that an expert on valuation methodology cannot rely, among other things, on testimony and documents to formulate and render an opinion. Hickey has accurately summarized the facts in the record and tied them to his opinions. So no reasonable reader of Hickey's report would conclude that his opinions are being offered "solely for the purpose of constructing a factual narrative."

*Witness credibility*:  The SEC acknowledges that an expert witness may not offer opinions regarding the credibility of other witnesses. *See Goodwin v. MTD Products, Inc.*, 232 F.3d 600, (7th Cir. 2000) (expert cannot offer opinion "based on speculation" on the veracity of plaintiff's testimony). But Hickey does not express any such opinions.

During Hickey's deposition, defendants' counsel asked whether he understood Barnett's perspective on the inputs to the SBB Model and the changes SBB had made to its

valuation process. (Ex. B, Hickey Dep. Tr., at 126:23-128:5) Hickey answered that he relied

on the testimony of the SBB employees directly responsible for creating the Model, because

their testimony was consistent with each other, with the record and with the accounts of the

SEC examiners.[3] (*Id.*) Hickey did not say that Barnett was lying, or even that he was wrong.

And he never used the words "credible," "believable," or "reliable." Accordingly, Hickey's

testimony on this point is not an opinion and it should not be excluded – particularly if

defendants plan to cross examine Hickey on Barnett's views, or suggest those are more

reliable than the testimony of Aven and Navalgund.

> 2.  Hickey's Opinion that SBB's Use of Historical Volatility
>     Failed to Maximize the Use of Observable Inputs and
>     <u>Minimize the Use of Unobservable Inputs Is Well-Founded</u>.

Defendants also claim that Hickey's opinion that SBB failed to maximize its use of

observable inputs over unobservable inputs, and his deposition testimony that "implied

volatility is always preferred over historical volatility," is unsupported *ipse dixit*. (*See* Dkt.

215 at 9) This is disingenuous.

ASC § 820 *expressly states* that implied volatility is a Level 2 (observable) input while

historical volatility is a Level 3 (unobservable) input.[4] (*See* Ex. A, ¶¶ 58-59) Hickey

explained that implied volatilities, which are derived from current option prices, show the

expectations of current market participants and the current exit values of securities. By

contrast, historical volatility is "backward looking," and does not capture the current

---

[3] SBB employees Aven and Navalgund were responsible for creating the Model that Barnett approved. So it was reasonable for Hickey to rely on statements by those two witnesses describing how the model was designed, how inputs deviated from standard industry approaches, and how the SBB Model actually performed. Defendants do not question the accuracy of any testimony quoted, or claim that it is unreliable.

[4] *See* ASC-820-55-21, ASC § 820-55-22.

expectations of any market participants. (*Id.*, ¶ 60) Defendants cite only a single paragraph of Hickey's report, ¶ 64, when in fact his report includes six complete paragraphs discussing this issue (*id.*, ¶¶ 58-64), and 4 graphs (Fig. 4 and Exhibits 6a, 6b, and 6c) demonstrating why the use of implied volatility is preferred over historical volatility.

Defendants also criticize Hickey's conclusion that implied volatility is an observable input. In fact, Defendants' accounting expert initially testified that implied volatility that is extrapolated cannot be considered an observable input. (Ex. C, Deetz Tr. at 279) However, Deetz was forced to back away from this categorical statement when confronted with the actual language of ASC § 820-55-21, which provides that extrapolated implied volatility indeed *is* an observable input, for at least an additional year, if there is a functioning market for the shorter term option. (ASC § 820-55-21; Ex. C at 291-92.)

Defendants' disagreement with Hickey's expert opinion is no basis for its exclusion. Rather, the "critical inquiry is whether there is a connection between the data employed and the opinion offered" by an expert. *See Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, (7th Cir. 2013) (reversing district court's exclusion of expert whose opinion was "reasoned and founded on data"). Here, Hickey's opinion was based on: (a) existing trading data for options tracking the same index as the options underlying SBB's structured notes, (b) the actual term of the component options for those notes, and (c) the actual requirements of ASC § 820. There was no analytical gap between the data and his opinion, and no *ipse dixit*.

       3.       Hickey's Opinion that SBB's Model Caused Overvaluation
                       Has a Reliable Basis and Respects the Role of the Jury.

Defendants also contend that Hickey cannot testify that SBB's Model "caused the value of the SBB Funds to be overvalued," or that the Model "tended to overstate the value of the component options of SBB's structured notes." (Dkt. 215 at 9) They argue that

Hickey cannot opine that SBB overcharged the Funds' investors by $1.42 million. (*Id.* at 10) However, they do not dispute that SBB's Model overstated the actual value the Funds' investments, or that SBB paid the Funds' investors a $1.42 million fee credit. Instead, they complain that Hickey has no basis other than witness testimony for his opinions, and that he did not calculate the value of the Funds' structured notes or verify the data SBB used to calculate both of its fee reimbursements. (*Id.* at 9-10) These arguments are wrong.

An expert's analysis can be reliable even if he draws upon his own experience and industry knowledge, rather than formulas or data. *Goldberg v. 401 North Wabash Venture LLC*, 2013 WL 212912, at *5 (N.D. Ill. Jan. 18, 2013 (citing *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010)). Under Rule 702, the purpose of expert testimony is "to assist the trier of fact with technical issues that laypeople would have difficulty resolving on their own." *Stollings v. Ryobi Technologies, Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) (exclusion of expert's testimony intruded into province of jury). Hickey's analysis draws upon his experience as a valuation consultant and expert to explain the significance of SBB's documents and testimony, which are not within the common understanding of lay jurors.

First, Hickey can explain the significance of Navalgund's testimony that SBB's *mu* term was designed, in part, to boost the value of the Funds' structured notes, over the result obtained by using a risk-free rate as a drift term. (Ex. A, ¶ 115)  Second, Hickey can explain that after SBB adopted the May 2016 Model, in response to specific criticisms of the Model by SEC examiners, the Funds issued a fee credit to investors totaling $1.03 million; and, after adopting the Markit Model, after a review by PWC, SBB increased the fee credit paid to the Funds' investors to $1.4 million – meaning that each of SBB's prior valuation models had overcharged investors for nonexistent investment gains. (*Id.*, ¶ 116) Third, after

adopting the May 2016 Model, SBB revised the Funds' performance metrics and investment returns downward; its own analysis of the Polysight fund shows that its annualized, monthly and total return since 2011 had declined significantly. (*Id.*, ¶¶ 147-48) Hickey's expertise, analysis and opinions will help the jury understand the meaning and significance of this complex and unfamiliar evidence.

4. Hickey's Comparison of SBB's Models Is Reliable.

Defendants argue that one of the tables in Hickey's report was copied from an SBB spreadsheet and he himself did not evaluate the reliability of that information. (Dkt. 215 at 11) However, defendants do *not* argue that there are any errors, inaccuracies or problems with the data in Hickey's table, or that the comparisons he highlights are unreliable.

**Table 4**

| Key Stat | SBB Model | May 2016 Model | Bank Quotes |
|---|---|---|---|
| Sharpe Ratio | 0.308 | 0.134 | 0.146 |
| Sharpe Annualized | 1.07 | 0.46 | 0.51 |
| Annualized Return (CAGR) | 10.26% | 6.29% | 6.37% |
| Average Monthly Return | 0.85% | 0.58% | 0.58% |
| Annualized Standard Deviation | 8.79% | 13.37% | 12.09% |
| Total Return Since 2011 | 56.45% | 32.27% | 32.74% |

Hickey's Table 4 is a comparison of SBB's valuation Models, taken from an internal SBB document, and contrasting several performance and risk metrics for SBB's Polysight Fund. (*See* Ex. A, ¶¶ 147-48) It is a party admission, and shows results from the initial SBB Model, from SBB's revised valuation model (May 2016 Model), and from the monthly

12

valuations provided by banks holding similar structured notes (Bank Quotes). Hickey's table both interprets and shows the significance of this comparison data: *i.e.,* when SBB began using a market-based valuation model which complied with ASC § 820, the Funds' returns "were both riskier and provided lower returns than the SBB Model previously indicated." (*Id.* at ¶ 148) This table also shows that SBB's May 2016 Model, which adopted the changes suggested by the SEC's examiners, made the Fund's returns consistent with the returns of banks holding structured notes. (*See* Ex. B, at 196:11-19)

An expert is not required to verify the accuracy or completeness of relevant data provided by counsel if the accuracy of completeness of the data is not disputed.[5] *See Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, (N.D. Ill. 2020) (denying motion to strike reports of plaintiff's expert regarding number of employee referrals); *Tuf Racing,* 223 F.3d at 591 (CPA could testify based on materials provided by counsel). Here, Hickey relied on a spreadsheet provided by the SEC's counsel. But the spreadsheet is SBB's own document containing the data, showing comparisons and admissions made by the defendants. As defendants have not challenged the accuracy of SBB's comparisons, Hickey can rely on it for Table 4.

5.      Hickey's Opinions on SBB's Lack of Experience and
        <u>Efforts to Comply with ASC § 820 Are Admissible</u>.

Defendants argue that Hickey is not permitted to testify about SBB's initial lack of knowledge or understanding of ASC § 820, or that the firm did not intend to comply with that aspect of GAAP. (Dkt. 215 at 12) They claim that Hickey's references to defendants'

---

[5] The cases cited by defendants do not suggest otherwise. *Compare Clark v. Takata Corp.,* 192 F.3d 750, 757 (7th Cir. 1999) (expert assumed a fact he was hired to prove), and *Minansian v. Standard Chartered Bank, PLC,* 109 F.3d 1212, 1216 (7th Cir. 1997) (expert did not review any data or survey published literature).

deposition testimony and other documents only reflect the SEC's view of the facts, rather than the application of any specialized expertise. (*Id.*) These arguments are based on a misunderstanding of Hickey's report.

Hickey's opinions do not address SBB's state of mind. (*See* Ex. A, ¶¶ 10(d) ("SBB *had no experience* with ASC § 820 or fair value guidelines"), and 10(e) (SBB *did not attempt to comply* with ASC § 820" in creating the SBB Model, and "does not seem to have been *aware of ASC § 820's requirements*") (emphasis added)) Each of these opinions should be non-controversial and can be established by testimony about what ASC § 820 requires, and what SBB did or did not do, in creating a valuation model and valuing the Funds' investments from 2011 through 2014. The other portions of Hickey's report demonstrate that Hickey's opinions have significant support in the factual record, especially by admissions made by SBB employees in testimony and in the firm's internal documents. (Ex. B, at 246:13-23, 247:24-248:6)

A defendant's deposition testimony and internal documents are appropriate sources for an expert to rely on in support his conclusions. *See SEC v. Ustian*, 2020 WL 416289, at *9 (N.D. Ill. Jan. 26, 2020) (denying motion to exclude SEC expert). Here, SBB's internal documents, and the testimony of SBB's employees, were the best evidence for Hickey to review regarding a technical matter (SBB's compliance with ASC § 820). In *George v. Kraft Foods Glob., Inc.*, 800 F. Supp. 2d 928, 932-33 (N.D. Ill. 2011), the court excluded testimony about defendants' state of mind because it was speculative and irrelevant. That is not a danger here. SBB's employees have conceded that they did not consult ASC § 820, attempt to comply with its requirements, and had no experience complying with it. Hickey's

14

testimony on this issue is relevant, and shows the significance of not complying with ASC § 820. And the basis for his opinions are unchallenged, not based on speculation.

6.      Hickey's Comments on SBB's Model Are Admissible.

Defendants further argue that Hickey should not be allowed to testify about facts from the evidentiary record without linking them to his formal opinions, including: that SBB's development of its initial Model, the Markit Model SBB later adopted, the SEC's examination of SBB and the issues identified in the SEC's deficiency letter, and that 90% of the value of the Funds' structured notes was contained in the option component of the notes. (Dkt. 215 at 13) Defendants concede that these are not Hickey's opinions. In fact, they are part of the factual basis for Hickey's opinions.[6]

But defendants cannot fault Hickey for fully setting forth the basis for his opinions in his report. *See Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012) (under FRE 705 an expert must make the basis for his opinion available for evaluation by the Court and opposing parties). Nor can they prohibit Hickey from testifying, particularly on cross, and applying his expertise to facts of the case as needed to articulate his opinion. All these facts add weight to Hickey's opinions, and all have significance based on his experience as a valuation expert. Accordingly, it is appropriate for Hickey to explain the issues associated with these facts to the jury - who presumably lacks expertise with all these subjects. None of the cases defendants cite suggest the contrary. *See Sullivan v. Alcatel-Lucent USA Inc.,* 2014 WL 3558690, at **6-7 (N.D. Ill. July 17, 2014) (statements about liability, damages and

---

[6] Depending on the other evidence introduced prior to Hickey's trial testimony, he may or may not need to refer to these facts in offering his opinions. However, each of the facts cited by defendants is important to Hickey's opinions. As a valuation expert he is in a position to explain the meaning and importance of these facts to the jury.

other issues were not based on expertise or be helpful to the jury); *Burns v. Sherwin-Williams Co.*, 2022 WL 4329417, at \*\*20-21 (N.D. Ill. Sept. 18, 2022) (statements about conditions on job site were not relevant to testing of machine).

### B. Hickey Is An Expert on the Requirements of ASC § 820.

Defendants next complain that Hickey not qualified to opine that SBB's financial statements did not comply with GAAP, because he only as an expert on ASC § 820, which is valuation requirement, and not on other provisions of GAAP. (Dkt. 215 at 13-14) They also suggest that the requirements of ASC § 820 don't matter, that SBB could ignore ASC § 820 if the outputs for some periods were close to a GAAP compliant model, and argue that Hickey should have done some other (unspecified) accounting analysis before concluding that SBB was in violation of GAAP. (*Id.* at 14) These arguments make no sense.

Hickey is an expert on valuation and the requirements of ASC § 820.[7] He is not being offered as an expert on financial accounting or on other requirements of GAAP. Defendants cite no authority for the proposition that a valuation expert needs to be a certified public accountant (or auditor) in order to testify about a GAAP provision he regularly applies in his work. In fact, "[t]he notion that [*Daubert*] requires particular credentials for an expert witness is radically unsound." *Blue Book Services, Inc. v. Amerihua Produce, Inc.,* 337 F. Supp. 802, (N.D. Ill. 2018) (allowing valuation expert to testify).

Defendants disagree with Hickey's opinions. But they have not effectively undermined the reliability of his opinions. Defendants cite no authority for the proposition

---

[7] In fact, Magistrate Judge Gilbert found Hickey qualified to offer opinions under FAS 157 (the predecessor to ASC § 820) regarding the methodologies required in valuing an investment fund's holdings. *See SEC v. Nutmeg Group, LLC*, 2017 WL 1545721, at \*17 (N.D. Ill. Apr. 28, 2017) (denying motion to exclude).

that SBB could ignore the Investment Company Act's rule, which requires the Funds to value their investments at fair value, or ignore the SEC's guidance that fund managers must act in good faith in determining fair value of a fund's investments. (*See* Ex. A, ¶¶ 36-39) Nor have they cited any authority for the proposition that a fund's violations of, or disregard for, the requirements of ASC § 820 in overvaluing fund assets is not important to reasonable investors. Accordingly, Hickey is qualified to testify regarding the requirements of ASC § 820, and offer his opinions, based on his professional experience, about the consequences of failing to comply with that provision.

### C. Hickey's Opinions on Materiality Are Admissible.

Defendants claim that Hickey should not be permitted to opine that SBB's representations that the Funds' complied with GAAP, and that the Funds were overvalued, would be considered material to a reasonable investor because Hickey is not qualified to offer such an opinion, and that his methodology was not sufficient for the opinion offered. (Dkt. 215 at 14-19) Once again, defendants' arguments miss the mark.

#### 1. Hickey Is Qualified to Opine on Materiality.

As previously stated, Hickey is an expert on GAAP's valuation framework and ASC § 820 by virtue of his education and professional experience, in consulting and litigation, over the past 26 years. *See above*, at Section A. 1. He has a degree in economics, and an MBA with concentrations in finance and accounting. His previous work even included providing investment banking services. More recently, many of his expert engagements involved valuations of investments, including securities, and options similar to those at issue in this matter. He has issued opinions in other cases about whether advisers' or funds' valuations complied with ASC § 820, and issues associated with those valuations. By virtue

of his professional employment, and his own experience as an investor, Hickey is qualified to offer his opinion that a fund's failure to comply with ASC § 820, or its overvaluation of fund investments, would be considered material information to a reasonable investor. Given the limited opinions he is offering regarding materiality in this matter, nothing more should be required. *Tuf Racing,* 223 F.3d at 591 (no "particular credentials" are required for expert to offer an opinion).

Hickey's lack of previous knowledge or experience with ASC 105, or SAB 99 (an issue addressed in rebuttal by the SEC's accounting expert Andrew Mintzer), and the fact that he has not invested in structured notes, may be considered in assessing the weight and persuasiveness of his opinion on materiality; but these facts are not a reason to exclude his testimony. *See Allstate Ins. Co. v. Maytag Corp.,* 1999 WL 203349, *3 (N.D. Ill. Mar. 30, 1999) (denying motion to exclude expert); *Liquid Air Corp. v. Rogers*, 834 F2d 1297, 1308 (7th Cir. 1987) (affirming denial of motion to exclude). Hickey's opinion need not address SAB 99 and another SEC expert will do so.

2.    Hickey's Analysis Is Appropriate for the Opinion Offered.

Hickey's analysis of the issue of materiality is found in various parts of his report. First, Hickey considered all the different ways in which SBB made representations of its compliance with GAAP, and its use of fair value in valuing the Funds' assets - both to investors and auditors - and concluded that SBB's representation to investors that the Funds were valued in accordance with GAAP would have been considered important to reasonable investors. (Ex. A, ¶¶ 10.b, 41-47) SBB stated that: (i) SBB had used widely accepted, industry standard methods for calculating the value of the Funds' investments; (ii) SBB's valuations were conducted in a way that would allow investors to compare the Funds

18

to other, similar investments; and (iii) SBB did not employ any subjective considerations that were inconsistent with fair value principles.[8] (*Id.*) SBB's failure to fulfill its representations deprived recipients of information that an investor might consider important in assessing the total mix of information available.

Second, Hickey considered how SBB's use of its initial Model for valuations led the Funds to report inaccurate performance records, risk/return metrics, and NAVs from 2011 to 2016. (Ex. A, ¶¶ 145-151 and Figure 4) SBB's valuation methodology tended to overstate the value of the option components of the Funds' structured notes, and led to a significant overstatement of Polysight's annual, monthly and total performance between 2011 and 2016. These overstatements of asset value caused the Funds' investors to pay approximately $1.4 million in excessive fees – comparing the SBB Model's valuations against the Markit Model valuations. (*Id.,* ¶ 146) The "critical inquiry is whether there is a connection between the data employed and the opinion offered" by an expert. *See Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, (7th Cir. 2013) (reversing district court's exclusion of expert whose opinion was "reasoned and founded on data"). Here, there is a logical and reasonable connection between the evidence considered by Hickey and his opinions on materiality.

### D. Hickey's Opinion that SBB Is Responsible for GAAP Compliance Is Admissible.

Finally, defendants claim that Hickey should not be allowed to opine that under GAAP, a fund's management, rather than its auditor, must determine the fair value of an investment fund's positions. (Dkt. 215 at 20) Defendants contend that Hickey is neither an

---

[8] Because SBB made a point of disclosing this information to investors and auditors, it is reasonable to conclude that SBB's investors and auditors may have found that information to be important.

auditor nor an accountant, that he cites no accounting standards, and this opinion is not connected to his main opinion. (*Id.*) These arguments are meritless.

Hickey offered this opinion in response to statements in the record, by SBB employees, that they relied on RSM (who was SBB's auditor) "to confirm that SBB's Model complied with GAAP and ASC § 820." (*See* Ex. A, ¶¶ 107-08) Hickey opined that, *in his experience working as a consultant and expert*, it is management's responsibility to determine the fair value of fund's investments; and, if management relies on a third party to provide valuation services, management retains the ultimate valuation authority. (*Id.* at ¶ 109)

Hickey does not need to be an accountant or an auditor to offer these opinions. He is qualified to do so by his long experience as an expert in the GAAP requirements related to valuation and financial statements. *See Tuf Racing,* 223 F.3d at 591 ("Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness.") And Hickey's opinion is amply supported by the Investment Company Act, SEC guidance, and SBB's own compliance manual, valuation policy, financial statements, as well as its auditor representation letters. (*See* Ex. A, ¶¶ 37, 40, 47) In fact, SBB's auditor representation letters expressly advised RSM that management had complied with GAAP and ASC § 820. (*Id.*) So Hickey's opinions *are* rationally related to his main opinions – that SBB was required to follow ASC § 820, but that it failed to do so.

## V.     Conclusion

The SEC respectfully requests that the Court deny Defendants' Motion to Exclude Certain Expert Opinions and Testimony of the SEC's Expert Peter C. Hickey (Dkt. 215).

Dated:  May 13, 2024

**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION**

By:  **_Robert M. Moye_**                          
Timothy S. Leiman (leimant@sec.gov)
Kevin A. Wisniewski (wisniewskik@sec.gov)
Robert M. Moye (moyer@sec.gov)
Devlin N. Su (sude@sec.gov)
Chicago Regional Office
175 W Jackson Blvd., Suite 1450
Chicago, IL 60604

*Attorneys for Plaintiff United States Securities
and Frequency Exchange Commission*

21

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by the Court's ECF system upon all counsel of record.

*__Robert M. Moye__*
Robert M. Moye