## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                    Plaintiff,

      v.

SBB RESEARCH GROUP, LLC,
SAMUEL B. BARNETT, and
MATTHEW LAWRENCE AVEN,

                  Defendants.

Case No. 1:19-cv-06473

The Honorable Sharon Johnson Coleman,
United States District Judge

The Honorable Keri L. Holleb Hotaling,
United States Magistrate Judge

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO
## EXCLUDE CERTAIN OPINIONS OF DEFENDANTS' EXPERT STEVEN RICHARDS

**TABLE OF CONTENTS**

Page

I.     PRELIMINARY STATEMENT ....................................................................1

II.    BACKGROUND .........................................................................................2

       A.     The SEC's Complaint .....................................................................2

       B.     RSM's Awareness of the SEC Examination Letter ...............................3

       C.     RSM's Resignation ........................................................................4

       D.     The SEC Proffers Mintzer's Expert Report ......................................5

       E.     Steven Richards ............................................................................6

III.   ARGUMENT ............................................................................................7

       A.     Richards's Opinions About RSM's Resignation Are Relevant .............7

       B.     Richards's Resignation Opinions Are Admissible ..............................11

              1.     Richards Is Not Making Credibility Determinations ................11

              2.     Richards's Resignation Opinions Will Help the Jury ...............13

              3.     Richards's Resignation Opinions Are Reliable .......................16

IV.    CONCLUSION .........................................................................................19

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Atturo Tire Corp. v. Toyo Tire Corp.*,
2021 WL 3814800 (N.D. Ill. Aug. 26, 2021) ........................................................ 9

*Baldonado v. Wyeth*,
2012 WL 1802066 (N.D. Ill. May 17, 2012) ......................................................... 8

*Beardsall v. CVS Pharm., Inc.*,
2019 WL 13490346 (N.D. Ill. Mar. 13, 2019) ............................................... 10, 18

*Ernst v. City of Chicago*,
39 F. Supp. 3d 1005 (N.D. Ill. 2014) .......................................................... 17, 18

*Fisher v. Ciba Specialty Chem. Corp.*
238 F.R.D. 273 (S.D. Ala. 2006) .................................................................... 8

*Goldberg v. 401 N. Wabash Venture LLC*,
755 F.3d 456 (7th Cir. 2014) ....................................................................... 13

*Goodwin v. MTD Prods., Inc.*,
232 F.3d 600 (7th Cir. 2000) ....................................................................... 12

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
32 F. Supp. 3d 453 (S.D.N.Y. 2014) ......................................................... 15, 16

*Jiminez v. City of Chicago*,
732 F.3d 710 (7th Cir. 2013) ............................................................ 11, 12, 15

*Porgozelska v. VanderCook Coll. Of Music*,
2023 WL 3819025 (N.D. Ill. June 5, 2023) ...................................................... 16

*SEC v. Caserta*,
75 F. Supp. 2d 79 (E.D.N.Y. 1999) .................................................................. 9

*Smith v. Ford Motor Co.*,
215 F.3d 713 (7th Cir. 2000) ................................................................... 16, 18

*United States v. Bautista*,
252 F.3d 141 (2d Cir. 2001) ......................................................................... 10

*United States v. Cheung Kin Ping*,
555 F.2d 1069 (2d Cir. 1977) ....................................................................... 10

*United States v. Johnson*,
    916 F.3d 579 (7th Cir. 2019) ................................................................................................. 11

*United States v. Scholl*,
    166 F.3d 964 (9th Cir. 1999) ................................................................................................. 15

*Wilda v. JLG Indus., Inc.*,
    2021 WL 392705 (N.D. Ill. Feb. 3, 2021) ............................................................................ 18

## I.     PRELIMINARY STATEMENT

The SEC's *Daubert* motion regarding Steven Richards is a head-scratcher.  The SEC asks the Court to exclude as irrelevant Richards's opinion that RSM failed to follow the audit standards in deciding to resign as the auditor of SBB's funds.  But the SEC fails to mention that Richards's opinion *rebuts* the opinion of SEC expert Andrew Mintzer that RSM's resignation *was* reasonable under the audit standards.  Indeed, the SEC's motion barely acknowledges Mintzer's initial opinion on RSM's resignation, mentioning it just once in a footnote that says nothing about why Mintzer's opinion is relevant.  The SEC asks the Court to conclude that the propriety of RSM's resignation under the audit standards is relevant for the SEC's purposes, but irrelevant for Defendants' purposes.  The Court should decline this request.

As for why Richards's opinion that RSM's resignation did not follow the audit standards is relevant, the answer is that the SEC made it relevant.  The SEC has said that it "intends to offer evidence of Defendants' deceptive interactions with RSM, *including RSM's resignation* as the Funds' auditor, *in support of the SEC's claims*."  Dkt. 167 at 3 (emphasis added).  The SEC enlisted Mintzer to opine that "RSM's resignation … was reasonable under GAAS" (Generally Accepted Auditing Standards).  Mintzer Rep. Part VIII (¶¶ 91-138).[1]  This opinion is hardly secondary for Mintzer—it occupies nearly half of his initial report.  The SEC presumably intends to offer Mintzer's opinion on the propriety of RSM's resignation to buttress the anticipated testimony of the RSM witnesses, through whom the SEC hopes to establish scienter.  Richards's opinion that RSM resigned in a manner contrary to the audit standards is classic rebuttal, and it will help the

---

[1] The Opening Report of Andrew Mintzer ("Mintzer Rep.") is included in the Omnibus Exhibit Index To Defendants' Responses to the SEC's *Daubert* Motions ("Omnibus Exhibit Index") (Dkt. 219-1) at Ex. 3. The Opening Report of Steven Richards ("Richards Rep.") is included in the Omnibus Exhibit Index at Ex. 4.  Richards's Deposition Transcript ("Richards Tr.") is included in the Omnibus Exhibit Index at Ex. 16. All other exhibits referenced in this Motion include the relevant citation to their numbered location in the Omnibus Exhibit Index.

jury evaluate evidence concerning RSM's resignation. If Mintzer's opinion on the propriety of RSM's resignation is relevant, so is Richards's rebuttal opinion that RSM did *not* follow the audit standards when it resigned.

The SEC strains—and fails—to raise other credible challenges to Richards's opinions. For example, the SEC claims that Richards's resignation opinions are unreliable because he "is not an expert in … applying GAAS in the resignation context." Mot. at 15. But in making that argument, the SEC ignores Richards's extensive practical experience advising auditors on potential withdrawals from client engagements.

In sum, Richards's challenged opinions are (i) relevant because they will help the jury understand technical standards related to an auditor's decision to resign from an audit client and (ii) reliable because they are the product of his extensive experience with auditing standards and stem from sound methodology. His opinions should be admitted in full.[2]

## II. BACKGROUND

### A. The SEC's Complaint

The SEC alleges Defendants engaged in a "multi-year fraudulent scheme" to artificially inflate the value of the SBB funds' securities and "make the Funds' performance look much better than it actually was." Dkt. 1 ¶¶ 1-2. The SEC claims Defendants "rigged" their model and "lied to its auditor" (RSM at the time) about the model. *Id.* ¶ 2, 71. According to the SEC, when RSM concluded the model was not designed to be consistent with GAAP, it resigned as the SBB funds' auditor. *Id.* ¶¶ 108-109; *see also id.* ¶ 110 (describing resignation letter).

---

[2] The SEC does not move to exclude set forth in Paragraphs 23-38, 40-68, and 76-90 of Richards's report, including those addressing the enhanced confidence that the audit provided SBB that the funds' financial statements were fairly presented in accordance with generally acceptable accounting principles ("GAAP") (Richards Rep. ¶¶ 46-52) and that it "was reasonable for SBB to believe" the financial statements complied with GAAP (*id.* ¶ 85). Mot. at 2, 20.

The facts borne out of discovery tell a far different story.

## B. RSM's Awareness of the SEC Examination Letter

RSM audited SBB's funds for the fiscal years 2013 to 2017. RSM continued working with SBB until April 2019, when it resigned shortly after receiving a Wells Notice from the SEC indicating that the SEC Enforcement staff planned to recommend charges against RSM and the RSM engagement partner, Lynne Weil.

On March 16, 2016, SBB received an examination findings letter from the SEC exam staff. While there is a factual disagreement about whether SBB informed RSM about the concerns raised in that letter, no one disputes SBB emailed responses to RSM's "final inquiries" before RSM issued its 2015 audit opinion in April 2016. That email stated that there were no communications from regulators or government agencies "that hasn't already been identified previously," that SBB "provided a response based on the" SEC "exit interview, but have received no feedback as of yet," and attached the signed management representation letter, which RSM had drafted. Ex. 24. RSM never asked SBB about its responses to RSM's "final inquiries."

In October 2016, the RSM engagement partner, Lynne Weil, reached out to Defendant Matthew Aven to ask about the status of the SEC examination and SBB's valuation model. Aven responded that SBB sent their "last response" to the SEC "on August 24th," adding that the "valuation model" was "completely dependent upon" SBB's "SEC correspondence." Again, there is no record of RSM requesting the SEC correspondence flagged by Aven. Later that month, the SEC notified both SBB and RSM that the Division of Enforcement was "conducting an investigation" related to SBB and issued subpoenas for documents. Ex. 25; Ex. 26. RSM workpapers confirm that, less than three weeks later, RSM discussed with SBB the SEC's concerns

and SBB's planned response to the SEC. Ex. 27 (metadata shows document dated November 15, 2016).[3]

It is undisputed that after receiving a copy of the SEC's March 2016 letter from SBB, RSM met with SBB management in early 2017 to discuss, among other things, why SBB had not shared the letter earlier and SBB's decision to hire Markit, a third-party firm, and to use Markit's model to assist SBB in valuing the funds' assets. RSM then reaccepted SBB's funds as audit clients and assessed whether any of the funds' prior financial statements required restatement. During that time, the SEC's investigation of SBB was ongoing, and ten RSM employees gave on-the-record investigative testimony to the SEC about RSM's audits of SBB's funds. In April 2018, the SEC met with RSM's counsel to discuss the "SEC['s] concerns with RSM 2013-2016 Fund audits." Ex. 31 at 53. Even after that meeting, RSM issued unqualified audit opinions for fiscal years 2016 and 2017.

### C.    RSM's Resignation

RSM abruptly changed its tune in 2019. In March, the SEC issued Wells Notices to RSM and Weil providing them the opportunity to explain why the SEC should not sue them. As part of the Wells process, the SEC permitted Weil's counsel to review over 2,500 pages of transcripts of SBB witness testimony to the SEC. Weil's counsel drafted memoranda summarizing certain testimony and exhibits (the "Summaries") for Weil's review.[4]

Just a few weeks after receiving the Wells Notices, and without asking SBB about the perceived "inconsistencies" in the Summaries, RSM resigned as auditor of SBB's funds. RSM

---

[3] This evidence undermines the SEC's assertion that SBB did not "inform[] RSM about the enforcement investigation" for two months. Mot. at 3.

[4] RSM initially withheld these Summaries as privileged, but Magistrate Judge Finnegan held that RSM waived privilege and ordered their production in June 2023. *See* Dkt. 182.

claimed it was resigning because of five purported inconsistencies between SBB witnesses' SEC testimony and SBB's prior representations to RSM.

In her Wells submission to the SEC, Weil argued the SEC should not charge her because she was "one of the primary decision-makers" who determined RSM would resign as auditor of SBB's funds. Dkt. 182 at 6. While RSM ultimately reached a settlement with the SEC that included several undertakings—including cooperating with the SEC in this case—the SEC "took no enforcement action against Ms. Weil." *Id.* at 5-6.

### D. The SEC Proffers Mintzer's Expert Report

After the close of fact discovery, the SEC issued Mintzer's expert report. In the present Daubert motion, the SEC describes the Mintzer Report as addressing two opinions—"that SBB: (a) did not fulfill its obligation to create financial statements that complied with GAAP; and (b) would have violated the management/auditor relationship under GAAS if it improperly relied on RSM to fulfill its initial GAAP obligation." Mot. at 4-5 (citing Mintzer Rep. at 7-44). Conspicuously absent from the SEC's summary is any mention of the fact that nearly half of the Mintzer Report addresses his opinion that RSM's resignation "was reasonable under GAAS." *See* Mintzer Rep. Section VIII, ¶¶ 91-138.

Indeed, the SEC's only reference to Mintzer's opinion about RSM's resignation is in a footnote that defends his factual narrative. While the footnote does not explain why his opinion on the propriety of RSM's resignation is relevant here, Mintzer's Report describes RSM reviewing evidence "during the Wells Process" that "indicated" certain "information was not disclosed to RSM on a timely basis." *Id.* ¶ 92. Mintzer says this evidence "would have caused a reasonable auditor to perform additional audit procedures," which he "would expect … would include gathering additional audit evidence[.]" *Id.* ¶ 113. Notably, Mintzer fails to identify any additional audit procedures RSM performed. That is because RSM did not perform any additional procedures

after the firm reviewed the Summaries prepared during the Wells process.  Ex. 12 (Jan. 24, 2023 Weil Dep.) at 317:21-318:13; Ex. 13 (Dec. 5, 2023 Davisson Dep.) at 328:10-18.  Mintzer concludes the resignation was reasonable under GAAS "because a reasonable auditor would have considered the asserted withheld information to be important audit evidence."  Mintzer Rep. ¶¶ 2.d, 95.

### E.    Steven Richards

Defendants proffered Richards to respond to Mintzer's opinions.  Among other things, Richards responds to Mintzer's opinion that "the issuance of an unqualified audit opinion under GAAS, does not demonstrate that the audit was in fact, performed in accordance with GAAS."  He points out that Mintzer ignores the fundamental purpose of an audit, which is to provide users "with enhanced confidence that the financial statements are fairly presented, in all material respects, in accordance with GAAP."  Richards Rep. ¶ 19.  Addressing Mintzer's opinion that SBB inappropriately relied on the auditor for preparing and fairly presenting the Funds' GAAP-compliant financial statements, Richards points to relevant standards that permit SBB to rely on outside accountants to prepare and deliver financial statements.  *Id.* ¶ 20.  Richards also responds to Mintzer's opinion by explaining that the issuance of an unqualified audit opinion enhances any user's (including SBB's) confidence that the financial statements are fairly presented in accordance with GAAP.  *Id.* ¶¶ 42-52.  As noted above, the SEC does not challenge these opinions.

Finally, because Mintzer opined at length about RSM's resignation, Richards rebuts that opinion, too.  Richards counters Mintzer's opinion that RSM's resignation was reasonable under GAAS by revealing that Mintzer ignored that RSM violated GAAS by failing to undertake required audit procedures after reviewing the Summaries.  *Id.* ¶ 22.  If RSM had followed the standards, the audit *could* have identified information that *may* have informed Weil's decision to

resign. *Id.* ¶ 110.[5]  It is Richards's response to Mintzer's resignation opinion that is the subject of the SEC's *Daubert* motion.

## III.  ARGUMENT

### A.  Richards's Opinions About RSM's Resignation Are Relevant

The Court should reject the SEC's request to exclude Richards's opinions about RSM's resignation.  The SEC characterizes these opinions as irrelevant and accuses Defendants of putting RSM "on trial."  Mot. at 1.  But it is the SEC that has made RSM's resignation relevant.  *See supra* Section II(A); *see also* Dkt. 182 at 14 ("the SEC chose to rely on RSM's resignation in its complaint as part of its assertion that Defendants deceived RSM").  The SEC has stated repeatedly that it "intends to offer evidence of Defendants' deceptive interactions with RSM, *including RSM's resignation* as the Funds' auditor, *in support of the SEC's claims*."  Dkt. 167 at 3 (emphasis added); *see also* Mot. at 9 (arguing that RSM's resignation and withdrawal of prior audit opinions "undercuts Defendants' affirmative defense that they relied in good faith on their auditor to bless their valuation model").  As the SEC has acknowledged, this means that the SEC "may call witnesses from RSM."  Mot. at 9 n.4.  And, of course, the SEC proffered Mintzer's opinion that RSM's resignation was reasonable.  *See* Mintzer Rep. Section VIII, ¶¶ 91-138.  Richards even pointed this out when the SEC asked him in his deposition whether RSM's improper withdrawal is relevant to the SEC's claims: "I'm just responding to Mintzer's opinion that" RSM's actions and decision to withdraw was "reasonable, and I'm saying they were not."  Richards Tr. at 218:5-13.

---

[5] Contrary to the SEC's characterizations of the Richards Report, Richards does not opine that "RSM was obligated to continue the audit," that "RSM's stated reasons for resigning are false," or "that Weil's stated reasons are bogus."  Mot. at 5, 9, 13.

The SEC's implicit argument is that the *SEC* can offer evidence and expert testimony that RSM's decision to resign as auditor and withdraw its prior audit opinions was reasonable and complied with GAAS, but that to allow *Defendants* to offer rebuttal evidence and expert testimony is irrelevant and prejudicial. The SEC cites no authority to support this position because there is none.

The SEC claims that Richards's testimony about the resignation would "be prejudicial because it presents an advocacy-based narrative—that RSM resigned to avoid charges—without any factual support." Mot. at 10. But Richards offered no such opinion. In fact, during his deposition, the SEC asked Richards if he was "suggesting or" intending "to suggest" that "Weil made a decision … for RSM to withdraw as an auditor from the SBB engagement in order to avoid potential liability in an SEC matter." When Richards answered, "I don't think I drew that opinion anywhere in my report," the SEC's counsel responded, "I know it's not there. That's why I'm asking." Richards Tr. 273:11-275:5. That is why neither case the SEC cites—*Baldonado v. Wyeth*, 2012 WL 1802066 (N.D. Ill. May 17, 2012), and *Fisher v. Ciba Specialty Chemicals Corp.* 238 F.R.D. 273 (S.D. Ala. 2006) (Mot. at 10)—is relevant: both exclude testimony where an expert simply summarized documents in the record.

Nor is there support for the SEC's blanket assertion that there is "no evidence" that RSM's resignation was a defensive maneuver following RSM's receipt of Wells notices. *See supra* Sections II(B)-(C). Among other things, the record shows the following: (1) RSM resigned years after receiving the SEC examination findings letter and years after SBB abandoned its proprietary valuation model in favor a using a third party valuation service; (2) in its stated rationale for resignation, RSM misstated certain facts (e.g., it was not true that "at least two different consulting firms expressed significant concerns about SBB's valuation model") and ignored record evidence

cutting against the stated rationale (e.g., the Summaries reflect that SBB received advice from a lawyer with securities compliance expertise regarding the presentation of fund performance to different investor groups); (3) Weil, RSM's engagement partner, argued to the SEC that she should not be sued because she made sure that RSM resigned; and (4) Weil was not sued by the SEC and RSM reached a no-penalty settlement with the SEC in which the firm agreed to be their cooperating witness in this action.

On a discovery motion before Magistrate Judge Finnegan, the SEC stated similarly that there was "no substance" to Defendants' argument that RSM's resignation was pretextual. Dkt. 167 at 5-6. Judge Finnegan disagreed, observing that "RSM's resignation did, however, quickly follow the SEC's issuance of Wells notices to RSM and Ms. Weil, and Defendants may try to argue that the resignation favorably affected the SEC's settlement with RSM and decision not to bring an enforcement action against Ms. Weil." Dkt. 182 at 13.

Even if the SEC had not injected RSM's resignation into this case, reliance-on-auditors is both an established defense and can be relevant to proving or disproving scienter. *See, e.g.*, *SEC v. Caserta*, 75 F. Supp. 2d 79, 94-95 (E.D.N.Y. 1999) ("Good faith reliance on the advice of an accountant or an attorney has been recognized as a viable defense to scienter in securities fraud cases."). Defendants are thus entitled to introduce evidence that RSM's resignation was not based on new concerns about SBB's management's integrity. Richards's opinions identifying steps the auditors should have taken after reviewing subsequently discovered facts is relevant context to understand that evidence. *See, e.g.*, *Atturo Tire Corp. v. Toyo Tire Corp.*, 2021 WL 3814800, at *3, *5 (N.D. Ill. Aug. 26, 2021) (denying motion to exclude expert whose opinions "will provide needed context and information" to help jury understand other evidence).

The Court should likewise deny the SEC's request to exclude Richards's opinion about other SEC cases against auditors. As Richards explains, all but one other action included the engagement partner or quality reviewer violating professional standards. *See* Richards Rep. ¶ 39. That context is relevant because it supports Defendants' arguments that RSM's resignation—led by Weil, who was not charged—was pretextual. The SEC's two arguments to the contrary are wrong.

*First*, the SEC argues that this "background" "adds nothing to the evidence in this case." Mot. at 10-11. But the relevant inquiry is whether the opinion is admissible, not whether Richards's "conclusions should be given" weight. *Beardsall v. CVS Pharm., Inc.*, 2019 WL 13490346, at *7 (N.D. Ill. Mar. 13, 2019) (rejecting objections to expert testimony). Even if the Court were weighing evidence at this stage, this opinion would still be admissible because it offers context relevant to a key issue in this case: whether RSM's resignation was pretextual, which bears on SBB's scienter (or lack thereof). *See supra* pp. 1-2.

*Second*, the SEC argues the jury "has no role in evaluating the propriety of charges other than the ones before it." Mot. at 11. The SEC again misses the point. The opinion is not about the "propriety of charges." Rather, Defendants offer Richards's opinion so the jury can understand how unusual it is for an audit partner like Weil to escape charges while the SEC charges the firm itself. If the SEC chooses to spend its time cross-examining Richards on "the facts and enforcement decisions behind those 20 unrelated actions," it can.[6] Mot. at 11. Defendants,

---

[6] The cases the SEC cites to support this argument reveal the argument for the strawman it is. Unlike in *Bautista* and *Cheung Kin Ping*, Defendants are not offering Richards's opinion so that the factfinder can evaluate whether the referenced actions are proper. *See United States v. Bautista*, 252 F.3d 141, 145 (2d Cir. 2001) (summation invited jury to "consider the government's choice of investigative techniques"); *United States v. Cheung Kin Ping*, 555 F.2d 1069, 1073 (2d Cir. 1977) (defense counsel urged jury to acquit defendant on extraneous public policy grounds related to the government's favorable treatment of cooperating witness).

however, will offer the opinion to provide the jury "with relevant context clues" about the frequency with which engagement partners face charges when their firm faces charges. *United States v. Johnson*, 916 F.3d 579, 583, 588 (7th Cir. 2019) (affirming admission of expert testimony on "habits, customs, and practices" that "provided the jury with relevant context clues"). This is proper expert testimony.

### B. Richards's Resignation Opinions Are Admissible

#### 1. *Richards Is Not Making Credibility Determinations*

Richards's report at paragraphs 108-144 does not, as the SEC argues, address the "propriety of charges" against Weil. In these paragraphs, Richards applies his auditing expert experience to rebut Mintzer's opinion that there were "sufficient facts available to RSM that would allow a reasonable auditor to resign under GAAS." Mot. at 12 n.6. Richards explains that, though RSM had the "obligation to gather and assess the sufficiency and appropriateness" of audit evidence, they "did nothing"—something Mintzer ignores in his report. Richards Rep. ¶ 107. Paragraphs 108-144 support Richards's opinion that if Weil had "further pursued the sufficiency and appropriateness of the information in the excerpts, the inconsistencies she perceived *may* have been resolved." *Id.* ¶ 110 (emphasis added).

Unable to rebut this fact, the SEC instead argues Richards is making credibility determinations. Mot. at 11-13. Not so: Richards's opinion is like the expert's at issue in *Jiminez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013), where the plaintiff in a Section 1983 action proffered an expert on police practices who "offered a few observations on credibility … limited to proper discussions of the evidence that [a police officer] received in the investigation." *Id.* at 722. Noting inconsistencies in the record, that expert's observations laid the foundation for his opinion of what a "reasonable officer would have realized" and "would have" done ("tried to resolve the conflicts"). *Id*. at 722-23. The expert also offered observations about a lay witness's

statement in the underlying investigation. The testimony was admissible, because the expert "did not testify that [the witness] had been telling the truth, but he explained that [the witness's] statement had strong indications of credibility so that a reasonable police investigator would have taken it seriously." *Id*. at 723. At bottom, the expert "did not tell the jury to believe what any witnesses had said" during testimony; he "told the jury what a reasonable police investigator should have done when presented with these conflicting and/or inculpatory statements during the murder investigation." *Id*.

Richards's opinion on RSM's resignation is admissible for the same reason. In reviewing what RSM claimed to be inconsistences between the Summaries and SBB's representations to RSM, Richards points out that, had Weil complied with GAAS requirements and taken steps to "determine the sufficiency and appropriateness" of the Summaries' new information, "the inconsistencies she perceived *may* have been resolved." Richards Rep. ¶ 110 (emphasis added). Richards is thus not telling the factfinder to believe (or disbelieve) Weil or anyone else at RSM; he is explaining what a reasonable auditor should have done when presented with seemingly contradictory information—conduct additional audit procedures—and what those additional audit procedures could have resolved. *See, e.g.*, *id.* ¶¶ 112, 118, 119, 125; *see also* Richards Tr. at 226:14-21 ("I didn't give an opinion on her state of mind. What I pointed out is that she didn't follow standards[.]"); *id.* at 227:18-24 ("Not lying and not doing your job are two different things, right? So not being compliant with all the standards that you should have done based on this situation and had you done those you may have come across these other facts … I'm talking about that.").

That is why the SEC's cited authority helps Defendants. In *Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 609 (7th Cir. 2000), the defendant's expert expressly opined that he did not

believe a witness. The court affirmed his exclusion, since his opinion was "based on speculation." *Id.* Richards's opinion is the opposite: (1) he is not giving an opinion on whether he thinks anyone at RSM was telling the truth; and (2) his opinions turn on record evidence and his experience, not speculation.

Likewise, Richards's expert opinion on the reputational impact of a Wells notice on an audit engagement partner or auditor is not a credibility determination. The SEC's cited authority shows how this opinion instead permissibly provides the jury with context to help it understand how Weil (the engagement partner for RSM's audit of SBB's funds) may have received the SEC's Wells notice. For example, in *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461-62 (7th Cir. 2014), the defendant's expert, the president of a hotel management company, testified about issues developers are likely to encounter. The Seventh Circuit held that while an "expert witness is not permitted to parrot what some lay person has told him and testify that he believes the person was being truthful," an expert can "testify about the state of knowledge prevalent in a business that he has studied" and "is also a member of." *Id.* Richards's opinion on the reputational impact of a Wells notice on Weil falls neatly within these bounds.

The SEC tries to bolster its credibility-determinations argument by asserting that "Richards repeatedly puts the word 'inconsistency' in scare quotes." Mot. at 12. This, too, is incorrect. Indeed, SEC expert Mintzer also refers to "inconsistencies" in quotes because RSM's resignation letter refers to "inconsistencies," and in many instances Richards is quoting directly from RSM's letter or Mintzer's report *See, e.g.*, Mintzer Rep. ¶¶ 22, 91-92, 107. Richards's quoting of the letter does not signify he is making credibility determinations.

## 2. *Richards's Resignation Opinions Will Help the Jury*

Contrary to the SEC's submission, Richards's opinions will assist the factfinder. Ignoring that its expert Mintzer also quotes "transcripts, emails, and other documents" (*see, e.g.*, Mintzer

13

Rep. ¶¶ 109, 111, 117), the SEC criticizes Richards for quoting documents in the record and opining that the evidence "could have" impacted Weil's resignation decision.[7]  Mot. at 13-14. Unlike Mintzer—who summarizes the evidence and then condones RSM's resignation because a "reasonable auditor would have considered" the allegedly withheld information to be "important audit evidence" (Mintzer Rep. ¶ 2.d)—Richards is not usurping the role of the jury to review the evidence and decide what it means.  Instead, Richards applies his experience in auditing and opines on what a reasonable auditor would do after reviewing new audit evidence like the Summaries.

Richards's testimony will help the jury understand what the audit standards require of auditors, whether those standards were followed, what information qualifies as audit evidence, and what a reasonable auditor would do with such information.  *See* Richards Rep. ¶¶ 111-114, 118-120, 122-125, 127, 129, 133-139.  Richards uses testimony and emails to highlight why the professional standards "require auditors to be professionally skeptical and critically assess audit evidence—including questioning the reliability of information used."  *Id*. ¶ 110. Had Weil "pursued the sufficiency and appropriateness" of the cited evidence, Richards concludes, "the inconsistencies she perceived may have been resolved."  *Id.*

For example, one purported reason for RSM's resignation was that the Summaries Weil reviewed "reflect[ed] that SBB was providing different sets of performance figures" to investors and potential investors.  *Id.* ¶ 111.  Richards explains that Defendant Samuel Barnett testified that SBB made that decision after consultation with their attorney, as reflected in an email from SBB's

---

[7] The SEC tries to argue that Richards seeks to opine this evidence "should' or 'would'" have resolved Weil's concerns (Mot. at 13), but ultimately acknowledges that Richards testified he was "not expressing an opinion" that information "would have or should have alleviated" Weil's "concerns" and that he "was trying to convey that it could" have alleviated her concern.  Richards Tr. 292:16-293:25; Mot. at 14 (acknowledging Richards clarified "many of his 'should haves' in the report [were] 'could haves'").

attorney summarizing her advice. *Id.* ¶ 112. Richards opines that if Weil "had followed GAAS requirements and asked SBB" about the two sets of performance figures, this "inconsistency" could have been resolved. *Id.* That is appropriate expert testimony. *See Jiminez*, 732 F.3d at 723 (testimony about "what a reasonable police investigator should have done when presented with … conflicting and/or inculpatory statements" was "within the bounds of proper [expert]").

The SEC also argues that the documents Richards cites (including SBB emails and testimony) in his report "should be allowed to speak for themselves." Mot. at 14. True, the average juror can interpret "common communications" for themselves. *Id.* But the SEC is wrong to assume that the average juror will appreciate audit standard requirements, the additional evidence that was available to Weil, or the evidence's significance to an auditor bound to follow GAAS. Richards's auditing experience provides necessary contextual information to aid the jury in forming its conclusions. *See, e.g.*, Richards Rep. ¶¶ 112, 118 (explaining why certain facts would have been significant to Weil and RSM's analysis).

Even the SEC's cited authority, *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453 (S.D.N.Y. 2014), supports admitting Richards's resignation opinion.[8] While *Longtop* precluded a certified public accountant from summarizing facts and documents in the record, including the findings of audit opinions, the court permitted the expert to testify on the "adequacy and propriety of [an auditor's] audit procedures," to "evaluate the operations" of the defendant's "finance department based upon his own review of the relevant documents," to "explain what procedures a CFO is generally expected to undertake, in accordance with industry standards," and

---

[8] The SEC's other cited authority is inapplicable, because the court held the proffered expert testimony "would be a waste of time," not because the documents could "speak for themselves." *United States v. Scholl*, 166 F.3d 964, 973-74 (9th Cir. 1999).

to "explain, in his experience, what steps a CFO would *not* normally undertake in the face of a clean audit report." *Id.* at 462-63.

As in *Longtop*, Richards, "based upon his own review of the relevant documents," opines on the following: the adequacy and propriety of RSM's resignation decision (Richards Rep. ¶¶ D, 143-144); the evaluation of SBB's actions identified in RSM's resignation letter (*id.* ¶¶ 111-140); and the procedures a reasonable auditor is expected to take when it learns of new audit evidence (*id.* ¶ 103, Table 2). All this will help the jury to understand how a reasonable auditor would react to the Summaries, so his opinion is admissible. *See, e.g.*, *Porgozelska v. VanderCook Coll. Of Music*, 2023 WL 3819025, at *9 (N.D. Ill. June 5, 2023) ("We do not believe that an average person could form a reliable conclusion as to whether an institution's response was clearly unreasonable as a matter of law without considering the administrative burdens and prevailing industry standards—the very information that" the expert's "testimony provides.").

### 3. *Richards's Resignation Opinions Are Reliable*

As a last-ditch attempt to exclude Richards's resignation opinion, the SEC asserts that he "is not an expert in industry practices in applying GAAS in the resignation context," and that he "provided no proof that his interpretation of GAAS resignation standards is generally accepted in the auditing community." Mot. at 15-19. Neither argument is persuasive.

As to whether Richards is an expert in this context, "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The court can and "should" consider Richards's "full range of practical experience." *Id.* That includes (among other things) his roles as: Partner in the Forensic Advisory practice at Deloitte LLP, where he advised on audit regulatory issues and consulted on potential withdrawals from client audit engagements; Special Adviser at the Public

16

Company Accounting Oversight Board ("PCAOB"),[9] where he provided advice and operations for all aspects of PCAOB oversight, including auditors' compliance or non-compliance with professional standards; a Assistant Chief Accountant in the SEC's Division of Enforcement office, where he assessed auditors' compliance with professional standards; and Senior Managing Director at Ankura Consulting Group, LLC, where he has evaluated whether an auditor had properly withdrawn from its client audit engagement. *See* Richards Rep. ¶¶ 2-11; Richards Tr. 42:23-47:19, 48:3-49:16. This experience makes him one of the few individuals in this field that has actually advised on the reasonableness of auditor resignations in the real world. *Id.* Richards thus "link[s] his assertion to what he has seen and experienced in his work in the field over the years. And that is perfectly permissible[.]" *Ernst v. City of Chicago*, 39 F. Supp. 3d 1005, 1011 (N.D. Ill. 2014).

As to support for his interpretation of GAAS resignation standards, Richard provided that. Richards's report includes a summary table of audit requirements. *See* Richards Rep. ¶ 103, Table 2. The table includes four steps, beginning with AU-C 560.15: "If new information is discovered, should discuss with Management." *Id.*; *see also* AU-C 560.15 ("If a subsequently discovered fact becomes known to the auditor after the report release date, the auditor should … a. discuss the matter with management and, when appropriate, those charged with governance."). The table ends with AU-C 580.25: "*After evaluation of audit evidence*, if the auditor concludes written representations are not reliable, audit [*sic*] should disclaim an opinion or withdrawal from the engagement." Richards Rep. at Table 2 (emphasis added). As Richards explained in his

---

[9] The PCAOB oversees the audits of public companies and broker-dealers registered with the SEC. It is responsible for setting auditing standards and also investigates and disciplines registered public accounting firms and individuals for violations of laws, accounting rules, or professional standards. *See* "About," PCAOB, https://pcaobus.org/about (last visited May 10, 2024).

deposition, by its plain language, AU-C 580.25 is a conclusion that can only follow after an auditor evaluates audit evidence.  *See* Richards Tr. at 233:16-21; *id.* at 234:6-20 ("I think we just stick to the words in the standard.").

The SEC ignores this, complaining that "there is no support for Richards's view of GAAS other than Richards himself."  Mot. at 19.  But Richards, applying his extensive auditing experience (*see supra*), forms a reliable opinion:  in the GAAS context, "[y]ou follow a process to inform a conclusion, but you don't just jump to the conclusion.  There's a series of steps you have to go to to [sic] get there."  Richards Tr. at 234:14-20; *see Ernst*, 39 F. Supp. 3d at 1011.

In any event, the SEC's argument that Richards "failed to address other provisions of GAAS" is wrong.  Mot. at 16.  "[A] failure to look at this or that is not a reason to keep an expert out of a case."  *Wilda v. JLG Indus., Inc.*, 2021 WL 392705, at *3 (N.D. Ill. Feb. 3, 2021).  Indeed, the Court need not decide whether Richards is right—that's for the jury.  *See, e.g.*, *Beardsall*, 2019 WL 13490346, at *7 (rejecting objections to expert testimony that "speak more to the weight [expert's] conclusions should be given rather than to admissibility"); *Smith*, 215 F.3d at 718 ("The soundness of the factual underpinnings of the experts' analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment.").

The Court should also reject the SEC's argument that Richards is unreliable because he failed to "adequately account[] for obvious alternative explanations."  Mot. at 15-16.  It is the SEC, not Richards, that "cherry-pick[s]" facts.  The SEC says Richards ignores that RSM complied with GAAS because—before it reviewed the Summaries or resigned—RSM "requested correspondence between the SEC and SBB" and sought a meeting with SBB.  *Id.* at 19-20.  Defendants do not dispute that these were appropriate audit steps.  But the SEC leaves out that RSM took these steps

*two years prior* to its resignation as the SBB funds' auditor after learning about the SEC's examination letter. RSM did not—and could not—base its decision to resign on when it learned about the examination letter. Indeed, this demonstrates that in 2017, when RSM learned about the examination letter, they actually followed GAAS requirements, but did not resign.

The SEC also accuses Richards of "ignor[ing]" that Weil decided to resign after consulting with two members of RSM's national office. Mot. at 20. Richards does not ignore that fact; he faults Weil for failing to consult with the *audit team*—the professionals who would have had necessary background facts about the engagement. Richards Rep. ¶ 108 (other than Davisson and Lord, Weil "did not consult anyone else at RSM from the audit team or otherwise"). It is those individuals, not Davisson or Lord, who could have pointed Weil to relevant audit evidence in RSM's workpapers, such as the fact that RSM was aware SBB was using a theoretically based model. *See id.* ¶ 118.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the SEC's motion to exclude Richards's expert opinions.

Dated: May 13, 2024

Respectfully submitted,

By: /s/ *John J. Sikora, Jr.*
John J. Sikora, Jr. (6217330)
Heather A. Waller (6302537)
Marissa K. Perry (6337268)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel. (312) 876-7700
john.sikora@lw.com
heather.waller@lw.com
marissa.perry@lw.com

Howard J. Rosenburg (6256596)
KOPECKY SCHUMACHER

ROSENBURG LLC
120 N. LaSalle, Street, Suite 2000
Chicago, IL 60602
Tel. (312) 380-6631
hrosenburg@ksrlaw.com

H. Gregory Baker (*pro hac vice*)
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel. (212) 336-2871
hbaker@pbwt.com

*Attorneys for Defendants*
*SBB Research Group, LLC, Samuel Barnett,*
*and Matthew Aven*