**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:19-cv-06473 |
| v. | The Honorable Sharon Johnson Coleman, United States District Judge |
| SBB RESEARCH GROUP, LLC, SAMUEL B. BARNETT, and MATTHEW LAWRENCE AVEN, | |
| Defendants. | The Honorable Keri L. Holleb Hotaling, United States Magistrate Judge |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF ANDREW W. MINTZER**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. MINTZER'S OPENING REPORT .......................................................................................2

    A. Mintzer's RSM Resignation Opinion Is Inadmissible ............................................2
        1. The SEC's Liability Theory Makes RSM's Resignation Highly Relevant ..................................................................................................2
        2. The RSM Resignation Opinion Is Based on an Unreliable Method ............4
        3. Mintzer's New Opinion That an Auditor Need Not Follow Any Particular Process If It Concludes It Cannot Rely on Management Should Be Excluded ........................................................................................6
    B. Mintzer's Opinion That SBB Is Obligated to Comply With GAAP Is Inadmissible Because It Is Mere Factual Narration ..................................................7
    C. Mintzer's Custody-Rule Opinion Is Inadmissible Because It Is Not Reliable .....................................................................................................................8
    D. Mintzer's Opinion on Management's Responsibility for Preparation and Presentation of GAAP Financial Statements Will Confuse the Jury .......................8
    E. Mintzer's Opinion About GAAS Audits Lacks Any Support and Is Inadmissible ............................................................................................................10

III. MINTZER'S SECOND REPORT ......................................................................................10

    A. Mintzer's Opinions in His Second Report Are Untimely and Improper ...............10
    B. Mintzer's Materiality Analyses Will Not Help the Jury ........................................12
    C. Mintzer's Critique of Deetz's Materiality Assessment Is Unreliable ....................14

IV. CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Andersen v. City of Chicago*,
  454 F. Supp. 3d 740 (N.D. Ill. 2020) ....................................................................................... 10

*Bielskis v. Louisville Ladder, Inc.*,
  663 F.3d 887 (7th Cir. 2011) ..................................................................................................... 9

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010) ................................................................................................... 15

*Bowman v. IBM Corp.*,
  2013 WL 1857192 (S.D. Ind. May 2, 2013) ........................................................................... 12

*Burns v. Sherwin-Williams Co.*,
  2022 WL 4329417 (N.D. Ill. Sept. 18, 2022) ............................................................................ 7

*Chi. Tchrs. Union, Loc. 1 v. Bd. of Educ. of Chi.*,
  2020 WL 914882 (N.D. Ill. Feb. 25, 2020) ............................................................................... 4

*Gravitt v. Mentor Worldwide LLC*,
  342 F.R.D. 130 (N.D. Ill. 2022) ............................................................................................... 12

*Holden Metal & Aluminum Works, Ltd. v. Wismarq*,
  2003 WL 1797844 (N.D. Ill. Apr. 3, 2003) ............................................................................... 5

*Hudson v. City of Chicago*,
  2021 WL 1020990 (N.D. Ill. Mar. 17, 2021) ............................................................................. 7

*Ill. Nat'l Ins. Co. v. Ace Stamping & Mach. Co. Inc.*,
  2020 WL 5891395 (N.D. Ill. Oct. 5, 2020) ................................................................................ 5

*Obrycka v. City of Chicago*,
  2012 WL 4092653 (N.D. Ill. Sept. 17, 2012) ............................................................................ 9

*Owens v. Auxilium Pharms., Inc.*,
  895 F.3d 971 (7th Cir. 2018) ................................................................................................... 16

*Peals v. Terre Haute Police Dep't*,
  535 F.3d 621 (7th Cir. 2008) ................................................................................................... 11

*SEC v. Caserta*,
  75 F. Supp. 2d 79 (E.D.N.Y. 1999) ........................................................................................... 9

*SEC v. Goldsworthy*,
 2008 WL 8901272 (D. Mass. June 11, 2008) .............................................................................. 9

*SEC v. ITT Educ. Servs., Inc.*,
 311 F. Supp. 3d 977 (S.D. Ind. 2018) ........................................................................................ 8

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 ............................................................................................................................ 6

Fed. R. Civ. P. 37 ............................................................................................................................ 2

Fed. R. Evid. 702 ............................................................................................................................ 2

I.       **INTRODUCTION**

SEC expert Andrew Mintzer offers several inadmissible opinions. As shown in Defendants' motion to exclude ("Motion" or "Mot."), Mintzer's Opening Report offers opinions that are unreliable, newly disclosed in his deposition, irrelevant, and unhelpful, and his Second Report offers opinions that are untimely, improper, unhelpful, and unreliable.

The SEC's opposition ("Opp.") fails to save Mintzer's opinions from exclusion. Remarkably, the SEC asks the Court to exclude as irrelevant Mintzer's opinion on the propriety of RSM's resignation under the audit rules, claiming that it offered that opinion as a prophylactic measure, and not because it believed the opinion to be relevant.

That 180-degree turn is rather belated. After the SEC submitted Mintzer's opinion on RSM's resignation, Defendants hired Steven Richards as a rebuttal expert, deposed Mintzer and defended Richards's deposition, prepared a *Daubert* challenge seeking to exclude Mintzer's opinion on RSM—on grounds other than relevance—and defended against the SEC's challenge to Richards. Only after putting Defendants through great expense does the SEC admit that the Mintzer RSM opinion was a head-fake, meant to be presented only if the Court permits Defendants to question the circumstances surrounding RSM's resignation. Yet in the same breath, the SEC explains that it intends to put RSM's resignation front and center to prove scienter and materiality, two necessary elements of their fraud claims. The Court should grant the SEC's unusual request to exclude its own expert's opinion, but *not* because it is irrelevant. Rather, the Court should exclude Mintzer's RSM opinion as unreliable and unhelpful. Indeed, excluding Mintzer's (and Richards's) RSM-related opinions on *relevance* grounds would not only be wrong on the merits, but also would reward the SEC for its gamesmanship and punish Defendants for the SEC's

misstep, as the agency quite plainly has buyer's remorse on Mintzer's RSM opinion and recognizes that Richards will present to a jury far better than Mintzer.[1]

The grounds the SEC cites for opposing exclusion of Mintzer's other opinions are meritless. The SEC opposes Mintzer's exclusion by purposely mischaracterizing Defendants' arguments, misinterpreting Mintzer's opinions, or both. The SEC amplifies its arguments throughout the brief with textual shouting. But all to no avail. No amount of heated rhetoric and excessive underlining in the SEC's opposition makes Mintzer's opinions admissible under Rule 702. He should be barred from offering the opinions identified in the Motion and in this Reply.

## II. MINTZER'S OPENING REPORT

### A. Mintzer's RSM Resignation Opinion Is Inadmissible

#### 1. The SEC's Liability Theory Makes RSM's Resignation Highly Relevant

Despite offering Mintzer as an affirmative expert witness, the SEC now asks the Court to exclude his RSM-related testimony. *See* Opp. at 4-5. Defendants agree that Mintzer's resignation opinions should be excluded for several reasons, including that they are unreliable and newly disclosed. *See* Mot. at 5-13; *infra* pp. 4-7. But the SEC's relevancy attack on Mintzer's opinion regarding RSM's resignation is puzzling. The SEC has not only conceded that it believes RSM's resignation is relevant, it now confirms that the resignation is central to its liability case. In earlier briefing, the SEC explained that it intended to use RSM's resignation as proof of Defendants' scienter. *See* Dkt. 167 at 3. In its Opposition, the SEC now adds that it will try to parlay the

---

[1] If the Court is inclined to exclude the RSM-related opinions of both Mintzer and Richards, Defendants reserve the right to seek sanctions under Rule 37 for the fees and expenses incurred in responding to Mintzer's opinion. Defendants estimate that those fees and expenses exceed $1 million, an amount commensurate with the total amount of management fees that the SEC has alleged that SBB overcharged its funds' investors.

resignation into proof of the materiality of Defendants' alleged misstatements. *See* Opp. at 5. So the SEC intends to use RSM's resignation as evidence of two essential elements of its fraud claims.

The SEC's explanation for the irrelevancy of Mintzer's opinion on RSM's resignation makes no sense. After acknowledging that RSM's stated reasons for resigning are indeed relevant to the case, the SEC asserts that it offered Mintzer's opinion only to rebut Defendants' invocation of a reliance-on-auditors defense. But the SEC does not explain why whether RSM followed Generally Accepted Audit Standards ("GAAS") when it resigned in April 2019 has anything to do with whether Defendants reasonably relied on RSM in the years prior to the resignation.

Parsing the SEC's *Daubert* briefing brings its intended use of RSM and Mintzer into view. The SEC plans to put forward RSM witnesses to convey that all the jury needs to know about RSM's resignation can be found within the four corners of the resignation letter. The SEC will argue that RSM's resignation demonstrates that Defendants knowingly or recklessly made material misstatements to investors. And the SEC anticipates that Defendants will introduce evidence that RSM's resignation was pretextual, *i.e.*, the resignation letter should not be taken at face value and the firm resigned for reasons other than those stated in the resignation letter. Then the SEC will counter with Mintzer's opinion that RSM's resignation was reasonable under GAAS. In other words, the SEC plans to use Mintzer to bolster its contention that RSM's resignation was *not* pretextual.

This of course concedes the relevancy of the Richards opinion that RSM failed to follow GAAS when it resigned without first taking any additional audit steps or speaking with anyone at SBB. If RSM *adhering* to GAAS supports a conclusion that the resignation was not pretextual, then evidence of RSM *violating* GAAS supports the conclusion that it was indeed pretextual.

3

### 2. The RSM Resignation Opinion Is Based on an Unreliable Method

#### a. *Mintzer Failed To Replicate RSM's Review*

Mintzer's failure to replicate RSM's review of the Summaries in forming his resignation opinion renders his opinion unreliable. *See Chi. Tchrs. Union, Loc. 1 v. Bd. of Educ. of Chi.*, 2020 WL 914882, at *7 (N.D. Ill. Feb. 25, 2020). Mintzer claims he formed an opinion on RSM's resignation as SBB's auditor by reviewing the same information available to RSM at the time it resigned. Opening Rep. ¶¶ 106-138.[2] The information available to RSM was counsel-created Summaries of underlying SEC testimony. *See* Mot. at 2, 4. The SEC does not deny that Mintzer, by contrast, reviewed the SEC's entire investigative record—not the Summaries. Opp. at 6. Nor does the SEC provide any cases suggesting that Mintzer's methodology—reviewing *more* information than RSM did and speculating about what RSM actually considered—is reliable. *Id.* at 6-7.

The SEC instead focuses on the fact that "the RSM Summaries were not available to either party when Mintzer submitted his report." Opp. at 6. That the Summaries were unavailable to Mintzer is not the point; his opinion is unreliable because he claims to base it on the information RSM knew when it resigned. Mot. at 6. That claim, like the SEC's representation that Mintzer "correctly summarized the supporting facts that were available to RSM when it resigned," is false: the Opposition cites paragraphs in Mintzer's Report that, in turn, cite SEC testimony in full. *See* Opp. at 6-7 (citing Opening Rep. ¶¶ 107-111, 115-121, 125-130, 134). But as the SEC concedes, Mintzer had no way of knowing whether the Summaries included the quoted testimony in full (or even at all). *See id.* at 6. He thus could not reliably conclude RSM's resignation was reasonable.

---

[2] Mintzer's Opening Report, Second Report, and Deposition Transcript are included in the Omnibus Exhibit Index to Defendants' *Daubert* Motions ("Omnibus Exhibit Index") (Dkt. 213-01) at Exhibits 3, 7, and 13, respectively. Unless otherwise stated, all other exhibits referenced in this Reply include the relevant citation to their numbered location in the Omnibus Exhibit Index.

*See, e.g.*, *Ill. Nat'l Ins. Co. v. Ace Stamping & Mach. Co. Inc.*, 2020 WL 5891395, at *3 (N.D. Ill. Oct. 5, 2020) (expert's methodology not reliable where he "did not seek to replicate" underlying conditions).

                b.      *Mintzer's Narrative of the Facts Is Unreliable and Improper*

Mintzer's narrative of the facts underscores that his resignation opinion is unreliable. The SEC hopes to avoid this conclusion by arguing that Defendants are conflating the "factual background" with Mintzer's "opinion." Opp. at 8. Like his reading of the entire SEC record rather than limiting himself (as RSM did before resigning) to the Summaries, Mintzer's cited "facts" are inferences he draws from selected evidence. *See, e.g.*, *Holden Metal & Aluminum Works, Ltd. v. Wismarq*, 2003 WL 1797844, at *2 (N.D. Ill. Apr. 3, 2003). For instance, the SEC claims that Paragraphs 115-120 in Mintzer's Opening Report are a "summary of facts" that support his "related opinion" in Paragraphs 122-24 that "SBB failed to inform RSM on a timely basis about the SEC's criticisms of SBB's model." Opp. at 8. Defendants pointed out in the Motion that Mintzer's factual narrative involved making credibility decisions given that SBB witnesses testified they informed RSM of those criticisms. *See* Mot. at 9. The SEC responds that Mintzer "found no documentary evidence supporting" this conflicting testimony[3] and so discredited it. Opp. at 9. That is another way of saying that Mintzer made a credibility determination to construct a factual narrative. Mintzer's opinion is thus unreliable and improper.

---

[3] Mintzer's assertion is questionable, considering he purports to have reviewed over 30 witness testimony transcripts and their accompanying exhibits, including exhibits supporting witness testimony that RSM knew about the SEC's criticisms before December 2016. *See* Ex. 32 (July 2016 email between RSM personnel about discount rate for illiquidity).

5

### 3. Mintzer's New Opinion That an Auditor Need Not Follow Any Particular Process If It Concludes It Cannot Rely on Management Should Be Excluded

Mintzer's new opinion about irrelevance of audit procedures is inadmissible because it was revealed for the first time during his deposition. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert reports must contain a "complete statement of all opinions" offered by expert). Mintzer testified during his deposition that audit procedures are irrelevant once an auditor concludes it cannot rely on management's representations: when asked, "Is it your opinion that based on what RSM saw in the summaries, that they're required to perform audit procedures to attempt to resolve the inconsistencies?," he said: "No. Those are now irrelevant." Mintzer Tr. at 292:8-12. The SEC's Opposition cherry-picks Mintzer's report to suggest that the opinion Mintzer stated in his deposition is not new. Opp. at 10. The SEC does not acknowledge that Paragraphs 113, 123, 132, and 136 of Mintzer's Opening Report all say the same thing: a reasonable auditor that learned what RSM claimed it learned when it read the Summaries would perform *additional* audit procedures to resolve inconsistences. Nowhere in his report does Mintzer state that those procedures are not required because "they are now irrelevant."

Further twisting Mintzer's opinion, the SEC now claims this opinion is "more detailed" in Paragraph 101. *See id*. But Paragraph 101 does not state that the reasonable auditor's additional audit procedures—which Mintzer cites in Paragraphs 113, 123, 132, and 136—are "irrelevant." Paragraph 101's discussion about management's integrity is thus "not a foothold to support undisclosed opinions." *See Burns v. Sherwin-Williams Co.*, 2022 WL 4329417, at *27 (N.D. Ill. Sept. 18, 2022) (excluding late-disclosed expert testimony on topic where report included "solitary reference" to that topic). In trying to salvage the argument that Mintzer articulated his "additional audit procedures are now irrelevant" opinion in his Opening Report, the SEC asks the Court to infer the opinion from the fact that Mintzer "did not qualify that opinion [in Paragraph 101] by

6

identifying additional audit procedures." Opp. at 10. The Court need not squint to see an opinion in an expert report.

Even if it had been timely disclosed, Mintzer's opinion is not reliable and would not assist the jury. *See* Mot. at 12-13. The SEC insists AU-C 580.25 supports Mintzer's opinion because it does not expressly reference audit procedures. *See* Opp. at 11. As for the audit standard (AU-C 580.23) that *does* reference audit procedures, the SEC claims it does not apply because it does not "address the circumstance where an auditor has concluded that there is doubt as to management integrity." *Id.* at 11 n.3. This makes no sense, considering that AU-C 580.23 is in the section of GAAS titled "Doubt About the Reliability of Written Representations." *See* Ex. 19. And AU-C 580.25 is in the same section of GAAS as AU-C 580.23, signaling that the standards should be read together. In other words, Mintzer's novel opinion that audit procedures are irrelevant relies on an isolated and illogical reading of AU-C 580.25. Indeed, he could not identify support for this out-of-context interpretation of the audit standards when he offered it for the first time during his deposition. *See* Mot. at 10-12. Mintzer should be prohibited from offering this new, unfounded opinion. *See Hudson v. City of Chicago*, 2021 WL 1020990, at *3-4 (N.D. Ill. Mar. 17, 2021) (Coleman, J.) (excluding testimony on reasonableness of actions under standards where expert "jump[ed] to the conclusion that they are reasonable" and did not "describe how he reached his conclusions").

### B. Mintzer's Opinion That SBB Is Obligated to Comply With GAAP Is Inadmissible Because It Is Mere Factual Narration

Mintzer's Opening Report is rife with factual narration that the jury is capable of understanding, including that "SBB disclosed and acknowledged its obligation to issue the Funds' financial statements in accordance with GAAP." *See* Opening Rep. ¶¶ 2(a), 15-18, 26-34. Though Mintzer claimed at his deposition that this was "a background portion" of his Report, it is included

7

underneath a bolded heading labeled "Summary of Opinions" and preceded by the explanation that Mintzer has "formed the following opinions in this matter." *See id*. § II, ¶ 2.

The SEC nevertheless claims Mintzer links this "background" to his "actual" opinion that SBB management could not have delegated its duty to prepare GAAP-compliant financial statements to a third party, pointing to Section VI of his Report. Opp. at 12. But in his Summary of Opinions, *Mintzer* points to Section V (Opening Rep. ¶¶ 15-18, 26-34) to support his "background" assertion about SBB's obligations. *Id.* ¶ 2(a). And those paragraphs (including his opinion in ¶ 2(a)) are no more than a factual narrative that "fails to fulfill *Daubert*'s most basic requirements." *SEC v. ITT Educ. Servs., Inc.*, 311 F. Supp. 3d 977, 987 (S.D. Ind. 2018) (excluding expert testimony, including that party's "draft filings were generally subjected to review, revision and overall scrutiny by many other participants in the process," because it was factual recitation).

### C. Mintzer's Custody-Rule Opinion Is Inadmissible Because It Is Not Reliable

The Court should exclude Mintzer's Custody-Rule opinion (Opening Rep. ¶¶ 19-25) as unreliable. *See* Mot. at 14. The SEC insists again this opinion is "background," but that does not make it helpful or reliable. Opp. at 13. Mintzer did not use a reliable methodology, because the cited bulletin does not support Mintzer's assertion about the Custody Rule. *See* Mot. at 14. Mintzer should not be allowed to testify as to the Advisers Act's Custody Rule. *Id.* (citing *Obrycka v. City of Chicago*, 2012 WL 4092653, at *5 (N.D. Ill. Sept. 17, 2012)).

### D. Mintzer's Opinion on Management's Responsibility for Preparation and Presentation of GAAP Financial Statements Will Confuse the Jury

Mintzer's opinion that SBB management is responsible for preparing and presenting the funds' financial statements in accordance with GAAP (Opening Rep. ¶¶ 40, 43, 48-56) does not relate to a disputed issue and will confuse the jury. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 897 (7th Cir. 2011). The SEC insists this fact remains an issue by misconstruing

8

Defendants' reliance-on-auditors defense. *See* Opp. at 12. Defendants intend to offer evidence of their reliance on the auditors because it is a "viable defense to scienter in securities fraud cases." *SEC v. Caserta*, 75 F. Supp. 2d 79, 94-95 (E.D.N.Y. 1999); *see also SEC v. Goldsworthy*, 2008 WL 8901272, at *4-5 (D. Mass. June 11, 2008) ("Good faith reliance on the advice of a professional has been recognized as a means of negating evidence that a defendant acted with the intent necessary to establish liability under the securities laws.").

Contrary to the SEC's submission, Defendants are not denying that they were responsible for preparing GAAP-compliant financial statements; in fact, they have acknowledged this. *See* Ex. 25 at 149:3-22. To be sure, Defendants did, consistent with the relevant standards, retain professionals to help them fulfill that responsibility. *See* Ex. 27 at .03. Those professionals provided SBB management with enhanced confidence that the funds' financial statements were fairly presented in accordance with GAAP. *See* Ex. 28 at .04 (purpose of audit is to "provide financial statement users with an opinion by the auditor on whether the financial statements are presented fairly, in all material respects, in accordance with [GAAP], which enhances the degree of confidence that intended users can place in the financial statements").

Mintzer's opinion that SBB is responsible for preparing the funds' financial statements does not speak to Defendants' reliance-on-auditors defense. The SEC claims the opinion will help a jury understand that "SBB's reliance arguments are inconsistent with the GAAS principles" that govern the auditor-client relationship. Opp. at 13. But the jury does not need "help" understanding the uncontroversial fact that SBB management was responsible for the funds' financial statements.[4] *See* Mot. at 14-15.

---

[4] To make matters worse, both Mintzer and SEC expert Hickey offer opinions on management's relationship with its auditor. While both should be excluded for the reasons Defendants provide (*see* Dkt. 215 at 20), the SEC at a minimum should be prohibited from offering cumulative testimony. *See Andersen v. City of*

9

### E. Mintzer's Opinion About GAAS Audits Lacks Any Support and Is Inadmissible

Mintzer's opinion that unqualified audit opinions do not guarantee an audit was GAAS-compliant is unsupported and thus inadmissible. *See* Mot. at 15. The SEC calls this opinion an "unremarkable position" relating to a "factual matter" meant to support Mintzer's "opinion that SBB management was responsible for preparing financial statements that complied with GAAP." Opp. at 14. If that is the case, then the opinion should be excluded for the same reason as Mintzer's management-responsibility opinion. *See supra* pp. 8-9. Either way, the opinion is unsubstantiated and meaningless. *See* Mot. at 15.

## III. MINTZER'S SECOND REPORT

### A. Mintzer's Opinions in His Second Report Are Untimely and Improper

Mintzer's opinions on materiality in his Second Report are untimely. *See* Mot. at 16-18. The SEC offered an initial expert—Hickey—on materiality. Then it reviewed Defendants' rebuttal report from Gene Deetz, and apparently realized (correctly) that Hickey's opinion was fatally flawed. So it then disclosed Mintzer as a new expert on materiality. That the SEC regretted its initial designation of Hickey is not enough to flout both the Magistrate Judge's Order and the Federal Rules.

Insisting that Mintzer's rebuttal is proper, the SEC urges the Court to review the briefs before the Magistrate Judge on the SEC's motion for leave to submit a second Mintzer report. Opp. at 15. Defendants agree, for those briefs reveal that the SEC argued that "[a]fter reports are submitted, the Court can decide *whether those reports meet the applicable criteria for rebuttal (or whether they should be stricken)*." Dkt. 196 at 2 (emphasis added). The Magistrate Judge granted

---

*Chicago*, 454 F. Supp. 3d 740, 746 (N.D. Ill. 2020) ("That [expert's] testimony would be cumulative is an additional basis for excluding it.") (citing Fed. R. Evid. 403).

10

the SEC's request for leave, so it is now appropriate for the Court to decide whether Mintzer's "rebuttal" report "meet[s] the applicable criteria for rebuttal." *Id.*; *see* Dkt. 197. It does not. *See* Mot. at 16-18.

"Testimony offered only as additional support to an argument made in a case in chief, if not offered to contradict, impeach or defuse the impact of the evidence offered by an adverse party, is improper on rebuttal." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008). "Plaintiffs do not have free reign to produce a rebuttal report containing additional analyses on the basis that this is the same subject matter of the initial reports." *Bowman v. IBM Corp.*, 2013 WL 1857192, at *6-7 (S.D. Ind. May 2, 2013) (holding that expert reply reports "contained new analyses and arguments and constituted improper rebuttal"). The Magistrate Judge's Order likewise confined the scope of Mintzer's second report, ordering that it "shall be limited to responding to any additional opinions offered by Defendants' experts." Dkt. 197 at 2.

Mintzer's Second Report exceeds this "limited" scope because it includes new, affirmative analyses of materiality to support the SEC's case-in-chief. The SEC asked Mintzer to "calculate the respective misstatements of the In-Scope Funds' reported investments and related accounts" under four assumptions, and he in turn performed calculations and concluded that "the misstatements in the Funds' Financial Statements are material under GAAP" under each of the four assumptions. Second Rep. at p. 14-16. These opinions provide additional analyses to buttress the materiality opinions in Hickey's report—that "SBB's failures are the type of failures that would be materially important to reasonable investors." Ex. 1 ¶ 63. Such affirmative materiality opinions thus belonged in an opening report. *See Gravitt v. Mentor Worldwide LLC*, 342 F.R.D. 130, 135 (N.D. Ill. 2022) (striking rebuttal expert report on matters that went directly to causation, an element of plaintiff's claim, which "belonged in the opening expert reports"). The SEC cannot

11

avoid this conclusion by contending that the Magistrate Judge preemptively blessed Mintzer's second report as proper rebuttal.

### B. Mintzer's Materiality Analyses Will Not Help the Jury

Mintzer's materiality opinions should also be excluded because they are unmoored from the facts of this case and therefore unhelpful to the jury. The SEC spends much time quarreling with Deetz's methodology, such as Deetz's use of a band of estimation uncertainty in assessing a reasonable range of fair values to be used when determining the amount of misstatement (if any), rather than supporting Mintzer's approach. *See* Opp. at 17-18. Contrary to the SEC's assertion, Defendants do not contend that an auditor *must* use a range or "band of uncertainty" in all circumstances. *Id.* at 18. Rather, a range is appropriate when, as here, the facts do not support the use of a point estimate as the comparator to SBB's recorded structured note fair values. *See infra* at 12-13. Mintzer took the opposite approach, performing his four materiality calculations using a single point estimate for comparison to the fair value of the SBB funds' structured notes. This is inappropriate and would be unhelpful to the jury because, as explained below, there is a wide range of observable fair values for exotic derivatives like SBB's structured notes.

Relevant accounting guidance allows for the development of a reasonable range of fair values when the audit evidence indicates that such a range exists. *See* Ex. 29 at .A93-A.97; .A122. This guidance also allows for the quantification (*i.e.*, measurement) of misstatements as the difference between the nearest point in the range and the recorded values that fall outside the range. *See id.* at .A122. The audit evidence shows that because there is no single fair value for the SBB funds' structured notes, as the notes are not capable of precise measurement, a range is appropriate. Such evidence includes: (i) observable fair value data from Markit compared to the sales prices close to maturity of 2.8% compared to longer life notes in Funds; (ii) fair value differences between

12

the estimates from Markit, McCann, and Sen; (iii) the characteristics of the notes; (iv) Deetz's experience with these and similar securities; and (v) counterparty bank disclosures.[5]

Even SEC expert Craig McCann agreed there is a range of fair value prices, not point estimates. Ex. 6 ¶ 18 (recognizing that "different option pricing models, and different model inputs, result in slightly different values"); Ex. 12 at 106:5-18. Moreover, the SEC ignores Defendants' argument that Mintzer recognized that the fair value of SBB's structured notes was an accounting estimate, and that as an auditor, he would develop a "range of values or potential outcomes" to assess a point estimate by management. Mintzer Tr. 394:2-12, 408:3-409:11; *see also* Mot. at 18. Mintzer does not explain his rationale for rejecting the use of a range. Nor does he provide support for whether it is appropriate to use a point estimate as the comparator for the SBB funds' structured notes to determine misstatements. Given the features of the structured notes (like their long-datedness and different tax treatment versus options), RSM's audit and restatement work, and the range of fair value estimates available in the record in this case, there is no reason why Mintzer could not develop a range of fair values consistent with AU-C 540A.

Finally, the SEC's assertion that SAB 99 indicates that estimation uncertainty is a *qualitative* factor is a red herring. *See* Opp. at 18. SAB 99 governs whether a misstatement is *material*; it does not guide a calculation on the size of a misstatement. AU-C 540A (at .18 and .A122), by contrast, is the appropriate guidance on evaluating the size of a misstatement.

Mintzer has provided no justification for his use of point estimates, rather than a range of fair values, in his new materiality calculations. His materiality opinions should be excluded on this basis as well. *See* Mot. at 18-19.

---

[5] The SEC is also wrong to suggest that Deetz "never developed or provided" audit evidence to support the use of a range. *See* Opp. at 18 n.7. Deetz addressed this audit evidence expressly in his report. *See* Ex. 4 ¶¶ 41-46, 113, 119-20, 128-34, Observable Data Exs.

### C. Mintzer's Critique of Deetz's Materiality Assessment Is Unreliable

Finally, Mintzer's first opinion in his Second Report—that Deetz's materiality opinion is not based on a reasonable and appropriate materiality analysis—is unreliable and should be excluded. Mot. at 19-20. In its response, the SEC defends Mintzer's criticisms of Deetz on only two points—Deetz's alleged failure to consider model bias and management intent.[6] *See* Opp. at 19-20. However, Mintzer's criticisms are not grounded in the evidence, rendering this opinion unreliable.

Mintzer contended that "Mr. Deetz['s] assessment of materiality is compromised by his failure to properly consider other relevant qualitative factors," including whether the implied misstatements "indicate the motivation of management (for example, an indication of a possible pattern of bias by management when developing and accumulating accounting estimates)." Second Rep. ¶ 47. Yet Deetz expressly considers the "ASC 820 process failures" that Hickey alleged. *See, e.g.*, Ex 4. at POLY.1 Ex. 9 at 3 ("Hickey alleges that SBB failed to consider and apply ASC 820 in the valuation of its structured notes, in large part due to criticisms of SBB's Level 3 inputs. I considered Hickey's allegations with respect to these alleged process failures."). Hickey opined that SBB's management did not intend to value the SBB Funds in compliance with ASC 820, *see* Ex. 1 ¶ 65, and Deetz rebutted that opinion by documenting his consideration. *See, e.g.*, Ex. 4 at POLY.1 Ex. 9 at 3, CPS.I Ex. 13 at 3, INV.III Ex. 13 at 3.

Further, the SEC admits that Deetz testified that he did, in fact, consider bias and management intent in his materiality analysis. *See* Opp. at 20; *see also* Ex. 26 at 233:1-4 (testifying

---

[6] The SEC does not respond to Defendants' arguments challenging Mintzer's assertions that Deetz failed to consider (1) that quantitively small errors can be material and (2) evidence that RSM identified in its resignation letter, so the SEC has waived any opposition on those issues. *See* Mot. at 19-20; Opp. at 19-20; *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver.").

14

"I certainly considered" bias); *id.* 267:14-18 ("I considered bias"); *id.* at 242:10-20 ("Q. You're aware, for example, that there's testimony from Sandeep Navalgund that SBB did not consider GAAP when creating the model, correct? … THE WITNESS: I'm aware of that testimony. BY MR. LEIMAN: Q. And is that included in your discussion of qualitative factors for Polysight 1? … THE WITNESS: I considered it, but it is not listed in these factors."); *id.* at 243:2-5 ("I've read the entire record listed in my docs considered, and I considered all of those materials in forming my opinions."). Mintzer's opinion that Deetz "fail[ed] to properly consider" these two factors is factually inaccurate.

The SEC asks the Court to "allow Mintzer to testify about what GAAP and GAAS actually require in this regard," *i.e.*, on model bias and management intent factors. Opp. at 20. But Deetz already acknowledged that both are relevant to analyzing materiality under SAB 99. *See* Ex. 26 at 239:15-17 ("You should consider management intent. It is one of the nine factors."); *id.* at 268:17-23 (confirming Deetz "considered" model bias as a factor). Mintzer's assertion that Deetz does not acknowledge the relevance of bias and management intent is likewise inaccurate.

In the end, Mintzer's critique boils down to faulting Deetz for not explicitly referring to "model bias" or "management intent" in his report. The SEC does not provide support that this is a valid criticism. In any event, Deetz in fact did consider those two factors, so Mintzer's critiques are unreliable, unhelpful, and should be excluded. *See Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018) (testimony that does "not fit the facts of the case" is "not likely to assist the trier of fact to understand the evidence or to determine a fact in issue").

### IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court strike and/or exclude the portions of Mintzer's opinions identified in Defendants' Motion.

| | |
|---|---|
| Dated: May 28, 2024 | Respectfully submitted, |

By: /s/ *John J. Sikora, Jr.*
John J. Sikora, Jr. (6217330)
Heather A. Waller (6302537)
Marissa K. Perry (6337268)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel. (312) 876-7700
john.sikora@lw.com
heather.waller@lw.com
marissa.perry@lw.com

Howard J. Rosenburg (6256596)
KOPECKY SCHUMACHER ROSENBURG LLC
120 N. LaSalle, Street, Suite 2000
Chicago, IL 60602
Tel. (312) 380-6631
hrosenburg@ksrlaw.com

H. Gregory Baker (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel. (212) 336-2871
hbaker@pbwt.com

*Attorneys for Defendants*
*SBB Research Group, LLC, Samuel Barnett, and Matthew Aven*