**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:19-cv-06473 |
| v. | The Honorable Sharon Johnson Coleman, United States District Judge |
| SBB RESEARCH GROUP, LLC, SAMUEL B. BARNETT, and MATTHEW LAWRENCE AVEN, | |
| Defendants. | The Honorable Keri L. Holleb Hotaling, United States Magistrate Judge |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. CRAIG MCCANN**

**TABLE OF CONTENTS**

                                                         **Page**

INTRODUCTION ............................................................................................................................1

ARGUMENT ...................................................................................................................................3

I.     MCCANN'S OPINION THAT SBB OVERPRICED ITS STRUCTURED NOTE VALUES IS UNRELIABLE ................................................................................................ 3

        A.     The "methodolog[ies]" cited by the SEC are irrelevant to whether SBB's values were "over-priced." ..................................................................................4
        B.     McCann's purported "methodology" for analyzing the impact of SBB's model on its values is both irrelevant and unreliable. ..............................................5
        C.     The SEC ignores case law supporting the importance of statistical analysis. ..................................................................................................................6

II.    MCCANN'S OPINION THAT SBB OVERPRICED ITS STRUCTURED NOTES BY A STATISTICALLY SIGNIFICANT AMOUNT IS UNTIMELY AND UNRELIABLE ............................................................................................................... 8

III.   MCCANN IS NOT QUALIFIED TO OPINE ON THE 5% BAND ................................ 10

IV.   MCCANN'S CRITICISMS OF SEN'S VALUATION MODEL ARE UNTIMELY ................................................................................................................... 11

CONCLUSION ..............................................................................................................................14

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Antonick v. Electronic Arts Inc.*,
   2014 WL 245018 (N.D. Cal. Jan. 22, 2014) ............................................................................14

*Ciomber v. Coop. Plus, Inc.*,
   527 F.3d 635 (7th Cir. 2008) ..............................................................................................14, 15

*Connearney v. Main Line Hosps., Inc.*,
   No. 15-02730, 2016 WL 6569292 (E.D. Pa. Nov. 4, 2016) ......................................................7

*C.W. ex rel. Wood v. Textron, Inc.*,
   807 F.3d 827 (7th Cir. 2015) .....................................................................................................4

*Dixon v. Brown*,
   No. 3:16-cv-01222-GCS, 2021 WL 2099166 (S.D. Ill. Mar. 30, 2021) ..................................15

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ...............................................................................................................4, 7

*In Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*,
   769 F. Supp. 2d 761 (D. Del. 2011) ........................................................................................14

*In re Sulfuric Acid Antitrust Litigation*,
   235 F.R.D. 646 (N.D. Ill. 2006) ..............................................................................................13

*Maloney v. Microsoft Corp.*,
   No. 09–2047, 2012 WL 715856 (D.N.J. Mar. 5, 2012) ............................................................8

*Manpower, Inc. v. Ins. Co. of Pa.*,
   732 F.3d 796 (7th Cir. 2013) ...........................................................................................3, 6, 8

*Noffsinger v. Valspar Corp.*,
   2013 WL 12340338 (N.D. Ill. Jan. 4, 2013) .....................................................................13, 14

*Searcy v. United States*,
   2020 WL 4187392 (S.D. Fla. July 21, 2020) ..........................................................................14

*SEC v. Lek Sec. Corp.*,
   370 F. Supp. 3d 384 (S.D.N.Y. 2019) .......................................................................................7

*Simpson v. Dart*,
   No. 18-cv-0553, 2021 WL 1906469 (N.D. Ill. May 12, 2021) ..................................................8

*Smith v. Ford Motor Co.*,
  215 F.3d 713 (7th Cir. 2000) ...................................................................................................4

*Stollings v. Ryobi Techs., Inc.*,
  725 F.3d 753 (7th Cir. 2013) ...................................................................................................4

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(a)(2)(B)(i) ........................................................................................................15

Gregory P. Joseph, *Expert Approaches*,
  28 LITIGATION 20-25 (2002) .........................................................................................13, 14

Rule 26(a) ......................................................................................................................................14

Rule 26(a)(2) .................................................................................................................................14

Rule 702 ..........................................................................................................................................8

Defendants SBB Research Group, LLC, Samuel B. Barnett, and Matthew Lawrence Aven (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of Defendants' motion to limit testimony of the SEC's expert, Dr. Craig McCann.

## INTRODUCTION

Defendants moved to preclude McCann from offering opinions that (1) SBB overpriced its funds' notes; (2) SBB overpriced its funds' notes by a statistically significant amount; (3) Defendants' expert Gene Deetz arbitrarily established materiality thresholds; and (4) Defendants' expert Dr. Arun Sen's model was flawed, *an opinion offered for the first time at deposition*. The SEC opposes Defendants' motion, but none of its arguments hold water.

*First*, a core issue in this case is whether SBB valuations for its funds' notes fell outside of a reasonable range of fair value estimates. Neither the SEC's nor Defendants' experts dispute that there is a reasonable range of fair value estimates for a given note at a given point in time. But McCann's opinion that SBB's funds' notes were "over-priced"—which implies that SBB's valuations were outside of a reasonable range of valuation estimates—is not based on any reliable method. Rather, McCann eyeballs scatter plot graphs and observes that SBB's values are often—but not always—higher than some third-party values. But because there is a reasonable range of values, the finding that SBB's values are often higher than some other values is meaningless without further analysis into whether that difference is reasonable. The SEC argues that McCann "detailed the methodology he used" to support his conclusion, but McCann's methodology says nothing about whether SBB's valuations are reasonable. Allowing a jury to hear McCann's unreliable opinion that SBB's valuations were "over-priced" would unduly prejudice Defendants.

*Second*, having failed to offer a reliable opinion that Defendants valuations were overpriced, Defendants seek to prevent McCann from curing that deficiency, by belatedly opining

that SBB's valuations were overpriced by a statistically significant amount. Any such opinion offered by McCann should be barred because it (1) was not disclosed in either of McCann's reports, (2) is outside the scope of what he was permitted to say in his rebuttal report, and (3) is not based on any evidence in the record. The SEC distorts Defendants' motion into a request to preclude McCann from opining about the statistical significance of the difference between SBB values and bank values, which is the subject of an opinion offered by Defendants' expert, Sen. But Defendants make no such request:[1] Defendants merely ask to preclude McCann from using his comparison between SBB and *bank values* to jump to a generalized conclusion about a comparison between SBB's valuations and *all reasonable values*.

*Third*, Defendants request that the Court preclude McCann from opining on Deetz's opinion concerning materiality thresholds, which is grounded in accounting and audit standards, and is based on Deetz's education, training, and experience as a CPA, former auditor, and accounting expert. Conceding McCann's lack of expertise in accounting, the SEC argues that McCann offers his opinion about Deetz's analysis "from the valuation perspective . . . based on his 30+ years of asset valuation experience[.]" Dkt. 216 ("Opp.") at 16. But McCann's opinion is not so limited. And to the extent McCann opines as to whether there is a basis in valuation theory for Deetz's materiality analysis, McCann's opinion should be excluded as irrelevant, because Deetz does not address valuation theory or perform independent valuations of SBB's structured notes.

*Finally*, the Court should preclude McCann from offering criticisms of Sen's valuation model that he raised for the first time at his deposition. The Magistrate Judge granted the SEC leave to submit rebuttal reports over Defendants' objections and McCann chose to focus his

---

[1] Defendants reserve the right to challenge McCann's opinion on other grounds in the future.

2

rebuttal report on only one component of Sen's report: Sen's regression analysis. McCann then blindsided Defendants by offering previously undisclosed opinions about Sen's model during his deposition. Contrary to the SEC's characterization, those opinions were affirmatively raised by McCann in response to questioning about the opinions he offered or intended to provide. Thus, McCann's undisclosed criticisms of Sen's valuation model should be excluded.

## ARGUMENT

### I. McCann's Opinion that SBB Overpriced its Structured Note Values is Unreliable

McCann opines that "SBB over-priced most of its structured notes," Ex. 2 ("McCann") ¶ 117, primarily based on his observation of scatter plots that compare SBB's values with third-party values and McCann's values. Ex. 12 ("McCann Tr.") 47:14–22. The parties agree that there is a reasonable range of values for SBB's funds' notes. *Id*. 106:5–9. Thus, to be "over-priced," SBB's values must be not just high, but *unreasonably* high. *See id*. 48:3–5 ("I think the question is whether it's reasonable that they're higher . . . . There is no doubt they're higher."). But while McCann purportedly shows that SBB's values are higher than some third-party values and McCann's values, he fails to employ any reliable methodology to show that they were *unreasonably higher* – *i.e.*, outside a reasonable range of fair values. As such, McCann's opinion should be disqualified.

Reliability "is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013). "But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 832 (7th Cir. 2015) (quoting *Joiner*, 522 U.S. at 146). "If [a] judge believes expert testimony is too

3

complex for the jury to appreciate important issues of reliability, such that admitting the testimony would prejudice the opposing party, the judge remains free to exclude such evidence . . ." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013).

> A. The "methodolog[ies]" cited by the SEC are irrelevant to whether SBB's values were "over-priced."

The SEC argues that there is a "clear link between the facts and data McCann considered and his opinion" and enumerates the "methodology" McCann purportedly "sets forth" in his opening report. Opp. at 7 (emphasis omitted). But the "methodology" the SEC cited is entirely irrelevant. Background information on structured notes and valuation models is not a "methodology" and certainly not one that evaluates whether SBB's funds' notes were "over-priced." *See id*. at 7-8 (arguing that McCann's "methodology" includes his explanation of (1) "the evolution of the market for structured notes," (2) "how different types of structured notes are 'structured'" and "their pay-off features," and (3) "the[] 'standard methodologies' and valuation models").

The SEC also attempts to buttress its argument by pointing out that McCann's opinions are "based on over 30 years of structured product valuation expertise[.]" *Id*. at 7. But experience is not relevant to the question of reliability. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("Even a supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method.") (internal citation and quotation marks omitted).

Further, McCann's explanation of how he constructed his own valuation model is irrelevant. *See* Opp. at 9 (arguing that McCann's methodology includes his "detail[ing] his Monte-Carlo simulation" and "the industry standard inputs he used"). This testimony only shows how McCann constructed his model; it says nothing about the reasonable range of values, let alone

4

whether SBB's values fall within that range. McCann's "discuss[ion of] the pay-off features associated with SBB's structured notes" and "opin[ion] that the model inputs were inconsistent with" standard methodologies are also irrelevant. *Id*. at 8. Even if SBB's model contained deficient features, such features can have positive, negative, or neutral impacts on values. And even where there is a positive impact, it is not always an unreasonable one. These so-called methodologies are irrelevant to the issue of whether SBB's values were "over-priced."

> B. *McCann's purported "methodology" for analyzing the impact of SBB's model on its values is both irrelevant and unreliable.*

Only two of the "methodologies" the SEC identified purport to analyze SBB's values. *First*, the SEC argues that McCann "analy[zed] SBB's custom inputs (and the formulaic impact those inputs would have)." *Id*. But this is just a fancy way of saying that McCann reviewed SBB's inputs, determined they were deficient, proposed his own model, and observed the differences. SBB's inputs are irrelevant here; the question is whether the *outputs* fall within a reasonable range. Nothing in McCann's analysis of SBB's inputs and their "formulaic impacts" refutes Defendants' contention that McCann failed to use a reliable methodology to conduct this analysis.

*Second*, the SEC argues that McCann "back-test[ed]" SBB's valuations. *Id*. To "back-test," McCann took *some* (but not all) of the features of SBB's model and used them to value *some* options[2] (but not the complete notes at issue at this case) and compared those results to observed market prices and values McCann calculated. The "back-testing" does not involve SBB's values or even an attempt to recreate them. And despite McCann's broad conclusion, he only back-tested a handful of options. But even putting aside these issues, it still suffers from the same fatal flaw as

---

[2] The option component accounts for a small portion of the value of SBB's funds' notes. *See* Ex. 6 ¶ 53 ("[T]he average counterparty valuation of the option component is $12.30, whereas the average counterparty valuation of the entire note is $110.04.").

5

McCann's scatter plot comparison. McCann merely observes that SBB's "values"[3] are often higher than other values. He does not try to assess the significance of the difference between SBB's values and other values and does not try to construct a range of acceptable values.

      *C.*      *The SEC ignores case law supporting the importance of statistical analysis.*

Defendants' ultimate issue with McCann's opinion is that it is based only on the observation that SBB's values are often higher than other values—an observation that frankly does not require any specialized expertise—and is not based on a reliable methodology such as a regression analysis or other statistical analysis.[4]

The SEC accuses Defendants of cherry-picking McCann's testimony to support this criticism, but McCann's testimony is crystal clear:

> Q[.] So your opinion concerning the extent to which SBB's funds were allegedly overvalued is primarily based on the scatter plot graphs that you include in your report?
> A[.] Yes, and **the data that was produced along with the report that shows the amount by which each note on each month end is valued almost universally in excess of the account statement values, the Markit values, and [McCann's] values.**

McCann Tr. 47:14–22 (emphasis added). The SEC argues that this quote somehow shows that McCann's opinion was not primarily based on the scatter plot graphs and instead "shows that [McCann's] opinions were based on the data and methodology set forth in his Initial Report." Opp. at 10. But far from that, the quote confirms that McCann's conclusion was based merely on the observation of higher values. The bolded portion (which the SEC accuses Defendants of "cherry-picking" out of its initial quote) is simply a reference to the data that is displayed in the scatter plot

---

[3] These are not SBB's actual values, but rather values that McCann calculated based on other financial products with features distinct from those of the complex derivatives at issue in this case.

[4] Regression analysis, is "a proven statistical methodology used in a wide variety of contexts" that compares "an outcome" with "one or more factors . . . that may be related to that outcome." *Manpower, Inc.*, 732 F.3d at 808. In this case, Sen's regression analysis compares SBB's values with bank values and finds that there is no significant difference between the two sets of values. *See* Ex. 5 ("Sen") ¶¶ 116–117.

6

graphs. It is the same information—just presented in a different format—and suffers from the same pitfall: there is no analysis to assess whether the statistical difference between SBB values and other values is meaningful.

Tellingly, the SEC completely ignores the array of cases Defendants cited that support the proposition that merely observing higher values is an insufficient methodology, but rather, an analysis must be performed to assess whether those higher values are due to other factors such as uncertainty in the data or random chance. *See, e.g., Joiner*, 522 U.S. at 137, 145 (affirming exclusion of plaintiff's experts' opinion based, in part, on a study that "found that the incidence of lung cancer deaths among [plant] workers was somewhat higher than would ordinarily be expected" but not statistically significant); *Connearney v. Main Line Hosps., Inc.*, No. 15-02730, 2016 WL 6569292, at *4-5 (E.D. Pa. Nov. 4, 2016) (expert's conclusion "that Defendants engaged in age discrimination" based on a "mere[] compar[ison]" of "the raw percentages" of terminated employees under 40 and over 40 inadmissible because he "did not conduct a statistical significance test, so the disparity in the[] numbers could be due to random chance"); *SEC v. Lek Sec. Corp.*, 370 F. Supp. 3d 384, 417 (S.D.N.Y. 2019), *on reconsideration in part*, No. 17cv1789 (DLC), 2019 WL 2114067 (S.D.N.Y. May 8, 2019) (striking proposed testimony where the expert "conduct[ed] no empirical or statistical analysis"); *Maloney v. Microsoft Corp.*, No. 09–2047, 2012 WL 715856, at *4 (D.N.J. Mar. 5, 2012) (questioning admissibility of expert's "comparison" where the expert "conducted no statistical analysis" making it "impossible to tell . . . whether any of the numbers put forward are statistically significant").

Instead, the SEC attempts to couch Defendants' challenge as a "disagree[ment] with the conclusion[.]" Opp. at 11. Not at all. Defendants' disagreement is with the unsupported methodology by which the conclusion was made. Instead of employing "a proven statistical methodology used in a wide variety of contexts" such as a regression analysis, *Manpower*, 732

7

F.3d at 808, McCann offers an opinion "connected to existing data only by the *ipse dixit* of the expert, that is properly excluded under Rule 702." *Simpson v. Dart*, No. 18-cv-0553, 2021 WL 1906469, at *2 (N.D. Ill. May 12, 2021) (internal citations and quotation marks omitted). This Court should strike his opinion that SBB's note valuations were "over-priced."

## II. McCann's Opinion that SBB Overpriced Its Structured Notes By A Statistically Significant Amount is Untimely and Unreliable

As explained above, this Court should exclude McCann's opening report opinion that SBB's values were "over-priced" because the opinion is not based on reliable methodology. But even if the Court permits McCann to opine that SBB's values were "over-priced," McCann should be prohibited from opining that SBB's values were generally overpriced by a statistically significant amount because such an opinion was never offered in either of McCann's reports,[5] is outside of the scope of the rebuttal report,[6] and is not supported by any evidence in the record.

McCann testified at his deposition that he intends to offer this opinion:

> Q[.] Asking this a slightly different way, are you offering an opinion in this case as to whether SBB materially overstated the value of its structured notes?
>
> A[.] It sounds like maybe a legal conclusion. I think the way I would phrase that is **I am certainly offering the opinion that they overstated the value of the notes by a statistically significant amount** and someone else will decide whether that's a material fact or not.

McCann Tr. 51:23–52:7.

---

[5] McCann only considered a statistical analysis of the note values as a rebuttal to the bank value analysis introduced in the Sen Report. *See* Opp. at 14 ("Nowhere in McCann's Initial Report or Rebuttal Report, or in his deposition, did McCann offer an opinion as to whether SBB's values were overpriced by a 'statistically significant amount' compared to any other third parties' valuations aside from the Bank Values.").

[6] As relevant here, McCann was only permitted to rebut Sen's regression analysis, which merely compared SBB's values to *bank values*.

8

The SEC characterizes Defendants' arguments as a request to limit McCann's ability to opine that there is a statistically significant difference between SBB's values and bank values. *See* Opp. at 12 ("Defendants also argue that McCann should be barred from testifying that SBB's values were greater than the Bank Values by a statistically significant amount . . . ."). That is false. Defendants do not challenge McCann's ability to offer that opinion on *Daubert* grounds.[7] Instead, Defendants challenge McCann's expansion of the scope of his opinion at deposition to opine that SBB's values were generally *overpriced* by a statistically significant amount. If this Court permits McCann to opine that SBB's values were overpriced, any opinion regarding statistical significance must be restricted to the comparison of SBB's values *to bank values*.

The SEC seemingly agrees that McCann's opinion regarding statistical significance should be limited to the comparison between SBB's values and bank values.

> Nowhere in McCann's Initial Report or Rebuttal Report, or in his deposition, did McCann offer an opinion as to whether SBB's values were overpriced by a 'statistically significant amount' compared to any other third parties' valuations aside from the Bank Values.

*Id*. at 14.[8] But then, puzzlingly, the SEC argues that "Defendants cannot credibly fault McCann for not rebutting an analysis that Sen did not perform," and that Sen's exclusion from his report of an analysis comparing Markit values to SBB values prevented McCann from conducting a similar analysis. Opp. at 15. To be clear: this discussion is about McCann's *rebuttal* report. Sen was not required to offer opinions for the sake of providing McCann with better opportunities to bolster his opinion in rebuttal, nor was he required to disclose any side analyses he conducted. Moreover, the SEC's argument that Defendants attempt to "relitigate an argument that the Magistrate Judge

---

[7] Defendants reserve the right to challenge McCann's right to offer this opinion at trial on other grounds.

[8] Defendants disagree with the SEC's characterization of McCann's deposition testimony. McCann explicitly opined that he was "certainly offering the opinion that [SBB] overstated the value of the notes by a statistically significant amount." McCann Tr. 52:3–5. However, it appears that the SEC agrees that McCann cannot opine outside that context.

9

already has rejected," Opp. at 2, is disingenuous and inconsistent with the SEC's own motion for leave to file a rebuttal report. *See* Dkt 192 at 2 (arguing that "[t]he SEC's rebuttal reports should be allowed and issues of admissibility should be resolved by the District Court."). As such, the Court should preclude McCann from offering the general opinion that SBB's values were overpriced by a statistically significant amount.

### III.   McCann is Not Qualified to Opine on the 5% Band

In their opening brief, Defendants argued that McCann, who conceded that he was not an expert on accounting standards, had no basis to opine on Deetz's materiality analysis, which was an application of accounting standards. In its opposition, the SEC does not contest that McCann is not an accounting expert, and indeed declares that "the SEC has no intent of asking McCann to opine on accounting principles." *Id*. at 17. Instead, the SEC claims that it could not tell the basis of the 5% fair value band in Deetz's materiality analysis, and therefore had McCann evaluate the 5% band from the "asset valuation[s] perspective." *Id*. at 16. But the 5% band, as Deetz's report makes clear, is an application of accounting and audit guidance, not an independent valuation analysis. And McCann's opinion goes well beyond opining that the 5% band is not supported "in structured products pricing literature or industry standard option valuation practice," *id*., to generally conclude that Deetz's 5% band is "arbitrar[y]" and has "no basis." Ex. 6 ¶¶ 58–60.

As Defendants explained in their opening brief, Dkt. 214 ("Mot."), and have further shown in their opposition to the SEC's motion to exclude Deetz's materiality opinions, Dkt. 220, the 5% band Deetz used was based on a methodology that applied accounting and audit guidance. Unlike McCann and Sen, Deetz did not perform an independent valuation of SBB's notes. Instead, relying on AU-C 540A and his extensive accounting and auditing experience, Deetz constructed the 5% band based on (1) the absence of an active market in the structured notes, (2) counterparty bank disclosures indicating a "wide range of uncertainty" for the structured notes, and (3) observable

10

fair value data for the notes based on sale prices and the valuations of Markit, McCann, and Sen. *See* Ex. 4 ("Deetz") ¶¶ 38–46, 131–33; Ex. 26 ("Deetz Tr"). 107:10–108:23, 132:19–25, 135:5–9, 141:13–20.

The SEC's opposition thus concedes the central points supporting Defendants' arguments. If McCann is not qualified to opine on accounting principles, as the SEC does not contest, he cannot opine on Deetz's application of accounting principles to derive the 5% fair value band. If all McCann is doing is stating that "structured products pricing literature" and "industry standard option valuation practice" does not support the 5% band, then his opinion is irrelevant. Deetz does not rely on those sources for the 5% band, and given McCann's uncontested lack of accounting expertise, he has no basis to opine that Deetz should have considered them. McCann's opinions about Deetz's materiality analysis should be excluded.

## IV.     McCann's Criticisms of Sen's Valuation Model are Untimely

As Defendants explained in their opening brief, at deposition, McCann criticized Sen's valuation model for several purported mathematical errors, and gave estimates of the impact of those purported errors on Sen's valuations.[9] Mot. at 15–16. None of these criticisms or estimates appeared in McCann's rebuttal report, which focused exclusively on Sen's regression model, not his valuation model. The SEC concedes that "some" of McCann's criticisms of Sen's valuation model were not raised in McCann's rebuttal report—and, notwithstanding its caveated language, fails to identify any that *were* raised in that report. Opp. at 18. The SEC also does not dispute the general proposition that an expert opinion disclosed for the first time at deposition should be

---

[9] McCann's previously undisclosed opinions include criticisms of Sen's use of a Heston model to value SBB's funds' notes, McCann Tr. 43:8–44:12, Sen's choice of correlation, *id*. 45:11–18, Sen's construction of his correlation matrix, *id*. 44:22–45:6, and Sen's simulation methodology, *id*. 51:17–22. Further, McCann shared the results of a previously-undisclosed analysis. *See id*. 45:19–24 ("If you take his Heston model, correct it for the literature and apply the correlation coefficient that we use, . . ., you get our values plus .40 cents or something on $110. So it drops the difference from $2.86 to .48 cents.").

11

excluded. Instead, the SEC claims that McCann's opinions about Sen's valuation model were elicited by Defendants' counsel's "catch-all" questions, which, the SEC argues, bars Defendants from arguing for their preclusion.

The SEC's characterization of what happened at McCann's deposition is highly misleading. The SEC quotes five questions Defendants' counsel asked at the deposition, suggesting (without quite saying) that McCann only disclosed these new opinions in response to those questions. But, in fact, McCann disclosed his criticisms of Sen's valuation model well before counsel asked ***any*** of the questions the SEC quotes. Defendants' counsel simply asked McCann whether his reports "fully and accurately represent [his] opinions that [he is] offering in this matter," a standard deposition question that did not encompass any unoffered opinions McCann might have. McCann Tr. 29:16–18. McCann gave a lengthy answer that criticized Sen's valuation model opinions, saying:

> And so the first two segments in Dr. Sen's report that the Heston model is demonstrably superior to the Black-Scholes model and that valuations using the Heston model rather than the Black-Scholes model generate values about 3 percent higher, that's his finding, and that around that higher Heston value there should be a confidence interval or a sort of range of reasonable values that he generates. He is wildly wrong on both of those things, but they're not central to his ultimate opinions, as I read his report, anyway. And so I focused on that third segment in my rebuttal report.

*Id*. 30:13–23. Counsel followed up, asking, "Are there any additional opinions that you intend to provide in this matter that you have not addressed to date in your expert reports?" *Id*. 31:5–7. McCann again noted his disagreements with Sen's valuation opinions, saying, "if Dr. Sen were to testify that his first two sections of assertions were correct and not recognize what I think are very serious problems in both of them, then I would be prepared to explain why he is wildly wrong in those two areas." *Id.* 31:8–12. In short, in response to questions probing whether McCann's reports disclosed all the opinions he was offering, McCann testified that they did not. While McCann

provided additional details about his previously-undisclosed opinions in response to further questioning, it was McCann and not Defendants' counsel who introduced these opinions into the deposition.

On these facts, the cases the SEC cites do not support its position. *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 646 (N.D. Ill. 2006), involved a damages expert who expressed tentative opinions about liability, not disclosed in the expert's report, in response to counsel's questioning about liability. *See id.* at 649–50.[10] In *Noffsinger v. Valspar Corp.*, 2013 WL 12340338 (N.D. Ill. Jan. 4, 2013), the court rejected movant's argument that the expert's testimony involved a "new opinion" at all, finding instead that it was "making explicit what was implicit in his report." *Id*. at *5. In *Searcy v. United States*, 2020 WL 4187392 (S.D. Fla. July 21, 2020), the court declined before trial to adjudicate whether particular expert testimony was sufficiently related to the opinions disclosed in the expert report, but provided guidance making clear that the scope of the expert's trial direct testimony would be limited to "testimony [that] directly relates to [the expert's] opinions . . . contained in his report"—notwithstanding movant's counsel's questioning about other topics at the expert's deposition. *Id*. at *5. *In Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 769 F. Supp. 2d 761 (D. Del. 2011), the court denied a motion to strike trial testimony where the expert discussed the opinion "thoroughly" at deposition in response to movant's counsel's effort to obtain impeachment testimony on the same topic. *Id*. at 772 n.13. In *Antonick v. Electronic Arts Inc.*, 2014 WL 245018 (N.D. Cal. Jan. 22, 2014), the court held that "the statements to which

---

[10] The SEC quotes at length an article quoted in this decision advising caution in deposing expert witnesses. *See* Gregory P. Joseph, *Expert Approaches*, 28 LITIGATION 20-25 (2002). This article's analysis appears to rest on the premise that "[i]f an expert volunteers new or different opinions, data, or exhibits in a deposition, that cures their omission from the expert's Rule 26(a) report." *Id*. at 21. That is not the law in the Seventh Circuit, as Defendants showed in their opening brief and as the SEC does not contest. *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony.")

13

[movant] objects were sufficiently disclosed in [the expert's] report or his deposition," *id*. at *3 n.3, but in the Seventh Circuit disclosure at an expert deposition does not suffice. *Ciomber*, 527 F.3d at 642 ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony.")

*None* of the SEC's cases involve facts analogous to those here, where McCann was simply asked about the opinions he was "offering in this matter" and "any additional opinions that [he] intended to provide in this matter," and he volunteered a line of criticism of Defendants' expert's valuation model that was not previously disclosed. McCann Tr. 29:16–31:18. And none support the SEC's audacious argument that counsel's later questions, *after* McCann affirmatively volunteered the undisclosed opinions, somehow cured the violation or waived Defendants' right to object. A party is required to disclose in an expert report "a complete statement of ***all opinions the witness will express*** and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). The law in the Seventh Circuit is clear that deposition testimony does not cure a deficient expert report. *Ciomber*, 527 F.3d at 642; *Dixon v. Brown*, No. 3:16-cv-01222-GCS, 2021 WL 2099166, at *1 (S.D. Ill. Mar. 30, 2021) (excluding undisclosed opinion where expert testified at deposition that "he planned on offering [the undisclosed opinion] at trial.") McCann's opinions concerning Sen's valuation model should be excluded.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to limit McCann's testimony.

14

Dated: May 28, 2024                                             Respectfully submitted,

By: /s/ *Howard J. Rosenburg*
Howard J. Rosenburg (6256596)
KOPECKY SCHUMACHER ROSENBURG LLC
120 N. LaSalle, Street, Suite 2000
Chicago, IL 60602
Tel. (312) 380-6631
hrosenburg@ksrlaw.com

By: /s/ *H. Gregory Baker*
H. Gregory Baker (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel. (212) 336-2871
hbaker@pbwt.com
*Counsel for Defendants*

By: /s/ *John J. Sikora, Jr.*
John J. Sikora, Jr. (6217330)
Heather A. Waller (6302537)
Marissa K. Perry (6337268)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel. (312) 876-7700
*Counsel for Defendants*

15