**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                     Plaintiff,<br><br>   v.<br><br>SBB RESEARCH GROUP, LLC,<br>SAMUEL B. BARNETT, and<br>MATTHEW LAWRENCE AVEN,<br><br>                     Defendants. | Case No. 1:19-cv-06473<br><br>The Honorable Sharon Johnson Coleman,<br>United States District Judge<br><br>The Honorable Keri L. Holleb Hotaling,<br>United States Magistrate Judge |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION**
**TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF PETER C. HICKEY**

**TABLE OF CONTENTS**

                                          **Page**

I. INTRODUCTION ...................................................................................................................1

II. HICKEY'S OPINIONS ABOUT SBB'S MODEL ARE INADMISSIBLE .......................2

    A. Hickey's Opinion on Market-Based Inputs Is Inadmissible ...................................2

    B. Hickey Cannot Support His Opinion That SBB Failed to Maximize the Use of Observable Inputs and Minimize the Use of Unobservable Inputs ..............6

    C. Hickey's Other Model Opinions Improperly Invade the Province of the Jury ..........................................................................................................................7

III. HICKEY'S OPINIONS ABOUT THE FINANCIAL STATEMENTS' COMPLIANCE WITH GAAP ARE INADMISSIBLE .......................................................10

IV. HICKEY'S MATERIALITY OPINIONS ARE INADMISSIBLE ...................................11

    A. Hickey Is Unqualified to Opine on Materiality .......................................................11

    B. Hickey's Materiality Opinions Are Impermissible *Ipse Dixit* ...............................13

V. HICKEY'S AUDITOR OPINION IS INADMISSIBLE ....................................................15

VI. CONCLUSION ....................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allen v. Benton*,
  2022 WL 18147674 (N.D. Ill. Feb. 25, 2022) ........................................................................ 15

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ............................................................................................................... 13

*Blue Book Services, Inc. v. Amerihua Produce, Inc.*,
  337 F. Supp. 3d 802 (N.D. Ill. 2018) ..................................................................................... 11

*Burns v. Sherwin-Williams Co.*,
  2022 WL 4329417 (N.D. Ill. Sept. 18, 2022) ..................................................................... 8, 10

*Davis v. Duran*,
  277 F.R.D. 362 (N.D. Ill. 2011) ............................................................................................... 5

*Ervin v. Johnson & Johnson, Inc.*,
  492 F.3d 901 (7th Cir. 2007) ................................................................................................... 2

*Goldberg v. 401 N. Wabash Venture LLC*,
  2013 WL 212912 (N.D. Ill. Jan. 18, 2013) .............................................................................. 8

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*,
  2023 WL 6248473 (N.D. Ill. Sept. 19, 2023) ........................................................................ 10

*LQD Bus. Fin., Inc. v. Rose*,
  2023 WL 2306854 (N.D. Ill. 2023) ..................................................................................... 5, 9

*Manpower, Inc. v. Ins. Co. of Pa.*,
  732 F.3d 796 (7th Cir. 2013) ................................................................................................. 15

*Obrycka v. City of Chicago*,
  792 F. Supp. 2d 1013 (N.D. Ill. 2011) ................................................................................... 14

*Padilla v. Hunter Douglas Window Coverings, Inc.*,
  14 F. Supp. 3d 1127 (N.D. Ill. 2014) ................................................................................. 3, 12

*SEC v. Lipson*,
  46 F. Supp. 2d 758 (N.D. Ill. 1998) ................................................................................... 5, 10

*Sullivan v. Alcatel-Lucent USA Inc.*,
  2014 WL 3558690 (N.D. Ill. July 17, 2014) ....................................................................... 7, 8

*Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*,
   223 F.3d 585 (7th Cir. 2000) ............................................................................................... 13

*Winters v. Fru-Con Inc.*,
   498 F.3d 734 (7th Cir. 2007) ................................................................................................. 8

**STATUTES**

The Investment Company Act of 1940 ....................................................................................... 4

**RULES**

Fed. R. of Evid. 702 .................................................................................................................... 10

I.  **INTRODUCTION**

The SEC does not sincerely dispute Defendants' critiques of Peter Hickey's qualifications and methodology. The SEC cannot deny that Hickey is not a CPA, has never worked in an accounting role, has no experience with the structured notes market, and has never opined on the materiality of alleged misstatements. Nor does the SEC point to any analysis or surveys Hickey conducted to support his opinions about SBB's model or what would be material to investors. They concede Hickey did none. Still, the SEC asserts that Hickey's opinions are admissible based on his review of record evidence and proclaimed valuation experience with a single accounting provision, ASC 820. The SEC's arguments trying to circumvent Hickey's lack of qualifications and reliable methodology are futile—even less credible than its attempts to fend off Defendants' challenges to its other experts—and cannot be reconciled with the Court's gatekeeping function.

The SEC's Opposition highlights why Hickey is unqualified to opine on the inputs used by other participants in the structured note market at issue here. The SEC touts Hickey's ASC 820 experience, but the Parties agree ASC 820 requires valuation using market inputs *without* prescribing what those inputs are. What is in dispute—and what Hickey tried and failed to opine on—is whether SBB's model inputs were market-based. Permeating the SEC's Opposition is the notion that Hickey's prior generic business consultations are sufficient to merit his status as an expert here. That experience does not remedy his lack of knowledge of the market for the complex notes at issue here and his having done nothing to acquire expertise about market participants.

The SEC's efforts to defend Hickey's opinion that SBB's funds' financial statements were not prepared in accordance with GAAP fare no better. The SEC claims Hickey "is not being offered as an expert on financial accounting." Opp. 16. That is belied by his first opinion: "[T]he

financial statements … were not prepared in accordance with GAAP." Hickey Rep. ¶ 10(a).[1]

The SEC all but admits Hickey is not qualified to opine on materiality, asserting—incredibly—that his "lack of previous knowledge or experience with ASC 105[] or SAB 99" provides no basis to exclude this opinion. This assertion ignores the cardinal rule that expert testimony is admissible only if the witness is qualified to offer it. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Similarly, the SEC claims "Hickey does not need to be an accountant or an auditor" to opine that management is responsible for assessing fair value and concluding that valuations were conducted according to GAAP. Opp. 20. The SEC says Hickey's general "*experience working as a consultant and expert*" suffices, but the SEC cannot identify a single engagement Hickey worked on implicating the auditor/management relationship. *Id.*

The SEC cannot save Hickey's deficient opinions. His opinions should be excluded in full.

## II. HICKEY'S OPINIONS ABOUT SBB'S MODEL ARE INADMISSIBLE

### A. Hickey's Opinion on Market-Based Inputs Is Inadmissible

The Opposition confirms Hickey should be precluded from opining that SBB's model "was not based on market-corroborated inputs." Hickey Rep. ¶ 10(h). The SEC cannot point to *any* experience Hickey has in the relevant structured notes market that would provide him with the expertise to opine on SBB's model inputs as compared to the "practices of other market participants." *Id.* Indeed, he has none since these are bespoke investment products, dissimilar from vanilla options. Hickey Tr. 41:16-18 (no experience with "worst of" structured notes at issue here), 175:11-12 (never invested in structured notes).[2] Nor did Hickey conduct any analysis or

---

[1] Hickey's Report and Deposition are included in the Omnibus Exhibit Index to Defendants' *Daubert* Motions ("Omnibus Exhibit Index") (Dkt. 213-01) at Exs. 1 and 11, respectively. Unless otherwise stated, all other exhibits referenced in this Reply are identified by number in the Omnibus Exhibit Index (Exs. 1-24) or in the Omnibus Exhibit Index to Defendants' Replies in Support of *Daubert* Motions (Exs. 25-33).

[2] The SEC does not dispute that Hickey misunderstands even the primary valuation step of splitting a structured note's value between the bond and option component. *See* Mot. 13, 13 n.3.

industry research into which inputs market participants use for the particular structured assets at issue here. *Id.* 110:18-117:23. Having no understanding of which inputs relevant market participants use, he cannot opine that SBB's model was not market-based. *See Padilla v. Hunter Douglas Window Coverings, Inc.*, 14 F. Supp. 3d 1127, 1133 (N.D. Ill. 2014) (excluding expert opinion as "record fail[ed] to establish" that expert had "any particular expertise" in relevant area).

Recognizing these failures, the SEC argues that Hickey is an expert in the requirements of ASC 820. Opp. 6 (claiming Hickey opined only on the "*process*" ASC 820 requires). But focusing on what ASC 820 requires misses the point. The Parties agree ASC 820 requires use of "assumptions that the market would use when pricing the asset." Hickey Rep. ¶ 49. What ASC 820 does *not* identify are the inputs used by participants in the structured note market. ASC 820 does not suggest or require the use of any specific input. *See* Ex. 15 at 10-35-36B (ASC 820 guidance limited to "select inputs that are *consistent with the characteristics* of the asset or liability *that market participants would take into account* in a transaction for the asset or liability") (emphasis added)). All the knowledge in the world of ASC 820 would not help Hickey identify which inputs market participants would consider in valuing these specific assets. And it is his opinions on whether SBB's model used market-based inputs that Defendants seek to exclude. *See, e.g.*, Hickey Rep. ¶¶ 10(g)-(i) ("SBB failed to account for the assumptions or practices of other market participants"), ¶ 64 (SBB's model inputs "not corroborated by other market participants").[3]

Exclusion of Hickey's opinions about market-based inputs also requires exclusion of his headline opinion that Defendants failed to comply with ASC 820. Hickey repeatedly concludes the latter from the former. *See, e.g., id.* ¶ 110 (SBB's model "did not comply with ASC 820

---

[3] The SEC cannot credibly argue that Hickey's opinions on the "inputs" and "assumptions" used in SBB's model are not "about SBB's valuation formulas, or the construction of industry standard valuation models for structured note investments." Opp. 6.

3

because it did not take into account market information … and used inputs that were neither observable in the market nor confirmed by other market participants."). But his experience in ASC 820 does not save his opinions focused on market participants for structured notes.

Moreover, the SEC's Opposition reinforces that Hickey's methodology is unreliable. Reviewing the requirements of ASC 820 and the Investment Company Act of 1940 (Opp. 7-8) cannot tell Hickey anything about which inputs market participants use to value any type of assets. Hickey did not undertake any steps to understand the inputs that other market participants would use to model the particular unique assets at issue here, such as a survey of the market or review of industry analysis. Instead, the SEC makes clear that Hickey reviewed many documents (*id.*), but does not explain how those documents informed Hickey about the key issue: understanding what other market participants would use to value the type of complex structured notes at issue. For example, the SEC cites Paragraphs 27-30 of Hickey's Report for the proposition that he "reviewed documents regarding … how SBB's Model deviated from standard industry practice." *Id.* 7. But those paragraphs largely discuss SBB's model and its inputs—not inputs used by other market participants. The SEC does not explain how reviewing *SBB's model* helped Hickey reach his opinion that SBB's model inputs were inconsistent with those used in *market participants' models*.[4] Similarly, Hickey's reliance on documents addressing more general valuation principles is unreliable given he lacks the necessary experience in the particular structured products market to opine on how market participants would apply general valuation principles to this product.

What's left is the SEC's admission that Hickey is "summariz[ing] the facts in the record" (*id.* 8), which is improper where (as here) such narration is untethered from his opinions. *LQD*

---

[4] The SEC cites a single industry source on structured products (Opp. 7 n.2), but Hickey relies on that source for the non-controversial point that structured products are often tied to stock indices but can be linked to other asset classes (Hickey Rep. ¶ 18 n.15). There is no indication that the article informed Hickey's opinions on which inputs market participants use for valuing these structured products.

4

*Bus. Fin., Inc. v. Rose*, 2023 WL 2306854, at *2 (N.D. Ill. 2023). The SEC fails to explain, for example, how "SBB's changes to its own valuation methodology" informed Hickey's opinions as to which inputs market participants use. Opp. 8. Nor can the SEC cite any caselaw supporting the admission of Hickey's testimony summarizing record facts that the jury can independently understand. *Cf. SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("Expert testimony may not be used merely to repeat or summarize what the jury" can "independently … understand.").

Yet another defect of Hickey's methodology: the SEC agrees an expert may not weigh the credibility of the evidence. Opp. 8. The SEC concedes Hickey relied on testimony from certain SBB witnesses related to SBB's model inputs and did not review Barnett's interrogatory responses related to the theoretical and academic justification for SBB's model inputs.[5] *Id.* 8-9. The SEC claims Hickey's decision to rely on certain testimony while failing to review other evidence was appropriate because he "did not say that Barnett was lying" or "wrong." *Id.* 9. But that is a non sequitur when Hickey did not even review Barnett's responses. Hickey Tr. 126:3-128:11.[6] The caselaw does not support this argument either. Notably, the SEC cites none. As in *Davis v. Duran*, Hickey "determine[ed] the weight and credibility of witness[es]" in forming his opinion that SBB's model inputs were not market-based. 277 F.R.D. 362, 370 (N.D. Ill. 2011). That is improper. The opinions that rely on his credibility assessments are inadmissible.

---

[5] Hickey admitted he deliberately "relied more on [] Barnett's colleagues and their testimony on the SBB model" than Barnett's testimony because Hickey believed that Barnett's colleagues' testimony "were consistent with one another and also consistent with the criticisms" that SBB had heard about the model. Hickey Tr. 126:23-127:12. In other words, he weighed witnesses' credibility to determine whose testimony was "inconsistent" and "consistent," and whose testimony he should "rel[y] on." *Id.* 127:13-128:11.

[6] The SEC has no answer for the fact that Hickey did not accurately summarize testimony when (improperly) weighing record evidence to parrot the SEC's view of the case. *See* Mot. 13 n.3.

### B. Hickey Cannot Support His Opinion That SBB Failed to Maximize the Use of Observable Inputs and Minimize the Use of Unobservable Inputs

The SEC also fails to show that Hickey mustered adequate support to opine that SBB failed to comply with ASC 820 because its proprietary model used historical volatility (an approximated figure based on realized returns of the underlying stock indices) instead of implied volatility (an approximated figure based on reverse-engineering from available option prices) as the estimate for the volatility input. True, ASC 820 identifies an example where implied volatility may be a Level 2 (observable) input. Opp. 9 (citing ASC 820-55-21, which provides examples of situations that qualify as Level 2 inputs). But the SEC leaves out the crucial caveat in the cited ASC 820 example. Implied volatility for a three-year option on an exchange is observable only if two conditions are met: (1) "[p]rices for one-year and two-year options on the shares are observable," and (2) "extrapolated implied volatility of a three-year option is corroborated by observable market data." Ex. 30 at -55-21. Those conditions were not satisfied for many structured notes here, necessitating the use of Level 3 (unobservable) inputs to estimate these assets' fair values. Critically, Hickey did not survey market participants or otherwise research how market participants consider volatility inputs when both implied and historical volatility are unobservable Level 3 inputs.

The SEC does not dispute that valuation of the SBB funds' structured notes would have inputs more closely related to thinly-traded or non-existent long-dated options. Opp. 9-10. The SEC also ignores that Hickey testified implied volatility for long-dated options *could be unobservable*. Mot. 9 (citing Hickey Tr. 93:5-16, 94:14-95:16). The SEC asserts that testimony from *Defendants' expert*, Gene Deetz, supports that implied volatility is an observable input here. Opp. 10. Putting aside that the SEC cannot use Deetz's testimony to rescue Hickey from his admission, Deetz's testimony was consistent with Hickey's: implied volatility is *unobservable* "for

6

periods where there is not market data," as was the case for a significant portion of the funds' notes. Ex. 26 at 279:10-18.

The SEC also asserts that this opinion is not *ipse dixit* because it "was based on (a) existing trading data for options tracking the same index as the options underlying SBB's structured notes, (b) the actual term of the component options for those notes, and (c) the actual requirements of ASC [] 820." Opp. 10. The Opposition lacks a cite to Hickey's Report here, which is telling. In fact, Hickey did *not* review any "existing trading data" for the underlying indices of the funds' structured notes. That is a step Deetz took to *rebut* Hickey's opinions. Ex. 4 ¶¶ 53-68.

### C. Hickey's Other Model Opinions Improperly Invade the Province of the Jury

The SEC does not dispute that Hickey's remaining "expert" opinions concerning SBB's model merely summarize the facts. These opinions should be excluded because "merely reading and interpreting documents without drawing on any additional expertise" is not proper expert testimony. *Sullivan v. Alcatel-Lucent USA Inc.*, 2014 WL 3558690, at *6 (N.D. Ill. July 17, 2014).

***Overvaluation Opinion.*** Hickey seeks to opine that SBB's model "caused the value of the SBB Funds to be over-valued" (Hickey Rep. ¶ 145) and "tended to overstate the value of the component options of SBB's structured notes" (*id.* ¶ 10(j)). The SEC does not dispute that Hickey (1) did not calculate independent valuations of the structured notes (let alone analyze whether the funds were overvalued); (2) did not analyze the impact of SBB's model inputs on the valuations; and (3) conducted no analysis to explain why the $1.42 million fee credit, among smaller fee credits in the factual record, accurately reflects the amount the funds were overvalued. Opp. 11-12. That alone should render these opinions inadmissible.

The Opposition claims Hickey's overvaluation opinions "draw[] upon his experience as a valuation consultant and expert." *Id.* But the SEC's citations to Hickey's Report confirm his conclusion is based on reading the record without applying any expertise. *Id.* 11-12 (citing Hickey

7

Rep. ¶ 115 (summarizing Navalgund's testimony), ¶ 116 (summarizing SBB's response to SEC examination findings letter and *SBB's* calculation of fee credit), ¶¶ 147-48 (summarizing a single SBB spreadsheet without analyzing whether it was most complete of multiple versions produced)). The SEC fails to identify how Hickey's experience helps explain (1) Navalgund's testimony about the *mu* input in SBB's model; (2) the basic timeline of SBB's fee credit to investors; or (3) that SBB revised the funds' performance metrics and investment returns downward. Opp. 11-12. That is not proper testimony for an expert. *Burns v. Sherwin-Williams Co.*, 2022 WL 4329417, at *20 (N.D. Ill. Sept. 18, 2022) (expert cannot "spout facts and dress them up *as* opinions").[7]

*Table 4.* The Opposition confirms Hickey's Table 4 and related opinion that SBB's model caused the SBB funds "to report inaccurate performance track records, risk/return metrics and NAVs" suffer from the same flaws. Hickey Rep. ¶ 10(j); *see id.* ¶¶ 147-48. By the SEC's own description, the document upon which Table 4 is based "is a party admission." Opp. 12. Nor does the SEC dispute that Table 4 is a copy/paste job from a single SBB document. *Compare* Hickey Rep. p. 65 *with* Ex. 33 (the document Hickey cites for Table 4). The SEC responds that Defendants do not identify "any errors, inaccuracies or problems with the data in Hickey's table," but that argument misses the point; Hickey has not applied any expertise to reach *his* conclusions. *Sullivan*, 2014 WL 3558690, at *6 (excluding opinion where expert "d[id] not rely" on any "expertise in his reading and interpretation" of evidence). "Effectively," this opinion is "relaying the [purported] admissions of [SBB] employees without applying any expertise to analyze" the performance and risk metrics listed in the document. *Goldberg v. 401 N. Wabash Venture LLC*, 2013 WL 212912,

---

[7] The SEC also asserts—incorrectly—that Defendants "do not dispute that" SBB's model overstated the value of the funds' investments. Opp. 11. Whether or not Hickey's conclusion that SBB overcharged the SBB funds' investors is correct is irrelevant at this stage, as "[t]he focus of the" Court's "*Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007).

8

at *8 (N.D. Ill. Jan. 18, 2013). "Such testimony does not assist the jury and" is improper. *Id.*

Comparing Hickey's "opinions" regarding Table 4 and the $1.42 million fee credit demonstrates why dressing up a document in the factual record as an expert opinion will prejudice Defendants and confuse the jury. In discussing Table 4, Hickey acknowledges that SBB's May 2016 Model was "a market-based model that complied with ASC 820." Hickey Rep. ¶ 148. Yet Hickey ignores the ASC 820-compliant May 2016 Model to juice his overvaluation opinion in the SEC's favor, relying on the larger $1.42 million credit SBB calculated from Markit's Model rather than the $1.03 million credit calculated using the May 2016 Model. *Id.* ¶ 10(j). The jury can understand without an expert's help that SBB calculated two different fee credit amounts using two different GAAP-compliant models. But the Court should not permit Hickey to trumpet the larger credit, under the guise of an expert opinion, as "[t]he total amount of excessive fees charged to SBB's investors," when both credits are calculated from GAAP-compliant models. *Id.* ¶ 146.

***Opinions About SBB's Knowledge and Intent.*** The SEC fails to cite any authority allowing Hickey to opine on SBB's knowledge or intent to value the structured notes at fair value. The SEC instead says these "opinions do not address SBB's state of mind," but the Opposition's excerpts of Hickey's Report show otherwise. Opp. 14. Offering an opinion on a witness's knowledge (SBB's "aware[ness] of ASC [] 820's requirements" (*id.*)) or intent ("SBB did not attempt to comply with ASC [] 820" (*id.*)) is improper. *See LQD Bus. Fin.*, 2023 WL 2306854, at *2 (expert may not "render an opinion regarding any party's knowledge or intent").

The Opposition also reinforces that these opinions are inadmissible because they are based solely on Hickey's review of documents in the record. The SEC claims "SBB's employees have conceded that they did not consult ASC [] 820, attempt to comply with its requirements, and had no experience complying with it." Opp. 14. But "[t]he jury can decide for itself whether" SBB's

9

employees conceded "this or that" and "does not need to hear from an expert to decide if" they conceded "something." *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2023 WL 6248473, at *3 (N.D. Ill. Sept. 19, 2023) (excluding opinion where expert "basically read the evidence").

***Additional Comments on SBB's Model.*** The SEC concedes Hickey's remaining SBB model opinions do no more than summarize the facts. Opp. 15. The SEC asserts this is appropriate because the summaries "are part of the factual basis for Hickey's opinions" and "have significance based on his experience as a valuation expert," but it fails to link the facts to any opinion or identify what expertise Hickey is applying. *Id.* That is improper, as "an expert can't talk about the facts just to talk about the facts." *Burns*, 2022 WL 4329417, at *20 (experts must "link [facts] to opinions"). The SEC "is not entitled to bolster" its case "by having [Hickey] provide under the banner of expert opinion what is, in fact, an extra summation of the evidence that fails to meet Rule 702's standards of reliability and helpfulness." *Lipson*, 46 F. Supp. 2d at 765. Hickey's opinions in Paragraphs 10(b), 17, 80-87, 117-25, 127, 129-32, 133-35, and 145 should be excluded.

### III. HICKEY'S OPINIONS ABOUT THE FINANCIAL STATEMENTS' COMPLIANCE WITH GAAP ARE INADMISSIBLE

The SEC claims Hickey is "not being offered as an expert on financial accounting or on other requirements of GAAP" beyond ASC 820. Opp. 16. This is because the SEC admits Hickey is qualified, at best, only "to testify regarding the requirements of ASC [] 820, and offer his opinions, based on his professional experience, about the consequences of failing to comply with *that provision*." *Id.* 17 (emphasis added). Indeed, the SEC does not deny that Hickey is neither an accountant nor a GAAP expert. *See* Hickey Tr. 212:2-216:11. The problem for the SEC is that Hickey plainly states in his very first opinion that the funds' financial statements "were not prepared in accordance with *GAAP*." Hickey Rep. ¶ 10(a) (emphasis added). Thus, while Hickey's opinion is not limited to ASC 820, his expertise is so limited. The SEC also concedes

10

that Hickey conducted no analysis to support this opinion. He did not analyze the financial statements or evaluate whether the purported inconsistencies were material—as is required under ASC 105, a GAAP provision with which Hickey conceded he lacks experience. Hickey Tr. 212:15-22. He is not qualified and has done no work to offer any opinions on GAAP compliance.[8]

The SEC also claims that Defendants suggest "the requirements of ASC [] 820 don't matter." Opp. 16-17. Not true. Defendants highlight only what the accounting guidance clearly reflects: that failure to satisfy ASC 820 *can* be material or immaterial. If that failure is immaterial, GAAP does not require management to correct that failure because GAAP requires financial statements to be free only from *material* misstatements. Ex. 14 at -05-6 (ASC 105 "need not be applied to immaterial items"). And Deetz's rebuttal materiality opinion addresses Hickey's bare contention that the alleged deviations in ASC 820 are important to reasonable investors.

Hickey's claimed expertise in ASC 820—just one of many GAAP provisions—does not qualify him to opine on GAAP, *generally*. The Court should ignore the SEC's improper attempt to shift attention from Hickey's lack of GAAP qualification and experience and exclude his opinions on whether the funds' financial statements were prepared in accordance with GAAP.

**IV.   HICKEY'S MATERIALITY OPINIONS ARE INADMISSIBLE**

The SEC effectively concedes that Hickey is unqualified to opine on materiality and that Andrew Mintzer's second opinion is an improper attempt to shore up Hickey's fatal failures.

**A.   Hickey Is Unqualified to Opine on Materiality**

The Opposition does not dispute that SAB 99 is seminal when considering materiality. The

---

[8] The SEC mischaracterizes *Blue Book Services, Inc. v. Amerihua Produce, Inc.*, 337 F. Supp. 3d 802 (N.D. Ill. 2018), as holding that *Daubert* does not require "particular credentials for an expert witness." Opp. 16. Not so. *Blue Book* rejected the notion of *particular* credentials in the context of an otherwise well-qualified expert. 337 F. Supp. 3d at 815-16. The SEC fails to mention that in *Blue Book*, plaintiff's damages expert had "a bachelor's degree in accounting," had passed the CPA exam, and possessed "over 40 years" of *relevant* professional experience in valuation and damage analyses. *Id.* at 816.

11

SEC also acknowledges that Hickey "lack[s]" prior "knowledge or experience with ASC 105[] or SAB 99" and has never "invested in structured notes." Opp. 18. According to the SEC, those shortcomings go only to the weight, not the admissibility of Hickey's opinions. *Id.* That stance ignores the court's gatekeeping function to admit expert testimony only if the witness is qualified. *Padilla*, 14 F. Supp. 3d at 1141 (excluding opinion where proponent failed to show expert "possesse[d] superior knowledge, skill, experience, or education" in relevant field).

Rather than address Hickey's lack of qualifications—including his lack of knowledge of ASC 105 and SAB 99—the SEC continues to hammer Hickey's claimed expertise in ASC 820 and valuation. Opp. 1-2, 17-18. That purported expertise does not qualify him to opine on materiality. In fact, during his deposition, Hickey tried to cite ASC 820 as a standard that helps determine what would be important to investors before ultimately admitting "ASC 820 doesn't call for [a] materiality analysis." Hickey Tr. 210:6; *id.* 216:22 (similar).

The SEC also tries to excuse Hickey's failure to "address SAB 99," stating "another SEC expert will do so." Opp. 18. Over six months after the SEC served Hickey's Report, the SEC submitted a "rebuttal" report from Andrew Mintzer that included a response to Defendants' expert Deetz and his SAB 99 materiality analysis. Even if Mintzer's "rebuttal" materiality opinion were proper (and it is not),[9] Hickey could not rely on Mintzer's materiality analysis to support Hickey's conclusion that SBB's alleged failure to consider ASC 820 "would be materially important to reasonable investors in a private investment fund." *See, e.g.*, Hickey Rep. ¶ 63.

---

[9] Defendants seek exclusion of Mintzer's opinions given the SEC's improper attempt to have Mintzer clean up Hickey's fatal flaws after Deetz's report pointed them out. Dkt. 213. The SEC's argument that Hickey's failure to apply SAB 99 "may be considered in assessing the weight and persuasiveness of [Hickey's] opinion on materiality," while the SEC also gets to fix that issue by offering a second materiality opinion via Mintzer proves the point. Opp. 18. The SEC had its shot to offer a materiality expert, and should be stuck with what it first offered, even if Hickey's materiality opinion, which is akin to a bare conclusion on an otherwise blank page, is inadmissible. Dkt. 213 at 17.

Perhaps recognizing the weakness of its position, the SEC again proclaims that "no 'particular credentials' are required for [an] expert to offer an opinion." Opp. 18 (citing *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000)). True, but an expert must have "*relevant* expertise enabling him to offer responsible opinion testimony." *Tuf Racing*, 223 F.3d at 591 (emphasis added). The SEC points to Hickey's experience with opining on whether "valuations complied with ASC [] 820," but fails to explain how that helps him understand what would be material to a reasonable investor in SBB's funds. Opp. 17. Hickey's "own experience as an investor" is similarly irrelevant. *Id.* 18. The SEC fails to describe what that "experience" entails (nor does Hickey mention it in his Report), but Hickey admitted he has only invested in mutual funds, penny stocks, and some companies (Hickey Tr. 175:2-12), none of which are analogous to the complex structured notes or private investment funds at issue here.

### B. Hickey's Materiality Opinions Are Impermissible *Ipse Dixit*

Given Hickey's failure to apply SAB 99 or any other standard, it is no surprise the Opposition cannot revive Hickey's blank sheet materiality opinions. *See supra* p. 12 n.8. The SEC declares that Hickey's materiality analysis "is found in various parts of his report." Opp. 18. The SEC asserts that because SBB disclosed this information to investors, "it is reasonable to conclude that SBB's investors and auditors may have found that information to be important." *Id.* 19 n.8. In short, the SEC is saying a statement is material just because Defendants made the statement. This novel *per se* theory of materiality is not the standard, something the SEC well knows. The SEC, as the agency that enforces the federal securities laws, applies the materiality standard stated in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). *Basic* is the foundation for SAB 99, another standard the SEC well knows. While the SEC should know better, it is not surprising that Hickey is unfamiliar with the materiality standard that applies to accounting statements as he has blundered into making unsupportable blanket statements like "[a]ny deviation from" ASC 820

13

"or failure to apply ASC 820 would be important to investors." Hickey Tr. 210:9-20.

The SEC's attempts to prop up Hickey on materiality are unavailing. SAB 99 instructs that "an assessment of materiality requires" viewing "the facts in the context of … the 'total mix' of information," which in turn requires considering "both 'quantitative' and 'qualitative' factors." Ex. 31 at 3. Indeed, the SEC for the first time now describes Hickey's materiality opinion as concluding that "SBB's failure to fulfill its representations deprived recipients of information that an investor might consider important in assessing the total mix of information available." Opp. 19. Hickey never used the words "total mix of information" in his Report or deposition, nor does he once refer to SAB 99 or qualitative or quantitative factors. Even if not referred to in name, his Report lacks any analysis of what the "total mix of information" would be for SBB investors or how the alleged misstatements impacted that "total mix." Defendants' expert Deetz's materiality opinions contain this analysis; and Hickey's opinions' failure to do so require his exclusion without giving the SEC a second shot to have Mintzer do what Hickey did not.

The SEC also claims that Hickey's materiality opinion is based on his conclusion that SBB's model caused investors to pay $1.42 million in excessive fees. *Id.* But Hickey conducted no analysis to assess the impact of that fee credit, which was for fees paid by all investors over a five-year period, vis-à-vis the size of each investment (let alone vis-à-vis the total mix of all information). Of the $1.42 million, approximately $1.2 million was credited to Barnett or his family members. For non-family investors, the average annual fee credit over the five-year period was just 0.5% of their average annual investment in the SBB funds—far from *per se* material.

Hickey's "materiality" opinions rest on nothing "more than [his] say-so." *Obrycka v. City of Chicago*, 792 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011). While "experts commonly extrapolate from existing data," reliable inferences "depend on more." *Id.* A reliable inference in a materiality

14

analysis must be rooted in some kind of industry methodology (*e.g.*, SAB 99) so that it "adhere[s]" to "standards of intellectual rigor" demanded by the accounting profession. *Id.* at 1024; *see also Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 809 (7th Cir. 2013) (expert opinion not *ipse dixit* where he "used actual data" and "accounting principles" to "calculate[] a projected growth rate"). Hickey does not rely on any standards. His materiality conclusions are no different from what a layperson juror could surmise from the record evidence and thus should be excluded.

V. **HICKEY'S AUDITOR OPINION IS INADMISSIBLE**

The SEC cannot dispute that Hickey is not an auditor or accountant. Hickey Tr. 37:16-19. Hickey admitted he is not an expert in any GAAP provision other than his purported ASC 820 expertise (*id.* 66:3-13), and ASC 820 does not address management's obligations to their auditor. Nor does the SEC deny that Hickey did not cite any accounting standards in support of his auditor/management relationship opinion.[10] The SEC says Hickey's "*experience working as a consultant and expert*" is the basis for this opinion (Opp. 20), but does not claim he has ever consulted on the auditor/management relationship (*cf. id.* 2-3). That means this "opinion" is based on Hickey's review of the record, which not only fails to establish he is qualified, but is also improper expert testimony. *See Allen v. Benton*, 2022 WL 18147674, at *4 (N.D. Ill. Feb. 25, 2022) ("expert must do more than summarize the evidence"). These opinions should be excluded.

VI. **CONCLUSION**

Defendants respectfully request that the Court exclude Hickey from testifying at trial.

---

[10] The SEC claims that Hickey's auditor opinions are "amply supported by the Investment Company Act, SEC guidance, and SBB's own compliance manual, valuation policy, financial statements, as well as its auditor representation letters." Opp. 20. Even if those documents could make up for Hickey's lack of experience and expertise, Hickey's auditor opinions do not cite those sources. *See* Hickey Rep. ¶¶ 107-09.

15

| | |
|---|---|
| Dated: May 28, 2024 | Respectfully submitted,<br><br>By: /s/ *John J. Sikora, Jr.*<br>John J. Sikora, Jr. (6217330)<br>Heather A. Waller (6302537)<br>Marissa K. Perry (6337268)<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL 60611<br>Tel. (312) 876-7700<br>john.sikora@lw.com<br>heather.waller@lw.com<br>marissa.perry@lw.com<br><br>Howard J. Rosenburg (6256596)<br>KOPECKY SCHUMACHER ROSENBURG LLC<br>120 N. LaSalle, Street, Suite 2000<br>Chicago, IL 60602<br>Tel. (312) 380-6631<br>hrosenburg@ksrlaw.com<br><br>H. Gregory Baker (*pro hac vice*)<br>PATTERSON BELKNAP WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, NY 10036<br>Tel. (212) 336-2871<br>hbaker@pbwt.com<br><br>*Attorneys for Defendants*<br>*SBB Research Group, LLC, Samuel Barnett, and Matthew Aven* |