**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| | ) | Case No. 19-cv-6473 |
| Plaintiff, | ) ) | Judge Sharon Johnson Coleman |
| v. | ) ) | |
| SBB RESEARCH GROUP, LLC, SAMUEL B. BARNETT, and MATTHEW LAWRENCE AVEN | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

The Securities and Exchange Commission ("SEC") filed the present lawsuit alleging various violations of the Exchange Act, Securities Act, and Advisers Act against SBB Research Group, LLC, Samuel B. Barnett, and Matthew Lawrence Aven (together, "SBB") for perpetrating a scheme whereby SBB's valuation model allegedly inflated the value of its securities to create the illusion that the private investment funds ("Funds") were performing better than they actually were.

SBB moved to exclude the opinion testimony of three of the SEC's experts, Craig McCann (SEC's valuation expert), Peter Hickey (SEC's materiality expert), and Andrew Mintzer (SEC's accounting expert), pursuant to the Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Likewise, the SEC moved to limit the opinion of SBB's valuation expert, Arun Sen, and to exclude the opinions of SBB's materiality expert, Gene Deetz, and SBB's accounting expert, Steven Richards, pursuant to the Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court conducted a hearing on the six *Daubert* motions on October 1, 2024. For the following reasons, the Court denies Motion to Limit the Opinion Testimony of Arun Sen [210], the Motion to Exclude Materiality Opinions of Gene Deetz [211], the Motion to Exclude Opinions of

Steven Richards [212], and the Motion to Exclude Certain Opinions and Testimony of Craig McCann [214] is denied; and grants in part and denies in part the Motion to Exclude Expert Opinions and Testimony of Andrew M. Mintzer [213] and the Motion to Exclude Expert Opinions and Testimony of Peter Hickey [215].

**BACKGROUND**

The SEC alleges, starting in 2011 until 2015, SBB inflated the value and performance of its Funds. By using manipulated structured note values through a non-standard, seemingly made up, valuation model, SBB allegedly collected inflated fees and created false records of success for outside investors. The SEC also alleges that SBB misrepresented to RSM, its now-former auditor, that its valuation complied with Generally Accepted Accounting Principles ("GAAP"), even though the SEC states it was not.

**LEGAL STANDARD**

To rule on the admissibility of expert evidence, the Court must decide whether the evidence offered is reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). When determining reliability, the Court's role is to assess whether the expert is qualified in the relevant field and to examine the methodology he used, which must be backed by industry standards, in reaching his conclusions. *Timm v. Goodyear Dunlop Tires North America, Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). When assessing reliability, the Court focuses on the expert's methodology, not his conclusions. *Kopplin v. Wisconsin Central Ltd.*, 914 F.3d 1099, 1104 (7th Cir. 2019). To be relevant, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795, 125 L. Ed. 2d 469 (referencing Fed. R. Evid. 702). An expert may testify only if: (a) the expert's scientific, technical or specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

reliable principles and methods; and (d) the expert has reliably applied those principles and methods to the facts of the case. *See* Fed. R. Evid. 702. The expert's proponent has the burden of establishing the admissibility of the expert's opinions by a preponderance of the evidence. *Varlen Corp. v. Liberty Mutual Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

# DISCUSSION[1]

## A. SBB's Motion to Exclude the SEC's Expert Craig McCann

The SEC intends to present the testimony of Craig McCann, a financial consultant with a Ph.D. in economics and president of SLCG Economic Consulting, LLC. McCann conducted a review of documents filed in this litigation, including the complaint, answer, interrogatory responses, deposition testimony and transcripts and exhibits, SBB structured note values and input testing, the Wells Submission submitted on behalf of SBB, along with other publicly available documents. McCann opined that SBB's model was inconsistent with basic valuation principles, industry practice, and published scientific research. McCann also opined that SBB's ad hoc, unscientific method systematically over-values call options, and undervalues put options embedded in the structured notes purchased by SBB. Lastly, McCann opines that SBB dramatically changed its valuation procedure in response to the SEC's investigation and that the change partially corrected a prior approach so flawed it would not be expected from anybody familiar with option valuation as it had the effect of making SBB's investment performance look far better than it actually was.

SBB challenges four of McCann's opinions: (1) SBB overpriced its Funds' notes; (2) SBB overpriced its Funds' notes by a statistically significant amount; (3) SBB's expert Gene Deetz arbitrarily established materiality thresholds; and (4) SBB's expert Arun Sen's model was flawed, an

---

[1] As is clear from the record, the *Daubert* motions are complex and the exhibits are voluminous. In an effort to condense this opinion and focus on the issues, the Court will not cite to the motions and supporting documents filed by the parties unless relevant.

opinion the SEC alleges McCann gave for the first time at his deposition. The Court will address each argument.

### 1. *Testimony that SBB Overpriced its Funds' Notes*

SBB argues that McCann's opinion that SBB overpriced its Funds' notes "is primarily based on the scatterplots [he] included in [his] report" which are unreliable and that McCann's failure to disclose the methodology by which he analyzed whether SBB's values are reasonable should preclude his opinion. SBB also alleges that McCann's scatterplot graph is nothing more than *ipse dixit* and since he did not run a regression or statistical analysis, his opinion should be excluded.

The SEC contends that McCann's Initial Report outlines the methodology that McCann used to arrive at his opinion, including the back-testing of SBB's valuations and the Monte-Carlo simulation that he used to analyze SBB's note valuations.

The Court disagrees. In determining reliability, a court should evaluate whether an expert's conclusions are based on "sufficient facts or data." Fed. R. Evid. 702(b). "[T]he key… is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC,* 721 F.3d 426, 431 (7th Cir. 2013). In evaluating reliability, there should be a "link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *U.S. v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003). While SBB points to out of Circuit cases to support its argument that McCann's opinion should be excluded due to failure to perform a regression or statistical analysis, there is disagreement among districts. *See, e.g., Adams v. Ameritech Servs., Inc.,* 213 F.3d 415, 425 (7th Cir. 2000) ("[W]e are not prepared to hold as a matter of law that nothing but regression analyses can produce evidence that passes the *Daubert* and *Kumho Tire* thresholds."); *United States v. Valencia,* 600 F.3d 389, 427 (5th Cir. 2010) ("[R]egression analysis is not a mandatory feature in all applications of economics or statistics). Indeed, at least one court in this district found that a regression analysis

was not necessary to present an opinion that is both relevant and reliable. *See In re Allstate Corporation Securities Litigation,* No. 16 C 10510, 2022 WL 842737, at *23 (N.D. Ill. 2022) (Jantz, J.) Clearly, there is no specific analysis that must be employed for an expert opinion to be admissible. Here, the SEC put forth a detailed explanation in its response outlining that McCann's methodology and analysis are based on industry standard and practice. SBB is free to question McCann on cross-examination about the soundness of his methodology. SBB's motion to exclude McCann's testimony that SBB overpriced its Funds' notes is denied.

### 2. *Testimony that SBB Overpriced its Funds' Notes by a Statistically Significant Amount*

SBB argues that McCann's testimony that SBB overpriced its Funds' notes by a statistically significant amount should be excluded because McCann failed to disclose the opinion in both his initial and rebuttal reports.

The SEC responds that McCann's rebuttal report specifically identifies errors in SBB expert Arun Sen's regression analysis and finds that SBB's values are statistically higher than **bank values**.

In its reply, SBB concedes that it is not challenging McCann's ability to opine that there is a statistically significant difference between SBB's values and **bank values**.

It seems that the parties agree that McCann can testify that SBB values were higher by a statistically significant amount than bank values and therefore SBB's motion to exclude McCann's testimony that SBB overpriced its Funds' notes by a statistically significant amount is granted, except as it applies to bank values.

### 3. *Testimony that SBB's Expert Gene Deetz Arbitrarily Established Materiality Thresholds*

While SBB does not contest McCann's qualifications as a financial consultant, it does argue that McCann should be barred from opining on Deetz's materiality analysis because Deetz's

materiality analysis is grounded in accounting standards – an area that McCann does not have expertise.

The SEC contends that because it has "no intent of asking McCann to opine on accounting principles," McCann's opinions that Deetz's +/-5% Estimation Band (1) "has no support in structured products pricing literature or in industry standard option valuation practice," and (2) that any blanket application of the +/- 5% Estimation Band would be unreasonable because it would fail to account for "critical aspects of structured note" valuations, are opinions based on his expertise in structured note valuation methodology and applicable industry standards – which SBB does not contest McCann is qualified to testify.

A witness may be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. There is no requirement under Rule 702 that a proposed expert hold particular credentials in order to give expert opinion testimony. *See id.* Instead, the court considers the "proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). The focus of the inquiry is on whether the expert's qualifications provide a foundation to answer a specific question. *Id.* at 617.

The Court finds that McCann is qualified to opine on Deetz's materiality analysis. McCann's background in structured note valuation and applicable industry standards provides a legitimate basis for his opinion on the materiality analysis for such topics. An expert does not need to work for a particular industry in order to provide helpful testimony. *Turf Racing Prods., Inc. v. Am. Suzuki Motor Corp.,* 223 F.3d 585, 591 (7th Cir. 2000) (accountant did not need a degree in mathematics or

economics to testify as an expert regarding calculation of damages); *see Kucharski v. Orbis Corp.*, No. 14-CV-05574, 2017 WL 1806581, at \*5 (N.D. Ill. May 5, 2017) (St. Eve, J.) ("Courts will not exclude experts regarding industry standards generally at issue in a case merely because they do not have expertise in a sub-specialty.").  To the extent that SBB contends that McCann does not have the narrowly specialized accounting experience, the way to test his expertise is not at the threshold in a *Daubert* motion, but at trial through opposing evidence or cross-examination.  *See Gayton*, 593 F.3d at 616.

### 4.  Testimony that SBB's Expert Arun Sen's Model was Flawed

SBB argues that McCann's testimony that Arun Sen's model was flawed should not be admissible under *Daubert*.  SBB does not argue with McCann's rebuttal report, which critiques Sen's regression analysis.  The main thrust of the SEC's argument is that McCann should be barred from testifying that Sen made mathematical errors in his valuations of SBB's Notes and the impact these purported errors had on Sen's valuations in Sen's model.  SBB argues that this is improper testimony as McCann introduced these opinions for the first time at his deposition and they are not mentioned in his rebuttal report.

The SEC contends that SBB's counsel elicited these opinions during McCann's deposition through "catch all" questions.  Therefore, the SEC argues that McCann's testimony about Sen's model is permissible because SBB "open[ed] the door to testimony that would otherwise be precluded…"  *In re Sulfuric Acid Antitrust Lit.,* 235 F.R.D. 646, 660 (N.D. Ill. 2006) (Cole, J.) (citation omitted).

The Court agrees.  Particularly instructive is the SEC's reliance on *In re Sulfuric Acid Antitrust Litigation*.  There, defense counsel asked plaintiff's expert whether he had any opinions on liability, eliciting a response outlining such.  The court determined "[t]his kind of responsive testimony is not the kind of ambush with an undisclosed opinion that the disclosure rules were designed to prevent."

235 F.R.D. at 659-60. The court specifically noted "[q]uestions elicited at that time that go beyond the reports may well have a bearing on the permissible scope of testimony at trial." *Id.* at 659.

Here, SBB's counsel asked McCann, "[a]nd you described several errors that you believe Dr. Sen committed in his analysis. *Are there any other errors that you identified in Dr. Sen's report?*" McCann Dep. Tr., 195:7-10 (emphasis added). The question was not limited to Dr. Sen's regression analysis. While McCann cannot freely testify about matters not contained in his report under Rule 26(a)(2), if testimony about errors McCann identified in Sen's report is elicited at trial, he will be permitted to testify about errors he identified, including in Sen's valuation model, as such testimony was elicited during McCann's deposition.

## B. The SEC's Motion to Limit the Opinion Testimony of SBB's Expert Arun Sen

SBB intends to present the testimony of Arun Sen, a managing director in Ankura's Disputes and Economics practice with a Ph.D. in Operations Research and Financial Engineering from Princeton University. Sen conducted a review of SBB Funds' audited financial statements, SBB model data, term sheets, litigation documents, and publicly available information. He also used the Heston model to value SBB's Notes and created waterfall charts to demonstrate that SBB's valuations were not inflated. Sen opined that McCann's conclusions were deficient and that his model was too simplistic to value SBB's Notes and therefore should not be considered.

The SEC challenges three of Sen's opinions: (1) Sen's regression analysis; (2) Sen's testimony about McCann's model and valuation method; and (3) Sen's "Waterfall" analysis.

### 1. Sen's Regression Analysis

The SEC argues that Sen's regression analysis is unreliable for three reasons: (1) Sen's analysis used cherry-picked data that only considered SBB's Note values from 2013 – 2015, improperly excluding data from 2011 and 2012; (2) Sen omitted a second regression analysis from

his report that contradicted his ultimate opinion; and (3) Sen's regression analysis contains serious data errors that, when fixed, contradict his opinions.

### a. Cherry-Picked Data

The SEC argues that Sen's regression analysis improperly excluded data from 2011 and 2012 that, if included, would have undermined his conclusion that SBB's values were statistically "in line" with third party values.

SBB contends that the exclusion of the 2011 – 2012 data was not arbitrary since Sen specifically chose to exclude data from that time period as SEC's model was "in a state of flux" and SBB held so few notes. SBB also contends that the exclusion of the 2011 – 2012 data was not material because Sen does not opine on SBB values from 2011 – 2012 – his opinion only concerns SBB values from 2013 – 2015. The SEC contends that Sen chose to exclude 2011-2012 data because he knew the excluded data would alter his conclusion.

Here, Sen's conclusion is not based on cherry-picked data. Unlike the expert in *LeClercq v. Lockformer Co.*, Sen explained his reasoning for excluding the 2011 and 2012 data and his conclusion clearly states that his analysis is based on only 2013 – 2015 data. No. 00 C 7164, 2005 WL 1162979, at *4 (N.D. Ill. 2005) (Leinenweber, J.) Indeed, disagreements over which time periods to use is inappropriate to resolve at the *Daubert* juncture. *See, e.g., In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, No. 11 C 5468, 2015 WL 4880953, at *5 (N.D. Ill. 2015) (Pallmeyer, J.) ("[T]he accuracy of the underlying assumptions goes to the relevance and weight of the evidence, rather than its reliability."). At trial, the SEC is free to inquire about the data employed for the regression analysis, but since there is a rational connection between the data used and Sen's opinion, it is up to the jury to determine whether Sen used the best data set. *Manpower, Inc. v. Ins. Co. of Pa.*, No. 12-cv-2688, 732 F.3d 796, 809 (7th Cir. 2013) ("[T]he selection of data inputs to employ in a model is a question separate from the reliability of the methodology reflected in the model itself.")

*b. Omission of Second Regression Analysis*

The SEC argues that Sen impermissibly excluded a second analysis from his expert report where he compared SBB's bank values to MarkIt's values which showed that SBB's values were statistically higher than MarkIt's, making Sen's opinion unreliable.

SBB contends that the second regression analysis does not contradict the original analysis (comparing SBB values with the bank values and concluding that there is no statistical significance) because since there is a range of reasonable fair values (which both Sen and McCann agree on), it is feasible that not all reasonable values are statistically in-line with each other. SBB also alleges that the SEC fails to cite any authority to support its contention that Sen's exclusion of the second analysis renders his opinion unreliable, especially since McCann also performed an undisclosed analysis. SBB notes that the SEC's argument regarding the second regression analysis is unrelated to the reliability of Sen's regression methodology and therefore, such challenge is best suited for the jury.

The Court agrees. The court's duty is to determine the reliability of the validity of the methodology employed by the expert, not the quality of the data used in applying the methodology or the conclusions produced. *See Manpower,* 732 F.3d at 806. Sen did not put forth the second analysis in his conclusion and therefore he was not required to disclose it under the Federal Rules. *See Chicago Teachers Union, Local 1 v. Board of Edu. of City of Chicago,* No. 15 C 8149, 2020 WL 914882, at *10 (N.D. Ill. 2020) (Ellis, J.) (finding that where an expert does not disclose results of his findings a report in their opinion, the Federal Rules do not require disclosure). The SEC does not challenge the methodology of Sen's second regression analysis, so, as explained above, such challenges are best suited for the jury. *Manpower,* 732 F.3d at 806. This does not preclude the SEC from questioning Sen about the "third party sources" which he contends are in line with SBB's values, but, again, such questioning should be in front of the province of the jury.

###### c. *Data Errors in Regression Analysis*

The SEC argues that Sen's regression analysis is unreliable because it improperly omits 349 monthly valuation notes. The SEC argues that the analysis is skewed due to the exclusion of the 349 notes. The SEC also argues that Sen improperly included SBB Note 20 – an inverse note – in the regression analysis that artificially reduced the average variance between SBB's values and the bank values. The SEC contends that when these errors are fixed, the regression analysis shows that the difference between SBB's values and the bank values are statistically significant.

SBB alleges that Sen ran a separate regression analysis that fixed the issue that led to the exclusion of the 349 notes and that the updated analysis did not change his conclusion. SBB also contends that Note 20 was included in the SEC's Complaint and the SEC's valuation expert, McCann, included Note 20 in his analysis which supported his conclusion that SBB's values were overpriced.

The SEC does not present additional argument in its reply to SBB's counterargument concerning the omission of the 349 notes. As Sen ran a separate regression analysis that fixed the issue with the 349 notes and still found that there was no statistical significance, the exclusion of the 349 notes is not material to Sen's analysis. Neither is the exclusion of Note 20. McCann included Note 20 in his own analysis that concluded that SBB's values were overpriced. Again, as there is a rational connection between the data and the opinion, the question of whether the expert employed the best data set is a question for the jury, not the judge. *Manpower,* 732 F.3d at 809.

#### 2. *Testimony about McCann's model and valuation method*

The SEC argues that Sen failed to read the peer-reviewed articles that supported McCann's valuation method despite opining that McCann's model is "not supported by option theory and pricing…" The SEC contends that Sen's criticism should be excluded as unreliable because Sen admittedly ignored (1) the peer-reviewed literature cited and relied upon by McCann and (2)

contradictory analysis in the literature cited in Sen's own report. The SEC also alleges that Sen's opinion is based on cherry-picked sources.

SBB contends that Sen did not ignore the peer-reviewed literature cited and relied upon by McCann as someone on Sen's team reviewed each cited article. SBB also argues that Sen's criticism of McCann's model is that it fails to account for the complexity of SBB's Funds' Notes with respect to how it treats volatility and that the two articles Sen allegedly ignored do not undermine his opinion as they relate to volatility for exotic options, like those he alleges at issue in this case. SBB lastly contends that Sen did not cherry-pick sources and that his cited sources that criticize McCann's model do not contain contradictory analysis as Sen or a member of his team reviewed all sources that are cited in support of his opinion.

Sen did not broadly opine that McCann's model is "not supported by option theory and pricing…." In the sentence preceding such opinion, Sen makes clear that his opinion is limited to the application of McCann's model "to exotic options… when determining his volatility inputs…." The sentence the SEC cites to in its argument that Sen's testimony is unreliable, in full, states that McCann's model is "not supported by option theory and pricing *for such a purpose*" referring to the application of the model to exotic options when determining volatility input. Sen makes it clear that his opinion on McCann's valuation model is limited to exotic options and volatility. The SEC does not allege that Sen is unqualified to testify about exotic options and volatility. Sen can offer his opinion, including his criticism, of McCann's model on such grounds.

With this in mind, the Court must determine whether Sen improperly ignored McCann's cited sources and/or the contradictory analysis in the literature in his own report in criticizing McCann's model as it relates to exotic options and volatility. The bulk of SEC's motion focuses on Sen's criticisms of McCann's approach, generally – an opinion that Sen does not give in his report. The SEC does not offer any legal argument, including allegations of cherry-picking, as they concern

Sen's opinion that McCann's model does not account for volatility for exotic options. *Beard v. Whitley Cty. REMC,* 840 F.2d 405, 408-9 (7th Cir. 1998) ("It is not the obligation of [the] court to research and construct the legal arguments open to parties, especially when they are represented by counsel."). Sen can testify about his opinion for such purpose and the SEC will be able to cross-examine Sen on his review of the literature. But such conclusion on the specific literature that should have been analyzed and relied upon must be left to the jury. *See Manpower,* 732 F.3d at 809.

### 3. Sen's "Waterfall" Analysis

The SEC argues that Sen's "Waterfall" analysis is unreliable and will confuse the jury as it shows that SBB's deficient inputs had an "offsetting effect" on his model despite the "Waterfall" analysis failing to test SBB's model inputs. The SEC also argues that the Figures in Sen's report do not accurately reflect his own analysis. Lastly, the SEC contends that there is no methodology, as admitted by Sen, that support his Waterfall analysis or his application of his methodology to the facts of the case.

SBB argues that Sen's "Waterfall" analysis is reliable because it demonstrates the impact of incorporating each of the six disputed features of the SBB model into a "reasonable" alternative model – namely, Sen's model. SBB also alleges that Sen used replicated inputs that were very close to the original SBB inputs because he did not have access to the SBB inputs. SBB contends that the "Waterfall" analysis figures are not misleading because the footnote in the chart delineates that Sen replaced 7 inputs. Lastly, SBB contends that the "Waterfall" analysis charts do not require citation to authority as they are supported by elementary arithmetic to demonstrate how changes in the features impact SBB's values.

Again, the parties attempt to use *Daubert* to argue the legitimacy of methodology and specific data an expert may use in coming to their conclusion. The SEC, however, does not and cannot point to any caselaw requiring a specific methodology that should be employed. "Reliability… is

primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *See Manpower*, 732 F.3d at 806. The determination of what variables should be included in an analysis normally affects its probativeness, not its admissibility. *See Morgan v. United States Parcel Serv. of Am. Inc.,* 380 F.3d 459, 468 (8th Cir. 2004); *Bazemore v. Friday,* 478 U.S. 385, 400, 106 S. Ct. 3000, 3009, 92 L.E.2d 315 (1986). Where an expert explains the reasons for the choices he made in structuring his analyses, the propriety of his choices goes to the weight rather than admissibility. *See, e.g., In Re Allstate Corporation Securities Litigation,* 2022 WL 842737, at *8. Sen provides a sufficient explanation to support his analyses and therefore meets the *Daubert* requirements. Accordingly, it is up to the jury to determine whether Sen's choice of data inputs render his "Waterfall" analysis either more or less persuasive than what is offered by the SEC's expert. *See Manpower,* at 809.

## C. Peter Hickey

The SEC intends to present the testimony of Peter Hickey, a principal at Global Economics Group who has a Master's of Business Administration, with concentrations in accounting and finance, from the University of Chicago's Booth School of Business. Hickey conducted a review of litigation documents, publicly available materials, and SBB documents and statements. Hickey opined that neither SBB nor SBB's models complied with Accounting Standards Codification ("ASC") 820 – the accounting standard mandating that investments be reported at fair value – and SBB's financial statements were not in accordance with GAAP. He also opined that SBB's representation to investors that the SBB funds were valued in accordance with GAAP would be considered important by a reasonable investor.

SBB moves to exclude Hickey's testimony based on the following: (1) Hickey's opinions about SBB's valuation model; (2) Hickey's opinion about SBB Funds' financial statements; (3)

Hickey's opinion on what is material to investors; and (4) Hickey's opinion on the auditor/audit client relationship.

### 1. Testimony about SBB's valuation model

SBB argues that Hickey's opinions about SBB's valuation model should be excluded for three reasons. First, SBB contends that Hickey lacks the requisite expertise to opine that SBB's model was inconsistent with ASC 820. Second, SBB contends that Hickey merely summarizes evidence and does not use a reliable methodology to support his opinions about SBB's valuation model. Third, SBB argues that Hickey's comments on the inconsistences of Samuel Barnett's testimony and his opinion on SBB's knowledge and intent of complying with ASC 820 are impermissible credibility determinations that should be left to the jury.

The SEC contends that Hickey is qualified to opine on market-based inputs, that Hickey used a reliable methodology, and that Hickey does not opine on credibility.

A witness may be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. There is no requirement under Rule 702 that a proposed expert hold particular credentials in order to give expert opinion testimony. *See id.* Instead, the court considers the "proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith*, 215 F.3d at 718. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton*, 593 F.3d at 616 (internal quotation omitted). The focus of the inquiry is on whether the expert's qualifications provide a foundation to answer a specific question. *Id.* at 617.

While Hickey may be qualified to opine on ASC 820, the SEC admitted at oral arguments that this is only one section of GAAP principles that companies are required to abide by. In

addition to relevancy, expert testimony must be helpful to the trier of fact. In order to satisfy the requirement of "helpfulness," the expert testimony must (1) relate to a fact at issue; and (2) assist the jury in understanding what otherwise might be outside its grasp. *See S.E.C. v. Lipson,* No. 97 C 2661, 46 F.Supp.2d 758, 763 (N.D. Ill. 1998) (Schenkier, J.) Hickey's opinion on only one requirement of GAAP will not be helpful to the jury and the probative value of allowing Hickey's testimony on SBB's valuation model's compliance with ASC 820 is substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury as it places undue emphasis on the importance of complying with ASC 820 even though compliance with all GAAP principles is of equal importance. *See* Fed. R. Evid. 403. Hickey's testimony on SBB's valuation model is barred.

### 2. *Testimony that SBB's Funds' financial statements complied with GAAP*

SBB argues that Hickey lacks experience and performs no analysis to conclude that SBB's Funds' financial statements were not prepared in accordance with GAAP as he is not a certified public accountant, has never worked in an accounting role, and "by his own admission" is not a GAAP expert. SBB further argues that Hickey's opinion about SBB's Funds' financial statements is based solely on his incorrect conclusion that SBB's model was inconsistent with ASC 820. SBB contends that whether financial statements comply with GAAP requires more than opining on whether model inputs are consistent with ASC 820, an analysis Hickey does not undertake.

The SEC contends that Hickey is qualified to offer opinions on valuation and the requirements of ASC 820 as *Daubert* does not require specific credentials in determining whether an expert can testify. The SEC specifically claims that Hickey is not being offered as an expert on financial accounting or other requirements of GAAP, other than ASC 820.

However, Hickey's expert report specifically states, "the financial statements for the SBB Funds were not prepared in accordance with GAAP." While this Court acknowledges that *Daubert* does not require certain credentials for an expert witness to testify, *see Blue Book Services, Inc. v.*

16

*Amerihua Produce, Inc.,* 337 F.Supp.3d 802, 816 (N.D. Ill. 2018) (Chang, J.), Hickey offers an opinion on how SBB's Funds' financial statements comply with GAAP generally, which exceeds the purpose of his expert testimony as stated by the SEC. Hickey is not qualified to offer opinions on GAAP compliance and is barred from doing so. *See* Fed. R. Civ. P. 702.

### 3. *Testimony about materiality*

SBB argues that Hickey is not qualified to opine on what is material to investors as his opinions are *ipse dixit* and based on his personal investing experience (which does not include investing in structured notes or private funds – the two types of financial instruments at issue here) and his prior experience as an expert in ASC 820 (which is irrelevant to his materiality opinion).

The SEC contends that Hickey's lack of knowledge or experience in ASC 105 or Staff Accounting Bulletin ("SAB") 99 – the materiality provisions of GAAP – along with his lack of prior investment in structured notes only goes to the weight of the opinion, not the admissibility. The SEC also puts forth an argument of what Hickey "considered" in concluding that "[a]ny deviation from" ASC 820 "or failure to apply ASC 820 would be important to investors" in support of its opposition.

Hickey's materiality opinion must be excluded on *Daubert* grounds. The SEC offered the testimony of Hickey to opine on the application of GAAP fair value standards of ASC 820. ASC 820, however, does not call for a materiality analysis – a fact admitted by Hickey during his deposition. The SEC further admits that Hickey's lack of previous knowledge or experience with ASC 105 or SAB 99 (the GAAP materiality provisions) should only go to the weight of the testimony, not the admissibility. Despite the SEC's purported statements that Hickey is only being offered as an expert on ASC 820, Hickey's report specifically states, "SBB's representation to investors that the SBB Funds were valued in accordance with GAAP would be considered important by a reasonable investor…" Hickey is clearly expanding the limitations of his expertise to

17

opine on GAAP generally, not just ASC 820. Hickey's lack of experience in the GAAP materiality provisions necessitates the exclusion of his materiality opinion. *See Evoy v. CRST Van Expedited, Inc.,* 430 F.Supp.2d 775, 782 (N.D. Ill. 2006) (Kennelly, J.).

Hickey's opinion is also considered *ipse dixit*. The SEC lists documents that Hickey "considered" in forming his materiality opinion. Under *Daubert*, however, a summary of documents that the jury can review and independently understand is the purest form of *ipse dixit* and therefore should be excluded. *Lipson,* 46 F.Supp.2d at 763. For such reasons, the Court finds exclusion proper.

### 4. Testimony on the auditor/audit client relationship

Lastly, SBB argues that Hickey's opinion on the auditor/audit client relationship should be excluded because Hickey, by his own admission, has no experience as an accountant or auditor and cites no standards supporting his opinion.

The SEC argues that Hickey's experience working as a consultant and expert in GAAP requirements related to valuation and financial statements qualifies him to opine that under GAAP, SBB, rather than RSM, must determine the fair value of an investment fund's position.

The Court agrees with SBB. Not only did Hickey admit to having no accounting or auditing experience, he further testified during his deposition that he could not recall any other accounting standard – other than ASC 820 – that he had been asked to offer an opinion on. Hickey does not have the requisite experience to testify about GAAP requirements for an auditor/audit client relationship and his opinion should be excluded. *Evoy,* 430 F.Supp.2d at 782.

### D. Gene Deetz

SBB intends to present the testimony of Gene Deetz, a certified public accountant and accredited senior appraiser. Deetz conducted a review of litigation documents, brokerage account statements, SBB fund audited financial statements, fee credit and equity roll forward documents,

withdrawal and assignment documents, subscription documents, and publicly available materials. Deetz opined that Hickey provided no reasonable basis to support his conclusions on what is important to reasonable investors, like the investors in the SBB Funds. Deetz performed a materiality assessment using a +/- 5% estimation uncertainty band to determine what would be considered material to investors.

The SEC argues that Deetz's materiality opinions should be excluded for five reasons: (1) Deetz's method for calculating the band was not disclosed in his report; (2) Deetz lacks the expertise to opine on the margin of error for an option valuation model; (3) Deetz's decision to exclude the first 5% of SBB's overstatement of note value has no basis in option valuation practice or GAAP; (4) Deetz's calculation of the +/- 5% estimation uncertainty band is based on cherry-picked data; and (5) Deetz's materiality opinion usurps the role of the jury.

### 1. Deetz's Method for Calculating +/- 5% band was not disclosed in report

The SEC argues that Deetz's method for determining the +/- 5% estimation uncertainty band was not disclosed in his report and therefore should be excluded. The SEC alleges that it only learned of the methodology during Deetz's deposition and, by Deetz's own admission, the SEC is unable to test Deetz' calculations to ensure that his methods were repeatable and the product of a sound analysis of MarkIt's valuation model. The SEC points to testimony from Deetz's deposition to support their argument that Deetz did not disclose the calculation until his deposition and therefore, his opinion should be barred.

SBB contends that Deetz's report cites AU-C 540A – the Generally Accepted Auditing Standards ("GAAS") provision that addresses developing a range to test the reasonableness of an accounting estimate like the valuation of the SBB Funds' notes – as the basis of his +/- 5% band. SBB also argues that Deetz's methodology was not based on a mathematical calculation – rather, it was based on characteristics of the Funds' structured notes, disclosures from counterparty banks,

variances that Deetz observed between actual sales of the structured notes and fair value estimates based on MarkIt's model, and variances that he observed in the fair value estimates for the Funds' structured notes based on models by MarkIt, McCann, and Sen. Further, SBB alleges that the basis of Deetz's opinion for selecting the +/- 5% band was disclosed in his report and that he only further elaborated on such basis during the deposition.

The Court finds SBB's argument compelling. Under Federal Rule of Civil Procedure 26(a), expert reports must be "detailed and complete." *See* Fed. R. Civ. P. 26. An expert report must include the complete "substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor." *See Finwall v. City of Chicago,* 239 F.R.D. 494, 501 (N.D. Ill. 2006) (Cole, J.) Expert reports must include the "how" and the "why" for how an expert reached a particular result, not merely the expert's conclusory opinions. *See Finwall,* 239 F.R.D. at 501. The SEC's argument that Deetz's failure to include the calculation in the expert report renders his opinion inadmissible is unfounded. The +/- 5% estimation band is grounded in literature and industry standard methodology, as outlined in Deetz's expert report. Deetz lays out how he reached his conclusion in the expert report and accompanying exhibits. He testified as much at his deposition. *See, e.g.,* Deetz Tr. 94:3 – 96:6. The facts in this case are wholly distinguishable from the caselaw the SEC relies on. Here, Deetz explained the methodology in his expert report that supports his conclusion and only further elaborated on such methodology during his deposition. The +/-5% band was not a new opinion first disclosed at Deetz's deposition, so the opinion is admissible.

### 2. *Deetz's Qualifications to Opine on Estimation Uncertainty of the MarkIt Valuation Model*

The SEC argues that Deetz is not qualified to evaluate the estimation uncertainty surrounding the MarkIt option valuation algorithm because he is not a valuation expert. The SEC

contends that Deetz's failure to analyze the estimation uncertainty surrounding MarkIt's model without (1) any experience analyzing such models; (2) reviewing the valuation model he analyzed (or knowing its inputs); and (3) consulting another expert in the field makes him unqualified to divulge the opinion and therefore the opinion inadmissible.

SBB contends that Deetz is qualified to evaluate on estimation uncertainty of the MarkIt valuation model because his opinions are based on his assessments of the materiality of alleged deviations from fair value – something SBB argues is a core function of accountants. SBB further contends that neither the accounting standards nor materiality guidance, including AU-C 540A and SAB 99, require auditors or accountants to perform their own independent valuations to assess materiality. To the contrary, SBB argues that the guidance directs auditors and accountants to use judgment and consider available "audit evidence" when developing a range of fair values – which is exactly what Deetz did here. SBB emphasizes that Deetz has substantial experience as an auditor and analyzing materiality in his practice as both a consultant and expert for over 15 years.

The Court agrees with SBB. There is no requirement that an expert work for a certain industry in order to provide reliable, helpful testimony. *In re Allstate Corporation Securities Litigation*, 2022 WL 842737, at \*22. Deetz's expertise and experience as an auditor analyzing materiality for over 15 years makes Deetz qualified to offer such opinion. Again, the SEC fails to cite any caselaw or statutory requirement that certain methodology should be used in assessing materiality. It is not this Court's duty to go on an expedition to create the SEC's arguments. *See Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 724 (7th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

### 3. *Deetz's assumption for +/- 5% band for MarkIt Model*

The SEC argues that Deetz provides no basis in option valuation or accounting practice or GAAP that supports (1) his method for applying a +/- 5% band to MarkIt's valuation model; (2) his

dismissal of all of SBB's overstatements within the band before conducting his materiality analysis; (3) the layering of Sen's "uncertainty" analysis of the Heston Model onto Deetz's calculation of uncertainty for the MarkIt model; or (4) the assumption that the +/- 5% band applies to all notes held by SBB's Funds. The SEC alleges that Deetz's opinion is *ipse dixit* because he does not offer analysis of the model nor support in literature or practice for his calculation of the band – only that it is "reasonable" because he says so.

SBB contends that Deetz provides support for the +/- 5% band through GAAS provision AU-C 540A, his consideration of the characteristics of the structured notes, observed fair value data, and other evidence in the record along with his fair value and auditing experience. Further, SBB alleges that the +/- 5% band was supported by SBB's former auditor, RSM, whose acceptable variance for structured notes was 5% for all securities with a particular type of security and 10% for an individual security. SBB also contends that Deetz used Sen's actual note values and that *Daubert* does not require consultation in order for an expert to rely on another's work.

SBB provided ample evidence to support Deetz's basis for the +/- 5% band. The SEC also fails to put forth any caselaw in its motion to support the exclusion of Deetz's testimony. Indeed, it is not the job of the Court to research and construct legal arguments for parties represented by counsel. *Beard,* 840 F.2d at 408-9. Undeveloped arguments unsupported by legal authority are waived. *Schaefer v. Universal Scaffolding & Equip., LLC,* 839 F.3d 559, 607 (7th Cir. 2016).

### 4. *Deetz's calculation of the +/- 5% band*

The SEC argues that Deetz's calculation of the +/- 5% band is based on cherry-picked data and is therefore unreliable. The SEC presents a haphazard argument that Deetz's calculation of the +/- 5% band is based on note values from (a) one fund, Polysight, despite the availability of data from six funds; (2) only year-end values, although monthly values were available for all funds; and (c) data from only two years (2014-2015), even though data was available for some funds for 2011-

2013, and monthly data was available for all funds through April 2016. The SEC contends that while a total of 1,049 monthly notes were available for Deetz's analysis, he only used 56 – namely, the 2014-2015 year-end note valuation for Polysight – to derive the +/-5% band and therefore the data used to support the band is cherry-picked.

SBB contends that Deetz's calculation of the +/- 5% band is not based on cherry-picked data because Deetz's report and deposition testimony acknowledged that he observed and considered variances in the models by SBB, MarkIt, McCann, and Sen, for every structured note in all Funds for all pertinent years. SBB also points out that the SEC failed to cite any accounting or materiality guidance to support its claim that Deetz's methodology was improper.[2]

In analyzing the two cases cited by the SEC to support exclusion of Deetz's calculation of the +/- 5% band based on cherry-picked data, the Court agrees that, once again, the cases cited by the SEC do not support exclusion as Deetz considered and observed data from all of the Funds, for all years, based on the four models. *Cf. Barber v. United States,* 17 F.App'x 433, 437 (7th Cir. 2001) (exclusion of expert was appropriate where expert ignored certain facts and data while accepting others without explanation); *and Cates v. Whirlpool Corp.,* 2017 WL 1862640, at *6 (N.D. Ill. 2017) (St. Eve, J.) (expert opinion excluded where expert tested two ovens to support opinion that two million ovens were defective in class action that involved at least 63 different oven designs and ignored contradictory data). Indeed, disagreement over which time periods to use or how to weigh individual stats reflect a dispute among experts over the choice of inputs, which is inappropriate to resolve at the *Daubert* stage. *See, e.g.,* In re Zimmer Nexgen Knee Implant Prod. Liab. Litig., 2015 WL 4880953, at *5.

---

[2] The Court will not consider whether the SEC's motion improperly includes new analysis for their expert, McCann, as McCann did not offer the opinions in his report, depositions, or during the *Daubert* hearing. This motion is not the proper mechanism for such consideration and the issue is not yet ripe as McCann has not offered this seemingly new analysis at this time.

### 5. *Deetz's materiality opinion*

The SEC argues that Deetz's materiality opinion usurps the role of the jury. The SEC contends that Deetz's qualitative materiality analysis should have considered all factors outlined in SAB 99, but instead he provides a selective factual narrative that ignores two critical concepts: management intent and bias.

SBB responds that Deetz did consider both management intent and bias. SBB points to Deetz's consideration of Hickey's allegations that SBB failed to consider and apply ASC 820 in the valuation of its structured notes as well as the allegations that SBB "intentionally" rigged SBB's valuation model to inflate the recorded value of the Funds' securities and make the Funds look like they were performing better than they actually were. SBB also contends that Deetz reviewed all evidence related to management intent and bias that they SEC cited concerning each topic.

The SEC fails to cite any requirement of certain language required by SAB 99 that must be in an expert's report in order to confirm that management intent and bias were used. Even further, the SEC fails to cite any SAB 99 *provision* that specifically states that an expert *must* consider management intent and bias. The SEC's failure to put forward evidence of such requirements waives this argument. *Schaefer,* 839 F.3d at 607. Deetz's materiality opinion is admissible.

## E. Andrew Mintzer

The SEC intends to present the testimony of Andrew Mintzer, a certified public accountant and certified fraud examiner with a Master of Accountancy from the University of South Florida. Mintzer conducted a review of litigation documents, SBB Forms ADV, and publicly available materials. Mintzer prepared two reports as an expert in this case.

In his first report, Mintzer opined that SBB was aware of its obligation to issue the Funds' financial statement in accordance with GAAP and that this obligation could not be delegated to the Funds' independent auditors. Mintzer also opined that SBB management was responsible for the

preparation and fair presentation of the Funds' financial statements under GAAP even though RSM engaged in improper conduct during its audits. Mintzer also opined that RSM's resignation and rescinded audit opinions following RSM's asserted discovery of facts that SBB withheld during the audits was reasonable under GAAS.

In his second report, Mintzer declares that Deetz's materiality opinion is not based on a reasonable and appropriate materiality analysis under relevant accounting and financial reporting guidance. Mintzer also states that Deetz did not consider relevant qualitative factors to support his materiality analysis.

SBB moves to exclude five opinions from Mintzer's opening report: (1) Mintzer's RSM resignation opinion; (2) Mintzer's opinion that SBB is obligated to comply with GAAP; (3) Mintzer's Custody-Rule opinion; (4) Mintzer's opinion on management's responsibility for the preparation and presentation of GAAP financial statements; and (5) Mintzer's opinion about GAAS audits. SBB also moves to exclude Mintzer's second report, its materiality analysis, and Mintzer's critique of Deetz's materiality assessment.

### 1. *Mintzer's Opening Report*

#### a. *Testimony about RSM Resignation*

SBB argues that Mintzer's RSM resignation opinion is inadmissible because his opinion is based on his review of the entire SEC record, not the "summaries" that RSM reviewed in support of its resignation decision. SBB argues that Mintzer failed to review the "summaries" and therefore, he does not know whether the "summaries" include the same testimony and evidence in the SEC record which Mintzer bases his opinion.

The SEC contends that because Mintzer reviewed the entire record for the case, the record includes the information in the "summaries" and is therefore admissible.

The SEC provides no caselaw to support its opinion that Mintzer's review of the entire record was reliable and included the information in the "summaries." Indeed, when an expert's opinion is based on replicated facts, the opinion must incorporate those facts to be reliable. *See Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 894 (7th Cir. 2011); *see also Chi Tchrs. Union, Loc 1,* 2020 WL 914882, at *7. The SEC's argument that Mintzer properly reviewed the record and that there is no gap between the "summaries" can only be considered unfounded at best and meritless at worst. The SEC does not provide any substantive evidence to support the conclusion that Mintzer reviewed *all* evidence contained in the "summaries." Essentially, the SEC is asking the Court to take their word for it. That is not enough. Mintzer's RSM resignation opinion must be barred.[3]

> *b.   Testimony that SBB is obligated to comply with GAAP*

SBB argues that Mintzer's opinion that SBB is obligated to comply with GAAP is inadmissible because it is mere factual narration. SBB contends that Mintzer's opinion that the evidence supports the reasonableness of RSM's resignation is based on a review and summary of certain documents and testimony in the record that does not require any specialized accounting or auditing knowledge to understand and is therefore should be excluded. Instead of evaluating SBB's model to determine whether it complies with ASC 820 and GAAP, SBB argues that Mintzer merely based his review on the evidence and "his spin of the facts." SBB argues that this is the type of review the jury can perform without the aid of an expert.

The SEC argues that Mintzer's opinion that SBB was obligated to comply with GAAP is not a factual narrative because this statement is considered "background" material in Mintzer's expert report which connects to his ultimate opinion that GAAP required SBB management to prepare

---

[3] The parties also disagree about the basis of Mintzer's opinions about RSM's resignation and whether the opinions are "new" or were previously disclosed in his expert report. Because this Court finds that Mintzer's testimony about RSM's resignation must be excluded under *Daubert,* the Court does not need to address the merits of this issue.

GAAP-compliant financial statements – a task that could not be delegated to third party auditors. The SEC also argues that Mintzer's testimony would assist a jury in understanding the auditor-audit client relationship. The SEC contends that SBB's reliance arguments are inconsistent with the GAAS principles that govern that relationship as they do not allow a client to rely on an auditor to ensure compliance with GAAP.

It is unclear what information in Mintzer's opinion is considered background and what is considered his opinion. The chart offered by the SEC do not provide any clarity.[4] Although the SEC essentially contends that a factual narrative is permissible for background facts, the lack of delineation between alleged background facts and Mintzer's opinion in the expert report requires barring Mintzer's opinion.

> c.  *Testimony about the Custody Rule*

SBB argues that Mintzer's option about the Adviser Act's Custody Rule should be excluded because he is not qualified to offer such testimony and his opinion is not based on a reliable methodology. SBB argues that certain statements in Mintzer's opinion were contradicted by his deposition testimony alleging that the statements do not support his opinion about the Custody Rule and that they predated the existence of the Custody Rule.

The SEC contends that the testimony cited by SBB in support of their argument is background information, not Mintzer's opinion, and therefore does not support exclusion.

Here, Mintzer's testimony about the Custody Rule should be excluded. While the SEC contends that the disputed paragraph is background information to support Mintzer's opinion, it is unclear where Mintzer's *actual* opinion on the Custody Rule is discussed in his report versus what is

---

[4] The SEC's chart attempts to delineate between what information is considered "background" and what information is considered "opinion". The SEC argues that when a paragraph begins with the phrase, "in my opinion," the following information is Mintzer's opinion. However, the chart cites to multiple paragraphs as Mintzer's opinion, but the paragraphs do not contain the phrase.

considered background information. Mintzer's deposition testimony further necessitates exclusion as the specific statements included in his report are not supported by the documents Mintzer allegedly relied upon. This case is very similar to the expert in *Obrycka v. City of Chicago,* No. 07-C-2372, 2012 WL 4092653, at *5 (N.D. Ill. 2012) (St. Eve, J.). In *Obrycka*, the court excluded an expert's opinion where the expert could not recall the content of the documents he relied upon in forming his opinion and his deposition testimony revealed that the documents relied upon were rescinded prior to the formation of his opinion. *Id.* at *5. Like the expert in *Obrycka*, Mintzer testified during his deposition that he could not recall the documents he relied upon in forming his opinion and that some of the documents were rescinded prior to the enactment of the Custody Rule. Accordingly, his testimony about the Custody Rule must be excluded.

d. *Testimony on SBB Management's Responsibility for the Preparation and Presentation of GAAP financial statements*

SBB argues that Mintzer's opinion on SBB management's responsibility for the preparation and presentation of GAAP financial statements should be excluded because such opinion is not in dispute and will therefore confuse the jury. SBB argues that Mintzer's opinion on SBB's delegation of responsibilities to RSM does not concern an issue in dispute as SBB has never contended that SBB delegated their responsibilities for the Funds' financial statements to RSM.

The SEC seems to combine their response to this argument with their response to SBB's argument for exclusion of Mintzer's RSM resignation testimony, contending here that Mintzer's opinion directly addresses SBB's reliance on the RSM defense – essentially that SBB relied on RSM as their auditor and should not be liable for any issues with the Funds' financial statements. However, the SEC does not address SBB's specific argument that Mintzer's opinion that SBB could not delegate their responsibilities for preparing and presenting the Funds' financial statements in accordance with GAAP should be excluded as it is not in dispute.

The opinion in dispute clearly states, "It is my opinion that SBB management could not delegate its aforementioned responsibilities for the Funds' financial statements to its auditors… Nor could it rely on its independent auditors… for the responsibilities to prepare and fully present the Funds' financial statements 'in accordance with GAAP.'"  Mintzer's opinion does not discuss the RSM defense – it merely states a fact that is not in dispute.  Now, if SBB contends it is not responsible for preparing and presenting GAAP financial statements at trial, the Court may revisit whether this issue is in dispute.  However, with the information in front of the Court at this time, Mintzer's opinion that SBB is responsible for the presentation and preparation of the Funds' financial statements in accordance with GAAP must be excluded.

### e. *Testimony about GAAS audits*

SBB argues that Mintzer's opinion that the issuance of an unqualified audit opinion under GAAS does not mean that the audit was, in fact, performed in accordance with GAAS should be excluded as Mintzer does not substantiate his opinion and only provides this ultimate conclusion with no supportive analysis.

The SEC contends that SBB provides no basis to exclude either Mintzer's statement of facts (related to the RSM action) or his claim that those facts do not change his stated opinion.

Here, Mintzer offers absolutely no supportive analysis, documentation, methodology, etc., to support his GAAS audits testimony.  It is a foundation of our legal systems that facts must be plead to support an opinion.  Mintzer's failure to do so here renders his opinion inadmissible.

### 2. **Mintzer's Second Report**

### a. *Untimely and Improper*

SBB argues that Mintzer's second report should be fully excluded as untimely and improper. SBB argues that, while the SEC was required to disclose any expert testimony on materiality by April 17, 2023, the magistrate judge granted the SEC's request for leave to submit rebuttal reports, limited

to only new opinions offered by the opposing party's experts. However, SBB argues that SEC's new report was neither "limited" nor "rebuttal" as Mintzer's opinion offers a SAB 99 materiality analysis that should have been disclosed in his opinion report as the SEC offered Hickey as its materiality witness.

The SEC contends that SBB's timely and improper argument is essentially an attempt to get a second bite of the apple as the argument was already litigated in front of the magistrate judge who permitted the rebuttal report. The SEC argues that it disclosed the exact subjects of rebuttal in response to Deetz's purported rebuttal. The SEC contends that SBB already made these arguments, which the magistrate judge rejected and, if they wanted to appeal the magistrate judge's decision, it should have done so 14 days after the ruling. *See* Fed. R. Civ. P. 72(a).

"The proper function of rebuttal evidence is to contradict, impeach, or defuse the impact of the evidence offered by an adverse party." *United States v. Grintjes,* 237 F.3d 876, 879 (7th Cir. 2001). A "plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put his evidence on the issue as part of his case in chief." *Braun v. Lorillard Inc.,* 84 F.3d 230, 237 (7th Cir. 1996). Therefore, "[t]estimony offered only as additional support to an argument made in a case in chief" – or evidence for an argument that should have been made in the case in chief – "is improper on rebuttal." *Pearls v. Terre Haute Police Dep't,* 535 F.3d 621, 630 (7th Cir. 2008). "Otherwise the plaintiff could reverse the order of proof, in effect requiring the defendants to put in their evidence before the plaintiff put in [hers]." *Braun,* 84 F.3d at 237.

The Court finds that Mintzer's second report was timely and proper. Indeed, Magistrate Judge Holleb Hotaling ruled that SEC put forth a "better argument" to support the need for a rebuttal report due to the complexity of the expert opinions offered by SBB. While SBB contends that this Court must decide whether the rebuttal report is proper, Judge Holleb Hotaling's ruling did

not find that Mintzer's rebuttal report was proper. Rather, Judge Holleb Hotaling found that the rebuttal report "shall be limited to responding to any additional opinions offered by Defendants' experts, as Plaintiff describes." (Dkt. 197). The ruling specifically references the SEC's reply brief which outlined exactly the information the rebuttal report will analyze. (Dkt. 196 at 6). SBB now argues that the opinions offered in Mintzer's brief should have been included in the opening report and were improperly offered to support the materiality opinions offered by the SEC's materiality expert, Peter Hickey. However, as Judge Holleb Hotaling found that the SEC could present limited testimony, as described in their reply brief, the Court finds that Mintzer's rebuttal report is timely and proper to the extent that it addresses only the areas the SEC outlined in their reply brief.

      *b. Mintzer's Materiality Analysis*

SBB argues that Mintzer's materiality analyses should be excluded as unhelpful to the jury because they do not reflect the facts of the case or follow relevant accounting methods. SBB contends that Mintzer's materiality analyses rely on the assumption that there is a singular fair value of the structured notes, although SBB's structured notes have a range of fair values. SBB argues that Mintzer's assumption does not fit the facts and therefore his analyses are unlikely to assist the jury.

The SEC argues that SBB's contention that Mintzer's materiality analyses should have included a range of potential fair values is without merit as Mintzer's method is consistent with GAAP. The SEC contends that there is no GAAP or GAAS provision requiring Mintzer's opinion to include a range of values. The SEC contends that Mintzer is qualified to offer such opinion and there is no GAAP or GAAS provision necessitating the exclusion of Mintzer's materiality analyses.[5]

---

[5] The SEC also attempts to put forward a second argument for excluding Deetz's +/- 5% band. Their response is not the proper vehicle for this side-step attempt to relitigate their *Daubert* motion and will not be considered by this Court.

The Court finds that Mintzer's materiality analyses should not be excluded. The SEC's response explains Mintzer's materiality analyses at length. Specifically, Mintzer compared SBB's values to values from several models that presumptively complied with GAAP and thereafter applied Deetz's 2% materiality threshold and used it as a "rule of thumb" for quantitative materiality. While SBB relies on *Owens v. Auxilium Pharmaceuticals, Inc.,* 895 F.3d 971, 973 (7th Cir. 2018) to support the exclusion of Mintzer's testimony, that case is inapposite here. In *Owens,* the Seventh Circuit confirmed the District Court's exclusion of expert testimony where the expert testified about a hypothetical, not the facts of the case. *Owens,* 895 F.3d at 973. Here, SBB's argument goes to the soundness of Mintzer's methodology. Indeed, SBB cannot point to any *requirement* that a range be used or, in the alternative, that a single point estimate for comparison is prohibited for exotic options. In other words, whether a range should be implemented when conducting materiality analyses of structured notes is not a basic fact of the case. *Cf. Owens,* at 973. Questions regarding an expert's use of assumptions or data should be left to the jury. *Id.*

### c. Mintzer's Critique on Deetz's Materiality Analysis

SBB argues that Mintzer's critique of Deetz's materiality assessment is unreliable because Mintzer's opinion that Deetz failed to consider several factors is inaccurate as Deetz considered such factors and therefore any opinion to the contrary would only confuse the jury and therefore should be excluded.

The SEC responds that Mintzer's criticisms of Deetz's failure to consider model bias and management intent should not be excluded.

Through Mintzer, the SEC is essentially attempting to admit back door testimony about what GAAP and GAAS require for the consideration of management intent and model bias factors in his expert opinion. As outlined above, the SEC's failure to put forth any evidence to support the specific requirements for adequate consideration of management intent and model bias under

GAAP and GAAS waives such argument. *Schaefer*, 839 F.3d at 607. Even further, Deetz already testified that he *did* consider both management intent and model bias in forming his opinion. The SEC can examine Deetz about how he considered both factors, but to offer an expert for the requirements under GAAP and GAAS is pure *ipse dixit* and must be excluded where the SEC failed to provide any support for such requirements.

### F. Steven Richards

SBB intends to present testimony of Steven Richards, a certified public accountant and senior managing director in the forensics practice of Ankura Consulting Group, LLC. Richards conducted a review of SBB Fund financial statements, litigation documents, and publicly available materials. Richards offered opinions on the shortfalls of Mintzer's conclusions, including Mintzer's opinions about RSM's compliance with GAAS, RSM's resignation, and GAAS standards.

The SEC seeks to exclude Richards' testimony about (1) RSM's compliance with GAAS; (2) RSM's resignation; and (3) GAAS standards.

### 1. *Testimony about RSM's compliance with GAAS*

The SEC argues that Richards' opinions about RSM's compliance with GAAS are irrelevant because whether RSM complied with GAAS when resigning is not at issues in this case. In contrast, RSM's determination that they were being lied to, its decision to withdraw as SBB's auditor, and its withdrawal of prior audit reports are relevant to SBB's affirmative defense that it relied in good faith on RSM to bless their valuation model. The SEC contends that testimony about RSM's compliance with GAAS is prejudicial in that it supports SBB's "groundless narrative" that RSM resigned to avoid charges despite no evidence to support any misconduct by RSM.

SBB contends that the SEC made RSM's resignation relevant in their reliance on the resignation in the complaint and that there is evidence that RSM's resignation was a defense maneuver in response to the Wells Notice. SBB also alleges that RSM's resignation is relevant to the

reliance on auditors' defense and can be relevant to proving or disproving scienter. SBB lastly argues that Richards' opinion about other SEC cases involving auditors should not be excluded as it shows that RSM's resignation was pretextual and it will help the jury understand how unusual it is for an audit partner to escape charges while the firm itself is charged.

Again, this is a classic disagreement of experts. The fact that the parties disagree as to whether RSM's compliance with GAAS was relevant is not a basis for exclusion. *See, e.g., Manpower*, 732 F.3d at 808; *Winters v. Fru–Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) ("The focus of the district court's *Daubert* analysis must be solely on principles and methodology, not on the conclusions they generate."). Such disagreement should be resolved by the jury, not at the *Daubert* stage.

### 2. *Testimony about RSM's resignation*

The SEC argues that Richards' testimony about RSM's resignation is an inappropriate attempt to resolve factual disputes over RSM's resignation. The SEC argues that, under *Daubert*, Richards may not challenge the credibility of other witnesses and may not interpret evidence that speaks for itself.

SBB contends that Richards' opinion on RSM's resignation is admissible because it is based on record evidence and his experience. SBB argues that Richards does not make a credibility determination. Instead, his opinion outlines what a reasonable auditor should have done based on his expertise and experience.

The Court finds SBB's argument persuasive. Specifically, SBB cites *Jiminez v. City of Chicago*, where the court found that expert testimony about what a reasonable police investigator should have done when presented with conflicting and/or inculpatory statements during a murder investigation was not akin to a credibility determination and therefore permissible. 732 F.3d 710, 723 (7th Cir. 2013). The expert's testimony in *Jiminez* is similar to Richards' testimony about RSM's resignation in

34

this case. Richards is permitted to opine on what a reasonable auditor would do and he may draw on his experience and record evidence to support his opinion.

### 3. Testimony about GAAS standards

The SEC argues that Richards' opinions are unreliable because he is not an expert in industry practices in applying GAAS in the resignation context. The SEC also argues that Richards offered no facts to support that his interpretation of GAAS resignation standards is generally accepted in the auditing community and that he failed to consider other GAAS standards and contradictory evidence.

SBB contends that Richards is qualified as an expert based on his wide range of practical experience. SBB also argues that Richards provides sufficient evidence to support his opinions about GAAS standards.

As in the majority of *Daubert* motions brought in this case on both sides, the parties' arguments have essentially evolved into a fight over the legitimacy and accuracy of the expert's opinions – an argument that is inappropriate for this Court to resolve at this stage in litigation. *In re Allstate Corporation Securities Litigation*, 2022 WL 842737, at *25 ("It is not the province of this Court upon *Daubert* review to choose between competing theories of proof."). Richards' background as a certified public account and his work experience permits him to testify about GAAS standards and his opinion is reliable based on the plethora of cited documents. This is enough to meet the *Daubert* requirements.

**CONCLUSION**

For the reasons stated above, the Motion to Limit the Opinion Testimony of Arun Sen [210] is denied; the Motion to Exclude Materiality Opinions of Gene Deetz [211] is denied; the Motion to Exclude Opinions of Steven Richards [212] is denied; the Motion to Exclude Expert Opinions and Testimony of Andrew M. Mintzer [213] is granted in part and denied in part; the Motion to Exclude

Certain Opinions and Testimony of Craig McCann [214] is denied; and the Motion to Exclude

Expert Opinions and Testimony of Peter Hickey [215] is granted.

**IT IS SO ORDERED.**

Date: 11/26/2024

Entered:

_____
SHARON JOHNSON COLEMAN
United States District Judge