# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:19-cv-06473 |
| v. | The Honorable Sharon Johnson Coleman, United States District Judge |
| SBB RESEARCH GROUP, LLC, SAMUEL B. BARNETT, and MATTHEW LAWRENCE AVEN, | |
| Defendants. | The Honorable Keri L. Holleb Hotaling, United States Magistrate Judge |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF ORDER EXCLUDING EXPERT TESTIMONY OF PETER HICKEY

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................................. 1

II.   LEGAL STANDARD ........................................................................................... 2

III.  ARGUMENT ........................................................................................................ 3

     A.    There Was No Manifest Error in Excluding Hickey's Materiality Opinions .......... 3

     B.    There Was No Manifest Error in Excluding Hickey's Opinions About SBB's Valuation Model ............................................................................. 6

          1.    Hickey's Valuation Model Opinions Are Inadmissible for Many Reasons ................................................................................... 6

          2.    The Court's Analysis Remained Within the Issues Presented by the Parties ..................................................................................... 8

          3.    The Court Understood the SEC's Relevance Arguments ......................... 10

          4.    The Court Correctly Held That the Probative Value of Hickey's Valuation Model Opinion Is Substantially Outweighed by Unfair Prejudice, Confusing the Issues, and Misleading the Jury ......................... 13

     C.    Hickey's Importance to the SEC's Case Is Not a Basis for Reconsideration ........ 14

IV.  CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahmed v. Ashcroft*,
388 F.3d 247 (7th Cir. 2004) ..................................................................................2

*Ancho v. Pentek Corp.*,
157 F.3d 512 (7th Cir. 1998) ................................................................................14

*Appert v. Morgan Stanley Dean Witter, Inc.*,
673 F.3d 609 (7th Cir. 2012) ..................................................................................5

*Bank of Waunakee v. Rochester Cheese Sales*,
906 F.2d 1185 (7th Cir. 1990) ..............................................................................11

*Buscaglia v. United States*,
25 F.3d 530 (7th Cir. 1994) ............................................................................11, 12

*Cnty. of Cook v. Wells Fargo & Co.*,
2022 WL 17752387 (N.D. Ill. Dec. 19, 2022) ......................................................15

*Davis v. Duran*,
277 F.R.D. 362 (N.D. Ill. 2011) ............................................................................10

*Downing v. Abbott Labs.*,
2019 WL 13398258 (N.D. Ill. Sept. 9, 2019) ........................................................4

*Early v. Rhoads*,
2018 WL 8061739 (S.D. Ind. Dec. 14, 2018) ..................................................9, 10

*Fox v. Admiral Ins. Co.*,
2016 WL 3520145 (N.D. Ill. June 28, 2016) ..........................................................9

*Harvard Sav. Bank v. Sec. Nat'l Ins. Co.*,
2017 WL 11885187 (N.D. Ill. Nov. 28, 2017) ........................................................4

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
2022 WL 2915627 (N.D. Ill. July 25, 2022) ..........................................................2

*In re Novatel Wireless Sec. Litig.*,
2011 WL 5827198 (S.D. Cal. Nov. 17, 2011) ......................................................12

*Kirk v. Clark Equip. Co.*,
991 F.3d 865 (7th Cir. 2021) ................................................................................15

*Lock Realty Corp. IX v. U.S. Health, LP*,
2010 WL 148296 (N.D. Ind. Jan. 13, 2010) .................................................................4

*Mendez v. City of Chicago*,
2024 WL 4661139 (N.D. Ill. Sept. 20, 2024) ...........................................................10

*Minasian v. Standard Chtd. Bank, PLC*,
109 F.3d 1212 (7th Cir. 1997) .................................................................................6

*Owens v. Auxilium Pharms., Inc.*,
895 F.3d 971 (7th Cir. 2018) ................................................................................11

*Saleh as Tr. of Nabil Saleh M.D. LTD Pension Plan v. Merch.*,
2020 WL 11577828 (N.D. Ill. Feb. 18, 2020) .......................................................2, 4

*SEC v. Leslie*,
2010 WL 2991038 (N.D. Cal. July 29, 2010).........................................................12

*SEC v. Lucent Techs., Inc.*,
610 F. Supp. 2d 342 (D.N.J. 2009) .......................................................................12

*SEC v. Nat'l Presto Indus., Inc.*,
2004 WL 1093390 (N.D. Ill. Apr. 28, 2004) ...........................................................2

*SEC v. Nutmeg Grp., LLC*,
2017 WL 1545721 (N.D. Ill. Apr. 28, 2017) ........................................................7, 8

*SEC v. Retail Pro, Inc.*,
2011 WL 589828 (S.D. Cal. Feb. 10, 2011) ...........................................................12

*Slick v. Portfolio Recovery Assocs., LLC*,
111 F. Supp. 3d 900 (N.D. Ill. 2015) .......................................................................2

*Smith v. Ford Motor Co.*,
215 F.3d 713 (7th Cir. 2000) ................................................................................11

*Tolston-Allen v. City of Chicago*,
2020 WL 5578425 (N.D. Ill. May 27, 2020) ...........................................................2

*Turner v. M.B. Fin. Bank*,
2018 WL 1920195 (N.D. Ill. Apr. 23, 2018) .........................................................11

*United States v. Hall*,
165 F.3d 1095 (7th Cir. 1999) ...............................................................................10

*United States v. Johnson*,
89 F.4th 997 (7th Cir. 2024) .................................................................................14

*United States v. Ligas*,
    549 F.3d 497 (7th Cir. 2008) ................................................................2

*Wilkins v. Just Energy Grp., Inc.*,
    171 F. Supp. 3d 798 (N.D. Ill. 2016) ....................................................9

## RULES

Fed. R. Evid. 403 ...................................................................... *passim*

Fed. R. Evid. 702 ........................................................................10, 13

## OTHER AUTHORITIES

U.S. SECURITIES AND EXCHANGE COMMISSION, *Investor Publications: Microcap Stock: A Guide for Investors*, https://www.sec.gov/about/reports-publications/investorpubsmicrocapstock (last visited Jan. 30, 2025).......................................7

## I.    PRELIMINARY STATEMENT

The SEC's motion for reconsideration is a last-ditch effort to resuscitate properly excluded expert testimony from an unqualified person using unreliable methods.  Peter Hickey is not a certified public accountant ("CPA"), has never worked in an accounting role, has no experience with the structured note market at issue here, has never valued structured notes for the purposes of financial reporting, has never opined on the materiality of alleged misstatements, and has zero expertise in the relevant GAAP materiality standards (ASC 105 and SAB 99).  Hickey did not conduct any analysis or surveys to support his opinions about SBB's valuation model or materiality.  The SEC therefore cannot meet its burden to show that the Court made a manifest error of fact or law in excluding Hickey's opinions in full.

The SEC's motion targets the Court's exclusion of Hickey's opinions about SBB's valuation model and the materiality of SBB's representations to investors, but completely misses the mark on both fronts.  The Court excluded Hickey's materiality opinions on two grounds: he is unqualified to offer them *and* they are mere *ipse dixit*.  Dkt. 238 ("Order") at 17-18.  The Court excluded Hickey's opinions about SBB's valuation model under Rule 403, as any limited testimony he could theoretically offer on a single GAAP provision would not be helpful to a jury and instead would risk confusing and misleading the jury by placing an undue emphasis on one GAAP provision.  *Id*. at 15-16.

Rather than take issue with the Court's finding on Hickey's lack of qualifications and *ipse dixit* statements regarding materiality, the SEC points to a single supposed error of law that was *not* the basis for the Court's materiality holding: the Court's Rule 403 analysis.  And as to Hickey's valuation model opinions, the Court's ruling was consistent with the Seventh Circuit standard for expert exclusions under Rule 403, is not an error of law or fact, and does not fall outside of the issues before the Court.

The SEC fails to demonstrate that this is among the rare instances where the Court should reverse itself. The Court ordered Hickey's full exclusion after reviewing a mountain of briefing and holding a full-day *Daubert* hearing. The Court did not misapprehend anything. At bottom, the SEC asks the Court to spare the agency the consequences of its mistake in hiring an unqualified expert who did not use a reliable methodology to opine on issues that the SEC contends are critical to its case. That is no reason for the Court to reverse its decision.

## II.    LEGAL STANDARD

"Relief based on a motion to reconsider is an extraordinary remed[y] reserved for the exceptional case." *Tolston-Allen v. City of Chicago*, 2020 WL 5578425, at *1 (N.D. Ill. May 27, 2020).[1] Court "orders are not mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *SEC v. Nat'l Presto Indus., Inc.*, 2004 WL 1093390, at *2 (N.D. Ill. Apr. 28, 2004). Motions for reconsideration are not vehicles for "rehashing previously rejected arguments," *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004), or for a party to "undo its own procedural failures." *Saleh as Tr. of Nabil Saleh M.D. LTD Pension Plan v. Merch.*, 2020 WL 11577828, at *1 (N.D. Ill. Feb. 18, 2020). Rather, motions for reconsideration "serve the limited function of correcting manifest errors of law or fact." *Slick v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 900, 902 (N.D. Ill. 2015). A manifest error of law or fact occurs "when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501-02 (7th Cir. 2008). Such manifest errors "rarely arise and motions for reconsideration should be equally as rare." *In re Clearview AI, Inc., Consumer Priv. Litig.*, 2022 WL 2915627, at *4 (N.D. Ill. July 25, 2022).

---

[1] Unless otherwise stated, all internal quotations and citations are omitted.

2

## III.    ARGUMENT

### A.    There Was No Manifest Error in Excluding Hickey's Materiality Opinions

The SEC asks the Court to reverse its decision to exclude Hickey's opinions on the materiality of Defendants' representations about compliance with ASC 820.  Dkt. 242 ( "Mot.") at 1, 15 (targeting the exclusion of Hickey's opinion regarding "why Defendants' representation that SBB had complied with the fair value GAAP requirements memorialized in ASC § 820 could be important to a reasonable investor").  As noted, the Court held that (a) "Hickey's lack of experience in the GAAP materiality provisions necessitates the exclusion of his materiality opinion" and (b) his materiality opinions were *ipse dixit*.  Order at 17-18.  In seeking reconsideration of that ruling, the SEC does not address the Court's rationales and instead focuses on Rule 403, which was *not* the basis for its exclusion of Hickey's materiality opinions.

Perhaps understanding it cannot feasibly challenge the Court's analysis, the SEC tries to re-frame Hickey's opinion on materiality—the "importance" of SBB's representations to investors—as an ASC 820 opinion excluded under Rule 403.  Mot. at 1.  At the same time, the SEC suggests that the Court's ruling was limited to "the materiality of *numerical disclosures* in SBB's financial statements under ASC 105 or SAB 99."  *Id.* at 1 n.1 (emphasis added).  The Court should reject these efforts at misdirection.  The Court excluded Hickey's opinion about the importance of the alleged process misrepresentations in the materiality section of its decision, not in the section excluding his opinions on SBB's valuation model under Rule 403.  *See* Order at 15-16 (valuation section); *id.* at 17 (materiality section excluding Hickey's opinion that "*SBB's representation* to investors that the SBB Funds were valued in accordance with GAAP would be considered important by a reasonable investor") (emphasis added).

The SEC fails to even *address* the Court's rulings that Hickey is unqualified to opine on materiality and that his materiality opinion was *ipse dixit*, let alone identify a manifest error of law

3

or fact. *See Lock Realty Corp. IX v. U.S. Health, LP*, 2010 WL 148296, at *1 (N.D. Ind. Jan. 13, 2010) (denying motion to reconsider striking of expert report where plaintiff failed to show that court order "constitute[d] a manifest error of law or fact"). For this reason alone, the Court should deny the SEC's request to reconsider its decision to exclude Hickey's materiality opinions. *See Saleh*, 2020 WL 11577828, at *7-8 (rejecting "undeveloped" argument in reconsideration motion that "entirely ignores the reason that the Court dismissed these claims"); *Harvard Sav. Bank v. Sec. Nat'l Ins. Co.*, 2017 WL 11885187, at *2 (N.D. Ill. Nov. 28, 2017) (rejecting "wholly undeveloped argument" in reconsideration motion).

Putting that aside, there is no manifest error of law or fact in the Court's exclusion of Hickey's materiality opinions. The SEC cannot sub-divide Hickey's materiality opinions into representations versus numbers in hopes that he is qualified to testify to the former even if not the latter. *See* Mot. at 13 n.6. The SEC does not dispute that Hickey is unqualified to testify about "the materiality of numerical disclosures in SBB's financial statements" given his admitted lack of knowledge of ASC 105 or SAB 99. *Id.* at 1 n.1. Instead, the SEC offers the far-fetched argument that Hickey is somehow still "qualified to" testify why "representations about compliance with GAAP's fair value standard" could "be important to a reasonable investor."[2] *Id.* at 9. The SEC's use of the word "important" rather than "material" does not change the fact that Hickey is offering

---

[2] The SEC now states that "Hickey offers testimony regarding why" these representations "*could* be important to a reasonable investor." Mot. at 9 (emphasis added). The SEC previously argued that Hickey will testify that SBB's representations "*would* be considered important by a reasonable investor," as Hickey opines in his report. Dkt. 213-2 ¶ 10(c) (emphasis added); *see* Dkt. 218 at 17-18 (arguing "Hickey is qualified to offer his opinion that a fund's failure to comply with ASC § 820, or its overvaluation of fund investments, *would* be considered material information to a reasonable investor" (emphasis added)). Assuming the SEC's new framing is intentional, it raises a different flaw: telling the jury what could (or could not) be important to investors is not helpful to the trier of fact. *Downing v. Abbott Labs.*, 2019 WL 13398258, at *2 (N.D. Ill. Sept. 9, 2019) ("Telling the jury that Abbott's actions might—or might not— have been motivated by racial animus does nothing more than restate the issue the jurors must decide; it does not move the needle in one direction or the other with respect to answering that question.").

a materiality opinion, as the two words are synonymous in this context. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 616 (7th Cir. 2012) ("A fact is *material* if there is a substantial likelihood that a reasonable shareholder would consider it *important* in deciding whether to buy or sell a security.") (emphasis added). Indeed, Hickey himself testified that he viewed "material" and "important" as synonymous. Dkt. 213-12 (Hickey Tr.) at 142:18-143:7.

The SEC does not and cannot explain how Hickey is qualified to testify that Defendants' purported "process misrepresentations" would or could be important to investors. Dkt. 242-1 ("Hearing Tr.") at 5:2-7. After all, the SEC's other materiality expert, Andrew Mintzer, explained that assessing the materiality of alleged narrative misrepresentations implicates the same GAAP provisions as assessing the materiality of alleged numerical misstatements: ASC 105 and SAB 99. *See* Dkt. 213-14 (Mintzer Dep.) at 355:2-357:8 (explaining materiality under ASC 105 and its application to both "numeric or narrative" misstatements); *id.* at 361:9-363:23 (explaining SAB 99 is the standard for assessing materiality and noting that materiality concerns the significance of both "numeric as well as the narrative disclosure" to users of the financial statements); *see also id.* at 358:24-359:1 ("I'm not sure I understand what 'a process failure' means"). Instead, the SEC's reconsideration effort turns on Hickey's purported ASC 820 expertise. Mot. at 4 (arguing Hickey's expertise is ASC 820); *id.* at 13 n.6 (baselessly asserting that the Court's concern was limited to Hickey's numerical materiality opinion and suggesting that "protective limitations" preventing "numerical" materiality testimony would allow Hickey to testify about ASC 820). But the Court already rejected the SEC's argument that Hickey's purported ASC 820 expertise makes him qualified to opine on whether SBB's representations are important to investors. Order at 17-18 (acknowledging "the SEC's purported statements that Hickey is only being offered as an expert

on ASC 820," but concluding "Hickey is clearly expanding the limitations of his expertise to opine on GAAP generally, not just ASC 820").

Nor can the SEC point to any methodology Hickey used to support his conclusions as to what would be important to a reasonable investor. That is because he employed none, cited no standards, included no analysis, and conducted no surveys to understand what *any* investor would find important, let alone sophisticated investors in private funds invested in bespoke structured notes. Dkt. 215 at 17-19; Dkt. 213-12 at 174:7-21. An "expert's report that does nothing to substantiate [his] opinion is worthless, and therefore inadmissible." *Minasian v. Standard Chtd. Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997). The Court correctly found Hickey was not qualified to offer his *ipse dixit* opinion on what is important to investors, and the SEC's motion provides no basis to revisit that decision.

## B. There Was No Manifest Error in Excluding Hickey's Opinions About SBB's Valuation Model

### 1. Hickey's Valuation Model Opinions Are Inadmissible for Many Reasons

Hickey is not qualified to testify about the application of ASC 820 to the valuation of the structured notes at issue here, and he did not use a reliable methodology in reaching his opinions about SBB's model. Contrary to the SEC's suggestion (Mot. at 4), Defendants have never "conceded" that Hickey is qualified to testify about ASC 820's requirements. Defendants' motion to exclude Hickey quite plainly called out Hickey's lack of qualifications to offer such an opinion. Dkt. 215 at 6-7. Nor did the Court conclude that Hickey is qualified to opine on ASC 820 or "suggest[] that he could both testify (and be cross-examined)" about ASC 820's "limitation on volatility inputs and unobservable inputs." Mot. at 4 n.3; *see* Order at 15-16 (noting "Hickey *may* be qualified to opine on ASC 820," not concluding he *is* qualified (emphasis added)); Dkt. 242-1

6

at 123:9-14 (referring to Hickey as a "so-called expert" after attorney argument). Instead, the Court granted Defendants' *Daubert* motion in full.

As Defendants explained in that motion, Hickey's opinions about the SBB valuation model's purported noncompliance with ASC 820 do not pass muster for several reasons. *First*, Hickey is unqualified. He admits that ASC 820 requires consideration of valuation inputs used by other market participants, but lacks knowledge of the market for structured notes similar to those invested in by SBB's funds. *Second*, Hickey's opinions are based on an unreliable methodology: he did not survey the market to understand, or cite any academic or industry analysis describing, the inputs other market participants use to value these types of structured notes. *Third*, Hickey's opinions rely on impermissible credibility determinations. And *fourth*, Hickey's opinions merely summarize the evidence. The Court acknowledged each of these arguments in its Order. Order at 15.

The SEC's motion does not explain why Hickey should be permitted to opine that Defendants violated ASC 820 when he has no knowledge of the market at issue and did nothing to support his opinion. The SEC suggests his admission as an expert on fair value in *SEC v. Nutmeg Group, LLC*, 2017 WL 1545721 (N.D. Ill. Apr. 28, 2017), necessitates his admission here. Mot. at 13. But Hickey's experience in an entirely different case does not qualify him as an expert in this case. In *Nutmeg*, the defendant investment advisory firm invested in "restricted microcap securities," and the court explicitly found that "Hickey ha[d] developed experience valuing … restricted stocks," qualifying him to render certain fair value opinions provided in that case.[3]

---

[3] Microcap securities are not complex financial instruments; rather, they are stocks in publicly traded companies that have a market capitalization less than $250 or $300 million. *See* U.S. SECURITIES AND EXCHANGE COMMISSION, *Investor Publications: Microcap Stock: A Guide for Investors*, https://www.sec.gov/about/reports-publications/investorpubsmicrocapstock (last visited Jan. 30, 2025). Any expertise in restricted microcap securities thus does not qualify Hickey to opine on the market for the complex financial instruments at issue here with payoffs linked to long-dated, multi-underlying derivatives.

*Nutmeg*, 2017 WL 1545721 at *17. The Court made no such finding in this case. More importantly, Hickey has no experience valuing the kind of bespoke, complex structured notes at issue here, as has been made repeatedly and resoundingly clear in his deposition. Dkt. 213-12 at 41:16-18 (no experience with "worst of" structured notes); *id.* 175:11-12 (never invested in structured notes). The reasons set forth in Defendants' *Daubert* motion provide more than ample reason to exclude Hickey's opinions on the valuation model in full, even before considering Rule 403.

## 2. The Court's Analysis Remained Within the Issues Presented by the Parties

The heart of the SEC's reconsideration motion is the proposition that the Court, by excluding Hickey's valuation model opinions on Rule 403 grounds, "made a decision outside the adversarial issues presented to the Court." Mot. at 2-3. Not so.

As discussed above, the Court was presented with—and referenced in its decision— substantial evidence that Hickey (1) is not qualified to opine on whether SBB's valuation model violated ASC 820 and (2) failed to use a reliable methodology to support his opinions about SBB's valuation model. Order at 15 (discussing Defendants' arguments). And even beyond the fact that Hickey has no expertise in the structured note market, the SEC does not dispute that Hickey's purported GAAP expertise is limited to ASC 820. Dkt. 218 at 16. Hickey could not explain, for example, how ASC 820 interacted with ASC 105—the GAAP provision that states it is not necessary to apply any provision of GAAP to immaterial items. Dkt. 213-12 at 213:2-10, 215:6-8; *see also* Dkt. 215 at 14. Hickey therefore cannot support the SEC's baseless argument "that if one violates the ASC § 820 standard, by definition, they have violated GAAP." Mot. at 12.

Defendants urged the Court to exclude Hickey as an expert because (among other reasons) his "claimed expertise is based solely on ASC 820, which is just one of many provisions of

8

GAAP." Dkt. 215 at 13-14. The Court agreed, concluding that Hickey's opinion on SBB's valuation model should be excluded under Rule 403 because any limited testimony he could arguably be qualified to offer on ASC 820 would cause "unfair prejudice" by confusing the issues and misleading the jury. Order at 16. The Court's invocation of Rule 403 did not bring it beyond the adversarial issues presented by the parties.

Courts routinely reject reconsideration motions when the decision, though deploying somewhat different legal reasoning, is nonetheless based on the issue and facts presented by the parties. *See, e.g.*, *Early v. Rhoads*, 2018 WL 8061739, at *5, *7 (S.D. Ind. Dec. 14, 2018) (denying a reconsideration motion arguing that the court's order moved "outside the adversarial issues presented by the parties" by identifying issues *sua sponte*, reasoning that the briefing "and record submitted by the parties" provided "the basis for" the court's ruling); *Fox v. Admiral Ins. Co.*, 2016 WL 3520145, at *2 (N.D. Ill. June 28, 2016) (rejecting argument that "the [challenged] opinion included legal reasoning outside the scope of the specific arguments presented by the parties," because the overall issues the court addressed "were well within the adversarial issues presented to the Court").

The SEC's cited cases do not support its argument that the Court went outside the adversarial issues presented by the parties. Mot. at 4. For example, in *Wilkins v. Just Energy Group, Inc.*, 171 F. Supp. 3d 798, 809-10 (N.D. Ill. 2016), the court granted in part a motion to reconsider class certification because of an unresolved factual question surrounding the named plaintiff's employment status, not because the court had decided an issue outside the parties' presentations. To the contrary, a court is well within its rights to "consider[] the entire record that is provided," and the parties' presentations here—both argument and evidence—were more than sufficient to support the Court's decision to exclude Hickey's valuation model opinions on either

Rule 702 or Rule 403 grounds. *Early*, 2018 WL 8061739, at *6; *see also Davis v. Duran*, 277 F.R.D. 362, 366 (N.D. Ill. 2011) (expert testimony reliability "is of such transcendent importance that judges can act *sua sponte* to prohibit testimony that does not pass muster under *Daubert*"). Indeed, the Seventh Circuit has expressly recognized that its "Rule 702 analysis incorporates a consideration of the Rule 403 dangers—particularly the danger of unfair prejudice." *United States v. Hall*, 165 F.3d 1095, 1104 (7th Cir. 1999); *see also Mendez v. City of Chicago*, 2024 WL 4661139, at *16 (N.D. Ill. Sept. 20, 2024) ("The Rule 702 standard for relevance also incorporates the Court's obligations under Rule 403 to determine the total effects of proposed evidence, weighing its probative value against its potential to (among other things) confuse the jury."). Thus, the parties' Rule 702 arguments necessarily incorporated Rule 403 concepts, entitling the Court to deploy them in the Order in holding that admitting Hickey's valuation model opinions would result in "unfair prejudice." Order at 16.

### 3. The Court Understood the SEC's Relevance Arguments

The SEC next asserts that the Court committed "manifest factual error" by "finding that Hickey's ASC § 820 opinions are not relevant" to its claims. Mot. at 6. But the Court did not hold that Hickey's ASC 820 opinions are irrelevant. To the contrary, the Court plainly understood the significance of ASC 820 to the SEC's case, particularly given that the parties do not dispute its centrality to the SEC's claims. *See* Hearing Tr. at 60:2-24 (MR. WISNIEWSKI: "And the entire argument that we put forth in our allegations is that when defendants say they comply with ASC 820 or they comply with GAAP, that matters …." THE COURT: "Okay. All right."); *id.* at 118:4-25 ("ASC 820 is the most significant principle for this case."); Dkt. 215 at 1 (Defendants recognizing that "[t]he key premise of the SEC's allegations" is that SBB's funds' structured notes were purportedly valued "inconsistent[ly] with ASC 820").

The Court's issue with Hickey's opinion is not the relevance of ASC 820, but that he and the SEC admit he is not qualified to testify about any other provision of GAAP or how ASC 820 interacts with another GAAP provision. If Hickey has any GAAP expertise, it is limited to one solitary section of a sprawling codification in which any one provision is impacted by one or more other provisions. As the Court recognized, "*[i]n addition to relevancy*, expert testimony must be helpful to the trier of fact." Order at 15-16 (emphasis added). The Court correctly concluded that "Hickey's opinion on only one requirement of GAAP will not be helpful to the jury," and therefore that his testimony on ASC 820 would be "substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury" by allowing him to "place undue[] emphasis on the importance of complying with ASC 820" where compliance with GAAP as a whole "is of equal importance." *Id.* at 16. Moreover, even if he had the requisite breadth of GAAP experience, because Hickey has no experience in the structured note market at issue and did nothing to understand what inputs market participants use, Hickey still could not apply ASC 820 to the facts of this case—further minimizing any ability to be helpful to the jury. *See Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018) (expert opinion must be "tied to the facts of the case" to "assist the trier of fact"). Thus, the SEC is "not a misunderstood litigant," but rather "an irresolute litigant" that retained an expert who lacked the requisite qualifications to offer a helpful opinion. *Bank of Waunakee v. Rochester Cheese Sales*, 906 F.2d 1185, 1192 (7th Cir. 1990); *Turner*, 2018 WL 1920195, at *2.

The SEC's citations to *Smith v. Ford Motor Co.*, 215 F.3d 713 (7th Cir. 2000), and *Buscaglia v. United States*, 25 F.3d 530 (7th Cir. 1994), are of no avail. *Smith* did not address Rule 403; instead, it held that the district court erred in ruling that the proffered testimony "failed Rule 702's relevance requirement" because it "would not assist the trier of fact with resolving the

11

ultimate issue in the case." *Smith*, 215 F.3d at 721. In *Buscaglia*, the expert's qualifications and methodology were not at issue. Instead, the district court concluded it would not be "helpful for the jury to know the coefficient of friction of" a floor "surface the plaintiff did not slip on." 25 F.3d at 532-33. The Seventh Circuit reversed, reasoning the expert's affidavit had "adequate foundation and at least moderate probative value" and observing that "test[ing] the *actual* tile on which [plaintiff] fell" as opposed to a "sample *provided by the defendant*" was not practical. *Id.* at 533. The SEC faced no such practical limitations here, as it had ample qualified GAAP experts to choose from. The SEC's challenge was not in finding an expert in the areas Hickey opined on, but rather in finding an expert who would support the SEC's perspective.

The SEC's arguments about SBB's representations or the testimony Hickey could purportedly provide about its supposed non-compliance with ASC 820 do not change the calculus. *See* Mot. at 6-10. The issue is not that such testimony would be irrelevant. The issue, rather, is that the SEC failed to put forth a qualified expert who performed a reliable methodology on a key issue in their case—whether SBB's valuation model complied with GAAP. Any limited testimony that he was possibly qualified to provide would risk confusing and misleading the jury by placing "undue emphasis on the importance of complying with ASC 820 even though compliance with all GAAP principles is of equal importance." Order at 16. Whether an understanding of ASC 820 is "beyond the ken of the average juror" is beside the point. Mot. at 10 n.4, 13.[4] Hickey's lack of qualifications to opine on ASC 820 as applied to the facts of this case is further reason his

---

[4] In each case the SEC cites (Dkt. 242 at 10 n.4), either the expert's respective qualifications to apply their expertise to the facts of the case were not at issue or the court expressly found the expert was qualified. *See SEC v. Leslie*, 2010 WL 2991038, at *10 (N.D. Cal. July 29, 2010) (no dispute that expert has "experience applying accounting rules to business transactions, and his report applies well-known accounting principles to the transactions at issue"); *In re Novatel Wireless Sec. Litig.*, 2011 WL 5827198, at *3-6 (S.D. Cal. Nov. 17, 2011) (qualifications not at issue); *SEC v. Retail Pro, Inc.*, 2011 WL 589828, at *6 (S.D. Cal. Feb. 10, 2011) (same); *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 351-52 (D.N.J. 2009) (same).

testimony should be excluded. The Court's exclusion of Hickey's opinions about SBB's valuation model is entirely consistent with both Rule 702 and Rule 403.

### 4. The Court Correctly Held That the Probative Value of Hickey's Valuation Model Opinion Is Substantially Outweighed by Unfair Prejudice, Confusing the Issues, and Misleading the Jury

The SEC's request for the Court to reconsider its finding of undue prejudice is based on its unsupported claims about what is required to prove a securities law violation related to GAAP compliance. Acknowledging Hickey's lack of experience with ASC 105, the SEC states that "there are GAAP provisions related to the separate issue of materiality of <u>numerical</u> misstatements," suggesting—without any basis—that ASC 105 does not apply to its so-called "process misrepresentations." Mot. at 11. But the SEC's own rebuttal accounting expert, Mintzer, contradicts those unfounded assertions. As Mintzer explained, ASC 105's materiality provision concerns "numeric or *narrative*" misstatements. Dkt. 213-14 at 355:2-357:8 (emphasis added).

The SEC also insists that opining "that violating ASC § 820 is a violation of GAAP … does not require a finding of any further violations of other GAAP provisions." Mot. at 12. But as Mintzer acknowledged in his testimony, the materiality provision in ASC 105 "applies to the entirety of the Codification," *i.e.*, every part of GAAP. Dkt. 213-14 at 354:19-357:4. Hickey may not need to be an expert in GAAP provisions related to depreciation or inventory to offer his proffered testimony. It is his lack of understanding of how to interpret and read GAAP provisions *together*—and, in particular, how ASC 105 impacts ASC 820—that requires exclusion of this testimony (among other reasons).[5]

---

[5] For example, Hickey testified during his deposition—without support and contrary to ASC 105—that *any* deviation from ASC 820 is material. Dkt. 213-12 at 210:9-20 ("Any deviation from" ASC 820 "or failure to apply ASC 820 would be important to investors."). Shortly after, Hickey acknowledged that he was unaware of ASC 105, which clarifies that it is not necessary to apply *any* provision of GAAP to immaterial items. *Id.* 212:2-216:11; *see also* Dkt. 215 at 13-14.

The SEC cites *United States v. Johnson*, 89 F.4th 997 (7th Cir. 2024)—a case that did not involve the admissibility of expert testimony—to argue that the Court should reconsider its finding of undue prejudice. Mot. at 10-11. Once again, this case is inapposite. *Johnson* involved the exclusion of evidence related to a laser sight attachment to a firearm in a felon-in-possession trial. 89 F.4th at 1009. The district court excluded that evidence because even a "limited discussion of the laser sight exacerbate[d]" concern "that a juror may decide the case based on their perception as to whether [the defendant] was extremely dangerous," instead of on whether the government has carried its burden of persuasion on the felon-in-possession charge. *Id.* at 1001. The Seventh Circuit reversed the exclusion of the laser sight, concluding that the district court had "overstated the risk" that this evidence "would cause the jury to decide the case based on perceptions about the defendant's dangerousness." *Id.* at 1007.

Here, there is no similar concern at stake. What *is* at stake is risking confusion of the issues presented to the jury by allowing Hickey to offer expert testimony on ASC 820 when he is not qualified to properly speak to the facts of the case. Hickey lacks experience with the market on which he hopes to opine. He also does not understand how ASC 820 interacts with the rest of GAAP, including ASC 105. Those shortcomings are more than sufficient to warrant the exclusion of his opinions.

### C. Hickey's Importance to the SEC's Case Is Not a Basis for Reconsideration

Finally, the Court should not excuse Hickey's lack of qualifications just so the SEC can try to "prove key disputed elements of its claim." Mot. at 11. The risk that excluding a party's expert may make it more difficult to prove their case is not grounds to overlook an expert's glaring lack of qualifications and reliable methodology. On the contrary, courts routinely reject arguments that an expert's opinion must be admitted because, without that testimony, the party will face an uphill battle in proving—or will be unable to prove—its case. *See Ancho v. Pentek Corp.*, 157 F.3d 512,

14

516 (7th Cir. 1998) (affirming exclusion of plaintiff's expert where district court stated, "[y]ou may indeed be prejudiced.  But that doesn't qualify [your expert.]"); *Kirk v. Clark Equip. Co*., 991 F.3d 865, 878-79 (7th Cir. 2021) (although plaintiffs "needed expert testimony to prove" their case, holding that district court "did not abuse its discretion in excluding" their only expert and "appropriately granted summary judgment"); *Cnty. of Cook v. Wells Fargo & Co.*, 2022 WL 17752387, at *10 (N.D. Ill. Dec. 19, 2022) (granting summary judgment after excluding plaintiff's expert testimony, noting "without that [expert] evidence," plaintiff "has no other evidentiary basis to establish" its case).  Like any litigant, the SEC must present experts who are qualified and use reliable methodologies.  Any prejudice to the SEC here is the result of its own failure to offer a qualified expert on a central issue in this case.

Indeed, if opinions on GAAP and materiality of statements to investors are so important to the SEC's case, it is puzzling that the agency chose to retain Hickey.  There is no shortage of accountants who are true experts in GAAP, including ASC 820, ASC 105, and SAB 99.  Unlike Hickey, GAAP experts typically are CPAs, a designation awarded only to individuals who pass a rigorous four-part test.  Perhaps Hickey's appeal to the SEC was that he would parrot the SEC's theory of the case—that the "[i]nputs and methodology matter[]" to investors (Hearing Tr. at 39:4)—because of his ignorance of the relevant accounting standards for assessing what is important to investors.  No matter the reason for the SEC's retention of Hickey, the Court properly excluded his opinions and should not rescue the SEC from the agency's own failure.

## IV.  CONCLUSION

For these reasons, the reasons set forth in Defendants' *Daubert* motion, and the reasons stated in the Order, the Court should deny the SEC's reconsideration motion.

Dated: January 31, 2025

Respectfully submitted,

By: /s/ *John J. Sikora, Jr.*
John J. Sikora, Jr. (6217330)
Heather A. Waller (6302537)
Marissa K. Perry (6337268)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel. (312) 876-7700
john.sikora@lw.com
heather.waller@lw.com
marissa.perry@lw.com

Howard J. Rosenburg (6256596)
KOPECKY SCHUMACHER
ROSENBURG LLC
120 N. LaSalle, Street, Suite 2000
Chicago, IL 60602
Tel. (312) 380-6631
hrosenburg@ksrlaw.com

H. Gregory Baker (*pro hac vice*)
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel. (212) 336-2871
hbaker@pbwt.com

*Attorneys for Defendants*
*SBB Research Group, LLC, Samuel B.*
*Barnett, and Matthew L. Aven*