# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                         Plaintiff,

            v.                              Case No. 1:19-cv-06473

SBB RESEARCH GROUP, LLC,                    Hon. Sharon Johnson Coleman
SAMUEL B. BARNETT, AND
MATTHEW LAWRENCE AVEN,

                         Defendants.

## SECURITIES AND EXCHANGE COMMMISSION'S
## STATEMENT OF UNDISPUTED FACTS
## PURSUANT TO LOCAL RULES 56.1(a)(2) AND 56.1(d)

Timothy S. Leiman (Leimant@sec.gov)
Robert M. Moye (Moyer@sec.gov)
Kevin A. Wisniewski (Wisniewskik@sec.gov)
Devlin Su (Sude@sec.gov)
175 W. Jackson Blvd., Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390

*Attorneys for Plaintiff U.S. Securities and
Exchange Commission*

Pursuant to Local Rules 56.1(a)(2) and 56.1(d), Plaintiff Securities and Exchange Commission ("SEC") respectfully submits the following statement of undisputed material facts in support of its motion for partial summary judgment against Defendants SBB Research Group, LLC; Samuel B. Barnett; and Matthew Lawrence Aven.

## I. <u>SBB Research Group, LLC:</u>

1.     SBB Research Group, LLC ("SBB") has been a SEC-registered investment adviser since April, 2014. It is the investment adviser to a series of affiliated private investment funds (the "Funds"). (Dkt. #51, Answer ¶ 17; S.J. Ex. 10, Mar. 31, 2014 SBB Form ADV Part 2A at p. 4.)

2.     Defendant Samuel B. Barnett is SBB's founder and has been SBB's CEO, managing member, and sole owner since its founding. (Dkt. #51, Answer ¶ 18.)

3.     Defendant Matthew Lawrence Aven was SBB's first employee, served as SBB's Chief Compliance Officer ("CCO") from January 2012 through November 2021, and has been SBB's Chief Operating Officer since February 2016. (Dkt. #51, Answer ¶ 3; S.J. Ex. 9, 5/12/20 Aven Answers to SEC's 1st Set of RFA ¶ 1; S.J. Ex. 5, 12/15/22 Aven Dep. Tr. at 13:11-18.)

4.     In his role as CCO, Aven was responsible for reviewing and approving all of SBB's advertising and marketing materials, and for ensuring that SBB's advertising and marketing materials did not contain any false or misleading statements. (S.J. Ex. 9, 5/12/20 Aven Answers to SEC's 1st Set of RFA ¶¶ 9, 10; S.J.

Ex. 50, SBB May 2014 Investment Adviser Compliance Manual, SBBRG 0000151 at 165, 169-170, 179.)

5.     Barnett and Aven were responsible for (a) providing the information included in SBB's marketing materials, and (b) reviewing and approving all of SBB's marketing materials before they were distributed to investors. (Dkt. #51, Answer ¶ 95; S.J. Ex. 6, 5/1/18 Handler Test. Tr. at 50:11 to 51:21.)

6.     Barnett and Aven, acting on behalf of SBB, managed the Funds' portfolio of securities, which included reviewing and making investment decisions for the Funds and structuring and negotiating the terms of the investments. (Dkt. #51, Answer ¶ 22.)

7.     For a period of his employment, Aven received a salary and bonus that was tied to SBB's profitability. (Dkt. #51, Answer ¶ 22.)

8.     As sole owner of SBB, Barnett was entitled to withdraw (or otherwise direct payment or reinvestment of) SBB's net profits. (S.J. Ex. 1, 3/14/2018 Barnett Test. Tr. at 16:25-17:11.)

## II.    <u>Polysight I, LLC – The Polysight Fund:</u>

9.     As of June 2014. the majority of investors in funds offered by SBB were "friends and family" (*i.e.*, SBB officers or their friends and relatives). (S.J. Ex. 5, 12/15/22 Aven Dep. Tr. at 73:7-25; S.J. Ex. 3, 1/24/17 Aven Testimony Tr. at 48:1-5.)

10.    As of March 31, 2014, SBB had approximately $133 million of assets under management (mostly from Barnett himself and from his friends and family)

and was the investment adviser to at least four affiliated pooled investment vehicles. (S.J. Ex. 10, Mar. 31, 2014 SBB Form ADV Part 2A at 4.)

11.    In June 2014, SBB created a new fund, Polysight I, LLC ("Polysight I"). From at least November 2015 through May 2016, Polysight I was the primary fund offered and marketed by SBB to outside investors. (Dkt. #51, Answer ¶ 25; S.J. Ex. 1, 3/14/18 Barnett Testimony Tr. at 78:15-17.)

12.    Polysight I was a "pooled investment vehicle" within the meaning of the Investment Advisers Act. (*E.g.,* S.J. Ex. 11, Mar. 30, 2016 SBB Form ADV Part 2A at p. 1.)

13.    On July 29, 2014, SBB publicly acknowledged the then-recent creation of the Polysight I fund in an article on the financial website www.marketsmedia.com. The article stated that: (a) the Polysight I fund was open to new investors; (b) Polysight I "has no cap"; and (c) SBB "says it has the capacity to manage up to $1 billion." (S.J. Ex. 55, "Quant Firm Launches New Fund," www.marketsmedia.com, July 29, 2014 (available at https://www.marketsmedia.com/quant-firm-launches-new-fund/ (last time visited June 12, 2025).)

14.    On January 6, 2016, Sam Barnett conducted an interview with the online publication Yahoo! Finance. On more than one occasion, Alan Handler attached links to this interview (and other interviews) when sending Polysight I fact sheets and/or investor presentations to prospective investors (or private money managers). (*See, e.g.*, S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at

12971; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21554; S.J.

Ex. 15, 6/20/16 Handler Polysight I Email, ELK-0027175 at 27200.)

15.     Polysight I was described by Aven, Barnett, and SBB as SBB's

"flagship fund." (*E.g.*, S.J. Ex. 3, 1/24/17 Aven Testimony Tr. at 308:10-25; S.J. Ex.

41, 1/28/16 Barnett Email, SBBRG 005390 at SBBRG 005390; S.J. 12, 6/29/17

Handler Polysight I Email, SBBRG 237867 at 237868; S.J. Ex. 51, SBB Firm

Overview PowerPoint, SBBRG 146588 at p. 8.)

16.     SBB planned to use Polysight I to expand its investor base to outside

investors, including institutional investors. (S.J. Ex. 11, Mar. 30, 2016 SBB Form

ADV Part 2A at p. 1; S.J. Ex. 41, 1/28/16 Barnett Email SBBRG 005390; S.J. Ex. 12,

6/29/17 Handler Polysight I Email, SBBRG 237867; S.J. Ex. 51, SBB Firm Overview

PowerPoint, SBBRG 146588; Dkt. #51, Answer ¶ 25; S.J. Ex. 3, 1/24/17 Aven

Testimony Tr. at 48:1-8.)

17.     In an October 2014 interview with SEC examination staff, Barnett told

an SEC Examiner that "[t]he future of the company is Polysight." (S.J. Ex. 52, SEC

Examiner Notes, SEC-0002325.)

18.     According to the Operating Agreement for Polysight I which bears

Defendant Barnett's signature – and as Defendants have admitted – from at least

June 2014 through January 2017, Polysight I: (a) had a lock-up period of two years

(*i.e.*, investors could not withdraw their funds during the first two years after

investing without manager approval); and (b) had no "high water mark." (Dkt. #51,

Answer ¶¶ 23-24; S.J. Ex. 42, SBB Polysight I Subscription Package SBBRG-

0004762, at SBBRG-4786 (Section 3.01, Withdrawals from Capital Accounts),
SBBRG 4802 (Section titled "Incentive Allocation"); S.J. Ex. 9, Aven 5/12/20 RFA
Responses at ¶¶ 45, 47-48; S.J. Ex. 4, Aven 12/15/18 Testimony Tr. at 362:8-11,
368:3-4.)

19.     By at least July 2014, Polysight I began receiving new investments
from investors (a majority of which came from SBB officers and their friends and
family). (S.J. Ex. 43, SBB Investor Information 2019-2-28, SBBRG 015000.)

20.     As of December 31, 2015, Polysight I had more assets under
management than any other fund managed by SBB. (S.J. Ex. 11, March 30, 2016
SBB Form ADV at 53.)

## III.     <u>Marketing Related to Polysight I, LLC</u>:

21.     In October 2015, SBB retained E.L.K. Capital Advisors, LLC ("ELK")
to serve as a placement agent for "SBB Research Group Polysight I, LLC, certain
other funds and separately managed accounts." (S.J. Ex. 53, 10/16/15 SBB – ELK
Agreement, ELK-0000004.)

22.     Alan Handler, an ELK employee from 2015 through approximately
January 2017, was the primary ELK employee who solicited investments and
sought to raise investment capital for SBB's Funds, including Polysight I. (S.J. Ex.
7, 12/1/21 Handler Dep. Tr. at 32:20 to 33:4; 46:24 to 47:5; 56:13-19.)

23.     Handler agreed to start marketing SBB offerings after Barnett and
Aven told him that their goal was to raise "billions of dollars" from investors. (S.J.
Ex. 6, 5/1/18 Handler Test. Tr. at 24:16 to 25:4.)

24.     Handler has over 30 years of experience in the securities industry, including experience soliciting financial investments from institutional and individual investors. (S.J. Ex. 7, 12/1/21 Handler Dep. Tr. at 39:21 to 46:9.)

25.     Beginning in or around February 2017 when he left ELK and was hired by SBB, and continuing through at least December 1, 2021, Handler served as SBB's head of business development. (S.J. Ex. 7, 12/1/21 Handler Dep. Tr. at 11:20-12:3, 16:2-4.)

26.     Among other methods, Handler marketed and solicited investments for Polysight I, by distributing written marketing materials to prospective investors and investment professionals (such as money managers and investment advisers). (S.J. Ex. 7, 12/1/21 Handler Dep. Tr. at 12:4-8; 16:7-12, 64:8-18.)

27.     From approximately November 2015 to May 2016, SBB, through Handler, distributed "fact-sheets" for Polysight I to solicit investments from prospective investors. The "fact-sheet" was a two-page document that provided, among other things, information about Polysight I's historical performance, inception date, investment terms, and risk analysis. (*See, e.g.*, S.J. Ex. 16, 11/30/15 SBB Polysight I Fact Sheet, ELK-0000385 at 386-387; S.J. Ex. 17, 12/17/15 Emerging Manager Email, ELK-0095388 at 95390-95391; S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12969-12970; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15318-15319; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18390-18391; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21551-21552.)

28.     The content of the fact sheets identified in ¶ 27 was reviewed and approved by Barnett and Aven before the fact sheets were sent to prospective investors and investment professionals. (S.J. Ex. 6, 5/1/2018 Handler Test. Tr. at 50:11 to 52:6; Dkt. #51, Answer ¶ 95; S.J. Ex. 50, SBB May 2014 Investment Adviser Compliance Manual, at p. 12.)

29.     Each of the six Polysight I fact sheets identified in ¶ 27 included a narrative summary created by SBB under the heading "Program Information" for "Polysight™ I LLC" which the fact sheet described as "a Quantitative Directional Equity hedge fund." (*See, e.g.*, S.J. Ex. 16, 11/30/15 SBB Polysight I Fact Sheet, ELK-0000385 at 386-387; S.J. Ex. 17, 12/17/15 Emerging Manager Email, ELK-0095388 at 95390-95391; S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12969-12970; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15318-15319; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18390-18391; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21551-21552.)

30.     From approximately February 2016 to January 2017, SBB, through Handler, marketed and solicited investments for Polysight I by disseminating to potential investors an "investor presentation," an approximately 20-page document that provided, among other things, information about Polysight I's historical performance, inception date, key investment terms, and risk analysis. (*See, e.g.*, S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12944, 12962, 12964; S.J. Ex. 32, 3/17/16 Handler Polysight I Email, ELK-0017464 at 17469, 17487, 17489;

S.J. Ex. 33, 3/18/16 Handler Polysight I Email, ELK-0017896 at 17901, 17919, 17921; S.J. Ex. 34, 4/8/16 Handler Polysight I Email, ELK-0018501 at 18506, 18523, 18525; S.J. Ex. 35, 4/8/16 Handler Polysight I Email 2, ELK-0018255 at 18260, 18277, 18279; S.J. Ex. 36, 4/8/16 Handler Polysight I Email 3, ELK-0018396 at 18401, 18418, 18420; S.J. Ex. 37, 4/8/16 Handler Polysight I Email 4, ELK-0018466 at 18471, 18488, 18490; S.J. Ex. 38, 4/8/16 Handler Polysight I Email 5, ELK-0018192 at 18197, 18214, 18216; S.J. Ex. 39, 4/11/16 Handler Polysight I Email, ELK-0018941 at 18946, 18963, 18965; S.J. Ex. 40, 4/18/16 Handler Polysight I Email, ELK-0018157, at 18162, 18179, 18181; S.J. Ex. 20, 6/2/16 Handler Polysight I Email, ELK-0022693 at 22700, 22713 ; S.J. Ex. 21, 6/2/16 Handler Polysight I Email 2, ELK-0022640 at 22647, 22660; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15293, 15311, 15313; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18366, 18383, 18385; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21527, 21544, 21546; S.J. Ex. 22, 6/1/16 Handler Polysight I Email, ELK-0001814 at 1821, 1834; S.J. Ex. 23, 6/2/16 Handler Polysight I Email, ELK-0022400 at 22404, 22417; S.J. Ex. 15, 6/20/16 Handler Polysight I Email, ELK-0027175 at 27182, 27195; S.J. Ex. 24, 7/25/16 Handler Polysight I Email, ELK-0040739 at 40746, 40759; S.J. Ex. 25, 11/3/16 Handler Polysight I Email, ELK-0090652 at 90659, 90672; S.J. Ex. 26, 1/6/17 Handler Polysight I Email, ELK-0091643 at pp. 2-3 (SBB produced only native document, no bates label available), 91650, 91663; S.J. Ex. 27, 1/20/17 Handler Polysight I Email, ELK-0003481 at 3487, 3500; S.J. Ex. 28, 1/23/27 Handler Emerging Manager Email, SBBRG LLC-

CONFIDENTIAL-234229 at 234236, 234249; S.J. Ex. 29, 1/31/17 Handler Emerging Manager Email, SBBRG LLC-CONFIDENTIAL-230697 at 230705, 230718.)

31.    Between at least February 2016 to January 2017, the presentations identified in ¶ 30 above (a) described "Polysight" as a "Quantitative Directional Equity Hedge Fund"; (b) included an introductory message from Sam Barnett describing "our current fund, SBB Research Group, Polysight I LLC" as a "natural fit" for certain investor profiles; (c) included a "Polysight Overview," with a sub-heading of "SBB Research Group Polysight I, LLC"; and (d) included a "Polysight Facts and Terms" section that identifies the Fund as "SBB Research Group Polysight I, LLC." (*See id*.)

32.    Some of the presentations identified in ¶ 30 were accompanied by a cover email which provided additional information about Polysight I. (*See, e.g.*, S.J. Ex. 34, 4/8/16 Handler Polysight I Email, ELK-0018501 at 18506, 18523, 18525; S.J. Ex. 35, 4/8/16 Handler Polysight I Email 2, ELK-0018255 at 18260, 18277, 18279; S.J. Ex. 36, 4/8/16 Handler Polysight I Email 3, ELK-0018396 at 18401, 18418, 18420; S.J. Ex. 37, 4/8/16 Handler Polysight I Email 4, ELK-0018466 at 18471, 18488, 18490; S.J. Ex. 38, 4/8/16 Handler Polysight I Email 5, ELK-0018192 at 18197, 18214, 18216; S.J. Ex. 39, 4/11/16 Handler Polysight I Email, ELK-0018941 at 18946, 18963, 18965; S.J. Ex. 40, 4/18/16 Handler Polysight I Email, ELK-0018157, at 18162, 18179, 18181; S.J. Ex. 20, 6/2/16 Handler Polysight I Email, ELK-0022693 at 22700, 22713 ; S.J. Ex. 21, 6/2/16 Handler Polysight I Email, ELK-0022640 at 22647, 22660; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-

0015289 at 15293, 15311, 15313; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18366, 18383, 18385; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21527, 21544, 21546.)

33. Barnett and Aven were responsible for providing Handler with the information included in all of the disseminated marketing materials, including the fact sheet, investor presentation, and cover emails. (Dkt. #51, Answer ¶ 95.)

34. SBB, through Handler, also marketed Polysight I by posting information about the Fund to multiple investor research website platforms ("Online Marketing Platforms"), which SBB understood were marketing portals which could potentially match SBB with institutional investors and high net worth individuals. (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK-0094211; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179; S.J. Ex. 54, SBB Evestment Database Listing; S.J. Ex. 46, SBB Preqin Database Listing, ELK-0010976; S.J. Ex. 7, 12/1/21 Handler Dep at 126:1 to 127:9; S.J. Ex. 2, 4/26/18 Barnett Testimony at 655:1-17; S.J. Ex. 6, 5/1/2018 Handler Testimony Tr. at 100:5 to 103:21; 104:9 to 105:15; 118:14-20; 123:8-18; S.J. Ex. 4, 12/15/2018 Aven Testimony Tr. at 330:3 to 332:7, 334:11-21, 337:11-14., 339:11-21.)

35. In March 2016, SBB, through Handler, submitted information on Polysight I to at least four Online Marketing Platforms, including HedgeCo.Net (the "HedgeCo Listing"), HFR (the "HFR Listing"), Evestment (the "Evestment Listing"), and Preqin (the "Preqin Listing"). (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK-0094211; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179; S.J. Ex. 54,

SBB Evestment Database Listing; S.J. Ex. 7, 12/1/21 Handler Dep at 219, 221 to 222:9, 223-24, 226-227:23, 229-330:6; S.J. Ex. 46, SBB Preqin Database Listing, ELK-0010976.)

36.     Aven reviewed and approved the information that was posted to the Online Marketing Platforms. (S.J. Ex. 4, 12/15/2018 Aven Testimony Tr. at 330:10-333:19; S.J. Ex. 6, 5/1/18 Handler Testimony Tr. 107:5-108:1; 114:6-10.)

## IV.     Misrepresentations In The Polysight I Marketing Materials

### A.     Polysight I's Investment Terms

#### 1.     The Lockup

37.     One of the investment terms for Polysight I that was identified in the fact sheets, investor presentations, and Online Marketing Platforms was the length of the fund's "lockup" period (*i.e.,* the time period in which an investor was prohibited from withdrawing from their investment without prior management approval). (S.J. Ex. 7, 12/1/21 Handler Dep at 85:19-21; *See* Fact Sheets Identified in ¶ 27 above; Investor Presentations Identified in ¶ 30 above; Online Management Platform Profiles identified in ¶ 34 above.)

38.     Handler testified under oath during his deposition and his investigative testimony that the length of a fund's lockup is important information to investors. Specifically: (a) during investigative testimony, Handler testified that a fund's lockup period is "a piece of information that investors regard as important … [b]ecause investors always want to know what kind of access they have to their capital, what the terms are, their being able to access their capital"; and (b) during

his deposition, Handler testified that a lockup is important information for investors "[b]ecause investors need to how long a time period of that before they can get access to their money" and that providing a prospective investor with an inaccurate lockup period "would be confusing and potentially misleading to the investor…It would be an omission of – of an important piece of information, and it would conflict with good business conduct in this instance." (S.J. Ex. 7, 12/1/21 Handler Dep at 85:19-21, 96:7-25; S.J. Ex. 6, 5/1/18 Handler Testimony Tr. at 83:8 to 84:4.)

39.     Defendants' accounting materiality expert, Gene Deetz, testified under oath at his deposition as follows:

> **Q.** Do you believe that the lockup period of a fund is significant to investors?
> **A.** Yes.
>
> **Q.** And is that an important consideration for investors when considering whether to invest in a fund or not?
> **A.** I believe it is, yes.
>
> **Q.** And it's mentioned in here. I assume you believed that that was an important factor for these investors as to whether to invest in SBB's funds?
> **A.** Yes. I think it's an important factor to consider materiality, and I think it would be important to an investor what the lockup period is, yes.

(S.J. Ex. 8, 1/30/24 Deetz Dep. at 275:8-22.)

## 2. The High-Water Mark

40.     Another investment term for Polysight I identified in fact sheets, investor presentations, and Online Marketing Platforms was whether the fund was subject to a "high-water mark" (*i.e.*, a provision that limits the circumstances where a manager can earn incentive fees by setting a performance threshold that the fund's investment returns must exceed before fees accrue). (S.J. Ex. 7, 12/1/21

Handler Dep at 84:21 to 85:10; *See* Fact Sheets Identified in ¶ 27 above; Investor Presentations Identified in ¶ 30 above; Online Management Platform Profiles identified in ¶ 34 above.)

41.     Alan Handler has testified under oath that investors consider the existence of a high-water mark to be important information. Specifically, Handler has testified that: (a) "it's a vital thing to have a high-water mark" because "[i]t's standard industry procedure. Why? Because otherwise a manager can – it's unfair, I think, to the investor to not have a high water mark, because then there is a chance that the investor overpays in fees"; (b) "most industry professionals would consider it to be important to have a high-water mark in any vehicle they're marketing"; (c) not having a high-water mark would be unfair "[b]ecause then an investor could theoretically be paying for a performance which is just a recovery from a certain low number that doesn't represent a profit to the client, to the investor"; and (d) it is important for a fund manager to provide accurate information about information like a high-water mark "[be]cause the investors are entitled to fair and equitable treatment."(S.J. Ex. 7, 12/1/21 Handler Dep at 82:2-21, 83:5-85:10, 95:4-20, 98:15 to 99:23; S.J. Ex. 6,  5/1/18 Handler Testimony Tr. at 79:20 to 80:18.)

42.     In response to questions regarding why a Polysight I fact sheet disclosed that the fund had a high-water mark – when Polysight I's Operating Agreement did not provide for one – Aven testified under oath during investigative testimony that Alan Handler had communicated to him that a high-water mark was

needed to "attract new investors." (S.J., Ex. 3, 1/24/17 Aven Testimony Tr. at 263:15-17.)

### 3.   Inception Date

43.    Polysight I was not open to investors or trading securities until after its inception in June 2014, and therefore did not have historical performance data for the period September 2011 through May 2014. (Dkt. #51, Answer ¶ 25.)

44.    In reference to the historical performance data provided in the Polysight I fact sheets, Alan Handler testified under oath at his deposition as follows:

> **Q** Getting back to the historical performance table there, the monthly
> performance on the fact sheet, based on
> your 30 years' experience in the financial industry, you think it -- you think a fund's historical performance is
> important information for investors?
> **A** I do.
>
> **Q** Okay. A fund's historical performance is a material consideration for investors?
> MR. ROSENBURG: Objection. Form and foundation.
> THE WITNESS: For many investors it is important, yes.

(S.J. Ex. 7, 12/1/21 Handler Dep at 79:18 to 80:3.)

### B.   Misrepresentations in the Polysight I Fact Sheets

45.    On at least 20 occasions from approximately November 2015 to May 2016, SBB, through Handler, disseminated fact sheets stating that Polysight I had (1) a one-year lockup period and (2) a high-water mark. (*See, e.g.*, S.J. Ex. 16, 11/30/15 SBB Polysight I Fact Sheet, ELK-0000385 at 386; S.J. Ex. 17, 12/17/15 Handler Polysight I Email, ELK-0095388 at 95390; S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12969; S.J. Ex. 18, 3/9/16 Handler Polysight I

Email, ELK-0015289 at 15318; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18390; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21551.)[1]

46.     The fact sheets identified in ¶ 27 also stated that the inception date for "Polysight" was September 2011. (*Id.*)

47.     Among other recipients, SBB sent fact sheets and/or presentations to (a) a manager for the State of New York Pension Fund, (2) the manager of a "fund of funds…largely funded by the Abu Dhabi Investment Authority," (3) an intermediary seeking to facilitate an introduction between SBB and the manager of the endowment for the Massachusetts Institute of Technology, and (4) several other private money managers specializing in high-net-worth clients. (*See, e.g.*, S.J. Ex. 17, 12/7/15 Handler Polysight I Email, ELK-0095388 at 95390; S.J. Ex. 6, 5/1/2018 Handler Test. Tr. at 69, 93; S.J. Ex. 16, 11/30/15 SBB Polysight I Fact Sheet, ELK-0000385 at 386-387; S.J. Ex. 17, 12/17/15 Emerging Manager Email, ELK-0095388 at 95390-95391; S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12969-12970; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15318-15319; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18390-18391; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21551-21552; S.J. Ex. 30, 11/16/15 Aven Polysight I Email, SBBRG 005352 at 5354; S.J. Ex. 31, 12/11/15 Barnett Polysight I Email, SBBRG 005377.)

---

[1] In the interest of brevity, the SEC has not attached every instance of SBB disseminating a Polysight I fact sheet between November 2015 and May 2016 (but rather has cited six examples). The SEC can make any further examples available upon request.

48.     On November 16, 2015, Aven personally emailed a fact sheet to a prospective investor that stated that Polysight I had a one-year lockup period and (2) a high-water mark. (S.J. 30, Ex., 11/16/15 Aven Polysight I Email, SBBRG-005352 at 5354-55.)

49.     When asked if sophisticated investors expect fact sheets to be accurate and correct, Barnett testified under oath at his investigative testimony: "I think that that's true and I wish that that was accurate about the high watermark statement." (S.J. Ex. 2, 4/26/18 Barnett Testimony at 641:13-14.)

## C.     Misrepresentations in the Investor Presentations and Cover Emails

50.     On at least 23 occasions from approximately February 2016 to January 2017, Defendants, through Handler, emailed investor presentations related to Polysight I, stating that Polysight I had (1) a one-year lockup period and (2) a high-water mark. (*See, e.g.*, S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12964; S.J. Ex. 32, 3/17/16 Handler Polysight I Email, ELK-0017464 at 17489; S.J. Ex. 33, 3/18/16 Handler Polysight I Email, ELK-0017896 at 17921; S.J. Ex. 34, 4/8/16 Handler Polysight I Email, ELK-0018501 at 18525; S.J. Ex. 35, 4/8/16 Handler Polysight I Email 2, ELK-0018255 at 18279; S.J. Ex. 36, 4/8/16 Handler Polysight I Email 3, ELK-0018396 at 18420; S.J. Ex. 37, 4/8/16 Handler Polysight I Email 4, ELK-0018466 at 18490; S.J. Ex. 38, 4/8/16 Handler Polysight I Email 5, ELK-0018192 at 18216; S.J. Ex. 39, 4/11/16 Handler Polysight I Email, ELK-0018941 at 18965; 4/18/16 Handler Polysight I Email, S.J. Ex. 40, ELK-0018157 at 18181; S.J. Ex. 20, 6/2/16 Handler Polysight I Email, ELK-0022693 at 22713 ; S.J.

Ex. 21, 6/2/16 Handler Polysight I Email 2, ELK-0022640 at 22660; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15313; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18385; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21546; S.J. Ex. 22, 6/1/16 Handler Polysight I Email, ELK-0001814 at 1834; S.J. Ex. 23, 6/2/16 Handler Polysight I Email, ELK-0022400 at 22417; S.J. Ex. 15, 6/20/16 Handler Polysight I Email, ELK-0027175 at 27195; S.J. Ex. 24, 7/25/16 Handler Polysight I Email, ELK-0040739 at 40759; S.J. Ex. 25, 11/3/16 Handler Polysight I Email, ELK-0090652 at 90672; S.J. Ex. 26, 1/16/17 Handler Polysight I Email, ELK-0091643 at 91663; S.J. Ex. 27, 1/20/17 Handler Polysight I Email, ELK-0003481 at 3500; S.J. Ex. 28, 1/23/27 Handler Emerging Manager Email, SBBRG LLC-CONFIDENTIAL-234229 at 234249; S.J. Ex. 29, 1/31/17 Handler Emerging Manager Email, SBBRG LLC-CONFIDENTIAL-230697 at 230718.)

51.     On at least 11 occasions, from approximately March to June 2016, SBB, through Handler, stated in cover emails to prospective investors (and money managers) that Polysight I had been in existence for over 4½ years, thus implying that the inception date of Polysight I was late 2011. (*See, e.g.*, S.J. Ex. 32, 3/17/16 Handler Polysight I Email, ELK-0017464; S.J. Ex. 33, 3/18/16 Handler Polysight I Email, ELK-0017896; S.J. Ex. 34, 4/8/16 Handler Polysight I Email, ELK-0018501; S.J. Ex. 35, 4/8/16 Handler Polysight I Email 2, ELK-0018255; S.J. Ex. 36, Handler Polysight I Email 3, ELK-0018396; S.J. Ex. 37, 4/8/16 Handler Polysight I Email 4, ELK-0018466; S.J. Ex. 38, 4/8/16 Handler Polysight I Email 5, ELK-0018192; S.J.

Ex. 39, 4/11/16 Handler Polysight I Email, ELK-0018941; S.J. Ex. 40, 4/8/16 Handler Polysight I Email, ELK-0018157; S.J. Ex. 20, 6/2/16 Handler Polysight I Email, ELK-0022693; S.J. Ex. 21, 6/2/16 Handler Polysight I Email, ELK-0022640.)

52.     In at least 9 cover emails, SBB, through Handler, informed prospective investors that "over the past 4 and ½ years Polysight I – our main vehicle has delivered consistent, risk-adjusted returns" and provided a chart of historical net performance for 2012 through 2016. (*See, e.g.*, S.J. Ex. 32, 3/17/16 Handler Polysight I Email, ELK-0017464; S.J. Ex. 33, 3/18/16 Handler Polysight I Email, ELK-0017896; S.J. Ex. 34, 4/8/16 Handler Polysight I Email, ELK-0018501; S.J. Ex. 35, 4/8/16 Handler Polysight I Email 2, ELK-0018255; S.J. Ex. 36, 4/8/16 Handler Polysight I Email 3, ELK-0018396; S.J. Ex. 37, 4/8/16 Handler Polysight I Email 4, ELK-0018466; S.J. Ex. 38, 4/8/16 Handler Polysight I Email 5, ELK-0018192; S.J. Ex. 39, 4/11/16 Handler Polysight I Email, ELK-0018941; S.J. Ex. 40, 4/8/16 Handler Polysight I Email, ELK-0018157; S.J. Ex. 7, 12/1/21 Handler Dep. 132:13-22.)

53.     The emails identified in ¶ 52 did not disclose that (a) the historical net performance data for 2012 through June 2014 was not derived from trading in Polysight I and instead belonged to a different SBB-managed Fund, or (b) Polysight I did not exist until June 2014. (*Id.*)

### D.   Misrepresentation in Submissions to the Online Marketing Platforms

54.     The information SBB included in the HedgeCo Listing, HFR Listing, Evestment Listing, and Preqin Listing for Polysight I – and published on the

corresponding Online Marketing Platform – stated that Polysight I had a high-water mark and that the fund's inception date was September 2011. (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK,-0094211; S.J. Ex. 7, 12/1/21 Handler Dep. at 221:25-222:9, 224:8-22, 227:2-12, 230:1-6; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179; S.J. Ex. 54, SBB Evestment Database Listing at 3; S.J. Ex. 46, SBB Prequin Database Listing, ELK-0010976 at ELK-0010977-78.)

55.     The information provided for the HFR Listing, Evestment Listing, and Preqin Listing for the Polysight I fund – and published on the corresponding Online Marketing Platform – further stated that Polysight I had a lockup period of one year. (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK-0094211 at 94212; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179 at 15181; S.J. Ex. 54, SBB Evestment Database Listing at 3; S.J. Ex. 46, SBB Prequin Database Listing, ELK-0010976 at ELK-0010978.)

56.     The information provided for the HedgeCo Listing, HFR Listing, Evestment Listing, and Preqin Listing for the Polysight I fund – published on the corresponding Online Marketing Platform –additionally provided historical performance data for Polysight I which included return data for September 2011 through May 2014. (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK,-0094211 at 94212; S.J. Ex. 7, 12/1/21 Handler Dep. at 225:6-17; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179 at 15181; S.J. Ex. 7, 12/1/21 Handler Dep. at 227:13-228:14; S.J. Ex. 54, SBB Evestment Database Listing at 8; S.J. Ex. 7, 12/1/21

Handler Dep. at 221:14-20; S.J. SBB Prequin Database Listing, ELK-0010976 at ELK-0010980.)

57.    The information provided for the HedgeCo Listing, HFR Listing, Evestment Listing, and Preqin Listing for the Polysight I fund – published on the corresponding Online Marketing Platform – contained no disclaimer or disclosure indicating that (a) the returns between September 2011 and May 2014 were not generated by Polysight I, (b) the returns for that period were from a different SBB-managed fund, or (c) Polysight I did not exist prior to June 2014. (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK,-0094211 at 94212; S.J. Ex. 7, 12/1/21 Handler Dep. at 225:6-17; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179 at 15181; S.J. Ex. 7, 12/1/21 Handler Dep. at 227:13-228:14; S.J. Ex. 54, SBB Evestment Database Listing at 8; S.J. Ex. 7, 12/1/21 Handler Dep. at 221:14-20; S.J. Ex. 46, SBB Prequin Database Listing, ELK-0010976 at ELK-0010980.)

58.    When asked at his testimony about the fact that the HedgeCo listing does not disclose that historical return data was a composite of Polysight I and another SBB-managed fund, Aven testified under oath as follows:

> **Q** So do you think that disclosing that the performance tables reflected above reflect a composite of two funds would be something that would be important to disclose?
> **A** It would be, yes.

(S.J. Ex. 4, 12/15/18 Aven Testimony at 375:24-376:3.)

59.    When asked if there should have been a disclosure on the HFR Listing for the Polysight I fund that the returns belonged to a different SBB-managed Fund, Handler testified under oath during investigative testimony: "Yes. . . .

Because this is not the performance record for Polysight I." (S.J. Ex. 7, 12/1/21 Handler Dep. at 228:3-13.)

60. When asked if there should have been a disclosure on the HFR Listing that the listed returns were a composite of the different Fund and Polysight I, Aven testified, "Yes." (S.J. Ex. 4, 12/15/18 Aven Testimony at 384:6-10.)

61. When asked if it would be wrong to post historical performance information on Evestment without a disclosure providing that the returns represented a composite of Polysight I and the different SBB Fund, Aven testified, "That would be wrong. . . . if you're going to say—if you're going to represent that this information is Polysight I and include information that's not Polysight I, you need to disclose that. . . . I think that would be interpreted—could be interpreted as misleading. I think if it happened, it would have been a mistake, but it—it certainly could be interpreted that way. . . . Because you're saying one thing and providing information about something else." (S.J. Ex. 4, 12/15/18 Aven Testimony at 360:22-361:17.)

## V. Communications Related to Discrepancies Between Marketing Statements and the Polysight I Operating Agreement.

62. In August 2015, Matt Aven had an email exchange with a prospective investor in which the investor told Aven that (a) he understood from "our meeting" that the "freeze" period for the fund "is 12 months from initial investment," but (b) the fund operating agreement indicated that the lock up period would be two years. (S.J. Ex. 4, 12/15/18 Aven Testimony at 479-81; S.J. Ex. 47, Aven Multi-Year email chain, SBBRG LLC-CONFIDENTIAL-181425, at 181430-32.)

63.    In responding to the investor inquiry in ¶ 62, Aven responded that "we misspoke regarding the 12-month lockup period" and confirmed that the fund documents "do state that the lockup period is 2 years." The investor asked for – and was offered – a side letter reducing the lockup period to six months. (*Id*.)

64.    On November 5, 2015, Aven engaged in an online chat communication with Handler in which Aven stated that the marketing materials have "[P]oly[sight I] inception of Sept. 2011 but it's really June 2014[.] [I]f you want to go with Sept 2011, we need to add the * again. [W]hat do you think? " Handler responded that "we should definitely use the Sep '11 start date. [I] think the disclaimer you wrote covers our legal risk on that, don't you? [T] he longer the better, as far as the track record is concerned."  Aven responded: "[A]greed." (S.J. Ex. 48, 11/5/15 Aven and Handler Chat, SBBRG0302193.)

65.    In July 2016, Handler emailed Aven:

… [W]e face a significant challenge in attracting investments from those high net worth (HNW) investors who want to, or are only able to, join a commingled vehicle. The vast majority of these investors have their assets at independent and large RIA's (Stifel, Wells Fargo, Merrill, Morgan Stanley, JPM, etc.), smaller wealth managers, and multi-family offices. Most of those institutions are structured to direct their clients towards approved commingled vehicles that sit on their platforms and Polysight I is our only vehicle that could fulfill that role. However, we are not publishing Poly's track record; and were we to do so, our judgement seems to be that its performance is underwhelming and would not attract new investment. Consequently, we have no fund vehicle to show them and so marketing to this group is very difficult.

(S.J. Ex. 49, 7/18/16 Email from Alan Handler, SBBRG LLC-CONFIDENTIAL-101714 at 101715.)

66.    Handler testified under oath that, in the email identified in ¶ 65 above, he meant that "a firm considered Polysight I to be too early in its life to be an attractive vehicle since its performance was not good enough owing to its relatively short life to attract original investors, but it was the only commingled vehicle that we had." (S.J. Ex. 7, 12/1/21 Handler Dep. at 234:1-5.)

67.    On December 11, 2015, Sam Barnett emailed a SBB brochure and a Polysight I fact sheet to an intermediary seeking to facilitate an introduction between SBB and the manager for the Massachusetts Institute of Technology. The fact sheet stated that the lock up period for Polysight I was one year, and that the fund had a high-water mark. (S.J. Ex. 31, 12/11/15 Barnett Polysight I Email, SBBRG 005377, SBBRG 005384.)

68.    When asked at his investigative testimony about the December 11, 2015 email identified in ¶ 67 above, Barnett testified under oath that: "it would have been better to say that—say nothing about the high watermark or say that, you know, future funds will have a high watermark." (S.J. Ex. 2, 4/26/18 Barnett Testimony at 640:14-17.)

69.    On January 24, 2017, when asked about the email from Barnett identified in ¶ 67 above, Aven testified that at the time the email was written, Polysight I did not have a high-water mark and had a two-year lockup. (S.J. Ex. 3, 1/24/17 Aven Testimony at 254:17 to 256:14, 263:3-6, 271:1-17.)

70.    At his January 24, 2017 investigative testimony, Aven was asked several questions by the SEC regarding the fact that Polysight I fact sheets stated

that Polysight I had a one-year lockup, high-water mark and a September 2011 inception date when the fund was created in June 2014 and the Polysight Operating Agreement provided that the Fund had a two-year lockup, and no high-water mark. (S.J. Ex. 3, 1/24/2017 Aven Test. Tr. at 55:25 to 56:6, 258:7 to 260:9, 262:20 to 264:2, 271:1 to 272:6.)

71.    On January 31, 2017, Defendants, through Handler, distributed an investor presentation to a prospective investor which stated that Polysight I had a one year lockup and a high water mark. (S.J. Ex. 29, 1/31/17 Email from Alan Handler, SBBRG LLC-CONFIDENTIAL-230697 at 230718.)

Respectfully Submitted,

June 17, 2025                          **Securities and Exchange Commission**

By: */s/ Timothy S. Leiman*
Timothy S. Leiman (leimant@sec.gov)
Robert Moye (moyer@sec.gov)
Kevin A. Wisniewski
(wisniewskik@sec.gov)
Devlin N. Su (sude@sec.gov)
Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Boulevard, Suite
1450 Chicago, Illinois 60604
(312) 353-7390

*Attorneys for Plaintiff*
*Securities and Exchange Commission*