## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                    Plaintiff,

    v.

SBB RESEARCH GROUP, LLC,
SAMUEL B. BARNETT, and
MATTHEW LAWRENCE AVEN,

                  Defendants.

Case No. 1:19-cv-06473

The Honorable Sharon Johnson Coleman,
United States District Judge

The Honorable Keri L. Holleb Hotaling,
United States Magistrate Judge

## DEFENDANTS' RULE 56.1(b)(2) RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS[1]

### I.    SBB RESEARCH GROUP, LLC:

1.    SBB Research Group, LLC ("SBB") has been a SEC-registered investment adviser since April, 2014. It is the investment adviser to a series of affiliated private investment funds (the "Funds"). (Dkt. #51, Answer ¶ 17; S.J. Ex. 10, Mar. 31, 2014 SBB Form ADV Part 2A at p. 4.)

**RESPONSE: Undisputed, except to clarify that SBB takes the phrase "April, 2014" to mean April 23, 2014, which is the effective date of SBB's registration with the Securities and Exchange Commission ("SEC").**

2.    Defendant Samuel B. Barnett is SBB's founder and has been SBB's CEO, managing member, and sole owner since its founding. (Dkt. #51, Answer ¶ 18.)

**RESPONSE: Undisputed.**

---

[1] Defendants reproduce the SEC's headers here but deny that the headers are accurate or supported by the evidence cited in connection with the individual paragraphs.

3.      Defendant Matthew Lawrence Aven was SBB's first employee, served as SBB's Chief Compliance Officer ("CCO") from January 2012 through November 2021, and has been SBB's Chief Operating Officer since February 2016. (Dkt. #51, Answer ¶ 3; S.J. Ex. 9, 5/12/20 Aven Answers to SEC's 1st Set of RFA ¶ 1; S.J. Ex. 5, 12/15/22 Aven Dep. Tr. at 13:11-18.)

**RESPONSE: Undisputed.**

4.      In his role as CCO, Aven was responsible for reviewing and approving all of SBB's advertising and marketing materials, and for ensuring that SBB's advertising and marketing materials did not contain any false or misleading statements. (S.J. Ex. 9, 5/12/20 Aven Answers to SEC's 1st Set of RFA ¶¶ 9, 10; S.J. Ex. 50, SBB May 2014 Investment Adviser Compliance Manual, SBBRG 0000151 at 165, 169-170, 179.)

**RESPONSE: Disputed in part.  Defendants do not dispute that per the SBB May 2014 Investment Adviser Compliance Manual (SEC Ex. 50), one component of Mr. Aven's role and responsibilities as CCO was reviewing SBB's Advertising and Marketing Materials and ensuring SBB's Advertising and Marketing Materials did not contain any false or misleading statements, except Defendants clarify that the term "Advertising" as it is used in SBB's Compliance Manual is defined to mean "any notice, circular, letter or other written communication addressed to more than one person, or any notice or other announcement in any publication, or by radio, television or website, that offers (i) any analysis, report, or publication concerning securities, or that is used in making any determination as to when to buy or sell any security, or which security to buy or sell; (ii) any graph, chart, formula or other device to be used in making any determination as to when to buy or sell any security, or which security to buy or sell; or (iii) any other investment advisory service with regard to securities.  For the avoidance of doubt, the Firm does not consider Advertising to include**

2

materials distributed to industry professionals," and the term "Marketing Materials" as it is used in the same Compliance Manual is defined to mean "any Advertising, sales literature, brochures or other marketing materials distributed by the Firm through any format." SEC Ex. 50, SBBRG 0000151 at -0000153, -0000155.[2]

Defendants dispute Paragraph 4 to the extent it implies that Mr. Aven alone was responsible for reviewing and approving SBB's Advertising and Marketing Materials, and ensuring SBB's Advertising and Marketing Materials did not contain false or misleading statements. Defendants aver that Dr. Barnett was also involved at times in reviewing and approving SBB's Advertising and Marketing Materials, and Alan Handler and several employees in SBB's operations department were also involved in ensuring the Advertising and Marketing Materials contained accurate information. Ex. 213,[3] Barnett SEC Tr. (Mar. 14, 2018) 90:10-24, 92:7-16;[4] Ex. 220, Handler SEC Tr. 50:7-15, 51:4-9; Ex. 222, Kiefer SEC Tr. 136:20-137:6.

---

[2] Throughout this Response, for all cited documents with Bates numbering, all pincites are to the existing Bates numbers. For documents without Bates numbering to identify specific pages, Defendants have added page numbering to the exhibits for ease of reference, and all such pincites are to these added page numbers, with the first page of a document (following the exhibit slipsheet) stamped as page 1.

[3] Any cited exhibits numbered 1-238 refer to the exhibits identified in the Corrected Exhibit Index to Defendants' Statement of Undisputed Material Facts (Dkt. 269-1). Exhibits numbered 239-254 refer to the exhibits identified in the Index to Defendants' Local Rule 56.1(b)(3) Statement of Additional Material Facts and Local Rule 56.1(b)(2) Response to Plaintiff's Statement of Material Facts, filed concurrently herewith. Any exhibits cited as "SEC Ex." refer to the exhibits identified in the Plaintiff SEC's Appendix of Exhibits to Statement of Undisputed Material Facts (Dkt. 260).

[4] Defendants cite to the SEC investigative testimony throughout this Response to the SEC's Statement of Material Facts. As Defendants had no opportunity to object to the SEC's questioning during investigative testimony, the lack of objections in the SEC investigative testimony transcripts does not constitute any waiver of objections.

**Defendants also dispute Paragraph 4 to the extent it suggests that Mr. Aven was responsible for reviewing and approving all cover emails sent by Mr. Handler to potential investors, and aver that Mr. Aven would not review standard cover emails that Mr. Handler sent.** *See* **Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 349:14-351:7.**

5. Barnett and Aven were responsible for (a) providing the information included in SBB's marketing materials, and (b) reviewing and approving all of SBB's marketing materials before they were distributed to investors. (Dkt. #51, Answer ¶ 95; S.J. Ex. 6, 5/1/18 Handler SEC Tr. at 50:11 to 51:21.)

**RESPONSE: Disputed in part. Defendants do not dispute that Dr. Barnett and Mr. Aven were responsible for providing the information included in SBB's marketing materials to SBB's Placement Agent (Mr. Handler) and reviewing and approving SBB's marketing materials before they were distributed to potential investors. (Dkt. #51, Answer ¶ 95).**

**Defendants dispute Paragraph 5 to the extent it implies that Dr. Barnett and Mr. Aven alone were responsible for providing the information included in SBB's marketing materials. Defendants aver that Dan Kiefer and Mr. Handler were also involved in drafting SBB's marketing materials. Ex. 220, Handler SEC Tr. (May 1, 2018) 50:7-15, 51:4-9; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 89:12-22; Ex. 222, Kiefer SEC Tr. 136:20-137:6.**

**Defendants also dispute Paragraph 5 to the extent it suggests that Mr. Aven was responsible for reviewing and approving all cover emails sent by Mr. Handler to potential investors, and aver that Mr. Aven would not review standard cover emails that Mr. Handler sent.** *See* **Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 349:14-351:7.**

6. Barnett and Aven, acting on behalf of SBB, managed the Funds' portfolio of securities, which included reviewing and making investment decisions for the Funds and structuring and negotiating the terms of the investments. (Dkt. #51, Answer ¶ 22.)

**RESPONSE: Undisputed, except to clarify that other SBB employees, including Sandeep Navalgund, were involved in some aspects of decision-making on certain structured notes. Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 83:13-22.**

7. For a period of his employment, Aven received a salary and bonus that was tied to SBB's profitability. (Dkt. #51, Answer ¶ 22.)

**RESPONSE: Undisputed.**

8. As sole owner of SBB, Barnett was entitled to withdraw (or otherwise direct payment or reinvestment of) SBB's net profits. (S.J. Ex. 1, 3/14/2018 Barnett Test. Tr. at 16:25-17:11.)

**RESPONSE: Undisputed.**

## II.   POLYSIGHT I, LLC – THE POLYSIGHT FUND:

9. As of June 2014, the majority of investors in funds offered by SBB were "friends and family" (*i.e.*, SBB officers or their friends and relatives). (S.J. Ex. 5, 12/15/22 Aven Dep. Tr. at 73:7-25; S.J. Ex. 3, 1/24/17 Aven Testimony Tr. at 48:1-5.)

**RESPONSE: Disputed. The cited evidence does not support that, as of June 2014, only a "majority of investors" in funds offered by SBB were "friends and family." Defendants aver that as of June 2014, all investors in funds offered by SBB were "friends and family." Ex. 209, Aven SEC Tr. (Jan. 24, 2017) 48:9-12 ("to date we haven't taken any capital from nonfriends and family); Ex. 212, Aven Dep. Tr. 73:13-21.**

10. As of March 31, 2014, SBB had approximately $133 million of assets under management (mostly from Barnett himself and from his friends and family) and was the

investment adviser to at least four affiliated pooled investment vehicles. (S.J. Ex. 10, Mar. 31, 2014 SBB Form ADV Part 2A at 4.)

**RESPONSE: Disputed in part. Defendants do not dispute that SBB was the investment adviser to four pooled investment vehicles as of March 31, 2014.**

**Defendants dispute that SBB had approximately $133 million of assets under management as of March 31, 2014, because it is not supported by the cited evidence. Rather, SBB Research Group LLC's Form ADV Part 2A: Firm Brochure dated March 31, 2014 stated that "*[a]s of December 31, 2013*, [SBB Research Group] had regulatory assets under management of approximately $133,698,000." SEC Ex. 10 at 4 (emphasis added).**

**Defendants also dispute that as of March 31, 2014, SBB's assets under management were "mostly" from Dr. Barnett himself and his family and friends. As of Mr. Aven's SEC investigative testimony in late January 2017, all of SBB's investments had come from SBB officers and their relatives or friends. *See* Ex. 209, Aven SEC Tr. (Jan. 24, 2017) 48:9-12 ("to date we haven't taken any capital from nonfriends and family"), 50:3-51:20 (all funds listed on the March 30, 2016 Form ADV, including Polysight I, LLC, were "friends and family"); Ex. 212, Aven Dep. Tr. 73:13-21.**

11.     In June 2014, SBB created a new fund, Polysight I, LLC ("Polysight I"). From at least November 2015 through May 2016, Polysight I was the primary fund offered and marketed by SBB to outside investors. (Dkt. #51, Answer ¶ 25; S.J. Ex. 1, 3/14/18 Barnett Testimony Tr. at 78:15-17.)

**RESPONSE: Disputed in part. Defendants do not dispute that SBB created the fund Polysight I, LLC in June 2014, and that from November 2015 through May 2016, Polysight**

I, LLC was the only active pooled fund open to outside investors. Dkt. #51, Answer ¶ 25; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:3-19).

Defendants dispute that Polysight I, LLC was the primary fund offered and marketed to outside investors, and aver that SBB's goal was instead to create bespoke funds of one or separately managed accounts ("SMAs") for institutional investors (including high-net-worth individuals) based on the Polysight strategy. *See* Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 220, Handler SEC Tr. 15:23-16:13 ("Q: Okay. And what type of investors were you reaching out to in order to raise capital or raise funds? A: Institutional. Q: When you say institutional, what do you mean by that? A: My focus was on pension funds, endowments, foundations, sovereign wealth this funds, large investment management firms, funds of funds, family offices. Q: Any high net or high worth individuals? A: If I could qualify them as qualified purchasers, which is a relatively high bar, then, yes. Q: What's the bar? A: 25 million in investable assets."), 40:16-41:16; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1 ("I was not marketing Polysight 1. I was using Polysight 1 as an example of what we could do for these large institutional investors in a Fund of One or an SMA structure … We used the Polysight 1 performance and earlier the Investors II performance as a way to demonstrate our ability to manage an SMA or a Fund of One for these large institutions."); Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* Statement of Additional Material Facts ("SAMF") ¶¶ 21-25, 30-31, 40.

12.     Polysight I was a "pooled investment vehicle" within the meaning of the Investment Advisers Act. (*E.g.*, S.J. Ex. 11, Mar. 30, 2016 SBB Form ADV Part 2A at p. 1.)

7

**RESPONSE**: Disputed.  Defendants object to Paragraph 12 because it violates Local Rule 56.1(d)(4) by making a legal argument.

Notwithstanding this objection, Defendants do not dispute that the Polysight I, LLC fund, was a pooled investment vehicle.

13.     On July 29, 2014, SBB publicly acknowledged the then-recent creation of the Polysight I fund in an article on the financial website www.marketsmedia.com. The article stated that: (a) the Polysight I fund was open to new investors; (b) Polysight I "has no cap"; and (c) SBB "says it has the capacity to manage up to $1 billion." (S.J. Ex. 55, "Quant Firm Launches New Fund," www.marketsmedia.com, July 29, 2014 (available at https://www.marketsmedia.com/quant-firm-launches-new-fund/ (last time visited June 12, 2025).)

**RESPONSE**: Disputed in part.  Defendants object to Paragraph 13 because it is inadmissible hearsay in violation of Federal Rules of Evidence 802.  The hearsay is not saved by Federal Rule of Evidence 805 because, while Rule 801(d)(2)(A) excludes party statements from the hearsay rule, the article itself (*i.e.*, the reportage of author Terry Flanagan) is inadmissible hearsay because it is an out-of-court statement offered for the truth of what somebody else said.  *See Roquet v. Arthur Andersen LLP*, 2004 WL 609314, at *2 (N.D. Ill. Mar. 23, 2004) ("Media reports, including newspaper articles, that are being offered for the truth of the matter asserted are inadmissible hearsay and cannot be relied upon for summary judgment proceedings."); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("The article, however, is hearsay: an out-of-court statement offered to prove the truth of its contents—to prove, that is, that Centel or its investment bankers made the comments attributed to them," and "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial … .").

Notwithstanding this objection, Defendants do not dispute that the article referenced in Paragraph 13 says what it says, but dispute the SEC's characterization of the article, as it does not "state[]" that "the Polysight I fund was open to new investors."

14. On January 6, 2016, Sam Barnett conducted an interview with the online publication Yahoo! Finance. On more than one occasion, Alan Handler attached links to this interview (and other interviews) when sending Polysight I fact sheets and/or investor presentations to prospective investors (or private money managers). (*See*, *e.g.*, S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12971; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21554; S.J. Ex. 15, 6/20/16 Handler Polysight I Email, ELK-0027175 at 27200.)

**RESPONSE: Disputed in part. Defendants dispute that the fact sheets and investor presentations were for the Polysight I, LLC fund. Rather, the fact sheets and investor presentations provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2 ("Q: So you were marketing an idea? A: It's the product that is – it's a concept, yes. It's an idea. … Q: Okay. And what was the concept of idea? A: That the individual investor could open an account with us, either an SMA or a Fund of One, and we would employ our strategy inside that vehicle. Q: And what strategy is that? A: The Polysight strategy."), 109:12-16 ("Because we were marketing, and in reference to the fact sheet that is attached to that e-mail to OSC, Funds of One or SMA's for these large institutions that would have their own ability to mandate things like lockup periods, withdrawal rights, and high-water marks."), 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 362:15-23, 340:10-341:7; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.**

**Defendants further dispute that Exhibit 15 reflects Mr. Handler sending a Polysight I fact sheet because the fact sheet in Exhibit 15 provided information about Polysight as a strategy, as demonstrated by statements in the fact sheet that "Polysight® is a quantitative directional investment platform," that "numerous hedge funds managed by SBB Research Group are based on *Polysight*®, a proprietary quantitative investment platform," and a disclosure stating "Historical performance represents the return of SBB Research Group Investors II LLC, which began trading in September 2011 with $10 million.").  *See* SEC Ex. 15, ELK-0027175 at -0027177-78.**

15.    Polysight I was described by Aven, Barnett, and SBB as SBB's "flagship fund." (*E.g.*, S.J. Ex. 3, 1/24/17 Aven Testimony Tr. at 308:10-25; S.J. Ex. 41, 1/28/16 Barnett Email, SBBRG 005390 at SBBRG 005390; S.J. 12, 6/29/17 Handler Polysight I Email, SBBRG 237867 at 237868; S.J. Ex. 51, SBB Firm Overview PowerPoint, SBBRG 146588 at p. 8.)

**RESPONSE: Disputed in part.  Defendants do not dispute that SBB and Dr. Barnett have at times described Polysight I as a "flagship fund."  SEC Ex. 41, SBBRG 005390 at -005390; SEC Ex. 51, SBBRG 146588 at 8.**

**Defendants dispute that Mr. Aven described Polysight I as a "flagship fund" because it is not supported by the cited evidence.  Rather, in the cited deposition testimony, the SEC quoted from an e-mail from Dr. Barnett (SEC Ex. 41) which described Polysight I as a "flagship fund" and the SEC did not ask whether Mr. Aven agreed with that characterization.**

16.    SBB planned to use Polysight I to expand its investor base to outside investors, including institutional investors. (S.J. Ex. 11, Mar. 30, 2016 SBB Form ADV Part 2A at p. 1; S.J. Ex. 41, 1/28/16 Barnett Email SBBRG 005390; S.J. Ex. 12, 6/29/17 Handler Polysight I Email,

SBBRG 237867; S.J. Ex. 51, SBB Firm Overview PowerPoint, SBBRG 146588; Dkt. #51, Answer ¶ 25; S.J. Ex. 3, 1/24/17 Aven Testimony Tr. at 48:1-8.)

**RESPONSE: Disputed in part. Defendants do not dispute that SBB planned to expand its investor base to outside investors, including institutional investors, when it retained E.L.K. Ex. 162, ELK-0000004 (E.L.K. Capital Advisors, LLC engagement letter with SBB).**

**Defendants dispute that SBB planned to use the Polysight I, LLC fund to expand its investor base to institutional investors. Defendants aver that SBB's goal was to create bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy. Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.**

17.     In an October 2014 interview with SEC examination staff, Barnett told an SEC Examiner that "[t]he future of the company is Polysight." (S.J. Ex. 52, SEC Examiner Notes, SEC-0002325.)

**RESPONSE: Disputed in part. Defendants object to Paragraph 17 because the SEC lacks any foundation under Federal Rule of Evidence 901 to offer the unidentified handwritten notes in Exhibit 52. Moreover, Exhibit 52 is inadmissible hearsay in violation of Federal Rules of Evidence 802. The hearsay is not saved by Federal Rule of Evidence 805 because, while Rule 801(d)(2)(A) excludes party statements from the hearsay rule, the**

handwritten notes themselves (*i.e.*, the reportage of the notes' author) is inadmissible hearsay because it is an out-of-court statement offered for the truth of what somebody else said.

Notwithstanding these objections, Defendants do not dispute that SEC Exhibit 52 appears to be a copy of handwritten notes titled "Discussion w/ Sam 10/23/14" and states that "[t]he future of the company is Polysight." SEC Ex. 52, SEC-0002325.

Defendants dispute Paragraph 17 to the extent it suggests that Dr. Barnett made that statement explicitly to an SEC Examiner because it is not supported by the cited evidence (which is inadmissible in any event).

Defendants aver that the Exhibit cited in Paragraph 17 does not indicate whether the "Polysight" referenced therein referred to the Polysight I, LLC fund or SBB's Polysight investment strategy.

18.     According to the Operating Agreement for Polysight I which bears Defendant Barnett's signature – and as Defendants have admitted – from at least June 2014 through January 2017, Polysight I: (a) had a lock-up period of two years (*i.e.*, investors could not withdraw their funds during the first two years after investing without manager approval); and (b) had no "high water mark." (Dkt. #51, Answer ¶¶ 23-24; S.J. Ex. 42, SBB Polysight I Subscription Package SBBRG-0004762, at SBBRG-4786 (Section 3.01, Withdrawals from Capital Accounts), SBBRG 4802 (Section titled "Incentive Allocation"); S.J. Ex. 9, Aven 5/12/20 RFA Responses at ¶¶ 45, 47-48; S.J. Ex. 4, Aven 12/15/18 Testimony Tr. at 362:8-11, 368:3-4.)

**RESPONSE: Disputed in part.** Defendants do not dispute that the Polysight I, LLC fund, had a lock-up period of two years and had no high-water mark.

Defendants dispute Paragraph 18 to the extent it implies that Polysight as a strategy included terms of a lock-up period of two years and no high-water mark. Ex. 221, Handler

**Dep. Tr. 36:19-37:2 (Mr. Handler was marketing a concept that investors could open Funds of One and SBB would employ the Polysight strategy inside that vehicle), 109:12-16, 113:22-114:3 (Mr. Handler's marketing was "designed to appeal to very large institutional investors who would create SMA's, the Funds of One, which would then have their own offering documents or subscription agreements.").**

19.     By at least July 2014, Polysight I began receiving new investments from investors (a majority of which came from SBB officers and their friends and family). (S.J. Ex. 43, SBB Investor Information 2019-2-28, SBBRG 015000.)

**RESPONSE: Disputed in part. Defendants do not dispute that the Polysight I, LLC the fund began receiving investments by at least July 2014.**

**Defendants dispute that a "majority" of investments into Polysight I, LLC were from SBB officers and their friends and family, and aver that all investments into Polysight I, LLC were from SBB officers and their friends and family. *See* Ex. 209, Aven SEC Tr. (Jan. 24, 2017) 48:9-12 ("to date we haven't taken any capital from nonfriends and family."), 50:3-51:20 (all funds listed on the March 30, 2016 Form ADV, including Polysight I, LLC, were "friends and family"), 53:4-10 (all Polysight I investors as of September 30, 2016 were friends and family).**

20.     As of December 31, 2015, Polysight I had more assets under management than any other fund managed by SBB. (S.J. Ex. 11, March 30, 2016 SBB Form ADV at 53.)

**RESPONSE: Disputed in part. The purported fact in Paragraph 20 is unsupported by "citation to the specific evidentiary material, including the specific page number, that supports it" in violation of L.R. 56.1(d)(2), as the exhibit cited (SEC Ex. 11) does not correspond to the March 30, 2016 SBB Form ADV and does not support the assertion in**

**Paragraph 20. The SEC's Exhibit 11 is instead the Form ADV Part 2A: Firm Brochure for SBB Research Group LLC dated March 30, 2016, which does not contain information about the assets under management for the Polysight I, LLC fund.** *See* **SEC Ex. 11. Notwithstanding that objection, Defendants do not dispute the factual assertion in Paragraph 20.**

## III.  MARKETING RELATED TO POLYSIGHT I, LLC:

21.     In October 2015, SBB retained E.L.K. Capital Advisors, LLC ("ELK") to serve as a placement agent for "SBB Research Group Polysight I, LLC, certain other funds and separately managed accounts." (S.J. Ex. 53, 10/16/15 SBB – ELK Agreement, ELK-0000004.)

**RESPONSE:  Undisputed.   Defendants aver that SBB engaged E.L.K. Capital Advisors as a placement agent to "make introductions to institutions that would be interested in [SBB's] investment strategy."  Ex. 210, Aven SEC Tr. (Jan. 11, 2018) 45:8-12; Ex. 162, ELK-0000004 (E.L.K. Capital Advisors, LLC engagement letter with SBB).  The engagement letter included a sample disclosure statement that was to be "furnished to prospective investors in investment strategies by SBB Research Group LLC who are introduced by E.L.K.," and the disclosure statement explained that the "name of the strategies subject to an agreement with [E.L.K.] include: SBB Research Group Polysight I, LLC, a Illinois limited liability company, [insert others as applicable] (collectively, the "SBB Strategies")."  *Id.* at -0000016.**

22.     Alan Handler, an ELK employee from 2015 through approximately January 2017, was the primary ELK employee who solicited investments and sought to raise investment capital for SBB's Funds, including Polysight I. (S.J. Ex. 7, 12/1/21 Handler Dep. Tr. at 32:20 to 33:4; 46:24 to 47:5; 56:13-19.)

14

**RESPONSE:** **Disputed in part.  Defendants do not dispute that Alan Handler, an ELK employee from 2015 through approximately January 2017, was the primary ELK employee who solicited investments and sought to raise investment capital for SBB.**

**Defendants dispute Paragraph 22 to the extent it implies that SBB retained Mr. Handler solely to solicit investments in SBB's existing funds.  Defendants aver that SBB's goal was to create bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy.  Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.  SBB retained Mr. Handler for that purpose.  *See* Ex. 210, Aven SEC Tr. (Jan. 11, 2018) 45:8-12; Ex. 212, Aven Dep. Tr. (Dec. 15, 2022) 281:8-17; Ex. 220, Handler SEC Tr. 15:23-16:11, 40:16-41:2; Ex. 221, Handler Dep. Tr. 34:10-21, 36:19-37:2, 115:18-116:1; *see also* SAMF ¶¶ 21-22, 30-32.**

23.     Handler agreed to start marketing SBB offerings after Barnett and Aven told him that their goal was to raise "billions of dollars" from investors. (S.J. Ex. 6, 5/1/18 Handler Test. Tr. at 24:16 to 25:4.)

**RESPONSE:** **Disputed.  Paragraph 23 misstates Mr. Handler's testimony, which does not support the statement that Dr. Barnett and Mr. Aven told Mr. Handler their goal was to raise "billions of dollars."  That statement was made by Mr. Handler.  In full, his relevant testimony states: "I obviously wanted them to grow. They wanted to grow. I made it a point to them that I was - I would be interested in coming over if they would agree that we would all try to contribute to raising billions of dollars, and that's where their hearts and minds**

were. So, it seemed like we were all in agreement with each other." **Ex. 220, Handler SEC Tr. 24:23-25:4.**

24.     Handler has over 30 years of experience in the securities industry, including experience soliciting financial investments from institutional and individual investors. (S.J. Ex. 7, 12/1/21 Handler Dep. Tr. at 39:21 to 46:9.)

**RESPONSE: Undisputed, but Defendants aver that Mr. Handler clarified in the cited testimony that all of his experience in the financial services industry was in soliciting financial investments from institutional investors, not individual investors, with the exception of his tenure from approximately July 2010 through January 2013 at Moloney Securities, a wealth management firm, where Mr. Handler's job was to bring in individual wealth management clients and did not involve raising capital on behalf of a hedge fund. Ex. 221, Handler Dep. Tr. 41:22-15, 46:3-9.**

25.     Beginning in or around February 2017 when he left ELK and was hired by SBB, and continuing through at least December 1, 2021, Handler served as SBB's head of business development. (S.J. Ex. 7, 12/1/21 Handler Dep. Tr. at 11:20-12:3, 16:2-4.)

**RESPONSE: Undisputed.**

26.     Among other methods, Handler marketed and solicited investments for Polysight I, by distributing written marketing materials to prospective investors and investment professionals (such as money managers and investment advisers). (S.J. Ex. 7, 12/1/21 Handler Dep. Tr. at 12:4-8; 16:7-12, 64:8-18.)

**RESPONSE: Disputed.  The SEC mischaracterizes Mr. Handler's testimony at 12:4-8 by omitting 12:8-16, which supports that Mr. Handler was referring to Polysight the strategy, not the Polysight I, LLC fund.  Mr. Handler testified that he was marketing "our**

16

hedge fund strategies." Ex. 221, Handler Dep. Tr. 12:8. In response to the SEC's question "are you describing a strategy or different types of fund?" Mr. Handler replied "I'm describing the strategies around which we have a number of different fund vehicles." *Id*. at 12:13-16.

Further, the SEC mischaracterizes Mr. Handler's testimony at 16:7-12. Mr. Handler testified that he "was marketing and selling our Polysight strategy." *Id*. at 16:15-16. The SEC asked if that was a particular fund, to which Mr. Handler replied "Polysight strategy was not a fund. It was a strategy." *Id.* at 16:17-20.

Defendants aver that SBB was interested in building out its business with institutional investors and was not interested in marketing Polysight I to institutional investors; rather, its goal was to create bespoke funds of one or SMAs for institutional investors (including high net worth individuals) based on the Polysight strategy, and SBB would use the track record from certain funds investing using a similar strategy as a way of showing what SBB had done for other investors and SBB's investment capabilities. Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

27. From approximately November 2015 to May 2016, SBB, through Handler, distributed "fact-sheets" for Polysight I to solicit investments from prospective investors. The "fact-sheet" was a two-page document that provided, among other things, information about Polysight I's historical performance, inception date, investment terms, and risk analysis. (*See*, *e.g.*, S.J. Ex. 16, 11/30/15 SBB Polysight I Fact Sheet, ELK-0000385 at 386-387; S.J. Ex. 17, 12/17/15

Emerging Manager Email, ELK-0095388 at 95390-95391; S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12969-12970; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15318-15319; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18390-18391; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21551-21552.)

**RESPONSE:** **Disputed. Defendants do not dispute that from approximately November 2015 to May 2016, SBB, through Mr. Handler, distributed fact sheets for its Polysight strategy to prospective investors.**

**Defendants dispute that the fact sheets referenced in Paragraph 27 were for the Polysight I, LLC fund, and aver that these fact sheets instead provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶ 21-25, 30-31, 40.**

**Defendants also dispute that the fact sheets sent in or before May 2016 (including all fact sheets expressly cited in Paragraph 27) included information about "Polysight I's historical performance" when every fact sheet sent in or before May 2016 included a disclosure making clear that the historical performance shown was a composite return of two funds, Investors II LLC and Polysight I, LLC. *See* SEC Ex. 13, ELK-0012940 at -0012969 ("Historical Performance represents a composite return of SBB Research Group Investors II LLC, which began trading in September 2011, and Polysight, which began trading in June 2014, and is net of all fees and expenses."); SEC Ex. 14, ELK-0021523 at -0021551 (same); SEC Ex. 16, ELK-0000385 at -0000386 (same); SEC Ex. 17, ELK-0095388**

18

at -0095390 (same); SEC Ex. 18, ELK-0015289 at -0015318 (same); SEC Ex. 19, ELK-0018361 at -0018390 (same); SEC Ex. 30, SBBRG 005352 at 005354 (same); SEC Ex. 31, SBBRG 005377 at 005384 (same); SEC Ex. 32, ELK-0017464 at -0017494 (same); SEC Ex. 33, ELK-0017896 at -0017926 (same); SEC Ex. 34, ELK-0018501 at -0018532 (same); SEC Ex. 35, ELK-0018255 at -0018286 (same); SEC Ex. 36, ELK-0018396 at -0018427 (same); SEC Ex. 37, ELK-0018466 at -0018496 (same); SEC Ex. 38, ELK-0018192 at -0018221 (same); SEC Ex. 39, ELK-0018941 at -0018970 (same); SEC Ex. 40, ELK-0018157 at -0018186 (same).

Defendants also dispute that the fact sheets sent in or before May 2015 (including all fact sheets expressly cited in Paragraph 27) included information about the "investment terms" for the Polysight I, LLC fund and aver that the fact sheets provided such terms under the header "Firm and Program Information." SEC Ex. 13, ELK-0012940 at -0012969; SEC Ex. 14, ELK-0021523 at -0021551; SEC Ex. 16, ELK-0000385 at -0000386; SEC Ex. 17, ELK-0095388 at -0095390; SEC Ex. 18, ELK-0015289 at -0015318; SEC Ex. 19, ELK-0018361 at -0018390; SEC Ex. 30, SBBRG 005352 at 005354; SEC Ex. 31, SBBRG 005377 at 005384; SEC Ex. 32, ELK-0017464 at -0017494; SEC Ex. 33, ELK-0017896 at -0017926; SEC Ex. 34, ELK-0018501 at -0018532; SEC Ex. 35, ELK-0018255 at -0018286; SEC Ex. 36, ELK-0018396 at -0018427; SEC Ex. 37, ELK-0018466 at -0018496; SEC Ex. 38, ELK-0018192 at -0018221; SEC Ex. 39, ELK-0018941 at -0018970; SEC Ex. 40, ELK-0018157 at -0018186.

Defendants further aver that from approximately June 2016 to January 2017, the fact sheets Mr. Handler distributed expressly referred to Polysight as a "quantitative directional investment platform" or "quantitative directional investment strategy." *See* SEC Ex. 15, ELK-0027175 at -0027177; SEC Ex. 20, ELK-0022693 at -0022695; SEC Ex. 21, ELK-

0022640 at -0022642; SEC Ex. 22, ELK-0001814 at -0001816; SEC Ex. 23, ELK-0022400 at -0022422; SEC Ex. 24, ELK-0040739 at -0040741; SEC Ex. 25, ELK-0090652 at -0090654; SEC Ex. 26, ELK-0091643 at -0091645; SEC Ex. 27, ELK-0003481 at -0003482; SEC Ex. 28, SBBRG LLC-CONFIDENTIAL-234229 at -234231; SEC Ex. 29, SBBRG LLC-CONFIDENTIAL-230697 at -230700.

28.     The content of the fact sheets identified in ¶ 27 was reviewed and approved by Barnett and Aven before the fact sheets were sent to prospective investors and investment professionals. (S.J. Ex. 6, 5/1/2018 Handler Test. Tr. at 50:11 to 52:6; Dkt. #51, Answer ¶ 95; S.J. Ex. 50, SBB May 2014 Investment Adviser Compliance Manual, at p. 12.)

**RESPONSE: Disputed in part.  Defendants do not dispute that Dr. Barnett or Mr. Aven reviewed and approved the fact sheets identified in Paragraph 27 before they were distributed to investors.**

**Defendants dispute Paragraph 28 to the extent it implies that Dr. Barnett and Mr. Aven each reviewed and approved every fact sheet, and to the extent Paragraph 28 implies that Dr. Barnett and Mr. Aven alone were responsible for reviewing and approving the fact sheets.  Defendants aver that Mr. Handler, Mr. Kiefer and several employees in SBB's operations department were also involved in reviewing the fact sheets, and aver that Dr. Barnett reviewed and approved SBB's marketing materials "in many cases," but Mr. Aven could also approve the marketing materials.  Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 90:10-24, 92:7-16; Ex. 220, Handler SEC Tr. 50:7-15, 51:4-9; Ex. 222, Kiefer SEC Tr. 136:20-137:6.**

29.     Each of the six Polysight I fact sheets identified in ¶ 27 included a narrative summary created by SBB under the heading "Program Information" for "Polysight™ I LLC" which the fact sheet described as "a Quantitative Directional Equity hedge fund." (*See, e.g.*, S.J.

Ex. 16, 11/30/15 SBB Polysight I Fact Sheet, ELK-0000385 at 386-387; S.J. Ex. 17, 12/17/15

Emerging Manager Email, ELK-0095388 at 95390-95391; S.J. Ex. 13, 2/9/16 Handler Polysight I

Email, ELK-0012940 at 12969-12970; S.J. Ex. 18, 3/9/16 Handler Polysight I Email,

ELK-0015289 at 15318-15319; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at

18390-18391; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21551-21552.)

**RESPONSE**: Disputed in part.  Defendants do not dispute that the six fact sheets

identified in Paragraph 27 included a section titled "Program Information" which stated, in

part, that "SBB Research Group *Polysight*™ I LLC is a Quantitative Directional Equity

hedge fund that employs systematically driven investment strategies to achieve dual

goals … ."

Defendants dispute that these fact sheets were for the Polysight I, LLC fund, and aver

that these fact sheets instead provided information about Polysight as a strategy, of which

the Polysight I, LLC fund was just one potential vehicle.  Ex. 221, Handler Dep. Tr. 109:12-

16; *see also* SAMF ¶ 21-25, 30-31, 40.

Defendants aver that SBB's goal was to create bespoke funds of one or SMAs for

institutional investors (including high-net-worth individuals) based on the Polysight strategy,

and SBB used these fact sheets as a way of showing what SBB had done for other investors

and SBB's investment capabilities.  Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler

Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15,

2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-

79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31,

40.

30.     From approximately February 2016 to January 2017, SBB, through Handler, marketed and solicited investments for Polysight I by disseminating to potential investors an "investor presentation," an approximately 20-page document that provided, among other things, information about Polysight I's historical performance, inception date, key investment terms, and risk analysis. (*See*, *e.g.*, S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12944, 12962, 12964; S.J. Ex. 32, 3/17/16 Handler Polysight I Email, ELK-0017464 at 17469, 17487, 17489; S.J. Ex. 33, 3/18/16 Handler Polysight I Email, ELK-0017896 at 17901, 17919, 17921; S.J. Ex. 34, 4/8/16 Handler Polysight I Email, ELK-0018501 at 18506, 18523, 18525; S.J. Ex. 35, 4/8/16 Handler Polysight I Email 2, ELK-0018255 at 18260, 18277, 18279; S.J. Ex. 36, 4/8/16 Handler Polysight I Email 3, ELK-0018396 at 18401, 18418, 18420; S.J. Ex. 37, 4/8/16 Handler Polysight I Email 4, ELK-0018466 at 18471, 18488, 18490; S.J. Ex. 38, 4/8/16 Handler Polysight I Email 5, ELK-0018192 at 18197, 18214, 18216; S.J. Ex. 39, 4/11/16 Handler Polysight I Email, ELK-0018941 at 18946, 18963, 18965; S.J. Ex. 40, 4/18/16 Handler Polysight I Email, ELK-0018157, at 18162, 18179, 18181; S.J. Ex. 20, 6/2/16 Handler Polysight I Email, ELK-0022693 at 22700, 22713; S.J. Ex. 21, 6/2/16 Handler Polysight I Email 2, ELK-0022640 at 22647, 22660; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15293, 15311, 15313; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18366, 18383, 18385; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21527, 21544, 21546; S.J. Ex. 22, 6/1/16 Handler Polysight I Email, ELK-0001814 at 1821, 1834; S.J. Ex. 23, 6/2/16 Handler Polysight I Email, ELK-0022400 at 22404, 22417; S.J. Ex. 15, 6/20/16 Handler Polysight I Email, ELK-0027175 at 27182, 27195; S.J. Ex. 24, 7/25/16 Handler Polysight I Email, ELK-0040739 at 40746, 40759; S.J. Ex. 25, 11/3/16 Handler Polysight I Email, ELK-0090652 at 90659, 90672; S.J. Ex. 26, 1/6/17 Handler Polysight I Email, ELK-0091643 at pp. 2-3 (SBB produced only native

document, no bates label available), 91650, 91663; S.J. Ex. 27, 1/20/17 Handler Polysight I Email, ELK-0003481 at 3487, 3500; S.J. Ex. 28, 1/23/27 Handler Emerging Manager Email, SBBRG LLC-CONFIDENTIAL-234229 at 234236, 234249; S.J. Ex. 29, 1/31/17 Handler Emerging Manager Email, SBBRG LLC-CONFIDENTIAL-230697 at 230705, 230718.)

**RESPONSE: Disputed. For all of the investor presentations referenced in Paragraph 30, Defendants dispute that the information on historical performance, inception date, key investment terms, and risk analysis pertained to the Polysight I, LLC fund, and dispute the argumentative assertion in Paragraph 30 that Mr. Handler used the investor presentations to solicit investments only for the Polysight I, LLC fund. Defendants aver that the investor presentations referenced in Paragraph 30 provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle.** *See* **Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7;** *see also* **SAMF ¶¶ 21-25, 30-31, 40.**

**Defendants aver that SBB's goal was to create bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy, and SBB used these presentation decks as a way of showing what SBB had done for other investors and SBB's investment capabilities.** *See* **Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9 ("Q: And so SBB would be providing information on Polysight to market the services provided by the manager in the hopes of creating a new fund for that institutional investor? A: Typically, yes. … So what we learned through doing this**

is what they prefer to do is just have a -- their own fund of one. And what they get with that is they get customization, they have whatever rights they want."), 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants further aver that the investor presentations cited in Paragraph 30 referenced Polysight as "Polysight®," which was a reference to the Polysight investment strategy. Ex. 220, Handler SEC Tr. 96:4-7.

For Exhibits 13, 14, 18, 19, 32, 33, 34, 35, 36, 37, 38, 39, and 40, Defendants further dispute that the investor presentations in those Exhibits contained information about Polysight I, LLC's (the fund) historical performance, because the presentations were accompanied by a disclosure stating that the historical performance shown was a composite of Investors II and Polysight I, LLC. *See* SEC Ex. 13, ELK 0012940 at -0012957 ("Historical Performance represents a composite return of SBB Research Group Investors II LLC, which began trading in September 2011, and Polysight, which began trading in June 2014"), -12958 (same), -0012959 (same), -0012960 (same), -0012961 (same); SEC Ex. 14, ELK-0021523 at -0021540 (same), -0021541 (same), -0021542 (same), -0021543 (same); SEC. Ex. 18, ELK-0015289 at -0015306 (same), -0015307 (same), -0015308 (same), -0015309 (same), -0015310 (same); SEC Ex. 19, ELK-0018361 at -0018379 (same), -0018380 (same), -0018381 (same), -0018382 (same); SEC Ex. 32, ELK-0017464 at -0017482 (same), -0017483 (same), -0017484 (same), -0017485 (same), -0017486 (same); SEC Ex. 33, ELK-0017896 at -0017914 (same), -0017915 (same), -0017916 (same), -0017917 (same), -0017918 (same); SEC Ex. 34, ELK-0018501 at -0018519 (same), -0018520 (same), -0018521 (same), -0018522 (same); SEC Ex. 35, ELK-0018255 at -0018273 (same), -0018274 (same), -0018275 (same), -0018276

(same); SEC Ex. 36, ELK-0018396 at -0018414 (same), -0018415 (same), -0018416 (same), -0018417 (same); SEC Ex. 37, ELK-0018466 at -0018484 (same), -0018485 (same), -0018486 (same), -0018487 (same); SEC Ex. 38, ELK-0018192 at -0018210 (same), -0018211 (same), -0018212 (same), -0018213 (same); SEC Ex. 39, ELK-0018941 at -0018959 (same), -0018960 (same), -0018961 (same), -0018962 (same); Ex. 40, ELK-0018157 at -0018175 (same), -0018176 (same), -0018177 (same), -0018178 (same).

Defendants also dispute that Exhibits 13, 14, 18, 19, 32, 33, 34, 35, 36, 37, 38, 39, and 40 contained information about Polysight I, LLC's risk analysis, because the risk analysis charts in these Exhibits pertained to "Polysight®," which was a reference to the investment program. *See* SEC Ex. 13, ELK 0012940 at -0012962; SEC Ex. 14, ELK-0021523 at -0021544; SEC. Ex. 18, ELK-0015289 at -0015311; SEC Ex. 19, ELK-0018361 at -0018383; SEC Ex. 32, ELK-0017464 at -0017487; SEC Ex. 33, ELK-0017896 at -0017919; SEC Ex. 34, ELK-0018501 at -0018523; SEC Ex. 35, ELK-0018255 at -0018277; SEC Ex. 36, ELK-0018396 at -0018418; SEC Ex. 37, ELK-0018466 at -0018488; SEC Ex. 38, ELK-0018192 at -0018214; SEC Ex. 39, ELK-0018941 at -0018963; Ex. 40, ELK-0018157 at -0018179; Ex. 220, Handler SEC Tr. 97:4-7 ("Q So, in your mind when you say Polysight R that's the strategy? A Yes. That umbrella strategy that the firm is trying to promote.").

Regarding Exhibits 15, 20, 21, 22, 23, 24, 25, 26, 27, 28, and 29, Defendants further dispute that these Exhibits contained information about Polysight I, LLC's historical performance or risk analysis because the cited exhibits do not display any historical performance or risk analysis.

Defendants dispute that the SEC's Exhibit 40 is an email from Mr. Handler to a prospective investor, as the Exhibit reflects an email from Mr. Handler to himself. *See* Ex. 251, ELK-0018157.

Defendants aver that the SEC's Exhibit 35 reflects an email from Mr. Handler to zcaresearch@zekecapit that was never delivered. *See* Ex. 252, ELK-0009407 (bounce-back message stating "delivery has failed to these recipients or groups: zcaresearch@zekecapit). Accordingly, the intended recipient never received the email or the attachments thereto.

Finally, Defendants aver that SBB made it clear to the recipients of Mr. Handler's emails in the SEC's Exhibits 18 and 23 that it was attempting to pitch its investment capabilities and strategy. *See* Ex. 249, SBBRG LLC-CONFIDENTIAL-196420 (email from Mr. Handler to the same prospective investor in the SEC's Exhibit 18, expressly discussing SBB's investment strategy and listing Investors II as SBB's longest-running vehicle that started operation in September 2011); Ex. 245, SBBRG LLC-CONFIDENTIAL-228308 (email from Mr. Handler to the same prospective investor in the SEC's Exhibit 23, referencing a prior conversation during which they discussed SBB's "strategy," and expressing SBB's interest in building the investor "a custom feeder structure.").

31.     Between at least February 2016 to January 2017, the presentations identified in ¶ 30 above (a) described "Polysight" as a "Quantitative Directional Equity Hedge Fund"; (b) included an introductory message from Sam Barnett describing "our current fund, SBB Research Group, Polysight I LLC" as a "natural fit" for certain investor profiles; (c) included a "Polysight Overview," with a sub-heading of "SBB Research Group Polysight I, LLC"; and (d) included a "Polysight Facts and Terms" section that identifies the Fund as "SBB Research Group Polysight I, LLC." (*See id.*)

**RESPONSE**: Disputed in part. Defendants do not dispute that the information described in Paragraph 31 is present in the investor presentations cited in Paragraph 30.

Defendants dispute Paragraph 31 to the extent it implies that the presentations cited in Paragraph 30 presented information only about the Polysight I, LLC fund, and aver that the investor presentations instead provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants further aver that the investor presentations cited in Paragraph 30 referenced Polysight as "Polysight®," which was a reference to the Polysight investment strategy. Ex. 220, Handler SEC Tr. 96:4-7.

32. Some of the presentations identified in ¶ 30 were accompanied by a cover email which provided additional information about Polysight I. (*See, e.g.*, S.J. Ex. 34, 4/8/16 Handler Polysight I Email, ELK-0018501 at 18506, 18523, 18525; S.J. Ex. 35, 4/8/16 Handler Polysight I Email 2, ELK-0018255 at 18260, 18277, 18279; S.J. Ex. 36, 4/8/16 Handler Polysight I Email 3, ELK-0018396 at 18401, 18418, 18420; S.J. Ex. 37, 4/8/16 Handler Polysight I Email 4, ELK-0018466 at 18471, 18488, 18490; S.J. Ex. 38, 4/8/16 Handler Polysight I Email 5, ELK-0018192 at 18197, 18214, 18216; S.J. Ex. 39, 4/11/16 Handler Polysight I Email, ELK-0018941 at 18946, 18963, 18965; S.J. Ex. 40, 4/18/16 Handler Polysight I Email, ELK-0018157, at 18162, 18179, 18181; S.J. Ex. 20, 6/2/16 Handler Polysight I Email, ELK-0022693 at 22700, 22713; S.J. Ex. 21, 6/2/16 Handler Polysight I Email, ELK-0022640 at

22647, 22660; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15293, 15311, 15313; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18366, 18383, 18385; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21527, 21544, 21546.)

**RESPONSE: Disputed. The purported fact in Paragraph 32 is unsupported by "citation to the specific evidentiary material, including the specific page number, that supports it" in violation of L.R. 56.1(d)(2), as the page numbers cited do not correspond to the referenced cover emails.**

**Defendants also dispute that the cover emails described in Paragraph 32 provided information only about the Polysight I, LLC fund. Defendants aver that the cover emails and attachments discussed Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.**

**Defendants further aver that Mr. Handler's cover emails provided information about SBB Research Group in general, as demonstrated by the following statements in all but two of the Exhibits cited in Paragraph 32:**

- **"I'd like to introduce you to our firm and begin the process of entering your database of prospective hedge fund managers."**

- **"Sam and our team have constructed a multi-model, quantitative investment platform that incorporates big data analysis, machine learning, artificial intelligence, and a large component of human intuition, to arrive at our investment worldviews."**

28

- **"SBBRG expresses its investment views by assembling portfolios of bespoke structured notes that we design and then purchase (reverse inquiry) from a consortium of global banks. The attached Investor Presentation describes this process in some detail."**

- **"I believe that the material here highlights these unique features, explains our strategy, and serves as a good introduction to SBB Research Group."**

**SEC Ex. 19, ELK-0018361 at -0018361; SEC Ex. 20, ELK-0022693 at -0022693; SEC Ex. 21, ELK-0022640 at -0022640; SEC Ex. 34, ELK-0018501 at -0018501; SEC Ex. 35, ELK-0018255 at -0018255; SEC Ex. 36, ELK-0018396 at -0018396; SEC Ex. 37, ELK-0018466 at -0018466; SEC Ex. 38, ELK-0018192 at -0018192; SEC Ex. 39, ELK-0018941 at -0018941-0018942; SEC Ex. 40, ELK-0018157 at -0018157.**

**As for the remaining two cover emails cited in Paragraph 32, Mr. Handler does not mention Polysight at all.** *See* **SEC Ex. 14, ELK-0021523 at -0021523; SEC Ex. 18, ELK-0015289 at -0015289.**

**Defendants dispute that the SEC's Exhibit 40 is an email from Mr. Handler to a prospective investor, as the Exhibit reflects an email from Mr. Handler to himself.** *See* **Ex. 251, ELK-0018157.**

33.     Barnett and Aven were responsible for providing Handler with the information included in all of the disseminated marketing materials, including the fact sheet, investor presentation, and cover emails. (Dkt. #51, Answer ¶ 95.)

**RESPONSE: Disputed in part.  Defendants do not dispute that Dr. Barnett and/or Mr. Aven provided Mr. Handler with information included in SBB's disseminated marketing materials.**

29

**Defendants dispute Paragraph 33 to the extent it implies that Dr. Barnett and Mr. Aven alone were responsible for providing the information included in SBB's marketing materials. Defendants aver that Mr. Kiefer and Mr. Handler were also involved in drafting SBB's marketing materials.** *See* **Ex. 220, Handler SEC Tr. at 50:7-15, 51:4-9; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 89:12-22; Ex. 222, Kiefer SEC Tr. 136:20-137:6.**

34.     SBB, through Handler, also marketed Polysight I by posting information about the Fund to multiple investor research website platforms ("Online Marketing Platforms"), which SBB understood were marketing portals which could potentially match SBB with institutional investors and high net worth individuals. (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK-0094211; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179; S.J. Ex. 54, SBB Evestment Database Listing; S.J. Ex. 46, SBB Preqin Database Listing, ELK-0010976; S.J. Ex. 7, 12/1/21 Handler Dep at 126:1 to 127:9; S.J. Ex. 2, 4/26/18 Barnett Testimony at 655:1-17; S.J. Ex. 6, 5/1/2018 Handler Testimony Tr. at 100:5 to 103:21; 104:9 to 105:15; 118:14-20; 123:8-18; S.J. Ex. 4, 12/15/2018 Aven Testimony Tr. at 330:3 to 332:7, 334:11-21, 337:11-14., 339:11-21.)

**RESPONSE: Disputed in part. Defendants do not dispute that the online portals could potentially match SBB with potential institutional and high net worth investors.**

**Defendants dispute that the submissions to the online portals pertained to the Polysight I, LLC fund, and aver that the submissions were not intended to market any of SBB's specific funds, but rather as a way of showing what SBB had done for other investors and SBB's investment capabilities in order to attract potential investors to create bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy.** *See* **Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018)**

335:8-15, 340:10-341:9, 362:15-23 ("[T]he intention here [with online portals] was – I believe it was the same thing. The investors weren't going to go into Polysights, and Alan wanted to represent what they would be probably interested in going into. So if you're interested in working with us, we create a custom vehicle. These would be the -- these would be the terms that we would be probably interested in doing."); Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; Ex. 250, ELK-0110771 at -0110771 (Oct. 10, 2016 email from Handler to eVestment data support) (transmitting a fact sheet to an online portal and explaining that "Polysight I is open to new investors: this vehicle follows the exact same strategy as Investors II … [o]ur showcasing of Investors II is also designed to convey our ability and interest in building funds-of-one and SMA's for investors who are looking for that type of a structure"); *see also* SAMF ¶¶ 21-25, 30-31, 40.

35.     In March 2016, SBB, through Handler, submitted information on Polysight I to at least four Online Marketing Platforms, including HedgeCo.Net (the "HedgeCo Listing"), HFR (the "HFR Listing"), Evestment (the "Evestment Listing"), and Preqin (the "Preqin Listing"). (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK-0094211; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179; S.J. Ex. 54, SBB Evestment Database Listing; S.J. Ex. 7, 12/1/21 Handler Dep at 219, 221 to 222:9, 223-24, 226-227:23, 229-330:6; S.J. Ex. 46, SBB Preqin Database Listing, ELK-0010976.)

**RESPONSE: Disputed in part. Defendants do not dispute that SBB, through Mr. Handler, submitted information to the four online portals referenced in Paragraph 35.**

**Defendants dispute that the submissions to the online portals pertained to the Polysight I, LLC fund, and aver that the submissions were not intended to market any of SBB's specific funds, but rather as a way of showing what SBB had done for other investors**

and SBB's investment capabilities in order to attract potential investors to create bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy. **Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; Ex. 250, ELK-0110771 at -0110771 (Oct. 10, 2016 email from Handler to eVestment data support);** *see also* **SAMF ¶ 40.**

36.     Aven reviewed and approved the information that was posted to the Online Marketing Platforms. (S.J. Ex. 4, 12/15/2018 Aven Testimony Tr. at 330:10-333:19; S.J. Ex. 6, 5/1/18 Handler Testimony Tr. 107:5-108:1; 114:6-10.)

**RESPONSE: Disputed in part. Defendants do not dispute that Mr. Aven testified that he reviewed and approved the initial information provided to the online platforms.**

**Defendants dispute that Mr. Aven reviewed and approved any updated information posted to the online portals, as Mr. Aven testified that Mr. Handler inputted monthly updates himself based on information SBB provided to Mr. Handler. Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 333:8-334:1.**

## IV.     MISREPRESENTATIONS IN THE POLYSIGHT I MARKETING MATERIALS:

### A.     Polysight I's Investment Terms

#### 1.     The Lockup

37.     One of the investment terms for Polysight I that was identified in the fact sheets, investor presentations, and Online Marketing Platforms was the length of the fund's "lockup" period (*i.e.*, the time period in which an investor was prohibited from withdrawing from their investment without prior management approval). (S.J. Ex. 7, 12/1/21 Handler Dep at 85:19-21;

*See* Fact Sheets Identified in ¶ 27 above; Investor Presentations Identified in ¶ 30 above; Online Management Platform Profiles identified in ¶ 34 above.)

**RESPONSE**: Disputed.  Defendants dispute that the lock-up period term in the fact sheets, investor presentations, and the online portals pertained to the Polysight I, LLC fund, and aver that the fact sheets, investor presentations, and submissions to the online portals provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle.  *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants further aver that the terms as provided in the fact sheets, investor presentations, and submissions to the online portals represented the kinds of terms that SBB would negotiate with and implement for investors who ended up creating bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy.  *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15 ("("The – the investors – the institutional investors that we typically would be talking to typically are looking for their own vehicle.  So the – the – the information provided is more of a representation of – of what we do, not so much of a solicitation to go into this particular fund; more of, this is what the manager does.  If you're interested in this, we can do something like it."), 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37.

Defendants further aver that the fact sheets concern SBB's investment "program," and that the investment terms referenced in the fact sheets sent in or before May 2016

(including all fact sheets expressly cited in Paragraph 27) appeared in a section of the fact sheets titled "Firm and Program Information."  *See* SEC Ex. 13, ELK-0012940 at -0012969; SEC Ex. 14, ELK-0021523 at -0021551; SEC Ex. 16, ELK-0000385 at -0000386; SEC Ex. 17, ELK-0095388 at -0095390; SEC Ex. 18, ELK-0015289 at -0015318; SEC Ex. 19, ELK-0018361 at -0018390; SEC Ex. 30, SBBRG 005352 at 005354; SEC Ex. 31, SBBRG 005377 at 005384; SEC Ex. 32, ELK-0017464 at -0017494; SEC Ex. 33, ELK-0017896 at -0017926; SEC Ex. 34, ELK-0018501 at -0018532; SEC Ex. 35, ELK-0018255 at -0018286; SEC Ex. 36, ELK-0018396 at -0018427; SEC Ex. 37, ELK-0018466 at -0018496; SEC Ex. 38, ELK-0018192 at -0018221; SEC Ex. 39, ELK-0018941 at -0018970; SEC Ex. 40, ELK-0018157 at -0018186.

Defendants further aver that the investor presentations cited in Paragraph 30 referenced Polysight as "Polysight®," which was a reference to the Polysight investment strategy.  Ex. 220, Handler SEC Tr. 96:4-7.

Defendants further aver that the subscription documents for SBB's Polysight I, LLC fund disclosed that the lock-up period for the fund was two years, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003802 (Polysight I "Disclosures and Risks" stating that the fund is subject to a lock-up period of two years), -0003764 (Polysight I Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

Finally, Defendants aver that SBB's Form ADV Part 2A brochures, as publicly available on the SEC's website, further disclosed the following: "Fund investors' ability to withdraw capital, and thereby recognize profits or prevent losses, is restricted.  Typically,

34

Fund contributions cannot be withdrawn until the December 31 of any fiscal year that follows the second anniversary of the date that the contribution was made."  SEC Ex. 10, SBB Form ADV Part 2 (Mar. 31, 2014) at 8; Ex. 53, SBB Form ADV Part 2 (Mar. 30, 2015) at 54; SEC Ex. 11, SBB Form ADV Part 2 (Mar. 30, 2016) at 6.

38.     Handler testified under oath during his deposition and his investigative testimony that the length of a fund's lockup is important information to investors. Specifically: (a) during investigative testimony, Handler testified that a fund's lockup period is "a piece of information that investors regard as important … [b]ecause investors always want to know what kind of access they have to their capital, what the terms are, their being able to access their capital"; and (b) during his deposition, Handler testified that a lockup is important information for investors "[b]ecause investors need to how long a time period of that before they can get access to their money" and that providing a prospective investor with an inaccurate lockup period "would be confusing and potentially misleading to the investor…It would be an omission of – of an important piece of information, and it would conflict with good business conduct in this instance." (S.J. Ex. 7, 12/1/21 Handler Dep at 85:19-21, 96:7-25; S.J. Ex. 6, 5/1/18 Handler Testimony Tr. at 83:8 to 84:4.)

**RESPONSE: Disputed in part. Defendants object to Paragraph 38 as inadmissible under Federal Rules of Evidence 602, 701, and 702, as well as under Federal Rule of Civil Procedure 26(a)(2)(A), given that the SEC seeks to use Mr. Handler as an undisclosed purported expert in materiality after its disclosed expert Mr. Hickey was excluded, and that the SEC did not establish Mr. Handler has personal knowledge of the subject of his testimony.  Mr. Handler is not a disclosed expert as to any subject matter.  Further, the SEC offers no testimony from Mr. Handler about his personal observations when marketing SBB's strategy—*e.g.*, the SEC did not ever ask him whether any investors ever expressed to**

35

him that the allegedly misstated terms were important to them—and therefore Mr. Handler's testimony was speculative.

Notwithstanding these objections, Defendants do not dispute that the cited Exhibits support the following investigative testimony by Mr. Handler: "[Lock-up period is] a piece of information that investors regard as important … [b]ecause investors always want to know what kind of access they have to their capital, what the terms are, their being able to access their capital." Ex. 220, Handler SEC Tr. 83:24-84:4425. Defendants also do not dispute that the cited Exhibits support the following deposition testimony by Mr. Handler: "[providing a one-year lock-up period] would be confusing and potentially misleading to the investor … It would be an omission of – of an important piece of information, and it would conflict with good business conduct in this instance." Ex. 221, Handler Dep. Tr. 96:7-19. Defendants dispute that the cited Exhibits support the following quote: "[b]ecause investors need to how long a time period of that before they can get access to their money." Defendants refer to the full testimony transcript (Ex. 220) and full deposition transcript (Ex. 221) as the best evidence and object to the SEC's characterization in Paragraph 38.

Defendants also dispute Paragraph 38 to the extent it suggests that Mr. Handler testified about whether investors of the type of sophistication permitted to invest in SBB's funds would consider the lock-up information important, because the SEC's questions asked Mr. Handler only as to what would be important to investors as a general matter, without regard to the fact that SBB's prospective investors were sophisticated accredited investors. *See* Ex. 220, Handler SEC Tr. 86:8-87:7 ("the people that I'm dealing with at pension funds and endowments are extremely sophisticated. They are usually highly educated. They are CFAs … They are very financially literate people who've had hundreds and hundreds of

36

these documents and hundreds of operating agreements. … Nobody that I would deal with would ever look at this document and say, oh this is great, I'm going to write you a hundred million dollar check. … ); Ex. 221, Handler Dep. Tr. 95:23-99:23; *see also* SAMF ¶¶ 10-11, 13, 34, 38, 46.

Defendants aver that Mr. Handler further testified as follows: "an institutional investor would never agree to invest simply on the information that's in there … the people that I'm dealing with at pension funds and endowments are extremely sophisticated. They are usually highly educated. They are CFAs … They are very financially literate people who've had hundreds and hundreds of these documents and hundreds of operating agreements. To get to the stage where they actually read – request and then read the operating agreement is a significant step. Very few – I could probably count on one hand the number of institutions that actually took that step with me, and at that point they would say, oh, there is no high water mark, or oh, there is a different lockup period that what this document says, right? Nobody that I would deal with would ever look at this document and say, oh, this is great, I'm going to write you a hundred million dollar check. It's the first step of a very lengthy walk that involves a great deal of due diligence on their part. Ultimately which leads to a custom vehicle with its own custom operating agreement." Ex. 220, Handler SEC Tr. 86:8-87:7.

39.  Defendants' accounting materiality expert, Gene Deetz, testified under oath at his deposition as follows:

**Q.** Do you believe that the lockup period of a fund is significant to investors?
**A.** Yes.

**Q.** And is that an important consideration for investors when considering whether to invest in a fund or not?
**A.** I believe it is, yes.

**Q.** And it's mentioned in here. I assume you believed that that was an important factor for these investors as to whether to invest in SBB's funds?
**A.** Yes. I think it's an important factor to consider materiality, and I think it would be important to an investor what the lockup period is, yes.

(S.J. Ex. 8, 1/30/24 Deetz Dep. at 275:8-22.)

**RESPONSE**: Disputed in part. Defendants do not dispute that Mr. Deetz provided the testimony quoted in this Paragraph.

Defendants dispute that the quoted testimony is relevant to the question of whether the lock-up period in the challenged materials was materially misstated, as the SEC's questions did not take into account the fact that the lock-up period term in the challenged materials represented the kind of term that SBB would negotiate with and implement for investors who ended up creating bespoke funds of one or SMAs. *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37. Further, the SEC's questions also did not take into consideration that the challenged materials provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Additionally, the SEC's questions called for only Mr. Deetz's assessment of whether a fund's lock-up period would be important to investors, not his assessment of whether SBB's investors would have considered the difference between a one-year lock-up period and a two-year lock-up period to be important.

38

**Defendants further object to the SEC's characterization of Mr. Deetz's testimony by omitting Mr. Deetz's further testimony at 276:2-13, where Mr. Deetz testified as to investors' view of their investments with SBB as follows: "The only knowledge I have about the intent is the – the lock period, and then the description in the subscription package that they executed where it essentially says you should be planning on entering into a long-term partnership with us. Those are my characterization of the language. But that language exists in the subscription agreement. So I would assume that people that are considering an investment or actually did invest would view it as a long-term partnership essentially." Ex. 248, Deetz Dep. Tr. 276:2-13. Defendants refer to the full deposition transcript (Ex. 248) as the best evidence.**

### 2. The High-Water Mark

40. Another investment term for Polysight I identified in fact sheets, investor presentations, and Online Marketing Platforms was whether the fund was subject to a "high-water mark" (*i.e.*, a provision that limits the circumstances where a manager can earn incentive fees by setting a performance threshold that the fund's investment returns must exceed before fees accrue). (S.J. Ex. 7, 12/1/21 Handler Dep at 84:21 to 85:10; *See* Fact Sheets Identified in ¶ 27 above; Investor Presentations Identified in ¶ 30 above; Online Management Platform Profiles identified in ¶ 34 above.)

**RESPONSE: Disputed. Defendants dispute that the high-water mark term in the fact sheets, investor presentations, and the online portals pertained to the Polysight I, LLC fund, and aver that the fact sheets, investor presentations, and submissions to the online portals provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep.**

Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants further aver that the terms as provided in the fact sheets, investor presentations, and submissions to the online portals represented the kinds of terms that SBB would negotiate with and implement for institutional investors (including high-net-worth individuals) who ended up creating bespoke funds of one or SMAs based on the Polysight strategy. *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37.

Defendants further aver that the fact sheets concern SBB's investment "program," and that the investment terms in the fact sheets sent in or before May 2016 (including all fact sheets expressly cited in Paragraph 27) appeared in a section of the fact sheets titled "Firm and Program Information." SEC Ex. 13, ELK-0012940 at -0012969; SEC Ex. 14, ELK-0021523 at -0021551; SEC Ex. 16, ELK-0000385 at -0000386; SEC Ex. 17, ELK-0095388 at -0095390; SEC Ex. 18, ELK-0015289 at -0015318; SEC Ex. 19, ELK-0018361 at -0018390; SEC Ex. 30, SBBRG 005352 at 005354; SEC Ex. 31, SBBRG 005377 at 005384; SEC Ex. 32, ELK-0017464 at -0017494; SEC Ex. 33, ELK-0017896 at -0017926; SEC Ex. 34, ELK-0018501 at -0018532; SEC Ex. 35, ELK-0018255 at -0018286; SEC Ex. 36, ELK-0018396 at -0018427; SEC Ex. 37, ELK-0018466 at -0018496; SEC Ex. 38, ELK-0018192 at -0018221; SEC Ex. 39, ELK-0018941 at -0018970; SEC Ex. 40, ELK-0018157 at -0018186.

Defendants further aver that the investor presentations cited in Paragraph 30 referenced Polysight as "Polysight®," which was a reference to the Polysight investment strategy. **Ex. 220, Handler SEC Tr. 96:4-7.**

Defendants further aver that the subscription documents for Polysight I, LLC disclosed that the fund did not have a high-water mark, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* **Ex. 129, SEC-SBBRG-E-0003759 at -0003801 (Polysight I "Disclosures and Risks" stating that the fund does not employ a high-water mark), -0003764 (Polysight I Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement);** *see also* **SAMF ¶¶ 11-13.**

Finally, Defendants aver that SBB's Form ADV Part 2A brochures, as publicly available on the SEC's website, further disclosed the following: "Performance allocations are not subject to a 'high watermark.' Accordingly, [SBB] is entitled to performance based compensation with respect to investment gains regardless of the performance history of the Fund or separately managed account, and may be paid performance-based compensation for performance gains even though the overall performance of the Fund or account is flat or negative." **SEC Ex. 10, SBB Form ADV Part 2 (Mar. 31, 2014) at 6; Ex. 53, SBB Form ADV Part 2 (Mar. 30, 2015) at 52; SEC Ex. 11, SBB Form ADV Part 2 (Mar. 30, 2016) at 3.**

41. Alan Handler has testified under oath that investors consider the existence of a high-water mark to be important information. Specifically, Handler has testified that: (a) "it's a vital thing to have a high-water mark" because "[i]t's standard industry procedure. Why? Because otherwise a manager can – it's unfair, I think, to the investor to not have a high water mark, because then there is a chance that the investor overpays in fees"; (b) "most industry professionals would

consider it to be important to have a high-water mark in any vehicle they're marketing"; (c) not having a high-water mark would be unfair "[b]ecause then an investor could theoretically be paying for a performance which is just a recovery from a certain low number that doesn't represent a profit to the client, to the investor"; and (d) it is important for a fund manager to provide accurate information about information like a high-water mark "[be]cause the investors are entitled to fair and equitable treatment."(S.J. Ex. 7, 12/1/21 Handler Dep at 82:2-21, 83:5-85:10, 95:4-20, 98:15 to 99:23; S.J. Ex. 6, 5/1/18 Handler Testimony Tr. at 79:20 to 80:18.)

**RESPONSE: Disputed in part. Defendants object to Paragraph 41 as inadmissible under Federal Rules of Evidence 602, 701, and 702, as well as under Federal Rule of Civil Procedure 26(a)(2)(A), given that the SEC seeks to use Mr. Handler as an undisclosed purported expert in materiality after its disclosed expert Mr. Hickey was excluded, and that the SEC did not establish Mr. Handler has personal knowledge of the subject of his testimony. Mr. Handler is not a disclosed expert as to any subject matter. Further, the SEC offers no testimony from Mr. Handler about his personal observations when marketing SBB's strategy—*e.g.*, the SEC did not ever ask him whether any investors ever expressed to him that the allegedly misstated terms were important to them—and therefore Mr. Handler's testimony was speculative.**

**Notwithstanding these objections, Defendants do not dispute that Mr. Handler provided the testimony quoted in Paragraph 41 during his investigative testimony and deposition, but Defendants refer to the full testimony transcript (Ex. 220) and full deposition transcript (Ex. 221) as the best evidence and object to the SEC's characterization in Paragraph 41.**

Defendants dispute Paragraph 41 to the extent it suggests that Mr. Handler testified about whether SBB's particular investors would consider the existence of a high-water mark or lack thereof as important information. First, the testimony quoted in parts (a) and (c) of the Paragraph concerns only what would be unfair to investors as a general matter. Second, the testimony quoted in part (b) concerns what "most industry professionals," rather than a reasonable investor, would consider as important. Finally, the testimony quoted in part (d) stands only for a general proposition that it is important for a fund manager to provide accurate information.

Defendants further aver that Mr. Handler testified during his deposition as to the investigative testimony quoted in part (a) as follows: "I wouldn't use that word 'vital.' I would say it's common, and to my recollection, all of the hedge funds with whom I had dealings had high-water mark. But I am aware that other hedge funds did not. Some hedge funds – and I can't remember which ones – did not have high-water marks." Ex. 221, Handler Dep. Tr. 83:14-20.

Finally, Defendants aver that Mr. Handler further testified as follows: "an institutional investor would never agree to invest simply on the information that's in there ... the people that I'm dealing with at pension funds and endowments are extremely sophisticated. They are usually highly educated. They are CFAs ... They are very financially literate people who've had hundreds and hundreds of these documents and hundreds of operating agreements. To get to the stage where they actually read – request and then read the operating agreement is a significant step. Very few – I could probably count on one hand the number of institutions that actually took that step with me, and at that point they would say, oh, there is no high water mark, or oh, there is a different lock-up period that what this

43

document says, right?  Nobody that I would deal with would ever look at this document and say, oh, this is great, I'm going to write you a hundred million dollar check.  It's the first step of a very lengthy walk that involves a great deal of due diligence on their part.  Ultimately which leads to a custom vehicle with its own custom operating agreement." **Ex. 220, Handler SEC Tr. 86:8-87:7.**

42.     In response to questions regarding why a Polysight I fact sheet disclosed that the fund had a high-water mark – when Polysight I's Operating Agreement did not provide for one – Aven testified under oath during investigative testimony that Alan Handler had communicated to him that a high-water mark was needed to "attract new investors." (S.J., Ex. 3, 1/24/17 Aven Testimony Tr. at 263:15-17.)

**RESPONSE: Disputed.  Defendants dispute the SEC's characterization of Mr. Aven's testimony.  Defendants aver that Mr. Aven testified that Mr. Handler "felt very strongly that we needed to have a high watermark to attract new investors," but Mr. Aven's full testimony shows that the fact sheet was intended to reflect terms for new institutional investors (including high-net-worth individuals) creating bespoke funds of one or SMAs: "[Handler] felt very strongly that we needed to have a high watermark to attract new investors, new institutional investors. And we agreed, so we said, you know, for sure we'll do that. And we just haven't acquired any investors from his efforts yet, so we haven't made that change. Q Okay. But why represent on this form that there is one when as of November 2015 there isn't one? A Right. I think the idea was to try and show that for a new investor there would be …" Ex. 209, Aven SEC. Tr. (Jan. 24, 2017) 263:15-24.**

**Defendants further aver that the terms as provided in the fact sheets represented the kinds of terms that SBB would negotiate with and implement for institutional investors**

(including high-net-worth individuals) who ended up creating bespoke funds of one or SMAs based on the Polysight strategy. *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37.

### 3. Inception Date

43.     Polysight I was not open to investors or trading securities until after its inception in June 2014, and therefore did not have historical performance data for the period September 2011 through May 2014. (Dkt. #51, Answer ¶ 25.)

**RESPONSE: Disputed in part. Defendants do not dispute that SBB created the pooled fund Polysight I, LLC in June 2014.**

**Defendants dispute that Paragraph 25 in the Answer admitted that Polysight I, LLC did not have historical performance data for the period of September 2011 through May 2014 because it is not supported by the cited evidence. *See* Answer ¶ 25 (Dkt. 51).**

44.     In reference to the historical performance data provided in the Polysight I fact sheets, Alan Handler testified under oath at his deposition as follows:

> **Q** Getting back to the historical performance table there, the monthly performance on the fact sheet, based on your 30 years' experience in the financial industry, you think it - you think a fund's historical performance is important information for investors?
> **A** I do.
>
> **Q** Okay. A fund's historical performance is a material consideration for investors?
> MR. ROSENBURG: Objection. Form and foundation.
> THE WITNESS: For many investors it is important, yes.

(S.J. Ex. 7, 12/1/21 Handler Dep at 79:18 to 80:3.)

**RESPONSE: Disputed in part. Defendants object to Paragraph 44 as inadmissible under Federal Rules of Evidence 602, 701, and 702, as well as under Federal Rule of Civil Procedure 26(a)(2)(A), given that the SEC seeks to use Mr. Handler as an undisclosed**

purported expert in materiality after its disclosed expert Mr. Hickey was excluded, and that the SEC did not establish Mr. Handler has personal knowledge of the subject of his testimony. Mr. Handler is not a disclosed expert as to any subject matter. Further, the SEC offers no testimony from Mr. Handler about his personal observations when marketing SBB's strategy—*e.g.*, the SEC did not ever ask him whether any investors ever expressed to him that the allegedly misstated performance data was important to them—and therefore Mr. Handler's testimony was speculative.

Notwithstanding these objections, Defendants do not dispute that Mr. Handler provided the testimony quoted in Paragraph 44 during his deposition but dispute the SEC's characterization of that testimony, and Defendants refer to the full deposition transcript as the best evidence (Ex. 221). Defendants aver that the SEC asked only whether historical performance would be important for investors in general, without referencing the specific types of investors that SBB had or the fact that the fact sheet presented to Mr. Handler contained a disclosure stating: "Historical Performance represents a composite return of SBB Research Group Investors II LLC, which began trading in September 2011, and Polysight®, which began trading in June 2014, and is net of all fees and expenses." *See* SEC Ex. 17, ELK-0095388 at -0095390.

Defendants further aver that Mr. Handler further testified as follows: "an institutional investor would never agree to invest simply on the information that's in there … the people that I'm dealing with at pension funds and endowments are extremely sophisticated. They are usually highly educated. They are CFAs … They are very financially literate people who've had hundreds and hundreds of these documents and hundreds of operating agreements. To get to the stage where they actually read – request and then read

the operating agreement is a significant step. Very few – I could probably count on one hand the number of institutions that actually took that step with me, and at that point they would say, oh, there is no high water mark, or oh, there is a different lock-up period that what this document says, right? Nobody that I would deal with would ever look at this document and say, oh, this is great, I'm going to write you a hundred million dollar check. It's the first step of a very lengthy walk that involves a great deal of due diligence on their part. Ultimately which leads to a custom vehicle with its own custom operating agreement." Ex. 220, Handler SEC Tr. 86:8-87:7.

Defendants further aver that the subscription documents for SBB's Polysight I, LLC fund disclosed that the fund began operation in June 2014, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003796 (Polysight I "Disclosures and Risks" stating that Polysight I, LLC "was formed in January, 2014"), -0003764 (Polysight I Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

### B. Misrepresentations in the Polysight I Fact Sheets

45.     On at least 20 occasions from approximately November 2015 to May 2016, SBB, through Handler, disseminated fact sheets stating that Polysight I had (1) a one-year lockup period and (2) a high-water mark. (*See, e.g.*, S.J. Ex. 16, 11/30/15 SBB Polysight I Fact Sheet, ELK-0000385 at 386; S.J. Ex. 17, 12/17/15 Handler Polysight I Email, ELK-0095388 at 95390; S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12969; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15318; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18390; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21551.)

**RESPONSE**: Disputed. Defendants dispute that the cited Exhibits, which reflect six emails from Mr. Handler, support the conclusion that SBB disseminated fact sheets "[o]n at least 20 occasions from approximately November 2015 to May 2016" because that assertion is not supported by the cited Exhibits.

Defendants also dispute that the lock-up period and high-water mark terms in the fact sheets in Paragraph 45 pertained to the Polysight I, LLC fund, and aver that the terms as provided in the fact sheets represented the kinds of terms that SBB would negotiate with and implement for institutional investors (including high-net-worth individuals) who ended up creating bespoke funds of one or SMAs based on the Polysight strategy. *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37.

Defendants further aver that the fact sheets concern SBB's investment "program," and that the investment terms in the fact sheets sent in or before May 2016 (including all fact sheets expressly cited in Paragraph 27) appeared in a section of the fact sheets titled "Firm and Program Information." SEC Ex. 13, ELK-0012940 at -0012969; SEC Ex. 14, ELK-0021523 at -0021551; SEC Ex. 16, ELK-0000385 at -0000386; SEC Ex. 17, ELK-0095388 at -0095390; SEC Ex. 18, ELK-0015289 at -0015318; SEC Ex. 19, ELK-0018361 at -0018390; SEC Ex. 30, SBBRG 005352 at 005354; SEC Ex. 31, SBBRG 005377 at 005384; SEC Ex. 32, ELK-0017464 at -0017494; SEC Ex. 33, ELK-0017896 at -0017926; SEC Ex. 34, ELK-0018501 at -0018532; SEC Ex. 35, ELK-0018255 at -0018286; SEC Ex. 36, ELK-0018396 at -0018427; SEC Ex. 37, ELK-0018466 at -0018496; SEC Ex. 38, ELK-0018192 at -0018221; SEC Ex. 39, ELK-0018941 at -0018970; SEC Ex. 40, ELK-0018157 at -0018186.

Defendants further aver that SBB made it clear to the recipient of Mr. Handler's email in SEC's Exhibit 18 that it was attempting to pitch its investment capabilities and strategy rather than specific funds. *See* Ex. 249, SBBRG LLC-CONFIDENTIAL-196420 (email from Mr. Handler to the same prospective investor in the SEC's Exhibit 18, expressly referencing SBB's investment strategy and listing Investors II as SBB's longest-running vehicle that started operation in September 2011).

Defendants further aver that the subscription documents for Polysight I, LLC disclosed that the fund had a two-year lock-up period and did not have a high-water mark, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003802 (Polysight I "Disclosures and Risks" stating that the fund is subject to a lock-up period of two-years), -0003801 (Polysight I "Disclosures and Risks" stating that the fund does not employ a high-water mark), -0003764 (Polysight I Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

Finally, Defendants aver that SBB's Form ADV Part 2A brochures, as publicly available on the SEC's website, further disclosed the following: "Performance allocations are not subject to a 'high watermark.' Accordingly, [SBB] is entitled to performance based compensation with respect to investment gains regardless of the performance history of the Fund or separately managed account, and may be paid performance-based compensation for performance gains even though the overall performance of the Fund or account is flat or negative … Fund investors' ability to withdraw capital, and thereby recognize profits or prevent losses, is restricted. Typically, Fund contributions cannot be withdrawn until the

49

December 31 of any fiscal year that follows the second anniversary of the date that the contribution was made." SEC Ex. 10, SBB Form ADV Part 2 (Mar. 31, 2014) at 6, 8; Ex. 53, SBB Form ADV Part 2 (Mar. 30, 2015) at 52, 54; SEC Ex. 11, SBB Form ADV Part 2 (Mar. 30, 2016) at 3, 6.

46.     The fact sheets identified in ¶ 27 also stated that the inception date for "Polysight" was September 2011. (*Id.*)

**RESPONSE**: Disputed in part. Defendants do not dispute that the fact sheets cited in Paragraph 27 contain the information: "Polysight$^{TM}$ Inception": "Sept 2011."

Defendants dispute Paragraph 46 because it omits that each of the fact sheets cited in Paragraph 27 included a superscript reference displayed as either "Polysight Inception[1]: Sept 2011" or "Polysight Inception: Sept 2011*," and contained a disclosure at the bottom of the page that stated: "Historical Performance represents a composite return of SBB Research Group Investors II LLC, which began training in September 2011, and Polysight, which began trading in June 2014." *See* SEC Ex. 13, ELK-0012940 at -0012969; SEC Ex. 14, ELK-0021523 at -0021551; SEC Ex. 16, ELK-0000385 at -0000386; SEC Ex. 17, ELK-0095388 at -0095390; SEC Ex. 18, ELK-0015289 at -0015318; SEC Ex. 19, ELK-0018361 at -0018390.

Defendants aver that the fact sheets concern SBB's investment "program," and that the inception date information in the fact sheets sent in or before May 2016 (including all fact sheets expressly cited in Paragraph 27) appeared in a section of the fact sheets titled "Firm and Program Information." SEC Ex. 13, ELK-0012940 at -0012969; SEC Ex. 14, ELK-0021523 at -0021551; SEC Ex. 16, ELK-0000385 at -0000386; SEC Ex. 17, ELK-0095388 at -0095390; SEC Ex. 18, ELK-0015289 at -0015318; SEC Ex. 19, ELK-0018361 at

-0018390; SEC Ex. 30, SBBRG 005352 at 005354; SEC Ex. 31, SBBRG 005377 at 005384; SEC Ex. 32, ELK-0017464 at -0017494; SEC Ex. 33, ELK-0017896 at -0017926; SEC Ex. 34, ELK-0018501 at -0018532; SEC Ex. 35, ELK-0018255 at -0018286; SEC Ex. 36, ELK-0018396 at -0018427; SEC Ex. 37, ELK-0018466 at -0018496; SEC Ex. 38, ELK-0018192 at -0018221; SEC Ex. 39, ELK-0018941 at -0018970; SEC Ex. 40, ELK-0018157 at -0018186.

Defendants further aver that SBB's goal was to create bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy, and SBB used these fact sheets as a way of showing what SBB had done for other investors and SBB's investment capabilities. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; Ex. 250, ELK-0110771 at -0110771 (Oct. 10, 2016 email from Handler to eVestment data support); *see also* SAMF ¶¶ 21-25, 30-31, 40.

Finally, Defendants aver that the subscription documents for SBB's Polysight I, LLC fund disclosed that the fund began operation in June 2014, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003796 (Polysight I "Disclosures and Risks" stating that Polysight I, LLC "was formed in January, 2014"), -0003764 (Polysight I Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

47.     Among other recipients, SBB sent fact sheets and/or presentations to (a) a manager for the State of New York Pension Fund, (2) the manager of a "fund of funds… largely funded by

the Abu Dhabi Investment Authority," (3) an intermediary seeking to facilitate an introduction between SBB and the manager of the endowment for the Massachusetts Institute of Technology, and (4) several other private money managers specializing in high-net-worth clients. (*See, e.g.*, S.J. Ex. 17, 12/7/15 Handler Polysight I Email, ELK-0095388 at 95390; S.J. Ex. 6, 5/1/2018 Handler Test. Tr. at 69, 93; S.J. Ex. 16, 11/30/15 SBB Polysight I Fact Sheet, ELK-0000385 at 386-387; S.J. Ex. 17, 12/17/15 Emerging Manager Email, ELK-0095388 at 95390-95391; S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12969-12970; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15318-15319; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18390-18391; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at 21551-21552; S.J. Ex. 30, 11/16/15 Aven Polysight I Email, SBBRG 005352 at 5354; S.J. Ex. 31, 12/11/15 Barnett Polysight I Email, SBBRG 005377.)

**RESPONSE: Undisputed. Defendants aver that SBB's goal was to create bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy, and SBB used these cover emails and the attachments thereto as a way of showing what SBB had done for other investors and SBB's investment capabilities.** *See* **Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7;** *see also* **SAMF ¶¶ 21-25, 30-31, 40.**

**Defendants further aver that the fact sheets and investor presentations provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle.** *See* **Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-**

15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants further aver that the terms as provided in the fact sheets and investor presentations represented the kinds of terms that SBB would negotiate with and implement for investors who ended up creating bespoke funds of one or SMAs. *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37.

Defendants further aver that SBB made it clear to the recipient of Mr. Handler's email in SEC's Exhibit 18 that it was attempting to pitch its investment capabilities and strategy. *See* Ex. 249, SBBRG LLC-CONFIDENTIAL-196420 (email from Handler to the same prospective investor expressly discussing SBB's investment strategy and listing Investors II as SBB's longest-running vehicle that started operation in September 2011).

48.     On November 16, 2015, Aven personally emailed a fact sheet to a prospective investor that stated that Polysight I had a one-year lockup period and (2) a high-water mark. (S.J. 30, Ex., 11/16/15 Aven Polysight I Email, SBBRG-005352 at 5354-55.)

**RESPONSE**: Disputed. Defendants dispute that the lock-up period and the high-water mark information in the fact sheet cited in Paragraph 48 pertained to the Polysight I, LLC fund, and aver that the fact sheet provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants further aver that the terms as provided in the fact sheets and investor presentations represented the kinds of terms that SBB would negotiate with and implement for investors who ended up creating bespoke funds of one or SMAs. *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37.

Defendants further aver that the subscription documents for Polysight I, LLC disclosed that the fund had a two-year lock-up period and did not have a high-water mark, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003802 (Polysight I "Disclosures and Risks" stating that the fund is subject to a lock-up period of two-years), -0003801 (Polysight I "Disclosures and Risks" stating that the fund does not employ a high-water mark), -0003764 (Polysight I Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

Finally, Defendants aver that SBB's Form ADV Part 2A brochures, as publicly available on the SEC's website, further disclosed the following: "Performance allocations are not subject to a 'high watermark.' Accordingly, [SBB] is entitled to performance based compensation with respect to investment gains regardless of the performance history of the Fund or separately managed account, and may be paid performance-based compensation for performance gains even though the overall performance of the Fund or account is flat or negative ... Fund investors' ability to withdraw capital, and thereby recognize profits or prevent losses, is restricted. Typically, Fund contributions cannot be withdrawn until the December 31 of any fiscal year that follows the second anniversary of the date that the

contribution was made." **SEC Ex. 10, SBB Form ADV Part 2 (Mar. 31, 2014) at 6, 8; Ex. 53,**
**SBB Form ADV Part 2 (Mar. 30, 2015) at 52, 54; SEC Ex. 11, SBB Form ADV Part 2 (Mar.**
**30, 2016) at 3, 6.**

49.  When asked if sophisticated investors expect fact sheets to be accurate and correct,
Barnett testified under oath at his investigative testimony: "I think that that's true and I wish that
that was accurate about the high watermark statement." (S.J. Ex. 2, 4/26/18 Barnett Testimony at
641:13-14.)

**RESPONSE: Disputed in part.  Defendants do not dispute that Dr. Barnett provided**
**the testimony quoted in this Paragraph.**

**Defendants dispute the SEC's characterization of Dr. Barnett's testimony and refer**
**to the full testimony transcript (Ex. 214) as the best evidence.  Defendants aver that Dr.**
**Barnett also testified: "on the other hand, I think that fact sheets are always taken with a**
**grain of salt especially when, you know, the conversations revolve around starting a new**
**fund that's going to have different parameters and properties."  Ex. 214, Barnett SEC Tr.**
**(Apr. 26, 2018) 641:14-18.  Defendants further aver that with respect to the objective of**
**sending out the fact sheets, Dr. Barnett testified as follows: "the intention was that it was**
**communicating what would have been offered on a new vehicle."  *Id.* at 640:22-23.**

**Defendants further aver that Mr. Handler further testified: "an institutional investor**
**would never agree to invest simply on the information that's in there … the people that I'm**
**dealing with at pension funds and endowments are extremely sophisticated.  They are usually**
**highly educated.  They are CFAs … They are very financially literate people who've had**
**hundreds and hundreds of these documents and hundreds of operating agreements.  To get**
**to the stage where they actually read – request and then read the operating agreement is a**

significant step. Very few – I could probably count on one hand the number of institutions that actually took that step with me, and at that point they would say, oh, there is no high water mark, or oh, there is a different lock-up period that what this document says, right? Nobody that I would deal with would ever look at this document and say, oh, this is great, I'm going to write you a hundred million dollar check. It's the first step of a very lengthy walk that involves a great deal of due diligence on their part. Ultimately which leads to a custom vehicle with its own custom operating agreement." Ex. 220, Handler SEC Tr. 86:8-87:7.

### C. Misrepresentations in the Investor Presentations and Cover Emails

50.     On at least 23 occasions from approximately February 2016 to January 2017, Defendants, through Handler, emailed investor presentations related to Polysight I, stating that Polysight I had (1) a one-year lockup period and (2) a high-water mark. (*See*, *e.g.*, S.J. Ex. 13, 2/9/16 Handler Polysight I Email, ELK-0012940 at 12964; S.J. Ex. 32, 3/17/16 Handler Polysight I Email, ELK-0017464 at 17489; S.J. Ex. 33, 3/18/16 Handler Polysight I Email, ELK-0017896 at 17921; S.J. Ex. 34, 4/8/16 Handler Polysight I Email, ELK-0018501 at 18525; S.J. Ex. 35, 4/8/16 Handler Polysight I Email 2, ELK-0018255 at 18279; S.J. Ex. 36, 4/8/16 Handler Polysight I Email 3, ELK-0018396 at 18420; S.J. Ex. 37, 4/8/16 Handler Polysight I Email 4, ELK-0018466 at 18490; S.J. Ex. 38, 4/8/16 Handler Polysight I Email 5, ELK-0018192 at 18216; S.J. Ex. 39, 4/11/16 Handler Polysight I Email, ELK-0018941 at 18965; 4/18/16 Handler Polysight I Email, S.J. Ex. 40, ELK-0018157 at 18181; S.J. Ex. 20, 6/2/16 Handler Polysight I Email, ELK-0022693 at 22713; S.J. Ex. 21, 6/2/16 Handler Polysight I Email 2, ELK-0022640 at 22660; S.J. Ex. 18, 3/9/16 Handler Polysight I Email, ELK-0015289 at 15313; S.J. Ex. 19, 4/8/16 Handler Polysight I Email, ELK-0018361 at 18385; S.J. Ex. 14, 5/2/16 Handler Polysight I Email, ELK-0021523 at

21546; S.J. Ex. 22, 6/1/16 Handler Polysight I Email, ELK-0001814 at 1834; S.J. Ex. 23, 6/2/16 Handler Polysight I Email, ELK-0022400 at 22417; S.J. Ex. 15, 6/20/16 Handler Polysight I Email, ELK-0027175 at 27195; S.J. Ex. 24, 7/25/16 Handler Polysight I Email, ELK-0040739 at 40759; S.J. Ex. 25, 11/3/16 Handler Polysight I Email, ELK-0090652 at 90672; S.J. Ex. 26, 1/16/17 Handler Polysight I Email, ELK-0091643 at 91663; S.J. Ex. 27, 1/20/17 Handler Polysight I Email, ELK-0003481 at 3500; S.J. Ex. 28, 1/23/27 Handler Emerging Manager Email, SBBRG LLC-CONFIDENTIAL-234229 at 234249; S.J. Ex. 29, 1/31/17 Handler Emerging Manager Email, SBBRG LLC-CONFIDENTIAL-230697 at 230718.)

**RESPONSE:** Disputed. Defendants dispute that the lock-up period and high-water mark information in the investor presentations cited in Paragraph 50 pertained to the Polysight I, LLC fund, and aver that the investor presentations provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants further aver that the investor presentations referenced Polysight as "Polysight®," which was a reference to the Polysight investment strategy. *See* SAMF ¶ 5; Ex. 220, Handler SEC Tr. 96:4-7.

Defendants aver that the terms as provided in the investor presentations represented the kinds of terms that SBB would negotiate with and implement for institutional investors (including high-net-worth individuals) who ended up creating bespoke funds of one or SMAs. *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex.

221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37.

Defendants also dispute that the SEC's Exhibit 40 is an email from Mr. Handler to a prospective investor, as the Exhibit reflects an email from Mr. Handler to himself. *See* Ex. 251, ELK-0018157.

Defendants further aver that the SEC's Exhibit 35 reflects an email from Mr. Handler to zcaresearch@zekecapit that was never delivered. *See* Ex. 252, ELK-0009407 (email bounce-back notification stating "delivery has failed to these recipients or groups: zcaresearch@zekecapit). Accordingly, the intended recipient never received the email or the attachments thereto.

Finally, Defendants aver that SBB made it clear to the recipients of Mr. Handler's emails in the SEC's Exhibits 18 and 23 that it was attempting to pitch its investment capabilities and strategy. *See* Ex. 249, SBBRG LLC-CONFIDENTIAL-196420 (email from Mr. Handler to the same prospective investor in the SEC's Exhibit 18, expressly discussing SBB's investment strategy and listing Investors II as SBB's longest-running vehicle that started operation in September 2011); Ex. 245, SBBRG LLC-CONFIDENTIAL-228308 (email from Mr. Handler to the same prospective investor in the SEC's Exhibit 23, referencing a prior conversation during which they discussed SBB's "strategy," and expressing SBB's interest in building the investor "a custom feeder structure.").

51.     On at least 11 occasions, from approximately March to June 2016, SBB, through Handler, stated in cover emails to prospective investors (and money managers) that Polysight I had been in existence for over 4½ years, thus implying that the inception date of Polysight I was late 2011. (*See*, *e.g.*, S.J. Ex. 32, 3/17/16 Handler Polysight I Email, ELK-0017464; S.J. Ex. 33,

3/18/16 Handler Polysight I Email, ELK-0017896; S.J. Ex. 34, 4/8/16 Handler Polysight I Email, ELK-0018501; S.J. Ex. 35, 4/8/16 Handler Polysight I Email 2, ELK-0018255; S.J. Ex. 36, Handler Polysight I Email 3, ELK-0018396; S.J. Ex. 37, 4/8/16 Handler Polysight I Email 4, ELK-0018466; S.J. Ex. 38, 4/8/16 Handler Polysight I Email 5, ELK-0018192; S.J. Ex. 39, 4/11/16 Handler Polysight I Email, ELK-0018941; S.J. Ex. 40, 4/8/16 Handler Polysight I Email, ELK-0018157; S.J. Ex. 20, 6/2/16 Handler Polysight I Email, ELK-0022693; S.J. Ex. 21, 6/2/16 Handler Polysight I Email, ELK-0022640.)

**RESPONSE: Disputed in part. Defendants do not dispute that the Exhibits cited in this Paragraph, with the exception of Exhibit 40, reflect cover emails from Mr. Handler to prospective investors or money managers stating in part: "Over the past 4 1/2 years Polysight I – our main vehicle – has delivered consistent, risk-adjusted returns with low-volatility and has outperformed nearly all of the widely-followed hedge fund industry benchmarks," except Defendants aver that Exhibits 20, 21, 32, and 33 instead use the terminology "Over the past 4+ years." But the SEC draws an incorrect inference from those emails. The fact sheets attached to the cover emails cited in Paragraph 51 explained this statement by Mr. Handler. The fact sheets in Exhibits 32 through 40 all contained a disclosure stating that the performance data dating back to 2011 reflected a composite return of two funds. *See* SEC Ex. 32, ELK-0017464 at -0017494 (same); SEC Ex. 33, ELK-0017896 at -0017926 (same); SEC Ex. 34, ELK-0018501 at -0018532 (same); SEC Ex. 35, ELK-0018255 at -0018286 (same); SEC Ex. 36, ELK-0018396 at -0018427 (same); SEC Ex. 37, ELK-0018466 at -0018496 (same); SEC Ex. 38, ELK-0018192 at -0018221 (same); SEC Ex. 39, ELK-0018941 at -0018970 (same); SEC Ex. 40, ELK-0018157 at -0018186 (same). As to the fact sheets in Exhibits 20 and 21, they made it clear that the reference to "Polysight" was**

a reference to the investment "platform" and displayed the historical performance of Investors II. *See* SEC Ex. 20, ELK-0022693 at -0022695 ("Polysight® is a quantitative directional investment platform that invests in custom designed equity-linked structured products."), -0022696 ("Historical performance represents the return of SBB Research Group Investors II, LLC, which began trading in September 2011 with $10 million."); SEC Ex. 21, ELK-0022640 at -0022642 ("Polysight® is a quantitative directional investment platform that invests in custom designed equity-linked structured products."), -0022643 ("Historical performance represents the return of SBB Research Group Investors II, LLC, which began trading in September 2011 with $10 million."). Defendants further aver that the investor presentations attached to the cover emails cited in Paragraph 51 referenced Polysight as "Polysight®," which was a reference to the Polysight investment strategy. Ex. 220, Handler SEC Tr. 96:4-7. Defendants dispute that the SEC's Exhibit 40 is an email from Mr. Handler to a prospective investor, as the Exhibit reflects an email from Mr. Handler to himself. *See* Ex. 251, ELK-0018157.

Defendants aver that the SEC's Exhibit 35 reflects an email from Mr. Handler to zcaresearch@zekecapit that was never delivered. *See* Ex. 252, ELK-0009407 (email bounce-back notification stating "delivery has failed to these recipients or groups: zcaresearch@zekecapit).

Defendants further aver that SBB's goal was to create bespoke funds of one or SMAs for potential institutional investors (including high-net-worth individuals) based on the Polysight strategy, and SBB used these cover emails and the attachments thereto as a way of showing what SBB had done for other investors and SBB's investment capabilities. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-

**16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23;**

**Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer**

**Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.**

52.      In at least 9 cover emails, SBB, through Handler, informed prospective investors that "over the past 4 and ½ years Polysight I – our main vehicle has delivered consistent, risk-adjusted returns" and provided a chart of historical net performance for 2012 through 2016. (*See*, *e.g.*, S.J. Ex. 32, 3/17/16 Handler Polysight I Email, ELK-0017464; S.J. Ex. 33, 3/18/16 Handler Polysight I Email, ELK-0017896; S.J. Ex. 34, 4/8/16 Handler Polysight I Email, ELK-0018501; S.J. Ex. 35, 4/8/16 Handler Polysight I Email 2, ELK-0018255; S.J. Ex. 36, 4/8/16 Handler Polysight I Email 3, ELK-0018396; S.J. Ex. 37, 4/8/16 Handler Polysight I Email 4, ELK-0018466; S.J. Ex. 38, 4/8/16 Handler Polysight I Email 5, ELK-0018192; S.J. Ex. 39, 4/11/16 Handler Polysight I Email, ELK-0018941; S.J. Ex. 40, 4/8/16 Handler Polysight I Email, ELK-0018157; S.J. Ex. 7, 12/1/21 Handler Dep. 132:13-22.)

**RESPONSE: Disputed in part.  Defendants do not dispute that the Exhibits cited in this Paragraph, with the exception of Exhibit 40, reflect cover emails from Mr. Handler to prospective investors stating in part: "Over the past 4 1/2 years Polysight I – our main vehicle – has delivered consistent, risk-adjusted returns with low-volatility and has outperformed nearly all of the widely-followed hedge fund industry benchmarks," except Defendants aver that Exhibits 20, 21, 32, and 33 instead use the terminology "Over the past 4+ years." Defendants also do not dispute that the Exhibits cited in this Paragraph, with the exception of Exhibit 40, reflect emails from Mr. Handler to prospective investors that included a chart with historical data dating back to 2012.**

61

Defendants dispute that the SEC's Exhibit 40 is an email from Mr. Handler to a prospective investor, as the Exhibit reflects an email from Mr. Handler to himself. *See* Ex. 251, ELK-0018157.

Defendants aver that the SEC's Exhibit 35 reflects an email from Mr. Handler to zcaresearch@zekecapit that was never delivered. *See* Ex. 252, ELK-0009407 (bounce-back message stating "delivery has failed to these recipients or groups: zcaresearch@zekecapit).

Defendants aver that the fact sheets attached to the cover emails cited in Paragraph 52 explained this statement by Mr. Handler. The fact sheets in Exhibits 32 through 40 all contained a disclosure stating that the performance data dating back to 2011 reflected a composite return of two funds. *See* SEC Ex. 32, ELK-0017464 at -0017494 (same); SEC Ex. 33, ELK-0017896 at -0017926 (same); SEC Ex. 34, ELK-0018501 at -0018532 (same); SEC Ex. 35, ELK-0018255 at -0018286 (same); SEC Ex. 36, ELK-0018396 at -0018427 (same); SEC Ex. 37, ELK-0018466 at -0018496 (same); SEC Ex. 38, ELK-0018192 at -0018221 (same); SEC Ex. 39, ELK-0018941 at -0018970 (same); SEC Ex. 40, ELK-0018157 at -0018186 (same). As to the fact sheets in Exhibits 20 and 21, they made it clear that the reference to "Polysight" was a reference to the investment "platform" and displayed the historical performance of Investors II. *See* SEC Ex. 20, ELK-0022693 at -0022695 ("Polysight® is a quantitative directional investment platform that invests in custom designed equity-linked structured products."), -0022696 ("Historical performance represents the return of SBB Research Group Investors II, LLC, which began trading in September 2011 with $10 million."); SEC Ex. 21, ELK-0022640 at -0022642 ("Polysight® is a quantitative directional investment platform that invests in custom designed equity-linked structured products."), -0022643 ("Historical performance represents the return of SBB

Research Group Investors II, LLC, which began trading in September 2011 with $10 million."). Defendants further aver that the investor presentations attached to the cover emails cited in Paragraph 52 referenced Polysight as "Polysight®," which was a reference to the Polysight investment strategy. Ex. 220, Handler SEC Tr. 96:4-7.

Defendants further aver that SBB's goal was to create bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy, and SBB used these cover emails and the attachments thereto as a way of showing what SBB had done for other investors and SBB's investment capabilities. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants further aver that the "chart[s] of historical net performance for 2012 through 2016" displayed in the cover emails in the cited Exhibits represented a composite return of Polysight I, LLC and an earlier fund (Investors II, LLC), which is explained in the fact sheet that is attached to each cover email in the cited Exhibits. All of the cited Exhibits include a cover email displaying a historical performance chart, and an attached fact sheet which also displayed a historical performance chart. The year-to-date numbers in these two charts are identical, and the historical performance chart on the fact sheet includes a disclosure stating: "Historical Performance represents a composite return of SBB Research Group Investors II LLC, which began trading in September 2011, and Polysight®, which began trading in June 2014, and is net of all fees and expenses." *See* SEC Ex. 32, ELK-0017464 at ELK-0017464 (chart with year-to-date data in cover email), -0017494 (chart with

63

**identical year-to-date data in fact sheet); SEC Ex. 33, ELK-0017896 at -0017896 (chart with year-to-date data in cover email), -0017926 (chart with identical year-to-date data in fact sheet); SEC Ex. 34, ELK-0018501 at -0018501 (chart with year-to-date data in cover email), -0018532 (chart with identical year-to-date data in fact sheet); SEC Ex. 35, ELK-0018255 at -0018255 (chart with year-to-date data in cover email), -0018286 (chart with identical year-to-date data in fact sheet); SEC Ex. 36, ELK-0018396 at -0018396 (chart with year-to-date data in cover email), -0018427 (chart with identical year-to-date data in fact sheet); SEC Ex. 37, ELK-0018466 at -0018466 (chart with year-to-date data in cover email), -0018496 (chart with identical year-to-date data in fact sheet); SEC Ex. 38, ELK-0018192 at -0018192 (chart with year-to-date data in cover email), -0018221 (chart with identical year-to-date data in fact sheet); SEC Ex. 39, ELK-0018941 at -0018941 (chart with year-to-date data in cover email), -0018970 (chart with identical year-to-date data in fact sheet); SEC Ex. 40, ELK-0018157 at -0018157 (chart with year-to-date data in cover email), -0018186 (chart with identical year-to-date data in fact sheet).**

53.     The emails identified in ¶ 52 did not disclose that (a) the historical net performance data for 2012 through June 2014 was not derived from trading in Polysight I and instead belonged to a different SBB-managed Fund, or (b) Polysight I did not exist until June 2014. (*Id.*)

**RESPONSE: Disputed, as the fact sheets, which were part of the cited email correspondences, all contained a disclosure stating: "Historical Performance represents a composite return of SBB Research Group Investors II LLC, which began training in September 2011, and Polysight, which began trading in June 2014."** ***See*** **SEC Ex. 32, ELK-0017464 at -0017494; SEC Ex. 33, ELK-0017896 at -0017926; SEC Ex. 34, ELK-0018501 at -0018532; SEC Ex. 35, ELK-0018255 at -0018286; SEC Ex. 36, ELK-0018396 at -0018427;**

SEC Ex. 37, ELK-0018466 at -0018496; SEC Ex. 38, ELK-0018192 at -0018221; SEC Ex. 39, ELK-0018941 at -0018970; SEC Ex. 40, ELK-0018157 at -0018186.

Defendants aver that SBB's goal was to create bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy, and SBB used these cover emails and the attachments thereto as a way of showing what SBB had done for other investors and SBB's investment capabilities. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants further aver that the subscription documents for Polysight I, LLC disclosed that the fund began operating in June 2014, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* Ex. 129 SEC-SBBRG-E-0003759 at -0003796 (Polysight I "Disclosures and Risks" stating that Polysight I, LLC "was formed in January, 2014"), -0003764 (Polysight I Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

### D. Misrepresentation in Submissions to the Online Marketing Platforms

54. The information SBB included in the HedgeCo Listing, HFR Listing, Evestment Listing, and Preqin Listing for Polysight I – and published on the corresponding Online Marketing Platform – stated that Polysight I had a high-water mark and that the fund's inception date was September 2011. (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK,-0094211; S.J. Ex. 7, 12/1/21 Handler Dep. at 221:25-222:9, 224:8-22, 227:2-12, 230:1-6; S.J. Ex. 45, SBB HFR

Database Listing, ELK-0015179; S.J. Ex. 54, SBB Evestment Database Listing at 3; S.J. Ex. 46, SBB Prequin Database Listing, ELK-0010976 at ELK-0010977-78.)

**RESPONSE: Disputed. Defendants dispute that the high-water mark and inception date information on the online portals pertained to the Polysight I, LLC fund, and aver that the submissions to the online portals provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.**

**Defendants aver that the terms as provided in the submissions to the online portals represented the kinds of terms that SBB would negotiate with and implement for institutional investors (including high-net-worth individuals) who ended up creating custom funds of one or SMAs. *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37.**

**Defendants further aver that SBB's goal was to create bespoke funds of one or SMAs for institutional investors (including high-net-worth individuals) based on the Polysight strategy, and SBB used the online submissions as a way of showing what SBB had done for other investors and SBB's investment capabilities. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; Ex. 250,**

ELK-0110771 at -0110771 (Oct. 10, 2016 email from Handler to eVestment data support); *see also* **SAMF ¶¶ 21-25, 30-31, 40.**

Defendants further aver that the subscription documents for Polysight I, LLC disclosed that the fund had no high-water mark and began operating in June 2014, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* **Ex. 129, SEC-SBBRG-E-0003759 at -0003801 (Polysight I "Disclosures and Risks" stating that the fund does not employ a high-water mark), -0003796 (Polysight I "Disclosures and Risks" stating that Polysight I, LLC "was formed in January, 2014"), -0003764 (Polysight I Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement);** *see also* **SAMF ¶¶ 11-13.**

Finally, Defendants aver that SBB's Form ADV Part 2A brochures, as publicly available on the SEC's website, further disclosed the following: "Performance allocations are not subject to a 'high watermark.' Accordingly, [SBB] is entitled to performance based compensation with respect to investment gains regardless of the performance history of the Fund or separately managed account, and may be paid performance-based compensation for performance gains even though the overall performance of the Fund or account is flat or negative." **SEC Ex. 10, SBB Form ADV Part 2 (Mar. 31, 2014) at 6; Ex. 53, SBB Form ADV Part 2 (Mar. 30, 2015) at 52; SEC Ex. 11, SBB Form ADV Part 2 (Mar. 30, 2016) at 3.**

55.     The information provided for the HFR Listing, Evestment Listing, and Preqin Listing for the Polysight I fund – and published on the corresponding Online Marketing Platform – further stated that Polysight I had a lockup period of one year. (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK-0094211 at 94212; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179

at 15181; S.J. Ex. 54, SBB Evestment Database Listing at 3; S.J. Ex. 46, SBB Prequin Database Listing, ELK-0010976 at ELK-0010978.)

**RESPONSE:** **Disputed.** **Defendants dispute that the lock-up period on the online portals pertained to the Polysight I, LLC fund, and aver that the submissions to the online portals provided information about Polysight as a strategy, of which the Polysight I, LLC fund, was just one potential vehicle.** ***See*** **Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7;** ***see also*** **SAMF ¶¶ 21-25, 30-31, 40.**

**Defendants further aver that the terms as provided in the submissions to the online portals represented the kinds of terms that SBB would negotiate with and implement for institutional investors (including high-net-worth individuals) who ended up creating custom funds of one or SMAs.** ***See*** **Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12;** ***see also*** **SAMF ¶¶ 14-15, 25, 36-37.**

**Defendants further aver that the subscription documents for Polysight I, LLC disclosed that the lock-up period for the fund was two years, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents.** ***See*** **Ex. 129, SEC-SBBRG-E-0003759 at -0003802 (Polysight I "Disclosures and Risks" stating that the fund is subject to a lock-up period of two-years), -0003764 (Polysight I Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement);** ***see also*** **SAMF ¶¶ 11-13.**

**Finally, Defendants aver that SBB's Form ADV Part 2A brochures, as publicly available on the SEC's website, further disclosed the following: "Fund investors' ability to withdraw capital, and thereby recognize profits or prevent losses, is restricted. Typically, Fund contributions cannot be withdrawn until the December 31 of any fiscal year that follows the second anniversary of the date that the contribution was made." SEC Ex. 10, SBB Form ADV Part 2 (Mar. 31, 2014) at 8; Ex. 53, SBB Form ADV Part 2 (Mar. 30, 2015) at 54; SEC Ex. 11, SBB Form ADV Part 2 (Mar. 30, 2016) at 6.**

56.    The information provided for the HedgeCo Listing, HFR Listing, Evestment Listing, and Preqin Listing for the Polysight I fund – published on the corresponding Online Marketing Platform – additionally provided historical performance data for Polysight I which included return data for September 2011 through May 2014. (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK,-0094211 at 94212; S.J. Ex. 7, 12/1/21 Handler Dep. at 225:6-17; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179 at 15181; S.J. Ex. 7, 12/1/21 Handler Dep. at 227:13-228:14; S.J. Ex. 54, SBB Evestment Database Listing at 8; S.J. Ex. 7, 12/1/21 Handler Dep. at 221:14-20; S.J. SBB Prequin Database Listing, ELK-0010976 at ELK-0010980.)

**RESPONSE: Disputed. Defendants dispute that the historical performance data on the online portals pertained to the Polysight I, LLC fund, and aver that the submissions provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.**

Defendants aver that the online submissions were not intended to market any of SBB's specific funds, but rather as a way of showing what SBB had done for other investors and SBB's investment capabilities in order to attract institutional investors (including high-net-worth individuals) to create bespoke funds of one or SMAs with SBB. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; Ex. 250, ELK-0110771 at -0110771 (Oct. 10, 2016 email from Handler to eVestment data support); *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants further aver that the subscription documents for Polysight I, LLC disclosed that the fund began operating in June 2014, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* Ex. 129 SEC-SBBRG-E-0003759 at -0003796 (Polysight I, LLC "Disclosures and Risks" stating that Polysight I, LLC "was formed in January, 2014"), -0003764 (Polysight I, LLC Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

57.     The information provided for the HedgeCo Listing, HFR Listing, Evestment Listing, and Preqin Listing for the Polysight I fund – published on the corresponding Online Marketing Platform – contained no disclaimer or disclosure indicating that (a) the returns between September 2011 and May 2014 were not generated by Polysight I, (b) the returns for that period were from a different SBB-managed fund, or (c) Polysight I did not exist prior to June 2014. (S.J. Ex. 44, SBB HedgeCo.Net Database Listing, ELK,-0094211 at 94212; S.J. Ex. 7, 12/1/21 Handler

70

Dep. at 225:6-17; S.J. Ex. 45, SBB HFR Database Listing, ELK-0015179 at 15181; S.J. Ex. 7, 12/1/21 Handler Dep. at 227:13-228:14; S.J. Ex. 54, SBB Evestment Database Listing at 8; S.J. Ex. 7, 12/1/21 Handler Dep. at 221:14-20; S.J. Ex. 46, SBB Prequin Database Listing, ELK-0010976 at ELK-0010980.)

**RESPONSE**: Disputed in part. Defendants do not dispute that the submissions to the online portals did not contain the disclaimer or disclosure described in Paragraph 57.

Defendants dispute that the submissions to the online portals pertained to the Polysight I, LLC fund, and aver that the submissions provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants aver that the online portal submissions were not intended to market any of SBB's specific funds, but rather as a way of showing what SBB had done for other investors and SBB's investment capabilities in order to attract potential institutional investors (including high-net-worth individuals) to create bespoke funds of one or SMAs with SBB. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; Ex. 250, ELK-0110771 at -0110771 (Oct. 10, 2016 email from Handler to eVestment data support); *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants aver that the subscription documents for Polysight I, LLC disclosed that the fund began operating in June 2014, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents.  *See* Ex. 129 SEC-SBBRG-E-0003759 at -0003796 (Polysight I, LLC "Disclosures and Risks" stating that Polysight I, LLC "was formed in January, 2014"), -0003764 (Polysight I, LLC Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

58.    When asked at his testimony about the fact that the HedgeCo listing does not disclose that historical return data was a composite of Polysight I and another SBB-managed fund, Aven testified under oath as follows:

> **Q** So do you think that disclosing that the performance tables reflected above reflect a composite of two funds would be something that would be important to disclose? **A** It would be, yes.

(S.J. Ex. 4, 12/15/18 Aven Testimony at 375:24-376:3.)

**RESPONSE: Disputed in part.  Defendants do not dispute that Mr. Aven provided the testimony quoted in this Paragraph, but Defendants refer to the full testimony transcript (Ex. 211) as the best evidence and object to the SEC's characterization in Paragraph 58. Defendants further object to the SEC's question of whether there should have been a disclosure as calling for a legal conclusion, as it is now apparent that the SEC is attempting to use Mr. Aven's testimony as improper lay opinion and to have articulated a legal conclusion.**

**Defendants aver that Mr. Aven further testified in response to the SEC's questions about the HedgeCo listing as follows: "Again, nobody is going to look at this and write a check without having very detailed conversations and look at a subscription and operating agreement … there are opportunities to – to create the fund that the investor is looking for**

and have these dialogues along the way … they have the opportunity to design the fund any way they want. They could put a high water mark in. They could put a 30-day lockup or no lockup. They – they can – they can set those parameters … I don't see a scenario where somebody invests in Polysight based on these documents and not un – and does not understand what they're actually investing in." Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 378:20-380:6.

Defendants further aver that Mr. Aven testified as to the online portals as follows: "These websites are fairly rigid. You don't get a lot of flexibility in – in what you can and can't provide . . ." Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 364:2-4. Defendants further aver that Mr. Aven testified as to whether a disclosure could have been included in the online submissions as follows: "These are typically, you know, limited space. And so I imagine that's the decision Alan – Alan chose is to put the fund overview in the fund overview." *Id.* at 375:20-23.

Defendants further aver that Mr. Aven told Mr. Handler that if Mr. Handler was going to use September 2011 as the inception date, they needed to add the disclosure that the information reflected a composite of returns between Investors II and Polysight I, LLC. *See* SEC Ex. 48 (reflecting Mr. Aven's comment to Mr. Handler that "if you want to go with Sept 2011, we need to add the * again.").

Finally, Defendants aver that in submitting the materials to the online portals, SBB had to conform to certain specific nomenclatures related to strategy and benchmarks required by these portals. *See* SEC Ex. 54 (March 4, 2016 email from Mr. Handler to Mr. Aven providing in part: "As with all of these databases I've had to conform to some specific

**nomenclatures related to strategy and benchmarks that they provide, even though these are often not as accurate as we'd like.").**

59.     When asked if there should have been a disclosure on the HFR Listing for the Polysight I fund that the returns belonged to a different SBB-managed Fund, Handler testified under oath during investigative testimony: "Yes.... Because this is not the performance record for Polysight I." (S.J. Ex. 7, 12/1/21 Handler Dep. at 228:3-13.)

**RESPONSE: Disputed in part. Defendants do not dispute that Mr. Handler provided the testimony quoted in this Paragraph, but Defendants refer to the full deposition transcript (Ex. 221) as the best evidence and object to the SEC's characterization in Paragraph 59. Defendants further object to the SEC's question of whether there should have been a disclosure as calling for a legal conclusion, as it is now apparent that the SEC is attempting to use Mr. Handler's testimony as improper lay opinion and to have articulated a legal conclusion.**

**Defendants aver that in submitting the materials to the online portals, SBB had to conform to certain specific nomenclatures related to strategy and benchmarks required by these portals. *See* SEC Ex. 54 (March 4, 2016 email from Mr. Handler to Mr. Aven providing in part: "As with all of these databases I've had to conform to some specific nomenclatures related to strategy and benchmarks that they provide, even though these are often not as accurate as we'd like."). Defendants further aver that Mr. Aven testified as to the online portals as follows: "These websites are fairly rigid. You don't get a lot of flexibility in – in what you can and can't provide . . ." Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 364:2-4. Defendants further aver that Mr. Aven testified as to whether a disclosure could have been included in the online submissions as follows: "These are typically, you know, limited space.**

And so I imagine that's the decision Alan – Alan chose is to put the fund overview in the fund overview." *Id.* at 375:20-23.

60.     When asked if there should have been a disclosure on the HFR Listing that the listed returns were a composite of the different Fund and Polysight I, Aven testified, "Yes." (S.J. Ex. 4, 12/15/18 Aven Testimony at 384:6-10.)

**RESPONSE: Disputed in part.  Defendants do not dispute that Mr. Aven provided the testimony quoted in this Paragraph, but Defendants refer to the full testimony transcript (Ex. 211) as the best evidence and object to the SEC's characterization in Paragraph 60. Defendants further object to the SEC's question of whether there should have been a disclosure as calling for a legal conclusion, as it is now apparent that the SEC is attempting to use Mr. Aven's testimony as improper lay opinion and to have articulated a legal conclusion.**

**Defendants aver that Mr. Aven testified as to the online portals as follows: "These websites are fairly rigid.  You don't get a lot of flexibility in – in what you can and can't provide . . ." Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 364:2-4.  Defendants further aver that Mr. Aven testified as to whether a disclosure could have been included in the online submissions as follows: "These are typically, you know, limited space.  And so I imagine that's the decision Alan – Alan chose is to put the fund overview in the fund overview." *Id.* at 375:20-23.**

61.     When asked if it would be wrong to post historical performance information on Evestment without a disclosure providing that the returns represented a composite of Polysight I and the different SBB Fund, Aven testified, "That would be wrong.… if you're going to say—if you're going to represent that this information is Polysight I and include information that's not

Polysight I, you need to disclose that.… I think that would be interpreted—could be interpreted as misleading. I think if it happened, it would have been a mistake, but it—it certainly could be interpreted that way.… Because you're saying one thing and providing information about something else." (S.J. Ex. 4, 12/15/18 Aven Testimony at 360:22-361:17.)

**RESPONSE: Disputed in part. Defendants do not dispute that Mr. Aven provided the testimony quoted in this Paragraph, but Defendants refer to the full testimony transcript (Ex. 211) as the best evidence and object to the SEC's characterization in Paragraph 61. Defendants further object to the SEC's question of whether there should have been a disclosure as calling for a legal conclusion, as it is now apparent that the SEC is attempting to use Mr. Aven's testimony as improper lay opinion and to have articulated a legal conclusion.**

**Defendants aver that Mr. Aven testified as to the online portals as follows: "These websites are fairly rigid. You don't get a lot of flexibility in – in what you can and can't provide . . ." Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 364:2-4. Defendants further aver that Mr. Aven testified as to whether a disclosure could have been included in the online submissions as follows: "These are typically, you know, limited space. And so I imagine that's the decision Alan – Alan chose is to put the fund overview in the fund overview." *Id.* at 375:20-23. Mr. Aven did not testify that he was aware at the time that Mr. Handler had not included a disclosure in SBB's submissions to the online portals. Finally, Defendants aver that Mr. Aven's testimony in Paragraph 61 was in response to questions about a March 4, 2016 email from Mr. Handler to Mr. Aven titled "Evestment Approval" with an attached PDF for an online submission (SEC Ex. 54), about which Mr. Aven testified as follows: "I don't know – again, assuming that this did post live, I don't know what the live version would**

look like, because he's even got the wrong information in investment philosophy. So I – I just
-- I don't know that this was anything more than a draft at this point." *Id.* at 360:16-21.

## V. COMMUNICATIONS RELATED TO DISCREPANCIES BETWEEN MARKETING STATEMENTS AND THE POLYSIGHT I OPERATING AGREEMENT:

62.     In August 2015, Matt Aven had an email exchange with a prospective investor in
which the investor told Aven that (a) he understood from "our meeting" that the "freeze" period
for the fund "is 12 months from initial investment," but (b) the fund operating agreement indicated
that the lock up period would be two years. (S.J. Ex. 4, 12/15/18 Aven Testimony at 479-81; S.J.
Ex. 47, Aven Multi-Year email chain, SBBRG LLC-CONFIDENTIAL-181425, at 181430-32.)

**RESPONSE: Disputed in part.  Defendants do not dispute that Mr. Aven had an email
exchange with a prospective investor, and that the prospective investor wrote: "In our
meeting I understood the 'freeze' period is 12 months from initial investment.  In 3.01(a) I
read that this period is 2 years plus (December 31st after 2 years)."**

**Defendants dispute the relevance of Paragraph 62 and aver that this prospective
investor was raising this question on August 20, 2015, which predates SBB's retention of
ELK and Mr. Handler as a placement agent, *see* SAMF ¶ 30, and predates the earliest
version of the fact sheet identified by the SEC.  *See* SEC Ex. 16, ELK-0000385 at -0000386
(October 2015 version of the fact sheet); SEC Ex. 30, SBB Research Group 005352 at 005354
(same).  In addition, the prospective investor wrote in his initial email: "I reviewed the
documents you've sent me (Subscription Agreement & Operating Agreement) and will
appreciate our clarification on Withdrawal From Capital Accounts (page D8 of the
Operating Agreement) . . ." SEC Ex. 47, SBBRG LLC-CONFIDENTIAL-181425 at -181432.
Accordingly, the investor was raising the question about lock-up not as a result of reviewing**

the challenged marketing materials, but as a result of a prior verbal conversation with Mr. Aven, during which Mr. Aven misspoke.

63.     In responding to the investor inquiry in ¶ 62, Aven responded that "we misspoke regarding the 12-month lockup period" and confirmed that the fund documents "do state that the lockup period is 2 years." The investor asked for – and was offered – a side letter reducing the lockup period to six months. (*Id.*)

**RESPONSE: Disputed in part.  Defendants do not dispute that in response to the email from the investor identified in Paragraph 62, Mr. Aven responded: "we misspoke regarding the 12 month lockup period.  The documents for this fund do state that the lockup period is 2 years … We can accommodate your request to reduce the lockup period to 6 months, as well as the withdrawal process to 3 months."  SEC Ex. 47, SBBRG LLC-CONFIDENTIAL-181425 at -181430, -181431.  Defendants also do not dispute that the investor asked for and was offered a side letter reducing the lock-up period to six months.**

**Defendants dispute the relevance of Paragraphs 62 and 63 and aver that this prospective investor approached Mr. Aven on August 20, 2015, which predates SBB's retention of ELK and Mr. Handler as a placement agent, *see* SAMF ¶ 30, and predates the earliest version of the fact sheet identified by the SEC.  *See* SEC Ex. 16, ELK-0000385 at -0000386 (October 2015 version of the fact sheet); SEC Ex. 30, SBB Research Group 005352 at 005354 (same).  In addition, the prospective investor wrote in his initial email: "I reviewed the documents you've sent me (Subscription Agreement & Operating Agreement) and will appreciate our clarification on Withdrawal From Capital Accounts (page D8 of the Operating Agreement) . . ."  SEC Ex. 47, SBBRG LLC-CONFIDENTIAL-181425 at -181432.  Accordingly, the investor was raising the question about lock-up not as a result of reviewing**

the challenged marketing materials, but as a result of a prior verbal conversation with Mr. Aven, during which Mr. Aven misspoke.

Defendants aver that this exchange shows SBB negotiating the specific terms of a fund with a potential investor and offering the prospective investor a side letter memorializing the agreed-upon bespoke terms.

64.     On November 5, 2015, Aven engaged in an online chat communication with Handler in which Aven stated that the marketing materials have "[P]oly[sight I] inception of Sept. 2011 but it's really June 2014[.] [I]f you want to go with Sept 2011, we need to add the * again. [W]hat do you think?" Handler responded that "we should definitely use the Sep '11 start date. [I] think the disclaimer you wrote covers our legal risk on that, don't you? [T] he longer the better, as far as the track record is concerned." Aven responded: "[A]greed." (S.J. Ex. 48, 11/5/15 Aven and Handler Chat, SBBRG0302193.)

**RESPONSE:** **Disputed in part.  Defendants do not dispute that Mr. Aven wrote in the SEC's Exhibit 48: "you have poly inception of Sept 2011.  But it's really June 2014.  If you want to go with Sept 2011, we need to add the * again.  What do you think?"  Mr. Handler then responded: "we should definitely use the Sep' 11 start date.  I think the disclaimer you wrote covers our legal risk on that, don't you?  The longer the better, as far as track record is concerned."  Mr. Aven then replied: "Agreed."**

**Defendants dispute the SEC's statement that "Aven stated that the marketing materials have Polysight I inception of Sept 2011."  The cited Exhibit shows Mr. Aven stating that "you have poly inception of Sept 2011."**

65.     In July 2016, Handler emailed Aven:

… [W]e face a significant challenge in attracting investments from those high net worth (HNW) investors who want to, or are only able to, join a commingled vehicle. The vast

79

majority of these investors have their assets at independent and large RIA's (Stifel, Wells Fargo, Merrill, Morgan Stanley, JPM, etc.), smaller wealth managers, and multi-family offices. Most of those institutions are structured to direct their clients towards approved commingled vehicles that sit on their platforms and Polysight I is our only vehicle that could fulfill that role. However, we are not publishing Poly's track record; and were we to do so, our judgement seems to be that its performance is underwhelming and would not attract new investment. Consequently, we have no fund vehicle to show them and so marketing to this group is very difficult.

(S.J. Ex. 49, 7/18/16 Email from Alan Handler, SBBRG LLC-CONFIDENTIAL-101714 at 101715.)

**RESPONSE: Disputed in part. Defendants do not dispute that the SEC's Exhibit 49 contains Mr. Handler's statements as quoted in this Paragraph.**

**Defendants dispute the SEC's characterization of Exhibit 49 by omitting the context of the cited email and aver that the text quoted in Paragraph 65 related to a proposal from Mr. Handler to attract high-net-worth potential investors by reopening an earlier fund, CPS I. Mr. Handler emailed Mr. Aven on July 28, 2016 with the subject "Proposal to Open CPS I and Market It To RIA's," attaching a document titled "Thoughts on Opening Investors II or CPS I.docx," and wrote in the body of the email: "Looking forward to hearing your thoughts on this." SEC Ex. 49, SBBRG LLC-CONFIDENTIAL-101714. The attached document has a header titled "Thoughts on Re-Opening CPS I," and states: "Why not re-open CPS I and make that a new continuous offering called Polysight II? Currently CPS I, CPS XI, and Investors II, – from a marketing standpoint – stand as examples of what we are able to offer investors who are interested in an SMA or a fund-of-one. This group includes large institutions – such as endowments, funds-of-funds, foundations, public and private pensions, very large single family offices and some very large wealth managers. This group is a meaningful source of potential investment for us and we are highly focused on attracting them. Showcasing these vehicles is an effective tool in this marketing effort." SEC Ex. 49,**

SBBRG LLC-CONFIDENTIAL-101714 at -101715.  With respect to SBB's submissions to the online databases, the Exhibit states: "classifying the Polysight offering as a 'platform' rather than as an actual vehicle poses challenges to fully leveraging our marketing efforts via the various industry databases – Evestment, Eurekahedge, Barclayhedge, etc. Specifically, the databases are structured to display the returns and profiles of investment vehicles/funds offered by hedge fund management firms." *Id.*

66.     Handler testified under oath that, in the email identified in ¶ 65 above, he meant that "a firm considered Polysight I to be too early in its life to be an attractive vehicle since its performance was not good enough owing to its relatively short life to attract original investors, but it was the only commingled vehicle that we had." (S.J. Ex. 7, 12/1/21 Handler Dep. at 234:1-5.)

**RESPONSE: Disputed in part.  Defendants do not dispute that Mr. Handler provided the testimony quoted in Paragraph 66 during his deposition, but Defendants dispute that Mr. Handler offered this testimony generally about the email identified in Paragraph 65.  Rather, Defendants aver that Mr. Handler's testimony was specific to one portion of the email in Paragraph 65 regarding SBB's "challenge in attracting investments from those high net worth (HNW) investors who want to, or are only able to, join a commingled vehicle," to which Mr. Handler writes that "Polysight I is our only vehicle that could fulfill that role," "[h]owever, we are not publishing Poly's track record."  SEC Ex. 49, SBBRG LLC-CONFIDENTIAL-101714 at -101715.  Specifically, prior to the quoted testimony, the SEC asked Mr. Handler the following: "Q: So Polysight 1 is the only commingled vehicle that could fulfill that role? 17 A: Uh-huh. Q: And then you state: However we are not publishing Poly I's track record. And were -- were we to do so, our judgment seems to be that its performance is under-whelming and would not attract new investments.  Do you see**

that? A: I do. 24 Q: What -- what do you recall about that? What does that mean?" Ex. 221, Handler Dep. Tr. 233:15-23. Mr. Handler responded: "A: That means that a firm considered Polysight 1 to be too early in its life to be an attractive vehicle since its performance was not good enough owing to its relatively short life to attract original investors, but it was the only commingled vehicle that we had." *Id.* at 234:1-5. Defendants refer to the full deposition transcript (Ex. 221) as the best evidence and object to the SEC's characterization in Paragraph 66.

Defendants aver that this full exchange between the SEC and Mr. Handler shows that SBB was not marketing the Polysight I, LLC fund, consistent with the fact that the fact sheets concern SBB's investment "program," and that the investment terms in the fact sheets sent in or before May 2016 (including all fact sheets expressly cited in Paragraph 27) appeared in a section of the fact sheets titled "Firm and Program Information." *See* SEC Ex. 13, ELK-0012940 at -0012969; SEC Ex. 14, ELK-0021523 at -0021551; SEC Ex. 16, ELK-0000385 at -0000386; SEC Ex. 17, ELK-0095388 at -0095390; SEC Ex. 18, ELK-0015289 at -0015318; SEC Ex. 19, ELK-0018361 at -0018390; SEC Ex. 30, SBBRG 005352 at 005354; SEC Ex. 31, SBBRG 005377 at 005384; SEC Ex. 32, ELK-0017464 at -0017494; SEC Ex. 33, ELK-0017896 at -0017926; SEC Ex. 34, ELK-0018501 at -0018532; SEC Ex. 35, ELK-0018255 at -0018286; SEC Ex. 36, ELK-0018396 at -0018427; SEC Ex. 37, ELK-0018466 at -0018496; SEC Ex. 38, ELK-0018192 at -0018221; SEC Ex. 39, ELK-0018941 at -0018970; SEC Ex. 40, ELK-0018157 at -0018186. In addition, the full exchange is also consistent with the disclosure that SBB included in the certain of the challenged fact sheets and investor presentations, which stated, in part: "Historical Performance represents a composite return of SBB Research Group Investors II LLC, which began trading in September 2011, and

**Polysight, which began trading in June 2014." SEC Ex. 13, ELK 0012940 at -0012957, -0012958, -0012959, -0012960, -0012961; SEC Ex. 32, ELK-0017464 at -0017482, -0017483, -0017484, -0017485, -0017486; SEC Ex. 33, ELK-0017896 at -0017914, -0017915, -0017916, -0017917, -0017918; SEC Ex. 34, ELK-0018501 at -0018519, -0018520, -0018521, -0018522; SEC Ex. 35, ELK-0018255 at -0018273, -0018274, -0018275, -0018276; SEC Ex. 36, ELK-0018396 at -0018414, -0018415, -0018416, -0018417; SEC Ex. 37, ELK-0018466 at -0018484, -0018485, -0018486, -0018487; SEC Ex. 38, ELK-0018192 at -0018210, -0018211, -0018212, -0018213; SEC Ex. 39, ELK-0018941 at -0018959, -0018960, -0018961, -0018962; Ex. 40, ELK-0018157 at -0018175, -0018176, -0018177, -0018178; SEC. Ex. 18, ELK-0015289 at -0015306, -0015307, -0015308, -0015309, -0015310; SEC Ex. 19, ELK-0018361 at -0018379, -0018380, -0018381, -0018382; SEC Ex. 14, ELK-0021523 at -0021540, -0021541, -0021542, -0021543.**

67.     On December 11, 2015, Sam Barnett emailed a SBB brochure and a Polysight I fact sheet to an intermediary seeking to facilitate an introduction between SBB and the manager for the Massachusetts Institute of Technology. The fact sheet stated that the lock up period for Polysight I was one year, and that the fund had a high-water mark. (S.J. Ex. 31, 12/11/15 Barnett Polysight I Email, SBBRG 005377, SBBRG 005384.)

**RESPONSE: Disputed.   Defendants dispute that the fact sheet referenced in Paragraph 67 was for the Polysight I, LLC fund, and aver that the fact sheets instead provided information about Polysight as a strategy, of which the Polysight I, LLC fund, was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018)**

335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.

Defendants dispute that the fact sheet cited in Paragraph 67 stated that the Polysight I, LLC fund had a lock-up period of one year and had a high-water mark, because the fact sheet displayed the high-water mark and lock-up period under a heading of "Firm and Program Information."  SEC Ex. 31, SBBRG 005377 at 005384.

Defendants aver that Dr. Barnett's email and the attachments thereto were to an intermediary for the manager of MIT's "$15 Billion endowment" for the purpose of starting a conversation with that endowment fund manager.  *See* SEC Ex. 31, SBBRG 005377 at 005377.

Defendants further aver that the terms as provided in the fact sheets represented the kinds of terms that SBB would negotiate with and implement for institutional investors (including high-net-worth individuals) who ended up creating bespoke funds of one or SMAs.  *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37.

Defendants further aver that the subscription documents for SBB's Polysight I, LLC fund disclosed that the fund had a two-year lock-up period and did not have a high-water mark, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents.  *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003802 (Polysight I, LLC "Disclosures and Risks" stating that the fund is subject to a lock-up period of two-years), -0003801 (Polysight I, LLC "Disclosures and Risks" stating that the fund does not employ a high-water mark), -0003764 (Polysight I, LLC Subscription Agreement

requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

Finally, Defendants aver that SBB's Form ADV Part 2A brochures, as publicly available on the SEC's website, further disclosed the following: "Performance allocations are not subject to a 'high watermark.' Accordingly, [SBB] is entitled to performance based compensation with respect to investment gains regardless of the performance history of the Fund or separately managed account, and may be paid performance-based compensation for performance gains even though the overall performance of the Fund or account is flat or negative … Fund investors' ability to withdraw capital, and thereby recognize profits or prevent losses, is restricted. Typically, Fund contributions cannot be withdrawn until the December 31 of any fiscal year that follows the second anniversary of the date that the contribution was made." SEC Ex. 10, SBB Form ADV Part 2 (Mar. 31, 2014) at 6, 8; Ex. 53, SBB Form ADV Part 2 (Mar. 30, 2015) at 52, 54; SEC Ex. 11, SBB Form ADV Part 2 (Mar. 30, 2016) at 3, 6.

68. When asked at his investigative testimony about the December 11, 2015 email identified in ¶ 67 above, Barnett testified under oath that: "it would have been better to say that— say nothing about the high watermark or say that, you know, future funds will have a high watermark." (S.J. Ex. 2, 4/26/18 Barnett Testimony at 640:14-17.)

**RESPONSE: Disputed in part.** Defendants do not dispute that Dr. Barnett provided the testimony quoted in this Paragraph, but Defendants refer to the full testimony transcript (Ex. 214) as the best evidence and dispute the SEC's characterization of this testimony by omitting its context.

Defendants aver that when asked at his investigative testimony about the email identified in Paragraph 67, Dr. Barnett also testified as follows: "the fact sheets were designed to represent what we were offering as opposed to what we actually had in place, and we intended to offer a high watermark if any of these institutions wanted to invest, and they would presumably have a new fund altogether.  And so again this was sort of a general flavor of what we want to be showcasing . . ."  Ex. 214, Barnett SEC Tr. (Apr. 26, 2018) 640:7-13.  When asked about the lock-up information provided in the attachment to the email identified in Paragraph 67, Dr. Barnett testified as follows: "the intention was that it was communicating what would have been offered on a new vehicle … a sophisticate investor like this, you know, is only using this as very indicative information … I think that fact sheets are always taken with a grain of salt especially when, you know, the conversations revolve around starting a new fund that's going to have different parameters and properties." *Id.* at 640:22-641:18.

69.     On January 24, 2017, when asked about the email from Barnett identified in ¶ 67 above, Aven testified that at the time the email was written, Polysight I did not have a high-water mark and had a two-year lockup. (S.J. Ex. 3, 1/24/17 Aven Testimony at 254:17 to 256:14, 263:3-6, 271:1-17.)

**RESPONSE: Undisputed.  Defendants do not dispute that Mr. Aven testified that in November 2015, Polysight I, LLC did not have a high-water mark per the fund's operating agreements.  Defendants also do not dispute that Mr. Aven testified that in November 2015, Polysight I, LLC had a two-year lock-up per the fund's operating agreements.**

**Defendants aver that with respect to high-water mark, Mr. Aven further testified as follows: "Q: Does Polysight have a high watermark? A: Polysight does not currently have a**

high watermark, but we have agreed internally that it will at the time that it actually takes in a new investor. … Q: Okay. But why represent on this form that there is one when as of November 2015 there isn't one? A: Right. I think the idea was to try and show that for a new investor there would be … " Ex. 209, Aven SEC Tr. (Jan. 24, 2017) 262:24-263:24. With respect to lock-up, Mr. Aven further testified: "So I believe the lockup is two with manager discretion. So this would basically fall under the same thing as the high watermark, an intended change that hasn't been implemented … I believe what we were trying to do was explain what a new investor would be getting … " *Id.* at 271:10-272:1.

Defendants further aver that the subscription documents for SBB's Polysight I, LLC fund disclosed that the fund had a two-year lock-up period and did not have a high-water mark, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003802 (Polysight I, LLC "Disclosures and Risks" stating that the fund is subject to a lock-up period of two-years), -0003801 (Polysight I, LLC "Disclosures and Risks" stating that the fund does not employ a high-water mark), -0003764 (Polysight I, LLC Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

Finally, Defendants aver that SBB's Form ADV Part 2A brochures, as publicly available on the SEC's website, further disclosed the following: "Performance allocations are not subject to a 'high watermark.' Accordingly, [SBB] is entitled to performance based compensation with respect to investment gains regardless of the performance history of the Fund or separately managed account, and may be paid performance-based compensation for performance gains even though the overall performance of the Fund or account is flat or

**negative … Fund investors' ability to withdraw capital, and thereby recognize profits or prevent losses, is restricted.  Typically, Fund contributions cannot be withdrawn until the December 31 of any fiscal year that follows the second anniversary of the date that the contribution was made."  SEC Ex. 10, SBB Form ADV Part 2 (Mar. 31, 2014) at 6, 8; Ex. 53, SBB Form ADV Part 2 (Mar. 30, 2015) at 52, 54; SEC Ex. 11, SBB Form ADV Part 2 (Mar. 30, 2016) at 3, 6.**

70.     At his January 24, 2017 investigative testimony, Aven was asked several questions by the SEC regarding the fact that Polysight I fact sheets stated that Polysight I had a one-year lockup, high-water mark and a September 2011 inception date when the fund was created in June 2014 and the Polysight Operating Agreement provided that the Fund had a two-year lockup, and no high-water mark. (S.J. Ex. 3, 1/24/2017 Aven Test. Tr. at 55:25 to 56:6, 258:7 to 260:9, 262:20 to 264:2, 271:1 to 272:6.)

**RESPONSE: Disputed in part.  Defendants do not dispute that Mr. Aven's investigative testimony from 262:20 through 264:2 includes a question by the SEC regarding why the fact sheets stated "yes" for high-water mark and Mr. Aven's testimony that Polysight I, LLC did not have a high-water mark in November 2015.  Defendants aver that with respect to high-water mark, Mr. Aven further testified as follows: "Q: Does Polysight have a high watermark? A: Polysight does not currently have a high watermark, but we have agreed internally that it will at the time that it actually takes in a new investor. … Q: Okay. But why represent on this form that there is one when as of November 2015 there isn't one? A: Right.  I think the idea was to try and show that for a new investor there would be. . ." Ex. 209, Aven SEC Tr. (Jan. 24, 2017) 262:24-263:24.**

Defendants do not dispute that Mr. Aven's investigative testimony from 271:1 through 272:6 includes a question by the SEC regarding why the fact sheets stated one year for the lock-up period and Mr. Aven's testimony that Polysight I, LLC had a two-year lock-up per the operating agreements. Defendants aver that with respect to lock-up term, Mr. Aven further testified as follows: "So I believe the lockup is two with manager discretion. So this would basically fall under the same thing as the high watermark, an intended change that hasn't been implemented … I believe what we were trying to do was explain what a new investor would be getting … " *Id.* at 271:10-272:1.

Defendants dispute that Mr. Aven's investigative testimony from 55:25 through 56:6 includes a question by the SEC regarding the fact sheets. Although the SEC did ask a question about when Polysight I, LLC was created and Mr. Aven answered "June 2014" in response, that testimony is in the context of a discussion about a chart of SBB's funds, rather than about the fact sheets. *See id.* at 51:21-56:6 (discussing "a list of the funds" that SBB managed that was provided to the SEC examination team).

Defendants dispute that Mr. Aven's investigative testimony from 258:7 through 260:9 includes questions by the SEC regarding lock-up, high-water mark, or inception date. The portion of the testimony cited does not include any questions regarding lock-up, high-water mark, or inception date. The testimony primarily concerns the disclosure in the fact sheets regarding composite returns, and Mr. Aven provided an explanation as to why SBB decided to include the disclosure. *See id.* at 258:7-260:9.

71. On January 31, 2017, Defendants, through Handler, distributed an investor presentation to a prospective investor which stated that Polysight I had a one-year lockup and a

high water mark. (S.J. Ex. 29, 1/31/17 Email from Alan Handler, SBBRG LLC-CONFIDENTIAL-230697 at 230718.)

**RESPONSE: Disputed. Defendants do not dispute that the SEC's Exhibit 29 reflects an email from Mr. Handler to a prospective investor with an investor presentation attached, and that one page of the presentation titled "Polysight Facts & Terms" included the following content: "Incentive Fee: 20%, subject to High Water Mark"; "Lock Up: 1 Year."**

**Defendants dispute that the lock-up period and high-water mark information in the investor presentations pertained to the Polysight I, LLC fund, and aver that the investor presentations provided information about Polysight as a strategy, of which the Polysight I, LLC fund was just one potential vehicle. *See* Ex. 220, Handler SEC Tr. 40:16-41:16; Ex. 221, Handler Dep. Tr. 34:10-21, 36:16-37:2, 109:12-16, 115:18-116:1; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12, 80:6-13, 86:7-87:4; Ex. 223, Kiefer Dep. Tr. 56:4-7; *see also* SAMF ¶¶ 21-25, 30-31, 40.**

**Defendants further aver that the investor presentation cited in Paragraph 71 referenced Polysight as "Polysight®," which was a reference to the Polysight investment strategy. Ex. 220, Handler SEC Tr. 96:4-7.**

**Defendants further aver that the terms as provided in the investor presentations represented the kinds of terms that SBB would negotiate with and implement for institutional investors (including high-net-worth individuals) who ended up creating bespoke funds of one or SMAs. *See* Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15, 340:10-341:9, 362:15-23; Ex. 221, Handler Dep. Tr. 109:12-16; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 78:13-79:12; *see also* SAMF ¶¶ 14-15, 25, 36-37.**

Defendants further aver that the subscription documents for SBB's Polysight I, LLC fund disclosed that the fund had a two-year lock-up period and did not have a high-water mark, and that no investor could invest in Polysight I, LLC without having received and reviewed the subscription documents. *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003802 (Polysight I, LLC "Disclosures and Risks" stating that the fund is subject to a lock-up period of two-years), -0003801 (Polysight I, LLC "Disclosures and Risks" stating that the fund does not employ a high-water mark), -0003764 (Polysight I, LLC Subscription Agreement requiring a subscriber to warrant that they have received and read a copy of the "Disclosures and Risks" and a copy of the Operating Agreement); *see also* SAMF ¶¶ 11-13.

Finally, Defendants aver that SBB's Form ADV Part 2A brochures, as publicly available on the SEC's website, further disclosed the following: "Performance allocations are not subject to a 'high watermark.' Accordingly, [SBB] is entitled to performance based compensation with respect to investment gains regardless of the performance history of the Fund or separately managed account, and may be paid performance-based compensation for performance gains even though the overall performance of the Fund or account is flat or negative … Fund investors' ability to withdraw capital, and thereby recognize profits or prevent losses, is restricted. Typically, Fund contributions cannot be withdrawn until the December 31 of any fiscal year that follows the second anniversary of the date that the contribution was made." SEC Ex. 10, SBB Form ADV Part 2 (Mar. 31, 2014) at 6, 8; Ex. 53, SBB Form ADV Part 2 (Mar. 30, 2015) at 52, 54; SEC Ex. 11, SBB Form ADV Part 2 (Mar. 30, 2016) at 3, 6.

Dated: August 15, 2025

Respectfully submitted,

By: /s/ *Heather A. Waller*
Heather A. Waller (6302537)
John J. Sikora, Jr. (6217330)
Renatta A. Gorski (6332737)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel. (312) 876-7700
heather.waller@lw.com
john.sikora@lw.com
renatta.gorski@lw.com

Howard J. Rosenburg (6256596)
KOPECKY SCHUMACHER
ROSENBURG LLC
120 N. LaSalle, Street, Suite 2000
Chicago, IL 60602
Tel. (312) 380-6631
hrosenburg@ksrlaw.com

H. Gregory Baker (*pro hac vice*)
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel. (212) 336-2871
hbaker@pbwt.com

*Attorneys for Defendants*
*SBB Research Group, LLC, Samuel B. Barnett,*
*and Matthew L. Aven*