UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                      Plaintiff,<br><br>    v.<br><br>SBB RESEARCH GROUP, LLC,<br>SAMUEL B. BARNETT, and<br>MATTHEW LAWRENCE AVEN,<br><br>                      Defendants. | Case No. 1:19-cv-06473<br><br>The Honorable Sharon Johnson Coleman,<br>United States District Judge<br><br>The Honorable Keri L. Holleb Hotaling,<br>United States Magistrate Judge |

## <u>DEFENDANTS' LOCAL RULE 56.1(b)(3) STATEMENT OF ADDITIONAL MATERIAL FACTS</u>

**A.**     **SBB Created and Applied the Polysight I, LLC Strategy to Its Closed, Pooled Funds**

1.     Dr. Samuel B. Barnett graduated from California Institute of Technology in June 2012 with a bachelor's degree in Applied and Computational Mathematics and Business Economics and Management. *See* Ex. 203,[1] Background Questionnaire at 8; Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 13:19-14:1.

2.     Dr. Barnett hired Defendant Mr. Matthew L. Aven as SBB's Director of Operations and Chief Compliance Officer ("CCO") in February 2011. *See* Ex. 213, Barnett SEC Tr. (Mar.

---

[1] Exhibits numbered 1-238 refer to the exhibits identified in the Corrected Exhibit Index to Defendants' Statement of Undisputed Material Facts (Dkt. 269-1). Exhibits numbered 239-254 refer to the exhibits identified in the Index to Defendants' Local Rule 56.1(b)(3) Statement of Additional Material Facts and Local Rule 56.1(b)(2) Response to Plaintiffs Statement of Material Facts, filed concurrently herewith. Exhibits cited as "SEC Ex." refer to the exhibits identified in Plaintiff's Appendix of Exhibits to Statement of Undisputed Material Facts (Dkt. 260).

14, 2018) 35:7-18; Ex. 209, Aven SEC Tr. (Jan. 24, 2017) 23:2-24:16.  Mr. Aven remained CCO until November 2021.  *See* Ex. 212, Aven Dep. Tr. (Dec. 15, 2022) 13:11-18.

3. SBB's funds, including Polysight I, LLC, were established as private funds under Section 3(c)(1) of the Investment Company Act, meaning that investors in the funds had to qualify as "accredited investors" under Rule 501 of Regulation D of the Securities Act of 1933.  *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003800 (Polysight I, LLC Subscription Package).

4. In October 2011, SBB formed a fund named "Investors II," which employed SBB's proprietary predictive algorithms to invest in structured notes.  *See* Ex. 57, SBBRG LLC-CONFIDENTIAL-128360 at 11; SEC Ex. 12, SBBRG LLC-CONFIDENTIAL-237867.  Investors II was a $10 million fund open only to Dr. Barnett's family and friends.  *See* SEC Ex. 12, SBBRG LLC-CONFIDENTIAL-237867; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 334:22-335:5.

5. In its May 20, 2014 trademark application, SBB applied for a trademark for the term "Polysight," describing it as follows: "Hedge fund investment services; hedge fund services; financial services, namely, operation and management of hedge funds; investment management funds; investment advisory and management services; management and sponsorship of investment funds; investing for others; investment consulting services." Ex. 239, U.S. Trademark Application Serial No. 86286797 (filed May 20, 2014).

6. On November 3, 2015, the United States Patent and Trademark Office registered the Polysight trademark with the following identification: "FOR: HEDGE FUND INVESTMENT SERVICES; HEDGE FUND SERVICES; FINANCIAL SERVICES, NAMELY, OPERATION AND MANAGEMENT OF HEDGE FUNDS; MANAGING INVESTMENT FUNDS; PROVIDING INVESTMENT MANAGEMENT FUNDS; INVESTMENT ADVISORY AND MANAGEMENT SERVICES; INVESTING FOR OTHERS; INVESTMENT CONSULTING

SERVICES, IN CLASS 36 (U.S. CLS. 100, 101 AND 102)." Ex. 240, POLYSIGHT, Registration No. 4,847,014.

7. The Polysight "umbrella" encompasses a number of closed funds, as well as SBB's one fund open to investors (Polysight I, LLC). *See* Ex. 220, Handler SEC Tr. 36:24-37:18. The Polysight platform represents the "research and execution process that underlies the creation of all the funds." Ex. 221, Handler Dep. Tr. 142:18-23. The platform's strategy was "intended to protect assets and achieve conservative long-term returns." Ex. 215, Barnett Dep. Tr. 28:18-23.

**B.    SBB Created An Open Pooled-Fund—Polysight I, LLC—and Made Prospective Investors Aware of the Key Terms, Which Were Also Negotiable**

8. Polysight I, LLC the fund followed substantially the same strategy as Investors II, as well as Investors III and Investors IV. *See* Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 83:23-84:13; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 359:17-22.

9. SBB opened Polysight I, LLC the fund to friends and family and "friends and family of those investors in theory if they wanted to join[.]" Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 85:10-89:8.

10. SBB required investors to confirm their accreditation status in their subscription package prior to his or her investment in Polysight I, LLC. *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003768, -0003800 (Polysight I, LLC Subscription Package). An individual accredited investor is someone who has a net worth exceeding $1 million, or who has an income exceeding $200,000 (or $300,000 if joint income with a spouse) in each of the prior two years and reasonably expects the same for the current year. *See* 17 C.F.R. § 230.501(a). If the individual investor does not satisfy these financial criteria, they must satisfy at least one "financial sophistication" criterion to qualify as accredited. *See* Ex. 205 (U.S. Securities and Exchange Commission, *Accredited Investors*, https://www.sec.gov/resources-small-businesses/capital-raising-building-

blocks/accredited-investors (last visited May 20, 2025)); *see also* 17 C.F.R. § 230.501(a). An entity may also qualify as an accredited investor if it satisfies certain investment ownership, asset, or structural criteria. *See* 17 C.F.R. § 230.501(a).

11. The subscription package for Polysight I, LLC required investors to confirm they had received and read the offering documents and were aware of and understood: (i) the risks set forth in the respective subscription agreement; (ii) the fact that no market existed for units in the SBB funds; and (iii) that an investment in the SBB funds was suitable only for sophisticated investors of substantial means who had no need for short-term liquidity. *See* Ex. 129, SEC-SBBRG-E-0003759 at -0003764, -0003798, -0003801 (Polysight I, LLC Subscription Package).

12. The subscription packages for Polysight I, LLC included numerous disclosures related to the risk of investing in the funds. *See id.* For example, it included a disclaimer that investment in the Fund "is highly speculative and involves a high degree of risk." *Id.* at -0003764 (Polysight I, LLC Subscription Package). Finally, the subscription package included the following non-exhaustive list of risk disclosures (among others):

> a. "[SBB]'s investment strategy and the techniques it will employ to attempt to reach the Fund's goals are proprietary and will not be disclosed to potential investors (or to [Investors]). As a result, a potential investor's decision to invest in the Fund must be made without the benefit of being able to review and analyze [SBB]'s strategy and techniques. Additionally, annual reports furnished to [Investors] will not specifically identify individual investments and may not be prepared in accordance with generally accepted accounting principles." Ex. 129, SEC-SBBRG-E-0003759 at -0003799 (Polysight I, LLC Subscription Package).
>
> b. "[SBB] may incur conflicts of interest between the management of, and trading in, the Fund, and among the other funds and accounts it manages, some of which are owned by the principals of [SBB] and their family members." *Id.* at -0003800 (Polysight I, LLC Subscription Package).
>
> c. "All structured notes and other assets and liabilities shall be valued in the good faith discretion of [SBB], including assets and liabilities

4

for which there is no readily identifiable market value." *Id.* at -0003783-0003784 (Polysight I, LLC Subscription Package).

13. In addition to the risk disclosures, Polysight I, LLC required prospective investors to confirm that they had all the information necessary to evaluate their investments. *See* Ex. 129 SEC-SBBRG-E-0003759 at -0003764 (Polysight I, LLC Subscription Package). For example, the subscription package for Polysight I, LLC the fund required subscribers (investors) to "CAREFULLY REVIEW THE ENTIRETY" of the six-part Subscription Package, including the Subscription Agreement, Investor Qualification Statement, Operating Agreement of the Fund, Disclosures and Risks, and Appendix of Defined Terms and Notes, "BEFORE SUBSCRIBING" (*Id.* at -0003762), as well as agree to the following:

    a. "[Investor] has received all information it has requested from the Fund, sufficient to evaluate the terms, conditions, merits and risks of the investment." Ex. 129, SEC-SBBRG-E-0003759 at -0003764.

    b. "[Investor] has conducted its own due diligence investigation of the Fund and its principals, and has had the opportunity to ask questions of the Fund and its principals, to confirm the accuracy of materials provided." *Id*.

    c. "[Investor] has received satisfactory answers to its questions and requests for additional information, and has verified to its satisfaction the accuracy of the information in the Disclosures and Risks, the Operating Agreement and this Subscription Agreement." *Id*.

    d. "[Investor] is not relying on any projections of performance of the Fund, even if they were discussed orally." *Id*.

    e. "[Investor] recognizes that an investment in the Fund is highly speculative and involves a high degree of risk." *Id*.

    f. "[Investor] recognizes the interests in the Fund will be subject to restrictions on transfers as described in the Operating Agreement and the liquidity and marketability of interests in the Fund is severely limited." *Id*. at -0003765.

    g. "[Investor] is [] a sophisticated investor with such knowledge and experience to be able to evaluate the merits and risks of the investment in the Fund." *Id*. at -0003764.

    h. "The Fund does not employ the concept of a high-water mark or hurdle rate in its calculation of Incentive Fees." *Id*. at -0003801.

    i. "An investment in the Fund is subject to a lock-up period of two-years, plus the time through December 31st, after the two year date." *Id*. at -0003802.

    j. "The minimum subscription to the Fund is $1 million." *Id*. at -0003800.

  14. SBB's Form ADV Part 2A brochures, as publicly available on the SEC's website, further disclosed the following regarding its fees and terms:

    a. "In its sole discretion, [SBB] may reduce, waive or negotiate management fees with investors. Separately managed account management fees are negotiated at the time of the formation of the account and generally not subject to modification." SEC Ex. 10, SBB Form ADV (Mar. 31, 2014) at 5; Ex. 53, SBB Form ADV (Mar. 30, 2015) at 51; SEC Ex. 11, SBB Form ADV (Mar. 30, 2016) at 2.

    b. "Performance allocations are not subject to a 'high watermark.' Accordingly, [SBB] is entitled to performance based compensation with respect to investment gains regardless of the performance history of the Fund or separately managed account, and may be paid performance-based compensation for performance gains even though the overall performance of the Fund or account is flat or negative." SEC Ex. 10, SBB Form ADV (Mar. 31, 2014) at 6; Ex. 53, SBB Form ADV (Mar. 30, 2015) at 52; SEC Ex. 11, SBB Form ADV (Mar. 30, 2016) at 3.

    c. "Fund investors' ability to withdraw capital, and thereby recognize profits or prevent losses, is restricted. Typically, Fund contributions cannot be withdrawn until the December 31 of any fiscal year that follows the second anniversary of the date that the contribution was made." SEC Ex. 10, SBB Form ADV (Mar. 31, 2014) at 8; Ex. 53, SBB Form ADV (Mar. 30, 2015) at 54; SEC Ex. 11, SBB Form ADV (Mar. 30, 2016) at 6.

  15. Investors could negotiate Polysight I, LLC's terms, with any bespoke terms laid out in a "side letter" between the investor and Polysight I, LLC. *See* Ex. 241, ELK-0006244 (May 18, 2016 email from Handler to prospective investor attaching side letter with reduced management fee); Ex. 242, ELK-0094079 (May 3, 2016 email from Handler to prospective investor proposing side letter to guarantee liquidity within 90 days).

16. Investors invested in Polysight I, LLC and Investors II, LLC before the challenged marketing materials were created, notwithstanding the lack of a high-water mark associated with these two funds. *See* SEC Ex. 43, SBB Research Group 015000; *see* SEC Ex. 42, SBB Research Group 0004762 at 0004776-96 (Polysight I, LLC Operating Agreement); Ex. 125, SEC-SBBRG-E-0001649 at -0001673-94 (Investors II, LLC Operating Agreement).

    **C.    SBB Sought to Use the Polysight Strategy to Create Individualized "Funds of One" or Separately Managed Accounts**

17. As for institutional investors, SBB's goal was to create bespoke funds of one for them, and SBB would use materials showing the composite returns of the funds Polysight I, LLC and Investors II, LLC as a way of showing what SBB had done for other investors and SBB's investment capabilities. *See* Ex. 220, Handler SEC Tr. 40:16-41:2; Ex. 221, Handler Dep. Tr. 34:14-21, 36:16-37:2, 115:17-116:1.

18. Handler testified that he was retained by SBB to "identify, contact, and speak with prospective investors about investing in SBB Research Group products," namely, "Separately Managed Accounts" or "Funds of One," and that in his role at SBB, his "goal was to speak to investors who would create funds of one" and he "wasn't trying to get people to invest in like the commingled vehicle, Polysight I, LLC." Ex. 220, Handler SEC Tr. 40:16-41:2; Ex. 221, Handler Dep. Tr. 34:10-21. Handler added his "goal was to pitch to endowments who could write 20, 30, 40, 50 million dollar checks. And those kinds of investors almost to an institution will want their own account. Their own custom fund or their own managed account." Ex. 220, Handler SEC Tr. 40:23-41:2.

19. A "fund of one" is a bespoke vehicle with a single investor's assets with features that can be customized for that investor. *See* Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) at 78:13-79:12.

7

20. A "separately managed account," or "SMA," is a unique investment vehicle attached to a single investor, as distinct from a pooled investment vehicle. *See* Ex. 221, Handler Dep. Tr. 34:22-35:11.

21. Handler testified, "I was not marketing Polysight I. I was using Polysight 1 as an example of what we could do for these large institutional investors in a Fund of One or an SMA structure. So my intent was not to convince these large institutions to invest in Polysight 1. We used the Polysight 1 performance and earlier the Investors II performance as a way to demonstrate our ability to manage an SMA or a Fund of One for these large institutions." Ex. 221, Handler Dep. Tr. 115:18-116:1.

22. Aven testified that SBB retained Mr. Handler at E.L.K. for the purpose of "mak[ing] introductions to institutions that would be interested in [SBB's] investment strategy," and that Handler "was really just marketing SBB Research Group in terms of being able to invest in one of [SBB's] funds or a custom fund." Ex. 210, Aven SEC Tr. (Jan. 11, 2018) 45:8-12; Ex. 212, Aven Dep. Tr. (Dec. 15, 2022) 281:8-17.

23. Aven likewise testified that marketing materials were provided as a "representation of" what SBB did, rather than a solicitation to go into a specific fund. He explained, "[The] investors -- the institutional investors that we typically would be talking to typically are looking for their own vehicle. So –[the] information provided is more of a representation of -- of what we do, not so much of a solicitation to go into this particular fund; more of, This is what the manager does. If you're interested in this, we can do something like it." Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 335:8-15.

24. Aven further testified as follows in his SEC investigative testimony:

Q: And so SBB would be providing information on Polysight to market the services provided by the manager in the hopes of creating a new fund for that institutional investor?

8

> A: Typically, yes.
>
> \*\*\*
>
> A: So what we learned through doing this is what they prefer to do is just have a -- their own fund of one. And what they get with that is they get customization, they have whatever rights they want. You know, if they want to withdraw early, it's fine, because they're the only investor. Does that answer your question?
>
> Q: Yeah. But the information related to Poly I would just say, This is what we -- so would it -- would SBB create a fund of one with a similar strategy to Polysight or Investors II?
>
> A: That would be the intention, although the strategy could modify, depending on the investor's goals.

Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 340:10-14, 341:3-17.

25. Dr. Barnett testified that the Fund of One gives investors the ability to negotiate "any size they want, any particular liquidity requirements," and related parameters. Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) at 78:15-79:12. Dr. Barnett testified, "[T]he Fund of One concept is the thing that we're marketing. So when we talk to someone about our existing track record, we are saying that this is the kind of thing that we can set up for you as your own vehicle." *Id.* at 80:6-13. Dr. Barnett further testified, "[W]hen we're pitching these Funds of One we're trying to describe how our performance has been in general in the strategy which, you know, since Investors II and Investors III and Investors IV and Polysight basically are just in the same essential strategy, in fact, in the same assets most of the time." *Id.* at 85:15-22, 86:7-87:4.

26. Dr. Barnett testified that, "if someone is looking at a Fund of One opportunity and says well, perhaps we want to make a smaller investment now and be comfortable with you, we could take them into Polysight and vary." Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 85:13-86:6.

27. SBB employee Dan Kiefer likewise testified that SBB's "marketing aims were mostly for funds of one." Ex. 223, Kiefer Dep. Tr. 56:4-7 ("So the marketing aims were mostly

9

for funds of one. Polysight was a piece that we had, but the target market was institutional capital into a bespoke vehicle fund of one.").

28. SBB used Investors II returns in marketing materials because it was SBB's "longest running vehicle" and thus "the most representative return stream for a prospective investor" because it "best demonstrate[d] the high, long-term value of [SBB's] investment approach." SEC Ex. 12, SBBRG LLC-CONFIDENTIAL-237867 at -237869; Ex. 222, Kiefer SEC Tr. 146:3-23, 193:2-10.

29. One such bespoke fund of one that SBB had created was the JM I fund, which had one investor. Ex. 103, SBBRG LLC-CONFIDENTIAL-122039 at 11. The investor of JM I faced no restriction on capital withdrawal (*i.e.*, the investor was not subject to capital lock-up), and the management fee structure was bespoke as well. *Id.* at 15 (setting forth tiered management fee structure based on assets under management and providing "[m]ember's ability to withdraw capital is not restricted").

30. On October 16, 2015, SBB engaged E.L.K. Capital Advisors as a placement agent to "make introductions to institutions that would be interested in [SBB's] investment strategy." Ex. 210, Aven SEC Tr. (Jan. 11, 2018) 45:8-12; Ex. 162, ELK-0000004 (E.L.K. Capital Advisors, LLC engagement letter with SBB). E.L.K.'s engagement was to offer "the private placement of membership interests in the Funds," i.e., "SBB Research Group Polysight I LLC, certain other funds and separately managed accounts." Ex. 162 at -0000004. The sample disclosure statement attached to the engagement letter was to be "furnished to prospective investors in investment strategies by SBB Research Group LLC who are introduced by E.L.K.," and explained that the "name of the strategies subject to an agreement with [E.L.K.] include: SBB Research Group

10

Polysight I, LLC, a Illinois limited liability company, [insert others as applicable] (collectively, the 'SBB Strategies')." *Id.* at -0000016.

32. Mr. Handler understood that he was marketing "the Polysight strategy," meaning he was marketing a "concept or an idea" that an "investor could open an account with [SBB], either an SMA or a Fund of One, and SBB would employ [its] strategy inside that vehicle." Ex. 221, Handler Dep. Tr. 36:19-37:2.

32. Throughout Mr. Handler's engagement with SBB, he focused his efforts on prospective institutional investors—*e.g.*, pension funds, endowments, foundations, sovereign wealth funds, large investment management firms, funds of funds, family offices, and high-net-worth individuals with at least $25 million in investable assets. *See* Ex. 221, Handler Dep. Tr. 12:2-8; Ex. 220, Handler SEC Tr. 15:23-16:13 (describing "institutional investors"); *id.* at 34:15-20 (Handler focused exclusively on prospective investors); Ex. 162, ELK-000004 (E.L.K. Capital Advisors, LLC engagement letter with SBB).

33. SBB understood at the time that institutional investors generally preferred to have their own account with an investment manager rather than investing in a vehicles like Polysight I, LLC that commingled the assets of numerous investors. *See* Ex. 220, Handler SEC Tr. 40:23-41:2, 41:12-16 ("And I would expect that each and every institution that I pitched would say, okay, we're not going to join a commingled vehicle. If we decided to join, become a limited partner, we would want our own vehicle, our own separate LLC."); Ex. 221, Handler Dep. 110:25-114:15; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 340:18-341:17.

34. Even the high-net-worth individuals SBB targeted were of the level of sophistication and wealth that they would rely on an intermediary in making investment decisions. *See* SEC Ex. 49, SBBRG LLC-CONFIDENTIAL-101714.

11

35. To create a bespoke fund of one, Handler had discussions with investors about the terms at issue, including a high-water mark and the lock-up period. *See* Ex. 220, Handler SEC Tr. 80:19-21, 82:10-17, 84:8-85:11; Ex. 221, Handler Dep. Tr. 117:23-118:20; Ex 253, SBBRG LLC-CONFIDENTIAL-123533 (Feb. 17, 2016 email from A. Handler offering "some sort of liquidity guarantee" and asking investor whether they would then "be willing to consider a one year lock-up?").

36. Prospective institutional investors could negotiate these terms. *See* Ex 253, SBBRG LLC-CONFIDENTIAL-123533; Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 341:3-17, 379:13-22 ("Well, again, working under the -- the base assumption that the investors that we're talking to are most likely not investing directly in Polysight I – Q Okay. A -- they have the opportunity to design the fund any way they want. They could put a high water mark in. They could put a 30-day lockup or no lockup. They -- they can -- they can set those parameters."), 482:1-12 ("Q And the one-year lockup period, my understanding from your testimony, was aspirational for institutional investors? A Right. Q Okay. So if an institutional investor asked for -- asked for a new fund to be generated, it would receive a one-year lockup? A The truth is it would get whatever it wanted. Q Whatever negotiated. A Right. Q Whatever it negotiated.").

37. If an institutional investor engaged SBB to create a custom fund of one, the operating agreement for the fund would reflect the negotiated terms. *See* Ex. 222, Kiefer SEC Tr. 149:22-151:11; 157:22-159:6; Ex. 221, Handler Dep. Tr. 113:20-114:3.

38. Institutional investors to whom Handler was proposing custom funds were "extremely sophisticated," were "very financially literate," and had "hundreds and hundreds of these documents and hundreds of operating agreements," so SBB's materials were "the first step of a very lengthy walk that involves a great deal of due diligence" on the part of the investors,

12

ultimately leading to "a custom vehicle with its own custom operating agreement." Ex. 220, Handler SEC Tr. 86:8-87:7; Ex. 221, Handler Dep. Tr. 95:23-99:23.

39. If a prospective client expressed preliminary interest following the initial reach-out, Handler would follow up with documentation for whichever option the prospect preferred—i.e., a fund of one, or Polysight I, LLC, which was the only fund open to new investors at the time. *See* Ex. 241, ELK-0006244 (May 18, 2016 email from A. Handler to prospective investor); Ex. 220, Handler SEC Tr. 84:8-85:11, 86:8-87:7; *see also* Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 85:15-86:6.

40. SBB submitted information about the firm's Polysight I strategy to online subscription databases designed for accredited or institutional investors, which required a paid subscription in order to access the database. *See* Ex. 250, ELK-0110771 at -110771 (Oct. 10, 2016 email from Handler to eVestment data support transmitting a fact sheet and explaining that "Polysight I is open to new investors: this vehicle follows the exact same strategy as Investors II . . . [o]ur showcasing of Investors II is also designed to convey our ability and interest in building funds-of-one and SMA's for investors who are looking for that type of a structure"); Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 330:3-21, 331:13-332:2, 362:15-23; Ex. 220, Handler SEC Tr. 110:12-20; *see also* SEC Ex. 49, SBBRG LLC-CONFIDENTIAL-101714 at -101715.

41. A disclaimer on the HFR database stated: "No information in this publication constitutes or should be construed as a solicitation in any investment product." SEC Ex. 45, ELK-0015179 at -0015182.

42. A disclaimer on the eVestment database stated: "This performance report is for preliminary informational purposes only and is not an offering. Such offer may only be made to

qualified offeree by means of a Confidential Private Placement Memorandum together with the Limited Partnership Agreement and Subscription Agreement." SEC Ex. 54 at 12.

43. Handler testified that the marketing materials were *not* "designed to mislead sophisticated investors." Ex. 220, Handler SEC Tr. 86:8-87:25; Ex. 221, Handler Dep. Tr. 95:23-99:23.

44. Every challenged fact sheet included the following disclosure: "Historical Performance represents a composite return of SBB Research Group Investors II LLC, which began trading in September 2011, and Polysight, which began trading in June 2014, and is net of all fees and expenses." SEC Ex. 16, 11/30/15 SBB Polysight I, LLC Fact Sheet, ELK-0000385 at -0000386; SEC Ex. 17, 12/17/15 Emerging Manager Email, ELK-0095388 at -0095390; SEC Ex. 13, 2/9/16 Handler Polysight I, LLC Email, ELK-0012940 at -0012969; SEC Ex. 18, 3/9/16 Handler Polysight I, LLC Email, ELK-0015289 at -0015318; SEC Ex. 19, 4/8/16 Handler Polysight I, LLC Email, ELK-0018361 at -0018390; SEC Ex. 14, 5/2/16 Handler Polysight I, LLC Email, ELK-0021523 at -0021551. The fact sheets always accompanied SBB's investor presentation decks, which contained the very same disclosure to the extent they included historical performance data. *See* SEC Ex. 13, 2/9/16 Handler Polysight I, LLC Email, ELK-0012940 at -0012957-61; SEC Ex. 14, 5/2/16 Handler Polysight I, LLC Email, ELK-0021523 at -0021540-42; SEC Ex. 18, 3/9/16 Handler Polysight I, LLC Email, ELK-0015289 at -0015306-10; SEC Ex. 19, 4/8/16 Handler Polysight I, LLC Email, ELK-0018361 at -0018379-81; SEC Ex. 32, 3/17/16 Handler Polysight I, LLC Email, ELK-0017464 at -0017482-86; SEC Ex. 33, 3/18/16 Handler Polysight I, LLC Email, ELK-0017896 at -0017914-18; SEC Ex. 34, 4/8/16 Handler Polysight I, LLC Email, ELK-0018501 at -0018519-21; SEC Ex. 35, 4/8/16 Handler Polysight I, LLC Email 2, ELK-0018255 at -0018273-75; SEC Ex. 36, 4/8/16 Handler Polysight I, LLC Email 3, ELK-

14

0018396 at -0018414-416; SEC Ex. 37, 4/8/16 Handler Polysight I, LLC Email 4, ELK-0018466 at -0018484-86; SEC Ex. 38, 4/8/16 Handler Polysight I, LLC Email 5, ELK-0018192 at -0018210-12; SEC Ex. 39, 4/11/16 Handler Polysight I, LLC Email, ELK-0018941 at -0018959-61; SEC Ex. 40, 4/8/16 Handler Polysight I, LLC Email, ELK-0018157 at -0018175-77.

45. In fact sheets dated April 2016 and later, SBB included a disclosure making clear that the historical performance shown was Investor II's performance data (*see* SEC Ex. 15, ELK-0027175 at -0027178 ("Historical performance represents the return of SBB Research Group Investors II LLC, which began trading in September 2011 with $10 million."); SEC Ex. 20, ELK-0022693 at -0022696 (same); SEC Ex. 21, ELK-0022640 at -0022643 (same); SEC Ex. 22, ELK-0001814 at -0001817 (same); SEC Ex. 23, ELK-0022400 at -0022423 (same); SEC Ex. 24, ELK-0040739 at -0040742 (same); SEC Ex. 25, ELK-0090652 at -0090655 (same); SEC Ex. 26, ELK-0091643 at -0091646 (same); SEC Ex. 27, ELK-0003481 at -0003483 (same); SEC Ex. 28, SBBRG LLC-CONFIDENTIAL-234229 at -234232 (same); SEC Ex. 29, SBBRG LLC-CONFIDENTIAL-230697 at -230701 (same)). The fact sheets also stated that SBB's "numerous hedge funds" are "based on Polysight, a proprietary quantitative investment *platform*" and listed the funds using the platform, including "SBB Research Group Polysight I LLC (inception: June 2014)." *Id.*

46. The fact sheets stated on their face that SBB had prepared them for "sophisticated investors for reference only." Ex. 163, ELK-0095388 at -0095391. For example, a November 2015 fact sheet included the following disclaimer:

> Private equity funds, hedge funds and other alternative investments are complex instruments that are not suitable for every investor, may involve a high degree of risk, and may be appropriate only for investors capable of understanding and assuming the risks involved. Before entering into any transaction, an investor should determine if an investment suits their individual circumstances and should independently assess with their professional advisers

15

>the specific risks and the legal, regulatory, credit, tax, and accounting consequences.

*Id.* The fact sheets also included a disclaimer stating that they were "only intended to be information, and is not an offer or solicitation for any transaction." *Id.* The sheets further stated, "[t]he statements and values contained herein are deemed to be reliable, but their accuracy and completeness is not guaranteed." *Id*.

47. Mr. Aven testified that "nobody is going to look at [an online database] and write a check without having very detailed conversations and look at a subscription and operating agreement," and he did not "see a scenario where somebody invests in Polysight [the fund] based on these documents and not un—and does not understand what they're actually investing in" because "either you have the disclosures" for the actual fund "or you change the information to match exactly what the [custom] fund is." Ex. 211, Aven SEC Tr. (Feb. 15, 2018) 378:20-23, 379:25-380:6 (discussing SEC Exhibit 203).

48. Dr. Barnett likewise testified that, in proposing funds of one, there were "ongoing conversations," and SBB would "have a conversation" with the investor "to understand, . . . what [the investor is] really getting into." Ex. 213, Barnett SEC Tr. (Mar. 14, 2018) 93:6-98:24. Dr. Barnett believed that "no one invests based on just a fact sheet," because "the conversations revolve around starting a new fund that's going to have different parameters and properties." Ex. 214, Barnett SEC Tr. (Apr. 26, 2018) 638:8-642:9.

49. During Handler's role as a placement agent, he did not receive any investment. Ex. 221, Handler Dep. Tr. 124:6-19 (no investment to create a fund of one); Ex. 220, Handler SEC Tr. 43:3-8 ("Q: During your time at E.L.K. was there ever an investor that you secured or raised capital from so any of your contacts actually made investments? A: No. Q: In Polysight or any other fund? A: No.").

D.  **The SEC Mischaracterizes the Record Evidence**

50. On November 4, 2015, Handler emailed himself a draft version of the October 2015 Polysight I, LLC fact sheet. *See* Ex. 243, ELK-0095328-30. The draft fact sheet included the following footnote: "In June, 2014 Polysight began trading and was combined with Investors II, which began trading in September, 2011." The draft fact sheet did not have an asterisk next to "Polysight Inception: September '11." *Id*. at -0095329.

51. The following day, on November 5, 2015, Mr. Aven and Handler had a conversation via instant message regarding the draft fact sheet:

> [11/05/2015 05:07:28 PM UTC] Matt Aven: you have poly inception of Sept 2011. but it's really june 2014
> [11/05/2015 05:07:37 PM UTC] Matt Aven: if you want to go wtih Sept 2011, we need to add the * again. what do you think?
>
> [11/05/2015 05:09:06 PM UTC] alan handler: we shoudl definitley use the Sep '11 start date. i think the disclaimer you wrote covers our legal risk on that, don't you?
> [11/05/2015 05:09:30 PM UTC] alan handler: the longer the better, as far as track record is concerned
> [11/05/2015 05:10:29 PM UTC] Matt Aven: agreed
> [11/05/2015 05:10:36 PM UTC] alan handler: ok

SEC Ex. 48, SBBRG0302193.

52. A few days later on November 11, 2015, Handler emailed a "latest revision" of the SBB fact sheet to Randy Winters at E.L.K. *See* Ex. 244, ELK-0095337. The fact sheet attached to his email included sheet included an asterisk after the phrase "Polysight Inception: September 2011." *Id.* at -0095338. The fact sheet also included a revised footnote stating: "* Historical Performance represents a composite return of Investors II, which began trading in September 2011, and Polysight, which began trading in June 2014, and is net of all fees and expenses." *Id.*

17

53. The SEC's excluded materiality expert, Peter Hickey, testified under oath as follows:

> Q: Has any of your prior experience involved speaking to investors about what's important to them?
>
> A: No.
>
> Q: How does your prior experience inform what's important to investors?
>
> A: My prior experience in cases like this and, again, my experience as an investor and reliance on financial statements, generally, and specifically for investment funds, informs my opinions expressed in this case.
>
> Q: You've never talked to investors or done anything to understand, in that experience, what matters to them?
>
> A: No.
>
> ***
>
> Q: And your conclusion that those representations are important, is that based on your experience?
>
> A: My experience as both an expert and also as an investor.
>
> Q: Anything else?
>
> A: No.

Ex. 221, Hickey Dep. Tr. 148:1-6, 174:7-21.

54. Alan Handler testified under oath as follows:

> Q: Okay. And again based on your experience in -- 30 years of experience in the financial industry, you think the existence of a high-water mark for a fund is important information for investors; correct?
>
> Mr. Rosenburg: Objection. Form and foundation.
>
> A: Most investors would consider a high-water mark to be important.
>
> Q: Okay. And investors consider -- in -- in your 30-plus years of experience, you think a hedge fund having a high-water mark is standard industry procedure?
>
> Mr. Rosenburg: Objection. Form and foundation.

18

>A: Most hedge funds have high-water marks in their vehicles.
>
>Q: And -- and you would consider it to be standard industry procedure?
>
>Mr. Rosenburg: Objection. Form and foundation.
>
>A: I think most industry professionals would consider it to be important to have a high-water mark in any vehicle that they're marketing.

Ex. 221, Handler Dep. Tr. 82:2-21.

Dated: August 15, 2025            Respectfully submitted,

By: /s/ *Heather A. Waller*
Heather A. Waller (6302537)
John J. Sikora, Jr. (6217330)
Renatta A. Gorski (6332737)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel. (312) 876-7700
heather.waller@lw.com
john.sikora@lw.com
renatta.gorski@lw.com

Howard J. Rosenburg (6256596)
KOPECKY SCHUMACHER ROSENBURG LLC
120 N. LaSalle, Street, Suite 2000
Chicago, IL 60602
Tel. (312) 380-6631
hrosenburg@ksrlaw.com

H. Gregory Baker (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel. (212) 336-2871
hbaker@pbwt.com

*Attorneys for Defendants*
*SBB Research Group, LLC, Samuel B. Barnett, and Matthew L. Aven*