**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| | ) | Case No. 19-cv-6473 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| SBB RESEARCH GROUP, LLC, | ) | |
| SAMUEL B. BARNETT, and | ) | |
| MATTHEW LAWRENCE AVEN | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The Court heard oral argument by counsel for the Securities and Exchange Commission (the "SEC"), and SBB Research Group, LLC ("SBB"), Samuel B. Barnett, and Matthew Lawrence Aven (together, "Defendants") on several motions *in limine* during the continued pretrial conference on August 12, 2026. Based on those arguments, as well as the parties' briefs, the Court rules on the motions as set forth below.

**DEFENDANTS' MOTIONS *IN LIMINE***

**I.  Motion in *Limine* No. 1 (Dkt. 302)**

Defendants request the Court preclude the SEC from using "unnecessary, inaccurate, and inflammatory language" at trial. Defendants' motion *in limine* is denied.

After review of the challenged phrases, the Court determines that it will not police the parties' language before trial and devoid of any context; counsel is entitled to zealously advocate on behalf of the parties. Defendants may raise objections to any inflammatory language should the SEC or witnesses use it.

1

## II.  Motion *in Limine* No. 2 (Dkt. 303)

Defendants move for an order *in limine* precluding the SEC from using SBB's adoption of the Markit valuation model, and its fee credit to its funds' investors, to show or imply that SBB's model was improper or that Defendants "overcharged" investors.  Defendants' motion is granted in part and denied in part.

The fact that the Defendants took measures in response to the SEC's investigation does not render those measures "involuntary," thereby falling out of the scope of Federal Rule of Evidence 407.  The SEC may present the differences between Markit's and SBB's models to show falsity.  The interpretation of Defendants' switching its valuation model is left to the jury with respect to intent.  However, the SEC cannot use Defendants' switch to the Markit valuation model to establish that SBB's model was deficient.

However, a fee credit is not a "remedial measure."  A remedial measure is a step "that would have made an earlier injury or harm less likely to occur."  Fed. R. Evid. 407.  Thus, the rule does not bar the SEC from offering evidence that Defendants credited investors the difference in fees caused by the switch in their valuation models.

## III.  Motion *in Limine* No. 3 (Dkt. 305)

Defendants request that the Court preclude the SEC from (1) offering rebuttal opinions of its expert witness, Craig McCann, during his direct examination and (2) calling its expert witness Andrew Mintzer during its case-in-chief.  Defendants' motion *in limine* is denied without prejudice.

### a.  *McCann's Rebuttal Testimony*

It is premature at this juncture to summarily preclude McCann's testimony.  Defendants agree that if their expert Arun Sen, whose opinions McCann rebutted, "testifies about the subjects of McCann's rebuttal testimony at trial" then McCann should be "permitted to offer rebuttal testimony on those subjects."  Accordingly, it is appropriate to wait until the Court and the parties know that

2

Defendants have elected to call Sen. Further, McCann may offer such opinions should Defendants open the door by discussing "the subjects of McCann's rebuttal testimony." Excluding his testimony entirely as an attempt to "retroactively … correct the shortcomings in [his] opening report" extinguishes McCann's ability to address those "shortcomings" should Defendants raise them at trial. And if neither of those contingencies occur at trial, the Court can exclude McCann's rebuttal testimony from being elicited in the SEC's case-in-chief.

b. *Mintzer's Testimony*

Defendants argued that Mintzer's opinion on SBB management's responsibility for the preparation and presentation of its financial statements should be excluded, because Defendants do not dispute that they held that responsibility. In its *Daubert* ruling the Court stated that "if SBB contends it is not responsible for preparing and presenting GAAP financial statements at trial, the Court may revisit whether this issue is in dispute," and reevaluate the admissibility of Mintzer's opinions. (Dkt. 238) at *29. The parties agree that if Defendants "open the door," Mintzer's affirmative opinion may be admissible, but disagree as to when that door has opened.

It appears that Defendants' reliance on outside accountants and auditors will be a central issue in this case. Mintzer framed the responsibility issue as relevant to the "independence" of an auditor, opining that absolute reliance on an auditor's opinions to claim compliance with GAAP compromises that independence. This ventures into the disputed question of the integrity of RSM's audits, and whether RSM had the benefit of Defendants' full disclosure when evaluating its professional responsibilities. Further, the conclusion bears on the knowledge of Defendants that they could *not* satisfy their responsibilities simply by obtaining "clean" opinions, which is relevant to their disputed "reliance" claim.

It would be helpful for the jury to understand what it means to "delegate" management's responsibilities to its auditors, and the implications of doing so considering the parties' disputes on

3

Defendants' reliance. The Court will not preemptively prohibit the SEC from calling Mintzer, and again may revisit the question of whether the door to his testimony has been opened at trial.

### IV. Motion *in Limine* No. 4 (Dkt. 306)

Defendants filed a motion *in limine* to preclude the SEC from eliciting testimony from lay witnesses about "scientific, technical, or otherwise specialized knowledge." *See* Fed. R. Evid. 701(c). These topics include Generally Accepted Accounting Principles ("GAAP") (including ASC 820 and "fair value"), accounting materiality, the standard of care for the SEC's negligence-based claims, and what constitutes "reasonable" policies and procedures for an investment adviser. Defendants' motion is granted, but this ruling should be construed narrowly.

The Court agrees that a witness cannot testify as an undisclosed expert and offer "testimony in the form of an opinion" on topics within the domain of Federal Rule of Evidence 702. However, it is unclear to what extent Defendants seek to exclude the testimony described in their motion. The fact that a witness has "particularized knowledge that he learned through his job(s) … does not automatically convert his lay testimony into impermissible expert testimony." *United States v. Tomkins*, 2012 WL 1357701, at *11 (N.D. Ill. Apr. 19, 2012) (Durkin, J.).

Insofar as lay witnesses testify in the form of an opinion on specialized topics (for example, accounting materiality) as opposed to the facts of their personal and professional experience, the Court will bar that evidence. This is a complex case involving complicated and esoteric subject matter. If the Court took such an expansive view, most witnesses in this case would not be permitted to testify as to their experience and personal knowledge.

### V. Motion in *Limine* No. 5 (Dkt. 313)

Defendants filed a motion *in limine* to preclude the SEC from admitting into evidence the SEC's Office of Compliance Inspections and Examinations ("OCIE") Examiners' Letter ("Examiners' Letter" or "Letter"). Defendants' motion is granted in part and denied in part.

4

A "statement of a public office" offered in a civil case is not hearsay if it contains the "factual findings from a legally authorized investigation" and the opponent fails to show that the source or circumstances "indicate a lack of trustworthiness." Fed. R. Evid. 803(8). The term "factual findings" includes statements of "conclusion or opinion" that are based upon a factual investigation. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988). The factual findings included in the Letter are therefore admissible under hearsay rules.

However, the Court finds that admitting the legal conclusions contained in the Letter (such as findings that Defendants in fact violated federal securities laws) would prejudice Defendants, due to the danger that the jury would treat those legal conclusions as definitive. The legal conclusions proffered in the Letter are not necessary to show notice to Defendants; they were on notice when informed of the SEC's findings. The Letter also included sections entitled "Corrective Actions to Date" and "Corrective Action Requested." Those sections describe the subsequent actions of Defendants upon receipt of those concerns without stating any legal conclusion. The legal conclusions in the Letter, along with the portions discussing aspects of the SEC's examination irrelevant to this case, are inadmissible and must be redacted.

### VI.     Motion *in Limine* No. 6 (Dkt. 304)

Defendants request the Court preclude the SEC from eliciting or introducing at trial "speculative" testimony from RSM personnel and any other witness, such as by asking hypothetical questions related to "counterfactual" scenarios. Defendants' motion *in limine* is denied.

"Personal knowledge can include reasonable inferences drawn from a witness's observations and firsthand experiences." *U.S. v. Proano*, 912 F.3d 431, 441 (7th Cir. 2019). A witness may testify as to what facts she didn't know, and how it would have affected her conduct if she knew those facts. Those questions do not ask witnesses to speculate as to events or evidence that they did not personally perceive, nor to what they believe someone else would have done in a certain scenario. And that a

witness "never perceived [a] counterfactual world" does not render her testimony outside her personal knowledge, such as what information she considers important and how it would guide her actions.

As noted during oral argument, the Court may "evaluate in the moment" whether the SEC crosses the line or fails to lay adequate foundation.  For example, the SEC may not insert attorney argument into its questions couched as "facts."  However, tailoring "what would you have done" questions only to facts that do not presuppose the SEC's theories (e.g., that Defendants intentionally deviated from industry standards and that the model was designed to raise note values) is permissible.

### VII.    Motion in *Limine* No. 7 (Dkt. 314)

Defendants seek to preclude the SEC from introducing RSM's resignation letter at trial, as well as testimony or any other evidence describing the contents of the letter and RSM's purported rationale for resigning as SBB's auditor.  Defendants' motion *in limine* is denied without prejudice.

Defendants' engagement with auditors and evidence of RSM's resignation are highly relevant to both parties' cases.  It cuts both ways, as explained in the Court's order on the SEC's motions *in limine*.  *See* (Dkt. 365).  The resignation letter is relevant to Defendants' state of mind, as well as their claim that they relied on the advice of professionals.

The Court will reserve ruling on Defendants' hearsay-within-hearsay objection.  The SEC claims that it will be able to lay foundation that the resignation letter itself falls within the business records exception, resolving the first layer of hearsay.  The assertions within the letters describing the "inconsistencies" may also be admissible under Federal Rule of Evidence 801(d)(2), to the extent that they accurately represent SBB witness' testimony.

Defendants may renew their objection if they believe the SEC has not laid the foundation at trial for the letter to be admissible.  Defendants may also cross-examine RSM witnesses as to the motives of RSM's resignation and the witnesses' credibility, as well as ask questions to address any confusion they believe has been introduced.

6

**VIII.  Motion *in Limine* No. 8 (Dkt. 307)**

Defendants move for an order *in limine* precluding the SEC from offering evidence of communications with, and testimony by, third-party valuation entities.[1]  Defendants' motion is denied without prejudice.

A statement offered to show that a listener received information, and to show the state of mind that information induced, is not hearsay.  *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 468 (7th Cir. 2008).  To be sure, the Court agrees that the e-mails are hearsay as to the third parties' statements if the documents are offered to show that their conclusions about Defendants' model were correct.  But VRC's and Numerix's communications with Defendants are not hearsay when offered for the limited purpose of showing Defendants' good faith and state of mind.  The Court can issue a limiting instruction to address any risk of confusion or prejudice.

The Court reserves ruling on the admissibility of the internal Numerix communication under the business record hearsay exception in Rule 803(6).  The SEC represents that it will provide custodial, foundational evidence to prove the elements of the exception.  However, on its face the Numerix e-mail does not appear to be the sort of document made "regular[ly]," nor "kept in the regular course of business."  *See* Fed. R. Evid. 803(6).  E-mails are not business records merely because employees "regularly" conduct business through e-mail.  *See Freedman v. Am. Guardian Holdings, Inc.*, 2021 WL 3487335, at *4 (Alonso, J.) (N.D. Ill. Aug. 9, 2021).  The Court cautions that a certification may not simply "parrot[] the language of Evid. Rule 803(6)."  *See Lamar v. Experian Info. Sys.*, 408 F. Supp. 2d 591, 596 (Shadur, J.) (N.D. Ill. 2006).

**IX.  Motion *in Limine* No. 9 (Dkt. 308)**

Defendants move for an order *in limine* precluding the SEC from introducing exhibits or testimony involving SBB's engagements with third-party accounting firm PricewaterhouseCoopers

---

[1] The SEC voluntarily withdrew its proposed Exhibit 384, comprising of only internal VRC communications.

("PwC"), including: (1) the deposition or live testimony of PwC witness Justin Keane; (2) exhibits that reference, involve, or were created as part of PwC's engagements with Defendants from 2016 to present; and (3) any testimony by other witnesses referring to PwC's engagements, analyses, or communications. Defendants' motion is denied without prejudice.

Engaging consultants such as PwC is not a "remedial" action, because it has not made the alleged harm "less likely to occur." *See* Fed. R. Evid. 407. And the PwC evidence bears on Defendants' state of mind; the fact that potential deficiencies were brought to Defendants' attention is relevant to notice, and the fact that they did not inform RSM about PwC's findings (and an RSM witness testified she would have wanted to know those findings) is relevant to scienter. Defendants' argument that the PwC report was not an "official" finding but based on "preliminary" work impacts the weight of the evidence, not the admissibility.

The Court also agrees that the PwC evidence is relevant to Count VIII (the SEC's "Compliance Claim"), as it is relevant to Defendants' adoption and and implementation of "adequate written policies and procedures regarding its '[p]rocesses to value client holdings and assess fees based on those valuations.'" And as the Court noted previously, the SEC is not required to establish a standard of care or industry standard under the Compliance Rule.

The Court further declines to exclude the PwC evidence on hearsay grounds at this time. The SEC claims it is working to obtain a certification from PwC that will qualify the PwC report as a business record. Defendants may renew their hearsay objections if they believe the SEC has not established the requisite elements to meet any exception.

## X.    Motion in *Limine* No. 10 (Dkt. 318)

Defendants seek to preclude the SEC from admitting certain "summary exhibits," which Defendants believe the SEC will seek to admit through the testimony of SEC accountant Craig

8

McShane as a "summary witness." These exhibits include spreadsheets comparing note values calculated using the "SBB Model" and the "Markit Model." Defendants' motion is denied.

Federal Rule of Evidence 1006 states that the Court "may admit as evidence a summary, chart, or *calculation* offered to prove the content of voluminous admissible writings … that cannot be conveniently examined in court, whether or not they have been introduced into evidence" (emphasis added) as long as the proponent "make[s] the underlying originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place."

The SEC provided a declaration from McShane affirming that the SEC created its summary spreadsheets using data produced by Defendants and by Markit, applying Defendants' and Markit's valuation methods, and comparing the results. The SEC also provided an updated summary chart elucidating the source of the data. This summary chart satisfies the requirements of Rule 1006 to "make the underlying originals or duplicates available for examination … by other parties at a reasonable time and place." The SEC has not indicated that McShane will "testify in the form of an opinion," as an expert witness could. *See* Fed. R. Evid. 702. And while it may not be able simple to calculate a net asset value, the rule does not require the voluminous evidence to be *easily* summarized— only that the underlying writings are accurate, admissible, and inconvenient to examine individually. The summary exhibits here will be useful to jurors, and unlikely to prejudice Defendants.

### XI. Motion *in Limine* No. 11 (Dkt. 310)

Defendants move for an order *in limine* precluding the SEC from playing video clips from media interviews of Barnett during trial. Defendants' motion is denied.

The Court agrees that the media clips are relevant to show how Defendants marketed themselves and sought to expand their investor base, as well as relevant to materiality as part of the "total mix" of information available to investors. The Court fails to see how Barnett's own words and how he chose to represent SBB in media appearances will prejudice Defendants. To the extent such

videos are cumulative or waste time at trial, the Court may bar the evidence as appropriate. Any videos must be brought to the attention of the Court and the opposing counsel prior to being presented to the jury.

### XII.    Motion *in Limine* No. 12 (Dkt. 309)

Defendants request the Court preclude the SEC from offering at trial, or using in its opening statement, testimony designations for Barnett, who will be present and available to testify at trial. Defendants' motion is denied.

Federal Rule of Civil Procedure 32(a)(1) permits the use of a deposition against a party if the party was (a) present or represented at the deposition, (b) to the extent the deposition would be admissible evidence if the deponent were present and testifying, and (c) the use is allowed by the other provisions of Rule 32. In turn, Rules 32(a)(2) and (a)(3) allow the use of deposition testimony "for any other purpose allowed" by the Rules of Evidence and against a party opponent "for any purpose." The deposition testimony meets each requirement, and a party's availability to testify does not limit the use of prior sworn admissions.

Barnett's testimony is also not hearsay, as it is a statement of a party opponent that is offered against him. Fed. R. Civ. P. 801(d)(2)(A). The Court may address the line-by-line objections without excluding all of Barnett's testimony, and Defendants may cross-designate additional aspects of the transcripts necessary to make them complete.

**IT IS SO ORDERED.**

Date: 8/13/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge